IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA,

vs.

LAWRENCE RUDOLPH,

_____/

**LAWRENCE RUDOLPH'S MOTION FOR TEMPORARY RELEASE
PURSUANT TO 18 U.S.C. § 3142(*i*)**

Although on January 4, 2022, the Magistrate Judge ordered Dr. Lawrence Rudolph detained pending trial, this Court has the authority because of unique and extenuating circumstances that unfairly burden the ability to mount a defense to release Dr. Rudolph temporarily. Title 18 U.S.C. § 3142(*i*) provides that "[t]he judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

The combination of the pandemic, the measures imposed to address it, and Dr. Rudolph's detention in a jurisdiction foreign to him—where he lacks the support of any friends or family who could visit him and assist him in organizing his affairs to mount his defense—makes preparing for a murder trial nearly impossible and provides not merely sufficient but compelling grounds for his temporary release. The

pandemic and the very significant challenges it poses for prisoners as well as their lawyers and family members who provide crucial support to a person on trial for a serious crime alone have been found to support release under § 3142(*i*). When one also considers the agent's sworn testimony at the detention hearing that the prosecution deliberately set out to gain an unfair advantage by isolating Dr. Rudolph from his children, his friends, and his lawyers, it is clear that no court could in fairness allow this tactic to succeed. Permitting such naked gamesmanship in a case making such serious allegations risks making the ultimate trial a hollow proceeding and a mockery of justice and of the judicial system itself.

First, recognizing the substantial and unfair burdens that measures aimed at fighting the pandemic impose on those accused of crimes, federal courts across the country have relied on this section to allow for temporary release of a defendant who needs to prepare for trial. *United States v. Chandler*, 1:19-CR-867 (PAC), 2020 WL 1528120, at *2 (S.D.N.Y. Mar. 31, 2020) ("The extraordinary burdens imposed by the coronavirus pandemic, in conjunction with Chandler's right to prepare for his defense, certainly constitute a 'compelling reason' that permits this Court to order the temporary release of Chandler pursuant to 18 U.S.C. § 3142(*i*)."); *United States v. Stephens*, 447 F. Supp. 3d 63, 67 (S.D.N.Y. 2020) ("[T]he obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(*i*)."); *United States v. Kennedy*, 449 F. Supp. 3d 713 (E.D. Mich. 2020) (even if defendant did not have a heightened susceptibility to COVID-19, the public health crisis, and its impact on defendant's ability to present

a defense, was sufficient to justify defendant's temporary pretrial release); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail."); *United States v. Weigand*, 20-CR-188-1 (JSR), 2020 WL 5887602, at *2 (S.D.N.Y. Oct. 5, 2020) (holding that a wealthy defendant, who the government claimed was a flight risk, would be allowed to obtain his release pending trial during the coronavirus pandemic).

Second, despite the severe burdens that the pandemic imposes on the defense, the government schemed to gain even *more* of an unfair advantage by bringing Dr. Rudolph to a district having no substantial connection whatsoever to the charged crime or to Dr. Rudolph himself. As the FBI agents testified at the detention hearing, the prosecution contrived to do this specifically to gain an unfair tactical advantage in pre-trial preparation. As the agent testified in court, the prosecution manufactured venue in Denver because that was most convenient for the prosecutors and agents. As they knew and understood, Dr. Rudolph has no connection to this District. He lives in Phoenix, Arizona, and has long had a business in the Pittsburgh, Pennsylvania, area. The agent made clear in his testimony that the prosecution could much more easily have arrested Dr. Rudolph in either of those places, but they contrived to wait until he traveled on vacation to Mexico so that they could try him in the place most convenient to *them*, without giving any consideration to his constitutional rights.

As will be detailed in a subsequent motion, this tactic is both illegal and unconstitutional, but for present purposes it suffices that this was calculated

specifically to make it much harder for Dr. Rudolph to answer the charges. For present purposes, the Court must assume that the order of pre-trial detention will not be overruled on appeal and that the case will not be transferred to a district having a connection to the case. As the case currently stands, failure to order relief under § 3142(*i*) will give the prosecution such an advantage in this case that no reasonable member of the public having knowledge of the facts could be sure that the proceedings in this case were at all fair.

