IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LAWRENCE RUDOLPH

    Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(i) [ECF No. 31]**

---

    The defendant requests to be temporarily released because he needs to be at his home in Phoenix to prepare his case. But the defendant's lawyers are two time zones away in Miami. The defendant's two adult children live in separate states, each of which is thousands of miles away. Because the defendant is charged with scheming to kill his wife in a remote area of a foreign country where he could escape rigorous scrutiny and maintain control of evidence, all of the eyewitnesses in this case are in the Eastern Hemisphere. The defendant's motion does not explain how or why trial here in Colorado would be any *more* difficult than trial in almost any other jurisdiction. Nor does he explain why he is uniquely prejudiced by a trial in Colorado that involves the Colorado victim identified in Count Two. To the extent he is making the additional argument that the pandemic and the measures imposed to address it require release, he fails to explain how or why his position is different from any other pretrial detainee in any jurisdiction. Finally, the defendant is conspicuously not appealing any of the magistrate judge's thorough findings that the defendant is both a flight risk and a danger to the community, nor the finding

1

that the COVID-19 risks here are neither extraordinary nor so compelling as to distinguish this defendant from other pretrial detainees. Granting temporary release — how "temporary" the defendant does not say — to a defendant facing a murder charge who has been found to be a flight risk and a danger to the community would undermine the purposes of the detention statute. The defendant's Motion for Temporary Release Pursuant to 18 U.S.C. § 3142(i), ECF No. 31 ("Def. Mot.") should be denied.

I. **The Defendant's Request for Home Confinement with a GPS Monitor for an Indefinite Duration is Not Permissible Under the Statute**

The defendant's motion invokes the authority of 18 U.S.C. § 3142(i) to ask for release to his home on "24-hour lockdown" and the supervision of a GPS monitor for an unstated period of time. Def. Mot. at 6. But the statute, by its plain terms, requires that any temporary release be "in the custody of a United States marshal" or another "appropriate person" and only to the extent "necessary" to prepare the defense or for the compelling reason.

The government cannot find legislative history specific to 18 U.S.C. § 3142(i), but its language brings to mind a situation where a defendant must be temporarily released so that he can go with his lawyer to visit a specific site to review evidence that is otherwise inaccessible, or for temporary life-saving medical treatment that cannot be obtained in custody. In one of those circumstances, it might be possible to release a defendant to the custody of a marshal or another "appropriate person" (a police officer or an agent) for a few hours. But, as this Court has recognized, the United States Marshals do not take detainees into overnight custody — they are not in a position to sit outside the defendant's home or otherwise serve as his custodian for an

unspecified, but potentially lengthy,[1] period of time. *United States v. Zamorano*, 19-cr-531-WJM, 2020 WL 2512839, at *6 (D. Colo. May 15, 2020).

Nor is it apparent why there would be substantially less likelihood that the defendant would be exposed to COVID-19 under his proposal — in which anyone can visit him without quarantine, masks, or other safeguards — than in a structured environment with rigorous protocols. *See United States v. Clark*, 448 F. Supp. 3d 1152, 1157 (D. Kan. 2020) (noting four factors that might be helpful to the court's consideration of COVID-19 concerns, including the extent to which the proposed plan actually limits COVID-19 risks); *id* at 1160 (rejecting proposed home confinement on grounds that there was no evidence it would have lower risks than detention). This is true especially for a defendant whose approach to the risks of COVID-19 has included frequent international travel during the pandemic, including recently to southern Africa. Det. Hearing Recording at 1:40:00.

The defendant does not say who might otherwise qualify as an "appropriate person," but this Court has likewise recognized that this phrase implies that the person is capable of preventing the risk of flight and the danger to the community. *Zamorano*, 19-cr-531-WJM, 2020 WL 2512839, at *6. Before his arrest, the defendant lived with his girlfriend in Arizona. Evidence presented at the detention hearing showed that this girlfriend had carried on a long-term affair with the defendant before the death of his wife. Far from being an "appropriate person" to prevent flight, she is perhaps the most likely person to flee with the defendant to avoid this case.

---

[1] At the discovery conference, the defendant asked for his discovery disclosure deadline to be *after* the speedy trial deadline in March, indicating at least some consideration of a motion to continue the matter.   ECF No. 30 at 10.

Even if the form of relief requested was available, the indefinite nature of the "temporary" relief is also not authorized by the statute. The defendant does not demonstrate why it is "necessary" to release him for an unspecified period as opposed to say, showing why he might be released for a short and discrete period of time necessary to meet a specific objective related to his defense. This, too, is an independent reason to deny his motion.

