IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-CR-00012-WJM

UNITED STATES OF AMERICA

vs.

LAWRENCE RUDOLPH
_____/

**AFFIDAVIT OF DAVID OSCAR MARKUS**

Pursuant to 28 U.S.C. 1746, I, David Oscar Markus, declare under penalty of perjury:

1. I am a criminal defense lawyer and have been practicing since 1997. My practice is focused on federal criminal cases in jurisdictions around the country.

2. COVID-19 has presented extreme challenges for defendants and their lawyers in preparing for trial. These challenges are heightened for defendants who are detained.

3. I am lead trial counsel for Lawrence Rudolph. Dr. Rudolph is charged with murdering his wife over five years ago on a hunting trip in Zambia. The Zambian authorities ruled Mrs. Rudolph's death accidental. Dr. Rudolph is also charged with mail fraud for making a claim to the life insurance proceeds. The life insurance companies also investigated and paid the claims.

4. Dr. Rudolph has been detained since his arrest on December 22, 2021, and is imprisoned at the Downtown Detention Center, where COVID is reportedly running rampant.

5. The prosecution agreed to call him over to the courthouse on Monday, January 3, 2022, before the detention hearing so that we could meet with him in a safe place.

6. However, the U.S. Marshals refused to move him because they were concerned with the COVID outbreak and would move him only for an actual court appearance.

7. My law partner, Margot Moss, and I, therefore, went to visit him at the Downtown Detention Center. We were told that he is in a "COVID pod" where many inmates either have COVID or have been exposed to COVID.

8. The corrections officers suggested that we meet with him over video conferencing instead of personally so that we would not be exposed.

9. We were told that Dr. Rudolph tested negative a few days before the meeting; however, when we met with him, he was sick with a persistent cough. He has not recovered from that cough and is still sick. In addition, the prison continues to change his cell-mate, so he has the potential to be repeatedly exposed to COVID and to expose his attorneys when they visit, seriously threatening the ability of client and counsel alike to prepare for trial.

10. Because Dr. Rudolph is in a COVID-pod, he was not able to see us in a regular attorney room and instead we were brought into the pod and into a closed room in that pod. There was little if any air circulation in that closed room. Dr. Rudolph had a cloth mask, not a KN95 mask. The cloth mask did not fit him well and did not stay over his nose and mouth.

11. We have tried to set up meetings with him over the phone and video-conference. When we speak to him over the phone, we have been cautioned that the calls are recorded and we must consent to the recording before we can continue with the call. The calls also involve fees for initiating the call and for each subsequent minute.

12. We also have tried video calls, which we have been told are not recorded. However, the video calls are limited to 30 minutes and for most of the 30 minutes, the sound does not work. It goes in and out and often has loud outside noises making it impossible to hear or to speak. Many times, the audio entirely fails. Even when the audio works, there is a great deal of feedback or interference, forcing us to have to yell to be heard. These video calls also involve fees (over $9 per call).

13. While Dr. Rudolph is on the video call, he is not in a private room. Instead, there are officers and inmates close by who can overhear the conversation, particularly since we all must raise our voices to be heard.

14. These video conferences are not like the Zoom calls that we have been accustomed to over the pandemic. In addition to the persistent sound issues, you cannot share documents or other evidence, which makes conferring far more time-consuming and far less accurate and effective.

15. This case involves voluminous discovery (the government has to date produced approximately 6,000 pages of discovery, lengthy audio files, and pictures). It is impossible to share the discovery over the Securus video-conferencing and repeated travel to a jurisdiction chosen by the prosecution for its inconvenience to the defense to meet personally with an unwell client in a facility where COVID is running rampant will make effective trial preparation impossible.

I declare under penalty of perjury that the foregoing is true and correct.

_____
David Oscar Markus                                                                                      January 10, 2022