IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. LORI MILLIRON,

    Defendants.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COUNT ONE FOR LACK OF VENUE [ECF No. 77]**

---

    Lawrence Rudolph murdered his wife in Zambia and then lied about it in a mailing to an insurance company in Colorado. He chose the place of both acts and the government chose to arrest and bring him to justice in Colorado. But he now contends that this court lacks venue over the foreign murder charge. This court should reject his novel understanding of the venue provision and deny his Motion to Dismiss Count 1 for Lack of Venue and Request for Hearing. ECF No 77 ("Def. Mot.").

    The parties agree that 18 U.S.C. § 3238 governs the dispute. But they disagree how that statutory provision should be interpreted.

    The plain text of the statute and every circuit court to address the issue agree with the government that venue is appropriate in the district where the defendant is (1) either arrested or first brought (2) *in connection with the charged offense*. There is no dispute that Colorado is the only district where Rudolph has been arrested or brought in connection with the murder of his

1

wife. And no court has adopted Rudolph's novel view that he determined venue of his own accord by virtue of choosing where he first set foot on U.S. soil after committing the murder.

## FACTUAL BACKGROUND

A warrant for Rudolph's arrest issued on December 16, 2021 after a finding of probable cause that he committed mail fraud in Colorado by sending a document to a life insurance company seeking a claim on the false pretense that his wife died in an accident. After the warrant was signed, the defendant flew to Mexico. When the United States informed Mexican authorities of the warrant, those authorities deported Rudolph on a plane to Denver. Before his plane had landed, another warrant issued for Rudolph's arrest based on probable cause charging him with his wife's murder. He was arrested on that warrant the same day at Denver International Airport.

## ARGUMENT

Rudolph argues that count one—charging him with the murder of his wife in Zambia—should be dismissed for lack of proper venue. The parties agree that 18 U.S.C. § 3238 governs their venue dispute. The only dispute is one of statutory interpretation.

**I.     The plain text of § 3238 sets venue in the district (a) where a defendant is first arrested in the United States for his foreign offense or (b) where he is first brought after being apprehended outside the United States for that offense.**

The proper venue for a foreign murder prosecution is determined by 18 U.S.C. § 3238. The relevant statutory text reads:

> The trial of all offenses begun or committed . . . out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought . . . .[1]

---

[1] The full text of 18 U.S.C. § 3238 reads:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such

2

Every court of appeals to address the question has held that the arrest or bringing of an offender must be "in connection with the offense charged."[2] That reading follows from the structure of the provision's first sentence. Statutory construction is a "holistic endeavor," where "context is important in the quest for [a] word's meaning." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 79 (1991) (alteration in original) (quotation and citation omitted). And an important contextual clue is the rule that words are known by the company they keep. *Yates v. United States*, 574 U.S. 528, 543 (2015); *see also Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 727 F.3d 1246, 1258 (10th Cir. 2013) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

Arrested and first brought "cannot be construed in a vacuum" that ignores the words around them. *See Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks & citation omitted). They must be construed in context of § 3238's preceding text. The subject of the sentence in which they appear is "[t]he trial of all offenses begun or committed." That creates a nexus between the offenses and the reason for the arrest or bringing of the offender, so that the relevant query is where the offender is arrested or first brought *for those offenses* on which he is

---

offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

[2] *United States v. Ghanem*, 993 F.3d 1113, 1121–22 (9th Cir. 2021); *United States v. Slatten,* 865 F.3d 767, 786 (D.C. Cir. 2017); *United States v. Wharton*, 320 F.3d 526, 536–37 (5th Cir. 2003); *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984); *United States v. Erdos*, 474 F.2d 157, 160 (4th Cir. 1973); see also *United States v. Holmes*, 670 F.3d 586, 595 (4th Cir. 2012) (venue "determined based on the static location of where a defendant is determined to be 'first arrested or brought' with respect to the offense"); *accord United States v. Ivencio-Belique-Emilia,* 65 F. App'x 788, 789 (3d Cir. 2003) (unpublished) (first brought applies when defendant has been arrested outside the United States); *Chandler v. United States*, 171 F.2d 921, 933 (1st Cir. 1948) (first brought is where first landed after taken into custody).

