IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA

v.

1. **LAWRENCE RUDOLPH**
2. LORI MILLIRON

_____/

**REPLY TO RESPONSE TO DISMISS COUNT 1 FOR LACK OF VENUE**

No case holds that a person accused of a foreign crime, who could easily have been arrested in his home district, can be tried in the government's handpicked forum because, years after the alleged offense, agents let him leave the country so he could be forcibly moved to a distant district and only then "formally" arrested. The venue statute plainly bars such forum shopping. While oral argument would clarify why, under these unprecedented circumstances, venue over Count 1 lays only in Georgia, no evidentiary hearing is necessary because the pertinent facts are undisputed.

**Undisputed Facts**

• After his wife died, Dr. Rudolph was first brought to the United States from South Africa by a commercial airliner that landed in Atlanta, Georgia. DE77:20; DE90:15.

• The government had every opportunity to arrest Dr. Rudolph in Arizona, where he lived. Had it done so, venue would exist there for Counts 1 and 2. Instead, the prosecution schemed to move him to Colorado to create venue there solely for the prosecution's convenience and advantage. DE37:119–20. The government initially planned to arrest Dr. Rudolph for fraud-predicated-on-murder in Arizona, take him to Colorado, and claim to arrest him there for murder. DE77:2; DE90:15. But, when Dr. Rudolph left Arizona for a short vacation, the government deliberately *let him go* and had Mexican authorities arrest him and send him to Colorado. The government admits that it arranged that he be "first detained in Mexico and then flown to Colorado." DE90:15.

### Undisputed Points of Law

• The Court must apply the unambiguous, plain text of the statute. DE77:14–16; DE90:2–4.

• The reading of the statute the government urges would give it the broadest possible scope, allowing the prosecution to choose *any* district in the country to charge Count 1. DE77:5; DE90:10.

### Principal Points of Law in Dispute

• Dr. Rudolph and the government both claim to interpret the statute according to its plain text. DE77:6–16; DE90:2–4. ***No court*** has ever held that the government's reading is true to the statute's plain text. Rather, the Fourth Circuit—in a decision followed by the government's other authorities—expressly said that the government's reading ***amends the plain text***.

• The government insists that § 3238 imposes no limit on prosecutors' choice of venue over foreign crimes because the Founders only cared about venue over domestic crimes. DE90:10–11. ***No court*** has ever endorsed such a broad reading of the statute. On the contrary, courts always apply the statute in light of its purpose of limiting prosecutorial forum shopping.

• Notwithstanding binding Tenth Circuit precedent saying the contrary, the government claims that its indictment need not allege facts establishing venue over Count 1.

### Memorandum of Law

Although some courts have used it, the government's interpretation of § 3238 is necessarily wrong. First, it violates the canon against amending a statute's unambiguous plain text. The government's cases admittedly did not apply the plain text—yet none identified any ambiguity. Neither does the government. Second, the government's reading makes "is first brought" surplusage. No court has ever considered this defect. Third, the government exploits this reading to subvert the statute's purpose and yield the most absurd result—giving prosecutors total discretion over venue.

I. **The government reprises an old argument, soundly rejected by the Second Circuit, that it can circumvent § 3238 by having a suspect moved to its handpicked forum for arrest.**

While the parties agree that the Court must apply the statute's plain text, DE77:2–4, 14–16, DE90:2–4, only Dr. Rudolph cites courts that claimed to apply the plain text. Justice Story explained and applied the plain text in *United States v. Thompson*, 28 F.Cas. 102, 103 (C.C.D.Mass. 1832), and Justice Nelson reaffirmed it in *United States v. Baker*, 24 F.Cas. 962, 964 (C.C.S.D.N.Y. 1861). Decades later, the Fourth Circuit confirmed that, under a plain-text reading, venue exists where Dr. Rudolph's flight from Africa first landed: "Obviously, 'first brought' could plausibly be interpreted to mean what it says, so that wherever an offender (traveling by air) touches down in the United States, that is the place where trial must be had." *United States v. Erdos,* 474 F.2d 157, 160–61 (4th Cir. 1973). *Erdos* expressly deviated from the plain text only because it mistakenly thought the statute had another settled meaning. *See id.* at 161 ("But it is settled otherwise."). *Erdos* erred because it did not consider *Thompson* or *Baker* and hence did not realize that the plain text makes sense and is easier to apply than the embellished interpretation the government urges on this Court.

