**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. LAWRENCE RUDOLPH,
2. LORI MILLIRON,**

      Defendants.

---

**ORDER DENYING DEFENDANT RUDOLPH'S MOTION TO DISMISS THE
SUPERSEDING INDICTMENT FOR IMPROPER JOINDER
OR, ALTERNATIVELY, TO SEVER LORI MILLIRON, AND
GRANTING THE GOVERNMENT'S UNOPPOSED MOTION TO STRIKE PORTION
OF THE SUPERSEDING INDICTMENT REGARDING LORI MILLIRON**

---

The Government charges Defendant Lawrence Rudolph with one count of foreign murder in violation of 18 U.S.C. §§ 1119 and 1111, and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2. (ECF No. 53.) Additionally, the Government charges Defendant Lori Milliron with one count of being an accessory after the fact to Defendant Rudolph in connection with his foreign murder charge, in violation of 18 U.S.C. § 3, one count of obstruction of a grand jury proceeding, in violation of 18 U.S.C. § 1503(a), and five counts of perjury before the grand jury, in violation of 18 U.S.C. § 1623(a). (Id.) This matter is currently set for a 12-day jury trial beginning on May 23, 2022.[1] (ECF No. 52.)

---

[1] Because the Superseding Indictment charging Defendant Milliron was issued after the Court set the May 23, 2022 trial date for Defendant Rudolph (see ECF Nos. 52, 53), the Court has not yet set a trial date for Defendant Milliron.

Before the Court is Defendant Rudolph's Motion to Dismiss the Superseding Indictment for Improper Joinder Or, Alternatively, to Sever Lori Milliron ("Motion to Sever"), filed on March 22, 2022.  (ECF No. 97.)  The Government responded to the Motion to Sever on March 28, 2022.  (ECF No. 100.)

Also before the Court is the Government's Unopposed Motion to Strike Portion of the Superseding Indictment Regarding Lori Milliron ("Motion to Strike"), filed on March 28, 2022.  (ECF No. 101.)

After reviewing the parties' briefs and supporting documentation, the Court has concluded that it does not need an evidentiary hearing to decide the Motion to Sever or Motion to Strike.  Nor does it require a reply on Defendant Rudolph's Motion to Sever. For the reasons set forth below, the Court denies the Motion to Sever and grants the Motion to Strike.

## I. MOTION TO SEVER

In the Motion to Sever, Defendant Rudolph seeks to: (1) dismiss the Superseding Indictment for improper joinder under Federal Rule of Criminal Procedure 12(b)(3)(B)(iv); or (2) sever Defendant Milliron on the basis that her joinder will unfairly prejudice Defendant Rudolph at trial.  (ECF No. 97 at 1.)  The Court considers each argument below.

**A.     Whether Defendants Rudolph and Milliron Were Improperly Joined**

Pursuant to Federal Rule of Criminal Procedure 8,

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be

2

charged in each count.

Defendant Rudolph argues that Counts 4 through 9—which charge Defendant Milliron with obstruction of justice and perjury arising from her January 5, 2022 grand jury testimony—fail to meet the legal standard for joinder under Rule 8(b) because these charges do not arise from the same act, transaction, or in the same series of acts or transactions, as the charges against him. (ECF No. 97 at 3.) He points out that he and Defendant Milliron are not charged together in any count, that their respective charges are based on acts that occurred at different times, and that there is "no conspiracy or concerted action of any kind." (*Id.* at 4.)

Defendant Rudolph further speculates that Count 3—the accessory after the fact charge against Defendant Milliron—was added "specifically to circumvent Rule 8" and serves as a ploy to "neutralize" Defendant Milliron as an important defense witness by "denying [him] his right to call witnesses in his defense." (*Id.* at 4–6.) He also argues that "Count 3 fails to state an offense for being an accessory after the fact to the murder charged in Count 1 and therefore provides no legal basis for joining [Defendant] Milliron to [his] case." (*Id.* at 7–12.)

