**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. LAWRENCE RUDOLPH,**
2. LORI MILLIRON,

      Defendants.

---

**ORDER DENYING DEFENDANT RUDOLPH'S MOTION TO DISMISS COUNT 1**
**FOR LACK OF VENUE AND REQUEST FOR HEARING**

---

As set forth in the Superseding Indictment, a grand jury has charged Defendant Lawrence Rudolph with one count of foreign murder in violation of 18 U.S.C. §§ 1119 and 1111 ("Count 1"), and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 ("Count 2"). (ECF No. 53.) This matter is currently set for a 13-day jury trial beginning on July 11, 2022. (ECF No. 105.)

Before the Court is Defendant's Motion to Dismiss Count 1 for Lack of Venue and Request for Hearing ("Motion"), filed on February 22, 2022. (ECF No. 77.) The Government responded to the Motion on March 15, 2022 (ECF No. 90), and Defendant replied on March 28, 2022 (ECF No. 98).

After reviewing the parties' briefs, the Court has concluded that it does not need an evidentiary hearing to decide the Motion. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

The Government alleges that on the morning of October 11, 2016, Defendant murdered his wife, Bianca Rudolph, while on a safari outside of the United States and in the jurisdiction of Zambia.  (ECF No. 53 at 1; *see also* ECF No. 1-2.)  Defendant thereafter returned to the United States via a commercial airliner transporting passengers from Johannesburg, South Africa, to Atlanta, Georgia.  (ECF No. 77 at 20.)

On December 16, 2021, the Government obtained a Criminal Complaint charging Defendant with one count of mail fraud, in violation of 18 U.S.C. § 1341, alleging that Defendant participated in a scheme to defraud life insurance companies by obtaining the benefits from life and accidental life policies covering Bianca Rudolph at the time of her death by making false and fraudulent representations that her death was the result of an accident.  (ECF No. 1; ECF No. 1-2 at 9–13.)  An arrest warrant was issued for Defendant on December 16, 2021.  (ECF No. 2.)

After this arrest warrant was signed, Defendant flew to Mexico.  (ECF No. 90 at 2.)  According to the Government, "[w]hen the United States informed Mexican authorities of the warrant, those authorities deported [Defendant] on a plane to Denver"; however, "[b]efore his plane had landed, another warrant issued for [Defendant's] arrest based on probable cause charging him with his wife's murder" and "[h]e was arrested on that warrant the same day at Denver International Airport."  (*Id.*; *see also* ECF No. 4 (Superseding Criminal Complaint adding foreign murder charge against Defendant); ECF No. 5 (second arrest warrant issued for Defendant on December 22, 2021).)  The executed arrest warrant reflects that Defendant was arrested on both the mail fraud and foreign murder charges by Special Agent Donald Peterson on December 22, 2021 in

2

Denver, Colorado.  (*See* ECF No. 12.)

Thereafter, a grand jury issued the Indictment and Superseding Indictment against Defendant on January 5, 2022 and February 9, 2022.  (ECF Nos. 26, 53.)

## II.  ANALYSIS

Defendant argues that Count 1 must be dismissed for two reasons: (1) venue is improper because the venue statute for crimes committed abroad, 18 U.S.C. § 3238, requires the Government to charge Count 1 in the Northern District of Georgia, not the District of Colorado; and (2) Count 1 is improperly pled because it fails to allege any facts concerning venue.  (ECF No. 77.)

### A.    Whether the District of Colorado is a Proper Venue for Count 1

The United States Constitution provides that trials "shall be held in the State where the . . . Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."  U.S. Const. art. III, § 2, cl. 3.  Likewise, Federal Rule of Criminal Procedure 18 provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

For crimes committed abroad, 18 U.S.C. § 3238 establishes the proper venue:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . . .

Accordingly, the Court determines the appropriate venue for Defendant's foreign murder charge by determining where Defendant was arrested and was first brought.

1.    <u>Where Defendant was Arrested</u>

Defendant contends that he was arrested for the first time in Mexico, not Denver. (*See* ECF No. 77 at 2 (alleging the Government "somehow arranged for Mexican authorities to arrest and jail [him], though he was not then indicted for any crime" and "had him sent to Denver against his will, expecting to establish venue by claiming that [he] was brought and arrested there").)

As an initial matter, Defendant ignores the fact that even though he had not yet been indicted by a grand jury, a valid arrest warrant was issued for Defendant on December 16, 2021 in connection with the mail fraud charge set forth in the Criminal Complaint.  (*See* ECF No. 2.)  Moreover, Defendant further provides no evidentiary or legal support for his claim that he was arrested—rather than detained and deported—in Mexico.  (*See generally* ECF No. 77.)

