IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1. LAWRENCE RUDOLPH,**
2. LORI MILLIRON,

    Defendants.

## ORDER EXCLUDING EVIDENCE PROFFERED BY THE GOVERNMENT PURSUANT TO ITS RULE 404(b) NOTICE

As set forth in the Superseding Indictment, a grand jury has charged Defendant Lawrence Rudolph with one count of foreign murder in violation of 18 U.S.C. §§ 1119 and 1111 ("Count 1"), and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 ("Count 2"). (ECF No. 53.) This matter is currently set for a 13-day jury trial beginning on July 11, 2022. (ECF No. 105.)

This matter is before the Court on the Government's Notice of Rule 404(b) Evidence ("Notice"), filed on May 16, 2022, which the Court construes as a motion to admit the proffered Rule 404(b) evidence. (ECF No. 118.) Rudolph responded on May 26, 2022. (ECF No. 130.) At the Court's direction (ECF Nos. 131, 132), the Government filed a reply (ECF No. 138) and a supplemental proffer (ECF No. 137) on May 31, 2022.

After reviewing the parties' briefs, the Court has concluded that it does not need an evidentiary or *Daubert* hearing to decide the relevant issues. For the following reasons, the Court will exclude the proffered Rule 404(b) evidence.

## I. RULE 404(b) EVIDENCE

The Government argues that Rudolph intentionally killed Bianca Rudolph ("Bianca"), his wife, at the Chinyembe hunting camp outside Zambia's Kafue National Park in 2016. (ECF No. 118 at 1.) Thereafter, Rudolph allegedly collected about $4.8 million from several life insurers by claiming Bianca had died in an accident. (*Id.*)

According to the Government, this is not the first time Rudolph has profited by staging an accident at Chinyembe. (*Id.*) To that end, the Government wishes to introduce Rule 404(b) evidence that allegedly shows that Rudolph chose Chinyembe because ten years earlier, he defrauded insurers of at least $3.5 million by intentionally shooting off the tip of his thumb at the same camp and claiming that a crocodile had bitten off that part of his hand. (*Id.*)

## II. LEGAL STANDARDS

"The admission or exclusion of evidence lies within the sound discretion of the trial court . . . ." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1086 (10th Cir. 1994); *see also United States v. Golden*, 671 F.2d 369, 371 (10th Cir. 1982) ("Trial judges have discretion to decide whether an adequate foundation has been laid for the admission of evidence.").

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is

generally admissible and should only be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Federal Rule of Evidence 404(b) provides:

> (1) Prohibited Uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) Notice in a Criminal Case.  In a criminal case, the prosecutor must:
>
> > (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> >
> > (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
> >
> > (C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

A court considers a four-factor test when determining the admissibility of evidence under Rule 404(b).  The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to FED.R.EVID. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper

3

> purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under Rule 404(b)).

## IV. ANALYSIS

In its Notice, the Government states that it plans to introduce the allegedly staged 2006 crocodile incident to show that Rudolph knew he could get away with killing his wife, as part of his 2016 fraud scheme, due to the remoteness of Chinyembe and the limited investigative resources of both the local Zambian authorities and his insurers. (ECF No. 118 at 1.) According to the Government, that knowledge is probative of Rudolph's malice aforethought, premeditation, and plan to murder his wife and defraud insurers again to collect $4.8 million. (*Id.*) Because of the charged case's circumstantial nature, in the Government's view, the probative value of this Rule 404(b) evidence is high and is not substantially outweighed by unfair prejudice. (*Id.* at 1–2.)

Given the foregoing, the Government argues that this evidence is necessary to prove the charges against Rudolph. (*Id.* at 9.) With respect to foreign murder, the Government must prove that Rudolph killed his wife with malice aforethought and premeditation. (*Id.*) And with respect to mail fraud, the Government must prove that Rudolph, with specific intent to defraud, devised a fraudulent scheme to obtain money or property through means of materially false or fraudulent pretenses, representations, omissions, or promises. (*Id.*)

The Government's theory is that Rudolph devised a scheme to kill his wife in remote Africa and then claim the life insurance proceeds by lying and omitting the truth about how she died. (*Id.*) Because the only people in the cabin when Bianca died were she and Rudolph, the proof that Rudolph murdered her and defrauded insurers must rely on the circumstances leading up to her death, as well as prior and subsequent actions suggesting that her death was planned. (*Id.*)

The Government argues that its proffered evidence is admissible under Rule 404(b) to establish intent, preparation, plan, knowledge, and lack of accident. (*Id.* at 10.) Specifically, the Government contends that Rudolph's knowledge that the remote nature of Chinyembe, the limited resources available to local law enforcement, and the site's inherent expense and difficulty to any American insurer's claim investigation served twin purposes: it made it possible for him to defraud his insurers in 2006 and makes it more likely that he intentionally chose Chinyembe to kill his wife in 2016 as part of his plan to avoid detection and defraud insurers once more.

In its supplemental proffer, the Government identifies the evidence it intends to introduce in connection with the crocodile incident, including the witnesses it proposes to call, the amount of time for direct examination, a proffer of relevant facts, and a description of the likely exhibits to be offered. (ECF No. 137.) The Government wishes to call nine witnesses,[1] and (unrealistically, in the Court's view) estimates that direct examination would take approximately three to four hours. (*Id.* at 1–3.) The Government expects that a *Daubert* hearing will not be required in connection with its

---

[1] The Government already intends to call three of the proposed witnesses for testimony about the charged offenses, including Roussos, Smith, and a court reporter or agent. (ECF No. 137 at 3.)

expert witness, Dr. James Caruso, who is the relevant forensic medical examiner.  (*Id.* at 4.)  In sum, the Government contends that only a "marginal" amount of trial time would be spent on the crocodile incident.  (*Id.* at 3.)

