IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. LAWRENCE RUDOLPH and
2. LORI MILLIRON,

    Defendants.

**GOVERNMENT'S UNOPPOSED MOTION TO OBTAIN TESTIMONY FROM AN OTHERWISE UNAVAILABLE FOREIGN WITNESS VIA LIVE CONTEMPORANEOUS VIDEO CONFERENCE**

    The government respectfully moves the court for an order permitting Pieter Swanepoel to testify during the trial via live videoconferencing from the U.S. Embassy in Pretoria, South Africa or the U.S. Consulate in Cape Town, South Africa. Defense counsel have no objection to the motion.

    1.    Pieter Swanepoel is a professional hunter who resides in Zambia. He is the father of Mark Swanapoel, the professional hunter who guided Bianca Rudolph's hunt between September and October 2016. Pieter Swanepoel was present during the first few days of the hunt and is in a position to testify about the condition of the firearms during their initial testing. He is also in a position to testify about Bianca's history of hunting and her experience with firearms.

    2.    Pieter Swanepoel has indicated that he is willing to appear voluntarily to provide testimony under oath.   However, his medical issues make it extremely hazardous for him to make the arduous sixteen-plus hour flight from the transportation hub of Johannesburg to initial ports in the United States and then on to Denver, Colorado. A letter from his doctor is attached.

3.      Pieter Swanpoel resides in Zambia but is able to travel for medical treatment in South Africa. He is able and willing to make the much less arduous local trip to the U.S. Embassy in Pretoria or to the U.S. Consulate in Cape Town. Those facilities have a reliable source of electricity and internet, as well as computers capable of effectively using the Cisco Meeting App software that has been used through the COVID pandemic for video conferencing. South Africa is eight hours ahead of Denver, Colorado. Taking testimony between 8:00 a.m. and 10:00 a.m. Mountain Daylight Time would mean the presence of Mr. Swanepoel at the embassy between 4:00 p.m. and 6:00 p.m. South Africa Time.

4.      The Federal Rules of Criminal Procedure are silent on whether it is permissible to take live testimony by video during a trial. However, Federal Rule of Criminal Procedure 57 allows the Court to draw from mirror practices authorized by the Federal Rules of Civil Procedure. Fed. R. Crim. P. 57(b) (authorizing judges to regulate practice so long as it is otherwise consistent with other sources of law); see Fed. R. Crim. P. 2 (advising that the rules should be interpreted to provide for just outcomes, fair administration, and unnecessary expense

and delay). The civil rules explicitly authorize the televised presentation of testimony in compelling circumstances and when good cause is shown. Fed. R. Civ. P. 43.

5. The issue then, is not whether a rule permits the procedure. The issue is whether such a thing is permitted in a criminal case where "accused shall enjoy the right. . . to be confronted with the witness against him." U.S. Const. amend. VI. The key case here is *Maryland v. Craig*, 497 U.S. 836 (1990). In that case, the Supreme Court upheld the trial court's use of a one-way live video feed that allowed the defendant to see the child witness, but that allowed the child witness to testify in a separate room without seeing the defendant. To reach that conclusion, the Court reasoned that Sixth Amendment rights are not absolute and must sometimes give way where (1) necessary to further an important public policy and (2) whether the reliability of the testimony is otherwise assured." *Id.* at 850.

6. The procedure proposed here satisfies the *Craig* standard.

   a. The testimony hear furthers the important public policy interests attendant to judicial resolution of cases implicating our government's ability to police and regulate the conduct of its citizens overseas, consistent with international law and congressionally-announced prerogatives. As made clear in the exhaustive briefing related to venue, the Constitution itself recognizes the fact that criminal offenses may spill over international boundaries. It would be strange to say that there may be a venue for those cases, but no constitutional means of securing testimony from otherwise willing witnesses when they are "unavailable" as that term has been developed through centuries of common-law reasoning leading up to the adoption of Federal Rule of Evidence 804. Furthermore, the public policy interest in adjudicating acts of wrongdoing that may have been committed by and between U.S. Citizens in other countries is one recognized

in both international law and, in this specific case, by the very existence of the foreign murder statute at 18 U.S.C. § 1119.

        b.     The reliability of the testimony here is even greater than it was in *Craig*. First, video conferencing technology has advanced by wild leaps in the past thirty years. This Court, no less than every other federal district court in the country, has extensive experience using video conferencing technology to avoid substantial disruptions to the administration of justice that would otherwise have occurred because of COVID-19. Lawyers are used to the technology, IT professionals are more adept at fixing problems, and jurors themselves are likely to be familiar with listening and interacting with others through video conferencing. Second, the video here is two-way, rather than one way. The procedures here would preserve all elements of the confrontation right, including the ability of the defendant, the judge and the jury to view the defendant's demeanor, the ability of the defendant to provide information to his counsel during the examinations, and the ability for objections to be ruled upon contemporaneously. The testimony will take place on "U.S. soil" — the embassy at one end, the courtroom here in Denver at the other — and the oath can be administered and enforced as necessary.

    7.     The testimony here is important for the jury's consideration of the matter. Pieter Swanepoel is a direct eye witness to events preceding Bianca Rudolph's death. His testimony — both on direct and in cross-examination — is crucial to a just verdict in this case. But without this procedure, he would be unavailable and important public policy interests would be undermined. For all of these reasons, and because the defendants have no objection to this procedure, the government respectfully asks for an order permitting the testimony. If granted, the government will work with defense counsel and Court staff to develop a logistical plan that will

ensure, to the greatest extent possible, the smooth and expeditious taking of testimony during the trial.

                                                  Respectfully submitted,

                                                  COLE FINEGAN
                                                  United States Attorney

| By: | /s Bryan Fields | By: | /s E. Garreth Winstead | By: | /s J. Bishop Grewell |
|---|---|---|---|---|---|
| | Bryan Fields | | E. Garreth Winstead | | J. Bishop Grewell |
| | Assistant United States Attorney | | Assistant United States Attorney | | Assistant United States Attorney |
| | U.S. Attorney's Office | | U.S. Attorney's Office | | U.S. Attorney's Office |
| | 1801 California St. Suite 1600 | | 1801 California St. Suite 1600 | | 1801 California St. Suite 1600 |
| | Denver, CO 80202 | | Denver, CO 80202 | | Denver, CO 80202 |
| | (303) 454-0100 | | (303) 454-0100 | | (303) 454-0100 |
| | Bryan.Fields3@usdoj.gov | | Garreth.Winstead@usdoj.gov | | Bishop.Grewell@usdoj.gov |
| | Attorney for the Government | | Attorney for the Government | | Attorney for the Government |

**CERTIFICATE OF SERVICE**

        I hereby certify that on the 17th day of June, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

        *s/ Bryan David Fields*
        United States Attorney's Office