# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. LAWRENCE P. RUDOLPH, D.D.S., :
          :
      Plaintiff, :
          :
v.          : Civil Action No. 2:12-cv-001710
          :
SAFARI CLUB INTERNATIONAL, :
RALPH CUNNINGHAM, LARRY :
HIGGINS, SCOTT CHAPMAN, JOYCE :
HANLEY, DAVID SMALL, and JOHN :
WHIPPLE        :
          : **JURY TRIAL DEMANDED**
      Defendants. :

## AMENDED COMPLAINT

AND NOW TO WIT, this 6th day of February, 2013, Plaintiffs, by and through their

attorneys, Charles E. Steele, Esquire and Jonathan D. Steele, Esquire of STEELE SCHNEIDER,

file the within Complaint against the above-referenced Defendants, and in support thereof aver as

follows:

### Jurisdiction

1. There is complete diversity of citizenship between the plaintiff and all defendants and the

   matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

2. This court has subject matter jurisdiction of the case under the provisions of 28 U.S.C. §

   1332(a).

3. Venue is proper in the United States District Court for the Western District of

   Pennsylvania pursuant to 28 U.S.C.A § 1391(b).

### Parties

4. Plaintiff is Dr. Lawrence P. Rudolph, D.D.S., (Plaintiff) a citizen of the Commonwealth

   of Pennsylvania residing at 336 Lakewood Drive, Greensburg, Pennsylvania 15601.



1

5. Defendant Safari Club International (SCI) is a nonprofit corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 4800 West Gates Pass Road, Tucson, Arizona 85745-9490.

6. Defendant Ralph Cunningham (Defendant Cunningham) is a citizen of the State of Texas residing at 5128 Tangle Lane, Houston, Texas 77056.

7. Defendant Larry Higgins is a citizen of the State of Michigan residing at 1894 Kosiara Road, Gaylord, Michigan 49735-9392

8. Defendant Scott Chapman is a citizen of the State of Michigan residing at 9357 General Drive Ste 121, Plymouth, Michigan 48170-4666.

9. Defendant Joyce Hanley is a citizen of the State of Florida residing at 3208 N Flagler Drive, West Palm Beach, Florida 33407-4914.

10. Defendant David Small is a citizen of the State of Nevada residing at 8801 Icy Mistral Court, Las Vegas, Nevada 89131.

11. Defendant John Whipple is a citizen of the State of California residing at 11 Yale Court, Coto de Caza, California 92679-5008.

## Factual Background

10. SCI is a nonprofit organization of approximately 55,000 members with 194 chapters in 26 countries with the goal of protecting hunter's rights and promoting wildlife conservation.

11. SCI has multiple chapters in Pennsylvania including one in Pittsburgh.

12. SCI has approximately 320 members on its Board of Directors (BOD) and a ten member Executive Committee.

2

INV_00015267

13. The Board of Inquiry (BOI) is a standing committee of five members within SCI that is in charge of investigating and ruling on issues related to member misconduct.

14. During all time relevant to these facts, Defendant Ralph Cunningham (Cunningham) acted as Chairman of the BOI.

15. During all time relevant to these facts, Defendants Cunningham, Higgins, Chapman, Hanley, and Smalls were members of the BOI.

### Plaintiff's Reputation

16. Plaintiff for many years has enjoyed an excellent reputation as a member of the international hunting community.

17. Plaintiff has been very active in pro-hunting and conservation groups such as Wild Sheep, Ovis/Grand Slam, Weatherby Foundation International, Conklin Foundation, CIC, Shikar Safari Club, Hunter Legacy Fund and Safari Club International with the local Pittsburgh chapter and the International members.

18. Plaintiff has been member of SCI for approximately twenty-five years and a "life member" since 2006.

19. In 2007, Plaintiff received the Weatherby Award, which annually recognizes an individual for outstanding support of wildlife conservation, lifetime hunting achievement and dedication to the principles of ethical sport hunting.

20. As an SCI member, Plaintiff has served as SCI Director-at-Large, Safari Club International Foundation (SCIF) Director, SCI-PAC Chairman, Marketing Chairman, National Fundraising Chairman, and on many other committees including the SCI Executive Committee.

