IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge William J. Martinez

Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA,

v.

1. **LAWRENCE RUDOLPH**,
2. LORI MILLIRON,
_____/

**LAWRENCE RUDOLPH'S OBJECTIONS
TO THE GOVERNMENT'S PROPOSED INSTRUCTIONS**

Lawrence Rudolph files these objections to the disputed jury instructions per this Court's Practice Standards.

**I.      Government's Proposed Instruction No. 1: Reasonable Doubt**

The parties disagree about how the Court should define "reasonable doubt" for the jury because they are answering different questions. The government asks whether a proposed instruction is barely good enough to survive a constitutional challenge. Dr. Rudolph asks what the Supreme Court and the Tenth Circuit have repeatedly instructed district courts to do as a matter of best practices, fairness, and justice. Dr. Rudolph relies on several binding cases that direct trial courts to use the language he proposed. The government does not cite a single binding case directing courts to use its preferred language.

The Supreme Court and the Tenth Circuit have repeatedly urged district courts to define "reasonable doubt" for juries using the "hesitate to act" language found in Dr. Rudolph's proposed instruction. *See, e.g., Victor v. Nebraska*, 511 U.S. 1, 20 (1994) ("In any event, the instruction provided an alternative definition of reasonable doubt: a doubt that

would cause a reasonable person to hesitate to act. ***This is a formulation we have repeatedly approved …* .**") (emphasis added); *Holland v. United States*, 348 U.S. 121, 140 (1954) ("We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, see rather than the kind on which he would be willing to act.") (citing *Bishop v. United States*, 107 F.2d 297, 303 (D.C. Cir. 1939) (Justice Vinson)); *Tillman v. Cook*, 215 F.3d 1116, 1126–27 (10th Cir. 2000) ("Since the Court announced its preference in *Holland*, courts have consistently criticized 'willing to act' language and expressed a preference for 'hesitate to act.'") (collecting cases); *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1273 (10th Cir. 1992) ("The challenge does, however, cause this court to caution the trial courts, just as we did in *Leaphart*, that a preferred reasonable doubt instruction is one couched in the Supreme Court's 'hesitate to act' language."); *United States v. Leaphart*, 513 F.2d 747, 750 (10th Cir. 1975) ("[R]easonable doubt exists if the doubt is of such substance as to cause the prudent man to hesitate and pause in matters of importance in his own affairs. … The time has unquestionably arrived after *Holland* … and *Pepe* for the trial courts to change this instruction and to couch it in the terms prescribed by the Supreme Court of the United States."); *United States v. Pepe*, 501 F.2d 1142, 1144 (10th Cir.1974) ("The Supreme Court in *Holland* expressed its preference for the 'hesitate to act' formulation, and that preference should be heeded.").

The government urges the Court to disregard all this binding precedent and use the Tenth Circuit pattern instruction, which is purportedly justified by two cases. *See* Tenth Circuit Pattern Jury Instruction 1.05 (2021) ("The definitions of reasonable doubt derives

primarily from *Tillman*, 215 F.3d at 1121, and is also consistent with the instruction approved in *United States v. Litchfield*, 959 F.2d 1514, 1520–21 (10th Cir. 1992)."). Neither of these cases gave a model or exemplary definition of reasonable doubt. On the contrary, both held only that the instructions at issue did not violate due process but warned courts **not to use them** going forward. The pattern instruction therefore fails to adhere to binding precedent, including the very cases it relies on. The habeas petitioner in *Tillman* challenged defining a lack of reasonable doubt as "an abiding conviction … such as you would be willing to act upon in the more weight and important matters relating to your own affairs." 215 F.3d at 1123. Referring to the "willing to act" clause, the Tenth Circuit "note[d] the possibility that this imprecise language could … create future problems, and, thus, should be eliminated" and replaced with the "'hesitate to act'" language. *Id.* at 1126–27. Reviewing only for plain error, *Litchfield* applied *United States v. Barrera-Gonzales*, 952 F.2d 1269 (10th Cir. 1992), which involved an identical instruction. *See Litchfield*, 959 F.2d at 1521. Like *Tillman*, *Barrera-Gonzales* made clear that the instruction used in that case and later in *Litchfield* is **not** to be used again. Instead, courts must use an instruction like that proposed by Dr. Rudolph: "The challenge does, however, cause this court to caution the trial courts … that ***a preferred reasonable doubt instruction is one couched in the Supreme Court's 'hesitate to act' language.***" *Id.* at 1273 (emphasis added).

