IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. **LAWRENCE RUDOLPH,**
2. LORI MILLIRON,

 Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART LAWRENCE RUDOLPH'S MOTION TO EXCLUDE EXPERT TESTIMONY AND REQUEST FOR HEARING

 As set forth in the Superseding Indictment, a grand jury has charged Defendant Lawrence Rudolph with one count of foreign murder in violation of 18 U.S.C. §§ 1119 and 1111, and one count of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  (ECF No. 53.)  This matter is currently set for a 13-day jury trial beginning on July 11, 2022.  (ECF No. 105.)

 This matter is before the Court on Rudolph's Motion to Exclude Expert Testimony and Request for Hearing ("Motion").  (ECF No. 168.)  The Government has filed its response to the Motion.  (ECF No. 183.)  The Court finds that it can resolve this matter without a hearing because a sufficient record has been presented in the parties' briefs.  *United States v. Nacchio,* 555 F.3d 1234, 1253–54 (10th Cir. 2009) (en banc) (a *Daubert* hearing is not specifically mandated).

 The Court presumes familiarity with the facts of the case, as well as the Court's

prior orders. For the following reasons, the Motion is granted in part and denied in part.

## I. LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004). Admission of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *Nacchio*, 555 F.3d at 1241 (en banc).

An expert's proposed testimony also must be shown to be relevant and otherwise admissible. *See Adamscheck v. Am. Family Mut. Ins. Co.*, 818 F.3d 576, 588 n.7 (10th Cir. 2016). To be relevant, expert testimony must "logically advance[] a material aspect of the case" and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011).

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Id*. (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993)).

## II. ANALYSIS

Rudolph requests that the Court exclude the testimony of two of the Government's expert witnesses: James Padish and Erin Newton. (ECF No. 168 at 1.)

**A.    James Padish**

In his expert report, Mr. Padish, a former Arizona judge and current family-law attorney, opines about what the legal and financial consequences would have been if Rudolph had divorced Bianca Rudolph in 2016. (*Id*. at 4–5.) Mr. Padish describes the legal principles that would apply to a divorce proceeding in 2016, explaining, for example, that Arizona law would apply and that Arizona is a community property state. (*Id.* at 4.) He also provides his opinion about the likely legal and financial consequences of two hypothetical scenarios: (1) if the post-nuptial agreement were enforced, he opines that Bianca would have received $2,058,000 plus "her vehicle, personal property and furniture or jewelry;" (2) if the agreement were not enforced, he opines she would likely receive half the couple's net assets and she would likely be awarded spousal support. (*Id*.) Mr. Padish also concludes in his report that an Arizona court would very likely not enforce the post-nuptial agreement. (*Id*.)

Rudolph challenges the admissibility of Mr. Padish's testimony, arguing that Mr. Padish's testimony: (1) is not relevant; (2) is based on insufficient facts and data; (3) uses an unreliable methodology; and (4) will be unhelpful and confusing to the jury. (*Id*.) The Court considers each argument in turn.

   1.    <u>Relevance</u>

The Government argues that Mr. Padish's opinion is relevant because his

3

conclusion that the divorce would have been devastating to Rudolph's finances helps explain why Rudolph chose to murder his wife instead of divorcing her.  (ECF No. 183 at 5–6.)  Rudolph argues that his alleged motive and intent are subjective, and therefore only evidence of his own *beliefs* about what would have happened in a divorce are relevant.  (ECF No. 168 at 5.)  Thus, Rudolph argues, Mr. Padish's opinion about what would have *actually* happened in a divorce is completely irrelevant and should be excluded under Federal Rules of Evidence 401 and 402.  (*Id.*)

For supporting authority, Rudolph cites *United States v. Greene*, 239 F. App'x 431 (10th Cir. 2007) (unpublished), in which the Tenth Circuit affirmed Mr. Greene's conviction on charges of tax evasion and subscribing to a false tax document.  *Id.* at 431.  At trial, Mr. Greene attempted to introduce expert testimony that the Internal Revenue Service ("IRS") had sent him several notices with inconsistent information, and that the IRS had attributed to him income that had been recognized and reported by his corporate entity.  *Id.* at 432.  The trial court excluded the expert's opinions, explaining that the defense "could not show Mr. Greene's subjective good faith by the testimony of an expert who had no dealings with Mr. Greene at the relevant time."  *Id.*  The Tenth Circuit affirmed, but it did not do so, as Rudolph implies, based on the broad proposition that expert opinions are not relevant to a party's state-of-mind unless the party was aware of the expert's opinion at the relevant time.  Rather, the court explained that it affirmed because the appellant failed to make an argument that the "expert's testimony was crucial to explain that he had a good faith belief that he did not owe additional taxes."  *Id.*

But here, the Government *has explained* how Mr. Padish's opinion is relevant to

4

Rudolph's alleged motive: if a divorce would likely have been devastating to Rudolph's finances, it is more probable that he had a motive to murder his wife instead of divorcing her. (ECF No. 183 at 5–6.) As a consequence, the Court is not persuaded that *Greene* actually supports Rudolph's argument.

