IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge William J. Martinez

Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA,

v.

**1. LAWRENCE RUDOLPH,**
2. **LORI MILLIRON,**
___________________________________/

**DEFENDANTS' JOINT MOTION FOR MISTRIAL**

Lawrence Rudolph and Lori Milliron jointly move for a mistrial and state:

1. On the day that trial began, July 11, 2022, the government received a lengthy technical report from one of its experts, Ryan Cook, in which he opined that a hole in the shotgun case was caused by a snag rather than a shotgun blast. *See* attached "Expert Reports Review."

2. In disregard of this Court's crystal clear order requiring production of ***all*** expert reports—including rebuttal expert reports—the government did not disclose that report to the defense team when it received it. *See* Doc. 105:2.

3. The government did, however, provide the report to Agent Stephen DeFrance before he testified. The government did not inform the defense that this expert report was provided to its witness and that he relied on it during his testimony. The government waited until July 17 (six days after the start of the trial and well after the Court's deadline for expert reports) after opening statements and after Agent DeFrance testified, to produce the report

to the defense and to inform the defense that the report was provided to Agent DeFrance before he testified (only after we inquired).

4. By not disclosing the report, the government misled the defense into thinking that it was an undisputed fact that one of the holes in the gun case was caused by a blast and not a snag. We say undisputed because the government was aware that this was the conclusion of the defense expert Lucien Haag and had never produced any document disagreeing with his opinion. Accordingly, the defense committed to that position during its opening statement to the jury.

5. Agent DeFrance testified on July 14–15, 2022, that in *his* opinion, the hole in the case was caused by a snag. Although Agent DeFrance had written multiple detailed reports and worksheets prior to the start of trial (dated December 2020; February 26, 2021; January 3, 2022; June 15, 2022; June 22, 2022) and the government had disclosed him as a firearms and ballistics expert in its May 31, 2022 and June 15, 2022 expert disclosure letters (which included the substance of his expert testimony), neither Agent DeFrance nor the government ever disclosed an opinion that the hole was caused by a snag. Agent DeFrance was testifying, according to the government, as a lay witness even though he was designated as an expert pretrial. Either way, his testimony was false because he was not merely giving his lay or expert opinion. He was parroting conclusions from an undisclosed report that he did not author. Not only was his testimony misleading, it was also inadmissible testimonial hearsay, whether he was testifying as a lay witness or an expert. (Experts cannot act as mere

conduits for the reports of other experts any more than lay witnesses can, as explained in the incorporated memorandum of law below.)

6. Dr. Rudolph has listed two firearms experts, Lucien Haag and Richard Vasquez. After the defense disclosed these two experts to the government, the government contacted both of them during the immediate lead up to trial without informing the defense. Mr. Vasquez informed the government that he would only speak with the government if the defense was present. We informed the government that there were no depositions in federal criminal cases and that there was no time to engage in group discussions with both sides' experts. The government then reached out to Mr. Vasquez again (without including defense counsel) and offered to "retain" him, which Mr. Vasquez has disclosed made him feel as if the government was trying to intimidate him.

Even more unbelievably, despite having failed to provide the new Cook report to defense counsel, the government used it to draft a multi-page letter with pictures to defense expert Mr. Haag in which it expressly sought to influence and alter Mr. Haag's opinion outside the process contemplated by the Court. The government previously tried to retain Mr. Haag as well. The communication to Mr. Haag over the weekend constituted the first time the government provided the report to defense counsel. The government's communications during trial and attempt at "retaining" our experts is not proper.

7. The government's deliberate sandbagging of the defense—in a case with the most serious of charges—is extremely prejudicial and has irreparably damaged the defense case in the eyes of the empaneled jury. The government's entire circumstantial case turns

on whether it is impossible that Mrs. Rudolph somehow accidentally shot herself while packing to leave. If it is possible, that is reasonable doubt by definition. By hiding information directly relevant to how the gun might have misfired and then smuggling that hearsay in through an improper witness, the government tried to discredit the defense on a key point—one which it misled the defense to believe was ***undisputed***—and that damage cannot be repaired on the fly mid-trial.

**Memorandum of Law**

**I. Agent DeFrance's testimony was inadmissible hearsay, regardless of whether he was a lay or expert witness, but the defense had no way of knowing that because he falsely swore that he was testifying *solely* to his own conclusion.**

Lay witnesses can testify to inferences or conclusions only when based on their own first-hand observations. *See* Fed. R. Evid. 701. Their testimony can never be based on hearsay. *See* Fed. R. Evid. 602 (requiring personal knowledge). While the government will no doubt claim that Agent DeFrance, who according to the prosecution was testifying as a lay witness, did not base his testimony on Cook's report, the government admits it gave it to him to read before he testified but did not disclose it to the defense. Under those circumstances, it strains belief to believe that it did not shape his testimony. Not only did the government violate its discovery obligations, but it snuck hearsay in on an important point into the trial.

Even if DeFrance had testified as an expert, the government's tactic was entirely improper. Expert witnesses can base their opinions on hearsay information that other experts would reasonably rely upon in their field. *See* Fed. R. Evid. 703. However, it is well

established that an expert may not simply parrot another expert's conclusions. *Beck's Off. Furniture & Supplies, Inc. v. Haworth, Inc.*, No. 95-4018, 1996 WL 466673 at *7 (10th Cir. 1996) ("Experts are allowed to rely on hearsay, and even on the opinions of others if proper foundation was laid that others in the field would likewise rely on them, but may not merely parrot the opinions of other experts whose conclusions are not themselves in the record.") (citing *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732–33 (10th Cir. 1993)). "[An expert] cannot properly act as a conduit by presenting an opinion that is not his own opinion but that of someone else ... ." 3 Mueller & Kirkpatrick, *Federal Evidence* § 7:16 (4th ed. 2021). As this very Court has held: "For purposes of trial, the Court also notes that an expert's testimony may not simply become a 'conduit for hearsay.'" *Pertile v. General Motors, LLC*, No. 15-CV-0518-WJM, 2017 WL 4099895 at *8 n.6 (D. Col. Sept. 15, 2017); *see also Crew Tile Distribution, Inc. v. Porcelanosa Los Angeles, Inc.*, No. 13-CV-3206-WJM, 2017 WL 633044 at *9 n.8 (D. Colo. Feb. 16, 2017) ("'While an expert may consider remote statements that are not admitted and may be inadmissible, he cannot properly act as a conduit by presenting an opinion that is not his own opinion but that of someone else ... .'" (quoting Mueller & Kirkpatrick)).

The government has informed the defense that it will not elicit Cook's opinion about the snag in its case in chief (as it was not timely disclosed). But DeFrance's testimony, which was a mere conduit for Cook's opinion, violates Rule 802's bar on hearsay. DeFrance impermissibly testified to hearsay from a report he read but did not write. The defense ***had no opportunity to object*** because the government failed to disclose the report that would

have revealed that DeFrance was ***not*** testifying based on his own perception but that his testimony was based at least partially if not completely (there is no way to know now) on a hearsay report. Worse, because the government never disclosed the report that secretly underlay DeFrance's testimony, the defense was misled into making what it was tricked into believing were undisputed factual assertions to the jury.

DeFrance's testimony was inadmissible under the Rules as well as under the Constitution. Had the government timely disclosed the report, the defense would have objected to his testimony and would not have been misled into believing that the source of the hole in the bag case was agreed upon.

**II. A mistrial is the only remedy that will suffice to assure Dr. Rudolph a fair trial.**

A mistrial is the only remedy that will preserve Dr. Rudolph's right to a fair trial . The Tenth Circuit has held that suppression of testimony is the proper remedy for the government's late disclosure of expert discovery when the disclosure occurs ***before*** trial. *See United States v. Wicker*, 848 F.2d 1059 (10th Cir. 1988). But the prejudice in this case is an order of magnitude greater because the government's deception came during trial. It predictably caused the defense to make statements to the jury, believing they were undisputed, when the government well knew it was going to make an issue out of what caused one of the holes in the gun case.

"When the government fails to comply with a discovery order, the factors the district court should consider in determining if a sanction is appropriate are (1) the reasons the government delayed producing the requested materials, including whether or not the

government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance." *Wicker*, 848 F.2d at 1061.

To take each factor in series:

(1) The government brazenly admits that it deliberately and willfully withheld the report. It stated in an email to the defense: "We had no obligation to provide you with an opinion that will not be elicited in our case in chief." This, of course, flatly contradicts this Court's pre-trial order which explicitly required the production of all expert reports, including those of rebuttal experts. *See* Doc. 105:2 ("disclosures regarding rebuttal expert witnesses shall be made not later than 7 days prior to the Final Trial Preparation Conference … "). This disregard of the Court's order is indicative of an effort to impede the defense by misleading it as to which crucial facts were in dispute.

(2) The prejudice is extensive, just as the government intended. Because the defense believed the cause of the hole in the gun case was undisputed, it made representations to that effect before the jury. The jury will now perceive the trial as showing the defense caught flat-footed by surprise revelations as to how the bag was torn that are inconsistent with what the defense said at opening.

(3) The prejudice cannot be cured. Even if the Court were to strike all of Agent DeFrance's testimony and instruct the jury to disregard it, one or more jurors may have already decided that the defense is not credible as a result of the government's refusal to disclose discovery in accordance with this Court's very clear order.

WHEREFORE the Court should declare a mistrial because the government's flouting of the Court's pre-trial scheduling order has made it impossible for Lawrence Rudolph to receive a fair trial before the presently impaneled jury.

**Certificate of Service**

This motion was filed and served on all parties on 17 July 2022 using CM/ECF.

Respectfully submitted,

MARKUS/MOSS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By: /s/ David Oscar Markus
David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com

/s/ A. Margot Moss
A. Margot Moss
Florida Bar Number 091870
mmoss@markuslaw.com