IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  **LAWRENCE RUDOLPH** and
   2.  **LORI MILLIRON**,

     Defendants.

---

**GOVERNMENT'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR MISTRIAL
[ECF NO. 221]**

---

The crux of the defendants' motion for a mistrial is that they were not on notice as to a dispute over whether a mark in the lining of the original soft case is a blast hole or a snag. And that they were surprised by a July 11 consulting report from Browning engineer Ryan Cook offering factual support for the snag explanation. They claim to be unfairly prejudiced because Special Agent Steven DeFrance was aware of this report before he testified, but they were not.

The defense has known about the dispute for a long time. The government's June 15 test fires were all clearly premised on the notion that the hole is not a blast hole, since all the test fires involved the gun being placed *in front* of the hole.

Nor is the July 11 report one that the government had to disclose. It is not an expert report on which the government plans to base any testimony. Rather, it was prepared solely for cross-examination of defense expert Lucien "Luke" Haag and provided to Mr. Haag and the defense ahead of his testimony so as *not* to surprise him. The government believes he will agree with its interpretation once provided this information.

1

Indeed, the defense could have reached this conclusion on their own. The core of the report is simply the taking of additional measurements of the shotgun and the case that further make it clear that a hole in the lining of the original case is not the direct result of a blast. The defendants could have taken those measurements anytime in the last five months. They have had the case in their possession from the beginning and the government provided in February detailed reports from Browning describing the measurements of a Browning Auto-5 (identified for reference as INV_00000130). It also has offered to make physical evidence in this case, including the Browning Auto-5, available to the defense since January. In any event, Mr. Cook's report did not have to be disclosed as it is not the basis for any testimony in the government's case-in-chief — it is only a basis for cross-examination.

Finally, while Agent DeFrance was made aware of the report before he testified, it is factually and legally the case that he did not rely on the report for his testimony. He never testified in an expert capacity, as was made clear throughout his testimony. Therefore, he could testify only based on his own observations and lay opinions — not based on conclusions reached by others. That is what he did. Before ever seeing the July 11 Browning report, he employed his lay observations (discussed below) to reach a conclusion that any lay person who has ever caught a jacket on something sharp could reach: the picture depicted in government exhibit 208 below is likely the result of a snag.

The defendants' motion should be denied.

**I.      Background:   The Defense Expert Disclosures**

Lawrence Rudolph has had the original soft case from Zambia in his possession for nearly six years. On April 28, the case was examined by government blood spatter expert Thomas Griffin and Special Agent DeFrance, in the presence of defense counsel Anita Margot

Moss and Mr. Haag. During that examination, the government explicitly requested permission from Ms. Moss to peel back the liner from a hole about four inches back from the end. Defense counsel and Mr. Haag then observed the entire process: they were a few feet away from Special Agent DeFrance and Mr. Griffin when they took the photographs below which were disclosed on May 10 and presented in court on Wednesday as government exhibit 208.

 

Defendant Rudolph disclosed the report of Mr. Haag *after* the pretrial conference, late in the evening on July 1, 2022. Attachment 1. Although the government had agreed to this late disclosure so that Mr. Haag could consider the June testing, it became clear that no additional delay had been needed for Mr. Haag to consider those tests since they did not address Haag's primary complaint.

Haag had received the soft case himself back in March. Attachment 1 at 5. He conducted a thorough visual and microscopic inspection. He also performed a sodium rhodizonate test for lead and took infrared photographs. He concluded that the muzzle was four inches back from the end of the case, near the hole in the liner.

Mr. Haag's report revealed his belief that the hole about four inches from the end of the case, was a "blast hole." His opinion about the position of the muzzle, 4 inches from the front of the case, was clearly premised on the location of the hole, and just as clearly directly opposed to

3

the government's theory. Mr. Haag's report says "A re-examination of [a picture of the blast hole] will quickly reveal S.A. DeFrance's experimental design is seriously flawed from the onset in that he has selected his gun position . . . in gun cases contrary to where it actually was located when the fatal discharge occurred." Attachment 1 at 5. In short, Mr. Haag himself identifies the blast hole as the main point of dispute between his theory and the government's. It is curious, just based on the language of Mr. Haag's report and before the further events discussed below, that the defendants would assume the United States had abandoned its own analysis, and would consider the "blast hole" an undisputed fact.

After the government got access to the case on April 28, it discovered unburnt powder grains showing that the ammunition used in prior test-fires through the soft case comprised different components than the ammunition that had been fired through it in Zambia. The government asked Vista Outdoors/Federal Cartridge Company to make new ammunition and that ammunition was used in new test-fires on June 15, 2022. Those test-fires were conducted with the muzzle 1.8 inches from the end of the case, which is where foam damage to the original case was observed on April 28.

The defense represented that it was unable to provide its expert disclosure to the government on June 22, 2022, because it had to have all of the photographs from the June 15, 2022 testing even though Haag had no criticisms of the ammunition used in the earlier testing and even though they already knew Haag thought any test firing not conducted with the muzzle four inches away from the end was "seriously flawed." The defense waited until the government had depleted most of its stock of ammunition before releasing Haag's criticism and after the government would have had any possibility of actually getting a rebuttal expert, had it needed one (they disclosed Mr. Haag's report well after the deadline for disclosing rebuttal experts).

Once the government received Mr. Haag's report, it set up additional test-fires with its remaining ammunition as quickly as possible. It was able to obtain range time on July 5, 2022. It invited defense counsel to attend by video, which they did. That testing, about which Special Agent DeFrance testified, was done to find out what happens to the case when the muzzle was placed four inches from the end. The result was disclosed to defense counsel that same day: putting the muzzle four inches from the end generally resulted in immediate damage to the foam at the four-inch mark. This made it unlikely that what Haag identified as a "blast hole" was actually a blast hole and more likely that it was just what the exhibit 208 pictures taken by Special Agent DeFrance in front of Haag and defense counsel showed in April: a snag.

The government believes that Haag's report is consistent with the conclusion that the defendant murdered his wife. Its major criticism is the 1.8-inch muzzle placement. On Friday, July 2 the parties conferred about their respective witness and exhibits lists. The government made it clear that it wanted to speak to the defense firearms experts and said it would reach out to them. In fact, defense counsel noted that he had done the same with the government's forensic medical examiner, Dr. Stephen Cina. The government had been unaware of that contact. Dr. Cina declined to speak with them, but the government would have facilitated a meeting had it known and it offered to facilitate one after being notified.

The government was able to get in touch with defense expert Rick Vasquez. Vasquez said he was willing to speak to the government, but he wanted defense counsel to participate. Defense counsel told the government that they were too busy to participate. After that, the government reached out to Vasquez to get the information it would need to retain him on a government contract so that it could make the necessary arrangements to fly him to Colorado for

testimony and also so that it would be able to pay normal, expected, market-rate expert fees if a time presented itself for a discussion.[1]

Luke Haag had a similar response: he was willing to speak, but he wanted defense counsel to be kept in the loop. Mr. Haag also explicitly asked for a contract so that he could be compensated for time spent answering questions posed by the government.   *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018) ("Disclosure of the report ends the opportunity to invoke confidentiality"); *SEC v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009) ("A witness identified as a testimonial expert is available to either side."); *House v. Combined Ins. of America*, 168 F.R.D. 236, 249 (N.D. Iowa 1996) (denying motion to preclude deposition of opposing expert and noting, in passing, that fairness would dictate the calling party pay the expert witness fees). Unfortunately, Mr. Haag was on vacation the week before trial and the government was unable to speak with him.

After getting Mr. Haag's report, the government forwarded it to the experts with whom it has been consulting for guidance on firearms. One of those experts was Ryan Cook.   Cook looked at Haag's report and politely noted that it may have been based on a basic misunderstanding about the size of a Browning Auto-5. Accounting for that difference made it even less likely that hole in the original case four inches from the end was a "blast hole."

---

[1] Defense counsel's representation that Rick Vasquez — a former ATF official who would know government contracting procedures very well — was "intimidated" by a request to set up a formal contract to pay for time spent responding to questions posed by the government for expert guidance is puzzling. The government is confident that any misunderstanding could easily be cleared up with a phone call, if defense counsel would facilitate one.

## II.     The government was not required to disclose its internal deliberations or cross-examination strategies.

Rule 16 says that "the government must give to the defendant a written summary of any testimony that the government intends to use under [Federal Rule of Evidence 702] during its *case in chief* at trial." (emphasis added). That was the problem in *United States v. Wicker*, 848 F.2d 1059 (10th Cir. 1988). The government wanted to use an expert to prove that items seized from a room were drugs in its case-in-chief, but didn't provide the reports of the testing until two weeks after the deadline. But it is only expert testimony that the government wants to use in its case-in-chief that it has to disclose in a timely fashion. *See United States v. Henderson*, 564 F. App'x 352, 366, n.14 (10th Cir. 2014) ("[C]onsistent with the plain language of the Rule, the government's presentation of rebuttal testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief") (quoting *United States v. Frazier*, 387 F.3d 1244, 1268 (11th Cir.2004)).

The report here is neither expert testimony nor something the government is using in its case-in-chief. Ryan Cook is an engineer at Browning. He is not an expert in bag snags. He has no opinion about what actually occurred in Zambia, but rather was illustrating what would follow from an idea of Haag's: that the L-shaped tear could possibly be related to the shooting incident. He will not be testifying about the bag in this case and nothing in the report the defense is complaining about will be elicited in his direct examination: Mr. Cook's report is designed to assist the government in impeachment of the defense experts. The defendants' theory of discovery here seems to be that by not affirmatively putting the defense on notice of the bases for its cross-examination of that expert, it somehow unfairly surprised them. But there is no support for the notion that the government must disclose its cross-examinations — or observations of evidence available to both parties — in advance.

The defendant does not even try to articulate a basis for a discovery violation here. The report was not covered by Rule 16. It is not covered by 18 U.S.C. § 3500, because it will not be part of the subject matter of Ryan Cook's testimony and, even if it was, it would be timely disclosed under that rule. And there is no way to characterize the report as *Brady*.

The defendant makes much of the fact that the government provided Cook's report to Special Agent DeFrance before DeFrance testified. But Special Agent DeFrance saw the hole in the bag in April and had already conducted testing to confirm what most people would probably think obvious: damage caused by a shotgun blast occurs where the muzzle is placed, which means that firing a shotgun inside a bag four inches from the end blows out the foam starting at that four-inch mark; firing it 1.8 inches from the end blows out the foam at the 1.8 inch mark and firing it 0.5 inches from the end blows out the foam at the 0.5 inch mark.

Special Agent DeFrance already knew that what Mr. Haag said was a "blast hole" could not possibly be anything of the sort: Cook's observations independently tracked with his own. There is no basis for the assertion that Special Agent DeFrance had to rely on the report of someone who didn't even personally inspect the bag or test-firings involving sample bags before making his own conclusions. The report was sent to Special Agent DeFrance and to the case agents in this matter because the government is allowed to consult with its investigators to prepare for cross-examinations and to otherwise prepare the case for trial.

The defendants have no basis for the allegation that Special Agent DeFrance "parroted" another expert's conclusions. Special Agent DeFrance testified about the photos he took in April and the tests he did in July — all of which were disclosed. That he knew another expert had independently reached the same conclusion *after the fact* did not change his testimony.

## CONCLUSION

There is no discovery violation here. The government challenged Mr. Haag's theory as soon as it had his report. His theory was provided to it just before the Fourth of July holiday weekend. It responded with its tests of that theory the day after the holiday. Those tests simply confirmed what the pictures from April had long shown. The hole was not a result of the blast from the muzzle. If the shot caused it at all, it was from the metal of the gun during the long recoil pulling on the fabric.

The government was not required to disclose Mr. Cook's report at all. The defense's request for a mistrial because the government voluntarily handed over its cross-examination strategy to the defense and its witness over a week before that witness is scheduled to testify is simply unprecedented.

The motion should be denied.

Respectfully submitted,

COLE FINEGAN
United States Attorney

| | | |
|---|---|---|
| By: */s Bryan Fields* | By: */s E. Garreth Winstead* | By: */s J. Bishop Grewell* |
| Bryan Fields | E. Garreth Winstead | J. Bishop Grewell |
| Assistant United States Attorney | Assistant United States Attorney | Assistant United States Attorney |
| U.S. Attorney's Office | U.S. Attorney's Office | U.S. Attorney's Office |
| 1801 California St. Suite 1600 | 1801 California St. Suite 1600 | 1801 California St. Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 | Denver, CO 80202 |
| (303) 454-0100 | (303) 454-0100 | (303) 454-0100 |
| Bryan.Fields3@usdoj.gov | Garreth.Winstead@usdoj.gov | Bishop.Grewell@usdoj.gov |
| Attorney for the Government | Attorney for the Government | Attorney for the Government |

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

<span style="margin-left:40%">*s/ Bryan Fields*              <br>United States Attorney's Office</span>