IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge William J. Martinez

Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA,

v.

1.     LAWRENCE RUDOLPH,
2.     LORI MILLIRON,
_____/

**DEFENDANTS' JOINT REPLY
TO THE RESPONSE TO THE MOTION FOR MISTRIAL**

Caught using a witness as a conduit for an undisclosed expert opinion comprising nothing but hearsay, the government disclaims knowing what all the fuss is about: "The defendant does not even try to articulate a basis for a discovery violation here." Doc. 222:8. The government knows better and concedes that it had a supplemental report from one of its experts on July 11 (before opening statements), did not disclose it to the defense, but did disclose it to Agent DeFrance before he testified. The government's response—long on rhetoric and short on reasoning—never explains why it chose to disclose the report to Agent DeFrance to make use of before his testimony while keeping it from the defense.

A government expert produced a lengthy and technical report, which is the only evidence that a hole in the bag was caused by a snag. The government withheld the report purportedly because "it was prepared ***solely*** for cross-examination of defense expert Lucien 'Luke' Haag ... ." Doc. 222:1 (emphasis added). Yet, the government ***did not*** use the report solely for cross-examination but ***immediately*** gave it to Agent DeFrance. If this were all innocent and above-board, the response would explain why DeFrance (but not the defense)

"was made aware of the report before he testified." Doc. 222:2. ***The response gives no reason why the prosecutors gave DeFrance the report.*** Obviously, they intended for him to read it. He did so, which impacted his testimony. Smuggling in an undisclosed expert opinion through another witness violates the Court's discovery order and several rules of evidence.

Rather than explaining why it had DeFrance read that undisclosed report before calling him in its case-in-chief, the government chides the defense for "mak[ing] much of [that] fact" that it gave its witness these hearsay talking points before calling him to the stand. Doc. 222:8. Page 8 of the response is replete with self-serving, unsupported, implausible assurances that DeFrance's testimony was his own and that it just so happened that the conclusions in the report he was given to read before testifying "independently tracked with his own." Doc. 222:8. The government denies there is any "basis" at all to complain that prosecutors coached a witness to testify with an undisclosed expert report because the mere fact that DeFrance "knew another expert" agreed with him "did not change his testimony." *Id.* But that assertion defies common sense as there would have to have been *some* good reason for giving DeFrance—and not the defense—the report. But there isn't any to be found anywhere in the lengthy response. And *that* omission is strong evidence that the government intended to keep the report from the defense while having its witness secretly rely on it, which mandates a mistrial in the circumstances. *See United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988).

There is also no truth to the suggestion that the defense "has known … for a long time," Doc. 222:1, that there was a factual dispute over whether the holes in the gun case

were blast holes. What matters in determining whether there is a dispute is not what prosecutors personally speculate or believe, but what the *evidence* shows. The only way the government could establish what caused the holes in the case is with expert testimony. The government admits it did not (until it was too late) provide the defense with the *only* expert report to conclude that a snag rather than a blast caused one of the holes. The defense, therefore, had no reason to believe that the cause of hole would be disputed *with evidence at trial*.

For the same reason, it is patently untrue that the government was not required to disclose the report. That entire argument is premised on the utterly false assertion that "[t]he report here is neither expert testimony nor something the government is using in its case-in-chief." Doc. 222:7–8. Again, in the absence of any other explanation for why prosecutors gave DeFrance the report, the only plausible inference is that it was meant to and in fact did influence his testimony. Thus, it is inescapable that this undisclosed expert evidence did come in through a witness-conduit *during the government's case-in-chief*, and the government cannot avoid the consequences of failing to disclose it by getting DeFrance rather than its author, Cook, to testify to its conclusions.

The report had to be disclosed because, notwithstanding its self-serving, after-the-fact, and unsubstantiated assurances that DeFrance read the report just to pass the time, the substance of the report was introduced into the government's case-in-chief in violation and disregard of the orderly and fair procedures established by the Court's discovery order and Federal Rules of Evidence 602, 701, 702, 703, and 802. Had the prosecution complied with its

obligations and disclosed its supplemental expert report to the defense at the same time it disclosed it to its witness, all of this could have been avoided. Then the defense would have been on notice and could have prepared accordingly for its opening statement and its cross of Agent DeFrance.

## Conclusion

The bottom line is that the substance of the report was introduced in the prosecution's case-in-chief. It is inescapable—in light of the lack of any explanation for why DeFrance was given this report in advance of his testimony—that the government wilfully and in bad faith withheld evidence from the defense that it was required to disclose. That is what happened, plain and simple.

## Certificate of Service

This motion was filed and served on all parties on 18 July 2022 using CM/ECF.

    Respectfully submitted,

    MARKUS/MOSS PLLC
    40 N.W. Third Street, PH1
    Miami, Florida 33128
    Tel: (305) 379-6667

    By:   /s/ David Oscar Markus
           David Oscar Markus
           dmarkus@markuslaw.com

           /s/ A. Margot Moss
           A. Margot Moss
           mmoss@markuslaw.com

           /s/ Lauren Doyle
           Lauren Doyle
           ldoyle@markuslaw.com