IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge William J. Martinez

Criminal Case No. 22-CR-0012-WJM

UNITED STATES OF AMERICA,

v.

1.   **LAWRENCE RUDOLPH**,
2.   LORI MILLIRON,

_____/

**LAWRENCE RUDOLPH'S RENEWED OBJECTION
RELATED TO CASSANDRA OLMSTEAD**

Lawrence Rudolph previously filed a motion to exclude the hearsay statements that

Bianca Rudolph allegedly made to Cassandra Olmstead. Doc. 150.  The Court denied the

motion *without prejudice*, stating that "Rudolph may raise these arguments again as

objections at trial, if appropriate given the evidence that has or has not been introduced at

that point in the trial, and before Olmstead testifies." Doc. 184:8.

The Government plans on calling Ms. Olmstead on Monday. To assist the Court with

the eventual ruling on the admissibility of hearsay statements attributed to Bianca Rudolph

by Cassandra Olmstead, *see* Doc. 184:8–9, Lawrence Rudolph sets forth this objection to Ms.

Olmstead's testimony.

The prosecution has proffered that it intends to elicit testimony from Olmstead

regarding Bianca's alleged statements regarding divorce and whether the Rudolphs signed

a "piece of paper" dividing their assets. The prosecution says that these hearsay statements

satisfy the forfeiture-by-wrongdoing exception because Dr. Rudolph killed Bianca to keep

her from testifying about this in a divorce proceeding or in the 2012 civil defamation action.

But there was no divorce proceeding and there is no evidence that Bianca threatened Larry Rudolph with a divorce.  Indeed, there is powerful evidence – put forward by the prosecution through its own expert (and corroborated by the defense expert) – that the Rudolphs had an authentic post-nuptial agreement, which would resolve their assets in the event of a divorce. There is no evidence before this jury that Bianca Rudolph (a) threatened Dr. Rudolph with divorce or (b) that Dr. Rudolph killed Bianca Rudolph to keep her from testifying in some hypothetical divorce proceeding.

In addition, there is literally no proof that Dr. Rudolph tried to prevent his wife from testifying in a civil defamation proceeding. Paul Babaz testified briefly, over defense objection, about Dr. Rudolph's lawsuit against SCI.  The prosecution is aware Mrs. Rudolph was deposed for this lawsuit and provided *favorable* testimony for her husband.  Thus, there was no attempt or any need for Dr. Rudolph to engage any act to make Bianca Rudolph unavailable for her deposition. The lawsuit was subsequently settled resulting in a substantial payment to Dr. Rudolph.  The government's entire theory in this case is that Dr. Rudolph killed Bianca to be with Lori Milliron, not to avoid some lawsuit.

Because there is simply no evidence that Dr. Rudolph killed Bianca Rudolph with the specific design of keeping her from testifying in any proceeding, the government has failed to show that the hearsay statements satisfy the forfeiture-by-wrongdoing exception.  *See Giles v. California*, 554 U.S. 353 (2008).

And there is no doubt that the burden is on the government to prove admissibility. "*[T]he proponent of hearsay evidence bears the burden of establishing the applicability*

*of a hearsay exception.*" *United States v. Irvin*, 682 F.3d 1254, 1262 (10th Cir. 2012); 30B Fed. Prac. & Proc. Evid. § 6803 (2022 ed.) ("[T]he proponent of a hearsay statement must establish that a challenged statement qualifies for admission under an applicable hearsay exception by a preponderance of the evidence."); *see also, e.g.*, *United States v. Otuonye*, 995 F.3d 1191, 1204 (10th Cir. 2021) ("Before admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy."); *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) ("The obligation of establishing the applicability of a hearsay exception for these records falls upon the government as the proponent of the evidence.").[1]

"***Therefore, the proponent of a hearsay statement invoking the forfeiture by wrongdoing exception has the burden of showing by a preponderance of the evidence that the party opposing admission of the hearsay statements engaged in conduct designed to procure the unavailability of the witness.***" *Beckett v. Ford*, 384 F. App'x 435, 448 (6th Cir. 2010); *accord United States v. Dinkins*, 691 F.3d 358, 383 (4th Cir. 2012) ("Moreover, we have upheld the admission of evidence under a theory of forfeiture by wrongdoing **only** when the government has shown by a preponderance of the evidence that the defendant's

---

[1]When a party moves to exclude hearsay evidence, it is not the case that "the movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground ... ." DE184:2 (citations omitted). Nor does the application of Rule 804(b)(6)'s forfeiture-by-wrongdoing exception depend on "whether there is sufficient evidence to meet [the] preponderance standard." DE184:8 (citing *Huddleston v. United States*, 485 U.S. 681, 690 (1988)).

wrongdoing was intended to render the declarant unavailable as a witness.") (emphasis added); *United States v. Vallee*, 304 F. App'x 916, 920 (2d Cir. 2008) ("The evidence was admitted under the forfeiture-by-wrongdoing exception to the hearsay rule and Confrontation Clause upon a finding that the prosecution had proved by a preponderance of the evidence that Vallee intentionally killed Carter to prevent him from testifying in the Canadian prosecution."); *United States v. Cherry*, 217 F.3d 811, 815 (10th Cir. 2000) ("[B]efore permitting the admission of grand jury testimony of witnesses who will not appear at trial because of the defendant's alleged coercion, the judge must hold an evidentiary hearing in the absence of the jury and find by a preponderance of the evidence that the defendant's coercion made the witness unavailable. The district court was correct in applying the same burden—preponderance of the evidence—and procedure in a case under the similar terms of Rule 804(b)(6).").

***The trial court must decide whether the proponent's proof makes it more likely than not that the forfeiture-by-wrongdoing exception applies because that is a preliminary legal question, not a preliminary factual question.*** *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."); Fed. R. Evid. 804, Advisory Committee Note to Subdivision (b)(6) (1997) ("The usual ***Rule 104(a)*** preponderance of the evidence standard has been adopted in light of the behavior the new Rule 804(b)(6) seeks to discourage."). The resolution of some of these legal questions, including whether the forfeiture-by-wrongdoing exception applies, requires the judge to make factual determinations:

4

> To the extent that these inquiries are factual, the judge acts as a trier of fact. Often, however, rulings on evidence call for an evaluation in terms of a legally set standard. Thus, when a hearsay statement is offered as a declaration against interest, a decision must be made whether it possesses the required against-interest characteristics. These decisions, too, are made by the judge.

Advisory Committee Note to Fed. R. Evid. 104(a) (1972).

The *Huddleston* standard is used to determine whether there is sufficient evidence to allow the jury to decide a preliminary *factual* question. An example from this case is whether the post-nuptial agreement is authentic. As long as there is enough evidence to support a reasonable conclusion that it is more likely authentic than not, the Court must allow the jury to consider the document:

> In determining whether the government has introduced sufficient evidence to meet **Rule 104(b)**, the trial court neither weighs credibility nor makes a finding that the government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence."

*Huddleston v. United States*, 485 U.S. 681, 690 (1988); Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

The government elided this distinction between preliminary legal questions governed by Rule 104(a) and preliminary legal questions governed by Rule 104(b) in its response, DE162:15, to lower its burden of proof on this issue. This is because it does not have **any** specific evidence, much less enough evidence to make it more probable than not, that Dr. Rudolph murdered his wife for the specific purpose of keeping her from testifying in a specific proceeding. The government offers only speculation about two different proceedings,

a hypothetical divorce proceeding and a civil defamation action. Conjecture, by definition, can never satisfy the preponderance of the evidence standard because speculation is not evidence.

As the Court knows, there was no divorce proceeding and no evidence presented about a possible divorce proceeding in 2016.  And there certainly has not been any evidence that Dr. Rudolph killed Bianca to keep her from testifying in a hypothetical divorce proceeding. Even if a divorce proceeding had been initiated, he would not have any reason to kill her to keep her from testifying about his infidelity because Arizona is a no-fault divorce state, meaning that "marital infidelity is of no relevance to a divorce proceeding in Arizona." Padish Report at 12. Nor did he have any reason to kill her to keep her from testifying in the 2012 civil defamation suit because she already testified – and testified *favorably* for Dr. Rudolph.

The government set forth the wrong legal standard because it cannot satisfy the one that actually applies. There is no way that Cassandra Olmstead can legally testify to what Bianca Rudolph purportedly told her.

### Certificate of Service

This memorandum was filed and served on all parties on 22 July 2022 using CM/ECF.

Respectfully submitted,

MARKUS/MOSS PLLC
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By:      /s/ David Oscar Markus

David Oscar Markus
Florida Bar Number 119318
dmarkus@markuslaw.com

/s/ A. Margot Moss
A. Margot Moss
Florida Bar Number 091870
mmoss@markuslaw.com