IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martinez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

     Defendants.

*[handwritten: Final Instructions Read to Jury WJM 28 July 2022 17:04]*

---

## FINAL JURY INSTRUCTIONS

---

### PART I: GENERAL INSTRUCTIONS & EVIDENTIARY CONSIDERATIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty, now, at the end of the trial, to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses.  Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the

jury room, so you need not take notes.[1]

---

[1] Tenth Circuit Criminal Pattern Jury Instructions § 1.03 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 2 (ECF No. 174 at 7) (adopted).

## DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts.  But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.  That was the promise you made and the oath you took.[2]

---

[2] Tenth Circuit Criminal Pattern Jury Instructions § 1.04 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 3 (ECF No. 174 at 8) (adopted).

## EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.[3]

---

[3] Tenth Circuit Criminal Pattern Jury Instructions § 1.06 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 4 (ECF No. 174 at 9) (adopted).

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proven.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.[4]

---

[4] Tenth Circuit Criminal Pattern Jury Instructions § 1.07 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 5 (ECF No. 174 at 10) (adopted).

## BURDEN OF PROOF

The government has the burden of proving the defendants guilty beyond a reasonable doubt.  The law does not require a defendant to prove his or her innocence or produce any evidence at all.  The government has the burden of proving the defendants guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendants not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendants' guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendants' guilt.

A "reasonable doubt" is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in this case.  If, based on your consideration of the evidence, you are firmly convinced that Defendant Lawrence Rudolph or Defendant Lori Milliron, or both, are guilty of the crimes charged, you must find him or her guilty.  If on the other hand, you think there is a real possibility that he or she is not guilty, you must give him or her the benefit of the doubt and find him or her not guilty.[5]

_____

[5] Tenth Circuit Criminal Pattern Jury Instructions § 1.05 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); *United States v. Petty*, 856 F.3d 1306, 1310-11 (10th Cir. 2017) (concluding that "firmly convinced" language is a correct and comprehensible statement of the reasonable doubt standard); *Monk v. Zelez*, 901 F.2d 885, 889 (10th Cir. 1990) (noting with approval other circuit's observation that "there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him.") (citation and quotation omitted); *Victor v. Nebraska*, 511 U.S. 23 (1994) (Ginsburg, J., concurring) (criticizing "hesitate to act language" and drawing on federal judiciary center committee notes and other circuit court admonitions); Government's Requested Instruction No.

## STIPULATIONS

The evidence in this case consists of not only the sworn testimony of the witnesses but also facts that have been agreed to or stipulated. When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts.

In this case, the parties stipulated as follows:

1.     Lawrence Rudolph was, at all times relevant to the charge of foreign murder in Count One of the Superseding Indictment, a "national of the United States" as required by 18 U.S.C. § 1119.

2.     Bianca Rudolph was, at all times relevant to the charge of foreign murder in Count One of the Superseding Indictment, a "national of the United States" as required by 18 U.S.C. § 1119.[6]

3.     The United States of America and the defendant, Lawrence Rudolph, stipulate and agree that the forensic document examiner retained by defendant Lawrence Rudolph, Dianne Flores, reached the same conclusion as FBI forensic document examiner Rachel Clay.  Using the same methodology described during Ms. Clay's testimony, as well as additional testing, each independently concluded that the signatures on defense exhibits RW and RX, originals of the post-nuptial agreement,

---

1 (ECF No. 175 at 3) (adopted).

[6] Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 6 (ECF No. 174 at 11) (adopted); Stipulation Regarding Status of Certain Individuals as Nationals of the United States (ECF No. 212) (adopted).

were signed by Bianca Rudolph.[7]

--------

[7] Stipulation (ECF No. 236) (adopted).

## NUMBER OF WITNESSES

The number of witness testifying for or against a certain fact does not, by itself, prove or disprove that fact.[8]

---

[8] Model Criminal Jury Instructions Committee, Colorado Supreme Court, E04 (2020 Ed.); Stipulated Proposed Jury Instructions No. 7 (ECF No. 174 at 12) (adopted).

## ALL AVAILABLE WITNESSES NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.[9]

---

[9] 3 Fed. Jury Prac. & Instr. § 105.11 (5th ed.).

## CREDIBILITY OF WITNESSES

I remind you that it is your job to decide whether the government has proved the guilt of the defendants beyond a reasonable doubt. In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses, including Defendant Lawrence Rudolph, who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions:

- Did the witness impress you as honest?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest  in the outcome in this case?

- Did the witness have any relationship with either the government or the defense?

- Did the witness seem to have a good memory?

- Did the witness clearly see or hear the things about which he/she testified?

- Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from the testimony of other witnesses?

When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

The testimony of Defendant Lawrence Rudolph should be weighed and his credibility evaluated in the same way as that of any other witness.

In reaching a conclusion on ~~a~~ *a WJM* particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.[10]

---

[10] Tenth Circuit Criminal Pattern Jury Instructions § 1.08 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 8 (ECF No. 174 at 13–14) (adopted).

## EXPERT WITNESSES

During the trial you heard the testimony of the following expert witnesses:

• Dr. Stephen Cina, concerning a forensic medical examination of Bianca Rudolph's death;

• Dr. Daniel Maswahu, concerning the autopsy of Bianca Rudolph;

• Dr. Bruce Bradtmiller, concerning an anthropometric study;

• Dr. Richard Vorder Bruegge, concerning a photogrammetry analysis;

• Thomas Griffin, concerning blood spatter evidence;

• Steve Rodgers, concerning the manufacture of ammunition;

• Ryan Cook, concerning the manufacture and design of the Browning A5 semi-automatic shotgun;

• Erin Newton, concerning forensic accounting;

• James Padish, on the law of divorce in Arizona;

• Peter Milnes, on life insurance policies;

• Lucien C. Haag, concerning shotgun ballistics;

• Dr. Michael Baden, concerning a forensic medical examination of Bianca Rudolph's death;

• Paulette Sutton, concerning blood spatter evidence;

• Rachel Clay, concerning forensic document analysis; and

• Mitchell Hoffman, concerning forensic accounting.

In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may

testify and state an opinion concerning such matters.

You are not required to accept such an opinion.  You should consider opinion testimony just as you consider other testimony in this trial.  Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.[11]

---

[11] Tenth Circuit Criminal Pattern Jury Instructions § 1.17 (2021); Stipulated Proposed Jury Instructions No. 9 (ECF No. 174 at 15–16) (modified).

## NON-TESTIFYING DEFENDANT

Defendant Lori Milliron did not testify, and I instruct you that you cannot consider her decision not to testify as evidence of guilt.  You must understand that the Constitution of the United States grants to a defendant the right to remain silent.  That means the right not to testify or call any witnesses.  That is a constitutional right in this country, it is very carefully  guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any  witnesses.[12]

---

[12] Tenth Circuit Criminal Pattern Jury Instructions § 1.08.1 (2021).

## IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

You have heard the testimony of one or more witnesses who, before this trial, made statements that may be different from their testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable these witnesses' testimony was in this trial. You cannot use these statements as proof of anything else. You can only use them as one way of evaluating their testimony here in court.[13]

---

[13] Tenth Circuit Criminal Pattern Jury Instructions § 1.10 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 10 (ECF No. 174 at 17) (adopted).

## <u>CAUTION—CONSIDER ONLY CRIMES CHARGED</u>

You are here to decide whether the Government has proved beyond a reasonable doubt that Defendant Lawrence Rudolph or Defendant Lori Milliron, or both, are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the Superseding Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether these defendants have been proved guilty of the crimes charged.[14]

---

[14] Tenth Circuit Criminal Pattern Jury Instructions § 1.19 (2021); Charge of the Honorable William J. Martinez, United States v. Yurek, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions (ECF No. 174 at 20) (adopted).

## CAUTION—PUNISHMENT

If you find Defendant Lawrence Rudolph or Defendant Lori Milliron, or both, guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.[15]

---

[15] Tenth Circuit Criminal Pattern Jury Instructions § 1.20 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 14 (ECF No. 174 at 21) (adopted).

## SUPERSEDING INDICTMENT IS NOT EVIDENCE

An indictment is only a formal method used by the government to accuse a defendant of a crime.  It is not evidence of any kind against the defendants. Defendant Lawrence Rudolph and Defendant Lori Milliron are presumed to be innocent of the crimes charged.

Defendant Lawrence Rudolph and Defendant Lori Milliron have pleaded "Not Guilty" to the Superseding Indictment.  Therefore, each denies being guilty of the charges contained in the Superseding Indictment.[16]

---

[16] 1A Fed. Jury Prac. & Instr. § 13:04 (6th ed. 2015); Stipulated Proposed Jury Instructions No. 15 (ECF No. 174 at 22) (adopted).

## VENUE

The events presented at trial happened in various places. There is no requirement that all the acts making up a crime happen in the District of Colorado. However, the law imposes certain limits on where the government can charge and try a defendant, and you must find that those limits were respected in this case for each individual count.

In a case where the alleged crime was committed outside of the United States, such as that charged in Count 1, venue is proper in any district where the accused "is arrested or is first brought" in connection with the offense charged.

In the case of mail fraud, such as that charged in Count 2, venue is proper in any district where the particular piece of mail at issue was sent, passed through, or was received.

For the alleged crime of accessory-after-the-fact charged in Count 3, venue is proper in any district where the accused comforts or assists an offender in order to hinder or prevent his trial or punishment.

For the alleged crime of obstruction charged in Count 4, venue is proper in any district where the accused endeavors to influence, obstruct or impede the due administration of justice.

For the alleged crime of perjury before a grand jury charged in Counts 5 -9, venue is proper in the district where the grand jury was convened.

Unlike all the other elements of the crime that I will describe for you, venue is a fact that the government only has to prove by a "preponderance of the evidence," which is a lower standard than proof beyond a reasonable doubt. The "preponderance of the

evidence" standard means the government only has to convince you that it is more likely than not that venue is proper. If you find that venue is improper for any count, you must acquit the defendant of that charge. If you find it is more likely than not that venue is proper, you should continue to determine whether all of the other elements of the crimes I will describe for you have been proven beyond a reasonable doubt.[17]

---

[17] Pattern Crim. Jury Instr. 3d Cir. 3.09 (2021 ed.); Pattern Crim. Jury Instr. 8th Cir. 3.13 (2020 ed.); Stipulated Proposed Jury Instructions No. 16 (ECF No. 174 at 23–24) (adopted).

## EVIDENCE ADMITTED FOR LIMITED PURPOSE

In certain instances evidence may be admitted only concerning a particular party or only for a particular purpose and not generally against all parties or for all purposes. For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose or against any party not specifically mentioned.[18]

Anna Grimley testified that Defendant Lori Milliron made certain statements to her in 2015.  When evaluating the case against Defendant Lori Milliron, it is for you to decide whether she made any statement and, if so, what weight to give whatever statement she made.  However, any statements Defendant Lori Milliron may have made to Anna Grimley are to be considered only with regard to the charges against Defendant Lori Milliron.  With regard to the charges against Defendant Lawrence Rudolph, you cannot consider these alleged statements at all. In other words, as far as the charges against Defendant Lawrence Rudolph are concerned, you cannot consider any statements Defendant Lori Milliron may have made to Anna Grimley.

With respect to Paul Babaz, you may consider the allegations in the amended complaint that you heard Mr. Babaz read from in this case only against Defendant Lawrence Rudolph and not against Defendant Lori Milliron.  You may not consider the statements that you saw on your exhibit monitor screens and Mr. Babaz's testimony in any way when you are deciding if the government has proved beyond a reasonable doubt its case against Defendant Lori Milliron.

Rachel Anders testified that Defendant Lori Milliron made certain statements to

---

[18] 3 Fed. Jury Prac. & Instr. § 104.42 (5th ed.).

her.  You may consider the statements of Defendant Lori Milliron only in the case against her and not against Defendant Lawrence Rudolph.  You may not consider Defendant Lori Milliron's statements in any way when you are deciding if the Government has proved beyond a reasonable doubt its case against Defendant Lawrence Rudolph.

*OUT*
*WJM*

Sherry Lee Houck testified that Defendant Lori Milliron made certain statements to her.  When evaluating the case against Defendant Lori Milliron, it is for you to decide whether she made any statement and, if so, what weight to give whatever statement she made.  However, any statements Defendant Lori Milliron may have made to Sherry Lee Houck are to be considered only with regard to the charges against Defendant Lori Milliron.  With regard to the charges against Defendant Lawrence Rudolph, you cannot consider these alleged statements at all. In other words, as far as the charges against Defendant Lawrence Rudolph are concerned, you cannot consider any statements Defendant Lori Milliron may have made to Sherry Lee Houck.

FBI Agent Donald Peterson and FBI forensic accountant Erin Newton read portions of Defendant Lori Milliron's grand jury testimony.  You may consider the statements of Defendant Lori Milliron only in the case against her and not against Defendant Lawrence Rudolph.  You may not consider these statements in any way when you are deciding if the Government proved beyond a reasonable doubt its case against Defendant Lawrence Rudolph.

## VOLUNTARINESS OF STATEMENT BY DEFENDANT

Evidence has been presented about a statement attributed to Defendant Lawrence Rudolph alleged to have been made after the commission of the crimes charged in this case but not made in court.  Such evidence should always be considered by you with caution and weighed with care.  You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement.  For example, consider the age, gender, training, education, occupation, and physical and mental condition of the defendant, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances.  If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.[19]

---

[19] Tenth Circuit Criminal Pattern Jury Instructions § 1.25 (2021).

## LAWYERS' OBJECTIONS

The lawyers for both sides objected to some of the things that were said or done during the trial. Do not hold that against either side. The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.

Do not interpret my rulings on their objections as any indication of how I think the case should be decided. My rulings were based on the rules of evidence, not on how I feel about the case.[20]

---

[20] Sixth Circuit Criminal Pattern Jury Instructions § 1.09.

## PART II: ELEMENTS OF CRIMES CHARGED

That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case.  Now I will explain the elements of the crimes with which the defendants are charged in this case.

**FOREIGN MURDER**

Defendant Lawrence Rudolph is charged in the first count of the Superseding Indictment with a violation of 18 U.S.C. § 1119.

This law makes it a crime for one United States national to unlawfully kill with malice aforethought another United States national outside the United States but within the jurisdiction of another country. Any kind of willful, deliberate, malicious, and premeditated killing is murder in the first degree.

To find Lawrence Rudolph guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: Lawrence Rudolph caused the death of Bianca Rudolph;

*Second*: Lawrence Rudolph killed Bianca Rudolph with malice aforethought;

*Third*: the killing was premeditated;

*Fourth*: the killing took place outside the United States but within the jurisdiction of another country;

*Fifth*: Lawrence Rudolph was a national of the United States; and

*Sixth*: Bianca Rudolph was a national of the United States.

To kill "with malice aforethought" means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life. To find malice aforethought, you need not be convinced that the defendant hated the person, or felt ill will toward the person at the time.

In determining whether the killing was with malice aforethought, you may consider the use of a weapon or instrument, and the manner in which death was caused.

A killing is "premeditated" when it is the result of planning or deliberation. The amount of time needed for premeditation of a killing depends on the person and the circumstances. It must be long enough for the killer, after forming the intent to kill, to be fully conscious of that intent.

You should consider all of the facts and circumstances preceding, surrounding, and following the killing, which tend to shed light upon the condition of the defendant's mind, before and at the time of the killing.

A person is a "national of the United States" if he or she is a citizen of the United States. A person born in the United States is a citizen.[21]

---

[21] Pattern Crim. Jury Instr. 10th Cir. 2.52 (2021 ed.) *United States v. Henthorn*, 14-cr-448-RBJ, ECF No. 109 (Sept. 21, 2015) (modified); 8 U.S.C. § 1101(a)(22); Stipulated Proposed Jury Instructions No. 17 (ECF No. 174 at 26–27) (adopted).

## MAIL FRAUD

Count Two of the Superseding Indictment charges Defendant Lawrence Rudolph with violating Title 18, United States Code, Section 1341.

This law makes it a crime to use the mails in carrying out a scheme to defraud or a scheme to obtain money or property by means of false or fraudulent pretenses, representations or promises.

To find that Defendant Lawrence Rudolph committed the crime of mail fraud you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: Lawrence Rudolph devised or intended to devise a scheme to defraud the life insurance companies identified during this trial by making false and fraudulent representations that the death of Bianca Rudolph was an accident to obtain life insurance proceeds;

*Second*: Lawrence Rudolph acted with specific intent to defraud;

*Third*: Lawrence Rudolph caused another person to mail something through a private or commercial ~~instate~~ *Interstate WJM* carrier for the purpose of carrying out the scheme;

*Fourth*: the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension.

An "intent to defraud" means an intent to cheat someone out of money or property by means of deception.

A representation is "false" if it is known to be untrue or is made with reckless

29

indifference as to its truth or falsity. A representation would also be "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

What must be proven beyond a reasonable doubt is that the defendant devised or intended to devise a scheme to defraud that was substantially the same as the one alleged in the Superseding Indictment, and that the use of the mails was closely related to the scheme, in that the defendant either mailed something or caused it to be mailed in an attempt to execute or carry out the scheme. To "cause" the mails to be used is to do an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use can reasonably be foreseen even though the defendant did not intend or request the mails to be used.[22]

---

[22] Pattern Crim. Jury Instr. 10th Cir. 2.56 (2021 ed.); Stipulated Proposed Jury Instructions No. 18 (ECF No. 174 at 28–29) (adopted).

## **"KNOWINGLY"**

The word "knowingly" means that an act was done voluntarily and intentionally, and not because of mistake or accident.[23]

---

[23] Pattern Crim. Jury Instr. 10th Cir. 1.37 (2021 ed.); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 19 (ECF No. 174 at 30) (adopted).

## ACCESSORY-AFTER-THE-FACT

Count Three of the Superseding Indictment charges Defendant Lori Milliron with violating Title 18, United States Code, Section 3.

This law makes it a crime for anyone, knowing that a crime against the United States has been committed, to obstruct justice by giving assistance to another person who committed that crime, in order to hinder or prevent that person's apprehension or punishment. A person who does this is called an accessory after the fact.

In this case, Defendant Lori Milliron is not charged with actually committing the crime of foreign murder charged in Count 1. Instead, she is charged with helping codefendant Lawrence Rudolph try to avoid being arrested, prosecuted or punished for that crime.

To find Lori Milliron guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: Lawrence Rudolph committed the crime of foreign murder alleged in Count 1, which is an offense against the United States;

*Second*: Lori Milliron knew that Lawrence Rudolph had already committed the crime of foreign murder committed in Count One;

*Third*: Lori Milliron then helped Lawrence Rudolph try to avoid being arrested, prosecuted or punished;

*Fourth*: Lori Milliron did so with the intent to help Lawrence Rudolph avoid being arrested, prosecuted or punished.[24]

---

[24] Pattern Crim. Jury Instr. 10th Cir. 2.07 (2021 ed.); Stipulated Proposed Jury Instructions No. 20 (ECF No. 174 at 31) (adopted).

## OBSTRUCTION

Defendant Lori Milliron is charged in Count Four with a violation of 18 U.S.C. section 1503(a).

This law makes it a crime for anyone corruptly to endeavor to influence, obstruct, or impede the due administration of justice in connection with a pending judicial proceeding.

To find Lori Milliron guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: there was a proceeding pending before a federal grand jury;

*Second*: Lori Milliron knew of the pending proceeding before the grand jury and endeavored to influence, obstruct, or impede the due administration of justice in that proceeding; and

*Third*: Lori Milliron's act was done "corruptly," that is, she acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

It is not necessary to show that Lori Milliron was successful in achieving the forbidden objective, only that she corruptly tried to achieve it in a manner which she knew was likely to influence, obstruct, or impede the due administration of justice as the natural and probable effect of her actions.[25]

---

[25] Pattern Crim. Jury Instr. 10th Cir. 2.62 (2021 ed.); Stipulated Proposed Jury Instructions No. 21 (ECF No. 174 at 32) (adopted).

## PERJURY

Defendant Lori Milliron is charged in Counts 5 through 9 with a violation of 18 U.S.C. section 1623(a).

This law makes it a crime for anyone under oath to make a false material statement in a proceeding before a United States grand jury. To find Defendant Lori Milliron guilty of these crimes you must be convinced that the government has proved each of the following beyond a reasonable doubt with respect to each count:

*First*: Lori Milliron made the statement while under oath in a grand jury proceeding as charged;

*Second*: such statement was false in one or more of the respects charged;

*Third*: Lori Milliron knew such statement was false when she made it; and

*Fourth*: the false statement was material to the grand jury proceeding.

As I instructed you with regard to mail fraud, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision required to be made. The statement need not actually have influenced the decision so long as it had the potential or capability of doing so.

In reviewing the statement alleged to be false, you should consider such statement in the context of the sequence of questions asked and answers given. You should give the words used their common and ordinary meaning unless the context clearly shows that a different meaning was mutually understood by the questioner and Lori Milliron.

If you find a particular question was ambiguous and Lori Milliron truthfully answered one reasonable interpretation of the question under the circumstances

presented, then such answer would not be false. Similarly, if you find the question was clear but the answer was ambiguous, and one reasonable interpretation of such answer would be truthful, then such answer would not be false.[26]

---

[26] Pattern Crim. Jury Instr. 10th Cir. 2.66 (2021 ed.); Stipulated Proposed Jury Instructions No. 22 (ECF No. 174 at 33–34) (adopted).

## UNANIMITY OF THEORY

Count Seven charges Defendant Lori Milliron with making one false statement. But Counts Five, Six, Eight, and Nine of the Superseding Indictment each charge Defendant Lori Milliron with making more than one false statement.

Specifically, Count Five of the Superseding Indictment alleges that she made false statements when she testified:

(1) that she did not recall having any other substantial source of cash income while working at Three Rivers,

(2) that she did not recall depositing approximately $20,000 in cash into her PNC bank account in 2014, and

(3) that she did not recall depositing $60,000 in cash into her PNC bank account in 2015.

Count Six alleges that she made false statements when she testified:

(1) that she did not know why Lawrence Rudolph was so generous in giving cash to her in 2015 and 2016, and

(2) that she does not know exactly why he gave her $60,000 in 2015.

Count Eight alleges that she made false statements when she testified:

(1) that she never gave him an ultimatum that he needed to leave his wife,

(2) that she doesn't remember ever threatening to break off her affair with Lawrence Rudolph,

(3) that she never told anyone at the office that she was thinking of leaving

Lawrence Rudolph, and

(4) that she had never told anyone at the office that she had given Lawrence
Rudolph at ultimatum that he needed to leave his wife.

Count Nine alleges that she made false statements when she testified:

(1) that Lawrence Rudolph probably proclaimed his innocence to her, but she
does not recall, and

(2) that Lawrence Rudolph generally told her that he was irritated with the FBI
investigation of his wife's death because he felt he was innocent.

The government does not have to prove all of the false statements within those
perjury counts for you to return a guilty verdict on those counts. If you reach a
unanimous finding that the government proved even one of the particular instances of
false testimony charged in Counts Five, Six, Eight and Nine, then you should convict
Lori Milliron on that particular count. But to return a guilty verdict on any perjury count,
all of you must agree on at least one specific statement in that count that has been
proved false.[27]

---

[27] Pattern Crim. Jury Instr. 10th Cir. 1.24 (2021 ed.) (modified by the parties for
specificity to perjury); *United States v. Sarihifard,* 155 F.3d 301, 309-310 (4th Cir. 1998);
Stipulated Proposed Jury Instructions No. 23 (ECF No. 174 at 35–36) (adopted).

## PART III: DELIBERATION AND VERDICT FORM

That concludes the part of my instructions explaining the law that applies in this case.  Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

## MULTIPLE DEFENDANTS—MULTIPLE COUNTS

If you conclude that Defendant Lawrence Rudolph is not guilty of Count One charging Foreign Murder then you should also conclude that Defendant Lori Milliron is not guilty of Count 3 for being an accessory-after-the-fact to foreign murder because one cannot be an accessory to a crime that did not occur.

However, if you conclude that Defendant Lawrence Rudolph is guilty of Count 1 charging Foreign Murder then you can also conclude that the first element of the crime of being an accessory-after-the-fact charged in Count 3 has been met because you will have concluded that someone else committed a crime.

The defendants in this case are charged with separate crimes in each count of the Superseding Indictment. Except for Count 3 charging Defendant Lori Milliron with accessory-after-the-fact, you must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant. Except as I instructed you earlier regarding the relationship between Counts 1 and Count 3, your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendant or counts.[28]

---

[28] Tenth Circuit Criminal Pattern Jury Instructions § 1.22 (2021) (modified by the parties); Stipulated Proposed Jury Instructions No. 24 (ECF No. 174 at 38) (adopted).

## DUTY TO DELIBERATE—VERDICT FORM

*Tomorrow morning WJM*

~~In a moment the~~ bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous on each count of the Superseding Indictment. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. You must decide whether the government has proved Defendant Lawrence Rudolph or Defendant Lori Milliron, or both, guilty beyond a reasonable doubt.

The Court has prepared a Verdict Form for your convenience.

**[Explain the Verdict Form]**

The foreperson will write the unanimous answer of the jury in the space provided

for each count of the Superseding Indictment, either guilty or not guilty.  At the

conclusion of your deliberations, the foreperson should date and sign the verdict.[29]

---

[29] Tenth Circuit Criminal Pattern Jury Instructions § 1.23 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 25 (ECF No. 174 at 39–40) (modified).

## COMMUNICATION WITH THE COURT

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to the bailiff, who will bring it to my attention. I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally. I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.[30]

---

[30] Tenth Circuit Criminal Pattern Jury Instructions § 1.44 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 26 (ECF No. 174 at 41) (adopted).

## PART IV: THE SUPERSEDING INDICTMENT

The Superseding Indictment is reproduced below for your convenience.

You will note that the Superseding Indictment charges that crimes were committed on or about specified dates.  The Government must prove beyond a reasonable doubt that the defendants committed the crimes reasonably near those dates.[31]

Some counts of the Superseding Indictment may accuse the defendants of violating the same statute in more than one way.  In other words, the Superseding Indictment may allege that the statute in question was violated by various acts which are in the Superseding Indictment joined by the conjunctive "and," while the statute and the elements of the offense are stated in the disjunctive, using the word "or."  In these instances, it is sufficient for a finding of guilt if the evidence establishes beyond a reasonable doubt the violation of the statute by any one of the acts charged.  In other words, you should apply the language of the elements of the offense, which uses "or."  In order for you to return a guilty verdict, however, all twelve of you must agree that the same act has been proven.[32]

Remember, the Superseding Indictment is not evidence.  You may not rely on anything said in the Superseding Indictment to find the defendants guilty on any charge,

---

[31] Tenth Circuit Criminal Pattern Jury Instructions § 1.18 (2021); Charge of the Honorable William J. Martinez, *United States v. Yurek*, 15-cr-00394-WJM, ECF No. 257 (July 27, 2017); Stipulated Proposed Jury Instructions No. 12 (ECF No. 174 at 19) (adopted).

[32] Fed. R. Crim. P. 7(c), advisory committee notes, n.2 (1944).  *United States v. Iverson*, 818 F.3d 1015, 1026 (10th Cir.), *cert. denied*, 137 S.Ct. 217 (2016).  *See also United States v. Gunther*, 546 F.2d 861, 868-69 (10th Cir. 1976) ("It is hornbook law that crime denounced in a statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive.") (internal citations omitted); Government's Proposed Jury Instruction No. 3 (ECF No. 175 at 9) (modified).

and you must not let the Superseding Indictment influence your weighing of the evidence. You are receiving the Superseding Indictment simply to help you understand what you are deliberating about when you consider each count.

Because the Superseding Indictment is lengthy, I will not read it now, but like I said, it will be included in your set of jury instructions.

## SUPERSEDING INDICTMENT

### COUNT 1

1. On or about October 11, 2016, the defendant LAWRENCE RUDOLPH, being a national of the United States as defined by the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(22), willfully, deliberatively, maliciously, and with premeditation and malice aforethought, unlawfully killed Bianca Rudolph, a national of the United States as likewise defined by the Immigration and Nationality Act, while she was outside the United States but within the jurisdiction of another country.

All in violation of Title 18, United States Code, Sections 1119 and 1111.

### COUNT 2

2. Beginning no later than October 11, 2016, and continuing until on or about March 16, 2017, within the state and district of Colorado and elsewhere, the defendant LAWRENCE RUDOLPH, devised and intended to devise a scheme and artifice to defraud and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property, to wit a total of approximately $4,877,744.93 in U.S. currency, from LIFE INSURANCE COMPANIES 1-7, the identities of which are known to the Grand Jury.

3. LAWRENCE RUDOLPH defrauded LIFE INSURANCE COMPANIES 1-7 by

means, of among others, the false and fraudulent pretense, representation and promise that Bianca Rudolph had died as the result of the accidental discharge of a firearm when, in fact, she had been murdered as alleged in COUNT 1.

4. On or about the dates listed below, in the State and District of Colorado and elsewhere, for the purpose of executing the scheme, defendant LAWRENCE RUDOLPH knowingly caused and aided and abetted others who knowingly caused to be delivered by the interstate commercial carrier identified below addressed to the address listed below, according to the direction thereon, an envelope containing documents related to the life insurance policy identified below:

| Date | Company | Policy/Certificate Number | Address Where Sent | Carrier |
|------|---------|---------------------------|--------------------|---------|
| 1/18/17 | LIFE INSURANCE COMPANY 1 | 104TLP 105665 | 116 Inverness Drive East Englewood, CO 80112 | Federal Express |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 3

5. On or about January 5, 2022, in the State and District of Colorado, the defendant LORI MILLIRON, knowing that an offense against the United States had been committed, that is the foreign murder described in Count 1, did comfort and assist the offender, LAWRENCE RUDOLPH, in order to hinder his trial and punishment.

All in violation of 18 United States Code, Section 3.

## COUNT 4

6. On or about January 5, 2022, in the State and District of Colorado, the defendant LORI MILLIRON corruptly influenced, obstructed and impeded and endeavored to influence, obstruct and impede the due administration of justice, to wit,

MILLIRON provided false and misleading testimony to a grand jury sitting in the District of Colorado regarding (i) the circumstances of cash payments made to her by LAWRENCE RUDOLPH in 2015, 2016 and 2017, (ii) the nature, scope, and circumstances of her relationship with LAWRENCE RUDOLPH, (iii) the nature and circumstances of LAWRENCE RUDOLPH's relationship with Bianca Rudolph, (iv) whether she gave LAWRENCE RUDOLPH an ultimatum to leave his wife, (v) what LAWRENCE RUDOLPH told her about the circumstances of the death of Bianca Rudolph, (vi) her discussion with LAWRENCE RUDOLPH about a pending investigation by the Federal Bureau of Investigation; and (vi) the circumstances of the accident that caused LAWRENCE RUDOLPH to lose part of his thumb.

All in violation of Title 18 United States Code § 1503(a)

## COUNT 5

7. On or about January 5, 2022, in the State and District of Colorado, the defendant LORI MILLIRON, having taken an oath to testify truthfully in a proceeding before a grand jury of the United States sitting in the District of Colorado, knowingly made false material declarations, that is, MILLIRON gave the following underlined false testimony:

Q:    At the time you were working at Three Rivers, did you have any other substantial source of cash income?

A:    I don't recall

Q:    Do you recall making – well, how frequently do you think you deposited cash into your personal account?

A:    I don't know. I couldn't say

. . . .

Q:   Take a look at Exhibit 2. This is an analysis of cash deposits into your

PNC Bank account. Do you recall depositing approximately $20,000 in

cash into that account in 2014?

A:   <u>No, I don't.</u>

Q:   $60,000 in 2015?

A:   <u>No, I don't.</u>

All in violation of Title 18, United States Code, Section 1623(a).

## COUNT 6

8. On or about January 5, 2022, in the State and District of Colorado, the

defendant LORI MILLIRON, having taken an oath to testify truthfully in a proceeding

before a grand jury of the United States sitting in the District of Colorado, knowingly

made false material declarations, that is, MILLIRON gave the following underlined false

testimony:

Q:   Why was Larry paying you this additional money if you already had a

salary for those things?

A:   Because he wanted to help me.

Q:   Did he explain why?

A:   He was very generous.

. . . .

Q:   So in 2015 you received approximately double your salary — or your

salary again but all in cash?

A:   Yes

Q:    And in 2016 you received a little bit more than your salary in cash?

A:    Yes.

Q:    Why was Larry so generous to you?

A:    I don't know why. But like I said, he would give other --- staff members, he

      would buy them washers and dryers. He would give them cash if they

      needed it, a whole variety of things.

Q:    So your testimony before the members of the Grand Jury today is that you

      don't know exactly why he gave you $60,000 in 2015?

A:    I don't know exactly why.

All in violation of Title 18, United States Code, Section 1623(a).

<u>COUNT 7</u>

9. On or about January 5, 2022, in the State and District of Colorado, the

defendant LORI MILLIRON, having taken an oath to testify truthfully in a proceeding

before a grand jury of the United States sitting in the District of Colorado, knowingly

made false material declarations, that is, MILLIRON gave the following underlined false

testimony:

Q:    Ms. Milliron, if you'll notice there was $75,000 in 2016 with $33,500 in

      2017. Do you see that?

A:    Yes.

Q:    Why would he give you less in 2017?

A:    I don't know why.

      . . . .

Q:    He gave you approximately $75,450 in 2016 and in 2017 he gave you

> $33,350. I believe your testimony earliest was that you weren't sure why
> he gave you less in 2017. Do you now remember why he might have
> given you less in 2017?

A:     No. I don't know why.

Q:     Was it because at that point you were on his American Express card?

A:     No. The card was basically part of my --- it's a Three Rivers Dental card. It
       was part of my perks, I guess.

All in violation of Title 18, United States Code, Section 1623(a).

<u>COUNT 8</u>

10. On or about January 5, 2022, in the State and District of Colorado, the
defendant LORI MILLIRON, having taken an oath to testify truthfully in a proceeding
before a grand jury of the United States sitting in the District of Colorado, knowingly
made false material declarations, that is, MILLIRON gave the following underlined false
testimony:

Q:     Before that hunt had you ever given him an ultimatum that he needed to
       leave his wife?

A:     I don't believe so.

Q:     You don't believe so or you did not?

A:     I don't think I did.

Q:     Could he have --- well, did you ever threaten to break off the affair?

A:     I don't remember.

       . . . .

Q:     So you said you don't think you could have given an ultimatum. Ms.

Milliron, yes or no, did you ever give him an ultimatum?

A:   <u>No.</u>

.  .  .  .

Q:   Did you ever tell anyone at the office you were thinking about leaving Mr.

Rudolph?

A:   <u>No.</u>

Q:   Did you ever tell anyone at the office that you had given Mr. Rudolph an

ultimatum that he needed to leave his wife?

A:   <u>No, I did not.</u>

All in violation of Title 18, United States Code, Section 1623(a).

<u>COUNT 9</u>

11. On or about January 5, 2022, in the State and District of Colorado, the

defendant LORI MILLIRON, having taken an oath to testify truthfully in a proceeding

before a grand jury of the United States sitting in the District of Colorado, knowingly

made false material declarations, that is, MILLIRON gave the following underlined false

testimony:

Q:   Did he say anything about the merits of an investigation?

A:   I don't recall.

Q:   Did he say anything about whether it was an accident?

A:   No. He had told me previously it was an accident.

.  .  .  .

Q:   Did he proclaim his innocence?

A:   <u>He probably did. I don't really recall that.</u>

Q:      What do you recall?

A:      I really don't recall.

Q:      As you sit here today with the members of the Grand Jury, you don't recall

a conversation with Mr. Rudolph about an FBI investigation?

A:      There has been a conversation about that, but I think he was aggravated. I

can't give you specifics.

Q:      Can you give me generalities?

A:      <u>Irritated that there was an FBI investigation because he felt he was</u>

<u>innocent.</u>

All in violation of Title 18, United States Code, Section 1623(a).