IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    LAWRENCE RUDOLPH, and
2.    LORI MILLIRON,

      Defendants.

_____

## UNITED STATES' MOTION FOR MANDATORY RESTITUTION AND FORFEITURE

_____

COMES NOW the United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorney Kurt J. Bohn, and hereby submits this Motion for Mandatory Restitution and Forfeiture in this matter.

## **INTRODUCTION**

Upon the jurors' conviction of Defendant Rudolph for the murder of Bianca Rudolph and mail fraud to obtain insurance proceeds, restitution to the victims and forfeiture of his ill-gotten gain became mandatory.  The Defendant received $4,877,744.93 in insurance proceeds which must be paid back to the victims as restitution.  Further, the Defendant must forfeit the proceeds resulting from his

1

criminal activity.  The United States is seeking forfeiture of the following assets traceable to the proceeds of his criminal offense to satisfy the forfeiture obligation:

a)      Real Property located at 7000 N. 39th Place, Paradise Valley, Arizona;

b)      Real Property located at 103 Morningside Drive, Cranberry Township, Pennsylvania;

c)      All funds seized from Bank of New York Mellon account #10532701000, in the name of Lawrence P. Rudolph Trust;

d)      All funds seized from Vanguard account #0540-88150069515, in the name of Lawrence P. Rudolph and Bianca T. Rudolph TR- Rudolph Trust;

e)      All funds seized from Vanguard account #0585-88150069515, in the name of Lawrence P. Rudolph and Bianca T. Rudolph TR- Rudolph Trust;

f)      2018 Aston Martin DB-11, VIN SCFRMFAV5JGL03309; and

g)      2017 Bentley Bentayga, VIN SJAAC2ZV2HC014709.

As set forth below, both restitution and forfeiture are mandatory.

## LEGAL REQUIREMENT FOR RESTITUTION AND FORFEITURE

## A.      RESTITUTION

Restitution is a court-ordered payment made by the perpetrator of a crime to the victims of that crime. The purpose of restitution "is not to punish

defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) (*citing United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir.1993)).  Restitution is not an inherent power of the courts, as it may only be imposed as authorized by statute.  *United States v. Serawop*, 505 F.3d 1112, 1117 (10th Cir. 2007).

    1.    Restitution is Mandatory to the Counts of Conviction

In 18 U.S.C. § 3663A, the Mandatory Victims Restitution Act ("MVRA"), Congress enacted a statute making restitution to victims of certain federal crimes mandatory.  The statutory language makes this clear, "[n]otwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court **shall** order, . . .  that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate."  18 U.S.C. § 3663A(a)(1)(emphasis added).  As discussed below, there are different victims for the crimes of conviction in this matter and different restitution available to them.

The MVRA applies in this matter because the counts of conviction are specifically provided for in § 3663A(c)(1).  That section states that the MVRA applies to all sentencing proceedings if the offense of conviction relates to offenses identified in § 3663A(c)(1), which states as relevant here:

"for, any offense –

    (A) that is –

        (i)  a crime of violence, as defined by section 16;

        (ii)  an offense against property under this title, . . ., including

        any offense committed by fraud or deceit; . . ."

18 U.S.C. § 3663A(c)(1)(A).

Both counts of conviction in this matter require the imposition of mandatory restitution under the MVRA.  Mr. Rudolph was convicted in Count 1 of murder, in violation of 18 U.S.C. §§ 1119 and 1111.  It is well settled law that first degree murder is a crime of violence.  *United States v. Stubbs*, 2021 WL 5507221 *4 (E.D. Okla. Nov. 24, 2021) (citing others).  Therefore, § 3663A(c)(1)(A)(i) would impose the mandatory restitution provision of the MVRA and require restitution to the victim or victims of the murder offense.

Likewise, in Count 2, Mr. Rudolph was convicted of mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  Mail fraud involves a scheme to "defraud or obtain property."  *United States v. Schuler*, 458 F.3d 1148, 1152 (10th Cir. 2006); *see also, United States v. Camick*, 796 F.3d 1206, (10th Cir. 2015) (affirming restitution ordered under the MVRA for convictions of mail fraud as it is an offense against property rights).  The conviction of the mail fraud count, an offense against property under § 3663A(c)(1)(A)(ii), would impose the mandatory

restitution provision of the MVRA and require restitution to the victims of the mail fraud offense.

    2.    <u>There are Different Victims for Each Count</u>

In determining who is a victim for restitution purposes, § 3663A(a)(2) states that "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." To be a victim under the MVRA, the defendant's conduct must be the "but-for" cause of the individual's harm and it must be the defendant who "proximately" caused that harm. *United States v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010). Here, by statute and case law, the victim of Count 1, murder, is not the same victim of Count 2, mail fraud, and vice versa.

As to Count 1, there is no disputing that Bianca Rudolph was directly harmed as a result of the commission of that offense. The statute, § 3663A(a)(2), provides that when the victim of the offense is deceased, then the "representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights under this section. . ." *Id*. However, "in no event shall the defendant be named as such a representative or guardian." *Id*. Restitution to the estate of Bianca Rudolph or a suitable person, assuming her rights as a victim, is mandatory in this matter. Two questions would remain for the Court on this issue: 1) who will the Court

appoint to be the representative now that the Defendant can no longer serve in that capacity[1]; and 2) what, if any, restitution is appropriate for the victim of murder in this case?

As for Count 2, the statute also specifically includes victims of offenses that involve the element of "scheme" in the criminal activity.  *Id*.  Mail fraud is such an offense.  *Schuler*, 458 F.3d at 1152 (10th Cir. 2006).  The victims of the Defendant in Count 2, the offense of mail fraud, include "any person directly harmed by the defendant's criminal conduct in the course of the scheme, . . ." § 3663A(a)(2).  Here the mail fraud scheme consisted of the Defendant receiving property he was not entitled to from the various insurance companies, as such, restitution to the insurance companies who were directly and proximately harmed is mandatory.  *United States v. Chin*, 965 F.3d 41, 59 (1st Cir. 2020).

### 3.    The Scope of Restitution for Each Count

As there are two separate counts of conviction, the Court must look to the differing nature of the offenses and the separate victims of each count in determining the appropriate amount of restitution.  The statute specifies what is compensatory restitution in both offenses involving bodily injury or death and property offenses.  § 3663A(b).

---

[1] The United States takes no position on who that person/representative should be at this time.

i.  Count 1 – Murder Victim

The victim of Count 1 – would be Bianca Rudolph – or now the suitable person appointed by the Court.  The appointed person "may assume the victim's rights."  § 3663A(a)(2).  Once that person assumes the victim's rights, they can submit a victim's statement expressing the restitution they believe they are entitled to, and which is controlled by statute.

Section 3663A(b)(2)(C) provides for restitution when the offense results in bodily injury to the victim, including income lost as a result of the offense.[2]  The Tenth Circuit addressed whether future lost income to the victim of a crime of violence was appropriate and found it was.  In *Serawop*, the Court rejected the defendant's position that § 3663A did not allow for an order of restitution awarding lost and future income for the victim of voluntary manslaughter. *Serawop*, 505 F.3d at 1119 - 1120.  (The court held that to hold otherwise would result in a deceased victim receiving less restitution than a victim of bodily injury.)

Section 3663A(b)(3) specifically addresses restitution for offenses that result in death.  The statute provides that restitution in matters of death shall be equal to an amount of the cost of a funeral and related services.  *Id*. at 1119.[3]

---

[2]  Section 3663A(b)(2) also provides for necessary and related medical expenses (§ 3663A(b)(2)(A)) and necessary physical and occupational therapy and rehabilitation (§ 3663A(b)(2)(B)).

[3]  From information known to the United States at this time, Defendant Rudolph paid the funeral and related expenses.

Therefore, the Court is required to order restitution to the victim, or appointed representative, for lost or future income and any funeral related expenses if appropriate.[4]

      ii.  Count 2 – Mail Fraud

Section 3663A(b)(1) provides for restitution when the offense results in the loss of property - Count 2 is an offense against property.  The victims in Count 2 would be those directly and proximately harmed by the commission of the offense of mail fraud.

Here, there were nine insurance policies that paid claims out as a result of the mail fraud committed by Defendant Rudolph.  The restitution analysis focuses on the causal relationship of the criminal activity – the mail fraud - and loss suffered as a result of it – the paying out of property.  *Chin*, 965 F.3d at 59 (1st Cir. 2020) (mail fraud scheme directly harmed the insurance companies when they made payments as a result of the criminal conduct.)  Therefore, the Court is required to order restitution to the victims of Count 2 in the amount of the loss of property sustained by each victim.

---

[4]  The information known to the United States at this time indicate that Bianca Rudolph was not working at the time of her murder and did not have plans to return to the work force, and the funeral and related expenses were paid by Defendant Rudolph.  Therefore, there would be no restitution for lost or future income, or funeral and related expenses.

**B.     FORFEITURE[5]**

"Criminal forfeiture is an *in personam* action in which the forfeiture of and the vesting of title in the United States in the defendant's tainted property is imposed as a punishment against the defendant."  *United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010).  In this case, the property sought to be forfeited to the United States is forfeitable under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

The purpose of forfeiture statutes is to take away gains made by a defendant that were obtained by the unlawful activity.  *McGinty*, 610 F.3d at 1246.  (citing *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006)).  "Thus, with respect to forfeiture of fraud proceeds under § 981(a)(1), a defendant may be ordered to forfeit all monies received as a result of the fraud, regardless of his net profits from the scheme.  In other words, "[p]roceeds are property that a person would not have but for the criminal offense...."  *Yass*, 636 F.Supp.2d at 1184.

The statute provides that property subject to forfeiture includes the appreciation of the property, "and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."  § 981(a)(2)(A).  *United*

---

[5]  The determination of forfeiture can be made either by a jury upon the return of a verdict of guilty, or by the court, upon a request by either party.  Rule 32.2(b)(5)(A).  The parties in this case provided their Notice of Forfeiture Hearing on July 20, 2022, informing the Court that they would submit the forfeiture issue for the Court's resolution.  (Docket # 228).

*States v. Afriyie*, 929 F.3d 63, 73 (2d Cir. 2019). (Traceable property includes the appreciated value of the initial proceeds, including interest, dividends, or other earnings.); *see generally United States v. Betancourt*, 422 F.3d 240, 250–51 (5th Cir. 2005) (holding that the entire amount of Texas lottery winnings were subject to criminal forfeiture where the winning lottery ticket was purchased with drug proceeds); *United States v. Real Property Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 59–60 (D.D.C. 2003) (real property purchased with proceeds derived from mail fraud and wire fraud, and the property's appreciated value, are subject to forfeiture; to hold otherwise would reward the wrongdoer for his illegal activities). In this case, the interest and dividends earned on the tainted funds would also be forfeited, as well as any appreciation of the real property.

    1.    <u>Forfeiture is Mandatory</u>

Forfeiture is also mandatory in this case, and the analysis of the mandatory forfeiture begins at 18 U.S.C. § 981(a)(1) which states that the following property is subject to forfeiture to the United States:

(C) Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . or any offense constituting "**specified unlawful activity**" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense. (emphasis added).

The term "specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) which includes "any act or activity constituting an offense listed in section 1961(1) of this title."  And § 1961(1) defines "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud) . . ."

Although 18 U.S.C. § 981(a)(1) is titled Civil Forfeiture, it is incorporated into criminal proceedings by 28 U.S.C. § 2461(c).  Section 2461(c) provides:

> If a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure.  If the defendant is convicted of the offense giving rise to the forfeiture, the court **shall** order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of title 18, United States Code.

(emphasis added.)  *United States v. Channon*, 973 F.3d 1105, 1113 (10th Cir. 2020).

The United States provided Defendant Rudolph notice of forfeiture in this matter.  The United States provided notice of its intent to seek forfeiture for a violation of Title 18, United States Code, Sections 1341 and 2, in the Indictment filed on January 5, 2022.  (Docket # 26, pp. 2 -3).  In the Superceding Indictment the United States gave notice of its intent to seek forfeiture upon a conviction of Count 2 "pursuant to the provisions of Title 18, United States Code, Section

981(a)(1)(C), and Title 28, United States Code, Section 2461(c)."  (Docket 53, p.

8).  The United States again gave specific notice in the United States' First Bill of

Particulars for Forfeiture of Property of its intent to seek forfeiture of the

Defendant's interest in the identified property therein or to seek a money

judgment in the amount of the proceeds the Defendant obtained as a result of the

scheme alleged in Count 2.  (Docket # 108).

    2.    <u>Forfeiture Applies to the Conviction in Count 2 – Mail Fraud</u>

Mail fraud is a specified unlawful activity and the proceeds from a violation

of that statute are subject to forfeiture.  *United States v. Yass*, 636 F. Supp. 2d

1177, 1184 (D. Kan. 2009) ("The forfeiture in this case is predicated upon

convictions of the "specified unlawful activity" of mail fraud, 18 U.S.C. § 1341.

The Court finds that the mail fraud and conspiracy to commit mail fraud crimes

are "unlawful activities," as defined by 18 U.S.C. §§ 1956(c)(7), 1961(1).").

The property became forfeitable to the United States upon the Defendant's

commission of the mail fraud.  Section 981(f) provides that, "All right, title, and

interest in property described in subsection (a) of this section shall vest in the

United States upon commission of the act giving rise to forfeiture under this

section."  The "relation back" doctrine means that not only could no one else

acquire a legally cognizable interest in the property after the commission of the

crime, the property vested in the United States at that time.  *United States v.*

*Real Property Located at 19 Crane Park, Hattiesburg, Lamar County, Mississippi, et al.*, 2022 WL 2898914 * 2 (S.D. Miss. E. Div. July 21, 2022).  Accordingly, any interest, dividends, or appreciation that occurred after the act that gave rise to the conviction would flow to the United States.

Therefore, upon the Defendant's conviction of Count 2 – mail fraud – forfeiture of the subject property, including all appreciation, growth, and other gains from the date the crimes were committed became mandatory.

3.      What Property is Forfeitable

The subject properties identified in the United States' First Bill of Particulars for Forfeiture of Property (Docket # 108) are subject to forfeiture as they are proceeds traceable to the count of conviction.  "Proceeds" are defined by statute as, "…property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."  18 U.S.C. § 981(a)(2)(A).

The question involving forfeiture in this matter, after the Defendant has been convicted of mail fraud, isn't if the United States is entitled to forfeiture, as those proceeds were involved in the offense, it is what assets are subject to forfeiture as property traceable to proceeds.  *United States v. Voigt*, 89 F.3d 1050, 1084-1085 (3d Cir. 1996).  Proceeds received directly from the illegal mail

fraud, i.e., the insurance proceeds, that are directly traced to an account are forfeitable property as there is a direct nexus between the offense and the property. *Id*. at 1087.

The property subject to forfeiture includes "[a]ny property, real, or personal, which constitutes or is derived from proceeds traceable to [the] violation." 18 U.S.C. § 981(a)(1)(C). *Channon*, 973 F.3d at 1109 (10th Cir. 2020). Therefore, the insurance proceeds that Mr. Rudolph received as a result of his conviction for mail fraud, property procured with them, and any appreciation in value are forfeitable to the United States.

## C. BOTH RESTITUTION AND FORFEITURE ARE APPROPRIATE AND MANDATORY

Restitution and forfeiture are mandatory in this case for the reasons set forth above. The statutory language used both in the MVRA and the forfeiture statutes, that a court "shall" order restitution and forfeiture indicates Congress' strong intent to impose a mandatory duty upon the court. *United States v. Arnold*, 878 F.3d 940, 945 (10th Cir. 2017).

Not only are they mandatory, but they are appropriate as they serve two distinctly different purposes. "Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive, it seeks to disgorge any profits that the offender realized from his illegal activity." *McGinty*, 610 F.3d at 1247. Forfeiture vests title in the United States in a defendant's tainted

14

property, focusing on not with how much an individual has but how much he received in connection with the commission of the crime.   *Channon*, 973 F.3d at 1112.  Because restitution (calculated based on the victim's loss) and forfeiture (calculated based on the offender's gain) are distinct remedies, "ordering both in the same or similar amounts does not generally amount to a double recovery." *McGinty*, 610 F.3d at 1247.

As separate orders of restitution and forfeiture are mandatory, there is no ability for the Court to reduce or offset them against the other.  *Channon*, 973 F.3d at 1113.  Here, Defendant Rudolph is liable to the estate of Bianca Rudolph and to the insurance companies for restitution; and he must forfeit all of his ill-gotten gains to the United States.  The combination of both these orders is not disproportionate to the nature of Defendant Rudolph's criminal offense. *Channon*, 973 F.3d at 1112 - 1113.

**D.   PROCEDURE TO DETERMINE RESTITUTION AND FORFEITURE**

### 1.   Restitution

The procedure to determine restitution is set forth at § 3664.  The process begins with the Court ordering the probation officer to prepare a report addressing restitution.  The report needs to address the loss of each victim and the economic circumstance of the defendant.  § 3664(a).  To the extent there is a dispute as to the amount or type of restitution, it shall be resolved by the Court.

§ 3664(e).  The burden of establishing any amount of loss sustained by a victim rests upon the United States to prove by a preponderance of the evidence.  *Id*. *United States v. James*, 564 F.3d 1237, 1248 (10th Cir. 2009).  When imposing restitution, "the court shall order restitution to each victim in the full amount of each victims' losses" and does not look to the economic circumstances of the Defendant.  § 3664(f)(1)(A). *United States v. Ferdman*, 779 F.3d 1129, 1132 (10th Cir. 2015).

### 2.      Forfeiture

"Criminal forfeiture is governed by Federal Rule of Criminal Procedure 32.2, which sets forth four requirements before a final order of forfeiture can be entered."  *United States v. Executive Recycling, Inc.*, 953 F.Supp.2d 1138, 1156-1157 (D. Colo. 2013).  Only the first two requirements are relevant at this time.

The first step requires the United States to provide notice to the Defendant that it will seek forfeiture of property as part of the sentence.  Rule 32.2(a).  As stated above, the United States provided notice of its intent to seek forfeiture on three specific occasions – Indictment, Superceding Indictment, and United States' First Bill of Particulars for Forfeiture of Property.  The Defendant has been on notice since the inception of this matter that the United States intended to seek forfeiture.

The second step is the entry of a preliminary order of forfeiture.  Rule 32.2(b).  When entering that order, the Court must determine the following:

a.      what property is subject to forfeiture under the applicable statutes; and

b.      has the United States established a requisite nexus between the specific property and the offense,

Rule 32.2(b)(1)(A).

If the Defendant requests a hearing regarding forfeiture, the Court must conduct it, but there is no requirement that the Court conduct the hearing prior to the entry of a preliminary order.  *Executive Recycling, Inc.*, 953 F.Supp.2d at 1157.  In making its determination, the Court can consider the evidence already in the record and any other relevant and reliable evidence or information submitted to it.  Rule 32.2(b)(1)(B).  Because forfeiture is part of the criminal sentencing procedure, hearsay is admissible.  *United States v. Evanson*, 2008 WL 3107332 * 2, (D. Utah August 4, 2008).  The burden of proof is on the United States to establish by a preponderance of the evidence that the property is subject to forfeiture.  18 U.S.C. § 983(c)(1).  *Executive Recycling, Inc.*, 953 F.Supp.2d at 1158.

Here, the United States has provided notice of its intent to seek forfeiture and, though not required, indicated which specific property is subject to forfeiture.

17

So, the next step is to determine if the United States has established a nexus between the property and the offense.

"In general, proceeds are property a defendant would not have obtained or retained **but for** the commission of the criminal offense." *Evanson*, 2008 WL 3107332, \*3 (D. Utah Aug. 4, 2008) (emphasis added).  Courts have applied the "but for" test and held that it applied not only to the original proceeds but the gains from them as well.  *United States v. Cekosky*, 171 F. App'x. 785, 787–88 (11th Cir. 2006) (Holding that interest earned was "but for" the illegal proceeds because defendant would not have been able to open his bank account but for having committed an identity theft offense, the interest he earned on the deposits in that bank account represented the proceeds of the offense, even though the deposits themselves were made with legitimate funds);  *United States v. Gardenhire*, 2017 WL 6371362 (W.D. Pa. Dec. 13, 2017) (Holding that appreciation of property value was "but for" the illegal proceeds real property purchased and renovated with proceeds of illegal drug dealing is traceable to illegal drug proceeds and is subject to forfeiture, including the appreciation in value of the property after renovations were completed)**.**

The tracing of the proceeds below, establishes beyond a preponderance of the evidence, a nexus between the criminal activity of mail fraud and the property.

E.     **TRACING OF PROCEEDS**[6]

The Defendant received $4,877,744.93 from life insurance proceeds from nine different policies as a result of the mail fraud he committed after the murder of Bianca Rudolph.  Tracing these proceeds to the accounts they flowed through (facilitating accounts) to accounts that were seized (proceed accounts) and/or to the property procured (proceed property) with at least portions of these funds establishes the basis for an Order of both restitution and forfeiture.

The Defendant had the payout from the nine insurance policies deposited into two separate Vanguard Fund accounts:  0030-88150069515 (hereinafter "facilitating account **30-9515"**) and 0030-09875915266 (hereinafter "facilitating account 30-5266").  Both accounts were facilitating accounts, as the proceeds flowed through these accounts.  After the funds were received into facilitating account 30-5266 they were transferred to facilitating account **30-9515** and facilitating account 30-5266 was closed.  All nine of the policies identified were paid out as a result of the Defendant's submission of fraudulent claims which were the basis of his conviction for Count Two, mail fraud.

The tracing of the proceeds is addressed in Attachment A.

---

[6] All of the source documents used in the tracing of the funds and assets in this matter have been previously produced in discovery.

### F.    MANDATORY ORDERS

The statutes require that the Court shall order restitution and forfeiture. Therefore, the United States requests the Court enter the following orders:

1.    Restitution

a.    Count 1 - Murder

That, based on his conviction of murder in Count 1, Defendant Rudolph be liable to pay restitution to the estate of Bianca Rudolph, or the Court appointed suitable representatiave, for lost income.  As no claim for future lost income has been submitted by a victim, no restitution for lost future income would be appropriate.

That, based on his conviction of murder in Count 1, Defendant Rudolph be liable to pay restitution to the estate of Bianca Rudolph, or the Court appointed suitable representative, for funeral expenses.  As none have been submitted by a victim, no restitution for funeral expenses would be appropriate.

b.    Count 2 – Mail Fraud

That, based on his conviction of mail fraud in Count 2, Defendant Rudolph is Ordered to pay restitution to the following entities and in the following amounts:

| Insurance Company | Policy number | Amount |
|---|---|---|
| AAA Life Insurance Company | GT8107 Cert.4019648262 | 200,000.00 |
| Ameritas | U00013758A | 751,849.32 |

| | | |
|---|---|---|
| Ameritas | T00017578A | 1,003,049.90 |
| Fidelity Life Association | 0100382288 | 100,973.41 |
| Genworth Life and Annuity Insur. Co. | 1308458 | 844,533.88 |
| Great West Life Insurance Co | 104 TLP Cert. 105665 | 1,000,157.54 |
| Metlife Insurance Company | 215 150 755 UT | 772,901.17 |
| Transamerica Life Insurance Co. | 42728878 | 503,438.85 |
| Transamerica Life Insurance Co. | 42186233 | 500,840.86 |

A final amount of restitution owed cannot be determined at this time as all of the victims' statements and required proof have not been received.

2.    Forfeiture

That Defendant Rudolph forfeits the following property to the United States:

a)    Real Property located at 7000 N. 39th Place, Paradise Valley, Arizona;

Upon the Court's Order of forfeiture, the United States will sell the property, and after fees and expenses, will forfeit 58.74% of the proceeds. (See paragraphs B, C, K, and Exhibit 15).

b)      Real Property located at 103 Morningside Drive, Cranberry

Township, Pennsylvania;

Upon the Court's Order of forfeiture, the United States will sell the

property, and after fees and expenses, will forfeit 50.55% of the proceeds.  (See

paragraph L and Exhibit 16).

c)      All funds seized from Bank of New York Mellon account

#10532701000, in the name of Lawrence P. Rudolph Trust;

Upon the Court's Order of forfeiture, the United States will take full title and

ownership of all funds seized from Bank of New York Mellon account

#10532701000.  (See paragraph B and Exhibit 5).

d)      $751,776.28 in United States currency seized from Vanguard

account #0540-88150069515, in the name of Lawrence P. Rudolph and Bianca

T. Rudolph TR- Rudolph Trust;

Upon the Court's Order of forfeiture, the United States will take full title and

ownership of the $751,776.28 in United States currency seized from Vanguard

account #0540-88150069515.  (See paragraphs E, I, and Exhibit 13).

e)      All funds seized from held in Vanguard account #0585-

88150069515, in the name of Lawrence P. Rudolph and Bianca T. Rudolph TR-

Rudolph Trust;

Upon the Court's Order of forfeiture, the United States will take full title and ownership of all funds seized from Vanguard account #5085-88150069515.  (See paragraphs D, J, and Exhibit 14).

      f)     2018 Aston Martin DB-11, VIN SCFRMFAV5JGL03309;

Upon the Court's Order of forfeiture, the United States will sell the vehicle, and after fees and expenses, distribute the remaining proceeds based on the percentage of tainted funds used to purchase the vehicle to the United States and the percentage of untainted funds to the appropriate person/representative. (See paragraph F and Exhibit 10).

      g)     2017 Bentley Bentayga, VIN SJAAC2ZV2HC014709.

Upon the Court's Order of forfeiture, the United States will sell the vehicle, and after fees and expenses, distribute the remaining proceeds based on the percentage of tainted funds used to purchase the vehicle to the United States and the percentage of untainted funds to the appropriate person/representative. (See paragraph H and Exhibit 12).

DATED this 15th day of November, 2022.

Respectfully submitted,

COLE FINEGAN
United States Attorney


s/**Kurt J. Bohn**
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of November 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

s/*Kurt J. Bohn*
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov