# **ATTACHMENT A**

1. <u>Restitution From Mail Fraud Proceeds</u>

The initial deposits received from the insurance companies as a result of the mail fraud establish the amount of restitution owed. As of April 18, 2017, all the life insurance proceeds were deposited into facilitating account number **30-9515**. As described below, these funds were transferred to other accounts and/or used to obtain assets.

Genworth Life and Annuity Insurance Company paid out $44,533.88 from policy number 1308458 on January 31, 2017, to Defendant's Vanguard Fund facilitating account number **30-9515**. (Gov. Exhibits 300 and 309).

AAA Life Insurance Company paid out $200,000.00 from policy number GT8107 on March 22, 2017, to Defendant's Vanguard Fund facilitating account **30-9515**. (Gov. Exhibits 306 and 311).

Fidelity Life Insurance Association paid out $100,973.41 from policy number 0100382288 on March 22, 2017, to Defendant's Vanguard Fund facilitating account **30-9515**. (Gov. Exhibits 305 and 311).

Ameritas Life Insurance Corp. paid out $1,003,049.90 from policy number T00017578A on April 5, 2017, to Defendant's Vanguard Fund facilitating account **30-9515**. (Gov. Exhibits 307 and 312).

Ameritas Life Insurance Corp. paid out $751,849.32 from policy number U00013758A on April 5, 2017, to Defendant's Vanguard Fund facilitating account **30-9515**. (Gov. Exhibits 308 and 312).

Great West Life Annuity Insurance Company paid out $1,000,157.54 from policy number 0104 TLP on March 16, 2017, to Defendant's Vanguard Fund facilitating account 30-5266.  (Gov. Exhibits 304[1] and 310).

Metlife Insurance Company[2] paid out $772,901.17 from policy number 215150755 UT on March 16, 2017, to Defendant's Vanguard Fund facilitating account 30-5266. (Gov. Exhibits 301 and 310).

TransAmerica Life Insurance Company paid out $503,438.85 from policy number 42728878 on March 16, 2017, to Defendant's Vanguard Fund facilitating account 30-5266. (Gov. Exhibits 302 and 310).

TransAmerica Life Insurance Company paid out $500,840.86 from policy number 42186233 on March 16, 2017, to Defendant's Vanguard Fund facilitating account 30-5266. (Gov. Exhibits 303 and 310).

The total amount of proceeds Defendant Rudolph received as a result of his mail fraud was $4,877,744.93.  (Exhibits 1 and 2).   The above-described losses are the direct and proximate result of the Defendant's mail fraud. Accordingly, Defendant should be ordered to pay restitution to each victim listed

---

[1] Government Exhibit 304 is the copy of the check issued by Great-West Life & Annuity Insurance Company to The Rudolph Trust in the amount of $1,000,157.54.  It was produced in discovery and identified as Bates VANG_00000702.  It was referred to at trial but was not offered into evidence, for clarity of the record, it will be referred to in this Motion as Gov. Exhibit 304.
[2] The check is made out by Brighthouse Life Insurance Company.  Brighthouse was created by Metlife Insurance Company on March 6, 2017.

above in the full amount of each victims' loss, for a total Count 2 restitution amount of $4,877,744.93.[3]

### 2. Forfeiture From Mail Fraud Proceeds

The Defendant transferred the $4,877,749.93 proceeds obtained from the insurance companies to various bank accounts. He then used some of the proceeds to put towards the purchase of two properties – one in Arizona and one in Pennsylvania – and two vehicles – an Aston Martin and a Bentley Bentayga. The remaining funds had been deposited in/transferred to three different bank accounts at the time they were seized.

#### A. Balance in Facilitating Vanguard Account **30-9515** Upon Receipt of Insurance Proceeds.

Defendant Rudolph was the sole account holder of Vanguard facilitating account **30-9515**. Prior to the deposits of life insurance proceeds into facilitating account **30-9515**, the balance in the account was $413,035.35. This amount was the "untainted" balance in the account. The insurance proceeds are the "tainted" funds. While both types of funds were in this, and later other accounts, they accrued interests, dividends, and appreciation. The United States has apportioned the earned interests, dividends, and appreciation based on the percentage of untainted and tainted funds in the account.

---

[3] Victim impact statements are still pending at the time of the filing of this Motion. To the extent that any of the restitution should be paid to someone other than the life insurance companies, the United States will attempt to resolve the issue prior to sentencing and will notify the Court accordingly. The amount of restitution will not be affected by the designation of the payee.

The United States has used a "proceeds first" approach to trace the proceeds in this matter. The "proceeds first" approach means that criminal proceeds that are commingled with other funds in one account and then moved to another assumes that the criminal proceeds were the first ones transferred out of the account. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1158-1162 (2d Cir. 1986).

The United States used the "proceeds first approach in its tracing of the tainted funds with the following exceptions: 1) funds that passed through an account in short proximity from the time of deposit and the intent of the funds was clear that it was meant as a pass-through transaction;[4] 2) funds transferred to and from Camelback Consulting Marketing LLC's account, Wells Fargo account 5688139749 (hereinafter WF 9749) as that was primarily a business account; and 3) the portion of funds applied to the purchase of the 2017 Bentley Bentayga, as these funds exhausted the tainted funds and the Defendant closed facilitating account **30-9515** after this transfer.

From the time period of January 31, 2017, with the deposit of the insurance proceeds from Genworth Life, until the final insurance deposit from Great West Life on April 18, 2017, facilitating account **30-9515** had other

---

[4] There were two primary examples of this: funds acquired from the sale of the Miami, Florida residence that were passed through and applied to the construction of the Arizona residence, and $500,000.00 transferred into Bank of New York Mellon account 0005173568 from one of Defendant's Morgan Stanley accounts was wired out to Global Escrow Solutions LLC for the purchase of the condo in San Jose del Cabo, Mexico, in a short period of time

4

transactions in and out of the account that included income from the untainted funds of $126,653.99 and tainted funds of $1,426.50 (from interest); and withdrawals from untainted of $78,500.00[5] and from tainted of $37,668.92. That made the account balances after all the life insurance proceeds had been deposited on April 18, 2017, $5,305,961.24, of which $4,841,271.89 was tainted.

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $464,689.35 | $4,841,271.89 | $5,305,961.24 | (Exhibit 3). |

      B.  Proceeds Account Bank of New York Mellon 1000.

Facilitating account **30-9515** had various transactions in and out of it involving untainted and tainted funds. On June 13, 2017, the Defendant received a deposit of $297,562.98 from the sale of a property in Miami, Florida into facilitating account **30-9515**. On the same day, a transfer in the amount of $105,000.00 was paid out to VPR Builders, LLC towards the construction of the Arizona residence. These would be considered untainted funds, as it was considered a pass-through transaction, and the untainted balance in the account was then $634,332.95.

Up to August 9, 2017, facilitating account **30-9515** had additional withdrawals and deposits related to untainted funds. On August 8, 2017, Defendant Rudolph transferred $3,000,000.00 of tainted funds to an account at Bank of New York Mellon account 10532701000 (herein after "BNYM proceeds

---

[5] All of these funds were transferred to Camelback Consulting's Wells Fargo account 9749.

account 1000")[6], which posted the deposit on August 9, 2017.  Prior to that transfer, the balance in the account was zero.  These funds were used to secure a construction loan from Bank of New York Mellon for the Arizona property.  The balances in facilitating account **30**-9515 on that day were:

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $640, 458.01 | $1,857,283.48 | $2,497,741.50 | (Exhibit 4). |

Activity in BNYM proceeds account 1000 from August 9, 2017, until May 31, 2021, included the following transactions:

| | |
|---|---|
| Bank and advisory fees | $ 36,764.88 |
| Transfers to BNYM account 3568[7] | $150,000.00 |
| Mortgage payments[8] | $   9,656.36 |
| Payment on condo in Mexico[9] | $100,000.00 |
| Transfer to Wells Fargo account 2446[10] | $200,000.00 |
| Transfer to Morgan Stanley account 408-235[11] | $  51,000.00 |
| Total withdrawal from account | $547,421.24 |

BNYM proceeds account 1000 appreciated $1,229,537.38 from August 9, 2017, until May 31, 2021.  On December 21, 2021, the United States seized the

---

[6] Defendant Rudolph was the sole account holder of BNYM proceeds account 1000.
[7] These transfers occurred on two dates – April 24, 2019, for $70,000.00 and on January 21, 2020, for $80,000.00.  The funds were used to make mortgage payments towards the construction of 7000 N. 39th Place, Paradise Valley, Arizona.  As of May 3, 2021, $99,082.90 of the $150,000.00 had been applied as mortgage payments.
[8] Mortgage payment for 7000 N. 39th Place, Paradise Valley, Arizona.
[9] Payment for condo in San Jose del Cabo, Mexico.
[10] Funds applied to the purchase of 103 Morningside Drive, Cranberry Township, Pennsylvania.
[11] Funds applied to the construction of 7000 N. 39th Place, Paradise Valley, Arizona.

entirety of the account, which was entirely proceeds from the mail fraud, it had a balance of $3,496,092.04 of tainted funds. (Exhibit 5).

        C.     Proceeds Used For Construction of Proceeds Property Located at 7000 N. 39th Place, Paradise Valley, Arizona.

On August 30, 2017, the Defendant made a payment from facilitating account **30**-9515 of $1,154,739.79 to Fidelity National Title towards the construction of the Arizona property. There were $192,562.98 in untainted funds remaining from the sale of the Miami residence that were applied to the payment, and the rest consisted of $962,176.41 in tainted funds. After some other withdrawals, the balances in facilitating account **30-9515**[12] on August 30, 2017, were:

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $437,895.03 | $895,107.14 | $1,333,002.17 | (Exhibit 6). |

        D.     Defendant Transfers Funds From Vanguard Facilitating Account **30-9515** To Six Different Vanguard Accounts.

From August 30, 2017, to February 2, 2018, there were several transactions involving facilitating account **30-9515**, of significance were: a January 2, 2018, payment of a credit card bill of $15,000.00 – using the "proceeds first" approach this amount was applied to tainted funds; on February 1, 2018, the Defendant transferred $500,000.00 into facilitating account **30-9515** from WF 9749, which was associated with the Defendant's business, Camelback

---

[12] Interest and dividend payments into the account were attributed based on the percentage of untainted and tainted funds in the account.

7

Consulting Marketing, LLC; the Defendant transferred a net $80,000.00 from facilitating account **30-9515** to WF 9749; and he received $20,000.00 in franchising fees into facilitating account **30-9515**. The balances in facilitating account **30-9515** on February 1, 2018, were:

| <u>Untainted</u> | <u>Tainted</u> | <u>Balance</u> | |
|---|---|---|---|
| $880,918.78 | $886,741.72 | $1,767,660.50 | (Exhibit 7). |

On February 2, 2018, the Defendant engaged in moving money from facilitating account **30-9515** to six different Vanguard accounts. All six of these accounts were in the name of Lawrence P. Rudolph Trust. Five of these accounts were merely used to facilitate the movement of the proceeds, one of the accounts, Vanguard account 585-9515, consisted entirely of proceeds and was later seized by the United States.

        i.      Facilitating Vanguard Account 569-9515.

Facilitating account 569-9515 was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$195,000.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard account 569-9515.

        ii.      Facilitating Vanguard Account 584-9515.

Facilitating account 584-9515 was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$157,500.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard account 584-9515.

      iii.     Facilitating Vanguard Account 511-9515.

Facilitating account 511-9515 was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$52,500.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard account 511-9515.

      iv.     Facilitating Vanguard Account 1945-9515.

Facilitating account 1945-9515 was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$26,250.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard account 1945-9515.

      v.     Facilitating Vanguard Account 1946-9515.

Facilitating account 1946-9515 was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$26,250.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard account 1946-9515.

      vi.     Proceeds Vanguard Account 585-9515.

Vanguard proceeds account #0585-88150069515 (hereinafter "proceeds account 585-9515") was opened and had a zero balance on February 1, 2018. On February 2, 2018, the Defendant transferred <u>$292,500.00 of tainted</u> funds from facilitating account **30-9515** to Vanguard proceeds account 585-9515. The entirety of this account, $527,736.24, was seized by the United States on December 21, 2021.

The total amount of <u>tainted</u> funds transferred out of facilitating account **30-9515** on February 2, 2018, was $750,000.00. (Exhibit 8). After all six of these transfers, the balances in facilitating account **30-9515** on February 2, 2018, were:

| <u>Untainted</u> | <u>Tainted</u> | <u>Balance</u> | |
|---|---|---|---|
| $880,918.78 | $136,741.72 | $1,017,660.50 | (Exhibit 7). |

      E.    Proceeds Vanguard Account 540-9515.

Defendant Rudolph had opened Vanguard proceeds account #0540-88150069515 (hereinafter "proceeds account 540-9515") in the name of Lawrence P. Rudolph and Bianca T. Rudolph Trust. The balance in that account on April 16, 2019, was $785,091.12. The Defendant made four transfers into proceeds account 540-9515 from four of the facilitating accounts he had opened on February 2, 2018.

          i.    Facilitating Vanguard Account 569-9515.

From February 2, 2018, until April 16, 2019, there were no additional deposits into facilitating account 569-9515. On April 16, 2019, the Defendant transferred $179,000.00 of tainted funds from facilitating account 569-9515 to proceeds account 540-9515.

          ii.    Facilitating Vanguard Account 584-9515.

From February 2, 2018, until April 16, 2019, there were no additional deposits into facilitating account 569-9515. On April 16, 2019, the Defendant transferred $161,000.00 of tainted funds from facilitating account 584-9515 to proceeds account 540-9515.

     iii. Facilitating Vanguard Account 511-9515.

From February 2, 2018, until April 16, 2019, there were no additional deposits into facilitating account 511-9515.  On April 16, 2019, the Defendant transferred $52,869.00 of tainted funds from facilitating account 511-9515 to proceeds account 540-9515.

     iv. Facilitating Vanguard Account 1945-9515.

From February 2, 2018, until April 16, 2019, there were no additional deposits into facilitating account 1945-9515.  On April 16, 2019, the Defendant transferred $24,000.00 of tainted funds from facilitating account 1945-9515 to proceeds account 540-9515.

The total amount of tainted funds transferred into proceeds account 540-9515 on April 16, 2019, was $416,869.00.  The balance in proceeds account 540-9515 after these transfers was:

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $786,124.23 | $416,869.00 | $1,203,993.23 | (Exhibit 9). |

  F. Proceeds 2018 Aston Martin DB-11.

On March 1, 2018, the Defendant purchased a 2018 Aston Martin DB-11, VIN SCFRMFAV5JGL03309.  The purchase price was $239,000.00.  On March 1, 2018, the Defendant paid $125,000.00 of tainted funds from facilitating account **30-9515** to Bentley of Scottsdale for the down payment on the Aston Martin.  The Defendant financed $105,111.32 for the purchase.  The percentage

of tainted versus untainted funds is 52% tainted ($125,000.00) to 48% untainted ($1.5,111.32).

After the funds were transferred for the purchase of the Aston Martin, there were only $11,910.21 in tainted funds remaining in facilitating account **30-9515**. (Exhibit 10).  On March 13, 2018, the Defendant made a credit card payment of $16,500.00.  Taking the proceeds first approach, and applying the remainder of the tainted money, the balances in facilitating account **30-9515** after this payment on March 13, 2018, were:

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $877,414.47 | - 0 - | $877,414.47 | (Exhibit 10). |

      G.    Defendant Transfers Funds From Five Facilitating Vanguard Accounts Back To Facilitating Account **30-9515**.

The Defendant then transferred <u>tainted</u> life insurance proceeds <u>back</u> into facilitating account **30-9515** on January 7, 2021, from four facilitating Vanguard accounts he had previously moved money to.

      i.    Facilitating Vanguard Account 584-9515.

From February 2, 2018, until January 7, 2021, there were no additional deposits into facilitating account 584-9515.  On January 7, 2021, the Defendant transferred <u>$3,444.72 of tainted</u> funds from facilitating account 584-9515 to facilitating account **30-9515**.  After the Defendant made this transfer, he closed this account.

      ii.  Facilitating Vanguard Account 511-9515.

From February 2, 2018, until January 7, 2021, there were no additional deposits into facilitating account 511-9515.  On January 7, 2021, the Defendant transferred a net $3,235.14 of tainted funds from facilitating account 511-9515 to facilitating account **30-9515**.  After the Defendant made this transfer, he closed this account.

      iii.  Facilitating Vanguard Account 1945-9515.

From February 2, 2018, until January 7, 2021, there were no additional deposits into facilitating account 1945-9515.  On January 7, 2021, the Defendant transferred $3,606.30 of tainted funds from facilitating account 1945-9515 to facilitating account **30-9515**.  After the Defendant made this transfer, he closed this account.

      iv.  Facilitating Vanguard Account 1946-9515.

From February 2, 2018, until January 7, 2021, there were no additional deposits into facilitating account 1946-9515.  On January 7, 2021, the Defendant transferred $32,437.46 of tainted funds from facilitating account 1946-9515 to facilitating account **30-9515**.  After the Defendant made this transfer, he closed this account.

The total amount of tainted funds transferred back into facilitating account **30-9515** on January 7, 2021, from the five Vanguard Funds Defendant had previously moved money to was $42,723.62 of tainted life insurance proceeds.

The balances in facilitating account **30-9515** after these transfers on January 7, 2021, were:

| Untainted | Tainted | Balance | |
|---|---|---|---|
| $418,968.94 | $42,723.62 | $461,692.56 | (Exhibit 11). |

      H.    Proceeds 2017 Bentley Bentayga.

On April 20, 2021, the Defendant purchased a 2017 Bentley Bentayga, VIN SJAAC2ZV2HC014709.  The Defendant paid $162,390.58 to Bentley of Scottsdale on April 26, 2021.  On April 20, 2021, the Defendant wrote himself a check in the amount of $150,000.00 from facilitating account **30-9515** and deposited into WF 9749 to be applied to the purchase of the Bentley Bentayga.  The Defendant applied the remaining <u>$42,724.68 in tainted</u> funds and $107,275.32 of untainted funds to the purchase of the vehicle.  The percentage of tainted versus untainted funds is 26.31% tainted to 73.69% untainted.  (Exhibit 12).

The purchase of the Bentley Bentayga consumed the remainder of the tainted funds in facilitating account **30-9515**, leaving an untainted balance in facilitating account **30-9515** of $286,703.57.  On April 27, 2021, the Defendant transferred the $286,703.57 from facilitating account **30-9515** to Vanguard account 45-9515 and closed out facilitating account **30-9515**.

       I.       Proceeds Vanguard Account 540-9515.

On January 7, 2021, the Defendant also transferred <u>$4,657.57 of tainted</u> funds from facilitating account 569-9515 to proceeds account 540-9515. After the Defendant made this transfer, he closed facilitating account 569-9515.

The total tainted funds transferred into proceeds account 540-9515 from the four facilitating accounts was $421,526.57. (Exhibit 13). From January 7, 2021, until August 31, 2021, there were no additional deposits into proceeds account 540-9515. On August 31, 2021, there was a balance in the account of $2,158,786.68, of which <u>$751,776.28 were tainted</u> funds. On December 21, 2021, pursuant to a seizure warrant, the United States seized $751,776.28 from proceeds account 540-9515 as proceeds of the conviction in Count 2, mail fraud, leaving the remaining $1,407,010.40 in the account. (Exhibit 13).

       J.       Proceeds Vanguard Account 585-9515.

From January 7, 2021, until August 31, 2021, there were no additional deposits made into proceeds account 585-9515. On August 31, 2021, there was a balance in the account of $513,203.57, consisting entirely of <u>tainted</u> funds. On December 21, 2021, pursuant to a seizure warrant, the United States seized all funds in proceeds account 585-9515 - $527,736.24 - as proceeds of the conviction in Count 2, mail fraud. (Exhibit 14).

        K.      Proceeds Property Located At 7000 N. 39th Place, Paradise Valley, Arizona.[13]

The approximate total amount paid by the Defendant for the construction of the residence at 7000 N. 39th Place, Paradise Valley, Arizona up to May 31, 2021, is $1,910,109.82.  The Defendant used $1,121,915.61 of tainted funds and $788,194.21 in untainted funds to pay for the construction.  The percentage of tainted versus untainted funds used to that time was 58.74% tainted to 41.16% untainted.  Accordingly, 58.74% of the net proceeds from the sale of the property are subject to forfeiture.  (Exhibit 15).

        L      Proceeds Property Located At 103 Morningside Drive, Cranberry Township, Pennsylvania.

The approximate amount paid by the Defendant for the residence at 103 Morningside Drive, Cranberry Township, Pennsylvania up to October 1, 2020, was $1,812,500.00.  On September 28, 2000, the Defendant transferred $200,000.00 of tainted funds from proceeds account BNYM 1000 to another Wells Fargo account, number 3615742446 (hereinafter "facilitating account WF 2446").  He also transferred $50,000.00 in untainted funds from facilitating account WF 9749 and $150,000.00 in untainted funds from facilitating account 30-9515 into facilitating account WF 2446.  The Defendant used $199,970.00 of tainted funds and $195,603.69 of untainted to pay for the down payment and closing costs of the property.  The percentage of tainted versus untainted funds

---

[13] The figures used are based on information known to the United States through May 31, 2021, as those were the last financial statements reviewed.

is 50.55% tainted to 49.45% untainted.  Accordingly, 50.55% of the net proceeds from the sale of the property are subject to forfeiture.  (Exhibit 16).

The Defendant immediately entered into a rental agreement wherein he was paid $11,000.00 a month beginning on October 26, 2020, after receiving an initial payment of $22,000.00 – consistent with the first and last month's rent. Therefore, the rental income, which was used to pay the mortgage, would have increased the equity in the property and as such would be divided at the same rate as the tainted to untainted rate used to make the down payment. (Exhibit 16).