IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     LAWRENCE RUDOLPH, and
2.     LORI MILLIRON,

       Defendants.
_____

**UNITED STATES' REPLY TO DEFENDANT'S CONSOLIDATED RESPONSE TO MOTION FOR MANDATORY RESTITUTION AND FORFEITURE AND MOTION FOR PRELIMINARY ORDER OF FORFEITURE**
_____

      COMES NOW the United States of America, by and through United States Attorney Cole Finegan and Assistant United States Attorneys Kurt J. Bohn and Bryan Fields, and hereby submits this Reply to Defendant's Consolidated Response to Motion for Mandatory Restitution and Forfeiture and Motion for Preliminary Order of Forfeiture (Docket # 316) (hereinafter "Response") in this matter.

## INTRODUCTION

      Defendant's Response takes the position that the Court should not impose any order of restitution or forfeiture of any of the proceeds or property of his ill-gotten gains – that he be allowed to keep his profits from his crime.  This position is contrary to law and the facts of this case.  Therefore, the United States requests the Court enter an Order of both restitution and forfeiture as previously put forth in its Motion for Mandatory

1

Restitution and Forfeiture. (Docket # 296) (hereinafter "Motion") and a fine as part of the Defendant's sentence.

## A.    RESTITUTION

The Defendant does not dispute that the provisions of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, apply in this matter.  As such then, the Court would look to both counts of conviction to determine who the victim is.  There does not appear to be any dispute that the adult children of Bianca Rudolph and the estate of the decedent would be victims for Count 1 (murder), but that no restitution would be available to them for that count of conviction.  (Doc. 316, p.2).  Therefore, we turn to the issue of restitution as it relates to the conviction of mail fraud in Count 2.

The Defendant's position on restitution is that because the insurance companies *may* have to make payment for a claim submitted by someone other than the Defendant himself, for the murder of Bianca Rudolph that somehow the insurance companies are not the actual victims for this count of conviction.  That position flies in the face of the statutory language that the victim of the mail fraud is the one who suffered the pecuniary loss.  18 U.S.C. §§ 3663A(a)(2) and (c)(1)(B).

To be a victim under the MVRA, the defendant's criminal conduct must be the "but-for" cause of the individual's harm, and it must be the defendant who "proximately" caused that harm.  *United States v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010). The insurance companies made payment to Defendant upon him submitting his fraudulent claims to *them*.  They are the entities he deceived for money through his violations of mail fraud; not the children or the estate.  The insurance companies did not on their own contact the Defendant and seek to make payment to him; it was "but for"

his action of committing mail fraud on them that resulted in the payment of the insurance proceeds.  The victims of the mail fraud, and only the victims of the mail fraud, are entitled to restitution for Count 2. The adult children have not suffered any pecuniary loss and thus are not the victims of Count 2.

The Defendant's position that the insurance companies "would have properly paid the claims to someone" other than the Defendant if that party had submitted a claim does not negate the fact that the insurance companies *actually* did make a payment to him.  (Response at p. 3).  While the insurance companies may have made payment to a contingent beneficiary or the Estate of Bianca Rudolph (that the Defendant had no control over), it does not change one simple fact – Defendant was paid $4,877,744.93 in insurance proceeds *by* the insurance companies, and *not by* the adult children, when he committed mail fraud.  The Defendant's actions prevented the insurance companies from filing civil interpleader actions at the time that would have sorted out precisely this question.

In Defendant's Response, he states six times that the insurance companies "would" or "should" be required to have made payment to the adult children or another beneficiary.  Nowhere does he state that he has returned the money to the insurance company victims, or even that he will return the money to the insurance companies for them to assess any claim submitted under the policies.  Rather, he seems to argue that the Court should skip that step, and just say, well, the children control his unseized

finances and assets so they can have the insurance payments from there[1].  (Response at p. 8).  There is no skipping that step in the statute.

As noted by the Defendant himself, at least one company, AAA Life Insurance, has requested restitution for the death benefits paid.  The Defendant cannot argue that AAA Life Insurance is not a victim of his mail fraud and not entitled to restitution.  Or, that AAA Life Insurance has to forgo its right to evaluate any claim made against its policy before deciding to pay a claim.  That right belongs to them, as well as all of the other victim insurance companies.

To the knowledge of the United States, the adult children have yet to file a claim for payment pursuant to the insurance policies asserting they are the actual beneficiaries.  If they did, and if they are the correct beneficiaries, then the insurance companies would be exposed to additional pecuniary liability and loss – to which they would then turn to the Defendant to seek return of the monies he was paid.

There is also no indication that they have filed suit against their father for these funds that supposedly are rightfully theirs.  Rather, both the defendant and adult children are requesting the Court improperly determine their respective rights, titles, and benefits under each policy through the restitution order.  It is not the position of this Court to review each policy, anticipate who may or may not file a claim under that policy, and then enter an order as to each policy.[2]

---

[1] This supposed relinquishment by the Defendant of all of his assets to his children is also potentially fraught with additional legal implications, such as fraudulent conveyance and potential preference of creditors should he declare bankruptcy.
[2] As explained in its Motion, should any insurance company victim request restitution go to the contingent beneficiary, the United States would not contest such a request.

**B.     FORFEITURE**

The Defendant again takes the position that he is not required to return any of the property or profits he obtained as a result of him illegally receiving the insurance proceeds.  None of the six asserted positions have merit.

The first three positions put forth by the Defendant actually follow one theory – the United States cannot establish that the funds seized, or the property purchased involved the illegally obtained insurance proceeds.  These three theories all involve the right of the United States to trace illegal proceeds and the method used.  As set forth in detail in the United States' Motion, the United States has established by more than a preponderance of evidence that forfeiture is appropriate.

1.     "But for" the Defendant receiving the insurance proceeds he would not have acquired the forfeitable assets.

The Defendant first alleges that because he had other money available to him, the United States cannot prove that he used tainted funds to procure the property to be forfeited or that he made any financial gains from the investment of the funds.  This position fails for several reasons.  First, the financial tracing of the insurance proceeds into the specific accounts, and the subsequent movement of the funds, establishes that these funds were used to procure the property sought to be forfeited and/or are the funds seized by the United States well beyond the preponderance of the evidence standard.[3]

It is noteworthy that the Defendant's expert, Mr. Hoffman, testified during the trial that prior to the Defendant receiving the insurance proceeds the Defendant had

---

[3] The United States provided the Court tracing of the funds in Attachment A to its Motion. (Docket # 296). The bank account information and other relevant information which served as the basis for the tracing was previously provided to the Defendant in the discovery during the course of the criminal matter.

between 5 to 6 million dollars of liquid assets.  Almost all of these liquid funds were in accounts other than facilitating Vanguard account 30-9515, which had a beginning balance prior to receiving the insurance proceeds of $413,035.35.  The tracing of the insurance proceeds was limited to where the insurance proceeds were deposited and flowed – and did not include non-tainted accounts involving the vast majority of the 5 to 6 million dollars of liquid assets.  Therefore, the United States was able to trace the use of the tainted $4,877,744.93 funds beyond a preponderance of the evidence.

In its Motion, the United States lays out the tracing of the insurance proceeds to the specific assets it is seeking forfeiture.  (Docket # 296, Attachment A).  One example is noted in Attachment A, para. B, where the balance in BNYM proceeds account 1000 was zero when opened, and $3,000,000.00 was transferred directly from facilitating Vanguard account 30-9515.  None of the $3,000,000.00 came from any other account. It is not speculation to establish a nexus between the $3,000,000.00 and the insurance proceeds, when the balance in facilitating Vanguard account 30-9515 had been $413,035.35 prior to the deposit of the $4,877,744.93 insurance proceeds.[4]  The same analysis is true for the other assets subject to forfeiture.  As the tracing lays out, there is a direct nexus between the entirety of the funds or property, or a percentage of them. While the burden of proof is on the United States in this matter, the Defendant fails to point to a single asset he believes there is not a nexus between the illegally obtained insurance funds and the property.

---

[4] Opposing counsel relies on *United States v. Annamalai* for the notion that guesswork and speculation are unacceptable at sentencing.  Reading beyond Rudolph's cursory reading of that case, the court distinguishes speculation from "reasonable estimates of loss resulting from the fraud." 939 F.3d 1216, 1238 (11th Cir. 2019).  "In a case like this one the government need only present (and the district court need only determine) a reasonable estimate of loss resulting from the fraud." *Id*.

2.      The Defendant does not get to keep interest, dividends, and appreciation of his ill-gotten gains as tracing is appropriate.

The Defendant's second and third positions do not cite a single case to the Court in support of the proposition that he is allowed to keep interest, dividends, or appreciation from the tainted funds.  The Response floats in between asserting that tracing is not allowed, to any increase in value is not forfeitable, and confessing that forfeiture of assets may be limited to the percentage of tainted funds.

The Defendant's assertion that the theory of tracing tainted funds is barred by statute is without any support – again the Response fails to direct the Court to any case that stands for that proposition, *let alone* the statutory provision he alleges bars it. Contrary to this position, the Supreme Court has held that tracing of commingled assets for forfeiture is appropriate.  "Courts use tracing rules in cases involving fraud, pension rights, bankruptcy, trusts, etc. (internal citation omitted). They consequently have experience separating tainted assets from untainted assets, . . ."  *Luis v. United States*, 578 U.S. 5, 22 (2016).  The Tenth Circuit has recognized that the use of accepted accounting principles is appropriate when tracing funds and up to the District Court's discretion.  *United States v. Henshaw*, 388 F.3d 738, 740-741 (10th Cir. 2004).  "[W]hen tracing commingled funds, the government is accorded flexibility to choose among various accounting approaches." *United States v. Lowrance*, 2003 WL 22327850, at *3 (N.D. Okla. Aug. 28, 2003) (unpublished) (citing *In re Moffitt, Zwerling, & Kemler, P.C.*, 875 F.Supp. 1152, 1159-60 (E.D.Va.1995)).

The Defendant's assertion that the tainted funds cannot be traced to the later investments because the Defendant had other funds that he "could have obtained the assets without the insurance proceeds" might make more sense if he *had* actually used

7

the other funds to obtain the assets.  But he didn't.  The tracing shows either the entirety of the assets to be forfeited or the funds seized were either exclusively from the insurance proceeds or a percentage came from the insurance proceeds.  Therefore, because the tracing of the funds is limited to the place where the insurance proceeds were deposited, facilitating Vanguard account 30-9515, there is little difficulty in following the proceeds to the assets.  In its request for forfeiture, the United States seeks only the percentage of tainted funds even when they were commingled with untainted funds.  It is also a leap of logic to suppose that the Defendant would keep the interest, dividends, or appreciation attributable to tainted assets.  It is also a position without any legal authority or support.  As set forth in the Motion, under § 981(a)(1)(C), the United States may forfeit all traceable property, and property traceable thereto, which includes interest, dividends, and appreciation.

The Defendant's fourth position that the United States should be limited to a money judgment because the Defendant "supposedly" waived his right to a jury determination of forfeiture is disingenuous on its face.  Counsel for the United States went over to the courtroom and spoke directly to Defendant's counsel regarding the issue of keeping the jury to determine forfeiture.  Counsel for both parties agreed that the issue of forfeiture would be presented to the Court at the time of sentencing.  Counsel for the United States returned to his office and filed the Notice of Forfeiture Hearing (Docket # 228) on July 20, 2022.  The jury in this matter did not begin to deliberate until July 28, 2022.  At no time prior to the jury beginning its deliberations did the Defendant, or his counsel, make any representation that the Notice was incorrect, or that the Defendant was electing to have the forfeiture issue determined by the jury.

Rule 32.2(b)(5)(A) states that, "In any case tried before a jury, if the indictment or information states that the government is seeking forfeiture, the court must determine before the jury begins deliberating whether *either party requests* that the jury be retained to determine forfeitability of specific property if it returns a guilty verdict."  The parties in this case provided their Notice of Forfeiture Hearing on July 20, 2022. (Docket # 228).  Therefore, the Court had the necessary information to make the determination that the jury not be retained as neither party had made such a request. There is zero basis for this position or the idea that the United States should be limited to a money judgment because the forfeiture issue will be determined by this Court.

The fifth position raised by the Defendant is that his adult children should not be punished by being denied the profits of his investments.  In essence, the Defendant admits that he turned the insurance proceeds into profits.  The Defendant's position is actually conflating the monies the adult children may have received by the execution of a contract with the insurance companies, with the assets the Defendant is required to forfeit as part of his criminal sentence.  The adult children are not being punished, nor are they entitled to unjust enrichment from their father's criminal scheme.

Yet again, the Defendant's theory is not supported by any case law.  In fact, while describing the Government's reading of forfeiture statutes as "absurd," the case cited by the Defendant is intentionally misleading as it has nothing at all to do with forfeiture, insurance proceeds, or gains.  The *Paroline v. United States*, 572 U.S. 434 (2014), matter addresses an issue of mandatory restitution for victims of child pornography under 18 U.S.C. § 2259.  Section 2259 is even titled "Mandatory restitution."  There is no support for the "absurd" theory that a person can commit fraud,

and if they make a profit from the fraud, then gift the profit to someone.  Indeed, if that were the case, all defendants could easily avoid forfeiture by asserting they wished to gift it to loved ones.  Forfeiture is about punishing the Defendant, not passing on illegally gotten gains.

The Defendant's sixth position is that the forfeiture should be limited to the insurance proceeds from "Life Insurance Company 1" referred to in the Superceding Indictment.  (Docket 53, para. 4).  This narrow reading ignores the fact that Count 2 involved a scheme to defraud and that paragraph 2, identified the sum of the fraud, $4,877,744.93, and that there were seven insurance company victims.[5]

## C.     FINE

Rudolph does not dispute that he bears the burden of showing his inability to pay the fine recommended by the government and probation.  But he has pointedly refused probation's request to describe his financial resources, PSR ¶ 202.  Instead, he treats the facts like game pieces he can move around to suit his tactical advantage at any moment in time.  Before trial, he wanted to show how rich he was and successfully moved to exclude Newton's analysis as an unreliable underestimate.  (Docket # 190). After trial, when he faces the consequences for his actions, he pleads poverty and asks the court to rely on it.  During trial, he tried to say his business was worth millions. Now, he claims it's worthless.  Most importantly, the defendant says the court can't take him at his own word that he was worth $27 million in 2021, implying that this princely sum comprised the valuation of his dental practice. Def. Mot. at 20 (noting value of dental

---

[5] However, even if the Court found merit with the argument, the United States would still be entitled to forfeiture of the entire amount of the fraud as defendant was convicted of a scheme.  *See United States v. Adegboye*, 2011 WL 5025531 (W.D. Okla. Oct. 21, 2011) (ordering forfeiture of the full amount of proceeds from the scheme where defendants were found guilty of only some of the charges).

practice in paragraph whose topic relates to $27 million valuation).  But he omits that the $27 million estimate already excluded the business. PSR ¶ 204.  If he had $27 million in real estate, investments, cash, cars, and other hard assets in 2021 but somehow managed to fritter it all away while being detained, he needs to do more than make another tactical blanket denial.

The statement that the government "has cited no similar case where such a fine, on top of restitution and forfeiture, has been ordered" is technically true, but only in the sense that most statement with multiple commas and conjunctions can be made true. As described in the government's sentencing brief (to which the defendant did not respond), (Docket # 270 at 9), Judge Weinstein ordered that a wealthy slumlord whose arson killed his impoverished tenants pay full restitution and then ordered a fine of twice that amount on top in a detailed opinion describing the history and importance of fines in Anglo-American criminal justice. *United States v. Ferranti*, 928 F. Supp. 206, 220 (E.D.N.Y. 1996).  A fine on top of other financial penalties is appropriate, where the facts support it and the defendant can pay it.

DATED this 23d day of January, 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney

*s/***Kurt J. Bohn**
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov

*s/***Bryan Fields**_____
Bryan Fields
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: bryan.fields3@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23d day of January 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.


S/*Kurt J. Bohn*
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov