IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON,**

Defendants.

---

**MOVANTS' RESPONSE TO THE GOVERNMENT'S RESPONSE TO MOVANTS'
MOTION FOR LEAVE TO FILE THEIR RESPONSE TO GOVERNMENT'S MOTION
FOR MANDATORY RESTITUTION AND FORFEITURE**

---

Pursuant to the Court's order of February 1, 2023 (Dkt. 326) (the "Order"), Movants hereby submit the instant response to the Government's Response to Movants' Motion for Leave to File Their Response to Government's Motion for Mandatory Restitution and Forfeiture. In brief summary, the Government makes several fundamental errors in its response to Movants' motion. First, the government implies that simply because it failed to identify the Movants as victims during trial, Movants' rights as victims under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, are erased; this is not so. Second, as Movants noted in their Motion for Leave to File Their Response to Government's Motion for Mandatory Restitution and Forfeiture, and as most of the insurance companies to whom the Government seeks so desperately to return the life insurance proceeds *have said themselves*, those companies were, and are, contractually obligated to pay the proceeds to the lawful beneficiaries of the policies. Third, the Government confusingly asserts, citing no support whatsoever, that Movants would somehow seek to obtain "twice the benefits to which they are entitled," as well as that a determination of Movants' status as victims

1

would be too complex for the Court to resolve. In fact, Movants seek only the restitution to which they are statutorily entitled, a determination that can be made quite simply. Finally, the Government incorrectly conflates an attempt by purported victims to appeal the sentence of a defendant with what the Movants seek here, which is simply the recognition of their statutorily guaranteed rights as victims under the CVRA.

I.   **THE GOVERNMENT'S FAILURE TO PROPERLY IDENTIFY THE MOVANTS AS VICTIMS AT TRIAL DOES NOT TERMINATE THEIR STATUTORY RIGHTS.**

As the Government correctly states, the CVRA lays out the rights guaranteed to any "person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). This definition, which mirrors the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, is to be interpreted broadly. *See, e.g.*, *United States v. Maldonado-Passage*, 4 F.4th 1097, 1103 (10th Cir. 2021) ("[W]hen a defendant's commission of a crime results in emotional or pecuniary harm, the harmed person qualifies as a crime victim under the CVRA."); *United States v. Checora*, 175 F.3d 782, 795 (10th Cir. 1999) (§ 3663A "defines 'victim' as any 'person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered.'"). The CVRA also provides that both the "crime victim or the crime victim's lawful representative, and the attorney for the government may assert" the rights afforded by the CVRA. 18 U.S.C. § 3771(d)(1). Those rights "shall be asserted in the district court in which a defendant is being prosecuted for the crime, or, if no prosecution is underway, in the district court in the district in which the crime occurred," and the "district court shall take up and decide any motion asserting a victim's right forthwith." *Id.* at § 3771(d)(3). "If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." *Id.*

This language plainly establishes that individuals, such as the Movants, may assert their rights as victims even where the Government has failed to do so. If, as the Government suggests, it is the final arbiter of who does and does not qualify as a victim, there would surely be no ability for victims to assert their rights "if no prosecution is underway." Similarly, there would be no need to allow a "movant" to "petition the court of appeals for a writ of mandamus" in the case of a denial, *id.* at § 3771(d)(3), *in addition to* the Government's right to "assert as error the district court's denial of any crime victim's right" when making "an appeal in a criminal case," *id.* at § 3771(d)(4). In passing the CVRA, Congress clearly foresaw instances, like the one before the Court here, where the Government has failed to identify the proper victims of a crime.

It is also of no consequence that the Government proceeded to, and through, trial without properly identifying the Movants as victims. *See United States v. Whipple*, 155 F. Supp. 3d 321, 324 (W.D.N.Y. 2015) ("The fact that the Government has not sought restitution on behalf of a particular party is not determinative of that party's status as a victim."). The Tenth Circuit has previously recognized that it is not bound by the Government's determinations of who is a victim, nor, necessarily, what the Government chooses to prove at trial. For example, in *In re Antrobus*, the panel noted, matter-of-factly and with no issue, that the district court heard the movants' motion for recognition of the victim status of their daughter after the defendant entered a plea. 519 F.3d 1123, 1124 (10th Cir. 2008) ("*After the plea hearing*, the Antrobuses sought to have Ms. Quinn declared a victim of Mr. Hunter's crime …") (emphasis added); *see also United States v. Hunter*, No. 2:07CR307DAK, 2008 WL 53125, at *1 n.1 (D. Utah Jan. 3, 2008) (noting movants did not file motion asserting victim's rights for over a month after plea hearing and seven months after the action began). Whether the Movants are victims of the mail fraud charge of which Dr. Rudoph was found guilty is a question that the Court is clearly capable of

3

answering at the current stage of the proceeding. Moreover, the CVRA expressly states that the Court must answer that question "forthwith," 18 U.S.C. § 3771(d)(3), despite the Government's suggestions to the contrary.

## II.  THE MOVANTS, AND NOT THE INSURANCE COMPANIES, SUFFERED A LOSS AS A RESULT OF DR. RUDOLPH'S MAIL FRAUD.

The Government next incorrectly asserts that because the Movants "did not receive fraudulent claims in the mail from their father," they are not victims of Dr. Rudolph's mail fraud and "have suffered no loss." As stated above, any person who is "directly and proximately harmed by the commission of a Federal offense" is a victim of such a crime. In cases of fraud, the universe of individuals "directly and proximately harmed" extends beyond those to whom false statements were made. *See United States v. Chin*, 965 F.3d 41, 59-60 (1st Cir. 2020). In *Chin*, the defendant was found guilty of engaging in a scheme that involved the misrepresentation of "various safety protocols to customers who purchased" medications from New England Compounding Center ("NECC"). On appeal, the government challenged the district court's determination that "patients who were adversely affected by NECC's drugs were not victims" because "NECC's misrepresentations were made to the hospitals and clinics that purchased the drugs, not to end-users and patients." *Id.* at 58 (internal quotations removed). The First Circuit concluded that the district court, like the Government in the instant matter, improperly focused on "the causal relationship … between the nature of the statutory offense and the loss." *Id.* at 59. Instead, the proper focus is "on whether the victim was 'harmed as a result of the <u>commission</u> of an offense' or 'by the defendant's criminal <u>conduct</u> in the course of a scheme, conspiracy, or pattern of criminal activity.'" *Id.* at 59-60 (emphasis in original).[1]

---

[1] Though *Chin* cites to the MVRA, we agree with the Government that "the Tenth Circuit has followed MVRA precedent in interpreting who is a victim under the CVRA."

The nature of the loss suffered by the Movants and caused by Dr. Rudolph is detailed fully in Movants' Response to the Government's Motion for Mandatory Restitution and Forfeiture and Request for Recognition of Their Rights as Victims and Entitlement to Restitution. The proceeds of the life insurance policies obtained by Mrs. Rudolph constitute a significant portion of Julian and AnaBianca's inheritance, and these funds were wrongfully taken away from them. But for the conduct for which Dr. Rudolph was found guilty, namely, misrepresenting the circumstances of Mrs. Rudolph's death, Movants would have received the proceeds of the life insurance policies. It is also reasonably foreseeable that the same conduct would lead to the Movants loss of the insurance proceeds. They have thus clearly been "directly and proximately harmed" as a result of the mail fraud charge of which Dr. Rudolph was found guilty. Moreover, as Movants have repeatedly explained to the Government, the insurance companies with which Movants have discussed victim status have confirmed that they were contractually required to make the payments to the lawful beneficiaries under any circumstances other than suicide. As a result, they have implied that they do not view themselves as victims and thus are not entitled to restitution. That Dr. Rudolph did not submit fraudulent claims for the insurance proceeds to the Movants is wholly irrelevant. It is indisputable that the Movants would have received the proceeds of the life insurance policies but for the criminal conduct for which Dr. Rudolph was found guilty. The Movants are therefore clearly the victims and thus entitled to mandatory restitution.

III.   **THE GOVERNMENT INCORRECTLY CLAIMS THAT MOVANTS WOULD BE UNJUSTLY ENRICHED BY A DETERMINATION THAT THEY ARE VICTIMS AND THAT AN ADJUDICATION OF THEIR STATUS IS TOO COMPLICATED FOR THE COURT.**

Citing no support whatsoever – because there is none – the Government claims that Movants "would receive twice the benefits to which they are entitled" if they are recognized as

victims. The Government arrives at this conclusion, it seems, by assuming that after Movants

obtain the restitution that they deserve and that they are statutorily guaranteed, they would bring

additional actions against the insurance companies in state courts. It is entirely unclear why the

Government makes this assumption, or why they assume that state courts would grant the

Movants these additional remedies. Indeed, the applicable Slayer laws anticipate exactly the

scenario envisioned by the Government and preclude precisely the suit the Government fears.

*See* Ariz. Rev. Stat. Ann. § 14-2803(G) ("A payor or other third party is not liable for having

made a payment or transferred an item of property or any other benefit to a beneficiary

designated in a governing instrument affected by an intentional and felonious killing or for

having taken any other action in good faith reliance on the validity of the governing instrument

on request and satisfactory proof of the decedent's death and before the payor or other third party

received written notice of a claimed forfeiture or revocation under this section."); 20 Pa. Cons.

Stat. § 8812 ("Any insurance company making payment according to the terms of its policy or

any bank or other person performing an obligation for the slayer as one of several joint obligees

shall not be subject to additional liability by the terms of this chapter, if such payment or

performance is made without notice of the killing by a slayer."); 755 Ill. Comp. Stat. 5/2.6 ("The

holder of any property subject to the provisions of this Section shall not be liable for distributing

or releasing said property to the person causing the death if such distribution or release occurs

prior to a determination made under this Section.").

     To the extent that the Government recognizes that the Movants are the contingent

beneficiaries of the life insurance policies, Movants agree; indeed, this is fundamental to the

Movants' right to the life insurance proceeds that Dr. Rudolph fraudulently received in their

place. How the Government made the leap to the belief that Movants would somehow receive a windfall based on their status as contingent beneficiaries, however, is unknown to Movants.

The Government similarly provides no support for its claim that "determining whether [Movants] are indeed the proper beneficiaries of [the life insurance] policies will require this court to interpret those policies and answer various choice-of-law questions, so it can then review, interpret, and apply the proper state 'Slayer laws' to ascertain the proper beneficiaries of each policy." As a preliminary matter, the MVRA expressly provides an exception for cases where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B); *see also* 18 U.S.C. § 3663(a)(1)(B)(ii) ("To the extent that the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, the court may decline to make such an order."). This exception has been construed narrowly, *e.g.*, *United States v. Atlantic States Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 486-87 (D.N.J. 2009), and is not applicable here.

The Government's description of the facts notwithstanding, the requisite analysis of the life insurance policies and the applicable "Slayer laws" is quite simple. Each of the relevant policies contains a choice of law provision that plainly establishes which state's "Slayer law" applies. The policies issued by AAA Life Insurance Company, Fidelity Life, Genworth First Colony, and MetLife Insurance are governed by Arizona law; the policies issued by Ameritas Life Insurance and Transamerica Life Insurance are governed by Pennsylvania law; and the policies issued by Great-West Life & Annuity Insurance Company are governed by Illinois law.

Further, the language of these states' "Slayer laws" is substantively identical with regards to the disqualifying effect of Dr. Rudolph's conviction. *See* Ariz. Rev. Stat. Ann. § 14-2803(E) ("A wrongful acquisition of property or interest by a killer not covered by this section shall be treated in accordance with the principle that a killer cannot profit from that person's wrong."); 20 Pa. Cons. Stat. § 8811(a) ("Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid to the estate of the decedent, unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him."); 755 Ill. Comp. Stat. 5/2.6 ("A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance."). Movants trust and believe that this Court is well suited and qualified to analyze seven choice of law provisions and three, largely identical, state "Slayer laws," determine that Dr. Rudolph is, and was, disqualified from receiving the life insurance proceeds that rightfully belong to Movants, and order that restitution properly be paid to them.

## IV.   THE GOVERNMENT'S REFERENCE TO *UNITED STATES V. HUNTER* IS INAPPOSITE.

Finally, as Movants explained in their Motion for Leave to File Their Response to Government's Motion for Mandatory Restitution and Forfeiture, the Government's citation to *United States v. Hunter* is not relevant to the matter at hand.[2] Movants agree that "non-parties …

---

[2] Movants further note that the Government makes no mention of the applicability of the cases that the Court cited, and called on the parties to discuss, in its January 10, 2023 Order (Dkt. 317). Moreover, the Government has neglected to respond to any of the myriad cases raised by Movants in their Motion for Leave to File Their Response

do not have a tangible interest in the outcome" of a criminal trial. 548 F.3d 1308, 1312 (10th Cir. 2008). However, the Tenth Circuit reached that conclusion when the Appellants in the case attempted to appeal the "judgment of conviction and sentence" of the defendant. *Id.* at 1310. Unlike the Appellants in *Hunter*, Movants do not seek to intervene to appeal Dr. Rudolph's conviction, nor are they seeking a direct appeal of his sentence. Instead, they seek the rights guaranteed to them by the CVRA, rights that the Tenth Circuit explicitly recognized in *Hunter*'s sister case, *In re Antrobus*. 519 F.3d at 1124; *see also United States v. Issa*, 21 F.4th 504, 508 (7th Cir. 2021) ("The district court did precisely the right thing accepting the written and oral submissions of the victims personally and through their lawyer and acted within its discretion in considering and weighing those submissions."). Of course, should Movants disagree with the Court's eventual finding on their motion to be recognized as victims, they will exercise their right to seek appellate review through "the single avenue" provided for in the CVRA: mandamus. *Hunter*, 548 F.3d at 1315. At present, however, Movants seek only to be heard by the Court and to have their statutorily guaranteed rights confirmed.

## V.   CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Movants' Motion for Leave to File Their Response to Government's Motion For Mandatory Restitution And Forfeiture and their Response to Government's Motion for Mandatory Restitution and Forfeiture and Request for Recognition of Their Rights as Victims and Entitlement to Restitution, the Government's assertions that the Movants lack standing, that they are not "victims" as defined in the CVRA, and are not entitled to restitution are incorrect.

---

to Government's Motion for Mandatory Restitution and Forfeiture. This failure is particularly noticeable with regards to *In re Antrobus*, a case that is directly on point.

Dated: February 8, 2023                                   VICTIMS' COUNSEL

                                                          /s/ *Christopher P. Hotaling*
                                            **Christopher P. Hotaling** (IL. Bar #6272432)
                                                          NIXON PEABODY LLP
                                                          70 West Madison, Suite 5200
                                                          Chicago, IL 60602-4378
                                                          Tel: 312.977.4418
                                                          Fax: 833.968.0535


                                                          /s/ *John R. Sandweg*
                                            **John R. Sandweg** (DC Bar # 1027208)
                                                          NIXON PEABODY LLP
                                                          799 9th Street NW, Suite 500
                                                          Washington, DC 20001-5327
                                                          Tel: 202.585.8189
                                                          Fax: 877.743.5914