IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

    Defendants.

---

**ORDER DENYING MOVANTS' MOTION FOR LEAVE TO FILE
THEIR RESPONSE TO GOVERNMENT'S MOTION FOR MANDATORY
RESTITUTION AND FORFEITURE**

---

On January 9, 2023, the Court received an e-mail from attorneys representing Julian Rudolph, AnaBianca Rudolph, and the Estate of Bianca Rudolph (collectively, "Movants") requesting information concerning filing a response to the Government's Motion for Mandatory Restitution and Forfeiture (ECF No. 296). The substance of Movants' request was that the Court permit them to file a response brief arguing that the Court should recognize their rights as victims of Count 2 (mail fraud) under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, and entitlement to receive restitution in this matter.[1] Because the Court questioned whether Movants, who are not parties in

---

[1] The adult children or an official representative of the estate of Bianca Rudolph would be entitled to all the rights provided by the CVRA as it relates to the murder conviction for Count 1. But the parties seem to agree that there is no restitution appropriate for that count of conviction. Even the adult children's proposed response does not allege any restitution would be appropriate for Count 1. (*See* ECF No. 319-1.) Therefore, the Court limits its analysis to whether Movants are entitled to respond with respect to Count 2.

this criminal case, had standing to participate in the restitution portion of these proceedings, the Court directed separate briefing on this matter.[2]

Before the Court is Movants' Motion for Leave to File Their Response to Government's Motion for Mandatory Restitution and Forfeiture ("Motion"). (ECF No. 319.) The Government (ECF No. 325) and Defendant Lawrence Rudolph ("Defendant" or "Rudolph") (ECF No. 324) filed responses.[3] Movants filed a reply. (ECF No. 329.)

For the following reasons, the Motion is denied.

## I. APPLICABLE LAW[4]

The definition of a "crime victim" under the CVRA is "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." 18 U.S.C. § 3771(e)(2)(A). The CVRA provides the right for crime victims to "be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," *id*. § 3771(a)(4), and "full and timely restitution as provided in law," *id*. § 3771(a)(6).

Because the definition of "victim" in the CVRA is "virtually identical" to the definition in the MVRA, the Tenth Circuit has followed MVRA precedent in interpreting who is a victim under the CVRA. *See United States v. Maldonado-Passage*, 4 F.4th 1097, 1102–03 (10th Cir. 2021) (citing *United States v. Speakman*, 594 F.3d 1165,

---

[2] The Court permitted Movants to appear on the docket as "Interested Parties" solely for the purposes of filing their motion. (ECF No. 317.)

[3] Rudolph filed a one-paragraph brief which states that it is his position that Movants are not prohibited from appearing and arguing their status and rights as victims. (ECF No. 324 at 1.) He has no objection to Movants filing a response. (*Id.*)

[4] Movants state that they are not relying on the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, to support their standing to participate in this case. (ECF No. 319 at 2.) Rather, they rely on the CVRA. (*Id.*)

1171 n.3 (10th Cir. 2010)).  The Tenth Circuit has held that "when a defendant's commission of a crime results in emotional or pecuniary harm, the harmed person qualifies as a crime victim under the CVRA."  *Id.* at 1103.  "[T]o show that one is a victim under the MVRA, [here, Movants] must show both that the defendant's conduct is the 'but-for' cause of [their] harm and that the defendant 'proximately' caused the harm."  *Speakman*, 594 F.3d at 1171.  Direct harm therefore requires proof "that a particular loss would not have occurred but for the conduct underlying the offense of conviction[.]"  *Id*.  Further, proximate harm requires proof that "the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)."  *Id.* (citations omitted).

## II. ANALYSIS

Here, Movants request that the Court recognize their status as victims under the CVRA and afford them an opportunity to be heard regarding the proper allocation of restitution.  (ECF No. 319 at 6.)  They argue that even though the Government did not recognize them as victims of the mail fraud count, in other cases in the Tenth Circuit, victims have properly moved district courts to recognize them as such.  (*Id.* at 3 (citing *In re Antrobus*, 519 F.3d 1123, 1124 (10th Cir. 2008)).)  Movants' position is that they are victims with respect to Count 2 "because proceeds of the life insurance policies obtained by Mrs. Rudolph constitute a significant portion of Julian and AnaBianca's inheritance, and these funds were wrongfully taken away from them."  (ECF No. 329 at 5.)  They further argue that

> [b]ut for the conduct for which Dr. Rudolph was found guilty, namely, misrepresenting the circumstances of Mrs. Rudolph's death, Movants would have received the proceeds of the life insurance policies.  It is also reasonably

3

> foreseeable that the same conduct would lead to the
> Movants loss of the insurance proceeds.  They have thus
> clearly been "directly and proximately harmed" as a result of
> the mail fraud charge of which Dr. Rudolph was found guilty.

(*Id.*)

For the following reasons, however, the Court finds that Movants are not victims of Count 2 and therefore may not file a response to the Government's Motion for Mandatory Restitution and Forfeiture.

Count 2 concerns Rudolph's actions which defrauded several life insurance companies.  The Superseding Indictment identifies seven insurance companies (with nine policies) as being defrauded by Rudolph's conduct, resulting in total of approximately $4,877,744.93 worth of losses.  (ECF No. 53 ¶¶ 2–4.)   However, the Superseding Indictment does not allege that Movants were victims with respect to Count 2; this, of course, is not dispositive of the instant issue.  *See United States v. Whipple*, 155 F. Supp. 3d 321, 324 (W.D.N.Y. 2015) ("The fact that the Government has not sought restitution on behalf of a particular party is not determinative of that party's status as a victim.").

Moreover, as the Government points out, the Court's Final Jury Instructions identify only the insurance companies as the victims of Rudolph's mail fraud—not Rudolph's children.  (ECF No. 325 at 3.)

> First: Lawrence Rudolph devised or intended to devise a
> scheme to defraud the life insurance companies identified
> during this trial by making false and fraudulent
> representations that the death of Bianca Rudolph was an
> accident to obtain life insurance proceeds.

(ECF No. 240 at 29.)

To establish Rudolph's guilt for mail fraud, the Government was required to prove

4

that he defrauded the seven insurance companies and obtained life insurance proceeds from them. The jury found that Rudolph intended to defraud the seven insurance companies out of the life insurance proceeds when he mailed them false and fraudulent representations that Bianca Rudolph's death was an accident. However, there was no evidence presented at trial that Rudolph schemed to defraud *Movants*. To wit, Movants did not receive fraudulent claims in the mail from Rudolph, nor did they make any payments to him based on the false claims. Consequently, the Court cannot extrapolate that the jury's verdict also contemplates that Rudolph intended to defraud Movants.

Here, the victims are the insurers who paid the life insurance proceeds to Rudolph; they alone suffered harm. In their reply, Movants state that "the insurance companies with which Movants have discussed victim status have confirmed that they were contractually required to make the payments to the lawful beneficiaries under any circumstances other than suicide." (ECF No. 329 at 5.) Further, they argue that it is "indisputable that the Movants would have received the proceeds of the life insurance policies but for the criminal conduct for which Dr. Rudolph was found guilty." (*Id.*) While Movants assert that they are the proper beneficiaries of the life insurance policies, making a legal determination concerning whether Movants are indeed the proper beneficiaries of the insurance policies in question would require the Court to review and interpret those policies and answer various choice of law questions, so it can then review, interpret, and apply the proper state "slayer laws" to ascertain the proper beneficiaries of each policy.[5] Movants simply *assume* they would receive all of the life

---

[5] In their reply, Movants concede that the Court might have to make such determinations without acknowledging that this is not the proper forum in which to do so. (ECF No. 329 at 8)

insurance proceeds, and they may be right.  Assuming *arguendo* that Movants are proper contingent beneficiaries of all of the life insurance policies at issue, that still does not necessarily make them victims of Rudolph's mail fraud.  That designation belongs to the life insurers, who paid the life insurance proceeds to Rudolph.  But the Court believes that such issues between the life insurers and Movants—to the extent any exist—belong in a civil proceeding, not the criminal proceeding pending in this federal court.[6]  (*See* ECF No. 325 at 5.)

Importantly, even if Movants are entitled to the life insurance proceeds as contingent beneficiaries, they have suffered no loss.  They can bring a claim against the insurers for any proceeds to which they believe they are entitled.  However, the Government surmises that Movants will likely not need to do so, because "once Rudolph has returned his ill-gotten gains in restitution, there is nothing to suggest that the insurers will not provide those funds to the proper beneficiaries."  (ECF No. 325 at 4.)  Nonetheless, the Court will not speculate as to the manner in which Movants may attempt to claim any funds to which they believe they are entitled or whether they are entitled to anything at all.[7]

---

("Movants trust and believe that this Court is well suited and  qualified to analyze seven choice of law provisions and three, largely identical, state "Slayer laws," determine that Dr. Rudolph is, and was, disqualified from receiving the life insurance proceeds that rightfully belong to Movants, and order that restitution properly be paid to them.")

[6] Additionally, the Government points out in another related brief that "Defendant's actions prevented the insurance companies from filing civil interpleader actions at the time that would have sorted out precisely this question."  (ECF No. 323 at 3.)

The Government highlights yet another problem with simply giving the money to Movants, which is that the relinquishment of all of Rudolph's assets to Movants is "potentially fraught with additional legal implications, such as fraudulent conveyance and potential preference of creditors should [Rudolph] declare bankruptcy."  (ECF No. 323 at 4 n.1.)

[7] The Government emphasizes that "it isn't just restitution of the life insurance proceeds

Rather, "speculation that the insurance companies would have paid the life insurance proceeds to the adult children 'if' they had filed a claim does not create a right to be heard as crime victims of Rudolph's mail fraud." (*Id.* at 4 n.2.) Because Movants have not suffered a loss directly or proximately caused by Rudolph's mail fraud, they are not the victims of Count 2.[8]

### III. CONCLUSION

For the reasons explained above, the Court ORDERS that Movants' Motion for Leave to File Their Response to Government's Motion for Mandatory Restitution and Forfeiture (ECF No. 319) is DENIED. The Court will proceed with Rudolph's sentencing hearing on June 21, 2023 (ECF No. 327), and Movants will not be recognized as victims at that proceeding in connection with Count 2, and their submissions will not be

---

the adult children would be seeking if the Court declared them crime victims for purposes of Count 2. As noted in their proposed response they would also be seeking an Order for a return of all the property sought to be forfeited to the United States that the Defendant acquired with the life insurance proceeds. (Docket # 319-1, p. 13). Significantly, there is a bar on intervention for third parties to interfere or object to the entry of a Preliminary Order of Forfeiture. *See* U.S.C. § 853(k), as incorporated by 28 U.S.C. § 2461(c); *United States v. Cox*, 575 F.3d 352, 358 (4th Cir. 2009) ("Third parties claiming an interest in the property have no right to intervene in the criminal proceeding or to receive notice of the forfeiture proceedings before the entry of a preliminary order of forfeiture.")." (ECF No. 325 at 5 n.3.) The Court sees Movants' position as yet another reason to deny the Motion.

[8] At this juncture, Movants are not trying to appeal Rudolph's sentence, which has not yet been imposed. (ECF No. 329 at 9.) Nevertheless, numerous circuit courts have addressed that related issue in connection with the CVRA, which the Court finds noteworthy. *Cf. United States v. Hunter,* 548 F.3d 1309, 1311–12 (10th Cir. 2008) (crime victims, as non-parties to the criminal action, lack standing to appeal the defendant's sentence); *United States v. Stoerr*, 695 F.3d 271, 277 (3d Cir. 2012) (holding that "a non-party lacks standing to appeal a restitution order, because a non-party lacks a judicially cognizable interest in a criminal defendant's sentence. . . . Although a restitution order may resemble a civil judgment in the sense that it compensates a private party, it remains criminal rather than civil in nature") (citations and quotations omitted); *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1306 (11th Cir. 2012) ("The CVRA never uses the word "intervene." *See* 18 U.S.C. § 3771. From this it follows that the statute does not expressly authorize intervention by crime victims."); *Brandt v. Gooding*, 636 F.3d 124, 136 (4th Cir. 2011) (holding that the CVRA's plain language does not permit intervention).

7

considered by the Court in connection with sentencing, restitution, or forfeiture in connection with Count 2.

Dated this 20th day of April, 2023.

BY THE COURT:

William J. Martínez
Senior United States District Judge