Venue in a criminal case is neither a trivial nor technical consideration. If it were, the government would not have gone to such extraordinary lengths to manufacture venue. The Founding Fathers knew that choosing the place of trial could give prosecutors enough of an insuperable and unfair advantage to convict an innocent man. That is why venue over criminal charges is the only constitutional right to appear in the Constitution *twice*. *See* U.S. Const. art. III, § 2, cl. 3; amend. VI. As the agent's testimony shows, the government gave no consideration whatsoever to this important right. They thought only about how to win at any cost, not how to proceed fairly under the Constitution.

Dr. Rudolph has known—because the government made no secret about it—that he has been under investigation for five years. He made no effort to flee. He did not transfer or hide assets. As the testimony shows, the government knew he would return from Mexico. They arrested him there solely as part of a ruthless strategy. While the illegality of the government's tactics will be the subject of a later motion, for § 3142(*i*) it suffices is that the government admitted that it schemed to bring Dr.

Rudolph to Colorado because that made the prosecution's burden lighter. At least a temporary release from pre-trial detention is therefore necessary to mitigate somewhat the unfair advantage the government is trying to gain and to vindicate the Court's duty to ensure that the defense has a full and fair opportunity to meet the charges.

Even at this early stage, it is evident that being forced to defend himself in a place far away from his lawyer, his family, and his friends will be enormously burdensome under the circumstances. Dr. Rudolph, a well-known and well-respected dentist, is turning 67 this week. He has no criminal history. He suffers from serious medical issues that put him at extreme risk (particularly with COVID running rampant). Dr. Rudolph's medical conditions—a severe heart problem that required heart surgery less than a year ago, a pacemaker implant, and 24-hour monitoring by an app on his phone that is connected to the Mayo Clinic—render him particularly vulnerable to contracting and succumbing to COVID.

The health risks, as well as financial and time burdens, to counsel and family and friends who might offer much needed support are also considerable and will severely hamper the defense, just as the government intended. To see Dr. Rudolph in person to review discovery and prepare for trial, counsel will need to travel (both risking exposure to COVID and needlessly wasting time and resources) and then visit Dr. Rudolph in the jail (which has numerous COVID outbreaks at present). In fact, jail staff advised counsel ***not*** to meet with Dr. Rudolph earlier this week because of the COVID outbreak. Dr. Rudolph is in a pod where we have been told he has been

exposed to COVID. *United States v. Clark*, 448 F. Supp. 3d 1152, 1155 (D. Kan. 2020) (emphasizing that "[m]ost courts addressing a motion for temporary release under §3142(*i*) have done so in the context of evaluating the necessity of the defendant assisting with preparing his or her defense … This extends to the current COVID-19 pandemic [because of] the pandemic's impact on counsel's difficulties communicating with the defendant.").

Under the circumstances, a temporary release to mitigate the unfair advantage the government is attempting to gain for itself at the expense of Dr. Rudolph's constitutional rights and health is both necessary and amply authorized. We propose that Dr. Rudolph be on 24-hour lockdown at his house in Phoenix under the supervision of a GPS monitor. He already has surrendered his passport. He will agree to have no contact with any potential witness in the case. His two children are willing to secure the bond with their homes. Dr. Rudolph would never put his two children at risk by fleeing. Dr. Rudolph should have the opportunity to prepare for this trial without subjecting himself and his lawyers to a fatal virus. "The right to consult with legal counsel about being released on bond, entering a plea, negotiating and accepting a plea agreement, going to trial, testifying at trial, locating trial witnesses, and other decisions confronting the detained suspect, whose innocence is presumed, is a right inextricably linked to the legitimacy of our criminal justice system." *Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 134 (2d Cir. 2020); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is

the norm, and detention prior to trial or without trial is the carefully limited exception.").

For the foregoing reasons, Larry Rudolph respectfully requests temporary release under 3142(*i*) so that he can prepare for trial.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By: /s/ David Oscar Markus
David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com