## II. The Defendant has Not Met his Burden to Show that He Uniquely Deserves Temporary Release Because of COVID-19

Section 3142(i) contemplates a situation where a judge has already determined that a defendant is a flight risk and a danger to the community. For this reason, it makes sense that the burden of showing why he should nevertheless be released into the community rests with him, and every case found by the government addressing the point has put the burden on the defendant. *See, e.g., United States v. Alderete*, 336 F.R.D. 240, 266 (D.N.M. 2020) (holding defendant to burden in 3142(i) matter and citing several cases); *United States v. Wilburn*, 2020 WL 1899146, at *2 (W.D. Pa. April 17, 2020) (citing cases and then noting that "generalized and speculative arguments are insufficient"). He cannot meet this burden. *Cf. United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. March 20, 2020) (refusing to temporarily release 60-year-old defendant with dementia and a history of stroke and heart attack who was accused of 30-year-old murders, despite few interactions with justice system since decades-old release from state custody).

In her ruling denying the defendant's motion for bond, the magistrate judge rejected the defendant's argument that he should not be detained because of the health risks associated with COVID-19 and that he should not be detained because of the difficulty of preparing a defense while detained. At least on the issue of COVID-19, the defendant offers no reason to reconsider the magistrate judge's thorough analysis of these issues during the detention hearing. Compare

4

Resp. in Opp. To Gov't Mot. for Pretrial Detention, ECF No. 19, at 6-12 (Def. Det. Resp.") (citing *Manrigue*, *Kennedy*, arguing that preparing for a murder trial is "virtually impossible" with a detained defendant, and referencing health conditions) to Def. Mot. at 2-3, 5 (citing same cases, same health conditions and making arguments regarding preparation of defense).

Even if the Court were inclined to reconsider the defendant's arguments *de novo*, it should still deny the motion. As to the health issues, the defendant has not offered his vaccination status. If he is vaccinated, this court and others have concluded that this is a substantial factor in assessing COVID risks. *United States v. Anderson*, No. 14-cr-130-WJM, 2021 WL 2650348, at 2 n.2 (D. Colo. June 28, 2021); *Cf. United States v. Hald*, 8 F 4th 932, 936 n.2 (August 6, 2021) (noting "room for doubt" that vaccinated defendants could meet burden of showing extraordinary and compelling circumstances, and citing *United States v. Baez-Vargas* — F. Supp. 3d —, 2021 WL1250349, at *3-4 (D. Ariz. April 5, 2021) for its collection of cases showing the growing consensus that COVID-19 vaccination weighs against such a finding)). If he is not, he may be offered a vaccine in custody and does not need to be temporarily released to obtain one. Furthermore, the defendant's stated health conditions have not deterred him from frequent international travel to places with lower vaccination rates and uncertain but probably alarming rates of infection in order to hunt dangerous game in remote areas with limited access to advanced medical care — behavior tending to show that his health is actually more robust than many pretrial detainees. Temporary release on health grounds is to be used "sparingly" to permit release when a defendant is suffering from a terminal illness or a serious injury. *Hamilton*, 2020 WL 1323036, at *2 (citing cases involving treatment for gunshot wounds, terminal AIDS, and medical treatment during earliest stages of pandemic); *Alderete*, 336 F.R.D. at 266-67. This is

not a case where the defendant needs "temporary" relief to obtain such care; unfortunately, the pandemic may not be quite so temporary.

If the defendant is arguing that the usual protocols in place at detention facilities in Colorado are so onerous that they require pretrial release, this ground for the motion should be denied for substantially the same reasons set forth by this Court in *United States v. De La Rosa-Calderon*, No. 20-cr-036-WJM, 2020 WL 4227477, at *5 (D. Colo. July 23, 2020) (noting failure to adequately allege that facility's alternative methods of communicating with counsel deprived defendant of right). Although counsel alleges being advised not to meet with the defendant once earlier this week, the government understands that the detention facility was ultimately able to make the defendant available for an in-person consultation. The defendant has not demonstrated that his pretrial detention facility creates more obstacles to preparing a defense than are imposed on every other pretrial detainee in every jurisdiction in the country.

If the defendant is arguing it is more difficult for these specific lawyers to visit him because their office is out of state, this would apply to any jurisdiction outside of Florida. Even if it is more difficult to access an out-of-state lawyer — which is doubtful, given phone and video conferencing technology — this alone should not be a basis for granting temporary release. Otherwise, defendants with retained counsel would be privileged over defendants with appointed counsel (and defendants able to retain counsel would have incentives to find the one farthest away and least accessible).

The cases cited by the defendant in support of temporary release to prepare his defense are easily distinguishable. Four of them — *Chandler*, *Stephens, Kennedy* and *Manrigue* — involved the earliest stages of the pandemic in March 2020 when anxiety about COVID was at its height and facilities were locked down so tight no defense attorneys could visit at all.

Moreover, the defendant omits the *Chandler* court's admonition that temporary release in that case "should not be construed as a determination . . . that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any specific case." *United States v. Chandler*, 2020 WL 1528120, at *2 (S.D.N.Y. March, 31, 2020). Circumstances now — where vaccines mean that vaccinated and otherwise healthy lawyers are unlikely to be exposed to a "fatal" virus, s*ee* Def. Mot. at 6 — are vastly different. *Cf. United Sates v. Weaver*, No. 11-cr-00146-PAB, 2021 WL 2290781, at *2 (D. Colo. June 3, 2021) (noting shift in risk calculus given widespread availability of vaccines). The other case, *Weigand*, involved a defendant who was determined to be a flight risk only; this case involves an alleged murder committed by an expert hunter who, according to evidence presented at the detention hearing, has previously threatened to hire others to kill those he believes stand in the way of his idiosyncratic objectives. *United States v. Weigand*, 492 F. Supp. 3d 317, 318 (S.D.N.Y. Oct. 5, 2020) ("There is no allegation that Weigand is a danger to the community."). The government can find no case where a court has used § 3142(i) to release a defendant found to be a danger to the community for an unspecified period of time.

**III.** **The Defendant Has Not Demonstrated How His Defense Would be Easier to Mount Elsewhere Nor Why Venue in Colorado is a Compelling Reason for Release**

The defendant cites no cases for the proposition that venue is a "compelling reason" to temporarily release someone found to be a danger to the community and a flight risk. Even if there was such a case (and the government is aware of none), he has also failed to show as a factual matter how or why his detention here in Colorado is more or less fair than any other jurisdiction in the United States. Finally, there is no basis for the rhetoric regarding government "gamesmanship," "schemes," "tactics," an intentional effort to gain an unfair advantage, or an intentional effort to deny someone constitutional rights.

### A. The defendant does not offer a legal or factual basis for temporarily releasing him simply because of the venue of the prosecution.

The Court can and should deny the motion for the simple reason that there is no precedent supporting it. The defendant does not cite a single case where a defendant — otherwise subject to detention as a flight risk or a danger — was released because of issues related to venue. Even if he wants to make the broader argument that the issue isn't necessarily venue, *per se*, but instead the way the government obtained venue he still has not cited a single case supporting release. The defendant says that he *will* detail his arguments in a "subsequent motion," Def. Mot. at 3, but at this point his motion simply asserts — without any detailed arguments or citations to law — that the government has done something illegal or unconstitutional.

If and when the defendant files a motion regarding venue or the constitutionality of his prosecution, the United States will respond to those claims. At the moment, the defendant's conclusory rhetoric about unfairness lacks the detailed legal or factual points necessary for a response. Obviously, any new arguments simply raised in a reply brief would be waived. *See United States v. Flores*, No. 19-cr-522-WJM, 2020 WL5365995, at 8 n.1 and 9 n.2 (D. Colo. Sept. 8, 2020 (refusing to analyze arguments raised for first time in a reply brief); *United States v. Penn*, No. 20-cr-152-PAB, 2021 WL 4521904, at *5 (D. Colo. Oct. 4, 2021) (concluding that defendant who failed to lay out standard for argument or cases in support could not try to save the argument in reply because arguments raised in a reply for the first time are waived).

The defendant's allegation that prosecution here "isolates" him, Def. Mot. at 2, or prevents him from getting "support" lacks any proffered foundation. As set forth above, if the allegation is that trial in Colorado "isolates" him from the "support" of counsel, then this is just a re-framing of the arguments about access to counsel that are addressed above and that the Court

has, generally, rejected in cases like *De La Rosa-Calderon*, No. 20-cr-036-WJM, 2020 WL 4227477, at *5. Again, by this standard, trial anywhere outside the Southern District of Florida would amount to an unfair advantage compelling temporary release. If the allegation relates to family, then the motion curiously omits the fact that the defendant has no known family in Arizona: his son lives in Florida and his daughter lives in Pennsylvania. If the allegation relates to friends, the defendant fails to identify them or explain why personal access is a compelling reason for release.

Nor has the defendant identified how venue has provided the government with an unfair advantage. Most of the witnesses are in Zambia. One of the seven insurers is here in Colorado but that hardly amounts to an "insuperable" advantage. True, agents and experts are here in Colorado but those same witness types would exist in any jurisdiction.

Any assessment of fairness should also include the victim in this case. The government has interviewed many of her friends and family, most of whom are in Pennsylvania or elsewhere on the East Coast. The government has also interviewed representatives with the insurance company victims, which had respective offices in Colorado, Michigan, Virginia, Illinois, Iowa, Rhode Island, and Nebraska. The defendant's motion hints that venue might perhaps be proper in Pennsylvania because the defendant resided there at one time. But the defendant also had a residence in Idaho and it is hard to see why trial in Pocatello is better or worse for either party than trial in Denver. And while the government could conceivably have brought the murder case in Pennsylvania, that would have completely eliminated access to justice for the insurance victims because Pennsylvania is one place where there is no venue for mail or wire fraud and thus no ability to seek criminal restitution for an offense that generated approximately $4.8 million in ill-gotten gains.

Venue would be proper for both the insurance fraud and the murder in Arizona. However, the defendant provides no reason why that venue would be more or less favorable than others: if the defendant were detained at a facility in Phoenix instead of a facility in Colorado the witnesses in this case would be just as far away, the defendant would still be several states removed from his lawyers and family and the defendant would still be subject to COVID protocols.

> **B.** **It is the defendant's decision to target a Colorado victim for one of his charged crimes that subjected him to venue here.**

It is not accurate for the defendant to assert that (a) an agent testified that he wanted to "gain an unfair tactical advantage in pretrial preparation," (b) the prosecution "manufactured venue" in Colorado, or (c) the government "deliberately set out to gain an unfair advantage by isolating Dr. Rudolph[.]" *Id.* at 2, 3, 4.

The defendant subjected himself to possible prosecution in Colorado when he asked a Colorado life insurer to pay him money on the false pretense that his wife's death was an accident, just as he subjected himself to possible prosecution in the six other states where life insurers were located. There is nothing particularly unique or novel about the fact that venue for a fraud or a conspiracy can potentially lie in dozens of states (or, if mailings and wires are nationwide, to any state in the country). Put another way, it would be a bit melodramatic for, say, a defendant in the Southern District of New York, to claim that the government "ruthlessly" and "deliberately" "manipulates" venue when it decides to bring a case in that jurisdiction against out-of-state (or country) defendants based on financial information that happens to be wired through computers in Manhattan. *See, e.g., United States v. Allen*, 160 F. Supp. 3d 698, 704 (S.D.N.Y. 2016) (featuring prosecution and conviction of London bankers based on information about LIBOR passed through New York). Likewise for a defendant who finds himself in the

Eastern District of Virginia because a securities filing is passed through the EDGAR server in Alexandria, *See United States v. Johnson*, 510 F.3d 521 (4th Cir. 2007) (discussing in detail why Nevada defendant could be prosecuted in E.D. Va. for securities fraud); or for an unlucky low-level drug dealer who finds himself transported several states away because his co-conspirators engaged in overt acts there. None of this is "ruthless" or part of a tactic to deprive people of their rights. It is how the criminal venue statutes are applied in practice to complex federal offenses that inevitably cross multiple jurisdictions.

IV. **Whether this Motion Should be Referred to the Original Magistrate Judge is an Open Question of Law but the Government Has No Objection to this Court's Consideration**

The government brings to the Court's consideration that at least one other court has questioned whether motions under 18 U.S.C. § 3142(i) must be heard by the same magistrate judge. *Alderete*, 336 F.R.D. at 266-267. That court reasoned from statements in a Tenth Circuit opinion that detention hearings that are "reopened" should be heard by the "same judicial officer who entered the initial order." *Id.* at 266 (citing *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). The government does not read *Cisneros* the same way. That is, the government does not believe that Tenth Circuit precedent prevents this Court — the Article III authority that must ultimately rule on the issue of detention — from considering the defendant's motion. Nevertheless, the government advises the Court of the legal issue and states in advance that it has no objection to the Court's exercise of discretion to hear this case, or to refer it, as it deems appropriate.

V. **Conclusion**

The United States magistrate judge presiding over the detention hearing found that the defendant is a flight risk and a danger after a three-and-a-half hour hearing that involved

11

extensive testimony, exhibits, and detailed arguments from counsel. The defendant is asking the Court to ignore those findings and release the defendant for an unspecified period of time based on conclusory and undeveloped assertions and allegations and without any legal basis to grant him the specific relief he requests. The Court should deny the defendant's motion.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: */s Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: *E. Garreth Winstead*
E. Garreth Winstead
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Garreth.Winstead@usdoj.gov
Attorney for the Government

By: *J. Bishop Grewell*
J. Bishop Grewell
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bishop.Grewell @usdoj.gov
Attorney for the Government

## **CERTIFICATE OF SERVICE**

      I hereby certify that on 10th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

                                *s/ Bryan Fields*
                                United States Attorney's Office