to be tried. Without that nexus, venue could be fixed by the arrest of a defendant for a completely unrelated offense any time after committing the earlier offense. That reading of the statute makes no sense. *Catino*, 735 F.2d at 721, 724 (rejecting argument that 1981 arrest for narcotics trafficking charges set venue for 1983 indictment on unrelated passport charges that had occurred before that 1981 arrest). "It is therefore appropriate for [the venue] determination to be made according to where the offender is 'arrested or first brought' the first time for the charged offenses." *Holmes*, 670 F.3d at 595.

The statutory context also makes plain that first brought means first brought under restraint or submission to an assertion of authority. Again, words are known by the company they keep. The statute here treats first brought and arrested as traveling companions. *United States v. Williams*, 553 U.S. 285, 294 (2008) (the "commonsense canon of noscitur a sociis . . . counsels that a word is given more precise content by the neighboring words with which it is associated."). When a statute uses a common-law term of established meaning, that common-law meaning should be used unless Congress instructs otherwise. *United States v. Mobley*, 971 F.3d 1187, 1199 (10th Cir. 2020) (quotation and citation omitted). The rich common law heritage of the term "arrest" defines it as the application of physical force to restrain someone's movement or submission to an assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 625–27 (1991); *see also* Black's Law Dictionary 124 (9th ed. 2009).

Because arrested and first brought travel together, every circuit to address their meaning has held that first brought means first brought while in custody for the charged offense.[3] "First

---

[3] *Ghanem,* 993 F.3d at 1122 (first brought applies when the defendant "is returned to the United States already in custody,"); *Catino*, 735 F.2d at 724 (first brought "applies only in situations where the offender is returned to the United States already in custody"); *Erdos*, 474 F.2d at 161 ("'First brought' within the context of the statute means first brought *in custody* with liberty restrained."); *Holmes*, 670 F.3d at 595 (same) (quoting *Erdos*, 474 F.2d at 160–61; *Ivencio-*

4

brought" does not stand in isolation, but rather alongside the words "trial," "offenses," "offender," "jurisdiction," and "arrested." The natural connotation is that first brought entails the exercise of custody in connection with the offenses for which an offender is being brought to stand trial. Rudolph's reasoning would unmoor "first brought" from these reference points.

Rudolph argues that interpreting both first brought and arrest to entail custody violates the surplusage canon, where courts give effect to every word and phrase in a statute. Def. Mot. at 16–17. But while first brought and arrest both invoke custody, they address different jurisdictional situations regarding that custody that gives each term independent work to do. Neither is surplusage.

The arrest language sets venue for the defendant when he is first arrested inside the United States, while the first brought language sets venue when the defendant is first apprehended outside the United States. *Ghanem*, 993 F.3d at 1122 (first brought applies when the defendant "is returned to the United States already in custody," while arrested applies when defendant "is already *inside* a district when first restrained of liberty in connection with the offense"). The first brought language answers what happens when someone is first taken into custody *outside* of any district—a frequent occurrence for a statute addressing offenses "committed . . . out of the jurisdiction of any particular State or district."

The case law has long recognized this locational difference between the two alternatives:

> The difference between 'brought' and 'found' is the difference between presence [in the United States] by involuntary and voluntary act. By 'brought' is meant taken, or carried. An illustration of this is where the violator of law upon the high seas is, following the crime, taken into custody upon the ship and then brought into port. On the other hand, where the defendant, not

---

*Belique-Emilia,* 65 F. App'x at 789–90 (3d Cir. 2003) (unpublished) ("[A]n offender who is 'first brought' into a district must have been arrested somewhere other than in the United States."); *Chandler*, 171 F.2d at 933 (first brought is where first landed in custody).

5

> having been taken into custody, is, after reaching port, arrested or apprehended under lawful authority for trial for the offense, he is deemed to be found wherever such arrest occurs.

*United States v. Townsend*, 219 F. 761, 762 (S.D.N.Y. 1915) (venue only in Eastern District of New York where defendant was first arrested); *Kerr v. Shine*, 136 F. 61, 65 (9th Cir. 1905) ("[T]he offender is to be tried in the district where he is apprehended; but, if he be taken into custody where no court has jurisdiction, he shall be tried in the district into which he is first brought.").

Chief Justice John Marshall even recognized the locational difference between two forms of custody (arrested and first brought) when he interpreted the original venue provision in 1807. *Ex Parte Bollman*, 4 Cranch 75 (8 U.S. 75), 136 (1807). That original statute read, "the trial of 'crimes committed' 'in any place out of the jurisdiction of any particular state shall be in the district where the offender is apprehended, or into which he may first be brought.'"[4]  *Id.* at 109. Two men were brought to Washington, D.C., after their seizure for treason by a military officer in the territory of Orleans.[5]  *Id.* at 76 n.2, 110–11. The men argued that Washington, D.C. was "not the district in which they were first apprehended or brought," because they had been seized in Orleans and not first brought to D.C.[6]  *Id.* at 111; *see also id.* at 109 (citing statute). The prosecution argued that apprehended meant "*legally* apprehended, that is, arrested by process of law," not by "mere military seizure." *Id.* at 116–117 (emphasis in original).

---

[4] Before the 1963 amendment to the venue statute, the term "found" was used in place of "arrested" and before that the term used was "apprehended." *Erdos*, 474 F.2d at 160. "Found" meant "arrested." *Catino*, 735 F.2d at 724 n.6 (citation omitted).

[5] The Territory of Orleans was admitted into the Union in 1812 as the State of Louisiana. Act for the Admission of the State of Louisiana into the Union, and to Extend the Laws of the United States to Said State, 2 Stat. 701 (1812).

[6] Francis Scott Key, who wrote the country's national anthem, served as co-counsel.

In rejecting the government's requirement of a formal arrest, Chief Justice Marshall defined apprehended as simply whether the defendants had been taken into custody. *Id.* ("dangerous" to require apprehension by magistrate, as opposed to military). He then differentiated apprehended and brought based on whether or not custody first occurred where there was a U.S. court with jurisdiction, i.e. whether apprehension occurred in a district:

> The law read on the part of the prosecution is understood to apply only to offences committed on the high seas, or in any river, haven, bason or bay, not within the jurisdiction of any particular state. In those cases there is no court which has particular cognizance of the crime, and therefore the place in which the criminal shall be apprehended, or, *if he be apprehended where no court has exclusive jurisdiction, that to which he shall be first brought*, is substituted for the place in which the offence was committed.

*Id.* at 75. (emphasis added).

Rudolph argues for a colloquial meaning of brought that simply means arrived. But that definition ignores the venue statute's structure, the nexus between the reason for the bringing and the offense, and the custodial nature of first brought's traveling companion (arrested). His colloquial meaning also elides brought's implication that a third party does the bringing. If Congress wished to select the first place an offender arrived after finishing the crime regardless of whether he was custodially brought by others, it could have used the word arrive.

As already discussed, the circuit decisions uniformly read a custodial component into brought that precludes a defendant freely bringing himself. Older decisions did the same:

> It is not reasonable to suppose that Congress would have used the word 'brought' in the various statutes above mentioned if its intention had been to grant jurisdiction of such offenses to the court of the first district into which, after the commission of the offense, the offender might arrive. He might arrive otherwise than upon the ship upon which he was at the time of the commission of the offense. He might arrive by other conveyance- sailed by himself. In such a case it could not be said that he was 'brought.'

*Kerr v. Shine*, 136 F. 61, 65 (9th Cir. 1905); *see also Townsend*, 219 F. at 762 ("In the present case the defendant was not brought into this district, *nor, indeed, into any district*, for, as we have seen, he himself brought his vessel to Brooklyn.") (emphasis added).

The cases offered by Rudolph don't help him. In *United States v. Baker*, Justice Nelson based his opinion on the distinction between a formal arrest and otherwise being taken into custody. In his view, the prisoners weren't apprehended (even though they were captured prisoners) until after they were "arrested by the civil authorities" "under lawful authority for the trial of the offence." 24 F. Cas. 962, 964 (C.C.S.D.N.Y. 1861). Although this is the view Chief Justice Marshall rejected in *Ex parte Bollman*, it likewise places venue in Colorado, as that is where Rudolph was formally arrested. Similarly, if apprehension and first brought are both options as Justice Story said in *United States v. Thompson*, 28 F. Cas. 102, 103 (C.C.D. Mass. 1832), then venue is appropriate in Colorado as the place of first apprehension in a district.

Rudolph tries to get around the arrest-in-Colorado problem by pointing to *Provoo* which, like *Ex parte Bollman*, looked beyond the formalities of formal arrest to see when a person had actually been taken into custody. He says that means he was arrested in Mexico. But Rudolph can't have it both ways. If arrest was in Mexico under *Provoo*, then Rudolph was first brought to Colorado. That's because *Provoo* is not some exception to a non-existent general rule that formal arrest controls over factual custody except when a defendant calls out forum-shopping shenanigans. Def. Mot. at 8–9. Rather, *Provoo* follows the actual general rule that the relevant question is always custody for the charge in the indictment:[7]

> We are concerned only with the term 'found,' since Provoo was not
> under restraint when he returned from Japan in 1946, and, therefore,
> was not 'brought' into the district where the ship landed him. At the

---

[7] *Provoo* doesn't cite *Thompson* or *Baker*. It relies on the government's cases: *Kerr*, *Townsend*, and Chief Justice Marshall in *Ex parte Bollman*. 215 F.2d at 537–39.

> trial Judge Noonan correctly charged the jury that the words 'district where the offender is found' as used in the statute mean the district 'in which the defendant is first apprehended or arrested or taken into custody, under charges later found in the indictment' . . . .

215 F.2d at 537 (citations omitted). If *Baker* and *Thompson* control, Rudolph's factual arrest in Denver created venue here. But if factual custody is the trigger, per *Provoo*, Colorado is either where Rudolph was first brought or where he was first arrested.

**II.   Because Rudolph was either first apprehended for the murder of his wife in Mexico and then brought to Colorado or first apprehended for that murder when his plane touched down here, § 3238 places venue only in Colorado.**

Because there is not a factual dispute on Rudolph's motion, no evidentiary hearing is required. *See, e.g.*, *United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (hearing is not required when there are no contested issues of fact and the motion can be decided for a reason of law). Rudolph admits that he was in Mexico when he was detained by the Mexican immigration authorities, he admits that he flew from Mexico to Denver, and he admits that he submitted to the FBI pursuant to the authority of the arrest warrant when he arrived that same day at Denver International Airport. No one brought Rudolph to the United States in connection with the foreign murder until he was brought to Colorado from Mexico. And he was not arrested in any district in connection with that offense until his arrest here.

His flight to Atlanta right after he murdered his wife is irrelevant because no authorities brought him to Atlanta under restraint in connection with the murder. The only way venue is appropriate in Rudolph's chosen district—the Northern District of Georgia—is if the reason he is brought to the United States does not have to be connected to his offense. And even if true, the case law that he cites indicates that venue would then still exist in both Colorado and Georgia, because Colorado is the district where he was arrested.

### III.     Section 3238 is not concerned with forum-shopping.

None of the cases cited by Rudolph support the notion that § 3238 seeks to avoid forum-shopping. It is true that when a crime occurs in a specific district, "trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *Holmes*, 670 F.3d at 595. Those concerns about local venue for domestic offenses have constitutional roots. *United States v. Miller*, 111 F.3d 747, 749 (10th Cir. 1997). It is circumvention of that right to trial in the state where a crime occurs that creates the forum-shopping concerns identified in *United States v. Johnson*, 323 U.S. 273, 275–76 (1944) and *Miller*. But when the offense occurs outside the United States, the concerns are "slightly different." *Holmes*, 670 F.3d at 595. The focus is still geared towards fixing a "static location" for trial. *Id.* But there aren't the same constitutional concerns toward directing that to a forum with ties to the crime. That's because no forum has ties to the crime.

That the Constitution left venue over extraterritorial offenses to Congress shows that the Founders weren't worried about a particular venue location for overseas crimes, only worried that someplace—anyplace—have venue over piracy and other crimes on the high seas. *See* U.S. Const. Art. I, § 8, cl. 10; *see also* Joseph Story, Commentaries on the Constitution (2), § 1159 ("a pirate being deemed an enemy of the human race"). As the Federalist Papers recognized, these crimes invoked national, rather than local state, concerns:

> The most bigoted idolizers of State authority have not thus far shown a disposition to deny the national judiciary the cognizances of maritime causes. These so generally depend on the laws of nations, and so commonly affect the rights of foreigners, that they fall within the considerations which are relative to the public peace.

Federalist No. 80 (Alexander Hamilton) (discussing cases which originate on the high seas).

Justice Story recognized in *Thompson* that it didn't matter where venue was located for extraterritorial offenses, beyond the general convenience of identifying some forum. "Now, there is no peculiar propriety, as to crimes committed on the high seas, in assigning one district rather than another for the place of trial, except what arises from general convenience; and the present alternative provision is well adapted to this purpose." 28 F. Cas. at 103. He expressed the same view in his commentaries. Commentaries on the Constitution (2), § 1781 (contrasting local interest in domestic crimes with congressional intervention for crimes on the high seas).

*Provoo* likewise rejected the argument that § 3238 is concerned with forum-shopping *so long as* the government is following the statutory language: "the purpose of the venue statute is not to fix the place of arrest but simply to have the place of trial conform to the place of arrest." 215 F.2d at 538. The government could "handpick its forum" under the "first brought" provision. *Id.* at 539 ("we realize that the Government can do just that under the 'first brought' provision"). The only forum-shopping that was impermissible in *Provoo* was forum-shopping that ignored the statutory text. *Id.* ("The courts must take the statute as they find it and should not whittle away the 'found' provision by a construction based on formalism rather than substance."). So while the government could choose when (and therefore where) to arrest someone—"the purpose of the venue statute is not to fix the place of arrest"—it couldn't pretend that it hadn't arrested someone through formalities about what qualified as an arrest. The government cannot "take him into custody in a district where a Federal court exists with jurisdiction to try the alleged offense for which he is held in custody and then transport him to another district for trial there." *Id.* at 539.

Indeed, if there is a purpose to § 3238 beyond simply identifying some forum, any forum, for an offense in the absence of a forum directly tied to the crime, it is efficiency. Congress specifically blessed efficiency as a rationale for the extraterritorial venue rule when it updated

11

the statute in 1963 to permit joint trials in cases involving multiple defendants. S. Rep. No. 88-146 (1963), reprinted in 1963 U.S.C.C.A.N. 660, 660 (change was designed to alleviate burdens on Department of Justice related to trial administration). And efficiency is certainly served by Colorado as the forum. Rudolph does not—cannot—dispute that venue is appropriate for his fraud offense where he mailed a document falsely telling an insurance company his wife died by accident. Because a trial on the underlying murder is necessary to prove that fraud count here in Colorado, the most efficient place to hold both trials is here. Joining the murder count with the fraud count makes sense for the same efficiency reason that Congress added the 1963 amendment allowing a trial for all offenders in any district where one offender had been found or arrested. The defendant does not explain or offer why having *two* trials in districts separated by thousands of miles somehow remedies any unfairness or is otherwise in the interests of justice.

Nor is Rudolph's proposed first arrival rule simpler than the first brought rule. Crimes are not always discovered immediately. The exact dates of a criminal act can be unknown. When an exact date cannot be pinpointed, it could be impossible to ascertain the correct venue based on first arrival after the crime's commission, especially where multiple foreign trips have occurred in the same criminal window. And if multiple offenses occurred at different times, the relevant arrivals could vary widely in contrast to a solitary arrest for them all.

The venue for a foreign offense is far more readily identifiable when the inquiry is one of custody for the charged offense.

**IV.     No court has ever dismissed a count due to alleged venue manipulation.**

Courts have consistently rejected doctrines of supposed "venue manipulation" or "venue entrapment." For example, in *United States v. Valenzuela*, 849 F.3d 477, 488 (1st Cir. 2017), the defendant argued that the government manipulated venue by having an undercover agent drive

12

him to New Hampshire for a meeting. The First Circuit rejected that this was somehow offensive, in agreement with the D.C. Circuit, Fourth Circuit, and Seventh Circuit. *Id.* at 488. It noted that even in circuits where the idea of venue manipulation was not rejected out of hand, courts would entertain the claim only in extreme situations. *Id.* at 488 n.5. It is hardly extreme or outrageous to arrange for bringing Rudolph to Colorado to face a murder charge that underlies a fraud charge on which his actions have already established proper venue.

Indeed, the D.C. Circuit rejected the precise complaint that Rudolph makes here—that prosecutors manipulated venue in a case involving the exercise of extraterritorial jurisdiction over conduct abroad. *Slatten*, 865 F.3d at 788. The *Slatten* defendants were Blackwater security contractors accused of murder in Iraq. The government entered a plea agreement with one of the defendants, who lived in California, and arranged for him to be arrested in Washington. The government then indicted the co-defendants in that same district, relying on § 3238's "joint offender" provision to fix venue there. The defendants accused the government of manufacturing venue. Although the D.C. Circuit agreed that venue had been deliberately chosen by the government, it concluded that this was precisely what the statute allowed: by choosing to arrest a joint offender in one district, "the government simply exercised the choice given to it under the statute." *Id.*

V.  **The Indictment is Properly Pled.**

Rudolph argues that the indictment does not sufficiently allege venue. Def. Mot. at 21. He is mistaken. First, an indictment doesn't always have to plead venue. *Carbo v. United States*, 314 F.2d 718, 733 (9th Cir. 1963) ("Defendants have the right to be tried in the proper forum, not the right to be charged with the proper venue."). While the Tenth Circuit has said that "an indictment failing to allege venue is demurrable," that was in the context of a case, unlike here,

where the indictment failed to preserve the defendant's double jeopardy rights by alleging the location of the crime. *Bratton v. United States*, 73 F.2d 795, 798 (10th Cir. 1934).[8]

An indictment must: (1) contain "the essential elements" of the offense intended to be charged, (2) sufficiently apprise the accused of what he must be prepared to defend against, and (3) enable him to plead a judgment under the indictment as a double jeopardy bar. *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991).

"Rule 7(c) does not require venue to be pleaded," *Carbo*, 314 F.2d at 733, given that venue "is not an essential fact constituting the offense charged." The Tenth Circuit has also recognized that venue is not like other substantive elements: "Venue is, of course, unlike the substantive facts which bear on guilt or innocence in the case. Venue is wholly neutral; it is a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused." *Wilkett v. United States*, 655 F.2d 1007, 1011–12 (10th Cir. 1981). For that reason, venue does not implicate the double jeopardy bar. *Id.* Because venue is (1) an element, but not "essential" to the offense charged, (2) does not have a significant effect on what the accused must be prepared to defend against (it doesn't implicate guilt), and (3) doesn't directly affect double jeopardy—it doesn't always have to be pleaded in an indictment.

To be sure, the government must plead facts establishing venue in most cases, because venue is typically based solely on where the offense took place. *See* U.S. Const. Art. III, § 3, cl. 2; 18 U.S.C. § 3237. And the location is regularly needed for double jeopardy and notice. But the foreign location, approximate date, and victim here satisfy those notice and jeopardy requirements. Superseding Indictment, ECF No. 53 (count one alleging murder of Bianca

---

[8] Nor is this case like *Johnson*, 323 U.S. 273, or *United States v. Jackson*, 482 F.2d 1167, 1179 (10th Cir. 1973), where venue was improper on the indictment's face. Where venue is pleaded in the indictment and plainly improper from that pleading, dismissal is appropriate when raised.

Rudolph in October 2016 "outside the United States but within the jurisdiction of another country"). The additional procedural fact of where the defendant was arrested or first brought doesn't affect either of those indictment requirements and is not needed.

Indeed, those extra procedural facts often *can't be known* at the time of charging. Because the custodial arrest or bringing in connection with the offense cannot occur until charges warrant the defendant's custody, those procedural facts will never be known at the time of the initial charge. It was sufficient here to identify that the offense took place outside the United States. *United States v. Feng Tao*, 499 F. Supp. 3d 940, 963 (D. Kan. 2020) (indictment alleging offense occurred outside the United States was sufficient to invoke 18 U.S.C. § 3238); Indictment, *United States v. Feng Tao*, 2020 WL 5249440 (D. Kan. June 24, 2020) (mentioning neither arrest nor first brought).

But if those extra facts were needed, in the rare case where parties agree on facts outside the indictment, those facts can be read into it. *Feng Tao,* 499 F. Supp. 3d at 950. And while Rudolph disagrees as a legal matter whether he was arrested or first brought in Colorado, he factually agrees that he was first detained in Mexico and then flown to Colorado. Def. Mot. at 19 ("[O]n behalf of the U.S. government, Mexican authorities arrested Dr. Rudolph in Mexico before he was indicted for any crime. He was held overnight in a Mexican jail and shipped to Denver against his will.")

The government has not "brazenly" defied the venue statute as Rudolph claims. Def. Mot. at 1; *id.* at 2 ("defiance of the statutory limits on venue"); *id.* at 5 ("the latest flagrant escalation in a long line of prosecutorial schemes to subvert the venue statute"). It followed the statute. Its "legalistic reason" (*Id.* at 19) for Colorado as the proper venue is the statute's text and every circuit case to address the issue.

15

## CONCLUSION

Rudolph's Motion to Dismiss Count 1 for Lack of Venue and Request For Hearing should be denied.

Respectfully submitted,

COLE FINEGAN
United States Attorney

| | | |
|---|---|---|
| By: /s Bryan Fields | By: /s E. Garreth Winstead | By: /s J. Bishop Grewell |
| Bryan Fields | E. Garreth Winstead | J. Bishop Grewell |
| Assistant United States Attorney | Assistant United States Attorney | Assistant United States Attorney |
| U.S. Attorney's Office | U.S. Attorney's Office | U.S. Attorney's Office |
| 1801 California St. Suite 1600 | 1801 California St. Suite 1600 | 1801 California St. Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 | Denver, CO 80202 |
| (303) 454-0100 | (303) 454-0100 | (303) 454-0100 |
| Bryan.Fields3@usdoj.gov | Garreth.Winstead@usdoj.gov | Bishop.Grewell@usdoj.gov |
| Attorney for the Government | Attorney for the Government | Attorney for the Government |

## **CERTIFICATE OF SERVICE**

   I hereby certify that on 15th day of March, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

                 *s/ Bryan Fields*
                 United States Attorney's Office