Not surprisingly, **no case** holds that a plain-text reading of § 3238 would take "is first brought" to actually mean *is first brought while in custody for a particular charge*. On the contrary, every case the government cites relied, without analysis, on *Erdos*, which made clear it was ***not*** applying the plain text. *See United States v. Ghanem*, 993 F.3d 1113, 1121–22 (9th Cir. 2021), relying on *United States v. Liang*, 224 F.3d 1057, 1060 (9th Cir. 2000), relying on *United States v. Catino*, 735 F.2d 718, 724 (2d Cir. 1984), which relied on *Erdos*; *United States v. Wharton*, 320 F.3d 526, 536 (5th Cir. 2003), relying on *Erdos*; *United States v. Ivencio-Belique-Emilia*, 65 F. App'x 788, 789 (3d Cir. 2003), relying on *Liang* and *Catino*, which relied on *Erdos* without analysis. ***None*** of these cases analyzed the statutory text in light of its anti-forum-shopping purpose.

The government thus admits that this Court must apply the plain text but urges a reading of the law that amends the text. ***None*** of its cases, including *Erdos* itself, justified departing from the plain text—but *Erdos* leaves no doubt that they knowingly did. The government, likewise, identifies no ambiguity, no reason to take issue with Justice Story's authoritative, near-contemporaneous reading of the text. "When, as in this case, the statute is unambiguous and free of irrational result, that language controls." *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991).

That ends the analysis, but *Erdos* compounded its departure from § 3238's plain text by rendering the key phrase "is first brought" superfluous. The government denies that grafting a custody requirement onto "is first brought" has this effect because its concocted definitions of "is arrested" and "is first brought" are not perfectly synonymous. DE90:5. But perfect synonymity is not required. Under the government's reading, the "is first brought" language is superfluous because it adds nothing. In every case, a person necessarily *is arrested for a foreign crime* in the district to which he *is first brought in custody in connection with that offense*, as *Erdos* explicitly recognized:

> We think the phrase in the current version of the statute that venue shall be in the district in which the offender ***"is arrested or is first brought" means simply "arrested"***—*i.e.*, that venue is in that district within the United States where the offender is first restrained of his liberty in connection with the offense charged.

474 F.2d at 160–61 (emphasis added).

The government's response fails to explain, under its own definitions, what purpose "is first brought" serves that "is arrested" doesn't. On the contrary, it admits that its contrived definitions make "is first brought" superfluous to "is arrested." According the government, "if factual custody is the trigger, ... Colorado is either where Rudolph was first brought or he was first arrested." DE90:8. There is no doubt that the government's reading renders "is first brought" surplusage, while Justice Story's plain text reading does not, and that means the government is doubly wrong.

4

Dr. Rudolph's motion relied on *Erdos* to show that the government's interpretation violates the canons against judicially amending statutes and rendering key phrases surplusage. DE77:11–12, 16–17. Yet, the government never discusses that case. Instead, it distorts *Ex parte Bollman*, 8 U.S. 75 (1807), and *United States v. Provoo*, 215 F.2d 531 (2d Cir. 1954), claiming they distinguished formal arrest from custody. DE90:6–9. They did not. Moreover, the government never explains why this matters. It doesn't because, read plainly, "is first brought" does not entail custody at all.

*Bollman* did not implicate the foreign-crimes venue statute. To the extent that it is relevant, it supports Dr. Rudolph's plain reading of § 3238. The accused were charged with treason committed at New Orleans, Louisiana Territory, where a district court existed. 8 U.S. at 136. The government argued that § 3238's precursor applied because the crime was committed outside any state, but the Supreme Court ***rejected*** that argument. It held that the crime was domestic and had to be tried where it was committed. *Id. Bollman* confirmed, however, that § 3238's principal concern was shipboard crimes: "The law read on the part of the prosecution is understood to apply only to offences committed on the high seas, or in any river, haven, bason or bay, not within the jurisdiction of any particular state." *Id. Bollman* thus reinforces Justices Story's view in *Thompson* that "is first brought" was deliberately unqualified and its words have always plainly meant just what *Erdos* confirmed they mean: *is first brought by any vessel whatsoever.*

The government accuses Dr. Rudolph of trying to "have it both ways," DE90:8, by supposedly claiming that "formal arrest controls over factual custody except when a defendant calls out forum-shopping shenanigans." DE90:8. This is a strawman argument. Dr. Rudolph's argument does not depend on formalisms or types of custody. *See* DE77:11. His argument is a simple, plain-text one: For venue purposes, Dr. Rudolph was "first brought" to the United States by a commercial

5

flight to Atlanta, Georgia. He was arrested in Mexico after the government let him leave Arizona and arranged, as it concedes, to have him "detained in Mexico and then flown to Colorado," DE90:15, to circumvent § 3238 by forcibly moving him to Denver for arrest. Under *Provoo*, this Court cannot hold *for venue purposes* that Dr. Rudolph was arrested in Colorado because that would give judicial approval to a scheme to evade and subvert the core purpose of a federal law—an anarchic and absurd result. Thus, under the circumstances, venue exists only in Georgia.

*Provoo* rejected the very argument the government now reprises. It claimed that John Provoo was arrested only after the Army moved him to New York and discharged him into the FBI's waiting hands. The Second Circuit reasoned that, whatever the formalities, Provoo was arrested *for venue purposes* in Maryland when the Army delayed his discharge to move him to New York to help prosecutors manufacture venue. It held that § 3238 can ***never*** be applied to approve any such forum-shopping scheme: "To hold otherwise would mean that the Army, acting in cooperation with the Department of Justice, can select any federal district in the United States as the place for trial of a soldier charged with treason or any other offense committed abroad." 215 F.2d at 538. That decision was vindicated when transcripts of conversations later surfaced that detailed DOJ's and the Army's scheming to flout the venue law. *Petition of Provoo*, 17 F.R.D. 183, 189–91 (D. Md. 1955).

**II.     No court has ever doubted that § 3238 was meant to bar prosecutorial forum shopping.**

Just as DOJ got the Army to move Provoo to its handpicked venue, the prosecution got Mexico to move Dr. Rudolph to its handpicked venue, Colorado. The canon against interpreting a statute to be self-defeating requires this Court to follow *Provoo* and hold that for venue purposes Dr. Rudolph was arrested in Mexico, not Colorado, regardless of the formalities, because any other interpretation of § 3238 has the absurd result of giving the prosecution in this case its pick of venue.

Section 3238 was written to limit prosecutorial forum shopping and is the result of a constitutional directive motivated by that very aim. As Justice Story explained, it creates at most two venue options—where the accused was arrested or where he was first brought to the country by any means. In 1790 the government had little control over where those events occurred, and the text effectively barred prosecutorial forum shopping. Because today the government sometimes can influence where those events occur, it leaps to the unsupported conclusion that the statute "is not concerned with forum shopping," but efficiency. DE90:10. Ironically, its reading not only gives prosecutors *carte blanche* over venue but slows courts by complicating a simple threshold issue.

*Provoo* shows that § 3238 was enacted to limit prosecutors' venue options, and no court has ever said otherwise. Certainly no court has said the statute's aim is "efficiency," as the government claims. DE90:12. Of course, if the government were truly interested in "efficiency" rather than in gaining an unfair edge, it would have arrested Dr. Rudolph in Phoenix and tried its case there rather than gaming the system. Because its ludicrous thesis that this statute reflects the First Congress' concern with "efficiency" has absolutely no support, the government quotes Alexander Hamilton out of context, twists Justice Story's words, and distorts *Provoo*.

First, nothing Hamilton wrote supports the government's radical view of § 3238. Federalist No. 80 has **nothing** to do with the venue provisions of Article III, § 3. Hamilton was defending Article III, § 1, which extends federal judicial power *inter alia* "to all Cases of admiralty and maritime Jurisdiction ... ." The opening lines of No. 80 enumerate the "proper objects" of "the federal judicature" and track the scope of federal jurisdiction created by Article III, § 1. The closing paragraphs *again* list the areas to which "[t]he judiciary authority of the Union is to extend." In between, the essay discusses each area in turn. There is not one word about venue or § 3 in it.

Second, Justice Story did not remotely suggest much less "recognize[] in *Thompson* that it didn't matter where venue was located for extraterritorial offenses ... ." DE90:11. He only noted that **Congress** could have chosen any convenient place to try foreign crimes. Nothing in the opinion intimates that *prosecutors* can have their pick of districts. On the contrary, Justice Story parsed and explained the plain meaning of the statute because what he "recognized" is that, as Article III says, it matters a great deal that Congress—and not prosecutors—determine venue over foreign crimes.

Third, it is patently false that *Provoo* "rejected the argument that § 3238 is concerned with forum-shopping ... ." DE90:11. On the contrary, to stop prosecutorial forum shopping, *Provoo* rejected the very argument the government raises now. The issue was whether John Provoo was arrested in New York for venue purposes after DOJ got the Army to move him there. 215 F.2d at 538. The Second Circuit held that, regardless of legal formalities, it could not interpret the statute to defeat its purpose of preventing prosecutorial forum-shopping: "We cannot blind our eyes to the fact that the real purpose in bringing him to New York was to meet the wish of the Department of Justice to have him tried for treason under the indictment subsequently filed here." *Id.* at 538.

Although neither party raised any argument implicating the "is first brought" prong, *Provoo* acknowledged that, when an accused is arrested abroad before having returned to the United States since the alleged crime, the government may be able to influence where he "is first brought." In other cases, like when "an accidental landing" occurs, venue is chosen by chance. *Id.* at 539. The government thinks this proves that § 3238 was not meant to preclude prosecutorial forum shopping. DE90:11. But *Provoo* makes clear that, even though technology lets prosecutors influence venue in *some* cases, courts cannot "turn a blind eye" to schemes in which a defendant is forcibly moved

to the prosecution's handpicked venue for formal arrest. "***Otherwise, the government would be able to handpick its forum.***" 215 F.2d at 539 (emphasis added).

Likewise, both *United States v. Slatten*, 865 F.3d 788 (D.C. Cir. 2017), and *United States v. Valenzuela*, 849 F.3d 477 (1st Cir. 2017), confirm that courts must guard against prosecutorial forum shopping, but neither has any direct relevance to this case because they involved other statutory provisions. *Slatten* did not "reject[] the precise complaint that Rudolph makes here" because it involved the joint-offender provision of the 1963 amendment to § 3238, which this case does not implicate. *Slatten* held that venue was not improperly manufactured *in that case* because one of the joint offenders voluntarily surrendered himself for arrest in Washington, D.C. Contrary to what the government claims, *Slatten* stated that the statute does ***not*** give prosecutors unfettered discretion over venue. "For example, 'where the key events occur in one district, but the prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor event simply to establish venue,' a claim of manufactured venue might have traction." 865 F.2d at 788–89. *Valenzuela* did not involve § 3238 at all because it concerned venue over a *domestic* crime. It agreed, however, that "prosecutorial forum shopping" is "a concern" for courts. 849 F.3d at 488.

The government's interpretation of § 3238 thus violates ***three*** canons of interpretation. Not only does it depart from the statute's plain text and render a key phrase surplusage, it also undermines the statute's purpose, which like the Constitution's venue provisions, is undoubtedly to frustrate prosecutorial forum shopping. This all goes to show that the government's interpretation of the statute cannot be lawfully applied. The issue for this Court is not whether any "court has ever dismissed a count due to alleged venue manipulation." DE90:12. The issue is whether the government's admitted effort to manipulate venue ***comports with the statutory text and purpose***.

When, as in *Slatten*, a defendant voluntarily agrees to venue by surrendering himself in a certain place, the statute is not violated. The government did not give Dr. Rudolph that chance. On the other hand, when—as in *Provoo* and this case—the government tries "to handpick its forum" by getting another entity (the Army in *Provoo* and Mexico in this case) to forcibly move the accused so that it can claim that "formal" arrest occurred in its preferred venue, the statute is violated and subverted.

### III.    Count 1 must be dismissed for being improperly pled.

The government concedes that Tenth Circuit precedent requires, on the defendant's motion, the dismissal of any count that fails to allege venue. *Bratton v. United States*, 73 F.2d 795, 798 (10th Cir. 1934). Neither of the government's authorities undermines this. *Carbo v. United States*, held that a failure to allege venue cannot be raised for the first time on appeal "since it is waivable[.]" 314 F.2d 718, 733 & n.15 (9th Cir. 1963). *United States v. Feng Tao* is inapposite because the indictment *did* allege facts establishing venue, and the defense argued only that those were not incorporated into one of the charges. 499 F. Supp.3d 940, 963 (D. Kan. 2020) ("The Court will not turn a blind eye to allegations specifically alleged in the [indictment] that support venue."). Count 1 does not allege venue and must be dismissed for this additional reason.

### Conclusion

The statute's plain text, read in light of its purpose and of the circumstances created by the government's scheme to circumvent it, makes the Northern District of Georgia—the place where Dr. Rudolph was "first brought" from Africa after the alleged crime—the only lawful place to try Count 1. Applying the plain text is required by every applicable canon, is simple to do, and yields a neutral and fair venue chosen by chance rather than a party, just as Congress intended.

CERTIFICATE OF SERVICE

This reply was was filed by CM/ECF on March 28, 2022.

                                  Respectfully submitted,

                                  MARKUS/MOSS PLLC
                                40 N.W. Third Street
                                Penthouse One
                                Miami, Florida 33128
                                Tel: (305) 379-6667
                                markuslaw.com

By:     <u>/s/ David Oscar Markus</u>
           David Oscar Markus
           Florida Bar Number 119318
           dmarkus@markuslaw.com