As an initial matter, the Court notes that notwithstanding the undersigned's order that Defendants file any motions to sever by March 18, 2022 (ECF No. 89), Defendant Milliron has neither joined in the Motion to Sever filed by Defendant Rudolph nor filed her own motion arguing that Count 3 fails to state an offense. Because Defendant Rudolph is not charged in Count 3, the Court concludes that he lacks standing to challenge this count. *See United States v. Tanner*, 471 F.2d 128, 139–40 (7th Cir. 1972) (finding co-conspirators lacked standing to challenge count in which they were

not charged); *United States v. Menendez*, 137 F. Supp. 3d 688, 692 n.1 (D.N.J. 2015) (recognizing that only a defendant charged with an offense has standing to challenge that count); *United States v. Bennett*, 190 F. Supp. 181, 182 (S.D.N.Y. 1958) (holding defendant "has no standing to demand dismissal of a count in which he is not charged with commission of an offense").  Moreover, after carefully reviewing the parties' arguments and the charges set forth in the Superseding Indictment, the Court cannot conclude that Defendants Rudolph and Milliron were improperly joined as defendants.

The Court concludes that the charges against: (1) Defendant Rudolph for allegedly murdering Bianca Rudolph; and (2) Defendant Milliron for allegedly acting as an accessory after the fact, obstructing justice, and committing perjury before the grand jury, are part of the same series of acts or transactions and that Defendants Rudolph and Milliron were properly joined under Rule 8.  *See United States v. Van Scoy*, 482 F.2d 347, 348–49 (10th Cir. 1973) (concluding prosecution for bank robbery and prosecution for being accessory after fact constituted parts of common scheme and were sufficiently connected for joinder and therefore were subject to consolidation); *United States v. Mills*, 597 F.2d 693, 695-96 (9th Cir. 1979) (finding that trial court did not abuse its discretion by denying severance to defendant charged with being an accessory after the fact, even though he was not charged with armed bank robbery as were his codefendants); *United States v. Dye*, 508 F.2d 1226, 1236 (6th Cir. 1974) (permitting joinder of defendant charged as an accessory after the fact but not as a member of the alleged conspiracy); *see also United States v. Dorsey*, 2019 WL 3804113, at *12 (D. Md. Aug. 13, 2019) (joinder proper where defendant was charged as accessory for lying to grand jury about underlying murder).

As the Government points out in its response to the Motion to Sever, "[t]he trial here will require a jury to consider whether [Defendant] Rudolph murdered his wife to be with his mistress and whether that mistress, [Defendant] Milliron, knew about the murder and took steps to prevent her lover from being indicted for it." (ECF No. 100 at 5.)  The purported "means by which Milliron achieved that objective—obstruction and attendant perjury—are directly connected to concealing the murder and her role as raw motive for Rudolph's appetite to carry it out." (*Id.*)  The Government further anticipates that it will present substantial overlapping evidence at a trial against Defendant Rudolph or Defendant Milliron, including records of Defendant Rudolph's financial support for Defendant Milliron, testimony from former employees and co-workers that Defendants Rudolph and Milliron were having an affair, and evidence that Defendant Milliron moved into Defendant Rudolph's residence mere weeks after Bianca Rudolph's funeral.  (*Id.* at 5–6.)

Because evidence regarding Defendant Rudolph's alleged murder of Bianca Rudolph will be largely subsumed into the Government's evidence regarding whether Defendant Milliron acted as an accessory after the fact, the Court concludes that Defendants Rudolph and Million were properly joined in the Superseding Indictment.[2] *See United States v. Rogers*, 921 F.2d 975, 985 (10th Cir. 1990) (recognizing that the link between joined defendants may be established by common evidence as to various counts).

Likewise, the Court finds that although Counts 4 through 9 do not necessarily

---

[2]  Because Defendant Rudolph provides nothing more than groundless speculation and accusatory rhetoric in support of his contention that the Government engaged in gamesmanship by joining Defendant Milliron as a defendant (ECF No. 97 at 4–6), the Court will not consider these arguments further.

require proof that Defendant Rudolph murdered Bianca Rudolph, these counts are sufficiently related factually to the other charges in the Superseding Indictment for joinder purposes.  *United States v. Dominguez*, 226 F.3d 1235, 1239 (11th Cir. 2000) ("Regardless of whether both sets of charges involve the presentation of the same evidence, the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes.").  Defendant Rudolph's contention that the Government has "admitted facts that conclusively establish that Counts 4 through 9 were improperly joined to [his] case" and "practically conceded" the point (ECF No. 97 at 4) is without merit.  The Government's prior statements that the Court theoretically *can* separate certain charges from those against Defendant Rudolph fall far short of establishing that Defendants Rudolph and Milliron were improperly joined as defendants.  (ECF No. 87 at 5.)

Accordingly, this portion of the Motion to Sever is denied.

**B.      Whether Severance Is Appropriate**

In the Tenth Circuit, defendants charged jointly under Rule 8 are not entitled to separate trials as a matter of right.  *Bailey v. United States*, 410 F.2d 1209, 1213 (10th Cir. 1969).  However, under Federal Rule of Criminal Procedure 14(a), "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."

In determining the merits of a motion for severance, "the court must weigh the prejudice to a particular defendant caused by the joinder against the important considerations of economy and expedition in judicial interests."  *United States v.*

*Mabry*, 809 F.2d 671, 681 (10th Cir. 1987), *cert. denied,* 484 U.S. 874 (1987), *and overruled on other grounds by, Mathews v. United States*, 485 U.S. 58 (1988). "Severance is a matter of discretion, not of right, and the defendant bears a heavy burden of demonstrating prejudice to his case." *Id.* at 682; *see also United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) (recognizing that it is not enough for a defendant to merely show that severance would have increased defendant's chances of acquittal; *United States v. Ridley*, 814 F. Supp. 992, 999 (D. Kan. 1993) (recognizing that "[t]he fact that evidence against one defendant is more incriminating than another is not, standing alone, a basis for severance").

The Tenth Circuit has recognized that where a defendant bases his motion for severance upon a claim that he needs a co-defendant's testimony, a court may consider the following factors in determining whether severance is appropriate:

> 1) the likelihood that the co-defendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984).

Defendant Rudolph argues that failure to sever his charges from those against Defendant Milliron will cause him to be deprived of his constitutional right to call a crucial witness in his defense and risk "his false conviction based on one-sided evidence." (ECF No. 97 at 13.) For support, he attaches an affidavit from Defendant Milliron in which she represents, *inter alia*, that the Government's case against

Defendant Rudolph will depend on testimony regarding two conversations in which she was involved; that her recollection of those conversations "flatly contradicts" what those witnesses have said; and that "[i]f the allegations and charges against [her] were tried separately from [Defendant Rudolph's] case, [she] would be able to testify at [Defendant Rudolph's] trial to correct [the witnesses'] false, misleading, and confused recollections of what they think they heard [her and Defendant Rudolph] say" and that "[she is] very sure the jury would believe [her] over those witnesses because [she] knows what was said." (ECF No. 97-1.) Pulling all these assertions together, Defendant Rudolph argues that once Defendant Milliron prevails at trial, she will be able to testify as a crucial witness corroborating his defense that he did not kill Bianca Rudolph. (ECF No. 97 at 14–15.)

Regarding Defendant Milliron's anticipated testimony, Defendant Rudolph further argues that: (1) the testimony "would carry great weight" and would "decimate the credibility of [the Government's] less-than-ideal witnesses" because Defendant Milliron has "personal knowledge not only about the critical conversations but also about her on relationship with [Defendant] Rudolph and what they each wanted from the affair at the time in question"; (2) "[o]nce [Defendant] Milliron explains to the jury that the [G]overnment's witnesses do not know what they are talking about and that the Rudolphs had an open marriage, the [Government's] case will very likely collapse" and will be "unlikely" to survive a Rule 29 motion for judgment of acquittal; and (3) Defendant Milliron's "testimony is ironclad because it is true." (*Id.* at 15–17.) Defendant Rudolph also argues that he will be severely prejudiced if his trial is not severed from Defendant Milliron's trial because "[Defendant] Milliron's failure to testify would . . .

falsely suggest to the jury that the [G]overnment's witnesses [*sic*] version of events is undisputed." (*Id.* at 18.) He further argues that "[s]everance will have a minimal, if any, effect on judicial economy." (*Id.*)

The Government responds that Defendant Milliron's vague assurances that she might provide testimony that contradicts two Government witnesses does not justify severance. (ECF No. 100 at 7.) The Court agrees.

Although Defendant Rudolph's motion is timely, the Court notes that Defendant Milliron's assurances that she will testify at Defendant Rudolph's trial are predicated on her being tried first and acquitted. (*See* ECF No. 97 at 14 ("[Defendant] Milliron has invoked her right to a speedy trial to put these trumped-up charges behind her and restore the *status quo ante*. Once that happens, she will again have nothing to fear from testifying truthfully and refuting the testimony of the disgruntled former employee and the eavesdropping bartender on which the [G]overnment plans to hinge its case."); ECF No. 97-1 ¶ 9 ("If the allegations and charges against me were tried separately from [Defendant Rudolph's] case, I would be able to testify at [Defendant Rudolph's] trial . . . .").) Offers to testify conditioned on being tried first—and acquitted—do not meet the requirements for showing a co-defendant's willingness to testify. *See McConnell*, 749 F.2d at 1445 (noting that a previously filed motion "would not have met the initial requirement of a showing of willingness to testify because [the defendant] conditioned his offer of testimony on his being tried first"); *United States v. Espinosa*, 771 F.2d 1382, 1409 (10th Cir. 1985) (recognizing that severing counts on the basis of a conditional offer to testify "would allow co-defendants to employ a motion for severance to obtain benefits they would not have but for their joint indictment"); *United States v. Parodi*, 703

F.2d 768, 779 (4th Cir. 1983) ("[T]he requirement of a showing of willingness to testify if there is a severance is not met when that offer to testify is further conditioned on the co-defendant's case being tried first."); *United States v. Haro-Espinosa*, 619 F.2d 789, 793 (9th Cir. 1979) (same).  Further, Defendant Rudolph's severance arguments are critically weakened by the fact that in Defendant Milliron's conditional offer to testify she does not definitively state that she *would* testify at Defendant Rudolph's trial; instead, she only states that she "would be able to testify at" his trial.  (ECF No. 97-1 ¶ 9.)  *Cf. United States v. Utley*, 62 F. App'x 833, 836 (10th Cir. 2003) (assertion that defendant "may wish to testify at trial as to one or more counts, but not as to all" is a conclusory allegation that is "simply not enough to warrant severance").

Moreover, the Court agrees with the Government's characterization of Defendant Milliron's affidavit as "vague and conclusory."  (ECF No. 100 at 9.)  Defendant Milliron represents that: she has "first-hand knowledge that no other potential witness has about" conversations between: (1) herself and Anna Grimley, and (2) herself and Defendant Rudolph; that her recollection of these conversations "flatly contradicts and is entirely inconsistent with what Ms. Grimley and the bartender claim"; and that, if she chooses to testify at Defendant Rudolph's trial, she would be able to "correct Ms. Grimley's and the bartender's false, misleading, and confused recollections of what they think they heard [her] and/or [Defendant Rudolph] say."  (ECF No. 97-1 ¶¶ 6–7, 9.)  Although Defendant Rudolph argues that Defendant Milliron's testimony would "directly refute [the Government's] contentions regarding [Defendant] Rudolph's supposed motive to kill his wife and his supposed confession" and would "decimate the credibility of [the Government's] less-than-ideal witnesses" (ECF No. 97 at 15), Defendant

Milliron's affidavit, while long on rhetoric, is plainly lacking fact-based specifics regarding the nature of her anticipated testimony.

While Defendant Milliron's proffered testimony purports to be exculpatory and Defendant Rudolph argues that her testimony is "crucial given the circumstantial nature and weakness of the [G]overnment's case" (ECF No. 97 at 15), the Court finds that Defendant Milliron's proffered testimony lacks sufficient factual substance to warrant severance.[3]  Notably, Defendant Milliron does not provide details regarding the ways in which her recollections will contradict and rebut the testimony of potential Government witnesses.  *See McConnell*, 749 F.2d at 1446 (finding that proffered testimony that is "little more illuminating than a simple assertion that [the defendant] is innocent" was insufficient to warrant severance of charges); *Rogers*, 925 F.2d at 1288 (affirming denial of severance where, among other things, the co-defendant's testimony was contracted by witnesses and "lacked substance, amounting to little more than his assertion that [the defendant] had no involvement in the charged crimes").  As the Eleventh Circuit has recognized, "[b]are assertions that a co[-]defendant knows substantive facts are not themselves substantive facts."  *United States v. Green*, 818 F.3d 1258, 1282 (11th Cir. 2016).

Although Defendants Rudolph and Milliron speculate that Defendant Milliron's testimony will be highly credible and will "decimate the credibility" of the Government's witnesses (ECF No. 97 at 15), they do not adequately explain how or why this will be

---

[3] Defendant Rudolph's assertions that Defendant Milliron's "failure to testify would alone be devastating because it would falsely suggest to the jury that the [G]overnment's witnesses [*sic*] version of events is undisputed" overlooks the fact that *Defendant Rudolph* can also waive his Fifth Amendment privilege against self-incrimination to testify regarding his recollections of certain conversations and the nature of his relationship with Defendant Milliron.

the case, particularly in light of Defendant Milliron's potential bias as an individual who admits to being romantically involved with Defendant Rudolph (ECF No. 97-1 ¶ 2).[4]

To the extent that Defendant Rudolph accuses the Government of attempting to introduce evidence against him through its presentation of evidence against Defendant Milliron for Count 4 that would be barred from trial if he were tried alone (ECF No. 97 at 19), such arguments are unavailing in light of the Court's ruling on the Motion to Strike, as set forth below.

Finally, the Court wholly rejects Defendant Rudolph's argument that "[s]everance will have a minimal, if any, effect on judicial economy."  (ECF No. 97 at 18.)  The Court considers this argument to border on frivolous as it lacks any recognition of the demanding workload of a district judge in the District of Colorado, as well as the difficulties of scheduling and holding trials during the COVID-19 pandemic.  This case is not only unusually complicated, it has already proven to be very court resource intensive as well.  The trial against Defendant Rudolph alone is already expected to last about three weeks and will involve dozens of witnesses, including international witnesses.  (ECF No. 52, ECF No. 80 at 7; ECF No. 100 at 9.)  Moreover, as the Court recognized in Part I.A, evidence regarding Defendant Rudolph's alleged murder of Bianca Rudolph will be subsumed into the Government's evidence regarding whether Defendant Milliron was an accessory after the fact, obstructed justice, and/or committed perjury.  Because a trial against Defendants Rudolph and Milliron will include much of

---

[4] Notably, the grand jury heard from Defendant Milliron *before* deciding to indict Defendant Rudolph for murdering Bianca Rudolph.  (ECF No. 100 at 13.)  This fact alone causes the Court to be skeptical of Defendant Rudolph's claim that Defendant Milliron's testimony would cause the Government's case to "very likely collapse" and be unable to withstand a Federal Rule of Criminal Procedure 29 motion.  (ECF No. 97 at 16.)

the same presentation of evidence, the Court concludes that a joint trial would result in considerable efficiencies in the expenditure of scarce judicial resources, and as a result this fact alone weighs heavily against severance.[5]

On the whole, after carefully considering Defendant Milliron's anticipated testimony and Defendant Rudolph's arguments, the Court concludes that the potential prejudice to Defendant Rudolph from holding a joint trial is outweighed by the expense and administrative burden of conducting two lengthy trials involving numerous witnesses.  As such, this portion of the Motion to Sever is denied.

## II. MOTION TO STRIKE

Count 4 of the Superseding Indictment charges Defendant Milliron as follows:

> On or about January 5, 2022, in the State and District of Colorado, the defendant LORI MILLIRON corruptly influenced, obstructed and impeded and endeavored to influence, obstruct and impede the due administration of justice, to wit, MILLIRON provided false and misleading testimony to a grand jury sitting in the District of Colorado regarding (i) the circumstances of cash payments made to her by LAWRENCE RUDOLPH in 2015, 2016 and 2017, (ii) the nature, scope, and circumstances of her relationship with LAWRENCE RUDOLPH, (iii) the nature and circumstances of LAWRENCE RUDOLPH's relationship with Bianca Rudolph, (iv) whether she gave LAWRENCE RUDOLPH an ultimatum to leave his wife, (v) what LAWRENCE RUDOLPH told her about the circumstances of the death of Bianca Rudolph, (vi) her discussion with LAWRENCE RUDOLPH about a pending investigation by the Federal Bureau of Investigation; and (vi) the circumstances of the accident that caused LAWRENCE RUDOLPH to lose part of his thumb.
>
> All in violation of Title 18 United States Code § 1503(a).

---

[5] The Court further notes that if: (1) the Court agreed to hold separate trials to enable Defendant Milliron to testify as a witness during Defendant Rudolph's trial; and (2) Defendant Milliron is convicted at her trial, Defendant Milliron could insist on delaying Defendant Rudolph's trial for years while her case makes it through appeals and sentencing.  Such a delay would not be in the public's interest.

(ECF No. 53 at 3.)

In the Motion to Strike, the Government seeks to strike from the Superseding Indictment the portion of Count 4 stating "and (iv) the circumstances of the accident that caused LAWRENCE RUDOLPH to lose part of his thumb." (ECF No. 101 at 1.) According to the Government, this deletion will "streamline litigation by focusing arguments about this allegation into the well-established framework governing Federal Rule of Evidence 404(b)." (*Id.*)

It is well-established that courts have the authority to drop allegations from an indictment that are unnecessary to an offense clearly contained within that indictment. "[W]here an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment." *United States v. Miller*, 471 U.S. 130, 145 (1985) (citing *Salinger v. United States*, 272 U.S. 542, 548–49 (1926)); *United States v. Griffin*, 463 F.2d 177, 178 (10th Cir. 1972) ("The withdrawal of a part of the charge from jury consideration does not work an amendment of the indictment provided nothing is thereby added to the indictment.").

Given that the Government seeks only to strike allegations from the Superseding Indictment, and in no way seeks to enlarge or extend the scope of the charge against Defendant Milliron, the Court grants the Motion and will strike "and (iv) the circumstances of the accident that caused LAWRENCE RUDOLPH to lose part of his thumb" from Count 4 of the Superseding Indictment.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendant Rudolph's Motion to Dismiss the Superseding Indictment for Improper

Joinder Or, Alternatively, to Sever Lori Milliron (ECF No. 97) is DENIED;

2.    Government's Unopposed Motion to Strike Portion of the Superseding Indictment

Regarding Lori Milliron (ECF No. 101) is GRANTED; and

3.    The phrase "and (iv) the circumstances of the accident that caused LAWRENCE

RUDOLPH to lose part of his thumb" is STRICKEN from Count 4 of the

Superseding Indictment.

Dated this 12th day of April, 2022.

BY THE COURT:

William J. Martínez
United States District Judge