However, even taking as true Defendant's claim that he was actually arrested by Mexican authorities, he provides no evidentiary support whatsoever for his claim that he was arrested on *the foreign murder charge* in Mexico, as opposed to just the mail fraud charge pursuant to the December 16, 2021 arrest warrant.  (ECF No. 2.)  To the contrary, the Defendant represents that he was "held overnight in a Mexican jail" before being "shipped to Denver against his will."  (ECF No. 77 at 19.)  Because the second arrest warrant issued for both the mail fraud and foreign murder charges was not issued until December 22, 2021 (ECF No. 5)—*i.e.*, *the same day* that Defendant was subsequently arrested in Denver, Colorado (ECF No. 12)—it defies logic that Defendant could have been arrested and held overnight on the foreign murder charge before being flown to Colorado.

The Fifth Circuit's decision in *United States v. Wharton*, 320 F.3d 526 (5th Cir. 2003) is instructive.  In *Wharton*, a defendant was initially arrested in the Middle District of Florida after prosecutors filed a complaint in the Western District of Louisiana on insurance fraud charges relating to his purported scheme to murder his wife in Haiti and to collect on the life insurance policies he had obtained on her life.  *Id.* at 536. Thereafter, the defendant was detained and transferred to Louisiana; while in the custody of the Western District of Louisiana, he was charged with foreign murder.  *Id.* The Fifth Circuit concluded that venue over the foreign murder charge was proper in the Western District of Louisiana because the defendant was not "'arrested' on the foreign murder charge until he was in Louisiana."  *Id.* at 536–37; *see also United States v. Catino,* 735 F.2d 718, 724 (2d Cir. 1984) (holding that although defendant had been first arrested on narcotics trafficking charges in the Eastern District of New York, venue over passport violation charges was proper in the Southern District of New York as he had been transferred to the Southern District of New York prior to being indicted and arraigned for those passport violations).

Because the unrebutted evidence in front of the Court demonstrates that Defendant was arrested on the foreign murder charge only *after* he landed in Denver, Colorado (*see* ECF No. 12), the Court concludes venue over Count 1 properly rests in the District of Colorado pursuant to § 3238.  *See United States v. Erdos*, 474 F.2d 157, 160 (4th Cir. 1973) (defining the venue where a defendant is "arrested" as set forth in § 3238 as that "district within the United States where the offender is first restrained of his liberty *in connection with the offense charged*" (emphasis added)).  This conclusion alone is an adequate basis to deny that portion of the Motion which seeks to dismiss

Count 1 for lack of venue.  Nonetheless, for the sake of completeness, the Court will also consider whether the District of Colorado is the district where Defendant was "first brought."

      2.    <u>Where Defendant was First Brought</u>

Defendant argues that Count 1 can only be tried in the district he was first brought when he returned from Zambia in 2016: the Northern District of Georgia.  (ECF No. 77 at 5, 20.)  He argues that this conclusion is supported by the plain text of § 3238, as well as cases dating back to as early as 1832.  (*Id.* at 5–20.)  The Court disagrees.

Statutory construction is a "holistic endeavor," where "context is important in the quest for [a] word's meaning."  *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 79 (1991) (alteration in original) (quotation and citation omitted).  Phrases "cannot be construed in a vacuum."  *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) (quotation marks & citation omitted).  To the contrary, words are known by the company they keep.  *Yates v. United States*, 574 U.S. 528, 543 (2015); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

In § 3238, the phrase "arrested or is first brought" appears as part of the sentence setting venue for "[t]he trial of all offenses begun or committed."  The Court concludes that the phrase "[t]he trial of all offenses begun or committed" creates a nexus between the offenses committed and the arrest and/or the act of bringing a defendant into a district to stand trial for those offenses.  As such, the Court concludes that the plain statutory text of the phrase "the district in which the offender . . . is first

brought" is properly interpreted as the district in which an offender is first brought in connection with the offense charged.

This interpretation is consistent with the settled modern interpretation of § 3238. *See, e.g.*, *United States v. Ghanem*, 993 F.3d 1113, 1121–22 (9th Cir. 2021) (concluding that the district where a defendant is "first brought" is that district into which the defendant first comes "[from outside the United States' jurisdiction] while in custody" (quoting *United States v. Liang*, 224 F.3d 1057, 1060 (9th Cir. 2000) (alteration in original))); *United States v. Holmes*, 670 F.3d 586, 595 (4th Cir. 2012) (venue "determined based on the static location of where a defendant is determined to be 'first arrested or brought' with respect to the offense"); *United States v. Ivencio-Belique-Emilia,* 65 F. App'x 788, 789–90 (3d Cir. 2003) (recognizing that even "if the [defendant's] arrest occurred in international waters, venue in the District of the Virgin Islands is still proper because that is the district into which [the defendant] was first brought after the arrest"); *Catino*, 735 F.2d at 724 (first brought "applies only in situations where the offender is returned to the United States already in custody"); *Erdos*, 474 F.2d at 161 ("'[f]irst brought' within the context of the statute means first brought in custody with liberty restrained"); *Chandler v. United States*, 171 F.2d 921, 933 (1st Cir. 1948) ("the district into which the accused is first taken under custody and landed is the district into which the accused is 'first brought'").

Defendant urges the Court to determine that the location is the district where he voluntarily arrived upon his return from Zambia in 2016.  (ECF No. 77 at 5.)  However, as a judge within the Southern District of New York persuasively reasoned, the term "brought" connotes an involuntary act:

> The difference between 'brought' and 'found' is the
> difference between presence [in the United States] by
> involuntary and voluntary act.  By 'brought' is meant taken,
> or carried.  An illustration of this is where the violator of law
> upon the high seas is, following the crime, taken into custody
> upon the ship and then brought into port.  On the other hand,
> where the defendant, not having been taken into custody, is,
> after reaching port, arrested or apprehended under lawful
> authority for trial for the offense, he is deemed to be found
> wherever such arrest occurs.

*United States v. Townsend*, 219 F. 761, 762 (S.D.N.Y. 1915).  To the extent Congress

wanted to clarify that the phrase "first brought" means the location that an offender first

arrives of his own volition after allegedly completing his crime, it could have done so.  It

did not.

The Court further rejects Defendant's argument that the phrase "is arrested or is

first brought" means nothing more than "is arrested" and renders "is first brought"

surplusage.  (ECF No. 77 at 10–11, 16–17.)  To the contrary, the statute provides

important guidance regarding venue when a defendant is first arrested outside of the

United States.  As the Ninth Circuit has recognized, the "'first brought' portion of § 3238

applies only if the defendant 'is returned to the United States already in custody,' in

connection with the offense at issue.  Thus, if the defendant is *not* in custody in

connection with that offense when he enters the United States, this provision does not

apply."  *Ghanem*, 993 F.3d at 1122 (internal citations omitted).

Furthermore, to the extent that Defendant argues that the Court's reading of

§ 3238 "defeats the statute's purpose of denying the prosecution the ability to choose its

venue" (ECF No. 77 at 17–18), the Court disagrees.  Section 3238 explicitly gives

prosecutors a choice of venue regarding the prosecution of an extraterritorial crime.

8

Here, the Government merely exercised that choice.[1]  *Cf. Slatten*, 865 F.3d at 788–89 (rejecting arguments of manufacturing venue where prosecutors chose to arrest a joint offender in the district, as "the government simply exercised the choice given to it under the statute"); *United States v. Valenzuela*, 849 F.3d 477, 488 (1st Cir. 2017) (recognizing that "most circuits have rejected the concept of manufactured venue or 'venue entrapment'"); *United States v. Rodriguez–Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) ("[Government] agents may influence where the federal crime occurs, and thus where venue lies, as well as whether the crime comes under federal rather than state law.  The entrapment doctrine protects the defendant against manufactured offenses (unless the defendant is predisposed); it does not limit venue.").

Accordingly, even assuming Defendant was not arrested in the District of Colorado in connection with the foreign murder charge, the Court would nonetheless conclude that venue for the foreign murder charge would properly rest in the District of Colorado because this is the district where he was first brought in connection with this offense.  The Court therefore denies this portion of the Motion.

**B.      Whether Count 1 Properly Alleges Venue**

Defendant argues that even if venue is proper in Colorado, Count 1 must still be

---

[1] In his reply, Defendant cites the District of Columbia Circuit's statement that "where the key events occur in one district, but the prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor event simply to establish venue," a claim of manufactured venue might have traction."  (ECF No. 98 at 9 (quoting *United States v. Slatten*, 865 F.3d 767, 788–89 (D.C. Cir. 2017)).)  Critically, however, he omits the court's next line: "*However, Section 3238 forecloses that scenario here by explicitly allowing the government to choose where to arrest a cooperative joint offender*."  *Slatten*, 865 F.3d at 789 (emphasis added); *see also id.* at 788 ("the defendants' claim that the government manufactured venue, while appealing on an intuitive level, fails in light of the congressional design of Section 3238").

dismissed because "Count 1 fails to allege any facts that, if proven, would establish

venue over the charged crime in this district."  (ECF No. 77 at 21.)  He argues because

it "entirely fails to allege venue, Count 1 is fatally defective and must be dismissed."

(*Id.*)

Count 1 of the Superseding Indictment provides,

> On or about October 11, 2016, the defendant LAWRENCE
> RUDOLPH, being a national of the United States as defined
> by the Immigration and Nationality Act, 8 U.S.C. §
> 1101(a)(22), willfully, deliberatively, maliciously, and with
> premeditation and malice aforethought, unlawfully killed
> Bianca Rudolph, a national of the United States as likewise
> defined by the Immigration and Nationality Act, while she
> was outside the United States but within the jurisdiction of
> another country.
>
> All in violation of Title 18, United States Code, Sections 1119
> and 1111.

(ECF No. 53 at 1.)

Federal Rule of Criminal Procedure 7(c)(1) provides, in relevant part:

> The indictment or information must be a plain, concise, and
> definite written statement of the essential facts constituting
> the offense charged and must be signed by an attorney for
> the government.  It need not contain a formal introduction or
> conclusion.  A count may incorporate by reference an
> allegation made in another count.  A count may allege that
> the means by which the defendant committed the offense
> are unknown or that the defendant committed it by one or
> more specified means. For each count, the indictment or
> information must give the official or customary citation of the
> statute, rule, regulation, or other provision of law that the
> defendant is alleged to have violated. . . .

It is well established that an indictment must: (1) contain "the essential elements"

of the offense intended to be charged, (2) sufficiently apprise the accused of what he

must be prepared to defend against, and (3) enable him to plead a judgment under the

indictment as a bar to any subsequent prosecution for the same offense.  *United States v. Brown*, 925 F.2d 1301, 1304 (10th Cir. 1991).

In *Carbo v. United States*, 314 F.2d 718 (9th Cir. 1963), *cert. denied*, 377 U.S. 953 (1964), the Ninth Circuit held that an indictment charging interstate transmission of threats was not insufficient because it failed to contain any allegations regarding venue. *Id.* at 733.  As the Ninth Circuit reasoned, "Rule 7(c) does not require venue to be pleaded.  Since it is waivable, it is not an essential fact constituting the offense charged.  Defendants have the right to be tried in the proper forum, not the right to be charged with the proper venue."  *Id.*  Likewise, the Sixth and Eighth Circuits have rejected similar arguments that an indictment is defective because the count does not allege venue.  *See, e.g.*, *United States v. Votteller*, 544 F.2d 1355, 1361 (6th Cir. 1976) (rejecting argument that count of indictment was defective for failure to allege venue because Rule 7(c)(1) does not require venue to be alleged in an indictment); *United States v. Branan*, 457 F.2d 1062, 1065 (6th Cir. 1972) ("The necessity for proof of venue does not, however, require an allegation of venue in the indictment itself."); *Hemphill v. United States*, 392 F.2d 45, 47 (8th Cir. 1968) ("Allegations of . . . venue are no more essential elements of an indictment than the name of a purchaser [of narcotics].").

Here, the Court finds that Count 1 of the Superseding Indictment is sufficient because it contains "the essential elements" of the offense intended to be charged, (2) sufficiently apprises Defendant of what he must be prepared to defend against, and (3) enables him to plead a judgment under the indictment as a bar to any subsequent prosecution for the same offense.  *Brown*, 925 F.2d at 1304; *cf. Wilkett v. United States*,

11

655 F.2d 1007, 1011 (10th Cir. 1981) (recognizing that "[v]enue is, of course, unlike the substantive facts which bear on guilt or innocence in the case" and "does not either prove or disprove the guilt of the accused").

To the extent Defendant relies on the Tenth Circuit's statement that "an indictment failing to allege venue is demurrable" in *Bratton v. United States*, 73 F.2d 795 (10th Cir. 1934), the Court is unpersuaded that this statement stands for the proposition that a count in an indictment that does not explicitly allege venue must be dismissed.  In that case, the Tenth Circuit dealt with an indictment that failed to preserve the defendant's double jeopardy rights by alleging the location of the crime.  *Id.* at 798. That is not at issue here.  (*See* ECF No. 53 at 1.)

Accordingly, the Court denies this portion of the Motion.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS that Defendant's Motion to Dismiss Count 1 for Lack of Venue and Request for Hearing (ECF No. 77) is DENIED.

Dated this 26th day of April, 2022.

BY THE COURT:

William J. Martínez
United States District Judge