In response, Rudolph argues that the proposed Rule 404(b) evidence "invites a forbidden propensity inference under Rule 404" and also "violates Rule 403."  (ECF No. 130 at 1.)  In particular, Rudolph contends that the Government's assertion that the 2006 thumb injury was self-inflicted is "barely supported speculation."  (*Id.*)  Rudolph also asserts that the incident is "too remote in time to be probative of preparation or planning for the crimes charged."  (*Id.*)

Regarding the amount of trial time that would be required to fully develop the evidence related to the crocodile incident, Rudolph argues this evidence would create an "unnecessary and improper mini-trial."  (*Id.* at 2.)  Rudolph suggests that should the Government seek to call Dr. Caruso as a witness, a *Daubert* hearing must take place.  (*Id.*)  Additionally, Rudolph states that he would seek to introduce evidence from at least three rebuttal witnesses, including a medical expert.  (*Id.*)

While the determination of whether to allow evidence of the crocodile incident is, in the Court's view, a close call, the Court ultimately agrees with Rudolph.  As Rudolph states, to be relevant, the Government's Rule 404(b) evidence must make a material fact more or less likely as a matter of logical reasoning that does not rely on Rudolph's purported "bad character."  *See Old Chief v. United States*, 519 U.S. 172, 178–79 (1997); *United States v. Henthorn*, 864 F.3d 1241, 1249, 1251 (10th Cir. 2017).  Its "relevance cannot 'depend on a defendant likely acting in conformity with an alleged character trait' or require the jury to draw a 'chain of inference dependent upon a

conclusion' about the defendant's character." *Henthorn*, 864 F.3d at 1251–52 (citing *United States v. Commanche*, 577 F.3d 1261, 1267, 1269 (10th Cir. 2009)).

Despite the Government's arguments to the contrary, the Court concludes that the proposed Rule 404(b) evidence concerning the crocodile incident would impermissibly require the jury to make prohibited inferences about Rudolph's character, as well as to conclude that he has a propensity to commit insurance fraud at Chinyembe. The Court agrees with Rudolph that the Government's proffered crocodile attack evidence is "quintessential propensity" evidence, because, as Rudolph argues, "its relevance depends on a supposed propensity to commit similar crimes in the same place for the same reasons." (ECF No. 130 at 10.)

The Court has considered the Government's argument in its reply that Rudolph has confused the issue. (ECF No. 138.) Specifically, the Government argues that Rudolph has set up a "straw-man theory of relevance," by claiming that the Government's argument is that "whenever he commits insurance fraud, he has a propensity to go to Africa to stage an incident." (*Id.* at 2.) Further, the Government argues that Rudolph "fundamentally misunderstands what is meant by the evidence of 'character or character trait' prohibited by Rule 404(b)." (*Id.* at 3.) By contrast, the Government argues that its theory is not that Rudolph has a character for committing insurance fraud, but that because Rudolph knew he could get away with insurance fraud at Chinyembe based on the crocodile incident, it is more likely that he chose that same location when he allegedly later decided to kill his wife for insurance proceeds. (*Id.*)

7

In the Court's view, the Government's reasoning regarding its use evidence of the crocodile incident walks the *finest* line between impermissible propensity evidence and admissible Rule 404(b) evidence.  However, despite the strong arguments on both sides, the Court concludes that—in addition to constituting impermissible propensity evidence—the Rule 403 implications of admitting the evidence of the alleged crocodile attack tip the balance in favor of excluding the evidence.  Even if the Court were to give the jury a detailed and strongly-worded limiting instruction, the fact remains that evidence of the crocodile incident disproportionately risks unfairly prejudicing Rudolph, wasting a substantial amount of time, and confusing the jury from the evidence relevant to the charges in this case.

First, in stark contrast with the Government's prediction that its Rule 404(b) evidence will only take approximately three or four hours to introduce on direct examination, Rudolph anticipates it will take approximately two or three days to introduce all of the required evidence.  (ECF No. 130 at 12.)  In the Court's view neither party's estimate is likely accurate, although its own guess is that the time it would take to fully put on this trial within the trial is closer to Defendant's prediction.  In any event, excluding time for jury selection, Rudolph's estimate is approximately one seventh of the total time allotted for trial in this case.  Apportioning even close to such a large amount of trial time to the crocodile incident certainly constitutes "wasting time" within the meaning of Rule 403.

Next, even more critically, the Court agrees with Rudolph that the introduction of the crocodile incident will confuse the issues and mislead the jury in contravention of Rule 403.  "Rule 403 does much of the heavy lifting in the admissibility analysis by

8

excluding other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). Such is the case here. As Rudolph points out, even if the Government's proposed Rule 404(b) evidence "had relevance independent of a propensity inference, the proffered evidence nonetheless carries tremendous risk that the jury will impermissibly, despite any limiting instructions, assume that Dr. Rudolph's earlier insurance claims in connection with an injury on safari mean that he is an inveterate fraudster." (ECF No. 130 at 11.)

In the end, the risk of prejudice to Rudolph—that the jury will assume that because he may have inflicted bodily harm on himself in order to collect insurance money at Chinyembe, he likely also murdered his wife at that same location a decade later—is simply too great for the Court to accept. While a close call, the Court concludes that the interest of justice is best served by excluding the Government's proffered Rule 404(b) evidence.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS that:

1. The Government's proffered Rule 404(b) Evidence, as set forth and described in its construed Notice (ECF No. 118), is EXCLUDED for the reasons explained above; and

2. This case remains set for trial beginning on **July 11, 2022 at 8:30 a.m.** (ECF No. 105.)

Dated this 13th day of June, 2022.

BY THE COURT:

William J. Martinez
United States District Judge