3

INV_00015268

21. Plaintiff served as President of SCI and SCIF for two consecutive yearlong terms between 2009-2011.

22. In the forty-year history of SCI, only four Presidents have served consecutive terms.

23. Until Defendants' defamatory conduct occurred, Plaintiff was the President of Weatherby Foundation International, a nonprofit corporation whose objective is to educate the non-hunting public on the beneficial role of ethical sport hunting and its contribution to wildlife conservation.

24. Following his second term as President of SCI, Plaintiff signed an employment contract to perform public relation functions for SCI as their Chief Communications Officer.

25. Plaintiff performed excellently in his functions as Chief Communication Officer during the time his contract was in effect.

26. Plaintiff's hunting and conservation efforts have a strong relationship to Pennsylvania; until the defendants' defamatory conduct occurred, he was an active member of the Pittsburgh Chapter of SCI and on the board of the Pittsburgh based Conklin Foundation.

### Factual Background of BOI Petition Filed against Plaintiff

26. On February 1-4, 2012, SCI held its annual Hunters Convention in Las Vegas Nevada.

27. During and before this convention SCI member Paul Babaz (Babaz) circulated false rumors about Plaintiff.

28. Babaz falsely stated, Plaintiff was having a long-term affair with a woman in Atlanta under the pretext of conducting SCI business and was using his title as President of SCI to seduce his mistress.

29. Babaz falsely stated "this wasn't the first time" that Plaintiff had engaged in this kind of conduct.

4

INV_00015269

30. Babaz falsely stated Plaintiff was in danger of losing his award from the Weatherby Foundation because of his "adulterous behavior."

31. Babaz falsely stated, that Plaintiff had threatened to fire the host of SCI's television show and cancel the show.

32. Babaz published these false statements to multiple members of SCI including but not limited to Robert Anderson, Jon Wimple, Kirt Fredericks, Jim Frickert, Ron Mizrahi and Plaintiff's Wife, Bianca Rudolph.

33. During the February 2012 convention, Plaintiff and his wife approached Babaz in private to discuss the above statements.

34. Plaintiff's conversation with Babaz became heated and Babaz threatened Plaintiff with physical violence, stating, "I'll take that .45 Kimber you wanted, shove it up your ass, and empty the clip."

35. Plaintiff did not threaten Babaz or become enraged himself.

36. There were no other witnesses to the conversation between Plaintiff, Plaintiff's wife, and Babaz.

37. As a result, of the conversation Babaz filed a false BOI petition against Plaintiff alleging that he acted improperly at the Las Vegas convention and on a hunt that took place in Mexico in 2006.

38. No other claims against Plaintiff were raised in the BOI petition filed by Babaz.

39. The BOI has a detailed procedure in place to grant accused members the right to defend themselves against defamatory accusations leveled against them.

INV_00015270

40. The BOI procedures are intended to investigate, eliminate, and otherwise dismiss bad faith defamatory accusations, by allowing the accused to offer a defense to scurrilous and false accusations of misconduct and misbehavior.

41. The BOI is required to grant the accused, such as Plaintiff, the right to submit a written response to allegations of misconduct.

42. The BOI is required to investigate, in good faith, accusations against an SCI member, such as Plaintiff after the submission of the accused's (Plaintiff's) written rejoinder to the proffered accusations of misconduct.

43. Specifically, the BOI procedures also guarantee an accused SCI member, such as Plaintiff, the right to a hearing to contest accusations of misconduct that the BOI preliminarily belief have a basis in fact.

44. On March 27, 2012, Plaintiff submitted a written response denying the allegations contained in the petition through his legal counsel in accordance with BOI Rule of Procedure 4 (c).

45. The BOI issued a letter on May 1, 2012 setting forth their findings of a violation and recommendation for sanctions in accordance with BOI Rule of Procedure 6 (d).

46. The BOI included in its May 1, 2012 letter findings on charges that were not included in the petition filed against Plaintiff, and failed to give him notice of such charges and an opportunity to respond at any time before the letter was sent.

47. The following false claims against Plaintiff contained in the May 1, 2012 letter were not subject to any petition filed by an SCI member or resolution voted on by the executive board:

    1.   breach of fiduciary duties to SCI,

INV_00015271

2. making false or deceptive record book entries,

3. making false statements and/or publishing nonpublic SCI information in a publicly available video about SCI,

4. filing questionable reimbursement requests, and

5. engaging in dishonest and misleading conduct toward the BOI.

48. Under BOI Rule of Procedure 6 (e) Plaintiff had until May 31, 2012 to request a hearing where he would be given an opportunity to defend himself on the false charges leveled against him.

### May 12, 2012 Board Meeting

49. On May 12, 2012 SCI held a board meeting in Washington D.C. where elections for the 2012-2013 term took place.

50. Plaintiff was a candidate for the position of secretary of SCI for the 2012-2013 term.

51. Approximately, one hundred-twenty members of the BOD were physically present at the BOD meeting and another 40 members from around the world participated via videoconference.

52. Upon information and belief, about 8 members from Pennsylvania attended via videoconference.

53. SCI had full knowledge of who was attending the meeting via videoconference and what state they would be participating from, as members must login and register to participate.

54. Before the BOD meeting, members of the BOI knew in advance that there would be a significant number of BOD members attending the BOD meeting physically or virtually.

INV_00015272

55. Upon information and belief, the BOI collectively decided to present false charges against Plaintiff sans granting him notice or an opportunity to defend himself against defamatory and baseless allegations.

56. The BOI did not want to be constrained by hearing rejoinders to the false allegations leveled against Plaintiff in the context of a hearing, to which Plaintiff was entitled.

57. The BOI's intent, in proffering charges publicly against Plaintiff that had not been fully vetted in a hearing, to which the Plaintiff was entitled, was to intentionally defame Plaintiff against the background of eminent SCI elections.

58. The charges publicly announced by Defendant Cunningham and approved by the BOI beforehand on May 12, 2012 included, among other allegations, statements that Plaintiff was an adulterer, filed false hunting claims and cheated on his claimed expenses to SCI.

59. The statements made relevant to the Plaintiff referenced in paragraph 58 herein were of a defamatory character, understood by the audience to contain a defamatory meaning and to apply to the Plaintiff and caused special harm to the Plaintiff by injuring his reputation and marriage.

60. Defendant Cunningham's and the BOI's defamatory comments relating to Plaintiff were not made on a proper occasion, for proper motive, in a proper manner, or based upon a reasonable cause and, therefore, constituted an abuse of any conditional privilege that Defendant Cunningham or the BOI may have possessed.

61. The BOI knew that defaming Plaintiff, at the BOD meeting, would influence the SCI elections, such influence being that Plaintiff would be defeated for elective office at SCI, lose his employment as a Chief Communications Officer for SCI and his SCI membership.

INV_00015273

62. The BOI also knew that Plaintiff as a resident of Pennsylvania would feel the brunt of these defamatory statements in his home state.

63. The BOI knew that Plaintiff and his wife were married in and residents of Pennsylvania.

64. It is axiomatic that Pennsylvania has a strong interest in Plaintiff's marriage inasmuch as it is regulated by Pennsylvania as a social contract.

65. The Divorce Code of Pennsylvania, at section 3102, specifically states that "the family is the basic unit in society and the protection and preservation of the family is of paramount public concern."

66. Pennsylvania has a manifest concern to hold persons accountable for threatening the preservation of a marriage and the family it has created.

67. Pennsylvania has an interest in the marriages it sanctions under its laws in light of the support obligations owed between spouses and the property owned by married couples.

68. The BOI also knew that Plaintiffs wife was a member and local president of SCI's Pittsburgh Pennsylvania chapter and that any reputational assault on her Plaintiff husband would be felt by her within and outside the hunting community in Pennsylvania.

69. Members of the BOI acted with malice and for personal gain in intentionally publishing false and defamatory statements concerning Plaintiff, such personal gain being to defeat Plaintiff in SCI elections and to replace him in his appointed position for SCI with a political affiliate of their own against the background of intentionally injuring his Pennsylvania marriage.

70. Members of the BOI also knew of the connection between Plaintiff's hunting and conservation efforts and Pennsylvania, in that they were aware he was a past Pittsburgh Chapter President, and a founding member of the Pittsburgh based Conklin Foundation.

9

INV_00015274

71. Members of the BOI were further aware that Plaintiff would suffer the burnt of the harm caused by their defamatory conduct in Pennsylvania, in that his hunting, business and marriage were centered in Pennsylvania as a resident.

72. On May 12, prior to the 2012-2013 elections taking place, the BOD and the Executive Council (EC) entered into an executive session.

73. The BOI knew that any executive session called at the BOD meeting would be attended by all BOD members present at the May 12, 2012 meeting.

74. Plaintiff fully intended to request a hearing to challenge the defamatory allegations leveled against him and did request a hearing on May 31, 2012.

75. During the May 12, 2012 executive session, Defendant Cunningham prematurely and intentionally detailed all charges the BOI filed against Plaintiff, fully knowing that the charges were nothing more than defamatory allegations since Plaintiff had not been afforded his full measure of time to request a hearing or his full right to respond, as is required by BOI rules.

76. Individual members of the BOI, including Defendants Higgans, Chapman and Hanely, preauthorized and otherwise approved of Defendant Cunningham's defamation of Plaintiff on May 12, 2012 and the assault on Plaintiff's Pennsylvania marriage.

77. Defendant Cunningham knowingly published defamatory statements to the board members including but not limited to allegations of:

   1. Adultery,

   2. Making false statements in a campaign video,

   3. Using intellectual property without authority,

   4. Spelling a members name wrong,

10

INV_00015275

5.  Wrongful reimbursement claims,

6.  Travel without Executive Council approval, and

7.  Making false statements to the BOI.

78. The statements made relevant to the Plaintiff referenced in paragraph 75 herein were of a defamatory character, understood by the audience to contain a defamatory meaning and to apply to the Plaintiff, and caused special harm to the Plaintiff by injuring his reputation and marriage.

79. Defendant Cunningham's and the BOI's defamatory comments relating to Plaintiff were not made on a proper occasion, for proper motive, in a proper manner, or based upon a reasonable cause, and therefore constituted an abuse of any conditional privilege that Defendant Cunningham or the BOI may have possessed.

80. The defamatory comments made on May 12, 2012, preapproved by the BOI, were not made on the proper occasion inasmuch as Plaintiff had yet to be given the opportunity to defend himself.

81. The defamatory statements made on May 12, 2012, preapproved by the BOI, were not made with proper motive inasmuch as the BOI was fueled by political motives to destroy Plaintiff's reputation with SCI in the context of an election of SCI officers.

82. The defamatory statements made on May 12, 2012, preapproved by the BOI, were not made in the proper manner inasmuch as the comments could have been conveyed to Plaintiff privately and not at a live and internet broadcasted meeting attended by a large number of SCI members.

INV_00015276

83. The defamatory statements made on May 12, 2012, preapproved by the BOI, were not made based on reasonable cause inasmuch as there was inadequate proof of the allegations leveled against Plaintiff.

84. The BOI, and the individual members of the same, were fully cognizant of the consequences to Plaintiff's marriage of alleging Plaintiff was an adulterer, i.e., that Plaintiff would be viewed members of the hunting and business community as a deceitful spouse who breached his duty to be faithful to his wife and that Plaintiff's Pennsylvania marriage would be regarded as being wrought with trouble.

85. The BOI, and the individual members of the same, were fully cognizant of the consequences to Plaintiff's marriage of alleging Plaintiff was an adulterer would be that Plaintiff's wife would be viewed an unattractive or inept spouse incapable of keeping her marriage intact by satisfying her husband so that he would not seek the comfort of women outside her marriage.

86. The BOI, and the individual members of the same, were aware, at the time they chose to allege that Plaintiff was an adulterer, that they were directing a devastating assault on Plaintiff's Pennsylvania marriage, their illegal acts knowingly and intentionally being directed toward a marriage that Pennsylvania regulates.

87. During all relevant times, Defendant BOI members were acting within the scope of their duties as BOI members and agents of SCI.

88. In bad faith, with malice and for the purpose of publishing the defamatory comments to the BOD immediately prior to an election, the BOI ignored the established process outlined in the SCI Board of Inquiry: Rules of Procedure.

INV_00015277

89. Defendant Cunningham and the BOI members intentionally failed to take reasonable measures to verify the statements contained in his publication of false and defamatory allegations against Plaintiff.

90. The BOD knew that the BOI was violating its own procedures when it intentionally published un-vetted and defamatory accusations against Plaintiff.

91. The BOD intentionally enabled members of the BOI to intentionally defame Plaintiff by permitting the widespread publication of defamatory statements about the Plaintiff.

92. The BOD was warned not to engage in intentional defamation of Plaintiff by certain of its members who objected to the BOI and the BOD publishing un-vetted defamatory allegations about Plaintiff.

93. The BOI's publication of known defamatory statements was intended to convey, and did convey, to the community at large, the impression that Plaintiff lacked moral character.

94. The BOI's publication of known defamatory statements was calculated to, and did hold plaintiff up to public scorn, hatred, and ridicule.

95. The brunt of this public scorn, hatred, and ridicule was brought on Plaintiff in Pennsylvania.

96. The words spoken by Defendant Cunningham were false and defamatory and known by him and the BOI to be false and defamatory.

97. The words spoken by Defendant Cunningham, and approved by the BOI, were understood by those who heard them to be defamatory in nature.

98. Defendant BOI members acted with knowledge of the falsity of the statements made or with reckless disregard of their truth or falsity.

13

INV_00015278

99. The words and actions of the Defendants as outlined herein were undertaken intentionally and with an improper purpose so as to defame Plaintiff to cause injury to his reputation and loss of income from his consultant position at SCI.

### August 18, 2012 Hearing

100. The BOI engaged in a course of conduct to stage the appearance of a hearing relevant to the un-vetted defamatory accusations leveled against Plaintiff on Saturday August 18, 2012.

101. The BOI refused to allow Plaintiff a meaningful opportunity to defend himself in a telephone hearing by not permitting Plaintiff's counsel adequate time to prepare for the telephone hearing, refusing to arrange for a mutually convenient date for the hearing so that Plaintiff and his counsel to attend and denying Plaintiff the right to face his accusers in a face-to-face hearing.

102. The BOI's plan in being uncooperative in scheduling an adequate and mutually convenient hearing was to belatedly grant Plaintiff the hearing he should have been provided prior to the BOI maliciously publishing defamatory and un-vetted allegations about the Plaintiff at the BOD meeting on May 12, 2012.

103. The BOI, in its attempt to conduct a sham hearing for Plaintiff, intends to advance its malicious plan to defame Plaintiff by making it appear to the SCI BOD that Plaintiff "had his day in court" relevant to the defamatory allegations leveled against him when, in fact, the BOI has denied Plaintiff a meaningful opportunity to defend himself against said false allegations.

104. There was no good reason for the BOI to deny Plaintiff a full opportunity to defend himself at a mutually convenient time and place against the defamatory

14

allegations inasmuch as the BOI has granted other SCI members such accommodations in the past.

105.    The BOI's refusal to grant Plaintiff the opportunity to defend himself against defamatory allegations is based upon the BOI's bad faith intent to injure Plaintiff's reputation and visit economic damages upon him by providing the SCI BOD a basis, albeit a bad faith basis, to dismiss Plaintiff as a SCI member and communications consultant for SCI.

106.    The BOI treated other SCI members more fairly than he, with the BOI not defaming the accused SCI member of wrongdoing at a BOD meeting.

107.    On March 27, 2012 a BOI petition of misconduct was filed against SCI member Babaz for his behavior at the Las Vegas convention and the publishing of defamatory comments concerning Plaintiff.

108.    Babaz is a political opponent of Plaintiff's within SCI.

109.    Six detailed statements were submitted in support of the averments contained in the BOI petition of misconduct filed against Babaz.

110.    Upon information and belief, the BOI failed to contact any of the SCI members who prepared the statements against Babaz.

111.    Upon information and belief, the BOI relied solely on the results of a self-administered polygraph obtained by Babaz in dismissing the charges against him.

112.    Notably, Plaintiff successfully underwent an independent polygraph examination relevant to charges leveled against him but charges against him were not dismissed because Plaintiff successfully passed a polygraph examination.

INV_00015280

113.    The BOI brushed aside the petition of misconduct against Babaz, declining to undertake an investigation of the allegations contained in the petition of misconduct filed against him to support Babaz because of his affiliation with members of the BOI.

114.    SCI Member Bruce Evanson (Evanson), another affiliate of members of the BOI was also the subject of a petition of misconduct.

115.    As with Babaz, the BOI brushed aside the allegations against Evanson to protect him from the derision he might experience should the allegations against him been investigated and/or published.

116.    The BOI's conduct in ignoring its duties to investigate allegations of misconduct when such allegations involve political allies or affiliates of the BOI demonstrates that the BOI acted with malice relevant to the Plaintiff.

117.    The BOI intentionally and maliciously treated Plaintiff differently than Babaz and Evanson by converting defamatory allegations into charges without affording Plaintiff his right to prove that the defamatory allegations had no basis in fact.

118.    On August 22, 2012 the SCI Executive Committee issued an emergency suspension of Plaintiff's membership in SCI.

119.    On August 23, 2012 Plaintiff requested a hearing on the issue of the emergency suspension in accordance with SCI rules.

120.    The BOI initially offered Plaintiff a hearing but no hearing on the emergency suspension was provided to Plaintiff.

### August 25, 2012 Board Meeting

121.    On August 25, 2012 SCI held a board meeting in Jackson Hole Wyoming.

INV_00015281

122.     At this meeting, the BOD expelled Plaintiff from his membership in SCI, terminated his employment contract as Chief Communication Officer, and removed his name from all record book entries and awards.

123.     Prior to voting on expelling Plaintiff from membership in SCI, Defendant Cunningham again read a list of false charges leveled against Plaintiff.

124.     The charges included new claims that Plaintiff breached his duty of loyalty, care, and fair dealing by moving the Weatherby Award Dinner to a different location than that used by SCI.

125.     The expulsion of Plaintiff referenced in paragraph 122 herein and Defendant Cunningham's and the BOI's comments were of a defamatory character, understood by the audience to contain a defamatory meaning and to apply to the Plaintiff, and caused special harm to the Plaintiff by injuring his reputation.

126.     The expulsion of the Plaintiff and the comments of Defendant Cunningham and the BOI were not made on a proper occasion, for proper motive, in a proper manner, or based upon a reasonable cause, and therefore constituted an abuse of any conditional privilege that Defendant Cunningham or the BOI may have possessed.

127.     The false innuendo conveyed by the charge referenced in paragraph 99 herein portrays Plaintiff as generally duplicitous and disloyal to an organization for which he was an officer and strong supporter.

128.     Defendant's defamatory statements have been published beyond the members of the SCI and reached the Pennsylvania hunting community.

INV_00015282

### Defamatory Letter from Whipple

129.     On August 25, 2012 SCI took further action to remove all of Plaintiff's Record

Book entries, to remove Plaintiff's name from all World Hunting Awards he qualified

for, and to remove Plaintiff's name from all other SCI awards.

130.     Plaintiff was notified of this action via letter dated August 29, 2012 signed by

Defendants Whipple and Herb Atkinson.

131.     The aforesaid letter was sent to members of the hunting community in

Pennsylvania, including but not limited to Dr. Phil Ripepi, a business and hunting

colleague of Plaintiff.

132.     The aforesaid letter also was intentionally sent to persons in Pennsylvania who are

members of the hunting community and persons who serve on governing boards of

hunting organizations of which Plaintiff is a member.

133.     The contents of the aforesaid letter were defamatory inasmuch as it portrayed

Plaintiff as not deserving of his hunting accomplishments and to be a person that SCI did

not want to associate with.

134.     The foregoing letter also reinforced and otherwise falsely substantiated the BOI

charges leveled against Plaintiff.

135.     Since then Defendant Whipple has sent multiple copies of this letter to members

of SCI with the purpose of defaming Plaintiff.

136.     Defendant Whipple targeted these letters to individuals he knew could harm

Plaintiff, especially in Pennsylvania.

INV_00015283

137.   The content of Defendant Whipple's letter was of a defamatory character, understood by the audience to contain a defamatory meaning and to apply to the Plaintiff, and caused special harm to the Plaintiff by injuring his reputation.

138.   The issuance of Defendant Whipple's letter was not made on a proper occasion, for proper motive, in a proper manner, or based upon a reasonable cause, and therefore constituted an abuse of any conditional privilege that Defendant Cunningham or the BOI may have possessed.

139.   Defendant Whipple knew that his letter would support the BOI's false allegation of adultery against Plaintiff and be a direct assault on Plaintiff's Pennsylvania marriage.

140.   These letters required Plaintiff to defend himself to his close friends and colleagues in Pennsylvania.

## DEFAMATION

*Against SCI and BOI Members Cunningham, Higgins, Chapman, Hanley, and Small*

141.   Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

142.   Defendant BOI members and SCI made false and defamatory statements concerning Plaintiff whereby Defendant BOI members accused him of engaging in public and private threats and abusive behavior, making false or deceptive record book entries, making false statements and/or publishing nonpublic information concerning SCI, engaging in inappropriate relationships with women while on SCI business or while disclosing that he was SCI's President, filing questionable reimbursement requests, lying to the BOI, and breaching his fiduciary duty to SCI.

19

INV_00015284

143.     These statements were patently and demonstrably false, constituted fact or
factually laden opinion, which can be substantially proven false and constituted
defamation.

144.     Defendant BOI members published these rumors to the BOD and members of the
executive council sans any privilege to do so.

145.     Defendant BOI members made these materially false and misleading statements
about Plaintiff as set forth above, knowing the claims were false, defamatory and,
particularly in the context of the communications, outrageous and incendiary; or with
reckless disregard as to whether the statements were false, defamatory and/or outrageous
and incendiary.

146.     No judicial privilege or immunity attaches to these statements because they were
not made during a judicial or quasi-judicial proceeding, and no reasonable person can
doubt the statements' impropriety.

147.     Any privilege connected to these statements was waived because (a) Defendant
BOI members and SCI knew these statements were false or made these statements with
reckless disregard as to whether the statements were false or not; (b) the statements were
unnecessarily insulting; (c) the language used was stronger or more violent than was
necessary under the circumstances; and/or (d) the statements were made because of
malice, hatred, ill will or a desire to injure or irreparably injure Plaintiff, rather than a fair
comment on the subject.

148.     Defendant BOI member's defamatory statements have been published outside of
the BOD members and reached members of the international hunting community and
members of Plaintiff's business community.

20

149.  Defendant BOI member's expressly aimed their conduct at Pennsylvania when they attacked Plaintiff's Pennsylvania Marriage, broadcast false charges to SCI members participating via video conference in Pennsylvania, and otherwise published defamatory charges to destroy Plaintiff's reputation and standing in the Pennsylvania hunting community and the Conklin Foundation.

150.  Such publications have caused Plaintiff to have his contract of employment with SCI terminated.

151.  Such publication has caused Plaintiff to lose estimation in the eyes of his colleagues, friends and acquaintances in the international hunting community.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

## COUNT TWO: DEFAMATION BY INNUENDO
### *Against Defendant Whipple and SCI*

152.  Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

153.  Plaintiff has been the subject of a letter signed by Defendant Whipple wherein he is stripped of all his hunting awards and record book entries.

154.  Defendant Whipple mailed the letter referenced in averment 162 to a member of the Conklin Foundation Board, located in Pittsburgh Pennsylvania.

155.  The innuendo of Defendant's claims is that Plaintiff is a dishonest hunter and man and lends approval to all the underlying defamatory charges brought by SCI and the BOI.

INV_00015286

156.    Due to the current mores of common society, stripping one of all his awards and record book entries is capable of defamatory meaning to any and all recipients. .

157.    Such innuendo was expressly aimed at Pennsylvania because Defendant's knew Plaintiff would suffer the brunt of the harm in his state of residence.

158.    Such allegations have caused Plaintiff to lose estimation in the eyes of his colleagues, neighbors, friends and acquaintances.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

Respectfully submitted,

/s/ Jonathan D. Steele, Esquire
Charles E. Steele, Esquire
PA I.D. No. 36583
Jonathan D. Steele
PA I.D. No. 313969
STEELE SCHNEIDER
428 Forbes Avenue, Suite 900
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
csteele@steeleschneider.com
jonathansteele@steeleschneider.com

INV_00015287

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2013, the foregoing **AMENDED COMPLAINT** was

filed electronically. Notice of this filing will be sent to all parties by operation of the Court's

electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the

Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.


Samantha Clancy, Esquire
W. Scott Hardy, Esquire
Ogletree Deakins
One PPG Place, Suite 1900
Pittsburgh, PA 15222


/s/ Jonathan D. Steele, Esquire
Jonathan D. Steele, Esquire

23

INV_00015288