The government urges this Court to disregard all the binding cases requiring the "hesitate to act" formulation and cites for support: (1) Justice Ginsburg's concurrence in *Victor*, which no other justice joined, (2) Justice Ginsburg's blockquote in that concurrence

3

from a 1987 report by a committee of judges formulating pattern instructions,[1] and (3) two Tenth Circuit cases in which the defendant did not ask for the "hesitate to act" language but challenged the reasonable doubt instruction on some other, inapposite ground. Neither Justice Ginsburg's concurrence in *Victor* nor the report of a committee of judges is the law, and neither Tenth Circuit case the government cites involved a challenge based on the omission of the "hesitate to act" language. Thus, neither case considered or discussed that omission at all and both are inapposite. *See United States v. Petty*, 856 F.3d 1306 (10th Cir. 2017); *United States v. Conway*, 73 F.3d 975 (10th Cir. 1995). Moreover, *Petty* itself expressly noted that it too was ***not*** advancing a model instruction: "Thus, at the end of the day, 'the test we properly apply in evaluating the constitutionality of a reasonable doubt instruction is not whether we find it exemplary.'" 856 F.3d at 1309 (citation omitted).

The government does not cite a single case in which (1) the defendant argued that the trial court was required to follow *Victor*, *Holland*, *Tillman*, *Litchfield*, *Barrera-Gonzales*, *Leaphart*, and *Pepe*, (2) the trial court refused to do so, and (3) the Tenth Circuit affirmed the instruction anyway. It would be strange if the Tenth Circuit approved of a trial court consciously disregarding its exhortations on how to define reasonable doubt for a jury. Because the Federal Practice Instruction uses the "hesitate to act" language that both the Supreme Court and the Tenth Circuit have directed district courts to employ, that is the instruction that this Court must give.

---

[1] The government ascribes this report to the Judicial Conference of the United States. That is incorrect. Justice Ginsburg was quoting "[a] committee of distinguished federal judges, *reporting to* the Judicial Conference of the United States ... ." *Victor*, 511 U.S. at 24.

## II. Government's Proposed Instruction No. 2: False Exculpatory Statements

Lawrence Rudolph did not murder his wife. When questioned about where he was, he told everyone that he was not in the room where it happened. Some have remembered that he said he was in the bathroom. Some remember him saying that he was in the shower. And others remember him saying he was outside the cabin. But those are not "false exculpatory" statements as a matter of fact or law. Accordingly, the government's proposed instruction regarding false exculpatory statements and consciousness of guilt is inappropriate.

The government aims to have this Court argue its case for it while instructing the jury in violation of binding precedent. An instruction that consciousness of guilt can be inferred from false exculpatory statements can be given only when (1) the falsity of the statements is proven, not merely asserted *and* (2) the statements were "made by the Defendant upon being informed that a crime had been committed or upon being accused of a criminal charge ... ." 1A Fed. Jury Prac. & Instr. § 14:06 (6th ed.). The government ignores the first condition; it claims the statements are false only because they do not fit its theory of prosecution. It tries to circumvent the second condition by submitting a proposed instruction that substantially deviates from the model instruction on which it relies.

### A. False-exculpatory-statement instructions are not appropriate in a case like this, where the truth of the statements is the central issue to be tried.

Binding precedent is clear that statements whose truth is the central issue at trial are not "false" and provide no basis for a false-exculpatory-statement instruction. The Tenth Circuit and other federal appellate courts (as well as the model instruction the government relies on) make very clear that a false-exculpatory-statement instruction is impermissible

"when, as in this case, the jury could find the exculpatory statement at issue to be false only if it already believed evidence directly establishing the defendant's guilt." *United States v. Littlefield*, 840 F.2d 143, 149 (1st Cir. 1988) (quoted in 1A Fed. Jury Prac. & Instr. § 14:06 (6th ed.)); *see United States v. Durham*, 139 F.3d 1325, 1332 (10th Cir. 1998) (adopting *Littlefield*'s reasoning and holding such an instruction to be legal error). The effect of such an instruction is to confuse the jury and wrongly invite them to conclude from a belief that the defendant made false statements that he must be guilty of the charged offense. That is impermissible, as the Tenth Circuit explained:

> The only way the jury could find that the statements at issue in this case were false would be to conclude that Durham was a member of Montgomery's cocaine distribution conspiracy. That conclusion would necessarily render irrelevant consciousness of guilt. This circularity problem recurs whenever a jury can only find an exculpatory statement false if it already believes other evidence directly establishing guilt. ***Under such circumstances, it is error to give a false exculpatory statement instruction.***

*Durham*, 139 F.3d at 1332 (emphasis added); *see also Littlefield*, 840 F.2d at 149 ("In effect, the jurors were told that once they found guilt, they could find consciousness of guilt, which in turn is probative of guilt. This is both circular and confusing.").

*Durham* plainly holds that no false exculpatory statement instruction can be given in this case. Rather, the jury must rely on the general instructions regarding the credibility of witnesses.

This follows from the Tenth Circuit's repeated holdings, including in the only Tenth Circuit case the government cites, that such statements are *never* admissible as "evidence of guilt" but only as evidence of "consciousness of guilt," a significantly different thing. *See*

*United States v. Davis*, 437 F.3d 989, 996 (10th Cir. 2006) ("Although false exculpatory statements 'cannot be considered by the jury as direct evidence of guilt,' such statements 'are admissible to prove circumstantially consciousness of guilt or unlawful intent.'") (quoting *United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir. 1982)); *accord United States v. Ingram*, 600 F.2d 260 (10th Cir. 1979); *United States v. Tager*, 481 F.2d 97 (10th Cir. 1973).

In *Davis*, there was no question that the accused's statements were false and made after the FBI accused him of a crime. Clarence Davis was linked to an armed bank robbery by a partial DNA profile. *Id.* at 993. "Eight days after the robbery, an FBI agent interviewed Davis. Davis explained that for the past two weeks he had been working at a company named TCIM from eight in the morning until four in the afternoon. Later on in the interview, Davis changed his story and informed the FBI agent that he was at his girlfriend's house on the day of the robbery. A TCIM representative testified that Davis had neither worked at TCIM, nor interviewed for a position there." *Id.* "The district court allowed Agent Lotspeich's testimony, as well as a TCIM representative's testimony that Davis had neither worked at TCIM, nor interviewed for a position there." *Id. Ingram* likewise involved indisputably false statements made to federal authorities:

> After being informed as to the reason for his arrest and after a *Miranda* warning, Ingram was asked as to his whereabouts on December 29, 1976, the date of the robbery. Ingram replied that though he wasn't sure, he believed that he was at Fort Carson, Colorado on the day of the robbery and had not left the military base until around six o'clock in the evening, several hours after the robbery. At trial the Government **established that such was incorrect**, and that the truth of the matter was that Ingram had left Fort Carson on December 23, 1976, some six days before the robbery.

600 F.2d at 262 (emphasis added).

An instruction of the sort the government requests is appropriate only when (1) there is no circularity problem concerning the statement's truth or falsity and (2) a false statement has independent relevance to knowledge or specific intent. As the Tenth Circuit recognizes (and the government denies), these limitations are necessary in light of the fact that innocent people may tell falsehoods to avoid being implicated in a serious crime: "Courts have limited the probative value of false exculpatory statements because the most probable and obvious inference to be drawn therefrom is that the defendant 'surmised he was implicated in some sort of criminal activity.'" *United States v. Rahseparian*, 231 F.3d 1257, 1264 (10th Cir. 2000).

### B. The government's proposed instruction substantially alters the model instruction it cites, reflecting that it actually has no legal basis at all.

The government substantially altered the model instruction it cites as authority to create a materially different instruction that misstates the law and lowers the constitutional burden of proof. None of the statements attributed to Dr. Rudolph in this case were "made by the Defendant upon being informed that a crime had been committed or upon being accused of a criminal charge … ." 1A Fed. Jury Prac. & Instr. § 14:06 (6th ed.). To get around that limitation, the government just deleted that necessary language. There is no legal authority for the government's material alteration to the model instruction, and the government does not even try to cite any.

Worse, as the treatise notes but the government does not, the various circuits are divided over whether such an instruction is *ever* appropriate. The government misleadingly

cites the Sixth Circuit pattern instruction[2] without also noting, as the treatise does, that "[t]he Fifth, Seventh, Ninth and Eleventh Circuits either do not include any consciousness of guilt instructions, or specifically recommend that these matters be left to argument and that no such instructions be given." 1A Fed. Jury Prac. & Instr. § 14:06, Committee Commentary to 1991 edition (6th ed.). Additionally, the treatise itself generally recommends ***against*** giving any such instruction: "The Federal Judicial Center includes a general instruction on 'Defendant's Incriminating Actions After the Crime.' But the Committee Commentary recommends that it should not be given in most cases, and that generally these matters should be left to argument by counsel." *Id.* (citation omitted). In other words, telling the jurors what inferences to draw from the evidence is by definition partisan argument and is fundamentally inconsistent with the Court's neutrality and impartiality. The full commentary to the model instruction the government altered discusses several close cases in which convictions were reversed because the judge gave such an instruction.

---

[2] The Sixth Circuit pattern instruction bears no resemblance to what the government has proposed. It provides:

> **7.14 FLIGHT, CONCEALMENT OF EVIDENCE, FALSE EXCULPATORY STATEMENTS**
> (1) You have heard testimony that after the crime was supposed to have been committed, the defendant _____.
> (2) If you believe that the defendant _____, then you may consider this conduct, along with all the other evidence, in deciding whether the government has proved beyond a reasonable doubt that he committed the crime charged. This conduct may indicate that he thought he was guilty and was trying to avoid punishment. On the other hand, sometimes an innocent person may _____ for some other reason. The defendant has no obligation to prove that he had an innocent reason for his conduct.

Instead of mentioning that four circuits and the Federal Judicial Center eschew any false-exculpatory-statement instruction whatsoever, the government misleadingly asserts that "[t]he circuits are nearly unanimous in their view that false exculpatory statements are properly admissible as evidence of guilt." DE175:5. That is a whopper of a misstatement. The issue is not over whether the Court should ***admit any statements*** but over whether the Court's instructions to the jury should ***make the prosecution's argument*** about what inferences jurors should draw from the evidence.

Moreover, the Tenth Circuit is clear that any consciousness-of-guilt instruction must leave it ***entirely and exclusively*** up to the jury to decide whether the accused's false exculpatory statement is significant in the case. In *Davis*, the district court gave the following jury instruction on false exculpatory statements:

> "When a defendant voluntarily and intentionally offers an explanation, or makes some statement before trial tending to show his innocence, and this explanation or statement is later shown to be false, you ***may*** consider whether this evidence points to consciousness of guilt. ***The significance to be attached to any such evidence is a matter for you to determine.***"

*Id.* at 995 (emphases added). The Tenth Circuit held that this instruction was "an accurate statement of the law" because it "'leaves exclusively to the jury the question as to whether false exculpatory statements, if made, indicate consciousness of guilt, or nothing at all." *Id.* at 996 (quoting *Ingram*, 600 F.2d at 262).

In contrast, the government's proposed instruction does not tell the jury merely that it "may consider whether this evidence points to consciousness of guilt." It goes much further by telling the jury that in general "it is reasonable to infer that an innocent person does not

usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence." Not only is that an assertion of *fact* rather than law, which of course is wholly inappropriate in a jury instruction, but it is not even a true fact. As *Rahseparian*, *Davis*, and other Tenth Circuit cases state, innocent as well as guilty people sometimes lie out of fear of being falsely implicated.

By intimating to the jury that any behavior that departs from some "reasonable person" standard suggests guilt, the instruction lowers the government's burden of proving guilt beyond a reasonable doubt. The reasonable-person standard is a negligence standard, and it has no place in a criminal trial.

### Certificate of Service

This motion was filed and served on all parties on 28 June 2022 using CM/ECF.

Respectfully submitted,

MARKUS/MOSS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By: /s/ David Oscar Markus
David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com

/s/ A. Margot Moss
A. Margot Moss
Florida Bar Number 091870
mmoss@markuslaw.com