The Court agrees with the Government that evidence that a husband could lose a significant amount of money in a divorce proceeding has the tendency to make it more probable that he had a motive to kill his wife than it would be without such evidence. Fed. R. Evid. 401(a). Therefore, this portion of the Motion is denied.

2. <u>Sufficiency of Facts and Data</u>

Next, Rudolph argues that Mr. Padish's opinion is based on insufficient facts because he relied only on evidence disclosed to him by the prosecution, rather than on all of the available evidence. (ECF No. 168 at 6.)

In its Response, the Government argues that any insufficiency in the facts or data supporting Mr. Padish's opinion was caused by Rudolph's late disclosure of relevant evidence. (ECF No. 183 at 6.) The Government asserts that Rudolph only disclosed supposedly relevant documents—eighteen letters from Rudolph to his attorney regarding the post-nuptial agreement—in late June of this year, even though they were available to him since this past February. (*Id.*) Thus, the Government argues that it was not its fault that these documents were not available when Padish completed his report in April. (*Id.*)

The Court is not persuaded that the appropriate remedy should be for it to exclude Mr. Padish's testimony based on Rudolph's assertion that Mr. Padish failed to consider all relevant information—even information not available to him. It is noted, moreover, that Rudolph cites no case law to justify such a harsh sanction in these

5

circumstances.  (*See* ECF No. 168 at 6–7.)  However, the Court will hold the Government to its representation that it will "obtain a revised opinion based on the new information provided and will provide its expert with any information the defendant requests."  (ECF No. 183 at 6.)[1]

   3. Methodology

Rudolph also argues that Mr. Padish's opinion is not "the product of reliable principles and methods," as required by Rule 702(c).  (ECF No. 168 at 7–8.)  Specifically, Rudolph argues that Mr. Padish does not explain his method for predicting the result of a divorce proceeding.  (*Id*.)  Thus, Rudolph argues, Mr. Padish's testimony is mere speculation and should be excluded on that basis.  (*Id.*)

The Government argues that Mr. Padish's opinion is "precisely the sort of opinion, analysis, and advice that the practice of an expert in his legal field would involve."  (ECF No. 1833 at 7.)  Further, the Government argues that just like all experts, lawyers "gather information and render opinions based on their knowledge and experience with how courts behave and react."  (*Id.*)

Rudolph cites no on-point case law to support his position, and courts in this District have held that the Federal Rules of Evidence "allow an opinion by a legal expert in which the expert applies the principles of his expertise, the law, to the facts in evidence."  *Gindes v. Gindes*, 864 F. Supp. 159, 162 (D. Colo. 1994) (citation omitted).

---

[1] Rudolph also argues that Mr. Padish "relied in large part on inadmissible hearsay statements attributed to Mrs. Rudolph six years after she purportedly made them by witness Cassandra Olmstead."  (ECF No. 168 at 6–7.)  The Court has reviewed Mr. Padish's report, and finds that it shows no indication that he relied in large part on Ms. Olmstead's testimony.  Therefore, Rudolph's argument is unavailing.  However, the Court will hold the Government to its representation that unless Cassandra Olmstead's hearsay statements are ruled admissible prior to Mr. Padish's testimony, it "will not attempt to bring them in through Mr. Padish's testimony."  (ECF No. 183 at 6.)

6

It is undisputed that Mr. Padish is an attorney and former judicial officer with extensive experience in family law, which is the subject of his expert opinion.  Therefore, the Court rejects Rudolph's argument that Mr. Padish's application of his training as a lawyer is not a reliable methodology under Rule 702(c).

4.      Helpfulness of Testimony for Jury

Rudolph argues that Mr. Padish's opinion regarding the authenticity and validity of the post-nuptial agreement usurps the function of the jurors, who should decide those questions for themselves.  (ECF No. 168 at 8–9.)  Additionally, Rudolph argues that Mr. Padish's testimony will mislead and confuse the jurors into "abandoning their duty to independently determine [the] authenticity" of the post-nuptial agreement.  (*Id*. at 9.)[2]

In support of his position, Rudolph cites several cases holding that a legal expert's testimony on "*ultimate questions* of law is not favored."  *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (emphasis added).  For example, in *Sprecht*, the Tenth Circuit held that a legal expert should not have been allowed to testify as to legal conclusions about whether there had been a search of the plaintiff's residence under the Fourth Amendment.  (*Id*. at 809.)  *Sprecht* was a civil rights case in which a finding that no search had taken place would have been fatal to the plaintiff's claim.  (*Id*. 806–07.)  Thus, the question of whether a search had taken place was indeed an ultimate issue in that litigation.  The court held that the trial court erred by allowing the expert's testimony on whether there was search, reasoning that "the expert in this case was

---

[2] Rudolph also argues that Mr. Padish's testimony is based on a credibility finding, which is a task best left to the jury.  (ECF No. 168 at 8 (citing *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2015)).)  The Court is not persuaded by this argument because Rudolph does not cite any portion of Mr. Padish's analysis where he makes a credibility determination.  Thus, the Court rejects this argument.

improperly allowed to instruct the jury on how it should decide the case." (*Id*. at 808.)

But here, the outcome of the hypothetical 2016 divorce is not an ultimate issue; it is a collateral issue that could be relevant to motive, which in turn could be relevant to an ultimate issue, that being Rudolph's intent. Thus, the legal question at issue in Mr. Padish's opinion is twice removed from the ultimate issue. In the Court's view, the concerns discussed in *Sprecht*—that a legal expert should not be allowed to instruct the jury on how it should decide the case—are not directly implicated here.

Additionally, the court in *Sprecht* expressly noted that its holding should not be interpreted broadly. *Id.* at 809 ("The line we draw here is narrow."). And in explaining the limits of its holding, the court favorably cited *United States v. Garber*, 607 F.2d 92 (5th Cir. 1979), in which the Fifth Circuit held that a trial court erred by refusing to let experts on income tax law testify regarding whether failure to report funds received for sale of blood plasma constituted income tax evasion. *Garber*, 607 F.2d 92. The court in *Garber* found that such testimony should have been allowed because it was relevant to the question of whether the defendant *intended* to file false tax returns, which was an element of the offense at issue. *Id*. at 99.

After a careful review of the case law cited by Rudolph and the Government, the Court finds that Mr. Padish's testimony will not mislead the jury or usurp its proper role. Whether an expert's testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue," as set forth in Rule 702, is the central criterion for allowing the testimony. And clearly, the intricacies of Arizona divorce proceedings are outside of the knowledge and understanding of a typical lay juror. The Court finds that Mr. Padish's testimony will help the jury understand an important question in this case: what

would have happened had Rudolph decided to divorce his wife in 2016.

For the reasons discussed above, the Court denies Rudolph's Motion as to Mr. Padish's expert testimony.

**B.     Erin Newton**

Rudolph also requests that the Court exclude the testimony of Erin Newton, the Government's accounting expert, who opines that the Rudolphs had a net worth of $7,000,000 in 2016 and that they had a negative cash flow of $564,850 between June 1, 2014 to December 31, 2016.  (ECF No. 168 at 14.)

Rudolph argues Ms. Newton's testimony should be excluded because: (1) she is unqualified; (2) her conclusion about the Rudolphs' net worth is based on insufficiency of facts and data; and (3) her methodology for analyzing cash flow is unreliable.  (*Id.* at 10–15.)  Rudolph also argues that references to fraudulent behavior purportedly engaged in by Rudolph permeates the report, and that introducing such evidence would be a violation of Federal Rule of Evidence 404.  (*Id.* at 15.)  The Court considers each argument in turn.

1.     Qualifications

Rudolph argues that Ms. Newton is not qualified to testify as to the Rudolphs' net worth and cash flow because she lacks the necessary expertise to assess the Rudolphs' most significant assets.  (*Id.* at 10–11.)  Rudolph points out that Ms. Newton explains in her report that she made no attempt to value several businesses owned by the Rudolphs, and she undervalued the Rudolphs' houses by using their "purchase price or historic price" instead of their current market value.  (*Id.* at 11.)

However, as the Government points out in its Response, Rudolph does not challenge Ms. Newton's credentials as an accountant.  (ECF No. 183 at 9.)  Rudolph's

argument relates to the sufficiency of the data Ms. Newton considered and employed, and not on her professional or educational qualifications as an accountant. Importantly, Ms. Newton refrained from opining on matters outside of her subject matter expertise, like the appraisal of businesses or real property.

As a result, the Court finds that Ms. Newton is qualified to testify as an expert in accounting.

2. <u>Sufficiency of Facts and Data for Ms. Newton's Net Worth Analysis</u>

Next, Rudolph argues that Ms. Newton's analysis of his net worth in 2016 is unreliable because it is based on insufficient evidence. (ECF No. 168 at 12.) Rudolph points out that Ms. Newton's own methodology requires her net worth calculation to include the fair market value of Rudolph's real property and the value of Rudolph's businesses. (*Id*. at 11.) And yet, in her calculation of Rudolph's net worth, Ms. Newton uses the "purchase price or historic cost" of his real properties, and she assigns his businesses a value of $0. (*Id*.) She candidly admits that by doing so she undervalues the Defendant's net worth. (*Id*.)

The proponent of expert testimony must show that "the witness gathered 'sufficient facts and data' to formulate the opinion." *United States v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008). Stated differently, to be reliable, expert testimony must be based on actual knowledge. *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 780 (10th Cir. 1999). In performing its gatekeeping function under this part of the *Daubert* test, the Court must determine "whether the witness obtained the amount of data that the methodology itself demands." *Crabbe*, 556 F. Supp. 2d at 1223. An alteration of an established methodology is a "step that renders the analysis unreliable [and] renders the expert's testimony inadmissible." *Goebel v. Denver and Rio Grande Western R.R.*

*Co.*, 346 F.3d 987, 992 (10th Cir. 2003).

Here, Ms. Newton clearly explained that the established methodology for calculating net worth requires the calculation of that net worth to include the fair market value of real property and businesses. But, she admittedly strayed from this methodology by using historic prices for Rudolph's real property and by valuing his businesses at $0. As a result, her conclusion that Rudolph's net worth is $7,000,000 is unreliable and potentially misleading. *See In re Blair*, 588 B.R. 605 (Bankr. D. Colo. 2018) (expert testimony excluded where the fair value balance sheet methodology proposed by accountant required him to go back in time about seven years, but because certain data was missing, he altered the methodology).

Therefore, the Court grants this portion of the Motion, and Ms. Newton is precluded from testifying about the Rudolphs' net worth.[3]

3. <u>Methodology of Ms. Newton's Cashflow Analysis</u>

Rudolph challenges Ms. Newton's conclusion that "the Rudolphs had a net cash outflow from June 1, 2014 to December 31, 2016 of approximately $564,850. *That means the Rudolphs spent more money than they brought in*." (ECF No. 168 at 14 (emphasis added).) Rudolph argues that her analysis is faulty because she considers the paying down of loans as spending but "[p]aying down the principal of a loan is *not*

---

[3] The Government argues that Rudolph is responsible for Ms. Newton's failure to follow her own methodology because he did not turn over certain business records until after she produced her expert report. (ECF No. 183 at 9.) The Government requests that the Court defer making its decision "until her final report can be completed." (*Id.*) At least as to the fair market value of the Rudolphs' real property, this argument is unpersuasive. The Government had the properties' addresses and could have obtained appraisals from an expert with the proper qualifications. The Court denies the Government's request because there are only four court days remaining until trial begins, and allowing an updated expert report would not give Rudolph sufficient time to prepare a rebuttal expert report or disclosures.

an expense and is *not* spending." (*Id*. (emphasis in original).)

The Court disagrees. This portion of Ms. Newton's report is not about net worth, it is about cash flow, and it simply cannot be denied that when one pays down a loan one necessarily has less cash. Thus, Rudolph's argument misses the mark.

    4.    <u>Other Acts</u>

Finally, Rudolph argues that references to fraudulent acts purportedly engaged in by Rudolph are spread throughout Ms. Newton's report, and that introducing such evidence would be a violation of Rule 404. (*Id.* at 15.) The Government does not respond to this argument. (*See generally* ECF No. 183.)

Courts considers a four-factor test when determining the admissibility of evidence under Rule 404(b). The test requires that:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to FED.R.EVID. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (quotation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (discussing four sources that serve as "the protection against . . . unfair prejudice" when admitting evidence under Rule 404(b)).

By failing to address this argument, the Government effectively concedes the issue. *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived). But even if Government had not conceded the point, the Court would have excluded the allegations

and innuendoes of Rudolph's past fraudulent behavior contained in Ms. Newton's report because the probative value of such statements is substantially outweighed by their potential for unfair prejudice. Rudolph is on trial for mail fraud; exposing the jury to evidence of past fraudulent acts creates an unfair risk that the jury will convict him, at least in part, based on the conclusion that he is an inveterate fraudster.

Therefore, Ms. Newton is precluded from making any reference to Rudolph's alleged past fraudulent financial behavior, unless Rudolph opens the door to such testimony on cross-examination.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Rudolph's Motion to Exclude Expert Testimony and Request for Hearing (ECF No. 168) is GRANTED IN PART AND DENIED IN PART as follows:

    a. The Motion is granted to the extent that Ms. Newton's testimony about the Rudolphs' net worth is EXCLUDED;

    b. The Motion is granted to the extent that Ms. Newton's references to Rudolph's alleged fraudulent financial acts are EXCLUDED;

    c. The Government is DIRECTED to provide Rudolph with a revised expert report from Mr. Padish based on the new information provided by Rudolph as soon as practicable, but in no event later than **July 11, 2022 at 8:30 a.m.**; and

    d. The Motion is DENIED in all other respects.

2. This case remains set for trial beginning on **July 11, 2022.**

Dated this 1st day of July, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge