# EXHIBIT A

 **Ameritas.**   5900 O Street
Lincoln, NE 68510

**Client Service Office**

📞 **800-319-6901**
**Fax:** 513-595-2218

✉ PO Box 40888
Cincinnati, OH 45240

**Insured:** Bianca T Rudolph
**Policy Number:** T00017578A

*We* will pay the death benefit proceeds to the beneficiary when *we* receive satisfactory proof of death of the *insured* while this policy is in force, subject to the terms of this policy.

**LOOK AT THE APPLICATION FORMS.** This policy is issued based on payment of the initial premium and the answers in the application (see copy attached). If all answers are not true and complete, this policy may be affected. If any past medical history has been omitted, please notify *us* within 10 days from the date this policy is delivered to *you*.

**PLEASE READ THIS POLICY CAREFULLY.** This policy is a legal contract between *you* and Ameritas Life Insurance Corp.

**20-DAY RIGHT TO EXAMINE THIS POLICY.** It is important to *us* that *you* are satisfied with this policy. *You* have 20 days to review this policy after *you* receive it. If this policy is a replacement for an existing policy *you* have 30 days for an external replacement or 45 days for an internal replacement to review this policy after *you* receive it. If *you* are not satisfied, *you* may send it back to *us* or give it to *our* agent. In such case, this policy will be void from the beginning. *We* will refund the premiums paid within 10 days after this policy is returned.

AMERITAS LIFE INSURANCE CORP.

*JoAnn M Martin*                    *Robert John M Lawler*

President                                   Secretary

Renewable Term Life Policy with a Change of Premium Provision
Premiums Payable as Stated
Premiums are Subject to Change
Convertible
Nonparticipating

www.ameritas.com

3011 PA

# TABLE OF CONTENTS

**POLICY SCHEDULE** . . . . . . . . . . . . . . . . . . 3

**DEFINITIONS** . . . . . . . . . . . . . . . . . . 4

**OWNERSHIP** . . . . . . . . . . . . . . . . . . 4

**BENEFICIARY** . . . . . . . . . . . . . . . . . . 4

**DEATH BENEFIT** . . . . . . . . . . . . . . . . . 5

**PREMIUMS** . . . . . . . . . . . . . . . . . . 5
    Payment of Premium . . . . . . . . . . . . . . . 5
    Premium Changes . . . . . . . . . . . . . . . 5
    Grace Period . . . . . . . . . . . . . . . . 6
    Nonpayment of Premium . . . . . . . . . . . . . 6
    Premium Refund at Death . . . . . . . . . . . . . 6

**RENEWAL** . . . . . . . . . . . . . . . . . . 6
    Renewal Privilege . . . . . . . . . . . . . . . 6
    Automatic Renewal . . . . . . . . . . . . . . 6

**CONVERSION** . . . . . . . . . . . . . . . . . 6
    Conversion Privilege . . . . . . . . . . . . . . 6
    Attained Age Conversion . . . . . . . . . . . . . 7
    Riders . . . . . . . . . . . . . . . . . 7
    Extended Conversion Privilege . . . . . . . . . . . 7

**GENERAL PROVISIONS** . . . . . . . . . . . . . . 7
    Entire Contract . . . . . . . . . . . . . . . 7
    Nonparticipating Policy . . . . . . . . . . . . . 7
    Reliance . . . . . . . . . . . . . . . . 7
    Incontestability . . . . . . . . . . . . . . . 7
    Suicide . . . . . . . . . . . . . . . . . 7
    Misstatement of Age or Gender . . . . . . . . . . . 7
    Assignment . . . . . . . . . . . . . . . . 8
    Reinstatement . . . . . . . . . . . . . . . 8
    Conformity with Laws . . . . . . . . . . . . . . 8

## POLICY SCHEDULE

| | |
|---|---|
| **Policy Number:** | T00017578A |
| **Insured:** | Bianca T Rudolph |
| **Issue Age and Gender:** | 54, Female |
| **Owner:** | Lawrence P Rudolph |
| **Policy Date:** | June 4, 2014 |
| **Issue Date:** | June 4, 2014 |
| **Expiration Date:** | June 4, 2060 |
| **Final Conversion Date:** | June 4, 2036 |
| **Premium Class:** | Standard Nontobacco |
| **Class Upon Conversion:** | Standard Nontobacco |
| **Initial Term Period:** | 20 Years |

| Plan of Insurance | Benefit Amount | First Year Annual Premium |
|---|---|---|
| Renewable Term | $1,000,000.00 | $3,880.00 |

| **First Premium Payment Interval:** | Semiannual | $1,979.00 |
|---|---|---|

| Premium Frequency | Modal Premium | Cumulative Annual Premium |
|---|---|---|
| Annual | $3,880.00 | $3,880.00 |
| SemiAnnual | $1,979.00 | $3,958.00 |
| Quarterly | $1,008.70 | $4,034.80 |
| Monthly | $333.70 | $4,004.40 |

Premiums Years Payable

$ 3,880.00  Years 1 through 20

$72,920.00   * Years 21 and thereafter for life

* Subject to change in accordance with the premium change provision

3011 PA 20                                              3

This is a renewable term life insurance policy with premiums payable as shown on the policy schedule. *We* will pay the death benefit proceeds to the beneficiary if the *insured* dies while this policy is in force, subject to the terms of this policy.

## DEFINITIONS

(Defined terms appear in italics throughout this policy.)

**ATTAINED AGE.** Means the *issue age* plus the number of completed policy years.

**CONVERSION DATE.** Means the date *we* accept the application for conversion accompanied by the first premium.

**INSURED.** Means the person shown on the policy schedule upon whose life this policy is issued.

**ISSUE AGE.** Means the *insured's* age as of the birthday nearest to the *policy date*.

**ISSUE DATE.** Means the date on which the suicide and incontestability periods begin. If *we* have received the initial premium from *you*, the *issue date* will also be the date when *you* have life insurance coverage with *us*. If *we* have not received the initial premium from *you*, *you* WILL NOT have coverage until the date on which *we* receive the initial premium from *you*.

**POLICY DATE.** Means the date from which policy months, years and anniversaries are measured. The *policy date* will be determined by *us* unless *you* request a different *policy date* that *we* approve. If the *issue date* is after the *policy date* or *we* have not received the initial premium from *you*, *you* WILL NOT have life insurance coverage on the *policy date*.

**WE, US, OUR.** Means Ameritas Life Insurance Corp.

**WRITTEN NOTICE.** Means information *we* have received at the address(es) shown on the first page of this policy which is written, is signed by *you*, and is acceptable to *us*.

**YOU, YOUR.** Means the owner as shown on the policy schedule unless changed. The *insured* may or may not be the *owner*.

## OWNERSHIP

While the *insured* is living, *you* have all rights in this policy. *Your* rights will be subject to any assignment, and to the rights of any irrevocable beneficiary. If *you* die before the *insured*, the successor owner named in the application is the new owner. If there is no successor owner, then *your* estate becomes the new owner.

A change of owner may be made at any time by *written notice*. It will take effect on the date *we* receive *written notice*. Unless there are no surviving primary or contingent beneficiaries, a change of owner does not change the beneficiary.

## BENEFICIARY

The beneficiary will receive the death benefit proceeds when the *insured* dies. The primary and any contingent beneficiaries are named in the application. If no primary beneficiary is living when the *insured* dies, *we* will pay to the contingent beneficiary. If no contingent beneficiary is living when the *insured* dies, *we* will pay *you* or *your* estate.

3011 PA                                                    4

Unless the beneficiary designation provides otherwise, *we* will follow these rules:

(1) *We* will pay equal shares when more than one beneficiary of the same class is to share the funds.
(2) No revocable beneficiary has rights in this policy until the *insured* dies.
(3) An irrevocable beneficiary cannot be changed without his or her consent.
(4) The interest of any beneficiary is subject to the rights of any assignee shown on *our* records.
(5) When beneficiaries are not shown by name (such as "children"), *we* may find who they are from sworn statements and not wait for court records.

*You* may change the beneficiary at any time while the *insured* is living by *written notice*. *We* must approve any change. If approved, it will take effect on the date the *written notice* was signed by *you*. *We* will not be liable for any payments *we* make or actions *we* take before the change is approved.

Unless otherwise provided, if any beneficiary dies within 30 days after the *insured* dies as the result of a common disaster, *we* will pay the death benefit proceeds as if that beneficiary died first.

## DEATH BENEFIT

Death benefit proceeds will equal:

(1) the amount of insurance in force at death; plus
(2) any additional life insurance proceeds provided by riders; plus
(3) any premium refund due; minus
(4) any unpaid premium, if death occurs during the grace period.

*We* will pay the death benefit proceeds in a lump sum as soon as *we* receive satisfactory proof that the *insured* died while this policy was in force, and other proof that *we* may require in order to investigate the claim. *We* will include interest from the *insured's* date of death to the payment date. The rate will not be less than required by law. Full payment of the death benefit proceeds to the beneficiary discharges *us* from any and all claims.

## PREMIUMS

**PAYMENT OF PREMIUM.** Premiums are payable on or before their due dates. Premiums and premium due dates are stated on the policy schedule. The first premium is due on the *policy date*. Premium payments may be made to the address(es) shown on the first page of this policy or to such other place as *we* may designate. A receipt signed by *our* President or Secretary will be provided upon request.

Premiums may be paid annually, semiannually or quarterly at the rates that are published by *us* and in effect on the *issue date*. Premiums may be paid at other intervals approved by *us*. Premiums may not be less than $10. *You* may request a change in premium payment interval by *written notice*.

**PREMIUM CHANGES.** The guaranteed maximum premiums are shown on the policy schedule. Premiums charged at the time of renewal will not exceed the guaranteed maximum premium.

Premiums are based on *our* expectations regarding such factors as mortality, investment earnings, persistency and expenses. Any change in the premium will be based on a re-evaluation of these factors. Any change in premiums will be on a uniform basis for *insureds* of the same *issue age*, gender, and premium class, whose policies have the same initial term period, amount of insurance and length of time in force. *We* will not change the premiums with respect to any changes in the *insured's* health, occupation or other risk factors after this policy takes affect. Premiums for riders may not be changed, except based on duration.

Any change in the premium schedule will be determined in accordance with the procedures and standards on file with the Department of Insurance of *your* state. Premium schedules for policies in force shall be reviewed whenever the premiums for new issues are changed, but not more often than annually nor less often than once each five years to determine whether premium changes should be made. Notification of premium changes will be sent to *you* at the last known address at least 15 days prior to the effective date of any changes in premium rates.

**GRACE PERIOD.** After the first premium, a 31-day grace period is allowed for premiums not paid on or before due dates. Insurance will continue during the grace period; however, if the *insured* dies during the grace period, the premium due will be subtracted from the death benefit.

**NONPAYMENT OF PREMIUM.** If a premium is not paid by the end of the grace period, the policy will lapse as of the premium due date.

**PREMIUM REFUND AT DEATH.** Unless otherwise provided, the part of any premium paid for the period after the policy month in which the *insured's* death occurs will be included in the death benefit.

# RENEWAL

**RENEWAL PRIVILEGE.** At the end of any term period, but prior to the expiration date, this policy may be renewed for an additional term period if:

(1)  no premium is in default and this policy is in force on that date; and
(2)  the renewal premium is paid within the grace period.

However, in no event will this policy continue in force beyond the expiration date. The initial term period, expiration date and renewal premiums are shown on the policy schedule. Additional one-year term periods begin at the end of the initial term period. The last one-year term period ends on the expiration date.

**AUTOMATIC RENEWAL.** This policy will be renewed and premiums waived if the *insured* is eligible for benefits under a Waiver of Premium Rider attached to this policy. However, in no event will this policy continue in force beyond the expiration date.

# CONVERSION

**CONVERSION PRIVILEGE.** This policy may be converted, without evidence of insurability, to a new single life policy on the life of the *insured* if:

(1)  no premium is in default and this policy is in force on that date; and
(2)  *we* receive a written application before the final *conversion date* shown on the policy schedule; and
(3)  the *insured* is not disabled and eligible for benefits under a Waiver of Premium Rider which is part of the policy.

The new policy may be any permanent plan of insurance made available by *us* for such purpose at the time of conversion. It will be of the same class of risk as this policy if such class exists. If not, the class of risk of the new policy will be a similar class of risk made available by *us* for this purpose. The class of risk of the new policy to which this policy will convert is shown on the policy schedule. The amount of the new policy may not be greater than the amount of insurance under this policy on the *conversion date*.

**ATTAINED AGE CONVERSION.** The conversion may be made at any time before the final *conversion date* shown on the policy schedule. The *policy date* of the new policy will be the *conversion date*. The premium rate for the new policy will be *our* then published rate at the *attained age* of the *insured*.

**RIDERS.** Waiver of Premium and Accidental Death Benefit riders may be issued with the new policy only with evidence of insurability and *our* consent. However, if this policy contains an Accidental Death Benefit Rider, such a rider may be included in the new policy without evidence of insurability for a conversion made before *attained age* 55. Also, if this policy contains a Waiver of Premium Rider, such a rider may be included in the new policy without evidence of insurability for a conversion made before *attained age* 55. However, the *insured* must not be totally disabled on the date the application for conversion is made.

**EXTENDED CONVERSION PRIVILEGE.** If disability benefits are being granted before *attained age* 60 under a Waiver of Premium Rider which is part of this policy and the disability continues until the final *conversion date*, waiver of premium benefits will continue to the date disability stops. The conversion period will extend for 180 days after the date disability stops, but in no case past the expiration date of this policy.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** This policy is a legal contract that *you* have entered into with *us*. The entire contract consists of:

(1) this policy;
(2) any riders;
(3) any endorsements;
(4) the attached copy of the application, and any amendments or supplemental applications; and
(5) the applicable policy schedule(s).

Any change in the contract must be written and signed by *our* President, or a Vice President, or the Secretary, or the Assistant Secretary. No one else is authorized to bind *us*.

Statements made in the application for issuance or reinstatement are representations and not warranties. No such statements will be used in defense of a claim under this policy unless contained in a written application and unless a copy of such statement is part of this policy.

**NONPARTICIPATING POLICY.** This policy is nonparticipating. No dividends will be paid under this policy.

**RELIANCE.** *We* have issued this policy based on the answers in the application and supplemental applications. *We* have assumed all such answers to be true and complete. If any are not, *we* may, subject to the Incontestability provision, have the right to void this policy and send back all premiums paid.

**INCONTESTABILITY.** *We* will not contest this policy after it has been in force while the *insured* is alive for two years from the *issue date;* thereafter, *we* may only contest the policy for nonpayment of premiums. If this policy is reinstated, the contestable period will start over again beginning on the reinstatement date, but only for statements made in the application for reinstatement. Riders to this policy may have separate incontestability provisions.

**SUICIDE.** For the first two full years from the *issue date*, *we* will not pay the death benefit if the *insured* commits suicide (while sane or insane). *We* will void this policy and give back the premiums paid. Riders to this policy may have separate suicide provisions.

**MISSTATEMENT OF AGE OR GENDER.** If the *insured's* age or gender has been misstated on the application, the amount payable will be that amount which the premiums paid would have purchased at the correct age and gender.

**ASSIGNMENT.** *You* may assign this policy by giving *written notice.* *We* will not be responsible for the validity of an assignment. *We* will not be liable for any payments *we* make or actions *we* take before *we* receive *written notice* of an assignment.

**REINSTATEMENT.** Within five years after *your* policy terminates, *you* may put this policy back in force by *written notice* to *us* if:

(1) the *insured* provides *us* with evidence of insurability;
(2) *you* pay all overdue premiums, with interest at the rate of 3% compounded annually from the due date of each premium;
(3) the *insured* is alive on the date of reinstatement.

However, in no event will this policy be reinstated after the expiration date shown on the policy schedule.

**CONFORMITY WITH LAWS.** This policy is subject to the laws of the state where the application is signed.

# UNIFI
**Companies**

## CHECK ALL COMPANIES THAT APPLY:

1010
# Application for Insurance
**Personal Information**

☐ **Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

☒ **Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

☐ **The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

**1. Proposed Insured (One):**

a) Name: _DIANCA T RUDOLPH_

b) Date of Birth: _12-04-57_   c) Sex: ☐ Male ☒ Female

d) Place of Birth: _PA_

e) Social Security/Tax ID No.: _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_

f) Driver's License or other Government issued picture ID: _PA_ State: _PA_ _18,800 713_

g) Home Address: _336 LAKEWOOD ROAD_
City _Greensburg_ State: _PA_ Zip: _15601_

h) Years at this Address: _23 yrs_

i) Tel. (Home): _724-832-2408_
(Business): _724-836-1777_

Fax: _____

E-mail: _____

Best time to call: _7PM_ at: ☐ Business ☒ Home

In the event you are not available when our interviewer calls, may we speak with your spouse? ☒ Yes ☐ No

j) Residency Status: ☒ U.S. Resident ☐ Other: _____

k) Are you a U.S. Citizen: ☒ Yes ☐ No If "No," complete Foreign National form UN 0918 and provide the following:

Citizenship: _____

Visa Type: _____ Visa #: _____

l) Employer Name: _THREE RIVERS DENTAL_
Address: _121 DONOHUE ROAD_
City: _Greensburg_ State: _PA_ Zip: _15601_

m) Occupation: _Manager_ Years: _5_

n) Duties: _Manages office_

**2. Owner Information (One): (Complete only if Owner is other than Proposed Insured.)**

a) ☒ Individual  b) ☐ Trust (provide copy)  c) ☐ Partnership

d) ☐ Corporation: County of Incorporation: _____

e) Full Name: _Lawrence P Rudolph_

f) Relationship to Proposed Insured(s): _Husband_

g) Trustee(s) Name: _____

h) Date of Birth or Date of Trust: _01-07-1955_

i) Social Security/Tax ID No.: _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_

j) Driver's License or other Government issued picture ID: _15 197 171_ State: _PA_

k) Address: _336 LAKEWOOD ROAD_
City: _Greensburg_ State: _PA_ Zip: _15601_

l) Tel. (Home): _724-832-2408_ (Business): _724-836-1771_
Fax: _____ E-mail: _____

m) Residency Status: ☒ U.S. Resident ☐ Other: _____

n) Are you a U.S. Citizen: ☒ Yes ☐ No If "No," complete Foreign National form UN 0918 and provide the following:

Citizenship: _____

Visa Type: _____ Visa #: _____

o) Multiple Ownership (indicate type):
☐ Joint with Survivorship
☐ Tenants in Common

p) Successor Owner:
Name: _____
Social Security/Tax ID No.: _____

**3. Beneficiary Information:** (Subject to change by Owner.)

a) Primary Beneficiary: _LAWRENCE P Rudolph_

Address: _336 LAKEWOOD ROAD_
City: _Greensburg_ State: _PA_ Zip: _15601_
Relationship to Proposed Insured: _Husband_
Social Security/Tax ID: _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_
Date of Birth or Date of Trust: _01-07-55_

b) Contingent Beneficiary: _ANA BIANCA RUDOLPH (Daughter)_ _JULIAN L. RUDOLPH (son) 50%_
Address: _336 LAKEWOOD ROAD_
City: _Greensburg_ State: _PA_ Zip: _15601_
Relationship to Proposed Insured: _Daughter_   _Son_
Social Security/Tax ID: _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_  _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_
Date of Birth or Date of Trust: _06-09-86_  _06-05-90_

50%

**UN** 2550 PI-A

Edition: 10/2007

**UNIFI®**

*Companies*

**Ameritas Life Insurance Corp.**
P.O. Box 40888 Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352
**(Client Service Office)**

## Universal Life/Traditional Life
### Policy Details

1. **Universal Life:**
   a) Specified Amount *(base only)*: $ _____
      Plan of Insurance: _____
   b) Death Benefit Option:
      ☐ Option A *(Specified Amount)*
      ☐ Option B *(Specified Amount plus Account Value)*
      ☐ Option C *(Return of Premium)*
   c) Life Insurance Qualification Test:
      ☐ GPT *(Guideline Premium Test)*
      ☐ CVAT *(Cash Value Accumulation Test)*
   d) Planned Periodic Premium *(modal)*: $ _____
      Additional First-Year Premium *(lump-sum deposits)*: $ _____
   e) Single Life Supplementary Benefits:
      ☐ Accidental Death Benefit Rider: $ _____
      ☐ Accounting Benefit Rider: $ _____
      ☐ Children's Insurance Rider: $ _____
      ☐ Guaranteed Insurability Rider: $ _____
      ☐ Scheduled Increase Rider _____ %
      ☐ Supplemental Coverage Rider: $ _____
      ☐ Term Insurance Rider: $ _____
      ☐ Total Disability Benefit Rider: $ _____
      ☐ Waiver of Monthly Deduction Rider
      ☐ Other: _____
   f) Survivorship Supplementary Benefits:
      ☐ Estate Protection Rider
      ☐ Policy Split Rider
      ☐ Term Insurance Rider (Insured One)
         ☐ To Age: _____  ☐ Amount: $ _____
      ☐ Term Insurance Rider (Insured Two)
         ☐ To Age: _____  ☐ Amount: $ _____
      ☐ Total Disability Benefit Rider (Insured One)
         Amount: $ _____
      ☐ Total Disability Benefit Rider (Insured Two)
         Amount: $ _____
      ☐ Waiver of Monthly Deduction Rider (Insured One)
      ☐ Waiver of Monthly Deduction Rider (Insured Two)
      ☐ Other: _____
   g) Indexed UL Account Allocations:
      _____ % Fixed Account: a current interest rate.
      _____ % Capped Participation Account: a 100% participation
         rate on a limited percentage increase in the S & P Index.
      _____ % Uncapped Participation Account: a lower participation
         rate on unlimited percentage increases in the S & P Index.
      **100** % Total

2. **Term Life:**
   a) Specified Amount: $ *1,000,000*
   b) Plan of Insurance:
      ☐ Term 1   ☐ Term 10   ☐ Term 15
      ☒ Term 20  ☐ Term 30   ☐ Other: _____

2. **Term Life (continued):**
   c) Supplementary Benefits:
      ☐ Accidental Death Benefit Rider: $ _____
      ☐ Children's Insurance Rider $ _____
      ☐ Waiver of Premium Rider
      ☐ Other: _____

3. **Whole Life:**
   a) Specified Amount: $ _____
      Plan of Insurance: _____
   b) Dividend Option:
      ☐ Paid-Up Additions
      ☐ Cash
      ☐ Accumulate at Interest
      ☐ Reduce Premium *(not on monthly modes)*
      ☐ One-Year Term
      ☐ Other: _____
   c) Nonforfeiture Option:
      ☐ Extended Term Insurance
      ☐ Reduce Paid-Up
      ☐ Automatic Premium Loan
   d) Supplementary Benefits:
      ☐ Accidental Death Benefit Rider: $ _____
      ☐ Children's Insurance Rider: $ _____
      ☐ Guaranteed Insurability Rider: $ _____
      ☐ Level Term Rider: $ _____
         ☐ 10 yr  ☐ 15 yr  ☐ 20 yr  ☐ 30 yr
      ☐ One-Year Term Rider: $ _____
      ☐ Paid-Up Rider:
         Annual Premium: $ _____
         Single Premium: $ _____
      ☐ Term Paid-Up Rider (TPL): $ _____
      ☐ Total Disability Benefit Rider
      ☐ Waiver of Premium Rider
      ☐ Other: _____

4. **Premium:**
   a) Send Premium Notices to: ☒ Residence  ☐ Business
      ☒ Owner   ☐ Other: *(Specify relationship and address)*
      ☐ Insured   _____
      _____
   b) Premium Frequency:
      ☐ Annual  ☐ Electronic Fund Transfer *(complete EFT form)*
      ☒ Semi-Annual  ☐ Salary Allotment
      ☐ Quarterly  ☐ Other: _____
   c) Has any premium been given in connection with this
      application?  ☐ Yes  ☒ No *(If "Yes," state amount paid
      for which conditional receipt has been given; the terms of
      which are hereby agreed to.)* Amount: $ _____
   d) Association Discount:
      ☐ Yes  ☐ No *(If "Yes," provide IPN.)*
      Association IPN: _____

# UNIFI
Companies™

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

## Universal Life / Traditional Life / VUL
### Financial Information

**1. Existing and Pending Insurance - Proposed Insured(s)**

|  | Proposed Insured One | Proposed Insured Two |
|---|---|---|
| a) Total insurance in force on the Proposed Insured(s). | $2,500,000 | $ |
| b) Total insurance currently pending with all companies, including this application. | $1,000,000 | $ |
| c) Of the above pending amount, how much do you intend to accept? | $1,000,000 | $ |

d) Provide information for each policy in force on the Proposed Insured(s). *(Attach additional page if necessary.)*
Proposed Insured: ☒ One ☐ Two
Company: TRANSAMERICA
Group, Personal or Business: PERSONAL
Issue Date: 2010
To Remain in Force? ☒ Yes ☐ No
Face Amount: 500,000

Proposed insured: ☒ One ☐ Two
Company: TRANSAMERICA
Group, Personal or Business: PERSONAL
Issue Date: 2004
To Remain in Force? ☒ Yes ☐ No
Face Amount: 500,000

e) Have you ever sold, assigned, or pledged as collateral an existing life insurance policy, or an interest in a life insurance policy?
☐ Yes ☒ No *(If "Yes," give details.)* _____

**2. Existing Insurance (Replacement)**

a) Do you have any existing life insurance policies or annuity contracts? ☒ Yes ☐ No (If "Yes," complete a Replacement Notice if required by State Law.)

b) Will any existing life insurance policy or annuity contract with this or any other company be discontinued, reduced, changed, or replaced if insurance now applied for is issued?
☐ Yes ☒ No *(If "Yes," give details.)*
Company: _____ Policy No.: _____
Amount: $ _____ Date: _____
Type of Policy: _____

**3. Insurance Producer's Replacement Statement:**

a) To the best of your knowledge, does the applicant have any existing insurance policies or contracts? ☒ Yes ☐ No

b) To the best of your knowledge, does the policy applied for involve replacement, in whole or in part, of any existing life insurance, annuity, disability income or overhead expense insurance, or any other accident and sickness insurance?
☐ Yes ☒ No *(If "Yes," give details.)*
Company: _____ Policy No.: _____

c) Will a policy loan on one or more policies be utilized to pay any portion of the initial premium or deposit on the policy applied for?
☐ Yes ☒ No *(If "Yes," give policy number(s) involved.)*

**4. Statement of Intent:**

a) Is there, or will there be, any agreement or understanding that provides for a party, other than the Owner, to obtain any interest in any policy issued on the life of the proposed insured as a result of this application? ☐ Yes ☒ No

b) Will the premiums be financed through a loan? ☐ Yes ☒ No *(If "Yes," list: lender, duration of loan, and collateral required.)*

c) Will any entity other than a life insurance company be medically evaluating the proposed insured either to obtain financing or to determine life expectancy? ☐ Yes ☒ No *(If "Yes," give details.)*

d) Will the policy, if issued, be placed in a trust? ☐ Yes ☒ No *(If "Yes," give details and provide copy of trust.)* _____

**5. Financial Questions:**

|  | Proposed Insured One | Proposed Insured Two |
|---|---|---|
| a) Gross annual earned income: *(salary, commissions, bonuses, etc.)* | $450,000 | $ |
| b) Gross annual unearned income: *(dividend, interest, net real estate income, etc.)* | $ 0 | $ |
| c) Household net worth: | $ 11 MILLION | |

d) In the last 5 years, has either of the Proposed Insured(s) or the business had any major financial problems *(bankruptcy, etc.)*?
☐ Yes ☒ No *(If "Yes," give details.)*

e) If Owner, other than the proposed insured, is an individual:
Net Worth: $ 11 MILLION
Net Annual Income: $ 250,000
Total Family Income: $ 295,000

**6. Source of Premiums:** *(Check one or more.)*
☒ Current Income ☐ Cash Savings ☐ Employer
☐ Securities ☐ Relative ☐ Premium Finance
☐ Sale of personal property or real estate.
☐ Insurance/Annuities (Loans/Withdrawals).
☐ 1035 Exchange
☐ Insurance or annuity maturity value or death benefit.
☐ Rollover/Transfer of 401(k) or Pension Funds.
☐ Other: _____

**7. Business Insurance:** *(Complete for ALL Business Owned Insurance.)*

|  | Current Year | Previous Year |
|---|---|---|
| a) Assets: | $ | $ |
| b) Liabilities: | $ | $ |
| c) Gross Sales: | $ | $ |
| d) Net Income after taxes: | $ | $ |
| e) Fair Market Value of the business: | $ | $ |

f) What percentage of the business is owned by Proposed Insured(s)? _____ %

g) Are other partners / owners / executives being insured?
☐ Yes ☐ No *(If "Yes," give details.)*

UN 2550 FI PA

Edition: 10/2007

# UNIFI
Companies™

## Application for Insurance
### Lifestyle Questionnaire

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
**800**-745-1112 Fax 402-467-7335
(**C**lient Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central** Life Insurance Company
P.O. **Box** 40888, Cincinnati, OH 45240
**800-319-6901, Fax** 513-595-2352

**Lifestyle Questions:** *(Please provide details for "Yes" answers.)*

**Has** any person proposed for coverage:

1. Used tobacco or nicotine products in any form within the last five years? *(In Details, provide dates and type: cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches, gum, etc.)*  ☐ Yes ☒ No

2. Ever applied for insurance or reinstatement which has been: declined, postponed, rated, modified; or had any such insurance canceled or a renewal premium refused? (In Details, provide date, reason, and company name.)  ☐ Yes ☒ No

3. Ever received or claimed: indemnity, benefits, or a payment for any injury, sickness or impaired condition?  ☐ Yes ☒ No

4. Ever made any flights as: a pilot, student pilot, or crew member of any aircraft? *(If "Yes," complete Aviation Questionnaire.)*  ☐ Yes ☒ No

5. Been convicted of a moving traffic violation, had any traffic accidents, or had a driver's license revoked or suspended within the past five years?  ☐ Yes ☒ No

6. Been charged with, or convicted of, or currently awaiting trial on the violation of any criminal law?  ☐ Yes ☒ No

7. In the next year, any intention of traveling outside the U.S. or Canada or residing outside of the U.S.? *(If "Yes," complete Foreign Travel Questionnaire.)*  ☒ Yes ☐ No

8. Belong to or intend joining: any active or reserve military, naval, or aeronautic organization? *(If "Yes," complete Military Service Questionnaire.)*  ☐ Yes ☒ No

9. Engaged in or plan to engage in any form of the following: *(If "Yes," check all boxes below that apply and complete appropriate form(s).)*  ☐ Yes ☒ No

   ☐ Motorized Racing        ☐ Scuba diving
   ☐ Parachuting/Skydiving    ☐ Hang-gliding
   ☐ Ballooning               ☐ Mountain climbing
   ☐ Rodeo                    ☐ Competitive skiing
   ☐ Snowmobiling             ☐ Gliding
   ☐ Boat racing              ☐ Other: _____

**Proposed Insured One** - Details for any "Yes" answers to Lifestyle Questions: *(Indicate question number and timeframe.)*

7. See ATTACHED TRAVEL QUESTIONNAIRE

**Proposed Insured Two** - Details for any "Yes" answers to Lifestyle Questions: *(Indicate question number and timeframe.)*

**Any** person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

UN 2550 LQ

Edition: 10/2007

# UNIFI
Companies™

## Application for Insurance
### Health Questionnaire

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH  45240
800-319-6901, Fax 513-595-2352

Name of Proposed Insured: _Bianca Rudolph_

**Health Questions.** Please complete Details for "Yes" answers.

**1. a)** Height: _5, 4_  **b)** Weight: _170_
  **c)** Have you lost 10 lbs. or more in the past 12 months?  ☐ Yes ☒ No
  **d)** Have you gained 10 lbs. or more in the past 12 months? ☐ Yes ☒ No

**2** Have you ever been medically treated for or been diagnosed as having:
  **a)** Disorder of eyes, ears, nose, or throat?  ☐ Yes ☒ No
  **b)** Dizziness, vertigo, fainting, seizures, recurrent headache; speech defect, paralysis, or stroke?  ☐ Yes ☒ No
  **c)** Shortness of breath, bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder?  ☐ Yes ☒ No
  **d)** Chest pain, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels?  ☐ Yes ☒ No
  **e)** Jaundice, intestinal bleeding; ulcer, hernia, colitis, hepatitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver or gallbladder?  ☐ Yes ☒ No
  **f)** Sugar, albumin, blood or pus in urine; sexually transmitted disease; stone or other disorder of kidney or bladder?  ☐ Yes ☒ No
  **g)** Diabetes, thyroid, or other endocrine disorders?  ☐ Yes ☒ No
  **h)** Disorder of breasts, reproductive organs, or prostate?  ☐ Yes ☒ No
  **i)** Neuritis, arthritis, rheumatism, gout, or disorder of or injury to the bones, muscles, nerves, knees, wrists or other joints?  ☐ Yes ☒ No
  **j)** Disorder of skin, lymph glands, cyst, tumor or cancer?  ☐ Yes ☒ No
  **k)** Allergies, anemia, or other disorder of the blood?  ☒ Yes ☐ No
  **l)** Spinal, neck or back disorder or injury, including sprains, strains, or disc disorder?  ☐ Yes ☒ No
  **m)** Anxiety, depression, stress or other mental, nervous, psychiatric or emotional disorder?  ☐ Yes ☒ No
  **n)** Chronic fatigue, fibromyalgia, or Epstein-Barr virus?  ☐ Yes ☒ No
  **o)** C-section, miscarriage, or complication of pregnancy?  ☐ Yes ☒ No
  **p)** Any mental or physical disorder not listed above?  ☐ Yes ☒ No

**3.** Have you ever consulted a chiropractor?  ☐ Yes ☒ No
**4.** Are you currently pregnant?  ☐ Yes ☒ No
**5.** Other than noted above, have you within the past five years:
  **a)** Had a checkup, consultation, illness, injury, or surgery; been a patient in a hospital, clinic, sanatorium, or other medical facility; had an electrocardiogram, X-ray, or other diagnostic test?  ☒ Yes ☐ No
  **b)** Been advised by a licensed medical professional to have any diagnostic test, hospitalization, or surgery which was not completed?  ☐ Yes ☒ No

**6.** Within the past ten years, have you ever:
  **a)** Used marijuana, cocaine, barbiturates, tranquilizers, heroin, LSD, amphetamines, morphine, narcotics; or any other drug, except as legally prescribed by a physician?  ☐ Yes ☒ No
  **b)** Sought or received medical treatment or professional advice; or been arrested for the use of alcohol, cocaine, marijuana, narcotics or any other drug?  ☐ Yes ☒ No
  **c)** Consumed alcoholic beverages? If yes, specify extent? ☒ Yes ☐ No
  _Socially 2 glasses wine per week_

**7.** Have you been diagnosed by a licensed medical professional as having Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV)?  ☐ Yes ☒ No

**8.** Have any of your immediate family members (parents, brothers and sisters), died of or been diagnosed as having; coronary artery disease, diabetes, cancer, stroke or kidney disease, prior to age 60?  ☒ Yes ☐ No

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father: | | diabetes | 85 |
| Mother: | | Cancer | 55 |
| Brothers & Sisters: | | | |

**9. a)** Name and address of personal or attending doctor:
  _Mayo Clinic_
  _Scottsdale AZ_

  **b)** Telephone: ___
  **c)** Date last consulted: _Dec 2012_
  Reason and any medication/treatment given: _routine colonoscopy_

  **d)** List any medications (prescription or nonprescription) you are taking currently: _daily multivitamin_

---

For each "Yes" answer, give details. (Identify: question number, diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities. Attach additional Health Questionnaire page, UN 2550 HQ, if needed.)

_Diagnosed anemic in April 2011 due to heavy menstrual periods. Ablation surgery performed July 2011 to reduce monthly blood loss. Iron supplements taken until levels returned to normal no further treatment needed_

---

**UN 2550 HQ PA**                                   Edition:  10/2007

# UNIFI
Companies™

# Application for Insurance
## Agreement

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

## Agreement

The undersigned represent that their statements in this application and Part II, if such Part II is required by the companies listed above ("the Companies"), are true and complete to the best of their knowledge and belief. It is agreed that:

(a) the only statements to be considered as the basis of the policy are those contained in the application or in any amendment to the application;

(b) any prepayment made with this application will be subject to the provisions of the CONDITIONAL RECEIPT;

(c) if there is no prepayment made with this application, the policy will not take effect until:

(1) the first premium is paid during the lifetime of the proposed insured(s) and while his/her health and the facts and other conditions affecting their insurability remain as described in this application and Part II, if required; and

(2) the policy is delivered to the Owner;

(d) no one except the President, a Vice President, the Secretary, or an Assistant Secretary can make, alter or discharge contracts or waive any of the Companies' rights or requirements; and

(e) this application was signed and dated in the state indicated.

If applying for an indeterminate premium plan:

(a) the premium for such plan is guaranteed for the initial guarantee period, and after such period, the current annual premium is not guaranteed and may change; and

(b) the premium will never exceed the specified maximum.

Dated at: _Pittsburgh PA_    _02_    _16_    _2014_
City    State    Month    Day    Year

Print or Type Proposed Insured Name: _Bianca T Rudolph_

X _Bianca T Rudolph_
Signature of Proposed Insured.

Print or Type Name of Other Proposed Insured.

X
Signature of Other Proposed Insured (if other than policyholder and age 18 or older).

Print or Type Owner if not Proposed Insured. _Lawrence P Rudolph_

X _[signature]_
Signature of Owner if not Proposed Insured.

Print or Type Insurance Producer Name. _William M Gorman_    Producer No./Sit. Code. _AG00036573-04_

X _William M Gorman_    Producer State Lic. No. _280913_
Signature of Licensed Soliciting Producer.

Print or Type Insurance Producer Name.    Producer No./Sit. Code.

X
Signature of Licensed Soliciting Producer.    Producer State Lic. No.

Agency Name. _Pittsburgh Brokerage_    Agency No. _1351_

## Fraud Notice

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## Taxpayer Identification Number (TIN)

| Social Security Number | Employer Identification Number |
|---|---|
| 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 | |

Under penalties of perjury, I certify that:

1) The number shown on this form is my correct TIN (or I am waiting for a number to be issued to me); and

2) I am not subject to backup withholding either because: (a) I am exempt from backup withholding; (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me that I am no longer subject to backup withholding.

3) I am a U.S. Citizen or other U.S. Person (including a U.S. resident alien).

Cross out item (2) if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

X _[signature]_    _02-16-14_
Signature of Owner, Trustee/Employer    Date

2660 AG PA    Edition: 10/2007

1008

**UNIFI**
Companies

**Part II – Medical**

*Identified by Drivers license*
**PA** 18 900413

**CHECK THE COMPANY THAT APPLIES** (only check ONE company):

☐ Acacia Life Insurance Company
P.O. Box 81889, Lincoln, NE 68501
800-745-1112, Fax 402-467-7335
(Client Service Department)

☐ Ameritas Life Insurance Corp.
P.O. Box 81889, Lincoln, NE 68501
800-745-1112, Fax 402-467-7335

☒ The Union Central Life Insurance Company
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2218

| Proposed Insured: | BIANCA | T | RUDOLPH | Birth Date: | December 04 | 1959 |
|---|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | Month  Day | Year |

**Health Questions. Please complete Details for "Yes" answers.**

1. a. Height: _64 inch_  b. Weight: _173 lbs_
   c. Have you lost 10 lbs. or more in the past 12 months? ☐ Yes ☒ No
   d. Have you gained 10 lbs. or more in the past 12 months? ☐ Yes ☒ No
2. Have you ever been medically treated for or been diagnosed as having:
   a. Disorder of eyes, ears, nose, or throat? ☐ Yes ☒ No
   b. Dizziness, vertigo, fainting, seizures, recurrent headache; speech defect, paralysis, or stroke? ☐ Yes ☒ No
   c. Shortness of breath, bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? ☐ Yes ☒ No
   d. Chest pain, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ Yes ☒ No
   e. Jaundice, intestinal bleeding; ulcer, hernia, colitis, hepatitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver or gallbladder? ☐ Yes ☒ No
   f. Sugar, albumin, blood or pus in urine; sexually transmitted disease; stone or other disorder of kidney or bladder? ☐ Yes ☒ No
   g. Diabetes, thyroid, or other endocrine disorders? ☐ Yes ☒ No
   h. Disorder of breasts, reproductive organs, or prostate? ☒ Yes ☐ No
   i. Neuritis, arthritis, rheumatism, gout, or disorder of or injury to the bones, muscles, nerves, knees, wrists or other joints? ☐ Yes ☒ No
   j. Disorder of skin, lymph glands, cyst, tumor or cancer? ☐ Yes ☒ No
   k. Allergies, anemia or other disorder of the blood? ☐ Yes ☐ No
   l. Spinal, neck or back disorder or injury, including sprains, strains, or disc disorder? ☐ Yes ☒ No
   m. Anxiety, depression, stress or other mental, nervous, psychiatric or emotional disorder? ☐ Yes ☒ No
   n. Chronic fatigue, fibromyalgia, or Epstein-Barr virus? ☐ Yes ☒ No
   o. C-section, miscarriage, or complication of pregnancy? ☐ Yes ☒ No
   p. Any mental or physical disorder not listed above? ☐ Yes ☐ No
3. Have you ever consulted a chiropractor? ☐ Yes ☒ No
4. Are you currently pregnant? ☐ Yes ☒ No
5. Other than noted above, have you within the past five years:
   a. Had a checkup, consultation, illness, injury, or surgery; been a patient in a hospital, clinic, sanatorium, or other medical facility; had an electrocardiogram, X-ray, or other diagnostic test? ☒ Yes ☐ No
   b. Been advised by a licensed medical professional to have any diagnostic test, hospitalization, or surgery which was not completed? ☐ Yes ☒ No
6. Within the past ten years, have you ever:
   a. Used marijuana, cocaine, barbiturates, tranquilizers, heroin, LSD,

amphetamines, morphine, narcotics; or any other drug, except as legally prescribed by a physician? ☐ Yes ☒ No
b. Sought or received medical treatment or professional advice; or been arrested for the use of alcohol, cocaine, marijuana, narcotics or any other drug? ☐ Yes ☒ No
c. Consumed alcoholic beverages? If yes, specify extent. ☒ Yes ☐ No

7. Have you been diagnosed by a licensed medical professional as having Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV)? ☐ Yes ☒ No

8. Have any of your immediate family members (parents, brothers and sisters), died of or been diagnosed as having; coronary artery disease, diabetes, cancer, stroke or kidney disease, prior to age 60? ☒ Yes ☐ No

| | Age If Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father: | | Diabetic/Coronary artery Disease | 85 |
| Mother: | | Colon Cancer | 58 |

Brothers & Sisters _56 58 87_

9. a. Name and address of personal or attending physician: _Arizona_
   _Mayo clinic 13400 E Shea Blvd, Scottsdale AZ '85259_
   _Patient # 7 639308. + consult Brother in law occasing_
   b. Telephone: _Mayo clinic in Arizona 480-301 8000 pt Dr_
   c. Date last consulted: _December 2012 Dr_   _7639-308_
   Reason and any medication/treatment given:
   _Dec 2012 Colonoscopy Dr Backer Age Mayo Clinic Arizona_
   d. List any medications (prescription or nonprescription) you are taking currently:
   _womens multi-vitamins_

For each "Yes" answer, give details. (Identify: question number, diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities. Attach additional sheet if needed.)
_2H 1988 & 1999 removal of 2 benign ovarian cyst at_
_Magee Hospital pittsburgh Pa_
_- Uterine bleeding on 6/2012 had Ablasion surgery_
_at Mayo clinic in Arizona patient # 7639308_
_2K. anaemie due to excessive menstrual bleeding_
_5a. physical exam at mayo clinic 6/2012_
_- Gyn exam yearly Dr Michael Zuffretti Bethel Park_
_Pittsburg Pa '15102_

I, the undersigned, declare that the answers to the foregoing questions relate to the proposed insured, are complete and true as written to the best of my knowledge and belief, are correctly recorded, are made for the purpose of obtaining the insurance and any supplemental benefit applied for and shall form a part of any contract issued by the Companies on this application and the Medical application (UN 2550, et al.)

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

| Dated at: | Greensburg PA | 3 | 26 | 14 | Signature of Proposed Insured: X | Bianca Rudolph |
|---|---|---|---|---|---|---|
| | City | State | Month | Day | Year | |

| Witness: | L Makkari | Signature of Parent or Guardian: | |
|---|---|---|---|
| (Must be Examiner) | 03-26-14 | If Proposed Insured is under age 18 | |

UN 2598 PA                                                                 5/2008

  

| | | |
|---|---|---|
| **Ameritas.** | 5900 O Street<br>Lincoln, NE 68510 | **Customer Service**<br>800-745-1112<br>Fax: 402-467-7335<br>P.O. Box 81889<br>Lincoln, NE 68501 |

**Insured:** Bianca T Rudolph
**Policy Number:** U00013758A

*We* will pay the death benefit proceeds to the beneficiary when *we* receive satisfactory proof of death of the *insured* while this policy is in force, subject to the terms of this policy.

**LOOK AT THE APPLICATION FORMS.** This policy is issued based on payment of the initial premium and the answers in the application (see copy attached). If all answers are not true and complete, this policy may be affected. If any past medical history has been omitted, please notify *us* within ten (10) days from the date this policy is delivered to *you*.

**PLEASE READ THIS POLICY CAREFULLY.** This policy is a legal contract between *you* and Ameritas Life Insurance Corp.

**20-DAY RIGHT TO EXAMINE THIS POLICY.** It is important to *us* that *you* are satisfied with this policy. *You* have 20 days to review this policy after *you* receive it. If this policy is a replacement for an existing policy *you* have 30 days to review this policy after *you* receive it. If *you* are not satisfied, *you* may send it back to *us* or give it to *our* agent. In such case, this policy will be void from the beginning. *We* will refund the premiums paid minus partial withdrawals within 10 days after this policy is returned.

AMERITAS LIFE INSURANCE CORP.

JoAnn M Martin

President

Robert John H Lawless

Secretary

Flexible Premium Universal Life Insurance Policy
Nonparticipating

www.ameritas.com

3005 AZ

# TABLE OF CONTENTS

**POLICY SCHEDULE** . . . . . . . . . . . . . . . . . . . 3

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . 4

**OWNERSHIP** . . . . . . . . . . . . . . . . . . . . 5

**BENEFICIARY** . . . . . . . . . . . . . . . . . . . . 5

**DEATH BENEFIT** . . . . . . . . . . . . . . . . . . . 5
    Death Benefit Proceeds . . . . . . . . . . . . . . . . 5
    Specified Amount Changes . . . . . . . . . . . . . . . 6

**PREMIUMS** . . . . . . . . . . . . . . . . . . . . . 6

**ACCOUNT VALUE** . . . . . . . . . . . . . . . . . . . 6

**ACCESSING POLICY VALUES** . . . . . . . . . . . . . . . 7
    Loans . . . . . . . . . . . . . . . . . . . . . 7
    Partial Withdrawal . . . . . . . . . . . . . . . . . 7
    Cash Surrender . . . . . . . . . . . . . . . . . . 7

**POLICY FACTORS** . . . . . . . . . . . . . . . . . . . 8
    Monthly Deduction . . . . . . . . . . . . . . . . . 8
    Cost of Insurance . . . . . . . . . . . . . . . . . 8
    Specified Amount Charge . . . . . . . . . . . . . . . 8
    Interest Rate . . . . . . . . . . . . . . . . . . . 8
    Policy Cost Factors . . . . . . . . . . . . . . . . . 8

**KEEPING THE POLICY IN FORCE** . . . . . . . . . . . . . . 8
    Grace Period . . . . . . . . . . . . . . . . . . . 8
    Minimum No-Lapse Period . . . . . . . . . . . . . . . 9
    Reinstatement . . . . . . . . . . . . . . . . . . . 9

**GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . 9
    Entire Contract . . . . . . . . . . . . . . . . . . 9
    Nonparticipating Policy . . . . . . . . . . . . . . . 9
    Reliance . . . . . . . . . . . . . . . . . . . . . 9
    Incontestability . . . . . . . . . . . . . . . . . . 10
    Suicide . . . . . . . . . . . . . . . . . . . . . 10
    Policy Changes . . . . . . . . . . . . . . . . . . 10
    Annual Report . . . . . . . . . . . . . . . . . . . 10
    Illustrative Report . . . . . . . . . . . . . . . . . 10
    Termination . . . . . . . . . . . . . . . . . . . . 10
    Conformity with Laws . . . . . . . . . . . . . . . . 10
    Misstatement of Age or Gender . . . . . . . . . . . . . 10
    Assignment . . . . . . . . . . . . . . . . . . . . 10
    Computations . . . . . . . . . . . . . . . . . . . 10

## POLICY SCHEDULE

| | |
|---|---|
| **Policy Number:** | U00013758A |
| **Insured:** | Bianca T Rudolph |
| **Issue Age and Gender:** | 56, Female |
| **Owner:** | Lawrence P Rudolph |
| **Policy Date:** | May 27, 2016 |
| **Issue Date:** | July 8, 2016 |

| | |
|---|---|
| **Specified Amount:** | $750,000.00 |
| **Minimum Specified Amount:** | $100,000.00 |

| | |
|---|---|
| **Internal Revenue Code Life Insurance Qualification Test:** | Cash Value Accumulation Test |
| **Rate Class:** | PFD Nontobacco |
| **Basis of Values:** | 2001 CSO Female Nonsmoker Mortality Table, age nearest birthday |
| **Guaranteed Interest Rate:** | 3.00% Annually, 0.24663% Monthly |
| **Planned Periodic Premium:** | $1,137.61 |
| **Planned Premium Frequency:** | Quarterly |
| **Initial Premium:** | $1,137.61 |
| **Monthly Minimum No-Lapse Premium:** | $412.37 |
| **Minimum No-Lapse Period:** | 15 years from the *policy date* |

It is possible that coverage may expire prior to the death of the *insured* if premiums paid or interest credited is insufficient to continue coverage to such date.

:

## POLICY SCHEDULE

MAXIMUM MONTHLY COST OF INSURANCE RATES AND CORRIDOR FACTORS

| Attained Age | Maximum Cost of Insurance Rate | Corridor Factor | Attained Age | Maximum Cost of Insurance Rate | Corridor Factor |
|---|---|---|---|---|---|
| 56 | 0.43167 | 2.76 | 97 | 19.81583 | 1.10 |
| 57 | 0.47500 | 2.68 | 98 | 20.14083 | 1.08 |
| 58 | 0.52167 | 2.60 | 99 | 21.22833 | 1.04 |
| 59 | 0.56833 | 2.52 | 100 | 22.95500 | 1.01 |
| 60 | 0.61667 | 2.45 | 101 | 24.79583 | 1.01 |
| 61 | 0.66917 | 2.38 | 102 | 26.84917 | 1.01 |
| 62 | 0.72667 | 2.31 | 103 | 29.08667 | 1.01 |
| 63 | 0.78583 | 2.25 | 104 | 31.55000 | 1.01 |
| 64 | 0.85000 | 2.19 | 105 | 34.21333 | 1.01 |
| 65 | 0.92083 | 2.13 | 106 | 36.94333 | 1.01 |
| 66 | 0.99917 | 2.07 | 107 | 39.74000 | 1.01 |
| 67 | 1.08500 | 2.01 | 108 | 42.55333 | 1.01 |
| 68 | 1.18083 | 1.96 | 109 | 45.48333 | 1.01 |
| 69 | 1.28583 | 1.91 | 110 | 48.48000 | 1.01 |
| 70 | 1.40167 | 1.86 | 111 | 51.36000 | 1.01 |
| 71 | 1.53500 | 1.81 | 112 | 54.15333 | 1.01 |
| 72 | 1.68417 | 1.77 | 113 | 56.69667 | 1.01 |
| 73 | 1.84583 | 1.72 | 114 | 60.28167 | 1.01 |
| 74 | 2.02333 | 1.68 | 115 | 63.61667 | 1.01 |
| 75 | 2.22000 | 1.64 | 116 | 67.07667 | 1.01 |
| 76 | 2.43583 | 1.60 | 117 | 70.87000 | 1.01 |
| 77 | 2.67333 | 1.57 | 118 | 74.37000 | 1.01 |
| 78 | 2.93583 | 1.53 | 119 | 77.92583 | 1.01 |
| 79 | 3.21917 | 1.50 | 120 | 83.33333 | 1.01 |
| 80 | 3.53583 | 1.47 | 121+ | 00.00000 | 1.01 |
| 81 | 3.96583 | 1.44 | | | |
| 82 | 4.45083 | 1.41 | | | |
| 83 | 4.93417 | 1.38 | | | |
| 84 | 5.46833 | 1.36 | | | |
| 85 | 6.07000 | 1.33 | | | |
| 86 | 6.61583 | 1.31 | | | |
| 87 | 7.43750 | 1.29 | | | |
| 88 | 8.29583 | 1.27 | | | |
| 89 | 9.21083 | 1.25 | | | |
| 90 | 10.05417 | 1.23 | | | |
| 91 | 10.48083 | 1.22 | | | |
| 92 | 11.32000 | 1.20 | | | |
| 93 | 12.56500 | 1.18 | | | |
| 94 | 14.13667 | 1.16 | | | |
| 95 | 16.07667 | 1.14 | | | |
| 96 | 17.91917 | 1.12 | | | |

Note:   Cost of Insurance Rates are per $1,000 of *Net Amount at Risk*.

To comply with section 7702 of the Internal Revenue Code under the Cash Value Accumulation Test, the total death benefit for this policy will not be less than the *account value* multiplied by the applicable corridor factor above.

3005 AZ                                      3A

## POLICY SCHEDULE

### MAXIMUM EXPENSE CHARGES

(1) Premium Charge: 7.00% of each premium collected
(2) Monthly Administrative Charge: $7.00 per month
(3) Monthly Specified Amount Charge:

| Policy Year | Monthly Specified Amount Charge |
|---|---|
| 1 | $151.99 |
| 2 | $320.87 |
| 3 | $320.87 |
| 4 | $320.87 |
| 5 | $320.87 |
| 6 | $320.87 |
| 7 | $320.87 |
| 8 | $320.87 |
| 9 | $256.70 |
| 10 | $192.53 |
| 11 | $128.36 |
| 12 | $64.18 |
| 13 | $0.00 |
| 14 | $0.00 |
| 15 | $0.00 |
| 16 and thereafter | $0.00 |

### TABLE OF SURRENDER CHARGES

| Policy Year | Surrender Charge |
|---|---|
| 1 | $25,440.00 |
| 2 | $24,592.50 |
| 3 | $23,715.00 |
| 4 | $22,800.00 |
| 5 | $21,840.00 |
| 6 | $20,842.50 |
| 7 | $19,800.00 |
| 8 | $18,712.50 |
| 9 | $17,565.00 |
| 10 | $16,372.50 |
| 11 | $15,112.50 |
| 12 | $13,792.50 |
| 13 | $12,397.50 |
| 14 | $10,927.50 |
| 15 | $9,375.00 |
| 16 | $7,732.50 |
| 17 | $5,977.50 |
| 18 | $4,117.50 |
| 19 | $2,115.00 |
| 20 and thereafter | $0.00 |

In the event of an increase in the *specified amount*, the *surrender charges* and the monthly specified amount charge will increase. *You* will receive a revised policy schedule reflecting the increase.

3005 AZ                                    3B

## POLICY SCHEDULE

Minimum increase in *specified amount*:  $25,000

Minimum decrease in *specified amount*:  $1,000

Minimum partial withdrawal amount:  $100

Maximum partial withdrawal fee:  $50

Maximum *attained age* for an increase or reinstatement:  85

The maximum loan interest rate is 4.00%.  The maximum preferred loan interest is 3.50%.  The interest rate credited on any loaned portion of the *account value* will be 3.00%.  These interest rates are annual effective rates.

3005 AZ                                                3C

## POLICY SCHEDULE

| | |
|---|---|
| **Insured:** | Bianca T Rudolph |
| **Effective Date:** | July 8, 2016 |
| **Maximum Acceleration Age:** | 110 |
| **Minimum Accelerated Benefit Amount:** | $250 |
| **Lifetime Maximum Accelerated Benefit:** | $1,000,000 |
| **Maximum Critical Illness Accelerated Benefit:** | Lesser of $125,000 or 25% of the *Eligible Amount* |
| **Maximum Chronic Illness Accelerated Benefit:** | Annual Payment<br>50% of the *Eligible Amount* up to a maximum of $1,000,000 paid in an annual lump sum up to the per diem limitation declared each year by the Internal Revenue Service<br><br>Or Monthly Payment<br>50% of the *Eligible Amount* up to a maximum of $1,000,000 paid in monthly installments of 2% for 50 months or 1% for 100 months |
| **Maximum Terminal Illness Accelerated Benefit:** | Lesser of $1,000,000 or 75% of the *Eligible Amount* |
| **Maximum Administrative Fee per Acceleration Request:** | $150 |
| **Maximum Lien Interest Rate:** | 8.00% (7.40% in advance) per year |
| **Residual Death Benefit:** | 10% of the *Eligible Amount* up to a maximum of $100,000 |

This is a flexible premium universal life insurance policy with an adjustable death benefit. *We* will pay the death benefit proceeds to the beneficiary if the *insured* dies while this policy is in force, subject to the terms of this policy.

## DEFINITIONS

(Defined terms appear in italics throughout this policy.)

**ACCOUNT VALUE.** Means the sum of *net premiums* paid, minus partial withdrawals, minus *monthly deductions*, plus interest credited.

**ANNUAL DATE.** Means the same date each year as the *policy date*.

**ATTAINED AGE.** Means the *issue age* plus the number of completed policy years. With respect to any increase in *specified amount*, *attained age* means the *issue age* for the increase plus the number of completed policy years.

**CASH SURRENDER VALUE.** Means the a*ccount value*, minus *surrender charges*, minus any *policy debt*.

**INSURED.** Means the person shown on the policy schedule upon whose life this policy is issued.

**ISSUE AGE.** Means the *insured's* age as of the birthday nearest to the *policy date*. With respect to any increase in *specified amount*, *issue age* means the *insured's* age as of the birthday nearest to the date of the increase.

**ISSUE DATE.** Means the date on which the suicide and incontestability periods begin. If *we* have received the initial premium from *you*, the *issue date* will also be the date when *you* have life insurance coverage with *us*. If *we* have not received the initial premium from *you*, *you* WILL NOT have coverage until the date on which *we* receive the initial premium from *you*.

**MINIMUM NO-LAPSE PREMIUM.** Means the amount that must be paid on a cumulative basis to keep this policy in force during the minimum no-lapse period as shown on the policy schedule.

**MONTHLY DATE.** Means the same date of each month as the *policy date*.

**MONTHLY DEDUCTION.** Means a charge made against the *account value* on each *monthly date* for the coverage provided by this policy and any attached riders.

**NET AMOUNT AT RISK.** Means the death benefit on the *monthly date*, discounted at the guaranteed rate of interest for one month, minus the *account value* on the *monthly date*, after all *monthly deductions* have been taken except for the cost of insurance.

**NET PREMIUM.** Means the premium paid reduced by the premium charge, which will not exceed the maximum premium charge shown on the policy schedule.

**PLANNED PERIODIC PREMIUM.** Means a level premium *you* intend to pay at a fixed interval. The *planned periodic premium* is shown on the policy schedule.

**POLICY DATE.** Means the date from which policy months, years and anniversaries are measured. The *policy date* will be determined by *us* unless *you* request a different *policy date* that *we* approve. If the *issue date* is after the *policy date* or *we* have not received the initial premium from *you*, *you* WILL NOT have life insurance coverage on the *policy date*.

**POLICY DEBT.** Means the sum of all unpaid policy loans and accrued interest on policy loans.

**SPECIFIED AMOUNT.** Means a dollar amount used to determine the death benefit of *your* policy. It is shown on the policy schedule. *You* may increase or decrease it as provided in *your* policy.

**SURRENDER.** Means termination of this policy at *your* request for its *cash surrender value* while the *insured* is alive.

**SURRENDER CHARGE.** Means the charge subtracted from the *account value* on the *surrender* of this policy.

**WE, US, OUR.** Means Ameritas Life Insurance Corp.

**WRITTEN NOTICE.** Means information *we* have received at the address(es) shown on the first page of this policy which is written, is signed by *you,* and is acceptable to *us.*

**YOU, YOUR.** Means the owner as shown on the policy schedule unless changed. The *insured* may or may not be the owner.

## OWNERSHIP

While the *insured* is living, *you* have all rights in this policy. *Your* rights will be subject to any assignment and to the rights of any irrevocable beneficiary. If *you* die before the *insured,* the successor owner named in the application is the new owner. If there is no successor owner, then *your* estate becomes the new owner.

A change of owner may be made at any time by *written notice* to *us.* It will take effect on the date *we* receive *written notice.* Unless there are no surviving primary or contingent beneficiaries, a change of owner does not change the beneficiary.

## BENEFICIARY

The beneficiary will receive the death benefit proceeds when the *insured* dies. The primary and any contingent beneficiaries are named in the application. If no primary beneficiary is living when the *insured* dies, *we* will pay to the contingent beneficiary. If no contingent beneficiary is living when the *insured* dies, *we* will pay *you* or *your* estate.

Unless the beneficiary designation provides otherwise, *we* will follow these rules:

(1) *We* will pay equal shares when more than one beneficiary of the same class is to share the funds.
(2) No revocable beneficiary has rights in this policy until the *insured* dies.
(3) An irrevocable beneficiary cannot be changed without his or her consent.
(4) The interest of any beneficiary is subject to the rights of any assignee shown on *our* records.
(5) When beneficiaries are not shown by name (such as "children"), *we* may find who they are from sworn statements and not wait for court records.

*You* may change the beneficiary at any time while the *insured* is living by *written notice* to *us.* *We* must approve any change. If approved, it will take effect on the date the *written notice* was signed by *you.* *We* will not be liable for any payments *we* make or actions *we* take before the change is approved.

Unless otherwise provided, if any beneficiary dies within 30 days after the *insured* dies as the result of a common disaster, *we* will pay the death benefit as if that beneficiary died first.

## DEATH BENEFIT

**DEATH BENEFIT PROCEEDS.** Death benefit proceeds will equal:

(1) the death benefit at the *insured's* date of death; plus
(2) any additional life insurance proceeds provided by riders; minus
(3) any *policy debt*; minus
(4) any overdue *monthly deductions* including the *monthly deduction* for the month of death.

*We* will pay the death benefit proceeds in a lump sum as soon as *we* receive satisfactory proof that the *insured* died while this policy was in force, and other proof that *we* may require in order to investigate the claim. *We* will include interest from the *insured's* date of death to the payment date. The rate will not be less than required by law. Full payment of the death benefit proceeds to the beneficiary discharges *us* from any and all claims.

3005 AZ                                           5

The death benefit is the greater of: (1) the *specified amount*; and (2) the *account value* times the appropriate corridor factor shown on the policy schedule.

**SPECIFIED AMOUNT CHANGES.**  On or after one year from the *policy date*, *you* may change the *specified amount* by *written notice* to *us*.  Any change is subject to the following conditions:

(1)  Any increase of the *specified amount* will require evidence of insurability satisfactory to *us* and is subject to *our* underwriting limits in place at that time.  Underwriting requirements do not apply to increases requested under certain riders that may be attached to the policy.  An approved increase will have an effective date as shown on the revised policy schedule.

(2)  Any increase of the *specified amount* will be subject to cost of insurance charges, monthly specified amount charges and *surrender charges* based on the *insured's* gender and the *issue age* and rate class for the increase.

(3)  A decrease of the *specified amount* will be effective on the *monthly date* following *written notice* to *us*.  Any reduction will be in the following order:

    (a)  against the most recent increase of the *specified amount*;

    (b)  against the next most recent increases;

    (c)  against the initial *specified amount*.

(4)  Any decrease of the *specified amount* requested by *you* will not reduce the *surrender charges* or the monthly specified amount charges.

(5)  The *specified amount* after any requested change must not be less than the minimum *specified amount* stated on the policy schedule.

# PREMIUMS

**PAYMENT OF PREMIUM.**  The initial premium is the amount paid on or before delivery of this policy.  Premiums are payable in advance of the period to which they apply.  The *planned periodic premium* is shown on the policy schedule.  Even if *you* pay *planned periodic premiums*, *your* policy could lapse if the *cash surrender value* is not enough to pay the *monthly deductions*.  *You* may change the amount and/or frequency of the *planned periodic premium*.  *You* also may make unscheduled payments.

*We* reserve the right to limit the amount and frequency of premium payments.  *We* reserve the right to require evidence of insurability for any premium payment that increases the *net amount at risk* of the policy.  *We* will not accept that portion of a premium payment which affects the tax qualifications of this policy as described in section 7702 of the Internal Revenue Code, as amended.  This excess amount will be returned to *you*.

Premium payments may be made to the address(es) shown on the first page of this policy or to such other place as *we* may designate.  A receipt signed by *our* President or Secretary will be provided upon request.  In the event no further premiums are paid, coverage will continue subject to the Grace Period provision until the *cash surrender value* is no longer sufficient to cover the *monthly deduction*.

# ACCOUNT VALUE

The *account value* on the *issue date* is equal to any *net premiums* received by *us* on or before the *issue date*, minus any *monthly deductions* due on or before the *issue date*.

The *account value* on each *monthly date* thereafter is equal to $(a + b + c + d) - (e + f + g)$, where:

(a)  is the *account value* on the prior *monthly date*;
(b)  is one month's interest on (a);
(c)  is any *net premium* received since the prior *monthly date*;
(d)  is interest on (c) from the date received to the current *monthly date*;
(e)  is any partial withdrawal since the prior *monthly date*;
(f)  is interest on (e) from the date paid to the current *monthly date*;
(g)  is the *monthly deduction* due on the current *monthly date*.

On any day between *monthly date*s, the *account value* is calculated using steps a through f above, with pro-rata adjustment of interest to reflect the time elapsed since the prior *monthly date*.

## ACCESSING POLICY VALUES

Loans, partial withdrawals and cash surrenders may be subject to income tax and penalty tax.

**LOANS.** *You* may obtain a loan from the *cash surrender value* of this policy.  The maximum available loan amount is:

(1)  the *cash surrender value*; minus
(2)  loan interest up to the next *annual date*; minus
(3)  the lesser of the sum of the next three *monthly deductions* or the number of *monthly deductions* remaining in the current policy year.

After the 5th policy anniversary, a portion of the *policy debt* may qualify for the preferred loan interest rate.  The portion eligible for the preferred loan interest rate is:

(1)  the *account value*; plus
(2)  the sum of partial withdrawals taken; minus
(3)  the sum of premiums paid.

The maximum loan interest rate and the maximum preferred loan interest rate are shown on the policy schedule.  *We* have the option of charging less.

This policy will be assigned to *us* as security for any loan.  *We* may defer making a loan up to six months except to pay premiums on any policy in force with *us*.  *We* may require *you* to sign a loan agreement.

A loan may be paid back in full or in part at any time.

Interest accrues daily and becomes a part of the *policy debt*.  Interest payments are due on each *annual date*.  If interest is not paid when due, it will be added to the *policy debt* and will bear interest at the rate charged on the loan.

**PARTIAL WITHDRAWAL.** *You* may take a partial withdrawal of cash from the *cash surrender value* by *written notice* to *us*.  The minimum partial withdrawal is shown on the policy schedule.  The maximum partial withdrawal amount is:

(1)  the *cash surrender value*; minus
(2)  the sum of the next three *monthly deductions*.

*We* may deduct a partial withdrawal fee, which will not exceed the maximum partial withdrawal fee shown on the policy schedule.  The *specified amount* will be reduced by the amount withdrawn plus any fee.  After *we* receive *written notice*, *we* have the right to wait up to six months to pay, except for payment of premiums on any policy in force with *us*.

**CASH SURRENDER.** *You* may *surrender* this policy for the *cash surrender value* by *written notice* to *us*.  After *we* receive *written notice*, *we* have the right to wait up to six months to pay except for payment of premiums on any policy in force with *us*.  *You* may not reinstate this policy once *you surrender* it.

# POLICY FACTORS

**MONTHLY DEDUCTION.**  On each *monthly date*, *we* will deduct an amount from *your account value* to pay *us* for providing the benefits of the policy.  This amount is called the *monthly deduction*.

The *monthly deduction* equals:

(1)  the cost of insurance; plus
(2)  the monthly administrative charge; plus
(3)  the monthly specified amount charge; plus
(4)  the cost for any policy riders.

The *monthly deduction* is due on each *monthly date*, beginning on the *policy date*.

**COST OF INSURANCE.**  The cost of insurance for a policy month is the cost of insurance rate times the *net amount at risk* divided by $1,000.  The maximum cost of insurance rates are determined by the *insured's* gender, *attained age*, and rate class, as shown on the policy schedule.  The maximum cost of insurance rates for any increase in *specified amount* are determined by the *insured's* gender and *attained age* and the rate class for the increase.

For purposes of determining the cost of insurance, *account value* is allocated first to the initial *specified amount*, then to subsequent increases in *specified amount* in the order those increases occurred.

**SPECIFIED AMOUNT CHARGE.**  The maximum monthly specified amount charge is shown on the policy schedule.  Any increase in the *specified amount* will result in an additional monthly specified amount charge.

**INTEREST RATE.**  The guaranteed interest rate to be applied in the *account value* calculation is shown on the policy schedule.  An interest rate exceeding the guaranteed rate may be used at *our* option.  *We* will credit the guaranteed interest rate to the portion of the *account value* which is loaned.

**POLICY COST FACTORS.**  *We* may change the interest rate, subject to the guaranteed interest rate shown on the policy schedule.  *We* may change the cost of insurance rates, monthly administrative charges, monthly specified amount charges, and premium charge, subject to the maximum rates and charges shown on the policy schedule.  *We* will determine actual rates and charges based on *our* future expectations of such factors as mortality, expenses, interest, persistency and taxes.  Any changes will be determined according to the procedures and standards on file with *your* State Insurance Department.  Any change *we* make will be on a uniform basis for *insureds* of the same *issue age*, gender, rate class, *specified amount*, and the length of time coverages have been in force.

# KEEPING THE POLICY IN FORCE

**GRACE PERIOD.**  On any *monthly date* when the *cash surrender value* is less than the *monthly deduction* for the next policy month, *you* will have a 61-day grace period to make a premium payment to continue this policy.  The minimum premium to continue this policy will be no more than an amount which results in a *cash surrender value* on the date the grace period begins equal to the current *monthly deduction* plus the next two *monthly deductions*.  *We* will mail notice of this minimum premium to *your* last known address at the start of the 61-day grace period, at least 30 days and no more than 60 days prior to the end of the grace period.

Insurance coverage under this policy and any benefits provided by any rider(s) will be continued through the grace period.  If the *insured* dies during the grace period, *we* will pay the death benefit proceeds.  If the premium is not paid within the grace period, all insurance stops and this policy terminates with no *cash surrender value*.  Even if *you* pay *planned periodic premiums*, *your* policy could lapse if the *cash surrender value* is not enough to pay the *monthly deductions*.

3005 AZ                                                                                8

**MINIMUM NO-LAPSE PERIOD.** During the minimum no-lapse period, *we* guarantee this policy will remain in force and the grace period will not begin if the sum of the premiums paid to date, minus the sum of partial withdrawals taken and *policy debt*, equals or exceeds the sum of the monthly *minimum no-lapse premiums* from the *policy date* to the most recent *monthly date*. The *minimum no-lapse premium* and the minimum no-lapse period are shown on the policy schedule.

**REINSTATEMENT.** Within five years after *your* policy terminates, *you* may put this policy back in force by *written notice* to *us* if:

(1) the *insured* provides *us* with evidence of insurability;
(2) the *attained age* of the *insured* on the date of reinstatement does not exceed the maximum *attained age* for reinstatement as shown on the policy schedule;
(3) the *insured* is alive on the date of reinstatement; and
(4) this policy has not been *surrendered* for its *cash surrender value*.

The minimum premium *you* must pay to reinstate *your* policy is (a + b - c) divided by (d) where:
(a) is the sum of all due and unpaid *monthly deductions* during the grace period;
(b) is the *surrender charge* on the date of reinstatement;
(c) is the *account value* at the beginning of the grace period; and
(d) is one minus the premium charge.

The *account value* on the date of reinstatement will equal:
(1) the *net premium* paid to reinstate this policy; plus
(2) the *account value* at the beginning of the grace period; minus
(3) the sum of the due and unpaid *monthly deductions* during the grace period.

*You* must repay or reinstate any *policy debt* that existed at the beginning of the grace period. *Surrender charges* will be based on the original *policy date* and the dates of any increases in *specified amount* as if this policy had never terminated. The interest on premium in arrears or other indebtedness (including policy loans) will be a rate not exceeding six percent per annum compounded annually.

# GENERAL PROVISIONS

**ENTIRE CONTRACT.** This policy is a legal contract that *you* have entered into with *us*. The entire contract consists of:

(1) this policy;
(2) any riders;
(3) any endorsements;
(4) the attached copy of the application, and any amendments or supplemental applications; and
(5) the applicable policy schedule(s).

Any change in the contract must be written and signed by *our* President, or a Vice President, or the Secretary, or the Assistant Secretary. No one else is authorized to bind *us*.

Statements made in the application for issuance or reinstatement, in the absence of fraud, are representations and not warranties. No such statements will be used in defense of a claim under this policy unless contained in a written application and unless a copy of such statement is part of this policy.

**NONPARTICIPATING POLICY.** This policy is nonparticipating. No dividends will be paid under this policy.

**RELIANCE.** *We* have issued this policy based on the answers in the application and supplemental applications. *We* have assumed all such answers to be true and complete. If any are not, *we* may, subject to the Incontestability provision, have the right to void this policy and send back all premiums paid, minus *policy debt* and any partial withdrawals.

**INCONTESTABILITY.** *We* will not contest this policy after it has been in force while the *insured* is alive for two years from the *issue date* nor will *we* contest any increased benefits later than two years after the effective date for such increased benefits. If *you* did not request the increase or if evidence of insurability was not required, *we* will not contest the increase. As used herein, increased benefits shall include any favorable policy changes requested by *you*. If this policy is reinstated, the incontestable period will start over again beginning on the reinstatement date, but only for statements made in the application for reinstatement. Riders to this policy may have separate incontestability provisions.

**SUICIDE.** For the first two full years from the *issue date*, *we* will not pay the death benefit if the *insured* commits suicide (while sane or insane). *We* will terminate this policy and give back the premiums paid, minus *policy debt* and any partial withdrawals. Riders to this policy may have separate suicide provisions.

**POLICY CHANGES.** *You* may request to change *your specified amount* or riders by sending *us written notice*. Whenever one of these changes is made, *we* will send *you* a revised policy schedule that will show the updated coverage and any new charges.

**ANNUAL REPORT.** At least once a year *we* will send *you* an annual report showing the current *account value*, *cash surrender value*, amount of interest credited, premiums paid, partial withdrawals, loan activity, expense charges and cost of insurance charges since the prior report. Any other information required by *your* State Insurance Department will also be included in the annual report.

**ILLUSTRATIVE REPORT.** *You* may request a projection of illustrative future benefits and values at any time. *We* may make a reasonable charge to provide this information.

**TERMINATION.** This policy will terminate and all insurance will stop:

(1) on the date *we* receive *your written notice*; or
(2) when a required premium is not received before the end of the grace period; or
(3) when the *insured* dies.

**CONFORMITY WITH LAWS.** This policy is subject to the laws of the state where the application is signed.

**MISSTATEMENT OF AGE OR GENDER.** If the *insured's* age or gender has been misstated on the application, an adjustment will be made to reflect the correct age and gender as follows:

(1) If the misstatement is discovered at death, the death benefit amount will be adjusted based on what the cost of insurance rate as of the most recent *monthly date* would have purchased at the *insured's* correct age and gender.
(2) If the misstatement is discovered prior to death, the *cash surrender value* will be adjusted to reflect the expense charges, *surrender charges*, and cost of insurance rates based on the *insured's* correct age and gender from the *policy date*.

**ASSIGNMENT.** *You* may assign this policy by giving *written notice*. *We* will not be responsible for the validity of an assignment. *We* will not be liable for any payments *we* make or actions *we* take before *we* receive *written notice* of an assignment. An assignment is subject to any *policy debt*.

**COMPUTATIONS.** Minimum *account values* are based on maximum cost of insurance rates, maximum expense charges and guaranteed interest rate shown on the policy schedule. All interest rates shown on the policy schedule are annual effective rates unless otherwise stated.

*Cash surrender values* will not be less than the minimum required by the laws of the state where this policy is signed. If required, *we* have filed a detailed statement about these computations with *your* State Insurance Department.

# Ameritas Life Insurance Corp.

# DEATH BENEFIT ACCELERATION RIDER

**TAX CONSEQUENCES. BENEFITS PAID UNDER THIS RIDER MAY BE TAXABLE. SOME OF THE BENEFITS PROVIDED BY THIS RIDER ARE INTENDED TO BE NON-TAXABLE. HOWEVER, CHANGES TO TAX LAW CAN CHANGE THE TAXABILITY OF BENEFITS. *WE* RECOMMEND THAT *YOU* CONTACT *YOUR* TAX ADVISOR TO ASSESS THE IMPACT OF THESE BENEFITS.**

**PURPOSE.** This rider is attached to and made a part of this universal life insurance policy. If there is a conflict between the terms of the policy and the terms of this rider, the rider controls.

*We* will accelerate the payment of the death benefit for a qualifying event subject to the provisions of this rider. The accelerated payment is referred to as an accelerated benefit. *You* must request the accelerated benefit within 12 months of the date of the qualifying event.

**QUALIFYING EVENTS.** The qualifying events covered under this rider are: 1) *critical illness*; 2) *chronic illness*; and 3) *terminal illness*.

*You* may request one accelerated benefit for each type of qualifying event.

**ACCELERATED BENEFITS.** The minimum and maximum accelerated benefit amounts that *we* will pay are shown on the policy schedule. For each qualifying event there is an applicable maximum accelerated benefit amount shown on the policy schedule. The sum of all accelerated benefits may not exceed the lifetime maximum accelerated benefit shown on the policy schedule.

The accelerated benefit will be paid in a lump sum for *critical illness* and *terminal illness*. The accelerated benefit for *chronic illness* may be paid monthly, or annually up to the per diem limitation declared each year by the Internal Revenue Service. The *chronic illness* monthly and annual benefit will be adjusted accordingly if the *eligible amount* changes. An accelerated benefit will be paid to *you* or to any other payee *you* so designate. No accelerated benefit may be requested on or after the policy anniversary on which the *insured* is the maximum acceleration age shown on the policy schedule. Accelerated benefits due to *chronic illness* may continue to be paid if the accelerated benefit payments began prior to the policy anniversary on which the *insured* is the maximum acceleration age shown on the policy schedule.

The accelerated benefit plus any administrative fee plus accrued interest will be a lien against the death benefit proceeds. *Your* access to the *cash surrender value* after an accelerated benefit has been paid will be restricted to the excess of the *cash surrender value* over any liens. Policy lapse benefits and reduced paid-up insurance benefits will be limited to the excess of the *cash surrender value* over any liens. On the date of death, the death benefit will be reduced by the amount of any liens and any *policy debt*.

**RESIDUAL DEATH BENEFIT.** Upon the death of the *insured*, *we* will pay at least the residual death benefit shown on the policy schedule, reduced by the amount of any partial withdrawals taken after the first accelerated benefit request and any *policy debt*.

**CONDITIONS.** Accelerated benefits are subject to the following conditions:

(1) The *insured* must provide satisfactory proof that the *insured* has suffered a qualifying event. Satisfactory proof for a qualifying event must come from a *physician*. Such satisfactory proof must specify that:
    (a) the *insured* has been diagnosed as having a *critical illness*, *chronic illness*, or *terminal illness*; and
    (b) such qualifying event was first diagnosed while the *insured* was covered by the rider.
(2) *We* reserve the right to obtain a second medical opinion at *our* expense.
(3) Any amount required to prevent the policy from terminating must be paid before an accelerated benefit will be paid.
(4) If the qualifying event is caused by an intentional self-inflicted injury, no accelerated benefit will be paid.

(5)  If the qualifying event is caused by participation in a felony, no accelerated benefit will be paid.

(6)  If the policy is a survivorship life insurance policy, the accelerated benefit is not available if both *insureds* are living.

(7)  Any assignee or lienholder must release the assignment or existing liens.

(8)  Any irrevocable beneficiary must consent in writing to *your* request for the accelerated benefit.

(9)  *You* must assign the policy to *us* for an amount equal to the liens and accrued interest. No further changes to the policy will be permitted without *our* consent.

(10)  *We* must receive a written claim form that will be provided by *us* within 10 working days after *you* request it.

(11)  The total accelerated benefit payments on the *insured* from policies with *us* and *our* affiliates will not exceed the lifetime maximum accelerated benefit amount shown on the policy schedule.

(12)  This rider allows for the accelerated payment of death benefit proceeds, which would otherwise be payable to the beneficiary of the policy. *You* are not eligible for this benefit if *you* will be required by:

    (a)  law to use this benefit to meet the claims of creditors, whether in bankruptcy or otherwise; or

    (b)  a government agency to use this benefit in order to apply for, obtain, or otherwise keep a government benefit or entitlement.

(13)  If *you* are receiving *chronic illness* accelerated benefits, *we* may require certification by a *physician* once per calendar year that the *insured* has a *chronic illness*.

**PREMIUMS DUE AND POLICY CHARGES.** After payment of the accelerated benefit, all policy charges will continue to be assessed. *You* are required to pay the minimum premium necessary to keep the base policy and any attached riders in force.

**INTEREST.** *We* will charge interest on the liens. The interest charged will be accrued to the amount of the lien daily. *You* may repay any outstanding lien at any time before the *insured*'s death.

The maximum lien interest rate will be no greater than the greatest of:

(1)  the current yield on ninety-day treasury bills; or

(2)  the current maximum statutory adjustable policy loan interest rate.

However, the maximum lien interest rate will never exceed the rate shown on the policy schedule. *We* have the option of charging less.

The interest rate accrued on the portion of the liens that are equal in amount to the *cash surrender value* of the policy will be no more than the policy loan interest rate. Lien interest will not be charged if it would cause the lien to be greater than the following:

(1)  death benefit minus,

(2)  residual death benefit plus,

(3)  *policy debt* plus,

(4)  any partial withdrawals taken after the first accelerated benefit has been requested.

## GENERAL PROVISIONS

**ADMINISTRATIVE FEE.** *We* reserve the right to assess an administrative fee of not more than the maximum administrative fee shown on the policy schedule to process an accelerated benefit request for each qualifying event under this rider. The fee will be added to the lien at the time the accelerated benefit is paid.

**EFFECTIVE DATE.** The effective date of this rider is shown on the policy schedule.

**REINSTATEMENT.** If the policy lapses and is reinstated, this rider will automatically be reinstated with the policy. Any lien that was outstanding at the time the policy lapsed will be reinstated with lien interest as if the policy had not lapsed.

# DEFINITIONS

**ACTIVITIES OF DAILY LIVING.** Means the following:

(1) Dressing: the ability to put on and take off all garments and medically necessary braces or artificial limbs usually worn, and to fasten or unfasten them.

(2) Toileting: the ability, with or without the help of adaptive devices, to get to and from or on and off the toilet; and to perform associated personal hygiene.

(3) Transferring: the ability to move in and out of a chair, bed, or wheelchair with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.

(4) Continence: the ability to voluntarily control bowel and bladder function, or, in the event of incontinence, the ability to maintain a reasonable level of personal hygiene including caring for a catheter or colostomy bag.

(5) Eating: the ability to feed yourself by getting food into *your* body from a receptacle (such as a plate or cup or table) or by a feeding tube or intravenously.

(6) Bathing: the ability to wash yourself, with or without the help of adaptive devices, by sponge bath; or in the tub or shower, including the task of getting in and out of the tub or shower.

**CHRONIC ILLNESS.** Means the *insured*:

(1) is unable to perform (without assistance) at least two *activities of daily living*, and has been unable to perform them for a period of at least 90 days; or

(2) has suffered *severe cognitive impairment* to the extent that *substantial supervision* is required to ensure the *insured's* health and safety.

**CRITICAL ILLNESS.** Means one of the following events experienced by the *insured*:

(1) Cardiac Event. Means one of the following: open heart surgery, angioplasty, or myocardial infarction. Myocardial infarction is defined as the death of a portion of the heart muscle, due to inadequate blood supply to the relevant area. Proof of a myocardial infarction must include all of the following:

    (a) typical clinical symptoms, such as central chest pain; and
    (b) diagnostic increase of specific cardiac markers; and
    (c) new electrocardiographic markers of infarction.

    This rider will not cover angina.

(2) Life Threatening Cancer. Means the uncontrolled growth and spread of malignant cells including malignant melanomas and tumors. The following types of cancer are not considered a life threatening cancer: Stage A prostate cancer, any skin cancer (other than melanoma), and carcinoma in situ.

(3) Stroke. Means a cerebral vascular hemorrhage or infarction of brain tissue producing a permanent neurological deficit. This rider will not cover transient ischemic attacks.

(4) Major Transplant. Means a bone marrow, heart, kidney, lung, liver, or pancreas transplant that is medically necessary due to its life threatening nature. Proof of the need for a major transplant must also include with the medical evidence that the *insured* is registered by the United Network of Organ Sharing (UNOS).

(5) End-Stage Renal Failure. Means the chronic irreversible failure of both of the kidneys, which requires treatment with regular dialysis or transplant. The diagnosis of end-stage renal failure must be made by a board certified nephrologist.

**ELIGIBLE AMOUNT.** The *eligible amount* is the *specified amount* on the base policy at the time of the first accelerated benefit request. No rider *specified amount* or the amount of other benefits are eligible. In the event of a partial withdrawal the *eligible amount* will be reduced accordingly.

**PHYSICIAN.** Means a doctor of medicine or osteopathy (other than *you, your* spouse, domestic partner, a member of *your* family, a business or professional partner, or any person with whom *you* share a financial or business interest) licensed to practice medicine and surgery in the state in which he or she practices and who is practicing within the scope of such license in the United States.

**SEVERE COGNITIVE IMPAIRMENT.** Means a diagnosis by a *physician* who is a certified neurologist of Alzheimer's disease and similar forms of irreversible dementia supported by medical evidence of a loss or deterioration in intellectual capacity that includes (1) short-or long-term memory, (2) orientation to people, places, or time, (3) abstract or deductive reasoning, and (4) judgment as it pertains to safety.

**SUBSTANTIAL SUPERVISION.** Means continual, 24-hour supervision by another person that is necessary to protect severely cognitively-impaired individuals against threats to their health or safety.

**TERMINAL ILLNESS.** Means the *insured* has been certified by a *physician* as having an illness or physical condition which can reasonably be expected to result in death within 12 months after the date of certification.

AMERITAS LIFE INSURANCE CORP.

JoAnn M Martin

Robert John H Lauels

President                                        Secretary

JUN/22/2016/WED 02:00 PM    LUTTNER FINANCIAL    FAX No. 412-456-1446    P. 005

1011

# **UNIFI**
Companies℠

# **Application for Conversion of Term Insurance**

Check One:

☒ Ameritas Life Insurance Corp.
☐ Acacia Life Insurance Company
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

☐ The Union Central Life Insurance Company
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2218

The UNDERSIGNED hereby REQUESTS and DIRECTS THE COMPANY to CONVERT POLICY Number:

T 0000 6149 A    on the life of: *BIANCA RUDOLPH*

1. (a) Application is hereby made to: ☐ Reduce ☒ Cancel the above numbered policy.
   (b) Application is hereby made to: ☐ Reduce ☐ Cancel the term insurance agreement attached to the above numbered policy.

2. Issue in lieu of the term insurance, a new policy as follows:
   A. Insured Name: *BIANCA RUDOLPH*    Soc. Sec. No.: *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*
   B. Plan: *EXCEL ESSENTIAL UL*    Amount: $ *750,000*
   Effective Date: *9/27/2012*    Attained Age: *56*
   Disability Premium Waiver: _____    Accidental Death Benefit: _____
   Total Disability Amount: _____ Other: _____

   C. If new plan is Universal Life, complete the following:
   Planned Periodic Premium: $ *1,137.61*    Death Benefit Option: ☒ A ☐ B ☐ Other:___
   D. Premiums Payable: ☐ Annually ☐ Semiannually ☒ Quarterly
      ☐ Automatic Monthly Draft
      ☐ Government Allotment ☐ Salary Allotment
   E. Nonforfeiture Option: ☐ Automatic Premium Loan ☐ Extended Term ☐ Reduced Paid-Up
   If Disability Premium Waiver or Total Disability is desired:
   A. Are you now disabled? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☒ No
   B. Are you receiving any type of disability or loss-of-income benefits? . ☐ Yes ☒ No
   C. Are you actively engaged in full-time work? . . . . . . . . . . . . . . . . . ☒ Yes ☐ No

   **Dividend Option** - (Do not complete for Universal Life):

   1. Applied toward payment of premium. (Do not use for monthly or allotment or Automatic Monthly Draft premium.) . . . . . . . . . ☐
   2. At interest . . . . . . . . . . . . ☐
   3. To purchase additions . . . . ☐
   4. In cash . . . . . . . . . . . . . . . ☐

3. The remainder, if any, of insurance under the above numbered policy is to be: ☒ cancelled ☐ continued as follows:

| Plan | Amount | Term Agreement (Rider) | Amount |
|---|---|---|---|
|  | $ |  | $ |

4. It is agreed that:
   (a) Any dividend credits, differences in cash values or unearned premiums payable by the Company by reason of this conversion shall be applied to the amount payable to the Company.
   (b) Any outstanding assignment of the policy numbered above and any release thereof shall also apply to the new policy(ies).
   (c) The owner of the policy numbered above will be the owner of the new policy(ies).
   (d) If the policy numbered above, prior to the change, was payable upon insured's death in a single sum or under a settlement option, any outstanding agreement of designation of beneficiary or method of settlement under the policy shall apply to the new policy(ies).
   (e) If the policy numbered above, prior to the change, provided upon insured's death for the payment of installments other than a settlement option:
       (1) the new policy(ies) will be issued with the provision for payment in a single sum to the present beneficiary(ies) of the policy numbered above; and
       (2) any election of settlement option with regard to the net sum payable after completion of the payment of monthly income is hereby cancelled.
5. I hereby declare that:
   (a) no bankruptcy proceedings are now pending against the owner; and
   (b) no assignment of the policy numbered has been made except to (if no exception, so state): _____

Dated at: *PARADISE VALLEY, AZ* , this *16* day of *JUNE 2016*
Insured: _____
Agency Code: *EN7488*    Agent No.: *420003653-05*    Owner, if other than Insured: _____
Agent (Signature): _____    Assignee, if any: _____

UN 2852 A    1/2007

JUN/22/2016/WED 02:00 PM    LUTTNER FINANCIAL    FAX No. 412-456-1446    P. 006

**TERMINAL ILLNESS.** Means the *insured* has been certified by a *physician* as having an illness or physical condition which can reasonably be expected to result in death within 12 months after the date of certification.

**PREMIUMS DUE AND POLICY CHARGES.** After payment of the accelerated benefit, all policy charges will continue to be assessed. *You* are required to pay the minimum premium necessary to keep the base policy and any attached riders in force.

The accelerated benefit plus any administrative fee plus accrued interest will be a lien against the death benefit proceeds. *Your* access to the *cash surrender value* after an accelerated benefit has been paid will be restricted to the excess of the *cash surrender value* over any liens. Policy lapse benefits and reduced paid-up insurance benefits will be limited to the excess of the cash surrender value over any liens. On the date of death, the death benefit will be reduced by the amount of any liens and any *policy debt*.

*We* may charge an administrative fee not to exceed $150 for processing a benefit under this rider. The fee will be added to the lien at the time the accelerated benefit is paid.

Payment of the accelerated benefit will decrease the death benefit proceeds by the following:

   (1) the amount of the accelerated benefit paid; plus
   (2) any administrative fee; plus
   (3) interest, as defined in the rider, on the amount of accelerated benefit paid plus any administrative fee.

Underwriting approval is required for this rid

_____    _____
Owner's Signature                      Producer

_____06-16-2016_____                   _____06-16-2016_____
Date                                    Date



1013

## Amendment of Application for Life Insurance

Date: September 13, 2012                    Agency Code: EN00001351

The policy referred to below is not to be delivered until the "amendment" below has been signed and has been dated. The signature(s) and the date must be exactly the same on both the copies.

TO AMERITAS LIFE INSURANCE CORP.:

The undersigned hereby accept(s) Policy No.: T00006149A   Insured: Bianca Rudolph . The Policy has been issued as checked in the table shown below. In that respect it differs from the Policy applied for.

| CLASSIFICATION: | ADDITIONAL BENEFITS: |
|---|---|
| Policy Issued: | The benefit applied for and checked has not been issued: |
| ☐ On Rated Class basis; with higher than Standard premiums. | ☐ Waiver of Premium for Total Disability Rider. |
| ☐ On Rated Class basis; with premiums increased temporarily by extra amount. | ☐ Accidental Death Benefit Rider. |
| ☐ With an extra premium rating for: | ☐ Children's Insurance Rider. |
| ☐ Waiver of Premium for Total Disability Rider. | ☐ Renewable Term Rider. |
| ☐ Accidental Death Benefit Rider. | ☐ Other: _____ |
| ☐ Applicant's Waiver of Premium for Total Disability Rider. | |
| PLAN: ☐ _____ instead | |
| of: _____ | |

☐ OTHER AMENDMENTS TO THE POLICY:

I AGREE THAT THE COPY OF MY MEDICAL EXAMINATION DATED ON . APRIL 26 2012 FOR THE GUARDIAN LIFE INSURANCE COMPANY AND ATTACHED HERETO SHALL BE DEEMED AS PART OF MY APPLICATION AND A PART OF MY POLICY. I ADOPT AND RATIFY AS OF THIS DATE AND STATEMENTS AND REPRESENTATIONS MADE HEREIN WHICH SHALL BE THE BASIS FOR THIS INSURANCE.

THE POLICY HAS BEEN ISSUED ON THE KEYSTONE TERM 10 PLAN.

It is agreed that the application on which the Policy numbered above was issued shall be considered amended so as to request the Policy as issued. The undersigned declare(s) that: (a) a full and complete copy of this amendment of the application is attached to the Policy numbered above and; (b) it has been signed and dated on the date which is shown below.

Dated at: _PITTSBURGH PA_ , Day _TWENTY - EIGHT_ , Month, _SEPTEMBER_ , Year _2012_

Witness (Agent): _Julie M. Shrm_         Proposed Insured: _____

TO BE SIGNED, DATED AND WITNESSED. ⚹ Applicant (if other than Proposed Insured): _____
THIS COPY IS PART OF THE POLICY.

Ameritas Life Insurance Corp., P.O. Box 40888, Cincinnati, Ohio 45240
AL 262 B                                                   2/2007

# ·UNIFI

**Companies℠**

1010

## Application for Insurance

**Personal Information**

### CHECK ALL COMPANIES THAT APPLY:

☐ **Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

☒ **Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

☐ **The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

**1. Proposed Insured (One):**

a) Name: _DIANCA  T  RUDOLPH_

b) Date of Birth: _12-04-59_  c) Sex: ☐ Male ☒ Female

d) Place of Birth: _PA_

e) Social Security/Tax ID No.: _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_

f) Driver's License or other Government issued picture ID: _18 806 713_  State: _PA_

g) Home Address: _336 LAKEWOOD ROAD_
City: _Greensburg_  State: _PA_ Zip: _15601_

h) Years at this Address: _22 yrs_

i) Tel. (Home): _724-832-2408_
(Business): _724-836-1777_

Fax: _____

E-mail: _____

Best time to call: _7pm_  at: ☐ Business ☒ Home

In the event you are not available when our interviewer calls, may we speak with your spouse? ☒ Yes ☐ No

j) Residency Status: ☒ U.S. Resident ☐ Other: _____

k) Are you a U.S. Citizen: ☒ Yes ☐ No  If "No," complete Foreign National form UN 0918 and provide the following:

Citizenship: _____

Visa Type: _____  Visa #: _____

l) Employer Name: _THREE Rivers Dental_
Address: _121 DONOHUE ROAD_
City: _Greensburg_  State: _PA_ Zip: _15601_

m) Occupation: _MANAGER_  Years: _4_

n) Duties: _Managers ffice_

**2. Owner Information (One):** *(Complete only if Owner is other than Proposed Insured.)*

a) ☒ Individual  b) ☐ Trust *(provide copy)*  c) ☐ Partnership

d) ☐ Corporation; County of Incorporation: _____

e) Full Name: _LAWRENCE P RudOLPH_

f) Relationship to Proposed Insured(s): _HusBAND_

g) Trustee(s) Name: _____

h) Date of Birth or Date of Trust: _01-07-1955_

i) Social Security/Tax ID No.: _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_

j) Driver's License or other Government issued picture ID: _15197171_  State: _PA_

k) Address: _336 LAKEWOOD ROAD_
City: _Greensburg_  State: _PA_ Zip: _15601_

l) Tel. (Home): _724-832-2408_ (Business): _724-836-1777_
Fax: _____  E-mail: _____

m) Residency Status: ☒ U.S. Resident ☐ Other: _____

n) Are you a U.S. Citizen: ☒ Yes ☐ No  If "No," complete Foreign National form UN 0918 and provide the following:

Citizenship: _____

Visa Type: _____  Visa #: _____

o) Multiple Ownership *(indicate type):*
☐ Joint with Survivorship
☐ Tenants in Common

p) Successor Owner:

Name: _____

Social Security/Tax ID No.: _____

**3. Beneficiary Information:** *(Subject to change by Owner.)*

a) Primary Beneficiary: _LAWRENCE P RudOLPH_

Address: _336 LAKEWOOD ROAD_
City: _Greensburg_  State: _PA_  Zip: _15601_
Relationship to Proposed Insured: _HusBAND_
Social Security/Tax ID: _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_
Date of Birth or Date of Trust: _01-07-1955_

b) Contingent Beneficiary: _ANA BIANCA RudOLPH (DAughter) 50%_
_JULIAN L RudOLPH (Son) 50%_
Address: _336 LAKEWOOD ROAD_
City: _Greensburg_  State: _PA_  Zip: _15601_
Relationship to Proposed Insured: _DAughter  &  Son_
Social Security/Tax ID: _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_  _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_
Date of Birth or Date of Trust: _06-05-90_  _06-09-86_

UN 2550 PI-A

Edition: 10/2007

**UNIFI** *Companies*

Ameritas Life Insurance Corp.
P.O. Box 40888 Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352
(Client Service Office)

## Universal Life/Traditional Life
### Policy Details

### 1. Universal Life:
a) Specified Amount *(base only):* $_____
   Plan of Insurance: _____
b) Death Benefit Option:
   ☐ Option A *(Specified Amount)*
   ☐ Option B *(Specified Amount plus Account Value)*
   ☐ Option C *(Return of Premium)*
c) Life Insurance Qualification Test:
   ☐ GPT *(Guideline Premium Test)*
   ☐ CVAT *(Cash Value Accumulation Test)*
d) Planned Periodic Premium *(modal):* $_____
   Additional First-Year Premium *(lump-sum deposits):* $_____
e) Single Life Supplementary Benefits:
   ☐ Accidental Death Benefit Rider: $_____
   ☐ Accounting Benefit Rider: $_____
   ☐ Children's Insurance Rider: $_____
   ☐ Guaranteed Insurability Rider: $_____
   ☐ Scheduled Increase Rider _____%
   ☐ Supplemental Coverage Rider: $_____
   ☐ Term Insurance Rider: $_____
   ☐ Total Disability Benefit Rider: $_____
   ☐ Waiver of Monthly Deduction Rider
   ☐ Other: _____
f) Survivorship Supplementary Benefits:
   ☐ Estate Protection Rider
   ☐ Policy Split Rider
   ☐ Term Insurance Rider (Insured One)
      ☐ To Age: _____ ☐ Amount: $_____
   ☐ Term Insurance Rider (Insured Two)
      ☐ To Age: _____ ☐ Amount: $_____
   ☐ Total Disability Benefit Rider (Insured One)
      Amount: $_____
   ☐ Total Disability Benefit Rider (Insured Two)
      Amount: $_____
   ☐ Waiver of Monthly Deduction Rider (Insured One)
   ☐ Waiver of Monthly Deduction Rider (Insured Two)
   ☐ Other: _____
g) Indexed UL Account Allocations:
   ____% Fixed Account: a current interest rate.
   ____% Capped Participation Account: a 100% participation
         rate on a limited percentage increase in the S & P Index.
   ____% Uncapped Participation Account: a lower participation
         rate on unlimited percentage increases in the S & P Index.
   **100** % Total

### 2. Term Life:
a) Specified Amount: $ *750,000*
b) Plan of Insurance:
   ☐ Term 1   ☐ Term 10   ☒ Term 15
   ☐ Term 20  ☐ Term 30   ☐ Other: _____

### 2. Term Life (continued):
c) Supplementary Benefits:
   ☐ Accidental Death Benefit Rider: $_____
   ☐ Children's Insurance Rider: $_____
   ☐ Waiver of Premium Rider
   ☐ Other: _____

### 3. Whole Life:
a) Specified Amount: $_____
   Plan of Insurance: _____
b) Dividend Option:
   ☐ Paid-Up Additions
   ☐ Cash
   ☐ Accumulate at Interest
   ☐ Reduce Premium *(not on monthly modes)*
   ☐ One-Year Term
   ☐ Other: _____
c) Nonforfeiture Option:
   ☐ Extended Term Insurance
   ☐ Reduce Paid-Up
   ☐ Automatic Premium Loan
d) Supplementary Benefits:
   ☐ Accidental Death Benefit Rider: $_____
   ☐ Children's Insurance Rider: $_____
   ☐ Guaranteed Insurability Rider: $_____
   ☐ Level Term Rider: $_____
      ☐ 10 yr  ☐ 15 yr  ☐ 20 yr  ☐ 30 yr
   ☐ One-Year Term Rider: $_____
   ☐ Paid-Up Rider:
      Annual Premium: $_____
      Single Premium: $_____
   ☐ Term Paid-Up Rider (TPL): $_____
   ☐ Total Disability Benefit Rider
   ☐ Waiver of Premium Rider
   ☐ Other: _____

### 4. Premium:
a) Send Premium Notices to:  ☒ Residence  ☐ Business
   ☒ Owner   ☐ Other: *(Specify relationship and address)*
   ☐ Insured   _____
b) Premium Frequency:
   ☐ Annual  ☐ Electronic Fund Transfer *(complete EFT form)*
   ☒ Semi-Annual  ☐ Salary Allotment
   ☐ Quarterly   ☐ Other: _____
c) Has any premium been given in connection with this
   application?  ☐ Yes ☒ No *(If "Yes," state amount paid
   for which conditional receipt has been given; the terms of
   which are hereby agreed to.)* Amount: $_____
d) Association Discount:
   ☐ Yes ☒ No *(If "Yes," provide IPN.)*
   Association IPN: _____

# UNIFI
*Companies*

**Ameritas Life Insurance Corp.**
P.O. Box 40888 Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352
(Client Service Office)

# Universal Life/Traditional Life
## Policy Details

**1. Universal Life:**
- a) Specified Amount *(base only)*: $_____
  Plan of Insurance:_____
- b) Death Benefit Option:
  - ☐ Option A *(Specified Amount)*
  - ☐ Option B *(Specified Amount plus Account Value)*
  - ☐ Option C *(Return of Premium)*
- c) Life Insurance Qualification Test:
  - ☐ GPT *(Guideline Premium Test)*
  - ☐ CVAT *(Cash Value Accumulation Test)*
- d) Planned Periodic Premium *(modal)*: $_____
  Additional First-Year Premium *(lump-sum deposits)*: $_____
- e) Single Life Supplementary Benefits:
  - ☐ Accidental Death Benefit Rider: $_____
  - ☐ Accounting Benefit Rider: $_____
  - ☐ Children's Insurance Rider: $_____
  - ☐ Guaranteed Insurability Rider: $_____
  - ☐ Scheduled Increase Rider _____%
  - ☐ Supplemental Coverage Rider: $_____
  - ☐ Term Insurance Rider: $_____
  - ☐ Total Disability Benefit Rider: $_____
  - ☐ Waiver of Monthly Deduction Rider
  - ☐ Other: _____
- f) Survivorship Supplementary Benefits:
  - ☐ Estate Protection Rider
  - ☐ Policy Split Rider
  - ☐ Term Insurance Rider (Insured One)
    - ☐ To Age: ____ ☐ Amount: $_____
  - ☐ Term Insurance Rider (Insured Two)
    - ☐ To Age: ____ ☐ Amount: $_____
  - ☐ Total Disability Benefit Rider (Insured One)
    - Amount: $_____
  - ☐ Total Disability Benefit Rider (Insured Two)
    - Amount: $_____
  - ☐ Waiver of Monthly Deduction Rider (Insured One)
  - ☐ Waiver of Monthly Deduction Rider (Insured Two)
  - ☐ Other: _____
- g) Indexed UL Account Allocations:
  - ____% Fixed Account: a current interest rate.
  - ____% Capped Participation Account: a 100% participation rate on a limited percentage increase in the S & P Index.
  - ____% Uncapped Participation Account: a lower participation rate on unlimited percentage increases in the S & P Index.
  - **100**_% Total

**2. Term Life:**
- a) Specified Amount: $_____
- b) Plan of Insurance:
  - ☐ Term 1  ☐ Term 10  ☐ Term 15
  - ☐ Term 20  ☐ Term 30  ☐ Other: _____

**2. Term Life (continued):**
- c) Supplementary Benefits:
  - ☐ Accidental Death Benefit Rider: $_____
  - ☐ Children's Insurance Rider $_____
  - ☐ Waiver of Premium Rider
  - ☐ Other: _____

**3. Whole Life:**
- a) Specified Amount: $ _*750,000*_
  Plan of Insurance: _Keystone Foundation WL_
- b) Dividend Option:
  - ☒ Paid-Up Additions
  - ☐ Cash
  - ☐ Accumulate at Interest
  - ☐ Reduce Premium *(not on monthly modes)*
  - ☐ One-Year Term
  - ☐ Other: _____
- c) Nonforfeiture Option:
  - ☐ Extended Term Insurance
  - ☐ Reduce Paid-Up
  - ☐ Automatic Premium Loan
- d) Supplementary Benefits:
  - ☐ Accidental Death Benefit Rider: $_____
  - ☐ Children's Insurance Rider: $_____
  - ☐ Guaranteed Insurability Rider: $_____
  - ☐ Level Term Rider: $_____
    - ☐ 10 yr  ☐ 15 yr  ☐ 20 yr  ☐ 30 yr
  - ☐ One-Year Term Rider: $_____
  - ☐ Paid-Up Rider:
    - Annual Premium: $_____
    - Single Premium: $_____
  - ☐ Term Paid-Up Rider (TPL): $_____
  - ☐ Total Disability Benefit Rider
  - ☐ Waiver of Premium Rider
  - ☐ Other: _____

**4. Premium:**
- a) Send Premium Notices to: ☒ Residence  ☐ Business
  - ☒ Owner  ☐ Other: *(Specify relationship and address)*
  - ☐ Insured _____
- b) Premium Frequency:
  - ☐ Annual  ☐ Electronic Fund Transfer *(complete EFT form)*
  - ☒ Semi-Annual  ☐ Salary Allotment
  - ☐ Quarterly  ☐ Other: _____
- c) Has any premium been given in connection with this application? ☐ Yes ☒ No *(If "Yes," state amount paid for which conditional receipt has been given; the terms of which are hereby agreed to.)* Amount: $_____
- d) Association Discount:
  - ☐ Yes ☒ No *(If "Yes," provide IPN.)*
  - Association IPN: _____

UN 2550 PD 1-11 PA                                    02-01-11

# UNIFI

Companies™

## Universal Life / Traditional Life / VUL

### Financial Information

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

## 1. Existing and Pending Insurance - Proposed Insured(s):

| | Proposed Insured One | Proposed Insured Two |
|---|---|---|
| a) Total insurance in force on the Proposed Insured(s). | $ 1,100,000 | $ |
| b) Total insurance currently pending with all companies, including this application. | $ 72,000 | $ |
| c) Of the above pending amount, how much do you intend to accept? | $ 72,000 | $ |

d) Provide information for each policy in force on the Proposed Insured(s). *(Attach additional page if necessary.)*
Proposed Insured: ☒ One ☐ Two
Company: _TRANSAMERICA_
Group, Personal or Business: _PERSONAL_
Issue Date: _2010_
To Remain in Force? ☒ Yes ☐ No
Face Amount: _500,000_

Proposed Insured: ☒ One ☐ Two
Company: _TRANSAMERICA_
Group, Personal or Business: _PERSONAL_
Issue Date: _2004_
To Remain in Force? ☒ Yes ☐ No
Face Amount: _500,000_

e) Have you ever sold, assigned, or pledged as collateral a life insurance policy, or an interest in a life insurance policy?
☐ Yes ☒ No *(If "Yes," give details.)* _____

## 2. Existing Insurance (Replacement):

a) Do you have any existing life insurance policies or annuity contracts? ☒ Yes ☐ No (If "Yes," complete a Replacement Notice if required by State Law.)

b) Will any existing life insurance policy or annuity contract with this or any other company be discontinued, reduced, changed, or replaced if insurance now applied for is issued?
☐ Yes ☒ No *(If "Yes," give details.)*
Company: _____ Policy No.: _____
Amount: $ _____ Date: _____
Type of Policy: _____

## 3. Insurance Producer's Replacement Statement:

a) To the best of your knowledge, does the applicant have any existing insurance policies or contracts? ☒ Yes ☐ No

b) To the best of your knowledge, does the policy applied for involve replacement, in whole or in part, of any existing life insurance, annuity, disability income or overhead expense insurance, or any other accident and sickness insurance?
☐ Yes ☒ No *(If "Yes," give details.)*
Company: _____ Policy No.: _____

c) Will a policy loan on one or more policies be utilized to pay any portion of the initial premium or deposit on the policy applied for?
☐ Yes ☒ No *(If "Yes," give policy number(s) involved.)*
_____

## 4. Statement of Intent:

a) Is there, or will there be, any agreement or understanding that provides for a party, other than the Owner, to obtain any interest in any policy issued on the life of the proposed insured as a result of this application? ☐ Yes ☒ No

b) Will the premiums be financed through a loan? ☐ Yes ☒ No
*(If "Yes," list: lender, duration of loan, and collateral required.)*

c) Will any entity other than a life insurance company be medically evaluating the proposed insured either to obtain financing or to determine life expectancy? ☐ Yes ☒ No *(If "Yes," give details.)*

d) Will the policy, if issued, be placed in a trust? ☐ Yes ☒ No
*(If "Yes," give details and provide copy of trust.)* _____

## 5. Financial Questions:

| | Proposed Insured One | Proposed Insured Two |
|---|---|---|
| a) Gross annual earned income: *(salary, commissions, bonuses, etc.)* | $ 45,000 | $ |
| b) Gross annual unearned income: *(dividend, interest, net real estate income, etc.)* | $ 0 | $ |
| c) Household net worth: | $ 11 MILLION | |
| d) In the last 5 years, has either of the Proposed Insured(s) or the business had any major financial problems (bankruptcy, etc.)? ☐ Yes ☒ No *(If "Yes," give details.)* | | |

e) If Owner, other than the proposed insured, is an individual:
Net Worth: $ _11 MILLION_
Net Annual Income: $ _250,000_
Total Family Income: $ _295,000_

## 6. Source of Premiums: *(Check one or more.)*

☒ Current Income ☐ Cash Savings ☐ Employer
☐ Securities ☐ Relative ☐ Premium Finance
☐ Sale of personal property or real estate.
☐ Insurance/Annuities (Loans/Withdrawals).
☐ 1035 Exchange
☐ Insurance or annuity maturity value or death benefit.
☐ Rollover/Transfer of 401(k) or Pension Funds.
☐ Other: _____

## 7. Business Insurance: *(Complete for ALL Business Owned Insurance.)*

| | Current Year | Previous Year |
|---|---|---|
| a) Assets: | $ | $ |
| b) Liabilities: | $ | $ |
| c) Gross Sales: | $ | $ |
| d) Net Income after taxes: | $ | $ |
| e) Fair Market Value of the business: | $ | $ |

f) What percentage of the business is owned by Proposed Insured(s)? _____ %

g) Are other partners / owners / executives being insured?
☐ Yes ☐ No *(If "Yes," give details.)*
_____

---

UN 2550 FI PA

Edition: 10/2007



**UNIFI**
Companies™

**Application for Insurance**
**Lifestyle Questionnaire**

| | | |
|---|---|---|
| **Acacia Life Insurance Company**<br>P.O. Box 81889, Lincoln, NE 68501<br>800-745-1112 Fax 402-467-7335<br>(Client Service Department) | **Ameritas Life Insurance Corp.**<br>P.O. Box 81889, Lincoln, NE 68501<br>800-745-1112 Fax 402-467-7335 | **The Union Central Life Insurance Company**<br>P.O. Box 40888, Cincinnati, OH 45240<br>800-319-6901, Fax 513-595-2352 |

**Lifestyle Questions:** *(Please provide details for "Yes" answers.)*

Has any person proposed for coverage:

1. Used tobacco or nicotine products in any form within the last five years? *(In Details, provide dates and type: cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches, gum, etc.)* ☐ Yes ☒ No

2. Ever applied for insurance or reinstatement which has been: declined, postponed, rated, modified; or had any such insurance canceled or a renewal premium refused? (In Details, provide date, reason, and company name.) ☒ Yes ☐ No

3. Ever received or claimed: indemnity, benefits, or a payment for any injury, sickness or impaired condition? ☐ Yes ☒ No

4. Ever made any flights as: a pilot, student pilot, or crew member of any aircraft? *(If "Yes," complete Aviation Questionnaire.)* ☐ Yes ☐ No

5. Been convicted of a moving traffic violation, had any traffic accidents, or had a driver's license revoked or suspended within the past five years? ☐ Yes ☒ No

6. Been charged with, or convicted of, or currently awaiting trial on the violation of any criminal law? ☐ Yes ☒ No

7. In the next year, any intention of traveling outside the U.S. or Canada or residing outside of the U.S.? *(If "Yes," complete Foreign Travel Questionnaire.)* ☒ Yes ☐ No

8. Belong to or intend joining: any active or reserve military, naval, or aeronautic organization? *(If "Yes," complete Military Service Questionnaire.)* ☐ Yes ☒ No

9. Engaged in or plan to engage in any form of the following: *(If "Yes," check all boxes below that apply and complete appropriate form(s).)* ☐ Yes ☒ No

   ☐ Motorized Racing  ☐ Scuba diving
   ☐ Parachuting/Skydiving  ☐ Hang-gliding
   ☐ Ballooning  ☐ Mountain climbing
   ☐ Rodeo  ☐ Competitive skiing
   ☐ Snowmobiling  ☐ Gliding
   ☐ Boat racing  ☐ Other: _____

**Proposed Insured One - Details for any "Yes" answers to Lifestyle Questions:** *(Indicate question number and timeframe.)*

#2 BANNER Life -
DECLINED due to aNeMiA
WHICH is no longer an Issue

#7- FoREIGN QUESTIONNAIRE ATTACHED

**Proposed Insured Two - Details for any "Yes" answers to Lifestyle Questions:** *(Indicate question number and timeframe.)*

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

UN 2550 LQ                                                                 Edition: 10/2007

# UNIFI
Companies

## Application for Insurance
### Health Questionnaire

**Acacia Life Insurance Company**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335
(Client Service Department)

**Ameritas Life Insurance Corp.**
P.O. Box 81889, Lincoln, NE 68501
800-745-1112 Fax 402-467-7335

**The Union Central Life Insurance Company**
P.O. Box 40888, Cincinnati, OH 45240
800-319-6901, Fax 513-595-2352

Name of Proposed Insured: DIANCA J RUDOLPH

**Health Questions. Please complete Details for "Yes" answers.**

1.  a) Height: 5 4   b) Weight: 171
    c) Have you lost 10 lbs. or more in the past 12 months? ☐ Yes ☒ No
    d) Have you gained 10 lbs. or more in the past 12 months? ☐ Yes ☒ No
2.  Have you ever been medically treated for or been diagnosed as having:
    a) Disorder of eyes, ears, nose, or throat? ☐ Yes ☒ No
    b) Dizziness, vertigo, fainting, seizures, recurrent headache; speech defect, paralysis, or stroke? ☐ Yes ☒ No
    c) Shortness of breath, bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? ☐ Yes ☒ No
    d) Chest pain, palpitation, high blood pressure, heart murmur, heart attack or other disorder of the heart or blood vessels? ☐ Yes ☒ No
    e) Jaundice, intestinal bleeding; ulcer, hernia, colitis, hepatitis, diverticulitis, recurrent indigestion or other disorder of the stomach, intestines, liver or gallbladder? ☐ Yes ☒ No
    f) Sugar, albumin, blood or pus in urine; sexually transmitted disease; stone or other disorder of kidney or bladder? ☐ Yes ☒ No
    g) Diabetes, thyroid, or other endocrine disorders? ☐ Yes ☒ No
    h) Disorder of breasts, reproductive organs, or prostate? ☒ Yes ☐ No
    i) Neuritis, arthritis, rheumatism, gout, or disorder of or injury to the bones, muscles, nerves, knees, wrists or other joints? ☐ Yes ☒ No
    j) Disorder of skin, lymph glands, cyst, tumor or cancer? ☐ Yes ☒ No
    k) Allergies, anemia, or other disorder of the blood? ☒ Yes ☐ No
    l) Spinal, neck or back disorder or injury, including sprains, strains, or disc disorder? ☐ Yes ☒ No
    m) Anxiety, depression, stress or other mental, nervous, psychiatric or emotional disorder? ☐ Yes ☒ No
    n) Chronic fatigue, fibromyalgia, or Epstein-Barr virus? ☐ Yes ☒ No
    o) C-section, miscarriage, or complication of pregnancy? ☐ Yes ☒ No
    p) Any mental or physical disorder not listed above? ☐ Yes ☒ No
3.  Have you ever consulted a chiropractor? ☐ Yes ☒ No
4.  Are you currently pregnant? ☐ Yes ☒ No
5.  Other than noted above, have you within the past five years:
    a) Had a checkup, consultation, illness, injury, or surgery; been a patient in a hospital, clinic, sanatorium, or other medical facility; had an electrocardiogram, X-ray, or other diagnostic test? ☒ Yes ☐ No
    b) Been advised by a licensed medical professional to have any diagnostic test, hospitalization, or surgery which was not completed? ☐ Yes ☒ No
6.  Within the past ten years, have you ever:
    a) Used marijuana, cocaine, barbiturates, tranquilizers, heroin, LSD, amphetamines, morphine, narcotics; or any other drug, except as legally prescribed by a physician? ☐ Yes ☒ No
    b) Sought or received medical treatment or professional advice; or been arrested for the use of alcohol, cocaine, marijuana, narcotics or any other drug? ☐ Yes ☒ No
    c) Consumed alcoholic beverages? If yes, specify extent? ☒ Yes ☐ No

7.  Have you been diagnosed by a licensed medical professional as having Acquired Immune Deficiency Syndrome (AIDS) or Human Immunodeficiency Virus (HIV)? ☐ Yes ☒ No

8.  Have any of your immediate family members (parents, brothers and sisters), died of or been diagnosed as having; coronary artery disease, diabetes, cancer, stroke or kidney disease, prior to age 60? ☒ Yes ☐ No

|  | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father: |  | DIABETES | 85 |
| Mother: |  | COLON CANCER | 58 |
| Brothers & Sisters: | 54 x 57 |  |  |

9.  a) Name and address of personal or attending doctor:
    DR. MICHAEL HOGAN - MAYO CLINIC
    5777 E MAYO BLVD  PHOENIX, AZ 85054

    b) Telephone: 480 - 301 - 8080
    c) Date last consulted: APRIL 2012
    Reason and any medication/treatment given:
    CHECK UP - GOOD HEALTH

    d) List any medications (prescription or nonprescription) you are taking currently:
    IRON

For each "Yes" answer, give details. (Identify: question number, diagnoses, dates, duration, names and addresses of all attending physicians and medical facilities. Attach additional Health Questionaire page, UN 2550 HQ, if needed.)

2H-1999- BENIGN OVARIAN CYST
2005- D&C w/ BENIGN RESULTS
2K- ANEMIA - NO LONGER AN ISSUE
DR. MICHAEL HOGAN
5A- DR MICHAEL HOGAN 5777 E MAYO BLVD St
PHOENIX, AZ 85054 - MAYO CLINIC
CHECKUP- GOOD HEALTH · APRIL 2012
8C - GLASS OF WINE · OCCASIONALLY AT
DINNER

UN 2550 HQ PA

Edition: 10/2007

# UNIFI

*Companies*

## Application for Insurance
### Authorization

| | | |
|---|---|---|
| Acacia Life Insurance Company | Ameritas Life Insurance Corp. | The Union Central Life Insurance Company |
| P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 40888, Cincinnati, OH 45240 |
| 800-745-1112, Fax 402-467-7335 | 800-745-1112, Fax 402-467-7335 | 800-319-6901, Fax 513-595-2352 |
| (Client Service Office) | (Client Service Office) | (Client Service Office) |

### Authorization to Obtain and Disclose Information

I authorize any health care providers, pharmacy benefit manager, hospitals, insurers, the Medical Information Bureau, Inc. ("MIB"), consumer reporting agency, government agency, financial institution, and/or accounting, educational institution, or employer; having data or facts about the proposed insured's or claimant's physical or mental condition, medical care, advice, treatment, the use of drugs, alcohol, or tobacco, HIV, AIDS and sexually transmitted diseases, prescription drug records, financial status, education records, or employment status or other relevant data or facts about the proposed insured or claimant; including wage and earnings, or data or facts with respect to other insurance coverage; to give all data or facts to the companies listed above ("the Companies"), their reinsurers, or any other agent or agency acting on the Companies' behalf.

Data or facts obtained will be released only: (1) to reinsurers; (2) to MIB; (3) to persons performing business duties as directed or contracted for by the Companies related to the proposed insured's application or claim or other insurance-related functions; (4) as permitted or required by law; (5) to government officials when necessary to prevent or prosecute fraud or other illegal acts; and (6) to any person or entity having an authorization expressly permitting the disclosure. The personal data or facts used or disclosed under this authorization may be subject to redisclosure and no longer protected by federal privacy regulations.

The above data and facts will be used to: (1) underwrite an application for coverage; (2) obtain reinsurance; (3) resolve or contest any issues of incomplete, incorrect, or misrepresented information on the application identified above which may arise during the processing or review of the application, or any other application for insurance; (4) administer coverage and claims; and (5) complete a consumer report, investigative consumer report or telephone interview about the proposed insured or claimant.

I agree that this authorization is valid for two and one-half years from the date shown below. I also agree that a copy is as valid as the original. I, or my authorized representative, am entitled to a copy. For purposes of collecting data or facts relating to a claim for benefits, this authorization is valid for the duration of the claim. I understand that: (1) I can revoke this authorization at any time by giving written request to the Companies; (2) revoking this authorization will not affect any prior action taken by the Companies in reliance upon this authorization; and (3) failing to sign, or revoking this authorization may impair the Companies' ability to process my application or evaluate my claim and may be a basis for denying this application or a claim for benefits.

I acknowledge receipt of Notice of Insurance Information Practices.

Dated at: _PITTSBURGH_ _PA_ _8_ _12_ _12_
　　　　　　City　　　State　　Month　Day　Year

_Bianca T. Rudolph_
Print or Type Name of Proposed Insured

X _Bianca Rudolph_
Signature of Proposed Insured

_____
Print or Type Name of Other Proposed Insured

X _____
Signature of Other Proposed Insured (if other than policyholder and age 18 or older)

_____
Print or Type Name of Personal Representative of Proposed Insured

X _____
Signature of Personal Representative of Proposed Insured

_____
Description of Authority of Personal Representative
*(Parent, Legal Guardian, Attorney-in-Fact)*
*(Attach documentation in support of your authority.)*

---

UN 2550 AU 11-11 PA　　　This Authorization complies with the HIPAA Privacy Rules.　　　11-29-11



# UNIFI
Companies™

## Application for Insurance
### Agreement

| | | |
|---|---|---|
| Acacia Life Insurance Company | Ameritas Life Insurance Corp. | The Union Central Life Insurance Company |
| P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 40888, Cincinnati, OH 45240 |
| 800-745-1112 Fax 402-467-7335 | 800-745-1112 Fax 402-467-7335 | 800-319-6901, Fax 513-595-2352 |
| (Client Service Department) | | |

## Agreement

The undersigned represent that their statements in this application and Part II, if such Part II is required by the companies listed above ("the Companies"), are true and complete to the best of their knowledge and belief. It is agreed that:

(a) the only statements to be considered as the basis of the policy are those contained in the application or in any amendment to the application;

(b) any prepayment made with this application will be subject to the provisions of the CONDITIONAL RECEIPT;

(c) if there is no prepayment made with this application, the policy will not take effect until:
(1) the first premium is paid during the lifetime of the proposed insured(s) and while his/her health and the facts and other conditions affecting their insurability remain as described in this application and Part II, if required; and
(2) the policy is delivered to the Owner;

(d) no one except the President, a Vice President, the Secretary, or an Assistant Secretary can make, alter or discharge contracts or waive any of the Companies' rights or requirements; and

(e) this application was signed and dated in the state indicated.

If applying for an indeterminate premium plan:

(a) the premium for such plan is guaranteed for the initial guarantee period, and after such period, the current annual premium is not guaranteed and may change; and

(b) the premium will never exceed the specified maximum.

## Fraud Notice

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any material false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Dated at: _Pittsburgh Pa._    _8_ _12_ _12_
City    State    Month    Day    Year

Print or Type Proposed Insured Name _Bianca I. Kudolph_

X _(signature)_
Signature of Proposed Insured.

Print or Type Name of Other Proposed Insured.

X _____
Signature of Other Proposed Insured (if other than policyholder and age 18 or older).

Print or Type Owner if not Proposed Insured. _Bianca P. Kudolph_

X _(signature)_
Signature of Owner if not Proposed Insured.

Print or Type Insurance Producer Name. _William M Gorman_    Producer No./Sit. Code. _AG00036573-04_

X _(signature)_
Signature of Licensed Soliciting Producer.    Producer State Lic. No. _280913_

Print or Type Insurance Producer Name.    Producer No./Sit. Code.

X _____
Signature of Licensed Soliciting Producer.    Producer State Lic. No.

Agency Name. _Pittsburgh Brokerage_    Agency No. _1351_

## Taxpayer Identification Number (TIN)

Under penalties of perjury, I certify that:

1) The number shown on this form is my correct TIN (or I am waiting for a number to be issued to me); and

2) I am not subject to backup withholding either because: (a) I am exempt from backup withholding; (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me that I am no longer subject to backup withholding.

| Social Security Number | Employer Identification Number |
|---|---|
| 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 | |

3) I am a U.S. Citizen or other U.S. Person (including a U.S. resident alien).

Cross out item (2) if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return.

X _(signature)_    _8/12/12_
Signature of Owner, Trustee/Employer    Date

UN 2550 AG PA    Edition: 10/2007



**Companies**

# Application for Insurance
## Authorization

| | | |
|---|---|---|
| **Acacia Life Insurance Company** | **Ameritas Life Insurance Corp.** | **The Union Central Life Insurance Company** |
| P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 81889, Lincoln, NE 68501 | P.O. Box 40888, Cincinnati, OH 45240 |
| 800-745-1112, Fax 402-467-7335 | 800-745-1112, Fax 402-467-7335 | 800-319-6901, Fax 513-595-2218 |
| (Client Service Department) | | (Client Service Department) |

## Authorization to Obtain and Disclose Information

I authorize any health care providers, hospitals, insurers, the Medical Information Bureau, Inc.("MIB"), consumer reporting agency, government agency, financial institution, and/or accounting, educational institution, or employer; having data or facts about the proposed insured's or claimant's physical or mental condition, medical care, advice, treatment, the use of drugs, alcohol, or tobacco, HIV, AIDS and sexually transmitted diseases, prescription drug records, financial status, education records, employment status or other relevant data or facts about the proposed insured or claimant; including wage and earnings, or data or facts with respect to other insurance coverage; to give all data or facts to the companies listed above ("the Companies"), their reinsurers, or any other agent or agency acting on the Companies' behalf.

Data or facts obtained will be released only: (1) to reinsurers; (2) to MIB; (3) to persons performing business duties as directed or contracted for by the Companies related to the proposed insured's application or claim or other insurance-related functions; (4) as permitted or required by law; (5) to government officials when necessary to prevent or prosecute fraud or other illegal acts; and (6) to any person or entity having an authorization expressly permitting the disclosure. The personal data or facts used or disclosed under this authorization may be subject to redisclosure and no longer protected by federal privacy regulations.

The above data and facts will be used to: (1) underwrite an application for coverage; (2) obtain reinsurance; (3) resolve or contest any issues of incomplete, incorrect, or misrepresented information on the application identified above which may arise during the processing or review of the application, or any other application for insurance; (4) administer coverage and claims; and (5) complete a consumer report, investigative consumer report or telephone interview about the proposed insured or claimant.

I agree that this authorization is valid for two and one-half years from the date shown below. I also agree that a copy is as valid as the original. I, or my authorized representative, am entitled to a copy. For purposes of collecting data or facts relating to a claim for benefits, this authorization is valid for the duration of the claim. I understand that: (1) I can revoke this authorization at any time by giving written request to the Companies; (2) revoking this authorization will not affect any prior action taken by the Companies in reliance upon this authorization; and (3) failing to sign, or revoking this authorization may impair the Companies' ability to process my application or evaluate my claim and may be a basis for denying this application or a claim for benefits.

I acknowledge receipt of Notice of Insurance Information Practices.

Dated at: _Pittsburgh_ _PA_ _8_ _12_ _12_
City    State    Month  Day  Year

_Bianca J. Rudolph_
Print or Type Name of Proposed Insured

X _Bianca Rudolph_
Signature of Proposed Insured

_____
Print or Type Name of Other Proposed Insured

X _____
Signature of Other Proposed Insured

_____
Print or Type Name of Personal Representative of Proposed Insured

X _____
Signature of Personal Representative of Proposed Insured

Description of Authority of Personal Representative
*(Parent, Legal Guardian, Attorney-in-Fact)*
*(Attach documentation in support of your authority.)*

---

UN 2597-1 AU PA          This Authorization complies with the HIPAA Privacy Rules.



**LUTTNER FINANCIAL GROUP
LLC**

WILLIAM M. GORMAN
LFG PRIVATE CLIENT GROUP

October 19, 2016

Dr. Lawrence P. Rudolph
4141 East Lakeside Lane
Paradise Valley, AZ 85253

Dear Dr. Rudolph:

Enclosed is Mrs. Rudolph's $750,000 Ameritas UL policy. This policy replaces the one
that was previously sent to you. Mrs. Rudolph's coverage has been in force and the
reason you are receiving another policy is Ameritas is requesting for new delivery
paperwork to be signed. The illustration that was submitted prior did not include the
conversion credit and therefore, they are asking for a new signed illustration for the file.

Please sign where indicated as applicant on all forms and have Mrs. Rudolph sign where
indicated as the insured. Return the signed paperwork to me in the enclosed envelope
and I will forward it to the company.

Sincerely,

Liz Devich
Administrative Assistant to
William M. Gorman

ld

Enclosures



**FIDELITY**

Established 1896

Innovation Is Our Policy

Fidelity Life Association
P.O. Box 5030
Des Plaines, IL 60017

May 4, 2012                                  Policy # 0100382288

BIANCA RUDOLPH
336 Lakewood Rd
Greensburg, PA 15601

Dear Bianca Rudolph,

Congratulations, your Fidelity Life Association insurance policy is enclosed. Your
Policy is an Accidental Death Insurance to Age 80 plan for $100,000 of coverage.
The premium amount is $13.40 payable on a monthly basis via the credit card
payment method. Please read your policy carefully, sign the application attached
to the policy and retain with your important papers.

***IMPORTANT NOTE*** If you have requested that your premiums be debited
from your bank account or credit card, your first withdrawal will occur on the
policy effective date as shown on the policy. Please refer to the application
attached to your policy for the bank account or credit card information you
provided to your agent.

Please do not hesitate to contact our New Business Department at
NewBus@FidelityLife.com or call us at 877-704-6279 if you should have any
questions. You can also find additional information on our company at
www.FidelityLife.com

We are committed to providing you with the quality products and services that
you expect and deserve.

Sincerely,


Customer Service
1-800-369-3990


FLAD



### FIDELITYLIFE

Established 1896



Welcome to Fidelity Life Association

A Legal Reserve Life Insurance Company



**FIDELITY LIFE**

Established 1896

# ACCIDENTAL DEATH INSURANCE POLICY

**This is a Non-Participating Policy**
**The Policy is Non-Cancelable and Guaranteed Renewable until the Expiry Date shown on Page 3**
**Premiums may never be increased.**

Upon receipt of due proof that the Accident resulting in the Insured's death occurred while coverage on such Insured is in force, Fidelity Life Association will pay the Death Benefit of this policy if the Insured dies solely as a result of injuries. The death benefit will be paid to the Beneficiary when due proof of the Insured's death is received at our Home Office. The Company will also require the completion of its claims forms. We have issued this policy in consideration of the application and the payment of premium. All benefits are subject to the terms and conditions of this policy. This policy is non-cancelable by the Company except for non-payment of premium.

For service or information on this policy, contact the agent who sold the policy or Our Home Office.

**Right to Examine Policy:** We want You, the Policyowner, to be satisfied with your policy. You may, within **30** days after it is delivered, return the policy to your Home Office or to the agent who sold the policy and receive a full refund of any premiums that have been paid. Once returned, the policy will be void from its beginning.

**Read this policy carefully.** This policy is a legal contract between the Policyowner and the Company. The entire contract consists of this policy, and any attached riders or endorsements, schedules, the attached written application, and any attached supplemental written applications.

**This is an accident only policy and it does not pay benefits for loss from sickness.**
This Accidental Death Insurance Policy provides:

- Accidental Death Benefit Policy Expiry Date shown on page 3
- Reduced benefits on the Policy Anniversary following the Primary Insured's 70th Birthday, by 50% as shown on page 3
- Auto Safety Benefit
- Travel Benefit to Policy Expiry Date shown on page 3

This policy is not eligible for annual dividends.

This Policy is signed for Fidelity Life Association, A Legal Reserve Life Insurance Company by Our President and Secretary.

Secretary

President

**Fidelity Life Association, A Legal Reserve Life Insurance Company**
**8700 W. Bryn Mawr Ave., Ste. 900S**
**Chicago, IL 60631**
**Tel 800.369.3990**
**Fax 866.375.8175**

To file a claim or to ask a question you may contact the agent who sold you this policy or you may contact our Policyowner Service department at the address or numbers given above or on the web at:
**www.fla-life.com**

F3700 (04/06) PA

# Table of Contents

Page No.

Schedule Page .................................................................................... 3
Definitions ........................................................................................ 4
  Accidental Death ........................................................................ 4
  Age ............................................................................................ 4
  Beneficiary ................................................................................ 4
  Evidence of Insurability ............................................................ 4
  Expiry of Policy ........................................................................ 4
  Insured ...................................................................................... 4
  Policy Anniversary .................................................................... 4
  Policy Date ................................................................................ 4
  We, Our, The Company or Us .................................................... 4
  You, Your or Yours .................................................................... 4
Policy Provisions .............................................................................. 4
  Entire Contract .......................................................................... 4
  Assignment ................................................................................ 4
  Autopsy ...................................................................................... 4
  Beneficiary ................................................................................ 4
  Change of Beneficiary .............................................................. 5
  Cancellation of this Policy ........................................................ 5
  Conformity with State Statutes .................................................. 5
  Grace Period .............................................................................. 5
  Time Limit on Certain Defenses ................................................ 5
  Lapse ......................................................................................... 5
  Legal Action .............................................................................. 5
  Misstatement of Age .................................................................. 5
  Non-Participating ...................................................................... 5
  Payments by the Company ........................................................ 5
  Policyowners Rights .................................................................. 5
  Premium Payments .................................................................... 5
  Payment of Premiums ................................................................ 5
  Reinstatement ............................................................................ 5
  Renewability .............................................................................. 6
  Non-cancelable .......................................................................... 6
  Death Benefit ............................................................................ 6
  Accidental Death Benefit .......................................................... 6
  Death Benefit Calculations ........................................................ 6
  Proof of Accidental Death ........................................................ 6
  Death of Beneficiary .................................................................. 7
  Multiple Beneficiary .................................................................. 7
  Death of Beneficiary in a Common Disaster .............................. 7
  Exclusions .................................................................................. 7
Other Coverages ................................................................................ 7
  Auto Safety Benefit .................................................................. 7
  Travel Benefit ............................................................................ 7
Termination of Coverage .................................................................... 7

# POLICY SCHEDULE

| | | | |
|---|---|---|---|
| Policy Number: | 0100382288 | Principal Initial Benefit *: | $100,000 |
| Primary Insured: | BIANCA RUDOLPH | Auto Safety Benefit: | $10,000 |
| Policy Owner: | BIANCA RUDOLPH | Travel Benefit: | $100,000 |
| Effective Date: | May 04, 2012 | Insured Gender and Age: | Female 52 |
| | | Premium Class: | Standard |
| | | Issue Date: | April 26, 2012 |
| | | Expiry Date: | April 26, 2040 |

**\*On the Policy Anniversary following the Primary Insured's 70th Birthday, the Principal Benefit will decrease by 50%.**

| | |
|---|---|
| **Policy Description:** | Accidental Death Insurance to Age 80 |
| **Beneficiary:** | As stated in the application or as subsequently changed. |
| **Total Initial Annual Premium:** | $154.00 ** |
| **Principal Benefit Prior to Age 70:** | $100,000 |
| **Principal Benefit After Age 70 to age 80:** | $50,000 |
| **Additional Auto Safety Benefit:** | $10,000 |
| **Additional Travel Benefit to age 80:** | $100,000 |

## Annual Policy Premiums

** The Total Annual Premium shown above includes the $55.00 annual Policy Fee and the premium for any riders, which may be attached to this Policy. The Annual Premium is guaranteed not to increase for the policy duration.

## Benefits and Premiums

| | Annual Premium | Years Payable |
|---|---|---|
| Initial annual premium for benefits starting on the Policy Date: | | |
| Base Policy, including the Policy Fee | $154.00 | 28 |
| **Total Initial Annual Premium** | **$154.00** | |

Printed as of May 04, 2012

## Premium Payment Options

You have selected a payment mode of monthly. Monthly premiums equal your annual premium multiplied by a guaranteed modal factor of 0.087. Changes to your current payment mode must be requested in writing to Us. Changes in mode, other than to annual mode, will be subject to modal factors and availability as determined by Company rules at the time of the request. Premiums are due and payable on each due date or You risk voluntary termination or reduced benefits.

**Policy Reinstatement Rate:    6.0%**

F3700(04/06)PA                    Page 3 of 7

# DEFINITIONS

**ACCIDENTAL DEATH** is a Death due to Accidental Bodily Injury caused by an Accident occurring while the insurance is in force, directly and independently of all other causes.

**AGE** is the age last birthday of the insured.

**BENEFICIARY** is the person, persons, or entity designated to receive the death benefit of this policy.

**EVIDENCE OF INSURABILITY** is satisfactory proof, as determined by Us, that a person is acceptable for insurance.

**EXPIRY DATE OF POLICY** is the date this policy will terminate, unless terminated earlier (because a premium was not paid), as is shown in the Policy Schedule.

**INSURED** is the person whose life is insured under this policy. The Insured is shown in the Policy Schedule.

**EFFECTIVE DATE** is used to determine the start of the contestability period.

**POLICY ANNIVERSARY:** Shall be determined from the Policy Date as listed in the Policy Schedule.

**POLICY DATE** is the date which this policy begins. This is the date from which policy anniversaries, policy years, policy months and premium due dates are determined. The Policy Date is shown in the Policy Schedule.

**WE, OUR, THE COMPANY OR US** refers to Fidelity Life Association, a Legal Reserve Life Insurance Company.

**YOU, YOUR, or YOURS:** Refers to the Policyowner of this policy. The Policyowner may be someone other than the Insured.

# POLICY PROVISIONS

**ENTIRE CONTRACT:** This policy is a legal contract between the Policyowner and Us. The entire contract consists of this policy, and any attached riders or endorsements, schedules, the attached application, applications for modifications in the policy and any attached supplemental applications. We have issued this policy in return for the application and the payment of premiums. All statements made by or for the Insured in the application are in the absence of fraud, considered to be representations and not warranties. No statement shall be used in defense of a claim under the policy unless it is contained in a written application that is endorsed upon or attached to the policy when issued or delivered. We can contest the validity of this policy for any material misrepresentation of a fact. To do so, however, the misrepresentation must have been made in the application and a copy of the application must have been attached to this policy when issued. Any change or waiver of its terms must be in writing and signed by Our President, Vice President, Secretary or an Assistant Secretary and endorsed on this policy to be effective.

**ASSIGNMENT:** You may assign this policy. For any assignment to be binding on Us, We must receive the original Assignment, or a signed certified copy at Our Home Office and it must be recorded by Us. Once We receive the original Assignment, or a signed certified copy, the rights of the Policyowner and the interest of any Beneficiary or any other person will be subject to the assignment. We will not be responsible for the validity of any assignment. We are not liable for any payment made by Us before We record the assignment.

**AUTOPSY:** Unless prohibited by law, we have the right to examine the body and have an autopsy done during the period when the claim is pending. We will pay for the autopsy.

**BENEFICIARY:** The Beneficiary shall be as designated on the application to receive any Accidental Death Benefits payable. If there is no Beneficiary living or named, Accidental Death Benefits will be payable to the Policyowner if living; otherwise to the Policyowner's estate. Any payment made by Us in good faith will fully discharge Us to the extent of such payment.

F3700 (04/06) PA                    Page 4 of 7

**CHANGE OF BENEFICIARY:** Unless You provide otherwise in writing to Us, You may change the Beneficiary during the lifetime of the Insured. Changes must be made by written request filed with Us. The change will take effect on the date the request was received, but it will not apply to payments made by Us before We accept the request in writing. We will have no liability for any action taken by Us before that acceptance.

**CANCELLATION OF THIS POLICY:** This Policy may be cancelled by a written request. Cancellation will take effect on the date we receive the written request at our Home Office. We will refund a pro rata part of any premium paid for this Policy beyond that date.

**CONFORMITY WITH STATE STATUTES:** Any provision of the policy, which on the Policy Date is in conflict with the laws of the state in which You reside on that date, is amended to conform to the minimum requirements of such laws.

**GRACE PERIOD:** After the first premium has been paid, We allow a 31 day grace period to pay each subsequent premium. During this grace period the policy remains in full force. If the Insured dies during the grace period, We will deduct the unpaid premium from the benefits of this policy.

**TIME LIMIT ON CERTAIN DEFENSES:** Except for failure to pay premiums, We will not contest the validity of this policy after it has been in force for two years from its Issue Date.

**LAPSE:** If a premium is not paid by the end of this grace period, the policy will lapse without value and no further premium payments may be made.

**LEGAL ACTION:** You cannot sue Us for benefits under the policy sooner than 60 days after We have been provided with written proof of Accidental Death as required. No such action may be brought after three years from the time written proof of Accidental Death is required.

**MISSTATEMENT OF AGE OR GENDER:** If the age or gender of the Insured has been misstated, the amount payable will be the amount that the premium paid would have purchased at the correct age and gender.

**NONPARTICIPATING:** This policy is nonparticipating and does not share in the profits or surplus of the Company.

**PAYMENT BY THE COMPANY:** Payment by the Company is payable from our Administrative Office.

**POLICYOWNERS RIGHTS:** While the Insured is living, the Policyowner may exercise all rights given by this policy or allowed by Us. These rights include assigning this policy, changing Beneficiaries, changing ownership, enjoying all policy benefits and exercising all policy options.

The consent of any Irrevocable Beneficiary is needed to exercise any policy right except the right to:
   a.  Change the frequency of premium payments, or;
   b.  Reinstate this policy after lapse.

## PREMIUM PAYMENTS AND REINSTATEMENT

**PAYMENT OF PREMIUMS:** All Premiums after the first are payable annually in advance until the Expiry Date shown in the Policy Schedule. Other modes of payment are available at the discretion of the Company. The first premium is due on the Policy Date. Each premium after the first one is payable at Our Home Office. Upon request, We will provide you with a written receipt. Each subsequent premium is due when the period covered by the preceding premium ends.

**REINSTATEMENT:** This policy may be reinstated, while the Insured is alive, at any time within three years after the date of lapse. However, the policy cannot be reinstated on or after the Expiry Date.

If the premium due is paid within 60 days of the due date (within 29 days after the end of the Grace period) and during the lifetime of the Insured, the policy will be reinstated without evidence of insurability.

If the premium due is not paid within 60 days of the due date (within 29 days after the end of the Grace Period) Reinstatement will be subject to evidence of insurability satisfactory to Us. All overdue premiums must be paid from their due dates to the date of reinstatement.

If any renewal premium be not paid within the time granted the insured for payment, a subsequent acceptance of premium by the insurer or by any agent duly authorized by the insurer to accept such premium, without requiring in connection therewith an application for reinstatement, shall reinstate the policy: Provided, however, That if the insurer or such agent requires an application for reinstatement and issues a conditional receipt for the premium tendered, the policy will be reinstated upon approval of such application by the insurer or, lacking such approval, upon the forty-fifth day following the date of such conditional receipt unless the insurer has previously notified the insured in writing of its disapproval of such application. The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date.

## RENEWABILITY

This policy is Non-Cancelable and Guaranteed Renewable until the Expiry Date shown on page 3 except as provided under the Termination of Coverage provision.

## THE DEATH BENEFIT

**NOTICE OF CLAIM:** Written notice of claim must be given within 20 days after Accidental Death or as soon as reasonably possible. Written notice can be given to Us at Our Administrative Office at our address shown on the first page of this policy. Notice should include Your name and Your Policy Number.

**CLAIM FORMS:** When We receive the notice of claim, We will send You forms for filing proof of Accidental Death. If these forms are not given to You within 15 days, You may send us proof of Accidental Death requirements by giving Us a written statement of the nature and extent of the Accidental Death within the time limit as stated in the Proof of Accidental Death provision.

**TIME PAYMENT OF CLAIM:** When we receive the surrendered policy and due proof that the Insured died as the result of an accident and the accident occurred while this policy was in force, we will pay the death benefit immediately.

**ACCIDENTAL DEATH BENEFIT:** If the Insured dies solely as a result of injuries we will pay the Accidental Death Benefit. The amount of the Accidental Death Benefit is shown as the Primary Insured's Principal Benefit described on page 3.

Under this benefit, the term "injuries" mean bodily injuries caused solely by an accident independent of sickness, illness or disease which results in the Insured's death. The accident must occur while this policy is in force. Injuries do not include any accidental result from medical, surgical or dental treatment.

**Death Benefit Calculations**
In any policy year, the amount of the Death Benefit will be:
    (a) the Death Benefit in effect on the Insured's life; plus
    (b) the amount provided by any riders that are payable; plus
    (c) the premium paid beyond the date of death; plus
    (d) interest, not less than required by law, from the date of death to the date the claim
        is paid;. minus
    (e) any unpaid premium due and unpaid at the date of death.

**PROOF OF LOSS:** To pay any benefit under this policy, we require that due proof of the accidental death be given to us at our Home Office. This proof must show that the Insured's accident occurred while the policy was in force and the death was a direct result of accidental bodily injury independently of all other causes.

Unless prohibited by law, we have the right to examine the body and have an autopsy done at our expense during the period when the claim is pending.

**DEATH OF BENEFICIARY:** If any beneficiary predeceases the Insured, the portion of the proceeds that would have gone to that beneficiary shall be paid to the Estate of the Insured and will not be divided among any other beneficiaries.

**MULTIPLE BENEFICIARIES:** If there is more than one beneficiary, proceeds shall be divided equally among the beneficiaries unless the beneficiary designation specifies the amount to be paid to each beneficiary.

**DEATH OF BENEFICIARY IN A COMMON DISASTER:** If any beneficiary dies with the Insured in a common disaster, proceeds will be paid as if the Beneficiary predeceased the Insured.

**EXCLUSIONS:** No Accidental Death Benefit or Travel Benefit will be payable if the Insured's death results directly or indirectly from any of these causes.

a. Suicide.
b. War and Military Service: Loss sustained or expenses incurred while on active duty as a member of the armed forces of any nation, or losses sustained or expenses incurred as a result of act of war whether declared or undeclared. War is defined as armed conflict between nations, or between factions in the same nation. "Nation" includes any international organization or group of nations.
c. Aviation: Travel in, or descent from or with, any kind of aircraft aboard which the Insured is a pilot or crew member or is giving or receiving any training. "Crew member" includes anyone who has any duty aboard the aircraft.
d. Natural Causes: Bodily or mental illness, disease or infirmity of any kind or medical or surgical treatment for any of these.
e. Intoxicants and Narcotics: Any loss sustained or contracted in consequence of the Insured's being intoxicated, or under the influence of any narcotic unless administered on the advice of a physician.
f. Speed Contest: Fatal injury which is incurred as the result of taking part in any speed contest.
g. Felony: Injury received while committing a felony.

## OTHER COVERAGES

**AUTO SAFETY BENEFIT:** If an Insured dies due to an accident while operating or riding as a passenger in a private passenger automobile, the Company will pay an additional Auto Safety Benefit provided that the Insured was wearing a properly fastened, original, factory installed seat belt at the time of the accident. The amount of the Auto Safety Benefit is shown in the Policy Schedule. Use of a seat belt must be verified by an official accident report or otherwise certified in writing by an official present at the scene of the accident.

**TRAVEL BENEFIT:** If the Principal Benefit is payable under this policy, Fidelity Life will also pay the Travel Benefit, if death was the result of an injury received while the Insured:

a. Was a passenger or in public conveyance; and
b. That conveyance was being operated by a common carrier to transport passengers for hire.

The word "passenger" does not include the operator or any crew member of the public conveyance. It does not include anyone who is in or on the conveyance to give or receive any training. "Crew member" includes anyone who has any duty in or on the conveyance.

## TERMINATION OF COVERAGE

**TERMINATION OF THIS Policy:** This policy ends automatically on the earliest of:

a. The date we pay an Accidental Death Benefit; or
b. The Expiry Date of this Policy, as shown on the Schedule Page; or
c. The first premium due date after we receive the Owner's written request to terminate this policy; or
d. The end of the 31 day grace period for an unpaid premium.

## Application for Accidental Death Insurance
Fidelity Life Association, A Legal Reserve Life Insurance Company

 **FIDELITY**
Established 1896

**PROPOSED INSURED**

Full Legal Name of the Proposed Insured: <u>Bianca Rudolph</u>    Gender: <u>Female</u>

Legal Residence Address: <u>336 Lakewood Rd, Greensburg, PA 15601</u>

Preferred Telephone #: <u>(724) 757-9134</u>    Best Time to Call: <u>Any Day Any Time: (EST)</u>

Email Address: <u>biancarudolph@comcast.net</u>

Date of Birth: <u>12/04/1959</u>    Social Security Number: <u>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</u>

Drivers License Number:    State of Issue:

Are you a United States citizen or do you have Permanent Resident (Green Card) Status?..................... ☑ Yes ☐ No

**COVERAGE**

Product: <u>ADB No Signature 100k and over</u>    Accidental Death Benefit Amount: $ <u>100,000</u>

**OTHER COVERAGE**

Do you have any existing life or health coverage in force or is any application for life or health coverage, or reinstatement, now pending?    ☐ Yes ☑ No

If this policy is issued, will any other existing life or health coverage be cancelled, terminated, lapsed or not renewed?    ☐ Yes ☑ No

**BENEFICIARY**

Beneficiary *(Complex beneficiary designations should be dealt with within the context of a Will)*

| Primary: | % of Benefit: | Relationship to Insured: |
|---|---|---|
| Clarence Rudolph | 100 | Husband |

**PREAUTHORIZED PAYMENT AUTHORIZATION**

As a convenience to me, I authorize Fidelity Life Association, A Legal Reserve Life Insurance Company (Fidelity Life) to make electronic debits or other forms of preauthorized withdrawals from my financial institution as indicated below. I understand that if a debit or withdrawal is not honored by the financial institution, Fidelity Life will consider the premium unpaid. Any debit or withdrawal returned due to insufficient funds may be re-deposited by Fidelity Life. This authorization will remain in effect until written notice by the depositor/card holder is received by Fidelity Life. I further agree that if any such debit or withdrawal is not honored, whether with or without cause, Fidelity Life shall be under no liability whatsoever even though such dishonor results in the lapse of insurance, in accordance with the grace period.

Payor is <u>Insured</u>

Mode of Payment: <u>Monthly</u>    Payment Method: <u>Debit Card</u>    Draw Date (Day of the Month): <u>25th</u>

**PRE-AUTHORIZED DEBIT CARD**    *(This selection will apply to all payments)*

I request that my premium payments be debited from the Debit Card shown below.

Card Type: <u>Visa</u>    Card Number: <u>xxxxxxxxxxx3295</u>    Expiration Date: <u>4-2014</u>

<u>Bianca Rudpolph</u>

Printed Name (As it appears on file with the financial institution)

**DECLARATION AND AGREEMENT**

Each answer and statements given to the questions contained in this application is complete and true to the best of my knowledge and belief. I understand and agree that Fidelity Life Association, A Legal Reserve Life Insurance Company (Fidelity Life) will rely on these answers, and the answers and statements I may give in any other form, taken as a part of this application, as representations and not warranties and that no such statement shall void the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued. I also understand that Fidelity Life reserves the right to accept or deny this application after taking into account whatever information may be available to it, including availability as to coverage by its reinsurers.

The coverage will be effective on its date of issue if the information given in the application is true on that date. **The coverage becomes**

Application for Accidental Death Insurance
Fidelity Life Association, A Legal Reserve Life Insurance Company



**NAME OF PROPOSED INSURED:** BIANCA RUDOLPH

<table>
<tr>
<td rowspan="1"><strong>DECLARATION AND AGREEMENT (Continued)</strong></td>
<td>

effective in consideration of policy delivery and payment of the initial premium.   The effective date will be shown on page 3 of the Policy, provided one is issued.

**Fraud Warning:**    Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

</td>
</tr>
</table>

<table>
<tr>
<td><strong>AGENT</strong></td>
<td>

To the best of your knowledge, will the coverage applied for replace any existing life or health coverage now in force on the proposed insured? .................................................................................................................................................... ☐ Yes ☑ No

Printed Name of Agent: BYRON JAY UDELL
Agent ID: 1588017W     General Agent ID: 1588017

Electronically Signed By: BYRON JAY UDELL
Signature of Licensed Agent

</td>
</tr>
</table>

# CONDITIONAL RECEIPT

 **FIDELITYLIFE**

Fidelity Life Association, A Legal Reserve Life Insurance Company        Established 1896

### *DO NOT complete and give to Applicant UNLESS the first full premium payment is made.*

In exchange for the payment of the first required premium with the application, the Company will provide insurance prior to policy delivery, under the following terms.

No insurance will be provided under this Receipt unless all requirements are first fulfilled exactly during the lifetime of the Proposed Insured. If all requirements are not so met, or the Proposed Insured dies by suicide, the liability of the Company shall be limited to a refund to the Applicant of the payment made for this Receipt. Medical requirements are defined by the Company's current rules and practices and include hospital and physician reports, and medical examinations and tests. No agent may alter or waive any part of this Receipt. This Receipt provides no insurance for riders or additional benefits.

**Requirements**
The following must first be fulfilled for insurance to start:
  a.  All medical requirements are completed and received by the Company within 60 days from the date of the application;
  b.  The first premium has been paid in full;
  c.  All questions in the application have been answered;
  d.  All answers given in the application are true and complete; and
  e.  The Proposed Insured is acceptable to the Company under its rules and practices, for the plan and amount applied for, without amendment, at the rate class applied for or a lesser premium, as of the date the Company receives all of its medical requirements.
  f.  The Proposed Insured has complied with all parts of the Life Application.

**Start of Insurance**
If the above requirements are first met, this Receipt will provide insurance beginning the latest of: (1) the date of the application; or (2) the date of receipt of all medical requirements by the Company.

**End of Insurance**
Once begun, any insurance this Receipt may provide ends at the earliest of: (1) 60 days after the date of the application; (2) when the Company sends a refund of the premium which was exchanged for this Receipt; or, (3) the date any policy issued goes into effect.

**Amount Limit**
The amount of insurance provided by this Receipt is the lesser of: (a) the initial death benefit of the insurance applied for in the application; or (b) $500,000 less all amounts of life insurance and accidental death benefits applied for or in force with the Company.

**Payment Terms**
The first premium will not be considered paid unless any check, draft, or other instrument of payment (given as premium) is paid in accordance with its terms. All premium checks must be made payable to Fidelity Life Association. **Do not make checks payable to the Agent. Do not leave the payee blank.**

### This Receipt is given on behalf of the Company.

I have read and agree to the above terms.

| | |
|---|---|
| Signature of Owner/Applicant | Dated |
| | $ |
| Received from (name of payee) | Amount |
| Bianca  Rudolph | |
| for coverage on the life of (show name of Proposed Insured) | |
| Electronically Signed By: BYRON JAY UDELL | 05-04-2012 |
| Signature of licensed Agent | Dated |

Fidelity Life Association, 1211 West 22nd Street, Suite 209, Oak Brook, IL  60523

F2000                                                                07/05

# ACCIDENTAL DEATH INSURANCE POLICY

**Fidelity Life Association, A Legal Reserve Life Insurance Company**
**8700 W. Bryn Mawr Ave., Ste. 900S**
**Chicago, IL 60631**
**Tel 800.369.3990**
**Fax 866.375.8175**

To file a claim or to ask a question you may contact the agent who sold you this policy or you may contact our Policyowner
Service department at the address or numbers given above or on the web at:
**www.fla-life.com**

F3700 (04/06) PA

 **FIDELITY**LIFE

Established 1896

Fidelity Life Association
**Home Office:** Chicago, IL



## Certificate of Lost Policy

Insured: BIANCA RUDOLPH

Policy Date: April 26, 2012

Plan: ADB Policy

Current Face Amount on Policy:

Billing Frequency: Monthly

Current Premium Payment:

Current Cash Value: $0.00

Rider Benefits:
NONE

Current Policyowner:

Current Policyowner Address:

Current Primary Beneficiary:

Current Secondary/Contingent Beneficiary:

Current Assignee:

Maturity: This policy matures on

Age as of Policy Date: 52

Policy number: 0100382288

Paid to Date: February 26, 2016

$100,000.00

Billing Mode: Credit Card Deduction

$13.40

Current Loan Balance: $0.00

Issue Date:                          Coverage Amount:

BIANCA RUDOLPH

4141 E LAKESIDE MAIN
PARADISE VALLEY, AZ 85253

LAWRENCE P. RUDOLPH                    100.00%

ANA BIANCA RUDOLPH                      50.00%
JULIAN L. RUDOLPH                       50.00%

April 26, 2040

The Insurer issues this certificate upon the representation that the original policy has been lost, destroyed, or delayed in delivery. This certificate in no way changes or modifies the terms and conditions of the original policy. It is evidence only that the policy was issued and is in force as of the date below:

DATE: February 16, 2016

Any additional information about the benefits or provisions of the policy may be obtained at any time by contacting the insurer.

By

President

Fidelity Life Association, 8700 W Bryn Mawr Ave, Ste. 900S Chicago, IL 60631



# FIDELITY LIFE

Established 1896

*Fidelity Life Association*
*P.O. Box 5030*
*Des Plaines, IL 60017*
*T 800.369.3990  F 866.947.8738*
*service@fidelitylife.com*

February 15, 2016

BIANCA RUDOLPH
336 LAKEWOOD RD
GREENSBURG, PA 15601



10090668/000739

RE:  Policy Number:    0100382288
     Resident State:    PA
     Insured:           BIANCA RUDOLPH
     Policy Owner:      BIANCA RUDOLPH

Dear Policy Owner:

Thank you for contacting Fidelity Life Association (FLA) regarding the policy number noted above.

We are writing to confirm the address change you recently requested. To ensure our records are correct, please review the old and new address information below.  If the information below is incorrect, please complete the bottom section of this letter and return it to the address shown above.

If you have any questions, please contact the Customer Service Department at  1-800-369-3990 or service@fidelitylife.com. One of our trusted representatives will be glad to assist you.  We are committed to providing the quality products and services our customers expect and deserve.

**OLD ADDRESS**                          **NEW ADDRESS**
336 LAKEWOOD RD                          4141 E LAKESIDE MAIN
GREENSBURG, PA 15601                     PARADISE VALLEY, AZ 85253

Cut Here

**CONFIRMATION OF NAME/ADDRESS CHANGE**

Name (Please Print)                      Street Address - Apt #

Policy/Contract Number                   City, State and Zip Code

Phone Number (Daytime)                   Owner Signature

Email Address                            Date





Established 1896

*Fidelity Life Association*
*P.O. Box 5030*
*Des Plaines, IL 60017*
*T 800.369.3990  F 866.947.8738*
*service@fidelitylife.com*

February 16, 2016

BIANCA RUDOLPH
4141 E LAKESIDE MAIN
PARADISE VALLEY, AZ 85253



10090698/000015

RE: Policy Number:        0100382288
    Resident State:       AZ
    Insured:              BIANCA RUDOLPH
    Policy Owner:         BIANCA RUDOLPH

Dear Policy Owner:

Thank you for contacting Fidelity Life Association (FLA) regarding the Policy number noted above.

Enclosed is a certificate issued in lieu of the duplicate policy you requested.  This certificate describes the contract you have with our Company.

If you have any questions, please contact the Customer Service Department at 1-800-369-3990 or service@fidelitylife.com.  One of our trusted representatives will be glad to assist you.

We are committed to providing the quality products and services our customers expect and deserve.  As always, we look forward to helping you satisfy your insurance needs.

Sincerely,

Customer Service Department



# FIDELITYLIFE

Established 1896

# *Certificate of Changed Policy*

Insured:  **BIANCA RUDOLPH**

Policy Date:  **4/26/2012**

Plan:  **Accidental Death Benefit**

Current Face Amount on Policy:  **100,000**

Age as of Policy Date:  **52**

Policy Number:  **0100382288**

Date of Issue:

RIDER BENEFITS:

Plan                                      Issue Date      Coverage Amount

                    **NONE**

Current Owner:            **BIANCA RUDOLPH**

Current Primary Beneficiary:  **LAWRENCE P. RUDOLPH - 100.00%**

Current Secondary Beneficiary: **ANA BIANCA RUDOLPH - 50.00%**
                              **JULIAN L. RUDOLPH - 50.00%**

Current Assignee:

Any additional information about the benefits or provisions of the policy may be obtained at any time by contacting the insurer.

Date:    **June 18, 2012**

By _____

President

Fidelity Life Association, 8700 W Bryn Mawr Ave, Ste. 900S Chicago, IL 60631

 **FIDELITYLIFE**

Established 1896

P.O. Box 5030 - Des Plaines, IL 60017                                        June 18, 2012

BIANCA RUDOLPH
336 LAKEWOOD RD
GREENSBURG, PA 15601

Re:  Policy    0100382288
     Insured:  BIANCA RUDOLPH

Dear Policyowner:

Thank you for your recent beneficiary change request.

We have made the beneficiary change you requested and it is now part of your policy record.  This change does not need to be endorsed on the policy, it will not be reflected in the policy pages.  The current beneficiary designation for the policy listed above is now:

PRIMARY BENEFICIARY(S)
LAWRENCE P. RUDOLPH - 100.00%

CONTINGENT BENEFICIARY(S)
ANA BIANCA RUDOLPH - 50.00%
JULIAN L. RUDOLPH - 50.00%

If you have any questions we encourage you to call your agent.  Or, contact our Customer Service Department at 1-800-369-3990.  One of our representatives will be glad to assist you.

We are committed to providing the quality products and services you expect and deserve.  As always, we look forward to helping satisfy your insurance needs.

Sincerely,

Kim Moore
Customer Service Department

Fidelity Life Association
Mailing Address:                    service@fla-life.com            Insurance products by Fidelity Life Association •
P.O. Box 5030                       Telephone: 1-800-369-3990        Other products distributed by Fidelity Life
Des Plaines, IL 60017               Fax: 1-866-375-8175              Association Marketing Corporation



Established 1896

P.O. Box 5030 - Des Plaines, IL 60017                                        June 18, 2012

Fidelity Life Association
Mailing Address:                  service@fla-life.com                Insurance products by Fidelity Life Association ·
P.O. Box 5030                     Telephone:  1-800-369-3990           Other products distributed by Fidelity Life
Des Plaines, IL 60017             Fax:  1-866-375-8175                 Association Marketing Corporation



Established 1896

Innovation Is Our Policy*

*Fidelity Life Association
P.O. Box 5030
Des Plaines, IL 60017
T 800.369.3990   F 866.947.8738
service@fidelitylife.com*

May 31, 2016

Bianca Rudolph
4141 E. Lakeside Main
Paradise Valley, AZ 85253

RE:   Insured: Bianca Rudolph
      Insured Resident State: AZ
      Policy number: 0100382288
      Policy Owner: Bianca Rudolph

Dear Policy Owner:

Thank you for contacting Fidelity Life Association (FLA) regarding the Policy number noted above.

Enclosed is the service request form(s) necessary to process your request. Please complete the section that applies to your needs, including the policy owner's signature and return it in the enclosed envelope.

If you have any questions, please contact the Customer Service Department at 1-800-369-3990 or service@fidelitylife.com. One of our trusted representatives will be glad to assist you.

We are committed to providing the quality products and services our customer expect and deserve. As always, we look forward to helping you satisfy your insurance needs.

Sincerely,

Customer Service
Fidelity Life Association

Enclosure(s)

_Copy of trust_

# Service Request Form



**FIDELITY LIFE**
Established 1896

Innovation is Our Policy

Fidelity Life Association
P.O. Box 5030
Des Plaines, IL 60017
Tel (800) 369-3990
Fax (866) 947-8738

Policy Number: _O100330049_
Owner: _Bianca Rudolph_          Owner's Social Security Number: _191403104_
Insured: _Bianca Rudolph_        Owner's Phone Number: _724 757 4134_
                                 *(including area code)*

---

**Address Change:** (may be completed by contacting our office if you are the owner or active agent of record)

Check One: ☐ Owner  ☐ Insured  ☐ Payer

| | Street Address |
| --- | --- |

Phone Number (including area code) | City | State | Zip

*Secondary Address (if needed to receive duplicate copies of billing correspondence)*

Secondary Addressee Name (please print) | Daytime Phone #

Secondary Addressee Address | City | State | Zip

---

**Name Change:** (This section does <u>not</u> change your ownership or beneficiary designation – not for corporation, trusts or partnerships)

Check One: ☐ Owner  ☐ Insured  ☐ Beneficiary
☐ Other

Print Previous Name

**Reason for Name Change:**

Check One: ☐ Marriage  ☐ Divorce  ☐ Other*

Print New Name**

*Please explain in Special Instructions section on page 2 and submit documentation
**The Signature section on Page 2 must also be completed

---

**Beneficiary Change:**
I (we) ask that the beneficiary be changed as shown. Assuming this form is in good order, the change is effective when the company receives it. All prior beneficiary designations are revoked. This change does not need to be endorsed on the policy. Unless otherwise stated: a) primary beneficiaries will share to proceeds equally; and b) if no primary or contingent beneficiary survives the insured by 15 days, or as specified in your contract, the proceeds will then go to the estate of the insured; and c) the share of a deceased beneficiary will pass equally to the surviving beneficiaries.

| Name and Address of Primary Beneficiaries | Relationship to Owner | % | Date of Birth |
| --- | --- | --- | --- |
| The Rudolph Trust | Trust | 100% | 4-25-2016 Trust established |

| Name and Address of Contingent Beneficiaries | Relationship to Owner | % | Date of Birth |
| --- | --- | --- | --- |
| | | | |
| | | | |

- The new designation cancels all previous designations, subject to the rights of any existing assignment. Please note: The names of the primary beneficiary(ies) must always be stated when a beneficiary change request is submitted.
- Unless otherwise indicated, the right to change the beneficiary is reserved by the owner(s).
- Percentage: Allocations must total 100%. Please use percentages rather than dollar amounts.
- If more space is needed, please utilize the Special Instructions section, or attach a separate sheet with policy number, owner's signature and date. Note: Any and all attachment pages must include the policy number, the owner's signature and the date.

3394-FLA-12                                                                 Page 1 of 2

**Non-forfeiture Option and Automatic Premium Loan Provision:** (Life Policies Only)
If I stop paying premiums when due after a cash value is first available, I elect the following option. The Company and I agree to waive all requirements that a change be endorsed on the policy.

Check One:  ☐ Add   ☐ Delete   Automatic Premium Loan (APL)

☐ Add   ☐ Delete   Extended Insurance (ETI), if available

☐ Add   ☐ Delete   Reduced Paid-Up (RPU), if available

*(See policy for details on each provision)*

**Special Instructions:**

**Signatures:**
By signing below, the Owner(s) hereby certify that the information provided in this request is complete and accurate, and understand that this request will be processed according to the information provided. If there is any inconsistency between the language in this form and the policy, the policy language will apply.

| | | |
|---|---|---|
| *Bianca Rudolph* | *Bianca Rudolph* | 9-14-16 |
| Name of Owner | Owner's Signature (current) | Date |
| Bianca Rudolph | (if corporate, trust or partnership owned, note title of Officer, trustee or partner, respectively.) | |

| | | |
|---|---|---|
| Name of Joint Owner (if any) (please print) | Joint Owner's Signature (if any) | Date |

| | | |
|---|---|---|
| Name of Irrevocable Beneficiary (if any) | Irrevocable Beneficiary's Signature (if any) | Date |

**Spousal Consent for Community Property States:** If the policy is a resident of AZ, CA, ID, LA, NV, NM, TX, WA or WI, spousal consent is required unless the participant has no legal spouse. Please note, that without the spousal signature (if applicable), we will not be able to process the request.

| | | |
|---|---|---|
| Spousal Signature | Date | ☐ Policy owner has no legal spouse. |

3394-FLA-12

Page 2 of 2



**FIDELITYLIFE**

Established 1896

Innovation Is Our Policy®

*Fidelity Life Association*
*P.O. Box 5030*
*Des Plaines, IL 60017*
*T 800.369.3990  F 866.947.8738*
*service@fidelitylife.com*

August 1, 2016

Bianca Rudolph
4141 E. Lakeside Main
Paradise Valley, AZ  85253

RE:     Insured:  Bianca Rudolph
        Insured Resident State:  AZ
        Policy number:  0100382288
        Policy Owner:  Bianca Rudolph

Dear Policy Owner:

This letter is to acknowledge receipt of your request for Change of Beneficiary form    on your insurance policy.

Unfortunately, your request could not be processed at this time due to the following:

  • Your state requires a spousal signature.

If you have any questions, please contact the Customer Service Department at 1-800-369-3990 or
service@fidelitylife.com.  One of our trusted representatives will be glad to assist you.

We are committed to providing the quality products and services our customer expect and deserve.  As always, we
look forward to helping you satisfy your insurance needs.

Sincerely,

Customer Service
Fidelity Life Association

*Administered by Concentrix Insurance Administration Solutions Corporation,*
*a licensed third-party administrator.*

# Service Request Form

 **FIDELITY** LIFE

Established 1896

*Innovation is Our Policy*

Fidelity Life Association
P.O. Box 5030
Des Plaines, IL 60017
Tel (800) 369-3990
Fax (866) 947-8738

Policy Number: _____

Owner: _____     Owner's Social Security Number: _____

Insured: _____     Owner's Phone Number: _____
*(including area code)*

---

**Address Change:** (may also be completed by contacting our office if you are the owner or active agent of record)

Check One:  ☐ Owner  ☐ Insured  ☐ Payer

Street Address _____

Phone Number (including area code) _____     City _____ State _____ Zip _____

*Secondary Address (if needed to receive duplicate copies of billing correspondence)*

Secondary Addressee Name (please print) _____     Daytime Phone # _____

Secondary Addressee Address _____     City _____ State _____ Zip _____

---

**Name Change:** (This section does not change your ownership or beneficiary designation – not for corporation, trusts or partnerships)

Check One:  ☐ Owner  ☐ Insured  ☐ Beneficiary
           ☐ Other

Print Previous Name _____

**Reason for Name Change:**

Check One:  ☐ Marriage  ☐ Divorce  ☐ Other*

Print New Name** _____

*Please explain in Special Instructions section on page 2 and submit documentation
**The Signature section on Page 2 must also be completed

---

**Beneficiary Change:**
I (we) ask that the beneficiary be changed as shown. Assuming this form is in good order, the change is effective when the company receives it. All prior beneficiary designations are revoked. This change does not need to be endorsed on the policy. Unless otherwise stated: a) primary beneficiaries will share to proceeds equally, and b) if no primary or contingent beneficiary survives the insured by 15 days, or as specified in your contract, the proceeds will then go to the estate of the insured; and c) the share of a deceased beneficiary will pass equally to the surviving beneficiaries.

| Name and Address of Primary Beneficiaries | Relationship to Owner | % | Date of Birth |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| Name and Address of Contingent Beneficiaries | Relationship to Owner | % | Date of Birth |
|---|---|---|---|
|  |  |  |  |

- The new designation cancels all previous designations, subject to the rights of any existing assignment. Please note: The names of the primary beneficiary(ies) must always be stated when a beneficiary change request is submitted.
- Unless otherwise indicated, the right to change the beneficiary is reserved by the owner(s).
- Percentage: Allocations must total 100%. Please use percentages rather than dollar amounts.
- If more space is needed, please utilize the Special Instructions section, or attach a separate sheet with policy number, owner's signature and date. Note: Any and all attachment pages must include the policy number, the owner's signature and the date.

**Non-forfeiture Option and Automatic Premium Loan Provision:** (Life Policies Only)
If I stop paying premiums when due after a cash value is first available, I elect the following option. The Company and I agree to waive all requirements that a change be endorsed on the policy.

Check One:  ☐ Add  ☐ Delete  Automatic Premium Loan (APL)

☐ Add  ☐ Delete  Extended Insurance (ETI), if available

☐ Add  ☐ Delete  Reduced Paid-Up (RPU), if available

*(See policy for details on each provision)*

---

**Special Instructions:**

_____

_____

_____

---

**Signatures:**
By signing below, the Owner(s) hereby certify that the information provided in this request is complete and accurate, and understand that this request will be processed according to the information provided. If there is any inconsistency between the language in this form and the policy, the policy language will apply.

| Name of Owner | Owner's Signature (current) (if corporate, trust or partnership owned, note title of Officer, trustee or partner, respectively.) | Date |
|---|---|---|
| Name of Joint Owner (if any) (please print) | Joint Owner's Signature (if any) | Date |
| Name of Irrevocable Beneficiary (if any) | Irrevocable Beneficiary's Signature (if any) | Date |

**Spousal Consent for Community Property States:** If the policy is a resident of AZ, CA, ID, LA, NV, NM, TX, WA or WI, spousal consent is required unless the participant has no legal spouse. Please note, that without the spousal signature (if applicable), we will not be able to process the request.

| Spousal Signature | Date | ☐ Policy owner has no legal spouse. |
|---|---|---|



**FIDELITY**LIFE

Established 1896

*7-14-16*
*Card ending 5205 updated*



*Fidelity Life Association*
*P.O. Box 5030*
*Des Plaines, IL 60017*
*T 800.369.3990  F 866.947.8738*
*service@fidelitylife.com*

August 29, 2016

BIANCA RUDOLPH
4141 E LAKESIDE MAIN
PARADISE VALLEY, AZ 85253

10097844/000377

RE:  Policy Number:        0100382288
     Resident State:       AZ
     Insured:              BIANCA RUDOLPH
     Policy Owner:         BIANCA RUDOLPH

Dear Policy Owner:

We are unable to charge your credit card for $13.40 on your Fidelity Life Association insurance policy.
The Credit Card information you provided was either declined or is invalid.

Since this premium payment was returned, your policy has a current paid to date of September 26, 2016.
Please keep in mind that if your premium remains unpaid for 31 days past its current paid to date, the
policy will lapse and the coverage will be considered terminated, except for any non-forfeiture option that
may apply to your policy.

If you have any questions, please contact the Customer Service Department at 1-800-369-3990 or
service@fidelitylife.com.  One of our trusted representatives will be glad to assist you.

We are committed to providing the quality products and services our customers expect and deserve.  As
always, we look forward to helping you satisfy your insurance needs.

Sincerely,

Customer Service Department






# First Colony Life Insurance Company

LYNCHBURG VIRGINIA 24505

A Stock Company

Will pay the Beneficiary the death proceeds as set forth in Part B. Payment will be made after the following have been received at the home office:

- this Policy;
- due proof that the Insured died while this Policy was in force;
- a written claim for the death proceeds completed on a form supplied by the Company; and
- an authorization, on a form supplied by the Company, from the Insured's next of kin or other authorized person which will allow the Company to obtain and disclose information concerning the Insured.

Any payment is subject to the provisions on this page and on the following pages.

The consideration for this Policy is the application and payment of the Single Premium on or before policy delivery.

The Owner may return this Policy within 20 days after its delivery. To return this Policy, take it or mail it to the Company or to the agent through whom it was purchased. Immediately upon delivery or mailing, this Policy will be deemed void from the beginning. Any premium paid will be returned.

Signed at the home office at 700 Main Street, Lynchburg, Virginia, on the Date of Issue.

_Ronald V. Dolan_
President

_[signature]_
Secretary

## SINGLE PREMIUM WHOLE LIFE INSURANCE POLICY

Death Proceeds Payable at Death
Nonparticipating — No Dividends

Form No. 1200-SP

| | | | |
|---|---|---|---|
| INSURED | BIANCA RUDOLPH | 1,308,458 | POLICY NUMBER |
| SPECIFIED AMOUNT | $44,268 | | |
| NET PREMIUM | $ 5,000.00 | MARCH 11, 1987 | POLICY DATE |
| SINGLE PREMIUM | $ 5,000.00 | APRIL 7, 1987 | DATE OF ISSUE |

FORM NO. 1200-S

3

This Policy is a legal contract between the Owner and First Colony Life Insurance Company.

READ YOUR POLICY CAREFULLY!

## TABLE OF CONTENTS

Page

SCHEDULE ........................................3

PART A. GENERAL PROVISIONS
The Contract ...................................5
Policy Date ....................................5
Owner and Beneficiary ......................5
Change of Owner and Beneficiary .......5
Assignment ....................................5
Incontestability ...............................5
Suicide .........................................5
Misstatement of Age or Sex................5
Payment of Proceeds.........................5
Nonparticipating .............................6
Annual Report .................................6

PART B. INSURANCE PROVISIONS
Death Benefit...................................6
Amount of the Death Proceeds ...........6

PART C. NONFORFEITURE
PROVISIONS
Account Value .................................7
Interest Rate ...................................7
Cost of Insurance .............................7
Cost of Insurance Rate ......................7
Cash Surrender Value........................8
Surrender Charge .............................8

Page

Surrender and Net Cash
Surrender Value .........................8
Guaranteed Policy Values .................8
Table of Guaranteed Policy Values ......8

PART D. POLICY LOANS
Cash Loan ....................................8,9
Deferral .......................................9
Loan Interest .................................9
Loan Repayment .............................9

PART E. PROJECTION OF BENEFITS
AND VALUES ..................................9

PART F. SETTLEMENT OPTIONS
General Provisions ...........................11
Death of Payee...............................11
First Installment ..............................11
Interest ........................................11
Option 1 - Fixed Period ....................11
Option 2 - Life Income with
Installments Certain......................11
Option 3 - Interest ..........................11
Option 4 - Fixed Installments ............11
Option 5 - Single Premium Annuity ...11
Other Settlement Options .................11
Option 1 Table...............................12
Option 2 Table...............................12

2

## BENEFITS

## SINGLE PREMIUM WHOLE LIFE INSURANCE

SURRENDER FACTOR FOR EACH YEAR MEASURED FROM THE POLICY DATE

10TH &

2

## BENEFITS

## SINGLE PREMIUM WHOLE LIFE INSURANCE

### SURRENDER FACTOR FOR EACH YEAR MEASURED FROM THE POLICY DATE

| 1ST YR – 6TH YR | 7TH YR | 8TH YR | 9TH YR | 10TH & SUBSEQUENT YRS |
|---|---|---|---|---|
| .08 | .06 | .04 | .02 | .00 |

BENEFICIARY    BIANCA RUDOLPH AS CUSTODIAN
FOR ANA BIANCA RUDOLPH UNDER          NONSMOKER    PREMIUM
THE PENNSYLVANIA UNIFORM GIFTS                     CLASS
TO MINORS ACT

                                                  RATING
                                      STANDARD    CLASS

                                                  AGE NEAREST
OWNER    BIANCA RUDOLPH AS CUSTODIAN FOR ANA      27F    BIRTHDAY
BIANCA RUDOLPH UNDER THE PENNSYLVANIA
UNIFORM GIFTS TO MINORS ACT

THE BENEFICIARY AND OWNER ARE SUBJECT TO CHANGE AS PROVIDED HEREIN.

INSURED    BIANCA RUDOLPH              1,308,458    POLICY NUMBER

SPECIFIED AMOUNT    $44,268
                                       MARCH 11, 1987    POLICY DATE
NET PREMIUM    $    5,000.00

                                       APRIL  7, 1987    DATE OF ISSUE

SINGLE PREMIUM    $    5,000.00

FORM NO. 1200-S                3

POL NO. 1308458

S C H E D U L E    *CONTINUED*

TABLE OF GUARANTEED
MAXIMUM INSURANCE RATES

THIS TABLE SHOWS THE GUARANTEED MAXIMUM COST OF INSURANCE RATES
THE COMPANY MAY CHARGE ON THIS POLICY.

| ATTAINED AGE | ANNUAL RATE PER $1,000 OF NET AMOUNT AT RISK | ATTAINED AGE | ANNUAL RATE PER $1,000 OF NET AMOUNT AT RISK | ATTAINED AGE | ANNUAL RATE PER $1,000 OF NET AMOUNT AT RISK |
|---|---|---|---|---|---|
| 27 | .00 | 52 | 9.45 | 76 | 156.40 |
| 28 | 2.08 | 53 | 10.51 | 77 | 172.22 |
| 29 | 2.08 | 54 | 11.76 | 78 | 188.64 |
| 30 | 2.08 | 55 | 13.17 | 79 | 206.06 |
| 31 | 2.13 | 56 | 14.74 | 80 | 225.18 |
| 32 | 2.17 | 57 | 16.43 | 81 | 246.45 |
| 33 | 2.25 | 58 | 18.29 | 82 | 270.49 |
| 34 | 2.33 | 59 | 20.41 | 83 | 297.58 |
| 35 | 2.45 | 60 | 22.79 | 84 | 327.20 |
| 36 | 2.56 | 61 | 25.48 | 85 | 344.31 |
| 37 | 2.72 | 62 | 28.54 | 86 | 360.04 |
| 38 | 2.89 | 63 | 32.08 | 87 | 373.99 |
| 39 | 3.09 | 64 | 36.12 | 88 | 385.46 |
| 40 | 3.31 | 65 | 40.64 | 89 | 394.79 |
| 41 | 3.57 | 66 | 46.13 | 90 | 402.27 |
| 42 | 3.83 | 67 | 52.23 | 91 | 408.19 |
| 43 | 4.13 | 68 | 58.93 | 92 | 413.16 |
| 44 | 4.44 | 69 | 66.39 | 93 | 417.90 |
| 45 | 4.79 | 70 | 74.93 | 94 | 426.43 |
| 46 | 5.26 | 71 | 84.73 | 95 | 444.18 |
| 47 | 5.78 | 72 | 96.18 | 96 | 480.70 |
| 48 | 6.35 | 73 | 109.49 | 97 | 554.08 |
| 49 | 6.99 | 74 | 124.67 | 98 | 695.95 |
| 50 | 7.68 | 75 | 141.35 | 99 | 961.54 |
| 51 | 8.50 | | | | |

## S C H E D U L E  *CONTINUED*

### TABLE OF GUARANTEED POLICY VALUES

| END OF POLICY YEAR | CASH SURRENDER OR LOAN VALUE |
|---|---|
| 1 | $ 5,000.00 |
| 2 | 5,189.38 |
| 3 | 5,424.37 |
| 4 | 5,674.02 |
| 5 | 5,937.53 |
| 6 | 6,216.09 |
| 7 | 6,650.83 |
| 8 | 7,114.47 |
| 9 | 7,607.58 |
| 10 | 8,132.47 |
| 11 | 8,519.37 |
| 12 | 8,924.87 |
| 13 | 9,348.07 |
| 14 | 9,790.31 |
| 15 | 10,251.58 |
| 16 | 10,733.21 |
| 17 | 11,235.66 |
| 18 | 11,759.79 |
| 19 | 12,306.06 |
| 20 | 12,872.69 |
| 33 | 21,999.86 |
| 35 | 23,633.79 |
| 38 | 26,135.82 |
| 43 | 30,223.53 |

VALUES MAY BE GREATER THAN THOSE SHOWN DUE TO INTEREST BEING CREDITED TO THE ACCOUNT VALUE AT A CURRENT RATE AND A CURRENT COST OF INSURANCE BEING DEDUCTED.

### MORTALITY TABLE

COMMISSIONERS 1980 STANDARD ORDINARY MORTALITY TABLE, AGE NEAREST BIRTHDAY

### INTEREST RATES

MINIMUM VALUES — 7% A YEAR, COMPOUNDED ANNUALLY

ACCOUNT VALUE — ON THE PORTION OF THE ACCOUNT VALUE IN EXCESS OF ANY LOAN AMOUNT,  8.00% A YEAR, COMPOUNDED ANNUALLY, FOR THE FIRST POLICY YEAR AND 4% A YEAR, COMPOUNDED ANNUALLY, THEREAFTER.

ON THE PORTION OF THE ACCOUNT VALUE EQUAL TO THE PREFERRED LOAN AMOUNT, NO LESS THAN THE GREATER OF
— THE EFFECTIVE POLICY LOAN INTEREST RATE BEING CHARGED, AND
— 4% A YEAR, COMPOUNDED ANNUALLY.

ON THE PORTION OF THE ACCOUNT VALUE IN EXCESS OF THE MAXIMUM AMOUNT CONSIDERED AS A PREFERRED LOAN, NO LESS THAN 4% A YEAR, COMPOUNDED ANNUALLY.

4

## PART A. GENERAL PROVISIONS

THE CONTRACT

The entire contract consists of this Policy and the application. A copy of the applica-
tion was attached at issue.

All statements made in the application are, in the absence of fraud, deemed representa-
tions and not warranties. No statement will void this Policy or be used in defense of
a claim unless it is contained in the application. Only the President, a Vice President,
or the Secretary of the Company can change or waive any provision of this Policy.
Any change or waiver must be made in writing.

POLICY DATE

Policy anniversaries and policy years are measured from the Policy Date. The first policy
year begins on the Policy Date. Subsequent policy years begin on the same date each
year thereafter. A policy anniversary occurs at the beginning of each policy year after
the first policy year.

OWNER AND
BENEFICIARY

The designations of Owner and Beneficiary in the Schedule remain in effect until changed
by the Owner.

The Owner has all rights stated in this Policy. The Owner may amend this Policy dur-
ing the Insured's lifetime with the Company's consent. The rights of the Owner are subject
to the rights of an irrevocable beneficiary.

The interest of a beneficiary terminates if that beneficiary dies before the Insured. If
no beneficiary survives at the Insured's death, payment will be made to the Owner or
the Owner's estate or successors.

CHANGE OF OWNER
AND BENEFICIARY

The Owner may change the designations of Owner and Beneficiary during the Insured's
lifetime. Any change is subject to the consent of an irrevocable beneficiary. Written
notice of change must be filed at the home office in a form acceptable to the Company.
The new designation will then take effect as of the date the Owner signed the notice.
Such a change does not affect any payment made or other action taken by the Com-
pany before the notice is received.

ASSIGNMENT

The Company is not responsible for the validity or effect of any assignment of this Policy.
No assignment will bind the Company until it is received at the home office.

INCONTESTABILITY
SEE ENDORSEMENT

This Policy is not contestable, except for fraud, after it has been in force during the
Insured's lifetime for a period of two years from the Date of Issue.

SUICIDE

If the Insured, while sane or insane, dies by suicide within two years from the Date
of Issue, the death proceeds will be an amount equal to the greater of:
- the Single Premium less any loan against this Policy; and
- the net cash surrender value.

MISSTATEMENT OF
AGE OR SEX
SEE ENDORSEMENT

If the Insured's age or sex is misstated, any amount payable will be adjusted to that
amount which the Single Premium paid would have purchased at the true age and sex.

PAYMENT OF
PROCEEDS

Any payments by the Company under this Policy will be paid from the home office.
This Policy must be returned to the Company. Unless a settlement option is elected,
the proceeds will be paid in one sum.

(Continued)

Form No. 1200-SP-1                    5

PART A (Continued)

NONPARTICIPATING    This Policy does not share in any distribution of surplus. No dividends are payable.

ANNUAL REPORT    An annual report will be sent to the Owner. It will show since the last report:
- cost of insurance deducted;
- interest credited;
- account value;
- cash surrender value;
- net cash surrender value;
- amount of any policy loan; and
- death benefit.

## PART B. INSURANCE PROVISIONS

DEATH BENEFIT    The death benefit for a policy year is the greater of: a) the Specified Amount; and b) the projected account value as of the end of that policy year times the percentage shown in the Table below for the Insured's attained age at the beginning of that year.

"Attained age" is the age shown in the Schedule plus the number of years, including fractions, elapsed from the Policy Date.

| Insured's Attained Age | Percentage | Insured's Attained Age | Percentage |
|---|---|---|---|
| 0-40 | 250% | 61 | 128% |
| 41 | 243% | 62 | 126% |
| 42 | 236% | 63 | 124% |
| 43 | 229% | 64 | 122% |
| 44 | 222% | 65 | 120% |
| 45 | 215% | 66 | 119% |
| 46 | 209% | 67 | 118% |
| 47 | 203% | 68 | 117% |
| 48 | 197% | 69 | 116% |
| 49 | 191% | 70 | 115% |
| 50 | 185% | 71 | 113% |
| 51 | 178% | 72 | 111% |
| 52 | 171% | 73 | 109% |
| 53 | 164% | 74 | 107% |
| 54 | 157% | 75-90 | 105% |
| 55 | 150% | 91 | 104% |
| 56 | 146% | 92 | 103% |
| 57 | 142% | 93 | 102% |
| 58 | 138% | 94 | 101% |
| 59 | 134% | 95 and above | 100% |
| 60 | 130% | | |

AMOUNT OF THE
DEATH PROCEEDS    The proceeds payable at the death of the Insured will be:
- the death benefit as defined in the Death Benefit section subject to any adjustment for misstatement of age or sex; less
- the amount of any policy loan.

If death occurs as the result of suicide, the proceeds payable may be determined in accordance with the Suicide section.

The proceeds payable will be adjusted due to a successful contest of this Policy.

## PART C. NONFORFEITURE PROVISIONS

ACCOUNT VALUE    **If the Net Premium is credited to this Policy on the Policy Date, the account value on**

## PART C. NONFORFEITURE PROVISIONS

ACCOUNT VALUE

**If the Net Premium is credited to this Policy on the Policy Date, the account value on the Policy Date is equal to:**
- **the Net Premium; less**
- the cost of insurance for the first policy year based on the Insured's age as shown in the Schedule.

If the Net Premium is credited after the Policy Date, the account value on the Policy Date is equal to:
- the Net Premium discounted at interest from the day it was credited back to the Policy Date; less
- the cost of insurance for the first policy year based on the Insured's age as shown in the Schedule.

The Net Premium is shown in the Schedule.

The account value on a policy anniversary is equal to:
- the account value on the last policy anniversary; plus
- interest from the last policy anniversary to the current policy anniversary; less
- the cost of insurance for the current policy year.

The account value on any other day is equal to:
- the account value on the last policy anniversary; plus
- interest from the last policy anniversary to the day on which the account value is being determined.

INTEREST RATE

The guaranteed interest rate used in the calculation of the account value is the Account Value interest rate shown in the Schedule. Interest in excess of the guaranteed rate may be applied as determined by the Company.

COST OF INSURANCE

The cost of insurance for a policy year is determined at the beginning of a policy year. It is equal to:
- the cost of insurance rate; times
- the net amount at risk for that year.

The net amount at risk for a policy year is equal to:
- the death benefit for that policy year; less
- the projected account value as of the end of that year.

The projected account value as of the end of a policy year is the account value on the policy anniversary at the beginning of that year accumulated with interest to the end of the year. Interest is applied at the rate(s) assumed to be credited for the year.

COST OF INSURANCE RATE

The rates for this plan are determined by the Company based on its expectation of future:
- mortality;
- interest;
- expenses; and
- persistency.

A change in rate will be due to a change in the Company's expectation in one or more of these factors. The Company's past experience will not be a factor in such change. Any change in rate will apply to all insureds with the same:
- issue age;
- sex;
- number of years of insurance in force;
- net amount at risk; and/or
- premium class.

The rates for this plan may vary according to policy loan utilization.

The maximum rates which the Company may charge for this plan are shown in the Schedule.

(Continued)

7

PART C (Continued)

| | |
|---|---|
| CASH SURRENDER VALUE<br>SEE ENDORSEMENT | The cash surrender value on any day is equal to the account value on that day less the surrender charge. At no time will the cash surrender value be less than the guaranteed cash surrender value. |

SURRENDER CHARGE

SEE ENDORSEMENT

The surrender charge is equal to the account value on the date of surrender times the Surrender Factor shown in the Schedule. The Factor to be used is the one applicable on the date of surrender. The Company reserves the right to increase the surrender charge by an amount not to exceed the excess interest credited to the account value in the 12 months prior to the date of surrender.

SURRENDER AND NET CASH SURRENDER VALUE

The Owner may surrender this Policy by:
- returning it to the home office; and
- filing written request in a form acceptable to the Company.

The date of surrender will be the date the request was signed provided the Insured was then living.

The amount that will be paid is the net cash surrender value. It is equal to:
- the cash surrender value on the date of surrender; less
- any loan against this Policy.

The payment of the net cash surrender value may be deferred up to six months after request is received at the home office.

If surrender is requested within 30 days after a policy anniversary, the net cash surrender value will not be less than:
- the net cash surrender value on the anniversary; less
- any policy loan made since the anniversary.

This Policy will terminate as of the date of surrender.

GUARANTEED POLICY VALUES

Values shown are not less than the minimum values required on the Policy Date by the state in which this Policy was issued. The mortality table and rate of interest used to determine the minimum values are shown in the Schedule. Death is assumed to occur at the end of the policy year.

A detailed statement of the method of computing values and reserves has been filed with the insurance department of the state in which this Policy was issued.

TABLE OF GUARANTEED POLICY VALUES

SEE ENDORSEMENT

The values shown assume that no policy loan is made. Any values not shown will be furnished on request.

PART D. POLICY LOANS

CASH LOAN

SEE ENDORSEMENT

The Company will make a loan upon the sole security and assignment of this Policy. The Owner may obtain the loan at any time while this Policy is in force.

The loan value is the projected cash surrender value as of the end of the current policy year. The loan value will never be less than the guaranteed loan value.

The amount advanced as a policy loan may not exceed:
- the loan value; less
- the amount of any existing loan; less
- loan interest to the end of the current policy year.

The amount payable at the Insured's death will be reduced by the amount of any policy loan.

8

year, the maximum amount of policy loan that will be considered as a preferred loan is equal to the lesser of (1) and (2) below.

8

year, the maximum amount of policy loan that will be considered as a preferred loan
is equal to the lesser of (1) and (2) below.

(1) An amount equal to:
   • the account value at the beginning of the policy year; less
   • the Net Premium; plus
   • interest on this difference at the rate being credited to preferred loans for the
     period from the date of the loan to the end of the current policy year.
(2) An amount equal to:
   • the total amount considered as a preferred policy loan during the preceding
     policy year; plus
   • 10% of the account value on the policy anniversary at the beginning of the
     policy year.

**DEFERRAL**

The Company may defer making a policy loan up to six months after written request
is received at the home office; however, a loan for payment of premiums to the Com-
pany will not be deferred.

**LOAN INTEREST**

The Company will determine the loan interest rate for this plan on January 1 of each
year. The rate will become effective for this Policy as of the policy anniversary on or
following January 1 of each year and will remain in effect until the next policy anniver-
sary. It will apply to both new and existing loans. The maximum effective loan interest
rate determined as of January 1 of each year will not exceed the greater of:
   • the Published Monthly Average for October of the preceding calendar year; and
   • the Account Value interest rate shown in the Schedule plus 1%.

Published Monthly Average means:
   • Moody's Corporate Bond Yield Average - Monthly Average Corporates as
     published by Moody's Investors Services, Inc. or its successor(s); or
   • a substantially similar average set by regulation issued by the department of
     insurance of the state in which this Policy was issued if Moody's Corporate Bond
     Yield Average - Monthly Average Corporates is no longer published.

On January 1, the Company may raise its maximum effective loan interest rate if the
maximum as determined above would be at least 1/2% more per year than such rate.
The Company will lower as of January 1 its maximum effective loan interest rate if
the maximum as determined above would be at least 1/2% less per year than such rate.
As specified above, any change in rate will be effective on the policy anniversary.

In no case will the loan interest rate exceed the maximum loan interest rate allowed
by law in the state in which this Policy was issued.

Notice of the initial loan interest rate will be sent to the Owner when a policy loan
is made. Notice of the interest rate in effect for each policy year will be sent in the an-
nual report.

Interest on a loan is payable annually in advance on each policy anniversary. Interest
not paid when due is added to the loan and bears interest at the loan interest rate(s).

**LOAN REPAYMENT**

All or any part of a policy loan may be repaid during the Insured's lifetime.

When the total loan, including interest, exceeds the cash surrender value, this Policy
will terminate. Notice of termination will be mailed to the Owner and to any assignee
of record. Termination will be effective 31 days after the notice is mailed.

## PART E. PROJECTION OF BENEFITS AND VALUES

The Owner may request a projection of illustrative future death benefits and cash sur-
render values. The request must be in writing to the home office. A fee may be charged
for this service.

The illustration will be based on assumptions specified by the Company and/or the
Owner.

Form No. 1200-SP-2

FIRST COLONY LIFE INSURANCE COMPANY
Lynchburg, Virginia

ENDORSEMENT

The section of this Policy entitled SURRENDER CHARGE under the heading PART C.
NONFORFEITURE PROVISIONS is amended to read in its entirety as follows:

"The surrender charge is equal to the account value on the date of
surrender times the Surrender Factor shown in the Schedule. The
Factor to be used is the one applicable on the date of surrender.

In determining the cash surrender value during the first fifteen
policy years, the Company reserves the right to increase the
surrender charge by an amount not to exceed the excess interest
credited to the account value in the 12 months prior to the date
of surrender. If the Company invokes this excess interest
surrender charge, it will waive this charge if the Owner elects
to surrender this Policy and to apply the net cash surrender
value under a settlement option with at least a five year payment
period. The options available are as described in PART F.
SETTLEMENT OPTIONS of this Policy. Election of a settlement
option is subject to the applicable provisions of this Policy.

If the difference between the effective loan interest rate being
charged on non-preferred loans and the interest rate being
credited to such loans exceeds 3%, the Company will waive all
charges to be made upon surrender. Written request for such a
surrender must be received at the home office within 30 days
after the Owner is notified of the interest rates which produce
more than a 3% difference."

Secretary

Form No. 1200-SP-N

FIRST COLONY LIFE INSURANCE COMPANY
Lynchburg, Virginia

AMENDMENT

The fifth paragraph of the section of this Policy entitled CASH LOAN under the heading PART D. POLICY LOANS is hereby amended to read in its entirety as follows:

"A portion of any policy loan may be considered as a preferred policy loan. In any policy year, the maximum amount of policy loan that will be considered as a preferred loan is an amount equal to:
  . the account value at the beginning of the policy year; less
  . the Net Premium; plus
  . interest on this difference at the rate being credited to preferred loans for the period from the date of the loan to the end of the current policy year."

Secretary

Form No. 1200-SP-T

**FIRST COLONY LIFE INSURANCE COMPANY**
**Lynchburg, Virginia**

**ENDORSEMENT**

The section of this Policy entitled INCONTESTABILITY **under the heading PART A.**
GENERAL PROVISIONS is hereby amended to read in its entirety as follows:

"This Policy is not contestable after it has been in force during
the Insured's lifetime for a period of two years from the Date of
Issue."

The section of this Policy entitled MISSTATEMENT OF AGE OR SEX under the
heading PART A. GENERAL PROVISIONS is hereby amended to read in its entirety
as follows:

"If the Insured's age or sex is misstated, the Company will adjust
the proceeds.

The Specified Amount will be adjusted to the amount which the
Single Premium paid would have purchased at the true age and sex.

The account value and the guaranteed cash surrender value will be
recalculated from the Policy Date using the cost of insurance
rates based on the true age and sex. The cash surrender value
and the net cash surrender value will be correspondingly
adjusted."

The section of this Policy entitled CASH SURRENDER VALUE under the heading
PART C. NONFORFEITURE PROVISIONS is hereby amended to read in its entirety as
follows:

"CASH SURRENDER VALUE  The cash surrender value on any day is
equal to the greater of the following amounts:
. the account value on that day less the surrender charge;
and
. the guaranteed cash surrender value."

(Continued)

Form No. 1200-SP-R-2

The section of this Policy entitled TABLE OF GUARANTEED POLICY VALUES under
the heading PART C. NONFORFEITURE PROVISIONS is hereby amended to read in its
entirety as follows:

"The guaranteed cash surrender values shown are equal to the
present value of future guaranteed benefits less the surrender
charge.  Such present value is calculated using the guaranteed
maximum cost of insurance rates shown in the Schedule times 1.04
and interest at the greater of these rates:
        . the account value rates shown in the Schedule for the
          portion of the account value in excess of any loan amount;
          and
        . 6% a year, compounded annually.
However, by the end of the first policy year, the guaranteed cash
surrender value will never be less than the Net Premium.

These values assume that no policy loan is made.  Any values not
shown will be furnished on request."


Secretary

APPLICATION · PART 1
PLEASE PRINT OR TYPE

P.O. BOX 1250
Lynchburg, Virginia 24505

FULL NAME OF PROPOSED INSURED (Women, give maiden name)

Bianca Rudolph

MAILING ADDRESS: Give No., Street, City, State, and Zip Code

69 Lakewood Rd., Greensburg PA 15601

| SEX | BIRTHDATE Mo./Day/Yr. | AGE | STATE OF BIRTH | HEIGHT | WEIGHT | SOC. SEC. # | HOME PHONE NUMBER |
|---|---|---|---|---|---|---|---|
| ☐ M ☒ F | 12-04-59 | 27 | PA | 5 ft. 3 in. | 120 lbs. | 191 — 40 — 3104 | (412) 832-8541 |

OWNER (If other than Proposed Insured, give full name, address, relationship to Proposed Insured, and S.S. or Tax I.D. No.):

Bianca Rudolph as Custodian for Ana Bianca Rudolph under the Pennsylvania Uniform Gifts to Minors Act

Owner is ☒ Individual   ☐ Sole Proprietorship   ☐ Partnership
☐ Corporation   ☐ Trustee (Give name of trust and date of trust agreement.)

BENEFICIARY: Give full name, date of birth, and relationship to Proposed Insured. Right to change Beneficiary is reserved to Owner, unless otherwise indicated.

Primary: Bianca Rudolph as Custodian for Ana Bianca Rudolph under the Pennsylvania Uniform Gifts to
Contingent: Minors Act

| PLAN OF INSURANCE Life Net | SINGLE PREMIUM: $5000.00 (This amount must be paid in a lump sum.) | LIST ALL INSURANCE IN FORCE ON THE LIFE OF THE PROPOSED INSURED: |
|---|---|---|

| OCCUPATION Bookkeeper | SPECIAL REQUESTS: | Company | Amount | Acc. Death | Issue Year |
|---|---|---|---|---|---|
| | | Great West Life | 50,000 | | 1983 |

| | YES | NO | DETAILS OF YES answers. Identify question number, circle applicable items, include diagnoses, dates, duration, and names and addresses of physicians and/or medical facilities. |
|---|---|---|---|
| 1. Have you: a. Consulted any physician, received or been advised to receive medical treatment, or been hospitalized within the past five years? | ☒ | ☐ | |
| b. Ever been treated for or had any known indication of: 1) disease of the nervous, circulatory, respiratory, digestive, and/or genitourinary systems? | ☐ | ☒ | 1a. 6/86 Childbirth Dr Krivinko – Pittsburgh PA |
| 2) high blood pressure, heart disease, cancer, tumor, or diabetes? | ☐ | ☒ | |
| 2. To the best of your knowledge, do you have any physical impairment or disease? | ☐ | ☒ | |
| 3. Have you: a. Smoked cigarettes in the past year? If YES, how many per day? _____ | ☐ | ☒ | |
| b. Used tobacco in other forms in the past year? Form(s) _____ | ☐ | ☒ | |
| c. Ever used alcoholic beverages? If YES, how often and how many ounces? _____ | ☐ | ☒ | |
| Has use been discontinued? If YES, explain. | ☐ | ☒ | |
| d. Ever used narcotics, stimulants, sedatives, or hallucinogenics or any other drugs not as prescribed by a physician? If YES, what kind and what frequency and amount? | ☐ | ☒ | |
| Has use been discontinued? If YES, explain. | ☐ | ☒ | |
| 4. Do you intend to fly other than as a passenger or have you flown other than as a passenger during the past 2 years? (If YES, complete Aviation Questionnaire.) | ☐ | ☒ | |
| 5. Have you in the past 2 years engaged in, or do you expect to engage in, racing (automobile, go-kart, cycle, boat, snowmobile) or diving (skin, scuba, sky)? (If YES, complete Hazardous Activity Questionnaire.) | ☐ | ☒ | |

6. Is this insurance intended to replace or change any existing insurance, including annuities, in any company or society? ☐ Yes   No ☒ If YES, explain.

I represent that the statements and answers given in this application are true, complete, and correctly recorded to the best of my knowledge and belief. I agree that: (1) the entire contract will consist of this application and the policy issued in response to it; (2) no soliciting agent or broker can: (a) make or modify contracts for the Company; (b) waive any rights or requirements of the Company; or (c) waive any information requested by the Company; and (3) no insurance will take effect on the Proposed Insured's life unless: (a) the policy is delivered to the Owner; (b) the single premium is paid and (c) there has been no change in any of the information given in this application or in the Proposed Insured's insurability since the date of this application. I state that I have read and understand the Authorization to Obtain and Disclose Information and the Notice to Proposed Insured and authorize the collection and release of the information noted in the Authorization on the reverse side.

I acknowledge receipt of the Notice to Proposed Insured. I understand that no insurance will take effect on the Proposed Insured's life prior to policy delivery.

X

Signed at _____   City/State (PA)

X _____   Witness

_____   Licensed Resident Agent in States Requiring

X

Date of Application _____   Month/Day/Year

Bianca Rudolph
X _____   Proposed Insured or Other Authorized Person

Bianca Rudolph, Custodian
X _____   Owner (if other than Proposed Insured)

Form No. 591

| | |
|---|---|
| GENERAL PROVISIONS | Policy proceeds may be paid in a single sum or left with the Company for payment under one or more of the following settlement options. The amount applied under an option must be at least $2,000. The amount of each payment under an option must be at least $50. |

The Owner, with the consent of any irrevocable beneficiary, may elect or revoke a settlement option at any time before the proceeds are payable. If no settlement option election is then in effect, the payee may make an election. Written notice of election or revocation must be filed at the home office in a form acceptable to the Company. The notice will then take effect as of the date the Owner or payee signed the notice. An election does not affect any payment made or other action taken by the Company before the notice is received. A payee that is not a natural person may elect a settlement option only with the Company's consent.

An assignee cannot elect any settlement option. Change of owner or beneficiary automatically revokes any election in effect.

**DEATH OF PAYEE**

Unless otherwise specified, at the death of the last payee a final payment will be made to the payee's estate. For Options 1 and 2, the final payment will be the commuted value of the remaining unpaid installments certain. Such value will be computed based on the rate of interest used in the calculation of the payments. For Options 3 and 4, the final payment will be the unpaid proceeds with any unpaid interest to the date of death of the payee.

**FIRST INSTALLMENT**

The first installment under Options 1, 2, and 4 is payable on the effective date of the option. The effective date is:
- the date of surrender of this Policy; or
- the date of the Insured's death; or
- any later date agreeable with the Company.

**INTEREST**

The guaranteed interest rate for Options 1, 2, 3, and 4 is 2½% a year, compounded annually. Excess interest may be declared annually by the Company.

**OPTION 1**
**FIXED PERIOD**

Proceeds will be paid for a fixed period. The amount of the payments is determined from the Option 1 Table on the next page.

**OPTION 2**
**LIFE INCOME WITH INSTALLMENTS CERTAIN**

Proceeds will be paid in equal installments throughout the certain period. After the certain period, payments will continue to be made throughout the payee's lifetime. The amount and certain period of the payments are determined from the Option 2 Table on the next page. At some ages the same amount is payable for different periods certain. In such case the Company will assume that the longest period was chosen. Satisfactory proof of the payee's age is required. The Company may require evidence that the payee is living on the due date of each payment.

**OPTION 3**
**INTEREST**

Interest on the proceeds will be paid in the manner agreed upon when the option is elected.

**OPTION 4**
**FIXED INSTALLMENTS**

Proceeds will be paid in fixed installments at regular intervals until proceeds, together with interest on the unpaid balance, are exhausted.

**OPTION 5**
**SINGLE PREMIUM ANNUITY**

Proceeds will be used to purchase any single premium annuity the Company offers at the time proceeds are applied. The annuity payments will be 102% of the payments otherwise purchased by the single premium.

**OTHER SETTLEMENT OPTIONS**

Proceeds may be applied in any other mutually agreeable manner.

(Continued)

11

PART F (Continued)

## OPTION 1 TABLE — Fixed Period Installments
### Installments for fixed number of years for each $1,000 of proceeds

| Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly | Term of Installment Payments | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Years | | | | | Years | | | | | Years | | | | |
| 1 | | $503.09 | $252.32 | $84.28 | 6 | $177.12 | $89.11 | $44.69 | $14.93 | 15 | $78.80 | $39.64 | $19.88 | $6.64 |
| 2 | $506.17 | 254.65 | 127.72 | 42.66 | 7 | 153.65 | 77.30 | 38.77 | 12.95 | 20 | 62.58 | 31.48 | 15.79 | 5.27 |
| 3 | 341.60 | 171.85 | 86.19 | 28.79 | 8 | 136.07 | 68.45 | 34.33 | 11.47 | 25 | 52.95 | 26.64 | 13.36 | 4.46 |
| 4 | 259.33 | 130.47 | 65.44 | 21.86 | 9 | 122.40 | 61.58 | 30.88 | 10.32 | 30 | 46.61 | 23.45 | 11.76 | 3.93 |
| 5 | 210.00 | 105.65 | 52.99 | 17.70 | 10 | 111.47 | 56.08 | 28.13 | 9.38 | | | | | |

## OPTION 2 TABLE — Life Income with Installments Certain
### Monthly installments are shown for each $1,000 of proceeds.
### Age is age nearest birthday when the first installment is payable.

| Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 | Age Male | Age Female | No. of Months Certain 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12* | $2.63 | $2.63 | $2.62 | $2.61 | 35 | 40 | $3.40 | $3.39 | $3.36 | $3.33 | 63 | 68 | $6.04 | $5.74 | $5.30 | $4.80 |
| | 13 | 2.64 | 2.64 | 2.63 | 2.63 | 36 | 41 | 3.45 | 3.43 | 3.41 | 3.37 | 64 | 69 | 6.22 | 5.87 | 5.39 | 4.85 |
| | 14 | 2.66 | 2.66 | 2.65 | 2.65 | 37 | 42 | 3.50 | 3.48 | 3.45 | 3.41 | 65 | 70 | 6.40 | 6.01 | 5.48 | 4.90 |
| 10* | 15 | 2.67 | 2.67 | 2.66 | 2.66 | 38 | 43 | 3.55 | 3.53 | 3.50 | 3.45 | 66 | 71 | 6.59 | 6.16 | 5.56 | 4.94 |
| 11 | 16 | 2.69 | 2.69 | 2.68 | 2.68 | 39 | 44 | 3.61 | 3.59 | 3.55 | 3.50 | 67 | 72 | 6.79 | 6.30 | 5.65 | 4.98 |
| 12 | 17 | 2.71 | 2.71 | 2.70 | 2.70 | 40 | 45 | 3.66 | 3.64 | 3.60 | 3.54 | 68 | 73 | 7.00 | 6.45 | 5.73 | 5.02 |
| 13 | 18 | 2.73 | 2.73 | 2.72 | 2.71 | 41 | 46 | 3.72 | 3.70 | 3.65 | 3.59 | 69 | 74 | 7.23 | 6.60 | 5.82 | 5.05 |
| 14 | 19 | 2.74 | 2.74 | 2.73 | 2.73 | 42 | 47 | 3.78 | 3.76 | 3.71 | 3.64 | 70 | 75 | 7.46 | 6.76 | 5.90 | 5.09 |
| 15 | 20 | 2.76 | 2.76 | 2.76 | 2.75 | 43 | 48 | 3.85 | 3.82 | 3.77 | 3.69 | 71 | 76 | 7.70 | 6.91 | 5.97 | 5.12 |
| 16 | 21 | 2.78 | 2.78 | 2.78 | 2.77 | 44 | 49 | 3.92 | 3.88 | 3.82 | 3.74 | 72 | 77 | 7.95 | 7.07 | 6.05 | 5.14 |
| 17 | 22 | 2.81 | 2.81 | 2.80 | 2.79 | 45 | 50 | 3.99 | 3.95 | 3.88 | 3.79 | 73 | 78 | 8.22 | 7.23 | 6.12 | 5.17 |
| 18 | 23 | 2.83 | 2.83 | 2.82 | 2.81 | 46 | 51 | 4.06 | 4.02 | 3.95 | 3.84 | 74 | 79 | 8.50 | 7.38 | 6.18 | 5.19 |
| 19 | 24 | 2.85 | 2.85 | 2.84 | 2.84 | 47 | 52 | 4.14 | 4.09 | 4.01 | 3.90 | 75 | 80 | 8.78 | 7.54 | 6.24 | 5.20 |
| 20 | 25 | 2.88 | 2.88 | 2.87 | 2.86 | 48 | 53 | 4.22 | 4.17 | 4.08 | 3.95 | 76 | 81 | 9.08 | 7.69 | 6.30 | 5.22 |
| 21 | 26 | 2.90 | 2.90 | 2.89 | 2.88 | 49 | 54 | 4.31 | 4.25 | 4.15 | 4.01 | 77 | 82 | 9.40 | 7.84 | 6.35 | 5.23 |
| 22 | 27 | 2.93 | 2.93 | 2.92 | 2.91 | 50 | 55 | 4.40 | 4.33 | 4.22 | 4.07 | 78 | 83 | 9.72 | 7.98 | 6.39 | 5.24 |
| 23 | 28 | 2.95 | 2.95 | 2.94 | 2.93 | 51 | 56 | 4.49 | 4.42 | 4.29 | 4.12 | 79 | 84 | 10.05 | 8.13 | 6.43 | 5.25 |
| 24 | 29 | 2.98 | 2.98 | 2.97 | 2.96 | 52 | 57 | 4.59 | 4.50 | 4.37 | 4.18 | 80 | 85 | 10.39 | 8.26 | 6.47 | 5.26 |
| 25 | 30 | 3.01 | 3.01 | 3.00 | 2.99 | 53 | 58 | 4.69 | 4.60 | 4.44 | 4.24 | and over | and over | | | | |
| 26 | 31 | 3.04 | 3.04 | 3.03 | 3.02 | 54 | 59 | 4.80 | 4.69 | 4.52 | 4.30 | | | | | | |
| 27 | 32 | 3.08 | 3.08 | 3.07 | 3.05 | 55 | 60 | 4.91 | 4.79 | 4.60 | 4.36 | | | | | | |
| 28 | 33 | 3.11 | 3.11 | 3.09 | 3.08 | 56 | 61 | 5.02 | 4.90 | 4.69 | 4.41 | | | | | | |
| 29 | 34 | 3.14 | 3.14 | 3.12 | 3.11 | 57 | 62 | 5.15 | 5.01 | 4.77 | 4.47 | | | | | | |
| 30 | 35 | 3.18 | 3.18 | 3.16 | 3.15 | 58 | 63 | 5.28 | 5.12 | 4.86 | 4.53 | | | | | | |
| 31 | 36 | 3.22 | 3.22 | 3.20 | 3.18 | 59 | 64 | 5.42 | 5.23 | 4.94 | 4.59 | | | | | | |
| 32 | 37 | 3.27 | 3.26 | 3.24 | 3.22 | 60 | 65 | 5.56 | 5.35 | 5.03 | 4.64 | | | | | | |
| 33 | 38 | 3.31 | 3.30 | 3.28 | 3.25 | 61 | 66 | 5.72 | 5.48 | 5.12 | 4.70 | | | | | | |
| 34 | 39 | 3.36 | 3.34 | 3.32 | 3.29 | 62 | 67 | 5.87 | 5.61 | 5.21 | 4.75 | | | | | | |

*Also applies to younger ages

## SINGLE PREMIUM WHOLE LIFE INSURANCE POLICY
### Death Proceeds Payable at Death
### Nonparticipating — No Dividends

# Genworth ☀️®

003 00099

Genworth Life and Annuity
PO Box 10720
Lynchburg, VA 24506-0720

**Annual Report enclosed. This is not a bill.**

004822 0 0312 109 685 1/3 BIN:0

# Annual report for your policy

March 11, 2016

report period  Mar. 11, 2015 - Mar. 11, 2016
Single Premium Whole Life Insurance
product Life Net
from Genworth Life and Annuity Insurance
Company

Page **1** of 5

B RUDOLPH/CUSTODIAN
63 LAKEWOOD RD
GREENSBURG, PA 15601-9798

| | | |
|---|---|---|
| Insured | | Policy number |
| **Blanca Rudolph** | | **1308458** |
| **Female**, issue age 27 | | |
| | | Policy date |
| Life insurance agents | | **March 11, 1987** |
| **Sbhu Life Agency Inc** | | |
| **Mark Pittman** | | Customer service |
| | | **888 325.5433** |
| | | M-Th: 8:30 - 6PM ET |
| | | F: 9 - 6PM ET |
| | | **genworth.com** |

Dear Policy Owner,

Thank you for choosing Genworth Life and Annuity to help meet your insurance needs and objectives.

This is your annual report. It is a comprehensive record of policy activity during the report period. It is a very important document.

This report shows actual policy values, including amounts that were credited and deducted during the report period. A *Glossary of terms used in this report* and *Important disclosures* are included to help you better understand the report and the coverage provided by your policy.

Please review your entire report. Make sure the *Summary of policy activity* section accurately reflects your understanding of the transactions that occurred or should have occurred during this report period and that your policy performance is consistent with your current insurance needs and expectations.

If you have questions regarding your policy or this report, contact your life insurance agent or our Customer Service department at the telephone number or website address shown above.

Again, thank you for choosing Genworth Life and Annuity to provide your life insurance needs.

Sincerely,

Your Genworth Life and Annuity Customer Service Team

129974  12/11/15

87B - LGCY



Annual report                      03/11/2016
Page 3 of 5          03/11/2015 - 03/11/2016
Insured                         Policy number
**Bianca Rudolph**                   1308458

## Basic information at a glance as of 03/11/2016

| | |
|---|---|
| Specified amount | $44,268.00 |
| Beginning policy value | $22,343.49 |
| Ending policy value | $23,237.23 |
| Ending loan balance | $0.00 |
| Ending net cash surrender value | $23,237.23 |
| Ending death benefit | $44,268.00 |

**Other coverages:**
For Bianca Rudolph

There are no other coverages on Bianca Rudolph.

The following information is a comprehensive record of policy activity during the report period.

## Summary of policy activity

| Transaction date | Premiums paid | Charges and fees | Insurance deductions | Gross withdrawals | Withdrawal charges /WH | Interest credited | Policy value | Death benefit |
|---|---|---|---|---|---|---|---|---|
| 03/11/15 | | | | | | | $22,343.49 | $44,268 |
| 04/11/15 | | | | | | 74.55 | $22,418.04 | $44,268 |
| 05/11/15 | | | | | | 72.38 | $22,490.42 | $44,268 |
| 06/11/15 | | | | | | 75.04 | $22,565.46 | $44,268 |
| 07/11/15 | | | | | | 72.86 | $22,638.32 | $44,268 |
| 08/11/15 | | | | | | 75.54 | $22,713.86 | $44,268 |
| 09/11/15 | | | | | | 75.79 | $22,789.65 | $44,268 |
| 10/11/15 | | | | | | 73.58 | $22,863.23 | $44,268 |
| 11/11/15 | | | | | | 76.29 | $22,939.52 | $44,268 |
| 12/11/15 | | | | | | 74.07 | $23,013.59 | $44,268 |
| 01/11/16 | | | | | | 76.79 | $23,090.38 | $44,268 |
| 02/11/16 | | | | | | 77.04 | $23,167.42 | $44,268 |
| 03/11/16 | | | | | | 69.81 | $23,237.23 | $44,268 |
| **TOTALS** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$893.74** | | |

Surrender charge assessed if the policy is surrendered as of the end of the report period is $0.00.

Your cash surrender value for the next year depends upon next year's surrender charge, and this may be larger or smaller than this year's charge shown above. Please review your policy's schedule page.

We expect to use $0.00000 per $1,000 of net amount at risk as the standard monthly risk rate in determining the cost of insurance during the next policy year.

Some individual transactions may not be reflected; however, values reflect all transactions with dates falling within the report period. This report does not show any transactions or changes with dates after 03/11/2016.



Genworth Life Insurance Company
Genworth Life and Annuity Insurance Company

3100 Albert Lankford Dr.
P.O. Box 10720
Lynchburg, VA 24506-0720

00245
B RudolpH/Custodian
4141 E Lakeside Ln
Paradise Valley, AZ 85253-2826

July 27, 2016



B RudolpH/Custodian
4141 E Lakeside Ln
Paradise Valley, AZ 85253-2826

Policy Number:    1308458
Insured:          Bianca Rudolph

Dear Policy Owner,

We have received your request to change the beneficiary on this contract(s).

We are pleased to inform you that the change is complete and we have changed previous beneficiary designations as you requested. Our records now show:

Primary Beneficiary:
    As Per Attachment Dated 07/21/2016

Contingent Beneficiary:
    As Per Attachment Dated 07/21/2016

Our acceptance of this change does not constitute an opinion or an interpretation of any of the community property laws of your state, which may be applicable. This change is recorded subject to any claims which the spouse or former spouse may have under the community property laws for your state.

Please put this letter with your contract to reflect your records updated.

If you have any questions, or if we may be of further assistance, please do not hesitate to contact us toll-free at 888 325.5433 and our fax number is 888 325.3299.

Sincerely,

NT
Customer Service

Enclosure(s)

## Lawrence and Bianca Rudolph
## 4141 E. Lakeside Lane
## Paradise Valley, AZ 85253-2826

Genworth Life and Annuity Insurance Company
PO Box 40016
Lynchburg, VA 24505-4016

> **Re:** **Request For Change of Beneficiary Designations**.
> Owner/Insured: Bianca Rudolph
> Genworth Life and Annuity Insurance Company Policy No.: 1308458

Please accept this letter of instruction and authorization to change the beneficiary designations for the above-referenced life insurance policy as follows:

> **Primary Beneficiary:** 100% to the Acting Trustee under the Rudolph Trust dated April 25, 2016, or if the trust is for any reason unable to receive the benefit, then to
>
> **Contingent Beneficiary:** 100% to Lawrence P. Rudolph.

If the requested change will result in any taxes, penalties or other charges or changes to the terms of the policy, please notify the undersigned immediately before proceeding.

Once the requested changes are completed, please provide written confirmation to the undersigned of the changes made.

Dated:   7-21   , 2016

_____
Bianca Rudolph

Enclosures:
Genworth Beneficiary Designation Request Form
Certification of Trust

**Great-West**
Life & Annuity Insurance Company

## AMERICAN DENTAL ASSOCIATION
## INDIVIDUAL CERTIFICATE INSERT

TO BE ATTACHED TO AND MADE PART OF INDIVIDUAL CERTIFICATE
ISSUED UNDER THE TERMS OF POLICY NO. **104TLP**

| | |
|---|---|
| **Name of Member** | Dr Lawrence P Rudolph |
| **Certificate Number** | 105665 |
| **Certificate Effective Date** | 01/29/1980 |

## COVERAGE INFORMATION

| Coverage | Insured Amount* | Units | Risk Class | Effective Date |
|---|---|---|---|---|
| **Spouse** | | | | |
| Term Life - Plan B | $ 500,000.00 | 20 | Standard | 11/16/1994 |
| Accidental Death Benefit - Plan B | $ 500,000.00 | 20 | | 11/16/1994 |

* The amount of life insurance for which the **Member** is insured under this Certificate and the face amount of life insurance for which the **Member** is insured under the individual Certificate issued to him under the terms of Policy No. 104ULP cannot exceed $2,000,000.

104TLC-SCH



## Great-West
Life & Annuity Insurance Company

**AMERICAN DENTAL ASSOCIATION
INDIVIDUAL CERTIFICATE INSERT**

TO BE ATTACHED TO AND MADE PART OF INDIVIDUAL CERTIFICATE
ISSUED UNDER THE TERMS OF POLICY NO. **104TLP**

| | |
|---|---|
| **Name of Member** | Dr Lawrence P Rudolph |
| **Certificate Number** | 105665 – *Bianca* |
| **Certificate Effective Date** | 01/29/1980 |

## COVERAGE INFORMATION

| Coverage | Insured Amount* | Units | Risk Class | Effective Date |
|---|---|---|---|---|
| **Spouse** | | | | |
| Term Life - Plan B | $ 500,000.00 | 20 | Standard | 11/16/1994 |
| Accidental Death Benefit - Plan B | $ 500,000.00 | 20 | | 11/16/1994 |

\* The amount of life insurance for which the **Member** is insured under this Certificate and the face amount of life insurance for which the **Member** is insured under the individual Certificate issued to him under the terms of Policy No. 104UL cannot exceed $2,000,000.

104TLC-SCH

July 2004

# TABLE OF CONTENTS

**CERTIFICATE OF INSURANCE** ............................................................................ **1**

**DEFINITIONS** ........................................................................................................ **1**

**ELIGIBILITY** ........................................................................................................ **3**

**GUARANTEED ISSUE** ........................................................................................ **4**

**AMOUNT OF LIFE INSURANCE** ........................................................................ **5**

**PREMIUMS** ............................................................................................................ **6**

    Payment .............................................................................................................. **6**

    Grace Period ...................................................................................................... **6**

    Acceptance of Premiums in Default.................................................................... **6**

    Premium Amounts .............................................................................................. **6**

    Table of Per Month Premium Rates .................................................................... **7**

    Rates for each Risk Class .................................................................................... **7**

    Premium Rates.................................................................................................... **8**

    Semi-Annual Premiums...................................................................................... **8**

    Annual Premiums .............................................................................................. **10**

    Monthly Autopay Premiums .............................................................................. **11**

    Change of Premium Rates.................................................................................. **11**

**BENEFICIARY** ...................................................................................................... **11**

**DEATH BENEFIT**.................................................................................................. **12**

**GENERAL LIMITATIONS**.................................................................................... **12**

    Restrictions for Suicide or Flying ...................................................................... **12**

**TABLE OF CONTENTS** (*continued*)

**ASSIGNMENT** ..................................................................................................... **12**

**TERMINATION** ................................................................................................... **13**

**CONVERSION PRIVILEGE** ............................................................................... **14**

    Death Benefit ..................................................................................................... **15**

**MEMBERSHIP EXCEPTION FOR GRADUATING STUDENTS** .......................... **15**

**ACCELERATED BENEFIT** ................................................................................. **15**

    Accelerated Benefits for a Spouse ..................................................................... **15**

    How to Apply for an Accelerated Benefit ........................................................... **16**

    Amount of Accelerated Benefit .......................................................................... **16**

    The Effect of an Accelerated Benefit on Proceeds ............................................ **16**

    Accelerated Benefit Example ............................................................................. **16**

    Disability Waiver of Premium Benefits ............................................................... **17**

    Limitations ......................................................................................................... **17**

**GENERAL PROVISIONS** ................................................................................... **17**

    Notice of Claim .................................................................................................. **17**

    Claim Forms ...................................................................................................... **17**

    Proof of Loss ..................................................................................................... **18**

    Payment of Claims ............................................................................................ **18**

    Appeals and Legal Actions ................................................................................ **18**

    Furnishing of Information and Duty to Cooperate ............................................... **19**

    Time Limit on Certain Defenses ........................................................................ **20**

    Governing Law and Conformity with Statutes .................................................... **20**

    Misstatement of Facts ....................................................................................... **21**

**(Term Life Plan)**

## CERTIFICATE OF INSURANCE

The **Company** will provide an individual Certificate for each insured **Member**. This individual Certificate outlines the insurance provided under this **Policy** and to whom benefits are payable. In this individual Certificate, words of the masculine gender include the feminine. Defined terms have a special meaning with respect to the provisions outlined in this individual Certificate. On each page where they appear throughout this individual Certificate, they appear in **Boldface**. Please see, DEFINITIONS in the individual Certificate for the definition of a **Boldface** term.

The **Company** and the **Association** acknowledge that they reserve the right, and without consent of insured **Members**, to amend the terms of this **Policy**, including the individual Certificates issued to each insured **Member** at any time, by executing an amendment in writing, duly signed by the authorized representatives of both the **Company** and the **Association**, to become effective on the effective date contained in the amendment.

## DEFINITIONS

1) **Association** means the American Dental Association (ADA), with Headquarters located at Chicago, IL, 60611.

2) **Attained Age** means that age changes for the insured **Member** and insured **Spouse,** if any, will take place each year on the first day of the month immediately following the insured **Member's** or insured **Spouse's** birth month, respectively.

3) **Child** or **Children** means any unmarried child of the **Member** who relies on the **Member** for financial support and;
    A) is over 14 days old but under 21 years of age; or
    B) is at least 21 years of age but under 23 years of age, and is a registered full-time student at a university, college or similar institute of higher learning.

    The term **Child** means the **Member's** unmarried children. This includes grandchildren, stepchildren, legally adopted children or foster children. For a **Child** to be considered a **Dependent**, the **Child** must be chiefly dependent upon the **Member** or the **Member's Spouse** for support and maintenance.

4) **Company** means the Great-West Life & Annuity Insurance Company (GWL&A), with Executive Offices located at Greenwood Village, CO, 80111.

5) **Dependent** or **Dependents** means the **Spouse** and **Children** of the insured **Member**. **Dependent** does not include any person who is:
    A) eligible for insurance under this **Policy** as a **Member**; or
    B) not a resident of the United States of America.

6) **Federal Income Tax Return** (Return) means a signed copy of the **Member's** complete income tax return together with all schedules and supporting documents as filed with the Internal Revenue Service of the United States of America. If such a Return is filed electronically, this shall include all supporting worksheets and other documentation used in compiling the Return, whether or not filed with the Return. Any reference to federal income tax in this Certificate refers only to the information submitted in the Return.

7) **Group Policyholder** is the American Dental Association.

8) **Member** means:

    A) a **Member** in good standing with the **Association** who is:
       I)      an active **Member**;
       II)     a retired **Member**;
       III)    a life **Member**;
       IV)    a provisional **Member**; or
       V)     a student **Member**.

    B) an active and full-time employee of:
       I)      the **Association**; or
       II)     ADA Business Enterprises, Inc., or
       III)    ADA Foundation; or
       IV)    a professional organization which is actively engaged in or associated with the practice of dentistry through its affiliation with the **Association**.

    C) a retired employee who on the day before he retired was employed by:
       I)      the **Association**; or
       II)     ADA Business Enterprises, Inc.; or
       III)    ADA Foundation.

9) **Membership** means membership in the **Association.**

10) **Objective Medical Evidence** means signs and symptoms documented in medical records as being present during examination by a **Physician** and the results from approved medical diagnostic tests, which are consistent with those anatomical, physiological, psychological, or case definition criteria accepted by prevailing medical standards as being indicative of the proposed pathological condition or complaint.

11) **Physician** means a person licensed to practice medicine. **Physician** also includes any other practitioner of the healing arts if he performs a service:

    A)    within the scope of his license; and
    B)    State law requires such practitioner to be considered a **Physician**.

    **Physician** does not include:

    A)    the insured **Member**;
    B)    the insured **Member's Spouse**;
    C)    a person related by blood or marriage to the insured **Member**; or
    D)    a person who has a business relationship with the insured **Member** or the insured **Member's Spouse**.

12) **Policy** means Group **Policy** 104TLP issued to the **Association**, which includes this Certificate that describes the benefits available to an insured **Member** and **Dependent,** if any.

13) **Proof of Good Health** means written evidence that the **Member** or **Spouse**, if any, is insurable according to the general underwriting standards of the **Company**. This evidence includes but is not limited to **Objective Medical Evidence**.

14) **Proceeds** means the amount of insurance payable under this **Policy**.

15) **Regular Care of a Physician** means personal care and treatment by a qualified **Physician**, which under prevailing medical standards is appropriate to the condition causing **Total Disability**. This care and treatment must be at such intervals and frequency as will tend to lead to a cure, alleviation, or minimization of the condition(s) causing the **Total Disability** and which will lead to maximum medical improvement with appropriate maintenance care.

16) **Risk Class** means a process of classifying risks according to their degrees of insurability so that appropriate premium rates may be assigned. There are four Risk Classes: Preferred, Standard, Special Class One and Special Class Two. The **Risk Class** is reflected on the individual Certificate Insert of this Certificate.

17) **Spouse** means the **Member's** legal Spouse.

18) **Terminal Illness** or **Terminally Ill** means a medical condition which, in the opinion of a **Physician**, will result in a life expectancy of 12 months or less. In considering a request for an Accelerated Benefit, the **Company**, at its expense, may require that the person to be examined by a **Physician** of the **Company's** choice.

19) **Totally Disabled** and **Total Disability** means the insured **Member** is unable to work for pay or profit in any job for which he is or may become suited by reason of education, training or experience.

## ELIGIBILITY

Subject to the payment of the required premium and all other terms and conditions of this **Policy**, the insurance under this **Policy** for a **Member** or **Dependent** who on March 31, 2004 was insured under the Replaced **Policy** No. 104GPR starts on April 1, 2004.

The Application(s) and **Proof of Good Health** submitted to and approved by the **Company** for insurance inforce for the **Member** or **Dependent** under the Replaced Policy on March 31, 2004, are deemed to be the Application(s) and **Proof of Good Health** for the insurance which becomes effective for the **Member** or **Dependent** under this Certificate on April 1, 2004.

Any other **Member** who has not reached his 65th birthday is eligible to apply for insurance under this **Policy.**

An eligible **Member** must:
1) apply for insurance on himself or his eligible **Dependent(s)** in writing; and
2) pay the required premium.

If he does so, insurance will start on the date the **Company** approves **Proof of Good Health:**

1) on the **Member** for his insurance,
2) on the **Dependent(s)** for the **Dependent(s)** insurance.

Such proof must be provided at the **Member's** own expense.

It is hereby provided that the insurance of a student **Member** who has not reached his 40th birthday:

1) who is a **Member** in good standing with either the **Association** or the American Student Dental Association (ASDA); or
2) who has applied for membership in either the **Association** or ASDA; and
3) who applies for insurance in writing under this **Policy** by October 31 of the year prior to the calendar year of his graduation;

will start on the date the **Company** receives his application.

## GUARANTEED ISSUE

The guaranteed issue Term Life insurance amount is $50,000. Subject to all other terms and conditions of the **Policy**, the **Company** will not ask a **Member** to provide **Proof of Good Health** and will guarantee to issue Term Life insurance if the **Member** is a new **Member** of the **Association** who:

1) is under age 40; and
2) applies for insurance under this **Policy** within 60 days of the date he receives notice of his eligibility for the coverage provided under the **Policy** from the **Company**.

However, the **Company** will not pay a death benefit for any loss caused by accident or sickness for which the **Member** saw a **Physician** or received medical treatment, care, medication or advice within 12 months prior to the effective date of insurance until such insurance has been in effect for 12 consecutive months.

Guaranteed issue is not available to any **Member** of the **Association** who previously terminated **Membership**, nor is it available to the **Spouse** of any **Member**. Guaranteed issue under this **Policy** is not available to a **Member** who elects guaranteed issue under **Policy** No. 104GUL issued by the **Company** to the **Association**.

## AMOUNT OF INSURANCE

A **Member:**

1) who is insured on April 1, 2004 may apply to increase his insurance to an amount shown in his application. He can only do this if he has not reached his 65th birthday on the date he applies for the increase. The increase will be effective on the date the **Company** approves **Proof of Good Health** for him. The minimum amount of insurance available for an increase in coverage is $50,000. Subject to that minimum, insurance can be purchased, in increments of $25,000, up to a maximum total insurance amount of $2,000,000.

2) who is applying for new coverage under this Certificate must purchase a minimum insurance amount of $50,000. Subject to that minimum, insurance can be purchased, in increments of $25,000, up to a maximum total insurance amount of $2,000,000.

## **Member Coverage**

Coverage available to the **Member**.            One to 80 "units" of life insurance. Each "unit" of life insurance is equal to $25,000.

Maximum insurance reduces to $1,000,000 once an insured **Member** reaches **Attained Age** 76.

An insured **Member** on March 31, 2004 under the Replaced policy with an insured amount of less than $50,000 may continue his insurance under this **Policy** and is exempt from the minimum $50,000 coverage requirement, subject to (1) above under AMOUNT OF INSURANCE.

After becoming insured for any amount under this Certificate, an insured **Member** may request in writing to reduce his insurance, in increments of $25,000, subject to a minimum remaining coverage amount of $50,000. Such reduction will be effective on the date he files the written request to reduce his insurance with the **Company** unless the request is within a 30-day period of the next premium due date. In this instance, the reduction will be effective on the next premium due date.

Restriction for **Members** who are Undergraduate Students

A **Member** who is an undergraduate student can only be insured for a maximum of 10 units of insurance prior to the calendar year of his graduation.

Restriction for **Members** insured for Group Term Life Insurance under this **Policy** and Group Universal Life Insurance under Policy No. 104GUL issued by the **Company** to the **Association**.

The sum of the amount of insurance for which a **Member** is insured under this **Policy** and the Face Amount of Life Insurance for which the **Member** is insured under Policy No. 104GUL cannot exceed $2,000,000.

# PREMIUMS

## Payment

The first premium is due on the effective date of the insured **Member's** insurance.  After that, premiums are due on the semi-annual, annual or monthly Autopay premium due date.  Premiums are payable by the insured **Member** to the **Company** at the **Company's** Executive Offices.  Any premium not paid on time will be in default.

The insured **Member** may elect to pay his premiums:

    1)   semi-annually with premium due dates of  January 1 and July 1 of each calendar year; or,

    2)   Annually with a premium due date of January 1 or July 1 of each calendar year; or

    3)   monthly, but only if enrolled in, and subject to, the terms of the Autopay premium payment plan.  "Autopay" means the pre-authorized bank account withdrawal arrangement for payment of the insured **Member's** premiums.  The monthly Autopay premium due date is the first day of each month.  An insured **Member** may discontinue monthly Autopay billing by paying the premium that is due for the remaining months of the semi-annual cycle.

The premium for any increase in coverage is due on the effective date of the increase.  If an insured **Member** does not become insured on January 1 or July 1, a pro-rata premium will be payable.

## Grace Period

After the first premium has been paid, 31 days are allowed to pay a premium in default.  During this time, the insured **Member's** insurance will remain inforce unless the insured **Member** requests in writing to terminate the coverage.  If the premium is not paid by the end of the days of grace, the insured **Member's** insurance will terminate.

## Acceptance of Premiums in Default

The **Company**, at its sole discretion, may, but is not required to, accept a premium that is in default or extend the time for a premium to be paid.  The **Company's** decision to accept a late premium, or extend the time for a premium payment, if any, shall not be construed as a continuing waiver of the right to enforce the premium payment terms and conditions set forth in the individual Certificate.

## Premium Amounts

The amount of premium payable by each insured **Member** will be determined by the number of units of coverage for which he is insured.  The premium rates are shown in the Table of Per Month Premium Rates below.

| MEMBER TERM LIFE INSURANCE TABLE OF PER MONTH PREMIUM RATES For each Unit ($25,000) of Insurance | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Insured Member's Attained Age | Term Life Preferred Rates | Term Life Standard Rates | Accidental Death Rates (if elected) | Disability Waiver of Premium Rates (if elected) | Insured Member's Attained Age | Term Life Preferred Rates | Term Life Standard Rates | Accidental Death Rates (if elected) | Disability Waiver of Premium Rates (if elected) |
| Under 31 | $0.93 | $0.95 | $0.13 | $0.06 | 56 | $4.66 | $9.04 | $0.39 | $2.29 |
| 31 | $0.93 | $1.03 | $0.13 | $0.07 | 57 | $5.13 | $10.04 | $0.40 | $2.41 |
| 32 | $0.94 | $1.10 | $0.13 | $0.08 | 58 | $5.60 | $11.13 | $0.45 | $2.50 |
| 33 | $0.94 | $1.17 | $0.13 | $0.09 | 59 | $6.07 | $12.09 | $0.53 | $2.69 |
| 34 | $0.95 | $1.25 | $0.12 | $0.11 | 60 | $6.65 | $14.51 | $0.63 | NA |
| 35 | $0.95 | $1.32 | $0.12 | $0.12 | 61 | $7.30 | $17.42 | $0.36 | NA |
| 36 | $0.99 | $1.39 | $0.12 | $0.14 | 62 | $7.99 | $19.42 | $0.42 | NA |
| 37 | $1.03 | $1.46 | $0.12 | $0.15 | 63 | $8.72 | $21.49 | $0.49 | NA |
| 38 | $1.06 | $1.54 | $0.12 | $0.16 | 64 | $9.54 | $24.07 | $0.57 | NA |
| 39 | $1.10 | $1.68 | $0.13 | $0.18 | 65 | $10.52 | $25.97 | $0.64 | NA |
| 40 | $1.14 | $1.72 | $0.18 | $0.27 | 66 | $11.56 | $28.63 | $0.74 | NA |
| 41 | $1.17 | $1.93 | $0.19 | $0.31 | 67 | $12.77 | $31.30 | $0.81 | NA |
| 42 | $1.26 | $2.13 | $0.20 | $0.35 | 68 | $14.10 | $34.07 | $0.88 | NA |
| 43 | $1.35 | $2.34 | $0.21 | $0.39 | 69 | $15.66 | $37.08 | $0.95 | NA |
| 44 | $1.44 | $2.55 | $0.22 | $0.44 | 70 | $20.27 | $57.92 | $1.49 | NA |
| 45 | $1.53 | $2.58 | $0.27 | $0.61 | 71 | $22.29 | $63.69 | $1.64 | NA |
| 46 | $1.63 | $2.77 | $0.28 | $0.67 | 72 | $25.98 | $70.22 | $1.80 | NA |
| 47 | $1.76 | $3.09 | $0.28 | $0.77 | 73 | $30.29 | $77.67 | $2.00 | NA |
| 48 | $1.95 | $3.48 | $0.30 | $0.90 | 74 | $35.10 | $85.62 | $2.20 | NA |
| 49 | $2.12 | $3.93 | $0.31 | $1.04 | 75 | $40.41 | $93.99 | $2.41 | NA |
| 50 | $2.40 | $4.45 | $0.32 | $1.21 | 76 | $47.79 | $99.57 | $0.00 | NA |
| 51 | $2.81 | $5.03 | $0.34 | $1.39 | 77 | $56.87 | $107.30 | $0.00 | NA |
| 52 | $3.17 | $5.67 | $0.35 | $1.60 | 78 | $67.21 | $115.88 | $0.00 | NA |
| 53 | $3.50 | $6.37 | $0.36 | $1.86 | 79 | $79.76 | $126.61 | $0.00 | NA |
| 54 | $3.86 | $7.15 | $0.36 | $2.12 | 80 | $95.55 | $140.51 | $0.00 | NA |
| 55 | $4.23 | $8.13 | $0.37 | $2.17 | | | | | |

NOTE: An insurance amount of $12,500 equals one half a unit.

**Premium Rates for each Risk Class**

Standard **Risk Class** premium rates are Term Life Standard Rates shown in the TABLE OF PER MONTH PREMIUM RATES above.

Special Class One **Risk Class** premium rates are Term Life Standard Rates shown in the TABLE OF PER MONTH PREMIUM RATES above, multiplied by two.

Special Class Two **Risk Class** premium rates are Term Life Standard Rates shown in the TABLE OF PER MONTH PREMIUM RATES above, multiplied by three.

Temporary Extra premium rates means the sum of Term Life Standard Rates shown in the TABLE OF PER MONTH PREMIUM RATES above, plus the additional per month premium amount, for the duration of the Temporary Extra, shown on the individual Certificate Insert. Once the duration of the Temporary Extra has expired, only the Term Life Standard Rates are charged.

Preferred **Risk Class** premium rates are Term Life Preferred Rates shown in the TABLE OF PER MONTH PREMIUM RATES above. Each eligible **Member** or **Spouse** applicant will automatically be considered for a Preferred **Risk Class** anytime he applies for new or increased coverage. Upon approval of the application by the **Company** the Preferred Rates, shown above, will apply to both his new coverage and his existing coverage, if any. The Preferred Rates will apply for a period of 120 months (the Period) beginning on the date the coverage is approved, and automatically end on the last day of the Period. Within 120 days of the end of the Period or later, a participant can apply to re-qualify to be placed in a Preferred **Risk Class** for another Period by providing **Proof of Good Health** satisfactory to the **Company**. There is no additional purchase required at that time. If:

1) The participant's application to re-qualify for the Preferred **Risk Class** is approved, a new Period will begin on the date his application is approved by the **Company**.

2) The participant's application to re-qualify for the Preferred **Risk Class** is not approved, then his coverage will automatically continue in the Standard **Risk Class**, subject to all the provisions of this Certificate.

If a participant does not apply to re-qualify for the Preferred **Risk Class** at the end of the initial Period, his coverage will automatically continue; however his **Risk Class** will change from Preferred **Risk Class** to Standard **Risk Class** beginning the first day following the Period which has just expired.

The Preferred **Risk Class** will automatically switch to the Standard **Risk Class** if the insured **Member** or insured **Spouse** decreases his insurance amount within 24 months after first qualifying for the Preferred **Risk Class**.

## Premium Rates

The premium rates shown in the TABLE OF PER MONTH PREMIUM RATES are:

1) for each unit of $25,000 of insurance amount; and
2) payable on the semi-annual, annual premium or monthly Autopay due date;
3) based on the insured **Member's Attained Age** for each month in the billing cycle, and
4) to be used in the premium calculation formula below for the payment frequency elected by the insured **Member**

## Semi-Annual Premiums

The amount payable by the insured **Member** will be determined by the following formula:

$$\frac{A}{B} \times C = D$$

where:

A    is the insured **Member's** insurance amount (defined in this individual Certificate);
B    is $25,000 (one unit);

C   is the sum of:

1)   the per month premium based on **Attained Age** as of the first day of the first month of the semi-annual billing period, plus;

2)   the per month premium based on **Attained Age** as of the first day of the second month of the semi-annual billing period, plus;

3)   the per month premium based on **Attained Age** as of the first day of the third month of the semi-annual billing period, plus;

4)   the per month premium based on **Attained Age** as of the first day of the fourth month of the semi-annual billing period, plus;

5)   the per month premium based on **Attained Age** as of the first day of the fifth month of the semi-annual billing period, plus;

6)   the per month premium based on **Attained Age** as of the first day of the sixth month of the semi-annual billing period; and

D   is the semi-annual premium payable.

NOTE: The premium referred to in C above is from the **TABLE OF PER MONTH PREMIUM RATES** above.

**Semi-Annual Premium Example:**

The following example shows the calculation of the semi-annual premium when the insured **Member's Attained Age** changes during the semi-annual billing period. Assume an insured **Member's** 55th birthday occurs on January 15th and he has $100,000 Term Life with a Standard **Risk Class**. Because his **Attained Age** changes on the first day of the month following his birth month, his **Attained Age** for insurance purposes will change from 54 to 55 effective February 1st of that year. For the semi-annual billing period January 1 to June 30 during which this change occurs, his premium amount would be a blend of rates for age 54 and 55. Applying the above formula for determining the semi-annual premium, we have:

A = $100,000

B = $25,000

C =    January per month premium (Age 54)           $7.15
         + February per month premium (Age 55)        $8.13
         + March per month premium (Age 55)           $8.13
         + April per month premium (Age 55)            $8.13
         + May per month premium (Age 55)              $8.13
         + June per month premium (Age 55)             $8.13
                                                                      $47.80

D = A x C = $100,000 x $47.80 = $191.20 = semi-annual premium payable.
        B        $25,000

The premium rates used in the above example are taken from the **TABLE OF PER MONTH PREMIUM RATES** above.

**Annual Premiums**

The amount payable by the insured **Member** will be determined by the following formula:

$$\frac{E \times G \times H}{F} = I$$

where:

E    is the insured **Member's** insurance amount (defined in this individual Certificate);

F    is $25,000 (one unit);

G    is the sum of:

1) the per month premium based on **Attained Age** as of the first day of the first month of the annual billing period, plus;

2) the per month premium based on **Attained Age** as of the first day of the second month of the annual billing period, plus;

3) the per month premium based on **Attained Age** as of the first day of the third month of the annual billing period, plus;

4) the per month premium based on **Attained Age** as of the first day of the fourth month of the annual billing period, plus;

5) the per month premium based on **Attained Age** as of the first day of the fifth month of the annual billing period, plus;

6) the per month premium based on **Attained Age** as of the first day of the sixth month of the annual billing period;

7) the per month premium based on **Attained Age** as of the first day of the seventh month of the annual billing period, plus;

8) the per month premium based on **Attained Age** as of the first day of the eighth month of the annual billing period, plus;

9) the per month premium based on **Attained Age** as of the first day of the ninth month of the annual billing period, plus;

10) the per month premium based on **Attained Age** as of the first day of the tenth month of the annual billing period, plus;

11) the per month premium based on **Attained Age** as of the first day of the eleventh month of the annual billing period, plus;

12) the per month premium based on **Attained Age** as of the first day of the twelfth month of the annual billing period;

H    is the annual discount factor of .97

I    is the annual premium payable.

NOTE: The premium referred to in G above is from the **TABLE OF PER MONTH PREMIUM RATES** above.

**Monthly Autopay Premiums**

For monthly Autopay, if elected, the monthly amount payable by the insured **Member** will be determined by the following formula:

$$\frac{J \times L \times M}{K} = N$$

where:

J   is the insured **Member's** insurance amount (defined in this individual Certificate);
K   is $25,000 (one unit);
L   is the per month premium based on **Attained Age** as of the first day of the month being billed;
M   is the monthly Autopay loading factor of 1.02; and
N   is the monthly Autopay premium payable.

NOTE: The premium referred to in L above is from the **TABLE OF PER MONTH PREMIUM RATES,** above.

**Change of Premium Rates**

The **Company** has the right to change the premium rates on the first day of any insurance year or at anytime the provisions of the **Policy** are modified at the request of the **Association**.

<strong>BENEFICIARY</strong>

A **Member** may name a beneficiary when he applies for insurance.  Unless legally restricted, he can change the beneficiary.

1)   Naming or changing a beneficiary must be:

   A)  in writing;
   B)  signed by the **Member**; and
   C)  filed with the **Company** at its Executive Offices.

2)   If a named beneficiary dies before the insured **Member**, that part of the **Proceeds** which such beneficiary would have received will be paid;

   A)  to the remaining beneficiary if one beneficiary remains; or
   B)  to the remaining beneficiaries, proportionate to their designated shares, if more than one beneficiary remains; or
   C)  to the **Member's** estate,  if no beneficiary remains.

This will not be the case if:

   I)    the **Member** has specified otherwise on his application; or
   II)   the applicable state law does not allow this.

Subject to the applicable state law, if no named beneficiary survives the insured **Member** or if the insured **Member** has not named a beneficiary, the **Proceeds** will be paid to the insured **Member's** estate.

## DEATH BENEFIT

If an insured **Member** dies, written proof of loss must be sent to the **Company's** Executive Offices.  On receipt of such proof, subject to all provisions of the **Policy** and this Certificate the **Company** will pay the **Proceeds** to his beneficiary or beneficiaries.

## GENERAL LIMITATIONS

**Restrictions for Suicide or Flying**

1)  If a continuously insured **Member** dies within two years of the date he last became insured under:

   A)  this **Policy**; or
   B)  any policy which it replaced;

   and if his death is the result of suicide, whether sane or insane, or operating or riding in any kind of aircraft which is being used for any training, testing or experimental purpose, then the amount of his insurance will be reduced to the sum of the premiums paid for his insurance under this Certificate and, if applicable, any policy which it replaced.

2)  If :

   A)    the insured **Member** dies within two years of the date of any increase in his amount of insurance which is due to a change in the number of units for which he is insured; and
   B)    his death is the result of:

      I.      suicide, whether same or insane; or
      II.     operating or riding in any kind of aircraft which is being used for any training, testing or experimental purpose;

   then the amount of his insurance will be reduced to the sum of:

      a)    the amount of insurance, if any, which has been continuously in force for at least two years; and
      b)    the difference between (i) and (ii) below, where:

         i.      is the premiums actually paid by the insured **Member**; and
         ii.     is the premiums paid for the insurance which has been continuously in force for at least two years.

## ASSIGNMENT

An insured **Member** may assign his life insurance as collateral security.  The interest of any beneficiary will be subordinate to the interest of any assignee under a collateral assignment. The signature of any irrevocable beneficiary must be obtained before a collateral assignment will be accepted by the **Company.** A collateral assignment is not a transfer of ownership.

An insured **Member** may absolutely assign his life insurance. This assignment includes the **Member's** right to:

1) use the CONVERSION PRIVILEGE; and
2) change the BENEFICIARY.

The **Company** is not responsible for the validity or effect of any assignment. The **Company** will not recognize an assignment until the signed original has been noted at its Executive Offices.

## TERMINATION

The insurance of an insured **Member** will terminate on the earliest of the following:

1) the date of termination of the **Policy**; or

2) the day before the insured **Member** reaches **Attained Age** 81; or

3) the 32nd day after the due date of any unpaid premium; or

4) the date the insured **Member** requests in writing to the **Company** that his coverage be terminated; or

5) the effective date of any Individual Policy issued to him under the terms of the CONVERSION PRIVILEGE found in this **Policy**; or

6) the December 31 prior to the premium due date which follows the date the insured **Member**:

A) ceases to be a **Member** in good standing with the **Association**; or
B) except in the case of a retired employee, ceases to be actively employed by:

    I.    the **Association**; or
    II.   ADA Business Enterprises, Inc.; or
    III.  ADA Foundation; or
    IV.  a professional organization which is actively engaged in or associated with the practice of dentistry through its affiliation with the **Association**.

If such employee is not at work due to sickness or injury which causes his **Total Disability**, he may continue his insurance under this **Policy** for a minimum period of six months. Such period will start on the date his **Total Disability** started. The employee must pay the required premium for his insurance to the **Company**. The employee's insurance will not be continued after the earlier of the date on which:

a) the employee's insurance is continued without premium payment under the provision of the DISABILITY WAIVER of PREMIUM OPTION, if any, found in this **Policy**; or
b) the **Policy** terminates.

104TLC                                  13                            (04/04)

## CONVERSION PRIVILEGE

A **Member** who is insured under this **Policy** may apply to the **Company** in writing for an individual policy of life insurance (the Individual Policy).  He may only apply under the items (1) through (3) below while this **Policy** is inforce.  **Proof of Good Health** will not be required and he must apply within 60 days after:

1) the date the insured **Member** reaches **Attained Age** 81; or

2) the June 30 or the December 31 which is the day just before the first premium due date after he ceases to be a **Member**; or

3) the June 30 or December 31 which is the day just before the first premium due date next after the date he ceases to be **Totally Disabled**.  He will only be able to do this if on such date his insurance was being continued under the provision of the DISABILITY WAIVER of PREMIUM OPTION, if any, found in this **Policy**; or

4) the date of termination of this **Policy**.  He may do this only if on that date he had been insured:
   A) under this **Policy**; or
   B) under any other policy issued by the **Company** which this **Policy** replaced, for the 60 consecutive month period immediately before termination of this **Policy**.

The Individual Policy will be subject to the following:

1) The Individual Policy will be one of the **Company's** standard forms.  No form of term insurance will be offered.  The Individual Policy will not contain any disability benefit or any accidental death benefit.

2) The Individual Policy will take effect at the end of the 60 day period allowed for the **Member** to apply.  During this time, the first premium must be paid to the **Company**.

3) The premium for the Individual Policy will be the premium applicable to:
   A) the form and amount of the Individual Policy; and
   B) the **Member's** age on his birthday closest in time to the effective date of the Individual Policy.

4) The amount of the Individual Policy will be the **Member's** current amount of insurance under this **Policy**.  This will be the case unless the **Member** elects a lower amount. If he is eligible under (4) above, then the maximum amount will be:

   A) if this **Policy** terminates and is replaced by a similar plan of Group Term Life Insurance sponsored by the **Association**, the lesser of:

      I)    $10,000; and
      II)   his current amount of insurance under this **Policy**.  Such amount will be reduced by any amount for which he is eligible under any Group Policy issued to the **Association** within 31 days after the date this **Policy** terminates.

   B) if the **Policy** terminates but is not replaced by a similar plan of Group Term Life Insurance sponsored by the **Association**, the amount for which the **Member** was insured under this **Policy** on the day before it terminated.

      In this case, the **Member** will be able to exercise this Conversion Privilege even if he has not been insured under this **Policy** for 60 consecutive months immediately before its termination.

**Death Benefit**

Where permitted by law, a **Member** is allowed 60 days to apply for this Conversion Privilege. If he dies within this period, his beneficiary will receive a Death Benefit. The amount of such benefit will be the maximum amount which he would have been eligible to convert under the provisions of this CONVERSION PRIVILEGE section.

This Death Benefit is payable even if the **Member** had not applied for an Individual Policy under this Conversion Privilege section. The Death Benefit is payable as a claim under this **Policy**.

## MEMBERSHIP EXCEPTION FOR GRADUATING STUDENTS

A former **Member** who:

1) was insured under this **Policy** as an undergraduate student;
2) graduates from a pre-doctoral program at an accredited dental school; and
3) does not become a **Member** of the **Association**,

may continue his life insurance for up to three calendar years following the calendar year of his graduation.

Insurance for such a person will end on the December 31st of the third calendar year after the calendar year of his graduation from the pre-doctoral program, unless he becomes a **Member** of the **Association**.

## ACCELERATED BENEFIT

If an insured **Member** is **Terminally Ill**, he may apply to receive a portion of his life insurance as an "Accelerated Benefit". In order to do this, he must be covered under this **Policy** and he must give the **Company Objective Medical Evidence** of a **Terminal Illness**.

Any Accelerated Benefit received may be treated as taxable income and may affect eligibility for Medicaid or other government benefits or entitlements. An insured person should consult his personal tax and legal advisor before applying for an Accelerated Benefit.

**Accelerated Benefits for a Spouse**

If a **Member's** insured **Spouse** has a **Terminal Illness** and is insured under the Rider entitled "LIFE INSURANCE FOR DEPENDENTS", Accelerated Benefits are available for the **Spouse's** life insurance coverage. The amount of the Accelerated Benefit available to an insured **Spouse** will be based on the Plan of Insurance coverage amount provided to him by the **Company** at the time the request for the Accelerated Benefit is made.

### How to Apply for an Accelerated Benefit

To apply for an Accelerated Benefit the **Terminally Ill** insured person must:

1) contact the **Company** for the appropriate application form; and

2) send the application to the **Company** along with a statement from his **Physician** certifying that the insured person has a **Terminal Illness**.

The request for an Accelerated Benefit must be made by the **Terminally Ill** insured person. However, if he is legally incapacitated, the request must be made by a person with legal authority to act on the insured person's behalf. If the **Terminally Ill** person is the **Spouse** of a **Member**, the **Member** (or person with legal authority to act for the **Member**) must also sign any form necessary for requesting the Accelerated Benefit.

### Amount of Accelerated Benefit

The **Terminally Ill** insured person may request an Accelerated Benefit of up to 50% of the amount of his life insurance coverage to a maximum of $200,000. The minimum Accelerated Benefit is $25,000.

The amount of the Accelerated Benefit available to the **Terminally Ill** insured person will be based on the amount of life insurance coverage provided to him by the **Company** under this **Policy** when he requests the Accelerated Benefit.

The Accelerated Benefit will be paid to the **Terminally Ill** insured person in a lump sum. An Accelerated Benefit may only be requested one time while covered by the **Company**. If the insured person recovers from his **Terminal Illness** after receiving an Accelerated Benefit, the **Company** will not ask for a refund of the Accelerated Benefit. However, the insured person's amount of life insurance will be reduced as described below.

### The Effect of an Accelerated Benefit on Proceeds

Upon the death of the **Terminally Ill** insured person the **Proceeds** under this **Policy** will be reduced by the amount of the Accelerated Benefit paid. If the Accelerated Benefit amount is equal to or exceeds the amount of life insurance inforce at the time of the **Terminally Ill** insured person's death, no additional **Proceeds** will be payable upon his death.

### Accelerated Benefit Example

Following is an example of how an Accelerated Benefit works. This example is used only as an illustration and may not reflect the actual dollar amount of life insurance.

Assume an insured person's total amount of life insurance is $100,000. He is diagnosed with a **Terminal Illness** and requests that 25% of his life insurance to be paid now as an Accelerated Benefit. The request is approved and a $25,000 check is sent to the **Terminally Ill** insured person.

The $25,000 Accelerated Benefit is treated as a loan except that no interest, expenses, or administrative fees are charged. Upon the insured person's death, his beneficiary receives the remaining $75,000.

**Disability Waiver of Premium Benefits** (if applicable to the insured **Member**)

If a **Terminally Ill** insured **Member** is approved for an Accelerated Benefit, he may also be approved for a Disability Waiver of Premium Benefit. If he has already qualified for the Disability Waiver of Premium Benefit when approved for an Accelerated Benefit, he will continue the Disability Waiver of Premium Benefit, subject to the terms and conditions of the DISABILITY WAIVER OF PREMIUM OPTION Rider that is attached to this Certificate.

**Limitations**

No Accelerated Benefit will be paid if:

1) all or part of the life insurance must be paid to the insured person's children or his spouse or former spouse as part of a court approved divorce decree, a separate maintenance agreement, or a property settlement agreement.

2) the insured person is married and lives in a community property state, unless he provides the **Company** with a signed statement from his spouse consenting to payment of the Accelerated Benefit.

3) the insured person has made an Absolute Assignment of all Incidents of Ownership of his life insurance, unless he provides the **Company** with a signed statement from the owner consenting to payment of the Accelerated Benefit.

4) the insured person has made a collateral assignment of all or part of his life insurance, unless he provides the **Company** with a signed statement from the collateral assignee consenting to payment of the Accelerated Benefit.

5) the insured person has filed for bankruptcy, unless he provides the **Company** with written approval from the bankruptcy court for payment of the Accelerated Benefit.

## GENERAL PROVISIONS

**Notice of Claim**

Written notice of claim can be given at the **Company's** Executive Offices or to one of its authorized agents.. Notice should include:

1) the **Member's** name;
2) the **Policy** number; and
3) the insured **Member's** individual Certificate number.

**Claim Forms**

When the **Company** receives notice of claim, it will send the claimant the forms for filing proof of loss. If these forms are not given within 30 days, the claimant can meet the proof of loss requirements by giving the **Company** a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss section below.

104TLC                                    17                                    (04/04)

**Proof of Loss**

Written proof of loss must be given to the **Company** within 90 days after the loss.

If it is not reasonably possible to give written proof in the time required, the **Company** will not reduce or deny the claim as long as the proof is filed as soon as reasonably possible. In any case, the proof required must be given no later than 36 months from the date of loss. If proof of loss is not received by the end of this 36-month period, no benefits will be paid, absent a showing that the claimant was legally incapable of providing the proof before the end of the 36 months.

**Payment of Claims**

The **Proceeds** will be paid in a lump sum to the beneficiary (payee) or the beneficiary may make an election of a settlement option offered by the **Company** when the **Proceeds** become payable. The amount, terms of payment and rate of interest of such settlement option will be those offered by the **Company** at the time the beneficiary makes the election. If the payee dies, any unpaid installments will be commuted on the basis of the interest rate used to determine the amount of each installment and paid in a lump sum to the beneficiary designated under the settlement option, if a beneficiary was named; otherwise to the payee's estate.

**Appeals and Legal Actions**

If a claimant or his authorized representative disagrees with all or part of the **Company's** benefit determination, the claimant or his authorized representative must appeal such decision in writing by providing the **Company** with reasons for disagreement. The appeal must be sent to the **Company** by certified or other registered mail.

The appeal must contain:

1) the reason(s) for the appeal and/or disagreement;
2) the insured **Member's** name and individual Certificate number;
3) **Objective Medical Evidence** or other documentation in support of the claimant's position;
4) any additional information known to the claimant which exists at that time that the claimant wishes to have considered by the **Company** in support of the claim.

The appeal must be made before any litigation can be initiated by or on behalf of the claimant after the date of the **Company's** initial decision or denial regarding the claim. The claimant will be advised by the **Company** of its final decision in writing, setting out specific reasons for the decision, with specific references to pertinent provisions of this individual Certificate and this **Policy**. This written final decision will be sent to the claimant or his authorized representative within 60 days of the **Company's** receipt of the written appeal unless specific circumstances require an extension of time for processing the appeal, obtaining additional information or conducting an investigation of the facts. In no event will the written decision be sent later than 90 days after receipt of the appeal. The claimant or his authorized representative should submit any additional information in support of the claim as part of the appeal. Any information existing at that time that is not submitted as part of the appeal cannot be used for the first time in any subsequent legal proceeding, unless permitted by the **Company** as described below.

104TLC                                    18                                    (04/04)

Following the initiation of legal proceedings, if the claimant discovers additional information supporting the claim, and such information existed at the time of the appeal but the claimant or his authorized representative was previously unaware of such information, the claimant must inform the **Company** of this new information and the **Company** will then have the option of:

1) requiring a claimant to submit a new appeal of the previously denied claim that includes the new information; or
2) agreeing to the introduction of the new information during the pending legal proceedings.

The claimant may not raise a new or additional medical condition or any other issue in support of a claim in a legal proceeding without first allowing the **Company** to assess such condition or issue.

No legal action may be started by the claimant:

1) prior to the date of the **Company's** final decision on the appeal; nor
2) more than three years after the date of the **Company's** final decision on the appeal.

## Furnishing of Information and Duty to Cooperate

The **Company** shall have the right to obtain any information it determines is reasonably necessary to evaluate an application or a claim for benefit under this individual Certificate [or under this **Policy**]. This information includes, but is not limited to:

1) **Objective Medical Evidence** which:

   A) in connection with applications for insurance or for increases in insurance, demonstrates to the **Company's** satisfaction **Proof of Good Health.**
   B) in connection with already insured **Members**, supports a claim for the Disability Waiver of Premium Benefit or the Accelerated Living Benefit.

   This evidence will be derived from all medical records, **Physician's** reports and related information from any medical professionals or other medical providers from whom the insured person has received any medical care, treatment or advice, or prescription(s) for medication.

2) Information concerning other insurers with whom the applicant or insured person has, or has had, coverage, including documents and medical records contained in such insurers' files.

3) A physical examination conducted by a medical professional chosen and paid for by the **Company**, as often as reasonably necessary. This may include, a physical/functional capacities evaluation.

4) **Federal Income Tax Returns**.

The **Company's** decision to forego obtaining any particular information does not prevent it from subsequently requiring such information.

The applicant or claimant will cooperate with the **Company's** efforts to obtain this information and will execute any necessary releases or authorizations. Failure of an applicant or claimant to cooperate with any of these requirements may, independently of other information provided, result in:

1) rejection of an application for insurance;
2) denial, suspension or termination of benefits.

## Time Limit on Certain Defenses

The validity of an insured **Member's** or insured **Dependent's** coverage can be contested at any time due to non-payment of premiums. .

During the first 24 months a **Member's** or **Dependent's** insurance is inforce, or during the first 24 months following the effective date of any increase in a **Member's** or **Dependent's** insurance; only a written statement signed by the insured person can be used to contest the validity of that insurance. After a **Member's** or **Dependent's** insurance or any increase in his insurance has been inforce for 24 months during his lifetime, no statement, except fraudulent statements, made by the insured person can be used to contest the validity of that insurance. If a **Member** or **Dependent:**

1) becomes insured under this **Policy**;
2) terminates his insurance;
3) again becomes insured under this **Policy;**

the 24 month period referred to in this section entitled Time Limit on Certain Defenses will start on the date he last became insured under this **Policy.**

## Governing Law and Conformity with Statutes

At the request of the **Association**, which is headquartered in Chicago, Illinois, and with the agreement of the **Company**, the **Policy** and any dispute between an insured person or claimant and the **Company** arising in connection therewith are subject to, governed by, and shall be construed in accordance with the law of the State of Illinois, and this **Policy** has accordingly been submitted to and approved by the Illinois Department of Insurance.

The **Policy** is sitused in the State of Illinois, and is amended to comply at all times with the minimum requirements of the State of Illinois, which apply to Group Term Life Insurance.

The **Policy** and individual Certificates issued are deemed to be issued in the State of Illinois.

**Misstatement of Facts**

Individual Certificates are issued in reliance upon statements provided by an insured person in his individual application.

1) **Misstatement of Age**
   If the age of an insured **Member** or an insured **Spouse** has been misstated on his application, then all amounts payable under his individual Certificate will be such as the premium paid would have purchased at the correct age.

   Before the **Proceeds** are paid, the **Company** must receive proof of the insured person's age.

   If his age has been:

   A) understated, the insured person's amount of insurance will be reduced to the amount of insurance which would have been purchased by the premiums paid had the insured person's true age been given.

   B) overstated, the difference between the premiums:

   I)   actually paid by the **Member**; and
   II)  which should have been paid had his true age been given; will be calculated.

   This difference will be refunded by the **Company**.

2) **Other Misstatements**
   For all other incorrect statements on the application besides age, if accurate information would have altered the **Company's** decision to:

   A)   issue coverage under this **Policy**; or
   B)   issue coverage in the amount issued; or
   C)   have modified the coverage in any way;

   the **Company** will have, at its sole option, the right to rescind or modify the insured person's coverage.

**Great-West**
LIFE & ANNUITY INSURANCE COMPANY

## AMERICAN DENTAL ASSOCIATION

### INDIVIDUAL CERTIFICATE INSERT

TO BE ATTACHED TO AND MADE PART OF INDIVIDUAL CERTIFICATE
ISSUED UNDER THE TERMS OF GROUP POLICY NO. 104GPR

NAME OF MEMBER                    RUDOLPH,LAWRENCE,P

CERTIFICATE                          105665
NUMBER

CERTIFICATE                       04 MAY 1983
EFFECTIVE DATE

BENEFIT INFORMATION*

DEPENDENT LIFE INSURANCE
SEE CERTIFICATE INSERT AC104R-DLR

SPOUSE TERM LIFE INSURANCE — EFFECTIVE DATE 16 NOV 1994
PLAN B — $ 500,000 (20 UNITS)
SPOUSE ACCIDENTAL DEATH BENEFIT — EFFECTIVE DATE 16 NOV 1994
$ 500,000 (20 UNITS)
SEE CERTIFICATE INSERT-SRB-1 FOR PREMIUM RATES

* THE AMOUNT OF LIFE INSURANCE FOR WHICH THE MEMBER IS INSURED UNDER THIS CERTIFICATE AND THE
FACE AMOUNT OF LIFE INSURANCE FOR WHICH THE MEMBER IS INSURED UNDER THE INDIVIDUAL CERTIFI-
CATE ISSUED TO HIM UNDER THE TERMS OF GROUP POLICY NO. 104GUL CANNOT EXCEED $1,500,000.

GM0605   (REV. 03/99)



**Great-West**
LIFE & ANNUITY INSURANCE COMPANY

To be attached to and made part of Individual Certificate
issued under the terms of Group Policy No. 104GPR issued to

## AMERICAN DENTAL ASSOCIATION

by

## GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY

### MEMBER TERM LIFE INSURANCE

SCHEDULE OF PREMIUM RATES

For Member's Insured For One Unit ($25,000)

| Age Nearest Birthday on July 1 | Term Life July Annual Premium | Accidental Death/ Waiver of Premium If Elected, July Annual Premium | Age Nearest Birthday on July 1 | Term Life July Annual Premium | Accidental Death/ Waiver of Premium If Elected, July Annual Premium |
|---|---|---|---|---|---|
| under 31 | $ 11.00 | $ 2.00 | 54 | $ 83.25 | $ 27.75 |
| 31 | 11.90 | 2.10 | 55 | 94.70 | 28.30 |
| 32 | 12.75 | 2.25 | 56 | 105.30 | 29.70 |
| 33 | 13.60 | 2.40 | 57 | 116.90 | 31.10 |
| 34 | 14.45 | 2.55 | 58 | 129.60 | 32.40 |
| 35 | 15.30 | 2.70 | 59 | 140.80 | 35.20 |
| 36 | 16.15 | 2.85 | 60* | 168.96 | 7.25 |
| 37 | 17.00 | 3.00 | 61 | 202.85 | 4.15 |
| 38 | 17.85 | 3.15 | 62 | 226.15 | 4.85 |
| 39 | 19.55 | 3.45 | 63 | 250.35 | 5.65 |
| 40 | 20.00 | 5.00 | 64 | 280.40 | 6.60 |
| 41 | 22.40 | 5.60 | 65 | 302.55 | 7.45 |
| 42 | 24.80 | 6.20 | 66 | 333.45 | 8.55 |
| 43 | 27.20 | 6.80 | 67 | 364.65 | 9.35 |
| 44 | 29.60 | 7.40 | 68 | 396.85 | 10.15 |
| 45 | 30.00 | 10.00 | 69 | 431.95 | 11.05 |
| 46 | 32.25 | 10.75 | 70 | 674.70 | 17.30 |
| 47 | 36.00 | 12.00 | 71 | 742.00 | 19.00 |
| 48 | 40.50 | 13.50 | 72 | 818.05 | 20.95 |
| 49 | 45.75 | 15.25 | 73 | 904.80 | 23.30 |
| 50 | 51.75 | 17.25 | 74 | 997.45 | 25.55 |
| 51 | 58.50 | 19.50 | 75 | 1,094.95 | 28.05 |
| 52 | 66.00 | 22.00 | | | |
| 53 | 74.15 | 24.85 | | | |

SEE REVERSE FOR EXPLANATION OF PREMIUM RATES

AC104R-A

(Rev. 5/01)

## EXPLANATION OF
## PREMIUM RATES

The amount of Semi-Annual Premium for one unit is the product of (1) and (2) below, where:

(1) is the amount of July Annual Premium for the Member's age as of the premium due date; and
(2) is .515.

*The premiums shown are renewal premiums only.
Age changes on July 1 each year. Therefore, the January Annual Premiums shown above are the sum of (3) and (4) below, where:

(3) is one half (1/2) of the July Annual Premium for the Member's lower age for the calendar year in question; and
(4) is one half (1/2) of the July Annual Premium for the Member's higher age in the calendar year in question.

## PREMIUM RATES

The amount of the Semi-Annual or Annual Premium for a Member for more than one unit is the product of (A) and (B) below, where:

(A) is the amount of the Semi-Annual or Annual Premium which the Member would have to pay if he were insured for one unit.
(B) is times the number of units for which the Member is insured.

See reverse side for Premium Rates

## DEFINITIONS

In the Group Policy:

(1) "Association" means the American Dental Association (ADA).

(2) "Member" means:

   (A) a Member in good standing with ADA who is:

      (a) an active Member;

      (b) a retired Member;

      (c) a life Member;

      (d) a provisional Member; or

      (e) a student Member.

   (B) an active and full-time employee of:

      (a) ADA; or

      (b) ADA Publishing Co. Inc., or

      (c) a professional organization which is actively engaged in or associated with the practice of dentistry through its association with ADA.

   (C) a retired employee who on the day before he retired was employed by:

      (a) ADA; or

      (b) ADA Health Foundation.

(3) "Membership" means membership in ADA.

(4) "Proof of Good Health" means written evidence that the person is insurable according to the general underwriting standards of the Company. Such evidence includes but is not limited to medical evidence.

(5) "Proceeds" means the amount of insurance payable under the Group Policy. Such amount will be determined from the number of units under which the Member is insured at the time of his death.

## PREMIUMS

Premiums are payable by the Member to the Company. The Member may elect to pay his premiums semi-annually or annually on January 1 and/or July 1 of each calendar year. Premiums must be paid at the Company's Executive Offices. Any premium not paid on time will be in default.

The amount of the semi-annual or annual premium payable by each insured Member will be determined by the number of units of Insurance under which he is insured. The premiums are set out in the Schedule of Benefits and Premium Rates which is attached to this Certificate.

### Grace Period

After the first premium has been paid, 31 days are allowed to pay a premium in default. During this time, the Member's insurance will remain inforce. If the premium is not paid by the end of the days of grace, the Member's insurance will terminate.

### Change of Premium Rates

The Company has the right to change the premium rates on the first day of any insurance year or at anytime the provisions of the Group Policy are modified a the request of ADA.

### BENEFICIARY

A Member may name a beneficiary when he applies for insurance. Unless legally restricted, he can change the beneficiary. Naming or changing a beneficiary must be:

(1) in writing;

(2) signed by the Member; and

(3) filed with the Company at its Executive Offices.

If a named beneficiary dies before the insured Member, that part of the Proceeds which such beneficiary would have received will be paid to any remaining named beneficiaries who survive the Member. This will not be the case if:

(A) the Member has specified otherwise on his application; or

(B) the applicable state law does not allow this.

Subject to the applicable state law, if no named beneficiary survives the Member or if the Member has not named a beneficiary, the Proceeds will be paid to the Member's estate.

### METHODS OF PAYMENT

A Member may elect to have the proceeds paid to his beneficiary (payee):

(1) in 60 monthly installments. If he does so, interest will be allowed at the greater of the following rates:

   (A) 3½%, or

   (B) the rate currently offered by the Company at the time of election.

(2) in any other manner to which the Company agrees. In this case, the interest rate will be the rate currently offered by the Company at the time of election.

If the Member does not elect one of the above options prior to his death, then:

(a) the Proceeds will be paid in a lump sum; or

(b) the beneficiary may make an election when the Proceeds become payable.

The amount, terms of payment and rate of interest will be those offered by the Company at the time the beneficiary makes the election.

The first payment under (1) above will be due on the date on which the Proceeds are applied. Payment will not be made more than once a year unless each payment is at least $25.00.

If the payee dies, unpaid installments will be:
 (i) commuted on the basis of the interest rate first used to determine the amount of each installment; and
 (ii) paid in a lump sum to the payee's estate.

## DEATH BENEFIT

If an insured Member dies, written proof of his death must be sent to the Company's Executive Offices. On receipt of such proof, subject to all provisions of the Group Policy the Company will pay the Proceeds to his beneficiary.

### Claim Provisions

(1) **Notice of Claim**
   Written notice of claim can be given at the Company's Executive Offices or to one of its authorized agents. Notice should include:
   (a) the Member's name; and
   (b) the Group Policy number.

(2) **Claim Forms**
   When the Company receives notice of claim, it will send the claimant forms for filing proof of loss. If these forms are not given to the claimant within 15 days, the claimant can meet the proof of loss requirement by giving the Company a written statement of the loss within the time limit stated in paragraph (3) Proof of Loss.

(3) **Proof of Loss**
   Written proof of loss must be given to the Company within 90 days after the Member's death or as soon after that as is reasonably possible.

(4) **Legal Actions**
   The claimant may bring a legal action to recover the Additional Death Benefit (if applicable to the insured person) provided under the Group Policy. Such legal action must be brought:
   (a) no sooner than 60 days; and
   (b) no later than 2 years;
   after the time written proof of loss is required to be given under the Group Policy.

(5) **Conformity with Statutes**
   The Claim Provisions listed above are amended to comply with the minimum requirements of the state in which a Member resides at the time of his death.

## GENERAL LIMITATIONS

### Restrictions for Suicide or Flying

(A) If a continuously insured Member dies within 2 years of the date he last became insured under:
   (a) the Group Policy; or
   (b) any policy which it replaced;
   and if his death is the result of:
   (i) suicide whether sane or insane; or
   (ii) operating or riding in any kind of aircraft which is being used for any training, testing or experimental purpose;
   then the amount of his insurance will be reduced to the sum of the premiums paid for his insurance under the Group Policy and, if applicable, any policy which it replaced.

(B) If:
   (a) a Member dies within 2 years of the date of any increase in his amount of insurance which is due to a change in the number of units for which he is insured; and
   (b) his death is the result of:
      (i) suicide whether sane or insane; or
      (ii) operating or riding in any kind of aircraft which is being used for any training, testing or experimental purpose;
   then the amount of his insurance will be reduced to the sum of:
   A. the amount of insurance which has been continuously in force for at least 2 years; and
   B. the difference between (a) and (b) below, where:
      (a) is the premiums actually paid by the Member; and
      (b) is the premiums paid for the insurance which has been continuously in force for at least 2 years.

## AGE

Before the Proceeds are paid, the Company must receive proof of the Member's age. An adjustment will be made if his age has been misstated.

If his age has been:
(1) understated, the Member's amount of insurance will be reduced to the amount of insurance which would have been purchased by the premiums paid had the Member's true age been given.
(2) overstated, the difference between the premiums:
   (a) actually paid by the Member; and
   (b) which should have been paid had his true age been given;
   will be calculated. This difference will be refunded by the Company.

104R-2 (7/93)                                                                                              (Rev. 7/98)

## CURRENCY

All money payable under the Group Policy is payable in lawful money of the United States of America.

## ENTIRE CONTRACT

The contract consists of:
(1) the Group Policy;
(2) the application for the Group Policy;
(3) any Member applications; and
(4) any notices of Proof of Good Health.

Except for fraud, statements made by ADA or by a Member are deemed representations and not warranties. Only statements contained in:
(A) ADA's application for the Group Policy;
(B) any Member applications; or
(C) any notices of Proof of Good Health;
will void any insurance under the Group Policy, or be used in defense to claim under it.

## INCONTESTABILITY

After the Group Policy has been inforce for 2 years, it validity can be contested due to non-payment of premiums.

During the first 2 years a Member's insurance is inforce, or during the first 2 years following the effective date of any increase in a Member's insurance; only a written statement signed by him can be used to contest the validity of that insurance. After his insurance has been inforce for 2 years during his lifetime, no statement made by him can be used to contest the validity of that insurance. After any increase in a Member's insurance has been inforce for 2 years during his lifetime, no statement made by him can be used to contest the validity of that increase in insurance. If a Member:
(1) becomes insured under the Group Policy;
(2) terminates his insurance;
(3) again becomes insured under the Group Policy;
the 2 year period referred to in the second paragraph of this incontestability clause will start on the date he last became insured under the Group Policy.

## ASSIGNMENT

A Member may assign his life insurance as collateral security. The interest of any revocable beneficiary will be subordinate to the interest of any assignee under a collateral assignment. A collateral assignment is not a transfer of ownership.

A Member may also absolutely assign his life insurance. This assignment includes the Member's right to:
(1) use the CONVERSION PRIVILEGE; and
(2) change the BENEFICIARY.

The Company is not responsible for the validity or effect of any assignment. An assignment will not be recognized by the Company until the original has been noted at its Executive Offices.

## TERMINATION

The insurance of a Member will terminate on the earliest of the following:
(1) the date of termination of the Group Policy; or
(2) the July 1 nearest the date on which he reaches his 76th birthday; or
(3) the 32nd day after the due date of any unpaid premium; or
(4) the effective date of any Individual Policy issued to him under the terms of the CONVERSION PRIVILEGE found in the Group Policy; or
(5) the December 31 prior to the premium due date which follows the date the Member:
    (a) ceases to be a Member in good standing with ADA; or
    (b) except in the case of a retired employee, ceases to be actively employed by:
        (i) ADA; or
        (ii) ADA Publishing Co., Inc.; or
        (iii) a professional organization which is actively engaged in or associated with the practice of dentistry through its association with ADA.

If such employee is not at work due to sickness or injury which causes his total disability, he may continue his insurance under the Group Policy for a minimum period of 6 months. The period will start on the date his total disability started. The employee must pay the required premium for his insurance to the Company. The employee's insurance will not be continued after the earlier of the date on which:
(1) the employee's insurance is continued without premium payment under the DISABILITY BENEFIT found in the Group Policy; or
(2) the Group Policy terminates.

## CONVERSION PRIVILEGE

A Member who is insured under the Group Policy may apply to the Company in writing for an individual policy of life insurance (the Individual Policy). He may only apply under terms (1) through (3) below while the Group Policy is in force. Proof of Good Health will not be required if he applies within 60 days after:

(1) any June 30 or December 31 but not later than the June 30 nearest his 76th birthday;

(2) the June 30 or the December 31 which is the day just before the first premium due date next after he ceases to be a Member; or

(3) the June 30 or the December 31 which is the day just before the first premium due date next after he ceases to be totally disabled. He will only be able to do this if on such date his insurance was being continued under the DISABILITY BENEFIT found in the Group Policy; or

(4) the date of termination of the Group Policy. He may do this only if on that date he had been insured:
  (a) under the Group Policy; or
  (b) any other group policy issued by the Company which the Group Policy replaced;
  for the 5 consecutive year period just before termination of the Group Policy.

The Individual Policy will be subject to the following:

(A) Written notice of this Conversion Privilege must be given to the Member at least 15 days before the end of the 60 day period during which he may apply for the Individual Policy. If it is not, then the Member must apply within 15 days after the date he receives written notice. However, he will not be able to make such application more than 60 days after the end of said 60 day period. Such written notice may be:
  (i) presented to the Member; or
  (ii) mailed to the last known address of the Member.

(B) The Individual Policy will be one of the Company's standard forms. No form of term insurance will be offered. It will not contain any disability benefit but it may, at the option of the Member, include a double indemnity benefit.

(C) The Individual Policy will take effect at the end of the 60 day period allowed for the Member to apply. During this time, the first premium must be paid to the Company.

(D) The premium for the Individual Policy will be the premium applicable to:
  (a) the class of risk to which the Member belonged just before termination; and
  (b) the form and amount of the Individual Policy;
  at such Member's age nearest birthday on the date his insurance under such Individual Policy becomes effective.

(E) The amount of the Individual Policy will be the Member's current amount of insurance for the number of units for which he is insured. This will be the case unless the Member elects a lower amount. If he is eligible under (4) above, then the maximum amount will be:
  (a) if the Group Policy terminates and **is replaced** by a similar plan of Group Term Life Insurance sponsored by ADA, the lesser of:
    (i) $10,000; and
    (ii) his current amount of insurance for the number of units for which he is insured. Such amount will be reduced by any amount for which he is eligible under any group policy issued to ADA within 31 days after the date the Group Policy terminates.
  (b) if the Group Policy terminates but **is not replaced** by a similar plan of Group Term Life Insurance sponsored by ADA, the amount for which the Member was insured under the Group Policy on the day before it terminated.

    In this case, the Member will be able to exercise this Conversion Privilege even if he has not been insured under the Group Policy for the 5 consecutive year period just before its termination.

**Death Benefit**

Where permitted by law, a Member is allowed 60 days to apply for this Conversion Privilege. If he dies within this period, his beneficiary will receive a Death Benefit. The Maximum amount of such benefit will be the maximum amount which he would have been eligible to convert under this Conversion Privilege.

This Death Benefit is payable even if the Member had not applied for an Individual Policy. It is payable as a claim under the Group Policy.

## GUARANTEED ISSUE

Guaranteed issue is not available to any Member of the Association who previously terminated Membership, nor is it available to the spouse of any Member. Guaranteed issue under this policy is not available to a Member who elects guaranteed issue under Group Policy No. 104GUL issued by the Company to the Association. The maximum guaranteed issue life insurance benefit is $50,000.

Subject to all other terms and conditions of the Group Policy, the Company will not ask a Member to provide Proof of Good Health and will guarantee to issue insurance if the Member is a new Member of the Association who:

(1) is under age 40; and

(2) applies for insurance under this policy within 60 days of the date he receives notice of his eligibility for the benefits provided under the Group Policy from the Company.

However, the Company will not pay a death benefit for any accident or sickness for which the Member saw a Physician or received medical treatment, care, medication or advice within 12 months prior to the effective date of insurance until such insurance has been in effect for 12 consecutive months.

## PROVISION FOR GRADUATING STUDENTS

"Member" will include a person who:

(A) was insured under the Group Policy as an undergraduate student;

(B) graduates from a predoctoral program at an accredited dental school; and

(C) does not join the ADA.

Such a non-ADA Member may continue his life insurance for up to 3 years following graduation.

For a graduating student who does not join the ADA, coverage will be subject to a semi-annual policy fee of $25.00. Insurance for such a person will end on the date 3 years after graduation from the predoctoral program, unless he becomes a Member of the ADA.

## ACCELERATED BENEFIT

**Any Accelerated Benefit received may be treated as taxable income and may affect eligibility for Medicaid or other government benefits or entitlements. An insured person should consult his personal tax and/or legal advisor before applying for an Accelerated Benefit.**

If a Member is terminally ill, he may apply to receive a portion of his life insurance as an "Accelerated Benefit". In order to do this, he must be covered under this policy and he must give the Company satisfactory proof of having a "terminal illness".

"Terminal Illness" means a medical condition which, in the opinion of a physician, will result in a life expectancy of 12 months or less. In considering a request for an Accelerated Benefit, the Company, at its expense, may require that the person be examined by a physician of the Company's choice.

### Accelerated Benefits for a Spouse

If a Member's spouse has a terminal illness and is insured under the Supplemental Agreement entitled "DEPENDENT LIFE INSURANCE", Accelerated Benefits are available for the spouse's life insurance coverage. The amount of the Accelerated Benefit available to a spouse will be based on the amount of Dependent Life Insurance coverage provided to him by the Company at the time the request for the Accelerated Benefit is made.

### To Apply for an Accelerated Benefit

To apply for an Accelerated Benefit the terminally ill insured person must:

(1) contact the Company for the appropriate application form; and

(2) send the application to the Company along with a statement from his physician certifying that the insured person has a terminal illness.

For purposes of this benefit, the physician cannot be:

(A) the terminally ill insured person; or

(B) a person who is part of the insured person's immediate family (a parent, spouse, sibling or child); or

(C) a person who lives with the insured person.

The request for an Accelerated Benefit must be made by the terminally ill insured person. However, if he is legally incapacitated, the request must be made by a person with legal authority to act on the insured person's behalf. If the terminally ill insured person is the spouse of a Member, the Member (or person with legal authority to act for the Member) must also sign any form necessary for requesting the Accelerated Benefit.

### Amount of Accelerated Benefit

The terminally ill insured person may request an Accelerated Benefit of up to 50% of the amount of his life insurance to a maximum of $100,000. The minimum Accelerated Benefit is $10,000.

The amount of the Accelerated Benefit available to the terminally ill person will be based on the amount of life insurance coverage provided to him by the Company under this policy when he requests the Accelerated Benefit.

The Accelerated Benefit will be paid to the terminally ill insured person in a lump sum. And Accelerated Benefit may only be requested one time while covered by the Company. If the insured person recovers from his terminal illness after receiving an Accelerated Benefit, the Company will not ask for a refund of the Accelerated Benefit. However, the insured person's amount of life insurance will be reduced as described below.

### The Effect of an Accelerated Benefit on Life Insurance

After payment of the Accelerated Benefit, the amount of life insurance coverage under this policy will be reduced by the amount of the Accelerated Benefit. If the Accelerated Benefit amount is equal to or exceeds the amount of life insurance in force at the time of the terminally ill insured person's death, no additional amounts of life insurance will be payable upon his death.

**Accelerated Benefit Example**

Following is an example of how an Accelerated Benefit works. This example is used only as an illustration and may not reflect the actual dollar amount of life insurance.

The insured person's total life insurance amount is $50,000. He is diagnosed as terminally ill with 10 months to live and requests 50% of his life insurance to be paid now as an Accelerated Benefit. The request is approved and a $25,000 check is sent to the terminally ill insured person.

The $25,000 Accelerated Benefit is treated as a loan. However, neither interest expense nor administrative fees are charged. Upon the insured person's death, his beneficiary receives the remaining $25,000.

**Accelerated Benefit Example**

**The terminally ill insured person has the following life insurance amount:**

| | |
|---|---|
| Total Life Insurance | $50,000 |

**Amount of Accelerated Benefit Paid**

| | |
|---|---|
| 50% | $25,000 |

**Amount of Life Insurance Available Upon Death**

| | |
|---|---|
| Life Insurance | $50,000 |
| Less Accelerated Benefit Paid | $25,000 |
| Benefit Paid to Beneficiary | $25,000 |

**Disability Benefits** (if applicable to the insured person)

If a terminally ill insured person is approved for an Accelerated Benefit, he may also be approved for the Disability Benefit. If he is already on the Disability Benefit when approved for an Accelerated Benefit, he will continue on the Disability Benefit.

**Limitations**

No Accelerated Benefit will be paid if:

(1) all or part of the insurance must be paid to the insured person's children or his spouse or former spouse as part of a court approved divorce decree, separate maintenance agreement, or property settlement agreement.

(2) the insured person is married and lives in a community property state, unless he provides the Company with a signed statement from his spouse consenting to payment of the Accelerated Benefit.

(3) the insured person has made an Absolute Assignment of all Incidents of Ownership of all or part of his life insurance.

(4) the insured person has made collateral assignment of all or part of his life insurance, unless the Company is provided with a signed statement from the assignee consenting to payment of the Accelerated Benefit.

(5) the insured person has filed for bankruptcy, unless he provides the Company with written approval from the bankruptcy court for payment of the Accelerated Benefit.

(6) The insured person has previously received an Accelerated Benefit while covered under the Group Policy.

**ADDITIONAL ACCIDENTAL DEATH BENEFIT** (If Elected)

If a Member sustains bodily injury which:

(1) is caused solely by accidental means; and

(2) is sustained while he is insured under the Group Policy; and

(3) results in his death;

then the Company will pay an additional amount of insurance. Payment will be made only if death:

    (a) occurs within 90 days after the accident;

    (b) is a direct result of the accident; and

    (c) is unrelated to any other cause.

Subject to all other provisions of the Group Policy and the Limitations and Claim Provisions set out below, the additional amount of insurance payable will be determined from the number of units for which the Member is insured at the time of his death. If he dies:

(A) **before** the July 1 nearest his 61st birthday, the additional amount of insurance will be the number of units of additional accidental death benefits for which he is insured.

(B) **On or after** the July 1 nearest his 61st birthday, the additional amount of insurance will be 50% of the number of units of additional accidental death benefits for which he is insured.

**Limitations**

The additional amount of insurance will not be paid if the Member's death is caused by or in any manner or degree connected with:

(1) suicide while sane or insane.

(2) ptomaines or bacterial infections. This does not include:

    (A) accidental ingestion of a poisonous food substance; or

    (B) pyogenic infection which occurs with and through an accidental cut or wound.

(3) war or any act incident to war.

(4) any form of disease or illness or physical or mental infirmity. This includes the medical or surgical treatment of it.

(5) voluntary self-administration of nitrous oxide gas.

(6) operating or riding in any kind of aircraft which is being used for any training, testing or experimental purpose.

**DISABILITY BENEFIT** (If Elected)

Premiums do not have to be paid for a totally disabled Member if he satisfies **all** of the following:

(1) he became totally disabled while insured under the Group Policy and prior to age 60; and

(2) his disability is continuous and is due to bodily injury or sickness; and

(3) he is unable to work for pay or profit in any job for which he is or may become suited by reason of education, training or experience; and

(4) he stays totally disabled for 6 consecutive months. Proof that his disability continued for at least 6 months must be given to the Company; and

(5) while he is insured under the Group Policy he gives notice of claim to the Company and sends a claim for such disability to the Company.

If notice of claim is not given to the Company it may void his claim. It will not void his claim if:

(i) it was not reasonably possible to give such notice; and

(ii) such notice is given within 12 months after the due date of the first unpaid premium; and

(6) he has not had any Individual Policy issued to him under the CONVERSION PRIVILEGE found in the Group Policy.

If a Member satisfies all of items (1) through (6) above subject to:

(a) the reductions and termination due to age for the number of units for which the Member was insured on the date he became totally disabled; and

(b) all other provisions of the Group Policy;

his insurance will be continued:

(A) even if:

(i) he ceases to be a Member as defined in the Group Policy; or

(ii) the Group Policy terminates;

and

(B) until the earliest of the following:

(i) the date he is no longer totally disabled and unable to work for pay or profit in any job which he is or may become suited by reason of education, training or experience; and

(ii) the June 30 nearest his 76th birthday; and

(iii) the date an Individual Policy is issued to the Member or former Member under the CONVERSION PRIVILEGE found in the Group Policy.

The first premium which the Member does not have to pay will be the first one that is due after the later of:

A. the date his disability started. This will be the case only if the Company receives a claim from him for such disability within 12 months after it started.

B. the date which is 12 months before notice of claim for such disability is received by the Company. This will be the case only if notice of such claim is received by the Company more than 12 months after the Member's disability started.

A Member's disability is presumed to be permanent only to begin liability under the Group Policy.

The Company may request proof that a Member's total disability continues. After the Member or former Member has been totally disabled for at least 2 years, such proof will not be requested more than once a year. If:

(a) such proof is not given when requested; or

(b) the Member or former Member is no longer totally disabled;

then all premiums which are due after that under the terms of the Group Policy must be paid.

### DISABILITY BENEFIT SPECIAL PROVISION

The Group Policy contains a DISABILITY BENEFIT (the DISABILITY BENEFIT).

Each Member who applies for insurance under the Group Policy is required to submit Proof of Good Health to the Company. This Proof of Good Health is used to determine whether or not the insurance applied for by the Member will become effective.

In some cases, the Proof of Good Health submitted by the Member will identify a health problem which will increase the probability of a claim under the DISABILITY BENEFIT (the Health Problem). When this happens:

(1) the Member's application for insurance; or

(2) the Member or Owner's application for an increase in insurance;

under the Group Policy will be declined by the Company.

If the Health Problem or any cause of disability related to such Health Problem were excluded from the DISABILITY BENEFIT, the Member would be considered insurable for:

(a) an initial amount of insurance; or

(b) an increase in his insurance;

under the Group Policy.

It is hereby provided that:

(A) subject to all other provisions of the Group Policy; and

(B) the Conditions set out below;

a Member whose Proof of Good Health is not satisfactory to the Company because of a Health Problem may, at the discretion of the Company, become insured for:

(i) an initial amount of insurance; or

(ii) an increase in his insurance;

under the Group Policy.

### Conditions

1. The Member or Owner will not be entitled to the benefits provided under the DISABILITY BENEFIT for:
   (i) the Health Problem; or
   (ii) any cause of disability related to such Health Problem.
2. The Member or Owner must sign a Waiver of Benefits form under which he waives his right to the DISABILITY BENEFIT for:
   (i) the Health Problem; or
   (ii) any cause of disability related to such Health Problem.
3. The premium for the Member's insurance will be the same as the Member or the Owner would have had to pay had such person been entitled to the DISABILITY BENEFIT for:
   (i) the Health Problem; or
   (ii) any cause of disability related to such Health Problem.

If this Special Provision is being applied to an increase in a Member's insurance under the Group Policy, then the Conditions listed above will only be applied to such increase. In this case, the Conditions listed above will not apply to any part of the Member's insurance which was in effect without restriction on the day before the date of the increase.

ADA. Members Insurance Plans

www.insurance.ada.org

**GREAT·WEST**
FINANCIAL

P.O. Box 340
Denver, CO 80201
Phone 800-568-2001
Fax 303-737-4843
ada@greatwest.com

August 11, 2016

PERSONAL AND CONFIDENTIAL
Dr Lawrence P Rudolph
4141 East Lakeside Lane
Paradise Valley AZ 85253

**Re: Term Life Certificate 105665 / ADA No. 098800412**
   **Confirmation of Recording of Change of Beneficiary**

Dear Dr Rudolph:

Thank you for your request to update the beneficiary on your Term Life Certificate 105665. The
attached changes to the Certificate of Insurance have now been made on our records.

If we can be of further assistance, please contact member services at 1-800-568-2001.

Sincerely:

Monica Robinson
Sr Member Service Rep

**ADA.** Members Insurance Plans

**GREAT·WEST.**
FINANCIAL

P.O. Box 340
Denver, CO 80201
Phone 800-568-2001
Fax 303-737-4843

---

### *APPOINTMENT OF NEW BENEFICIARY*

*Please complete this form and forward to the Great-West Life & Annuity Insurance Company. A recorded copy will be returned for filing with your Group Certificate.*

Name of Insured: *Bianca T. Rudolph*

**Term Life Policy**
CERT #: *105665*
ADA # *098800412*

Name of Group: *AMERICAN DENTAL ASSOCIATION*

---

Any amount payable under the Accidental Death Benefit (life insurance only) will be merged with proceeds and paid out in the same manner, unless otherwise required.

I hereby revoke any previous appointment and appoint the following as beneficiary of any moneys payable upon death.

---

### DESIGNATION OF BENEFICIARY
### PRIMARY (to include FULL NAME AND RELATIONSHIP for each entity)

| Full Name | Relationship | Percentage |
|---|---|---|
| *Lawrence P. Rudolph, Trustee under The Rudolph Trust dated 04-25-2016* | *Trust* | *100%* |

---

**CONTINGENT (if Primary Beneficiary predeceases Insured OR dies after Insured but before proceeds exhausted).**

| Full Name | Relationship | Percentage |
|---|---|---|
| *Lawrence P. Rudolph* | *Spouse* | *100%* |

DATED AT *Scottsdale, AZ* THIS *21* DAY OF *7*, *2016*
(City & State)    (Day)    (Month)    (Year)

X _____
**Signature of Owner (If Other Than Insured)**
*Lawrence P. Rudolph*

X _____
**Signature of the Insured**
*Bianca T. Rudolph*

---

*Noted in the books of Great-West Life & Annuity Insurance Company*
Noted in the Books and Records by Monica Robinson -
8/11/2016

**ADA.** Members Insurance Plans

www.insurance.ada.org

GREAT·WEST
FINANCIAL

P.O. Box 340
Denver, CO 80201
Phone 800-568-2001
Fax 303-737-4843
ida@ ata

September 20, 2016

PERSONAL AND CONFIDENTIAL
Dr Lawrence P Rudolph
4141 East Lakeside Lane
Paradise Valley AZ 85253

Re:    ADA No. 098800412/Certificate #105665 & Certificate #315739

Dear Dr Rudolph:

Thank you for your request to update the beneficiary on Certificate #105665. Unfortunately when the form was sent to you we did not notice that you were not insured under Certificate #105665. Your spouse is insured under this policy and you are insured under the Universal Life policy #315739. We apologize for our error. We have prepared a new form for Certificate #315739 with the information that you have provided. Please review the form and if this is your intent please sign and date the form and return to our office for endorsement. The form needs to be in our office within 30 days from the date of signing. Again we apologize for our error and any inconvenience this may cause.

If we can be of further assistance, please contact member services at 1-800-568-2001.

Sincerely:

*Jerry Jackson*

Jerry Jackson
Sr. Member Service Representative

ᴚANCH/AGENCY 0R5 188

## MetLife
MetLife Insurance Company USA

ᴑLICY NUMBER: 215 150 755 UT

ꜱURED: BIANCA T RUDOLPH

## TERM LIFE INSURANCE POLICY

### Non-Participating

ꜱ is a yearly renewable term insurance policy that is automatically renewable until the Final Expiry Date. Premiums
ᴇ payable for a specified period. Premiums for the first year are shown on the Policy Specifications page and for
ᴇr years are shown on the Schedule of Renewal Premiums page.  If the Insured dies while the Policy is in force, we
 pay the Policy Proceeds to the Beneficiary. We must receive proof of the Insured's death. Any payment will be
ᴐject to all of the provisions of the Policy.

## RIGHT TO EXAMINE POLICY

**ase read the Policy. You may return the Policy to us or to our representative through whom it was
ʳchased within 10 days from the date you receive it. If you return it within this period, we will refund any
ᵐium paid and the Policy will be void from the start.**

ꜱ Policy is a legal contract between the Owner and MetLife Insurance Company USA.  PLEASE READ YOUR
ᴺTRACT CAREFULLY.

ned for the Company at its Main Administrative Office, Warwick, RI 02887

*President*

*Secretary*

## ALPHABETIC GUIDE TO YOUR CONTRACT

Section

Section

| | | | | |
|---|---|---|---|---|
| 4 | Addition of Riders | | 8 | Minimum Payments under Payment Options |
| 1 | Application | | 4 | Misstatement of Age or Sex |
| 5 | Assignments | | 7 | Other Payment Options and Frequencies |
| 5 | Beneficiary | | 5 | Owner |
| 4 | Change in Risk Classification | | 1 | Paid to Date |
| 5 | Change of Owner or Beneficiary | | 6 | Payee |
| 6 | Choice of Payment Options; Option Date | | 6 | Payment |
| 4 | Claims of Creditors | | 6 | Payment of Benefits |
| 4 | Contract | | 3 | Payment of Premiums |
| 6 | Death of Payee | | 7 | Payment Options |
| 4 | Decrease in Face Amount | | 5 | Persons with an Interest in the Policy |
| 1 | Definitions | | 1 | Policy Date |
| 1 | Designated Office | | 2 | Policy Proceeds |
| 5 | Designation of Owner and Beneficiary | | 1, 3 | Premiums |
| 1 | Final Expiry Date | | 4 | Refund of Unearned Premiums |
| 4 | General Provisions | | 3 | Reinstatement |
| 3 | Grace Period | | 3 | Renewal |
| 1 | In Writing | | 7, 8 | Single Life Income |
| 4 | Incontestability | | 7, 8 | Single Life Income – 10 Year Guaranteed |
| 1 | Insured | | | Payment Period |
| 1 | Issue Age | | 4 | Statements in Application |
| 1 | Issue Date | | 4 | Suicide Exclusion |
| 7, 8 | Joint and Survivor Life Income | | 4 | Unisex Basis |
| 6 | Life Income Options | | 1 | We, Us and Our |
| 8 | Life Income Tables | | 1 | You and Your |
| 6 | Limitations | | | |

Riders, Endorsements and Amendments, if any, and copies of the Application follow the final section of the Policy.

## POLICY SPECIFICATIONS

| | |
|---|---|
| **Insured** | BIANCA T RUDOLPH |
| **Policy Number** | 215 150 755 UT |
| **Policy Date** | JUNE 2, 2016 |
| **Issue Date** | JUNE 2, 2016 |
| **Final Expiry Date** | JUNE 2, 2055 |
| **Issue Age of Insured** | 56 |
| **Sex** | FEMALE |
| **Minimum Face Amount** | $100,000 |
| **Minimum Face Amount Decrease** | $5,000 |
| **Minimum Installment Amount** | $50.00 |
| **Conversion Period** | JUNE 2, 2016 to JUNE 2, 2030 |

**Benefits - As specified in Policy and in any rider**

**Schedule of Benefits and Premiums**

| Benefit | Face Amount/<br>Benefit Amount | First Year<br>Annual<br>Premium* | Risk Classification |
|---|---|---|---|
| YEARLY RENEWABLE TERM WITH GUARANTEED PREMIUMS FOR 20 YEARS | $750,000 | $3,249.00 | STANDARD NONSMOKER |
| ACCELERATION OF DEATH BENEFIT RIDER | | | |

**Total Premium Due on Policy Date:**

| | | |
|---|---|---|
| **Annual** | | $3,249.00 |

*A $69.00 annual Policy Fee is reflected in these amounts.
We may offer you promotional programs.

(Sex-Distinct Basis)

## SCHEDULE OF RENEWAL PREMIUMS

**Insured:**           BIANCA T RUDOLPH

**Policy Number:**     215 150 755 UT

### Annual  Renewable Premiums

| Policy Year | Term* | Total Premium |
|---|---|---|
| 2 | $3,249.00 | $3,249.00 |
| 3 | 3,249.00 | 3,249.00 |
| 4 | 3,249.00 | 3,249.00 |
| 5 | 3,249.00 | 3,249.00 |
| 6 | 3,249.00 | 3,249.00 |
| 7 | 3,249.00 | 3,249.00 |
| 8 | 3,249.00 | 3,249.00 |
| 9 | 3,249.00 | 3,249.00 |
| 10 | 3,249.00 | 3,249.00 |
| 11 | 3,249.00 | 3,249.00 |
| 12 | 3,249.00 | 3,249.00 |
| 13 | 3,249.00 | 3,249.00 |
| 14 | 3,249.00 | 3,249.00 |
| 15 | 3,249.00 | 3,249.00 |
| 16 | 3,249.00 | 3,249.00 |
| 17 | 3,249.00 | 3,249.00 |
| 18 | 3,249.00 | 3,249.00 |
| 19 | 3,249.00 | 3,249.00 |
| 20 | 3,249.00 | 3,249.00 |
| 21 | 43,914.00 | 43,914.00 |
| 22 | 48,189.00 | 48,189.00 |
| 23 | 52,914.00 | 52,914.00 |
| 24 | 58,014.00 | 58,014.00 |
| 25 | 63,714.00 | 63,714.00 |
| 26 | 71,454.00 | 71,454.00 |
| 27 | 80,184.00 | 80,184.00 |
| 28 | 88,884.00 | 88,884.00 |
| 29 | 98,499.00 | 98,499.00 |
| 30 | 109,329.00 | 109,329.00 |
| 31 | 119,154.00 | 119,154.00 |
| 32 | 133,944.00 | 133,944.00 |
| 33 | 149,394.00 | 149,394.00 |
| 34 | 165,864.00 | 165,864.00 |
| 35 | 181,044.00 | 181,044.00 |
| 36 | 188,724.00 | 188,724.00 |
| 37 | 203,829.00 | 203,829.00 |
| 38 | 226,239.00 | 226,239.00 |
| 39 | 254,529.00 | 254,529.00 |

*A $69.00 annual Policy Fee is reflected in these amounts.

5

## 1. DEFINITIONS

**Application**
The application(s) including any amendments and supplements for: the Policy; any riders that are made a part of the Policy; and any Policy changes. A copy of the Application is attached to the Policy.

**Attained Age**
The Issue Age plus the number of completed policy years. This includes any period during which the Policy was lapsed.

**Designated Office**
Our Main Administrative Office or any other office we designate.

**Final Expiry Date**
The Final Expiry Date is shown on the Policy Specifications page. It is the date on which the Policy can no longer be renewed. This is the date the Policy is terminated.

**In Writing**
In a written form satisfactory to us and received at our Designated Office.

**Insured**
The person whose life is insured under the Policy. The name of the Insured is shown on the Policy Specifications page.

**Issue Age**
The age of the Insured as of his or her birthday nearest to the Policy Date. The Issue Age is shown on the Policy Specifications page.

**Issue Date**
The Issue Date is shown on the Policy Specifications page. It is the date from which the incontestability and suicide periods for the coverage are measured.

**Paid to Date**
The date to which the premiums for the Policy are paid.

**Policy Date**
The Policy Date is shown on the Policy Specifications page. Policy years, months and anniversaries are all measured from the Policy Date.

**Premiums**
Premiums are payments to us. Your first premium is due as of the Policy Date. If premiums are paid on an annual mode, the due date for premiums after the first is the policy anniversary each year. If premiums are paid on other than an annual mode, the due date is each semi-annual, quarterly or monthly anniversary as applicable.

**We, Us and Our**
MetLife Insurance Company USA.

**You and Your**
The Owner of the Policy.

5E-23-12

6

## 2. POLICY PROCEEDS

**Policy Proceeds**      We will pay the Policy Proceeds to the Beneficiary upon receipt of proof of the Insured's death.
The Policy Proceeds are equal to:

1.  The Face Amount; plus

2.  Any insurance on the life of the Insured provided by a rider; plus

3.  Any part of a premium paid for coverage beyond the date of death; less

4.  Any premium due to the date of death.

In no event will the amount payable upon the death of the Insured be less than the minimum
amount required to permit the Policy to qualify as life insurance under the applicable Federal
income tax rules.

## 3. PREMIUMS AND GRACE PERIOD

**Payment of
Premiums**

The first premium is due as of the Policy Date. While the Insured is living, premiums after the first premium must be paid at our Designated Office. The Policy will not be in force until the first premium is paid. If you are in possession of the Policy, and the first premium has not been paid, it will be considered that you have the Policy for inspection only.

Premiums for the Policy and for any riders are shown on the Policy Specifications and on the Schedule of Renewal Premiums pages. No premium is due or payable for any period after the death of the Insured.

Payment can be at any premium mode we make available. A change in premium mode will be processed on the Paid to Date on or following the date we approve your request to change the mode.

**Renewal**

The Policy will be renewed automatically for successive periods of one year from the Policy Date until the Final Expiry Date shown on the Policy Specifications page.

**Grace Period**

There is a Grace Period of 31 days in which to pay each premium, without interest, after its due date. The insurance remains in force during the Grace Period. If the premium remains unpaid at the end of the Grace Period, the Policy will lapse as of the due date of the premium in default.

**Reinstatement**

Prior to the Final Expiry Date, you may reinstate your lapsed Policy (excluding riders) within three years after the date of lapse. Riders can be reinstated only as stated in the rider or with our consent. To reinstate, you must submit a request In Writing and the following:

1.   Proof that the Insured is insurable by our standards, and

2.   Payment of each unpaid premium while the Insured is living, plus interest at the rate of 6% per year compounded yearly.

The Insured must be alive on the date we approve the request for reinstatement. If the Insured is not alive, such approval is void.

The reinstated Policy will be in force from the date we approve the reinstatement application.

## 4. GENERAL PROVISIONS

**The Contract**

We have issued the Policy in consideration of the Application and payment of premiums. The Policy includes the Application, any riders, and any endorsements. Together they comprise the entire contract and are made a part of the Policy when the insurance applied for is accepted. The Policy may be changed by mutual agreement. Any change must be in writing and approved by our President, Vice President or Secretary. Our representatives have no authority to alter or change any terms, conditions, or agreements of the Policy, or to waive any of its provisions.

If we make any payment or any policy changes in good faith, relying on our records or evidence supplied to us, our duty will be fully discharged. We reserve the right to correct any errors in the Policy.

**Statements in Application**

All statements made by the Insured or on his or her behalf, or by the applicant, will be deemed representations and not warranties. Material misstatements will not be used to void the Policy or any rider or to deny a claim unless made in the Application.

**Claims of Creditors**

To the extent permitted by law, neither the Policy nor any payment under it will be subject to the claims of creditors or to any legal process.

**Misstatement of Age or Sex**

If we determine that there was a misstatement of age or sex reflected in the Policy, the Face Amount will be the amount the most recent premium paid would have provided based on the correct information.

**Unisex Basis**

If the Policy is issued on a unisex basis, all rates, benefits and values that contain differences based on sex are modified to provide the same for males and females. See bottom of page 3 for the indication of whether the Policy is issued on a sex-distinct or unisex basis.

**Refund of Unearned Premiums**

If you ask to discontinue this Policy, we will refund the part of the premium paid for coverage beyond the policy month in which you make your request.

**Incontestability**

We cannot contest the coverage after the Policy has been in force during the lifetime of the Insured for two years from its Issue Date. This provision will not apply to any rider that contains its own incontestability clause.

**Suicide Exclusion**

If the Insured dies by suicide, while sane or insane, within two years from the Issue Date, the amount payable will be limited to the amount of premiums paid (without interest), or the reserve if greater and required by state law.

**Change in Risk Classification**

You may apply for a better risk classification by making a request In Writing to us. Proof of insurability will be required. If we approve your request, the change will take effect on the date we approve your request.

**Addition of Riders**

You may request in Writing that we add a rider to the Policy. Proof of insurability may be required. If we approve your request, the addition of the rider will take effect on the earlier of the Paid to Date or the current date.

**Decrease in Face Amount**

After the first policy year and prior to the Final Expiry Date, you may request In Writing that we decrease the Face Amount subject to the following:

1. The effective date of the decrease will be the earlier of: the Paid to Date or the current date.

2. If premiums were paid beyond the effective date of the decrease, any excess premiums will be refunded (without interest).

3. The Face Amount after the requested decrease may not be less than the Minimum Face Amount shown on the Policy Specifications page.

4. The decrease must be at least equal to the Minimum Face Amount Decrease shown on the Policy Specifications page.

5. A decrease in Face Amount may require a decrease in amounts provided by any riders made a part of the Policy. If a rider is not available at the new Face Amount, we will consider your request for a decrease in Face Amount as a request In Writing to terminate that rider.

If you have an increasing term rider on this Policy and you request a decrease in Face Amount, the face amount of that rider will be decreased first.

5E-23-12

## 5. PERSONS WITH AN INTEREST IN THE POLICY

**Owner**

The Owner of the Policy is named in the Application. The Owner can be changed before the death of the Insured. The new Owner will succeed to all of the rights of the Owner, including the right to make a further change of Owner. If there is more than one Owner, all must exercise the rights of ownership by joint action. Ownership may be changed in accordance with the Change of Owner or Beneficiary provision.

The Owner may be the Insured or someone else, and may be a person, a partnership, a corporation, a fiduciary or any other legal entity. At the death of the Owner, his or her estate will be the Owner, unless a successor Owner has been named. The rights of the Owner will end at the death of the Insured, except as provided in the Beneficiary provision.

**Beneficiary**

The Beneficiary is the person or entity named to receive the Policy Proceeds. The initial Beneficiary is named in the Application. You can change the Beneficiary before the death of the Insured; however, an irrevocable Beneficiary cannot be changed without his or her consent. The Beneficiary can be a person, a partnership, a corporation, a fiduciary or any other legal entity. The Beneficiary has no interest in the Policy until the death of the Insured. A person must survive the Insured to qualify as Beneficiary. If no Beneficiary survives, the proceeds will be paid to the Owner.

Any payment we make will terminate our liability with respect to such payment.

**Change of Owner or Beneficiary**

During the Insured's lifetime, you may change the Owner and Beneficiary designations, subject to any restrictions as stated in the Owner and Beneficiary provisions. You must make the change In Writing. Once it is recorded, the change will take effect as of the date you signed the request, whether or not the Insured is living when we receive your request. The change will be subject to any assignment of the Policy or other legal restrictions. It will also be subject to any payment we made or action we took before we recorded the change. A change of Owner will void any prior Beneficiary designation.

**Assignments**

If you make an absolute assignment of the Policy, the assignee will be the new Owner and Beneficiary. A collateral assignment of the Policy by you is not a change of Owner or Beneficiary; but their rights will be subject to the terms of the collateral assignment. Assignments will be subject to all payments made and actions taken by us before a signed copy of the assignment form is recorded by us at our Designated Office. We will not be responsible for determining whether or not an assignment is valid.

**Designation of Owner and Beneficiary**

A numbered sequence can be used to name successive Owners or Beneficiaries. Co-beneficiaries will receive equal shares unless otherwise stated.

In naming Owners or Beneficiaries, unless otherwise stated:

1.    "Child" includes an adopted or posthumous child;

2.    "Provision for issue" means that if a Beneficiary does not survive the Insured, the share of the Policy Proceeds for that Beneficiary will go to his or her living issue by right of representation; and

3.    A family relation such as "wife", "husband" or "child" means in relation to the Insured.

At the time of payment of benefits, we can rely on an affidavit of any Owner or other responsible person to determine family relations or members of a class.

## 6. PAYMENT OF BENEFITS

**Payment**

Unless otherwise requested, when the Insured dies we will pay the Policy Proceeds to the Payee in one sum, which includes placing the amount in an account that earns interest. If an account is established, the Payee will be the accountholder and will have immediate access to all of the account.

On request, all or part of the proceeds payable in one sum at the death of the Insured can be applied to any Payment Option at the choice of the Payee. Further, with our consent, any Payee who is entitled to receive proceeds in one sum when a Payment Option ends, or at the death of a prior Payee, or when the proceeds are withdrawn, can choose to apply the proceeds to a Payment Option.

**Choice of Payment Options; Option Date**

The choice of a Payment Option and the naming of the Payee must be In Writing. You can make, change or revoke the choice before the death of the Insured. The Option Date is the effective date of the Payment Option, as chosen.

When a Payment Option starts, a contract will be issued by us or by an affiliate that will describe the terms of the Option.

**Payee**

A Payee is a person, a partnership, a corporation, a fiduciary or any other legal entity entitled to receive the Policy Proceeds in one sum or under a Payment Option.

If the Payee is not a natural person, the choice of a Payment Option will be subject to our approval. A collateral assignment will modify a prior choice of a Payment Option. The amount due any assignee will be payable in one sum and the balance will be applied under the Payment Option.

**Life Income Options**

Guaranteed Life Income Options are based on the age of the Payee on the Option Date. We will require proof of age. The Life Income payments will be based on the rates shown in the Life Income Tables; or, if they are greater, our Payment Option rates on the Option Date. If the rates at a given age are the same for different periods certain, the longest period certain will be deemed to have been chosen.

**Death of Payee**

Amounts to be paid after the death of a Payee under a Payment Option will be paid as due to the successor Payee. If there is no successor Payee, amounts will be paid in one sum to the estate of the last Payee to die. If a Payee under a Life Income Option dies within 30 days after the Option Date, the amount applied to the Option, less any payments made, will be paid in one sum, unless a Payment Option is chosen.

**Limitations**

If installments under an Option would be less than the Minimum Installment Amount shown on the Policy Specifications page, proceeds can be applied to a Payment Option only with our consent.

5E-23-12

## 7. PAYMENT OPTIONS

**Single Life Income**

Monthly payments will be made during the lifetime of the Payee.

**Single Life Income –
10 Year Guaranteed
Payment Period**

Monthly payments will be made during the lifetime of the Payee with a guaranteed payment period of 10 years.

**Joint and Survivor
Life Income**

Monthly payments will be made:

1.   While either of two Payees is living, called "Joint and Survivor Life Income"; or

2.   While either of two Payees is living, but for at least 10 years, called "Joint and Survivor Life Income, 10 Years Certain".

**Other Payment
Options and
Frequencies**

Other Payment Options and payment frequencies may be arranged with us.

## 8. LIFE INCOME TABLES

**Minimum Payments under Payment Options**

Monthly payments for each $1,000 applied will not be less than the amounts shown in the following Tables. On request, we will provide additional information about amounts of minimum payments. The amounts shown below are based on an interest rate of ½ percent a year and the 2000 Annuity Mortality Table.

**Single Life Income**

| Payee's Age | Life Income | | | 10 Year Guaranteed Payment Period | | |
|---|---|---|---|---|---|---|
| | Male | Female | Unisex | Male | Female | Unisex |
| 50 | $2.32 | $2.15 | $2.22 | $2.32 | $2.15 | $2.21 |
| 55 | 2.60 | 2.39 | 2.47 | 2.59 | 2.38 | 2.46 |
| 60 | 2.96 | 2.69 | 2.79 | 2.93 | 2.68 | 2.78 |
| 65 | 3.41 | 3.08 | 3.21 | 3.36 | 3.06 | 3.18 |
| 70 | 4.02 | 3.60 | 3.76 | 3.92 | 3.55 | 3.69 |
| 75 | 4.86 | 4.31 | 4.52 | 4.63 | 4.20 | 4.36 |
| 80 | 6.01 | 5.33 | 5.58 | 5.47 | 5.03 | 5.20 |
| 85 | 7.62 | 6.82 | 7.12 | 6.39 | 6.04 | 6.18 |
| 90 & over | 9.87 | 9.04 | 9.36 | 7.26 | 7.06 | 7.14 |

**Joint and Survivor Life Income**

| Age of Both Payees | Joint and Survivor | | Joint and Survivor, 10 Years Certain | |
|---|---|---|---|---|
| | One Male and One Female | Unisex | One Male and One Female | Unisex |
| 50 | $1.95 | $1.94 | $1.95 | $1.94 |
| 55 | 2.14 | 2.14 | 2.14 | 2.14 |
| 60 | 2.39 | 2.38 | 2.39 | 2.38 |
| 65 | 2.69 | 2.69 | 2.69 | 2.69 |
| 70 | 3.10 | 3.09 | 3.10 | 3.09 |
| 75 | 3.64 | 3.63 | 3.63 | 3.62 |
| 80 | 4.39 | 4.37 | 4.35 | 4.33 |
| 85 | 5.45 | 5.42 | 5.28 | 5.26 |
| 90 & over | 6.96 | 6.93 | 6.37 | 6.35 |

# ACCELERATION OF DEATH BENEFIT RIDER

Issued By MetLife Insurance Company USA

**The waiting periods for suicide and incontestability are different from those in the Policy and begin on the Issue Date of the Rider.**

This Rider is subject to all applicable terms and provisions of the Policy, except as modified herein. This Rider is a part of the Policy if it is listed on the Policy Specifications page or on the Policy Specifications page for Policy Change. A copy of the application for this Rider is attached to and made a part of the Rider.

**IMPORTANT: THE BENEFIT PAYMENTS UNDER THIS RIDER MAY BE TAXABLE OR MAY AFFECT ELIGIBILITY FOR BENEFITS UNDER STATE OR FEDERAL LAW. YOU SHOULD CONSULT YOUR TAX ADVISER TO DETERMINE THE EFFECT ON YOU.**

**Definitions**

"Eligible Proceeds" are the Policy Proceeds as defined in your Policy: less any Face Amount provided by a Supplemental Coverage Term Rider; and plus any amount of benefit provided by a rider that we consent to apply to an Accelerated Death Benefit.

"Accelerated Death Benefit" is the amount we will pay under this Rider if we receive proof that the Insured is terminally ill.

We will compute the Accelerated Death Benefit based on the following:

1. The amount of Eligible Proceeds you choose to accelerate. (See Amount of Accelerated Death Benefit);

2. Reduced life expectancy;

3. A processing charge not to exceed $150; and

4. An Interest Rate no greater than the greater of:

   a. The current yield on 90 day treasury bills; and

   b. The current maximum statutory adjustable policy loan interest rate.

This method of computation has been filed with the insurance supervisory official of the state that governs your Policy. We may change the assumptions we use from time to time.

"Terminally ill" means having a life expectancy of 12 months or less.

**Amount of Accelerated Death Benefit**

You may choose to apply all or part of the Eligible Proceeds to your Accelerated Death Benefit subject to the following conditions:

1. You must apply at least $20,000.

2. You cannot apply more than the greater of:

   a. $250,000; and

   b. 10% of the Eligible Proceeds under this and all other similar riders issued by us and our affiliates.

3. The Face Amount of your Policy after payment of a partial Accelerated Death Benefit must be at least equal to our published minimum limits of issue for the base policy to which this rider is attached.

| | |
|---|---|
| **Conditions** | Your right to the Accelerated Death Benefit under this Rider is subject to the following: |

1. You must provide proof satisfactory to us, including a statement signed by a physician, that the Insured is terminally ill. The physician may not be you, the Insured, or a member of the Insured's family. We have the right to have the Insured examined at our expense by a physician we choose.

2. You must make a written request for payment in a form acceptable to us.

3. Any irrevocable beneficiary must give written consent for payment in a form acceptable to us.

4. Any assignee must give written consent for payment in a form acceptable to us.

5. We may require the Policy for endorsement.

6. You may request only one Accelerated Death Benefit under this Rider.

7. Insurance subject to incontestability and suicide provisions will not be included in the Eligible Proceeds.

8. Your Policy is not eligible for this benefit if:

   a. You are required by law to use this Rider to meet the claims of creditors, whether in bankruptcy or otherwise; or

   b. You are required by a government agency to use this Rider to apply for, obtain, or keep a government benefit or entitlement.

| | |
|---|---|
| **Payment of Accelerated Death Benefit** | Unless otherwise requested, we may pay the Accelerated Death Benefit in one sum or by placing the amount in an account that earns interest. You will have immediate access to all or any part of the account. |
| **Effect of Benefit Acceleration on Policy and Riders** | All policy values and the Death Benefit on the remaining Policy, if any, will be reduced in the same proportion as the amount of Eligible Proceeds was applied to the Accelerated Death Benefit. Upon acceleration, future premiums and policy charges will be based on the reduced Death Benefit of the Policy. |
| | If you apply all of the Eligible Proceeds to your Accelerated Death Benefit, all policy benefits based on the Insured's life, except for any benefit for accidental death, will end. Any accidental death benefit rider on the life of the Insured will continue in force for 12 months from the date of any payment under this Rider. Any riders that provide a benefit on the life of someone other than the Insured will stay in effect pursuant to their terms as if the Insured had died. No further cost for those riders will be payable. |
| **Incontestability** | This Rider will not be contestable after it has been in force during the life of the Insured for two years from the Issue Date of the Rider. |
| **Suicide Exclusion** | This Rider does not apply if the Insured's terminal illness is the result of an attempt to commit suicide, while sane or insane, within two years from the Issue Date of the Rider. |

5E-6ACC1-04                                          2

**Termination**     This Rider will terminate at the earliest of:

1. When an Accelerated Death Benefit is paid;

2. The date on which the Policy would be disqualified as a life insurance contract because this Rider is attached, under the Internal Revenue Code as interpreted by the Internal Revenue Service;

3. When the Policy to which this Rider is attached terminates; and

4. The monthly anniversary on or following receipt by us at our Home Office or any other office designated by us of your written request to terminate this Rider. We may require the Policy for endorsement.

The Issue Date and effective date of this Rider and the Policy are the same unless another Issue Date is shown below.

Issue Date

MetLife Insurance Company USA
1209 Orange Street, Wilmington, DE 19801

*President*          *Secretary*

5E-6ACC1-04                                    3

# ENDORSEMENT

MetLife Insurance Company USA

As of the Date of Issue of this Policy, the following is added to the Policy:

**Conversion Option**      During the Conversion Period shown on the Policy Specifications page, you can convert the Policy, while it is in force with all premiums due having been paid, to a new policy on another plan of insurance. The new policy will be issued:

1.      By the Company or by an affiliate designated by the Company;

2.      Without proof that the Insured is insurable;

3.      On a plan of permanent insurance, with a level face amount, we make available on the Policy Date of the new policy;

4.      With the same Insured and Face Amount as the Policy;

5.      With the same underwriting class as the Policy, or the class the issuing company determines is closest to it if the class of the Policy is not offered on the new policy;

6.      Subject to any assignments of this Policy and any limitations on the Policy stated in riders;

7.      With a Policy Date as of the date of conversion; and

8.      At the insurance age of the Insured on the Policy Date of the new policy.

The conversion is subject to payment of the first premium for the new policy, less any conversion credit.

Riders can be attached to the new policy only with the consent of the Company.

**MetLife Insurance Company USA**

*Jacob M. Jumberlaing*

*Secretary*

5E-E111-13

## AMENDMENT TO APPLICATION FOR INSURANCE

Proposed Insured: BIANCA T RUDOLPH                    Case/Policy No.: 215 150 755 UT

Date of Application: May 22, 2016

I agree to the following changes to the application referred to above:
The Riders and Details is amended to remove the Accidental Death Benefit Rider
and to add the Accelerated Death Benefit Rider.

Date _____

_____
Proposed Insured #1 (Parent, if Insured under age 15)

Date _____

_____
Proposed Insured #2 (Parent, if Insured under age 15)

Date _____

_____
Applicant, if other than Proposed Insured

**MetLife Insurance Company USA**
1209 Orange Street, Wilmington, DE 19801

_____          _____
        *President*                        *Secretary*

UAMND-27-04

# MetLife®

Policy Number _____

## Application for Life Insurance

**Company** (Check the appropriate ONE.)  ☐ Metropolitan Life Insurance Company    ☐ General American Life Insurance Company
The Company indicated in this section is  ☐ New England Life Insurance Company    ☐ MetLife Insurance Company USA
referred to as **"the Company"**.

### SECTION I - About the Proposed Insured

For Additional Insureds please complete the **Additional Insureds Supplement** form.

First Name: BIANCA    Middle Name: T    Last Name: RUDOLPH

Permanent Address: 4141 EAST LAKESIDE LANE    City: PARADISE VALLEY    State: AZ    Zip: 85253

Country of Legal Residence: USA    Date of Birth: 12-04-1959    E-Mail Address:

Primary Phone Number: 724-757-9134    Alternate Phone Number: NONE    Preferred Time to Call: From 6:00 ☐AM ☒PM  To 8:00 ☐AM ☒PM    Sex: ☐Male ☒Female

Place of Birth: PA    Social Security or Tax ID Number: 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    Earned Annual Income: 0    Net Worth: 11 MILLION

☒U.S. Driver's License    If not licensed, please indicate other form of ID: ☐Passport  ☐Government Issued Photo ID
Issuer of ID: PA    ID Number: 18 800 413    Issue Date (if any): 12/2015    Expiration Date (if any): 12/2019

Name of Employer: HREE RIVERS DERMAGROUP    Employer City: GREENSBURG    State: PA    ZIP: 15601    Position/Duties: Bookkeeper Husband's business SALE

**NON U.S. CITIZENS ONLY** - Country of Citizenship _____    Green Card/Visa Type _____    Expiration Date _____

Country of Permanent Residence _____    ID Number _____    Years in the U.S. _____

### SECTION II - About the Owner    ⚠ Complete ONLY if the Owner is NOT the Proposed Insured.

☐ **OWNER - TRUST / BUSINESS ENTITY** - Name of Entity _____    Tax ID Number _____    Trustee / Owner State _____

☐Trust  ☐Business Entity  ☐Charity  ☐Qualified Pension Plan    🖉 Complete the appropriate **required** form(s).

☒ **OWNER - OTHER INDIVIDUAL**

First Name: LAWRENCE    Middle Name: P    Last Name: RUDOLPH

Permanent Address: 4141 EAST LAKESIDE LANE    City: PARADISE VALLEY    State: AZ    Zip: 85253

Country of Legal Residence: USA    Citizenship: USA    Social Security or Tax ID Number: 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    Date of Birth: 01-07-1955    Phone Number: 724-757-9134

E-Mail Address: NONE    Earned Annual Income: 150,000    Net Worth: 11 MILLION    Relationship to Proposed Insured: Husband

Please indicate form of ID: ☐U.S. Driver's License  ☐Passport  ☐Government Issued Photo ID
Issuer of ID: PA DRIVERS LICENSE    ID Number: 15 19 7171    Issue Date (if any): _____    Expiration Date (if any): _____

☐Check if ownership should revert to Insured upon Owner and Contingent Owner's deaths.

**SECTION III - About the Beneficiary / Beneficiaries** For additional Beneficiaries, use Section IX - Additional Information.

☐ Check here if the Owner is the Primary Beneficiary.

For Primary or Contingent Beneficiaries who are NOT the Owner, complete the table below.

| Beneficiary Type | Name (First, Middle, Last) | Date of Birth | Relationship to Proposed Insured | Social Security Number (Optional) | Percentage of Proceeds (if not equal) |
|---|---|---|---|---|---|
| Primary | LAWRENCE P. RUDOLPH | 01-07-55 | HUSBAND | 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 | 100 |
| ☐ Primary ☒ Contingent | ANA BIANCA RUDOLPH | 06-09-85 | Daughter | 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 | 50 |
| ☐ Primary ☒ Contingent | JULIAN L. RUDOLPH | 06-05-90 | Son | 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 | 50 |

☐ Check here to include all living and future natural or adopted children of the Proposed Insured as Contingent Beneficiaries. (Name all living children above.)

📄 If a Custodian is acting on behalf of a minor Beneficiary listed above, please use **Co-Owner/Contingent Owner and UTMA Designations Supplement** form.

⚠ Federal law states that if someone with special needs has assets over $2,000, they may lose eligibility for government benefits.

**SECTION IV - About Proposed Coverage**    Check the desired coverage(s).

| ☐ Universal Life | ☐ Variable Life 📄 | ☐ Whole Life | ☒ Term Life |
|---|---|---|---|
| Product Name | Product Name | Product Name 20 YEAR TERM | |
| Face Amount* | Face Amount* | Face Amount* 750,000 | |
| Riders and Details | Riders and Details | Riders and Details ADB | |
| ☐ Coverage Continuation (UL only) | | | |

Disability Waiver:
☐ Specified Premium
☐ Monthly Deduction (VUL only)
Death Benefit Option
Definition of Life Insurance:
☐ Guideline Premium Test
☐ Cash Value Accumulation Test

Planned Premium
Year 1 _____
Years 2 to _____
Years ____ to ____ _____ (UL only)

☐ Disability Waiver
Dividend Options:
☐ Paid-Up Additions
☐ Other, please specify:

☐ Automatic Premium Loan Requested

**Right column (Term Life):**

Disability Waiver:
☐ Convertible    ☐ Non-Convertible

ⓘ For a full list of riders and options, please consult with your Producer.
**Note:** Some riders may require supplement forms to be completed.

📄 For Variable Life products, please complete the **Variable Life Supplement** form.
\* If Face Amount is equal to or exceeds $1,000,000, please complete the **Personal Financial Information** form.

**ADDITIONAL OPTIONS**

One Time (Single) Payment Amount _____    1035 Exchange Amount _____    Requested Policy Date _____    ☐ Save Age

**POLICY OPTIONS**

☐ Alternate Policy: Product, Face Amount and Details _____
☐ Additional Policy: Product, Face Amount and Details _____
☐ Group Conversion Only
☐ Group Conversion Alternative } 📄 Please complete the **Group Conversion Supplement** form for either choice.

## SECTION V – About Existing or Applied for Insurance

Does the Proposed Insured or Owner have any existing or applied for life insurance or annuities with this or any other company?

Proposed Insured [X]Yes [ ]No
Owner [X]Yes [ ]No

If **YES**, please provide details of any existing or applied for **Life** Insurance on the **Proposed Insured** only.

| Company | Amount of Insurance | Year of Issue | Status | |
|---|---|---|---|---|
| Ameritas | 750,000 | 2012 | [X]Existing | [ ]Applied For |
| Ameritas | 750,000 | 2012 | [X]Existing | [ ]Applied For |
| Transamerica | 500,000 | 2016 | [X]Existing | [ ]Applied For |
| Transamerica | 500,000 | 2004 | [X]Existing | [ ]Applied For |

In connection with this application, has there been, or will there be with this or any other company any: surrender transaction; loan; withdrawal; lapse; reduction or redirection of premium/consideration; or change transaction (except conversions) involving an annuity or other life insurance?   [ ]Yes [X]No

📄 If **YES**, complete **Replacement Questionnaire** AND any other state required replacement forms or 1035 exchange forms.

If Proposed Insured is financially dependent on another individual, indicate individual providing support:

[ ]Spouse [ ]Child [ ]Parent [ ]Other _____
Amount of Insurance on individual providing support.   Existing Insurance _____   Insurance Applied For _____
If Proposed Insured is a minor, are all siblings equally insured?   [ ]Yes [ ]No
If **NO**, please provide details:

## SECTION VI – About Payment Information

**PREMIUM PAYOR**

[ ]Proposed Insured [X]Owner (If NOT the Proposed Insured.) [ ]Other (Complete the box below.)

Other Premium Payor Name   LAWRENCE P RUDOLPH
Social Security or Tax ID Number   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
Relationship to Proposed Insured or Owner   HUSBAND of Insured.

Reason this Person is the Payor   PRIMARY BILL PAYOR

Permanent Address   4441 EAST LAKESIDE LANE
City   PARADISE VALLEY
State   AZ
Zip   85253

**PAYMENT MODE**
(Check the appropriate ONE.)

Billing Mode: [X]Annual [ ]Semi-Annual [ ]Quarterly
[ ]Monthly Draft per Debit Authorization (See next page.)
[ ]Monthly Draft per Existing Electronic Payment Number

Special Account: [ ]Government Allotment [ ]Salary Deduction [ ]List Bill
If Special Account, provide Employer Group Number (EGN) or List Bill Number

**INITIAL PAYMENT**

Amount Collected with Application   0

Method of Collection:
[ ]Initial Premium by Electronic Funds Transfer (Must be at least a monthly amount.)
[ ]Check (Must be at least 1/12 of an annual premium.)

**SOURCE OF CURRENT AND FUTURE PAYMENTS** (Check **ALL** that apply.)
[X]Earned Income [ ]Mutual Fund/Brokerage Account [ ]Money Market Fund [ ]Savings [ ]Loans
[ ]Certificate of Deposit [ ]Use of Values in another Life Insurance/Annuity Contract [ ]Other

## DEBIT AUTHORIZATION    ⚠ Available only if the bank account holder is the Owner and/or Proposed Insured.

📄 All others please complete the **Electronic Payment (EP) Account Agreement** form.

The undersigned ("I") hereby authorize the Company with whom I am completing this application to initiate debit entries through Metropolitan Life Insurance Company to the deposit account designated below, at the Financial Institution named below, using the Automated Clearing House. I authorize:
1. Monthly recurring debits; AND
2. Debits made from time to time, as I authorize.

This authorization is to remain in full force and effect until the Company has received written notification from me of its termination at such time and in such manner as to afford the Company and the Financial Institution a reasonable opportunity to act on it.

Monthly Debit Date:    ☐ Issue Date of the Policy

☐ Debit Date on the _____ of each month

Bank Account Type:    ☐ Checking    ☐ Savings

Bank Routing Number _____    Bank Account Number _____

Name of Financial Institution _____

ⓘ Note: Please attach a voided check or deposit slip to Section IX - Additional Information.
We cannot establish banking services from starter checks, cash management, brokerage, or mutual fund checks. We cannot establish banking services from foreign banks UNLESS the check is being paid in U.S. Dollars through a U.S. correspondent bank (the U.S. correspondent bank name must be on the check).

---

**SECTION VII - General Risk Questions**    Use Section IX - Additional Information if necessary.

1. Within the past three years has the Proposed Insured flown in a plane other than as a passenger on a commercial airline or does he or she have plans for such activity within the next year?    ☐ Yes  ☒ No

📄 If **YES**, please complete a separate **Aviation Risk Supplement** form for the Proposed Insured.

2. Within the past three years has the Proposed Insured participated in or does he or she plan to participate in **any** of the following?    ☐ Yes  ☒ No
   - Underwater sports - SCUBA diving, skin diving, or similar activities
   - Racing sports - motorcycle, auto, motor boat or similar activities
   - Sky sports - skydiving, hang gliding, parachuting, ballooning or similar activities
   - Rock or mountain climbing or similar activities
   - Bungee jumping or similar activities

📄 If **YES**, please complete a separate **Avocation Risk Supplement** form for the Proposed Insured.

3. Has the Proposed Insured **traveled** or **resided** outside the U.S. or Canada within the **past two years**; or does he or she plan to **travel** or **reside** outside the U.S or Canada within the **next two years**?    ☒ Yes  ☐ No
   If **YES**, please provide details.

| Past | Future | Duration (weeks) | Cities and Countries | Purpose |
|------|--------|------------------|----------------------|---------|
| ☒ | ☐ | 10/27 - June 12-2015 | Uganda | Pleasure |
| ☒ | ☐ | July 1 - July 6 - 2015 | St. Thomas Virgin Islands | Pleasure |
| ☒ | ☐ | July 18 - July 26 - 2015 | Italy | Pleasure |

4. Has the Proposed Insured **EVER** used tobacco or nicotine products in any form (e.g., cigars cigarettes, cigarillos, pipes, chewing tobacco, nicotine patches, or nicotine gum)? If **YES**, please provide details.    ☐ Yes  ☒ No

| Product(s) | Frequency / Amount | Date Last Used |
|------------|--------------------|----------------|
| | | |

5. Has the Proposed Insured **EVER** had a driver's license suspended or revoked, been convicted of DUI or DWI, or in
the last five years had any moving violations?  If **YES**, please provide date(s) and violation(s).                    ☐Yes  ☒No

6. Has the Proposed Insured **EVER** had an application for life, disability income or health insurance declined,
postponed, rated or modified or required an extra premium? If **YES**, please provide details.                    ☐Yes  ☒No

7. In the past 10 years, has the Proposed Insured been convicted of or pled Guilty or No Contest to a felony?
If **YES**, list type of felony, state, and date of occurrence.                    ☐Yes  ☒No

8. Is the Proposed Insured actively at work performing the usual duties of his or her occupation?                    ☒Yes  ☐No
If **NO**, please provide details.

## SECTION VIII — Personal Physician

☐ Check here if Proposed Insured does not have a personal physician.

Physician Name                                         Name of Practice or Clinic
MAYO CLINIC

Street Address                              City                              State      Zip
5777 E MAYO BLVD          Phoenix                          AZ        85054

Phone Number        Date Last Consulted     Reason              Findings/Treatment Given/Medication Prescribed
480-515-6296        04-2015            Physical         None

## SECTION IX — Additional Information     If more space is needed, attach additional sheet(s).

ENB-7-07                                                        (11/14) eF

181328078481C076878581481.

## Certification / Agreement / Disclosure

Was a sales illustration provided for the life insurance policy as applied for?    ☐Yes  ☒No
A. If **Yes**, please choose one of the following:

☐An illustration was signed and **matches the policy applied for**. It is included with this application.

☐An illustration was shown or provided but is **different from the policy applied for**. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.

☐The sale was made using an illustration with Accelerated Payment.

☐If illustration was **only shown on a computer screen**, check and complete the details in the box below.

An illustration was displayed on a computer screen. The displayed illustration **matches the policy applied for** but no printed copy of the illustration was provided. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery. The illustration on the screen included the following personal and policy information:

1. Gender (as illustrated)      ☐Male    ☐Female    ☐Unisex

2. Age _____

3. Rating Class (e.g. Standard Non-smoker) _____    ☐Non-smoker    ☐Smoker

4. Product Name (e.g. GAUL) _____

5. Face Amount _____

6. Dividend Option (Whole Life only) _____

B. If **No**, please choose one of the following:

☐Producer certifies that a signed illustration is **not required** by law or the policy applied for is not illustrated in this state.

☒**No illustration conforming to the policy** as applied for was shown or provided prior to or at the time of this application. An illustration conforming to the policy as issued will be provided no later than at the time of policy delivery.

## ▌Agreement / Disclosure

I have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:

■ My statements in this application and any amendment(s), paramedical/medical exam and supplement(s) are the basis of any policy issued.

■ This application and any amendment(s), paramedical/medical exam, and supplement(s) to this application will be attached to and become part of the new policy.

■ No information will be deemed to have been given to the Company unless it is stated in this application, paramedical/medical exam, amendment(s), or any supplement(s).

■ Only the Company's President, Vice-President or Secretary may: (a) make or change any contract of insurance; (b) make a binding promise about insurance; or (c) change or waive any term of an application, receipt, or policy.

■ Except as stated in the Temporary Insurance Agreement and Receipt, no insurance will take effect until a policy is delivered to the Owner and the full first premium due is paid. It will only take effect at the time it is delivered if: (a) the condition of health of each person to be insured is the same as stated in the application; and (b) no person to be insured has received any medical advice or treatment from a medical practitioner since the date of the application.

■ If I have requested a rider that provides an acceleration of death benefit, I have received the appropriate disclosure form.

■ I understand that paying my insurance premiums more frequently than annually may result in a higher yearly out-of-pocket cost or different cash values.

■ **If I intend to replace existing insurance or annuities, I have so indicated in the appropriate section of the application.**

■ **I have received the Company's Privacy Notice and the Life Insurance Buyer's Guide.**

■ **If I was required to sign a Notice and Consent for HIV Testing, I have received a copy of that Notice.**



## Fraud Warnings

**Arkansas, Kentucky, Louisiana, New Mexico, Ohio, Oklahoma, Rhode Island**

Any person who knowingly and with intent to defraud any insurance company or any other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act which is a crime and subjects such person to criminal and civil penalties.

**District of Columbia, Tennessee, Virginia, Washington**

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits.

## Taxpayer Identification Number Certification

Under penalties of perjury, I, the Owner, certify that:

- The number shown in this application is my correct taxpayer identification number, and I am not subject to backup withholding because:
  - (a) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends; **or**
  - (b) the IRS has notified me that I am not subject to backup withholding.
    *(If you have been notified by the IRS that you are currently subject to backup withholding because of under reporting interest or dividends on your tax return, you must cross out and initial this item.)*
- I am a U.S. citizen or a U.S. resident alien for tax purposes.
  *(If you are not a U.S. citizen or a U.S. resident alien for tax purposes, please cross out this certification and complete form W-8BEN).*

  (i) **Please note:** The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

## Signatures

If not witnessing all signatures, witness should initial next to signature being witnessed and sign below.

Signature(s) of all Proposed Insured(s) _____  Date  *5/22/16*  Signed at City, State  *Paradise Valley AZ*

**(age 15 or over)**

📖 Please complete the **Additional Insureds Supplement** or **Child Rider Supplement** form(s) if applicable.

Signature(s) of all Owner(s) (If **NOT** the Proposed Insured) _____  Date  *5/22/16*  Signed at City, State  *Paradise Valley, AZ*

**(age 15 or over)**

(i) If the Owner is a firm or corporation, include Officer's title with signature.

📖 If Co-Owner or Custodian, please complete the **Co-Owner/Contingent Owner and UTMA Designations Supplement** form.

Signature of Parent or Guardian _____  Date  _____  Signed at City, State  _____

(If Owner or Proposed Insured is under 18, sign here. If not sign above.)

Witness to Signatures

Licensed Producer  *William M Gorman*  Print Name of Producer  *WILLIAM M GORMAN*

ENB-7-07                18182807841007687871485                (11/14)  eF

**PART II**  Check the appropriate company.                    Case/Policy #                    **1**

**Paramedical/
Medical Exam**

☐ Metropolitan Life Insurance Company        ☐ MetLife Insurance Company USA
☐ New England Life Insurance Company         ☐ General American Life Insurance Company
☐ Metropolitan Tower Life Insurance Company
The Company indicated above is referred to as "the Company."

The questions below are directed to the person to be examined. Record ONLY this person's answers in the spaces below.

1. Name of Proposed Insured  RUDOLPH  BIANCA  T  Date of Birth _12-04-1959_

2. Tobacco Use – Indicate date last smoked/used:
   Cigarette _____ ☒Never  Smokeless Tobacco _____ ☒Never  Cigar/Pipe _____ ☒Never
   Nicotine Substitute (i.e., Patch, Gum, etc.) _____ ☐ Never  Amount/Frequency _____ How Long ____ yrs.

3. Please provide name of doctor, practitioner, or health care facility who can give us the most complete and up to date information concerning
   your present health. If **None**, check ☐.
   Physician Name _MAYO  CLINIC_  Name of Practice/Clinic _MAYO CLINIC_
   Street _5777 E MAYO BLVD_  City _PHOENIX_  State _AZ_ Zip _85054_
   Phone Number _480-515-6296_  Fax Number _____  Date Last Consulted _APRIL 2015_
   Reason _PHYSICAL, BLOOD SMIDULL, CKG CHITXRAY  – NONE_
   Findings, treatment given, medication prescribed. If **None**, check ☐  _NONE_

   Reasons, findings, earlier consultations past 5 years _NONE_

4. Height _5_ ft. _4_ in.  Weight _152_ lbs.  Change in weight in past 12 months? ☒Yes ☐No
   If **Yes**, Pounds lost _30_  Pounds gained _____  Reason _DIET + EXERCISE_

5. Have you EVER received treatment, attention, or advice from any physician, practitioner | Details: List question number. Give: dates; duration/
   or health facility for, or been told by any physician, practitioner or health facility that | description of condition; diagnosis, treatment; physician,
   you had: | practitioner or health facility names and addresses.

   a) High blood pressure, chest pain; heart attack; irregular heartbeat;
      peripheral vascular disease; or any other disease or disorder of the | _5D COLONOSCOPY  DEC 2012_
      heart or circulatory system (blood vessels)?  ☐ Yes ☒No | _FOUND A COUPLE POLYPS_

   b) Asthma; bronchitis; pneumonia; emphysema; sleep apnea, | _DIAGNOSED BENIGN_
      shortness of breath; or any other disease or disorder of the lungs
      or respiratory system?  ☐ Yes ☒No | _SEE #3 FOR DOCTOR INFO_

   c) Seizures; stroke; paralysis; Alzheimer's disease or other form
      of dementia; multiple sclerosis; memory loss; Parkinson's disease; | _5I ANEMIA FROM HEAVY_
      progressive neurological disorder; headaches; or any other disease | _PERIODS HAD AN_
      or disorder of the brain or nervous system?  ☐ Yes ☒No | _ABLASION done APRIL 2012_

   d) Ulcers; colitis; hepatitis; cirrhosis; pancreatitis; or any other disease | _SEE #3 FOR DOCTOR INFO_
      or disorder of: the liver; pancreas; gallbladder; esophagus; stomach;
      spleen; or intestines?  ☒Yes ☐No

   e) Any disease or disorder of: the breasts; reproductive organs; or
      the genitourinary system, including but not limited to: the kidney;
      bladder; or prostate; or blood, protein or pus in the urine?  ☐ Yes ☒No

   f) Diabetes; thyroid disorder; elevated cholesterol or other lipid
      disorder; or any other endocrine disease or disorder?  ☐ Yes ☒No

   g) Arthritis; gout; osteoporosis; or other disease or disorder of the:
      muscles; bones; spine (discs, back, neck); or joints?  ☐ Yes ☒No

   h) Cancer; tumor; polyp; or cyst? Any disease or disorder of the skin?  ☐ Yes ☒No

   i) Anemia; leukemia; or any other disease or disorder of the blood or
      lymph glands?  ☒Yes ☐No

   j) Depression; stress; anxiety; or any other psychological or
      emotional disorder or symptoms?  ☐ Yes ☒No

   k) Any disease or disorder of the eyes, ears, nose, or throat?  ☐ Yes ☒No

EMED-13-05                                                          (08/15)  eF

**2**

|  | Details (Continued): |
|---|---|
| **6.** Are you now, or within the past year, taking medication or receiving treatment? (Including over the counter medications, vitamins, herbal supplements, alternative therapies, etc.)  ☐ Yes  ☑ No | |
| **7.** Do you have any doctor's visits, medical tests, medical care, or surgery scheduled for the next six months?  ☐ Yes  ☑ No | |
| **8.** Other than the above, during the past five years have you had any: | |
| a) Checkup; consultations; electrocardiogram; chest x-ray; or other medical test?  ☐ Yes  ☑ No | |
| b) Illness; injury; or health condition not revealed above; or have been recommended to have any: treatment; hospitalization; surgery; medical test; or medication?  ☐ Yes  ☑ No | |
| **9.** Have you: | |
| a) ever been diagnosed or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS)?  ☐ Yes  ☑ No | |
| b) ever tested positive for the AIDS Human Immunodeficiency Virus (HIV) virus or for antibodies to the AIDS (HIV) virus?  ☐ Yes  ☑ No | |
| **10.** a) Have you ever used heroin, cocaine, barbiturates, or other drugs, except as prescribed by a physician or other licensed practitioner?  ☐ Yes  ☑ No | |
| a) Have you ever received treatment from a physician, practitioner, health facility or counselor regarding the use of alcohol; or the use of drugs; or been advised by a physician, practitioner, health facility or counselor to restrict the use of alcohol or drugs; or received treatment or advice from an organization that assists those who have an alcohol or drug problem?  ☐ Yes  ☑ No | |

**11.** Do you exercise?  ☐ Yes  ☑ No  Type _____ How often? _____

**12.** Are you now pregnant?  ☐ Yes  ☑ No  If Yes, estimated date of delivery? _____

**13.** Has a parent or sibling ever had: heart disease; coronary artery disease; vascular disease; stroke/cerebrovascular disease; diabetes; cancer? (If **Yes**, indicate below.)  ☑ Yes  ☐ No

| Relationship to Proposed Insured: | Age(s) if living | Age(s) at Death | State of Health (Specific Conditions) or Cause of Death Attach additional sheet(s) if necessary. |
|---|---|---|---|
| Mother | | 58 | Colon Cancer. 53 Age of onset. |
| Father | | 85 | Prostate Cancer, Heart Disease, Diabetes. 68 onset. 70 onset. 8th onset |
| Brothers | 58 + 60 | | |

**14.** a) Do you currently use any assisted devices such as: a walker; wheelchair; long leg braces; cane; or crutches?  ☐ Yes  ☑ No

b) Do you need any assistance or supervision with any or all of the following activities: eating; bathing; dressing; walking; moving in/out of a chair or bed; toileting; continence or taking medication?  ☐ Yes  ☑ No

If **Yes**, provide details above.

I have read the answers to questions 2-14 before signing. They correctly reflect the answers given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

Signature of Proposed Insured _____ Date 5/22/16.

Witness to Signature _____ City and State Paradise Valley AZ

# Foreign Travel or Residence Supplement

MetLife
MetLife Life and Annuity Company of Connecticut

*This form must be completed if you reside in a country outside the United States or Canada or plan to travel outside the United States or Canada. Please answer all questions completely and sign the form. Complete a separate supplement for each applicable person.*

1. Proposed Insured _Blanca_ _first_     _T._ _middle_     _Kubbah_ _last_

2. Social Security Number ____ — ___ — ____ Date of Birth ____

3. Full Name of Person *(if other than Proposed Insured)* _____

4. a. Citizen of: _USA_ _____

   b. If not U.S. citizen, visa type or green card no. and date issued: ___

5. To what foreign country or countries do you intend to travel: _____

6. a. In what specific cities of these countries will you be located? _____

   b. Will you be traveling outside of these metropolitan areas?  ☑ YES ☐ NO

   If Yes, provide specifics: _____

7. Mode of travel including those required for junkets/excursions while in country: _____

8. a. Purpose of trip: _____

   b. If other than vacation travel, provide specific activities planned including duties and travel requirements: ___

9. When is your expected date of departure?_____ How long do you plan to remain? _____

10. What is your frequency of travel outside of the United States? _____

11. Do you anticipate any flying other than as a passenger on regularly scheduled commercial airlines? ☐ YES ☑ NO

    If YES, give full details:_____

The Proposed Insured or Applicant, if different, represent that the information in the above supplement is complete and true to the best of his/her knowledge and belief as of the date of application. A photocopy of this statement is as valid as the original.

Proposed Insured's signature (parent/guardian if a minor) _____

Applicant's signature (if different) _____     Date _____ 

L-16535  05/06

MetLife Insurance Company of Connecticut, P.O. Box 990018, Hartford, CT  06199-0018
MetLife Life and Annuity Company of Connecticut, P.O. Box 990018, Hartford, CT 06199-0018

# TRANSAMERICA
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: Cedar Rapids, IA 52499
Marketing Office: Los Angeles, CA 90015
Administrative Office: 4333 Edgewood Rd NE
Cedar Rapids, IA 52499

**POLICY FORM TS10NI**
Individual Life Insurance

| | | | |
|---|---|---|---|
| INSURED | BIANCA RUDOLPH | 42728878 | POLICY NUMBER |
| FACE AMOUNT | $500,000 | NOV 22 2010 | DATE OF ISSUE |

While this policy is in force, Transamerica Life Insurance Company will pay the death benefit to the Beneficiary if the Insured dies before the policy anniversary following the Insured's actual age 105. All payments are subject to the provisions of this policy.

Signed for the Company at Cedar Rapids, Iowa, on the date of issue.

*Craig D. Vermie*

Secretary

*Brenda Clancy*

President

## Right to Examine and Return Policy

**If the policy is not a replacement for another policy,** at any time within 10 days after you receive the policy, you may return it to us or the agent through whom you bought it. We will cancel the policy and void it from the beginning. We will refund to you any premiums paid.

**If the policy is a replacement for another policy,** at any time within **20** days after you receive the policy (if the policy was issued by another insurer) or within **45** days after you receive the policy (if the policy was issued by us or one of our subsidiaries or affiliates), you may return it to us or the agent through whom you bought it. We will cancel the policy and void it from the beginning. We will refund to you any premiums paid.

**Renewable Term Insurance to the Policy Anniversary Following Insured's Actual Age 105**
**Level Death Benefit Payable at Death Before**
**the Policy Anniversary Following Insured's Actual Age 105**

**See Schedule of Guaranteed Maximum**
**Premiums in the Policy Data for Amount of Premiums**

**Premiums Payable During Life of Insured to the**
**Policy Anniversary Following Insured's Actual Age 105**

**Premiums are Subject to Change as Stated**
**in Change of Premiums Provision, But Will Not**
**Exceed Specified Guaranteed Maximum Premiums**

**Nonparticipating – No Dividends**

1-306 44-107

This policy is a legal contract between you, the Owner of this Policy,
and Transamerica Life Insurance Company.

## READ YOUR POLICY CAREFULLY

### POLICY SUMMARY

We will pay the death benefit to the Beneficiary if the Insured dies while this policy is in force, before
the policy anniversary following the Insured's actual age 105.

Premiums are subject to change in accordance with the Change of Premiums provision and as shown in
the Schedule of Guaranteed Maximum Premiums in the Policy Data, but will not exceed specified
guaranteed maximum premiums.  Premiums are payable during the life of the Insured to the policy
anniversary following Insured's actual age 105.

Additional benefits, if any, are provided by rider.

This is only a brief description.  The insurance is fully described in the various provisions of the policy.

### GUIDE TO POLICY PROVISIONS

**Page**

Amount of Death Benefit ..............................4

Application Copy .................................. after 8

Authorization to Make Changes .....................6

Assignment of Policy.....................................3

Beneficiary's Rights ....................................3,4

Change of Beneficiary ...................................4

Death Benefit...............................................4

Definitions ..................................................3

Dividends ....................................................6

Grace Period for Paying Premiums.................5

Incontestability of the Policy ..........................6

Misstatement of Age or Sex..........................6

Ownership and Beneficiary Provisions..........3,4

Payment of the Death Benefit........................4

Policy Contract............................................6

**Page**

Policy Data................................................... 2

Policy Date................................................... 3

Premiums.................................................. 4,5

Proof of Death.............................................. 4

Reinstatement ............................................. 5

Riders...................................................after 8

Schedule of Premiums .......................... 2A

Settlement Provisions ........................................ 6,7
  Option A: Installments for a Guaranteed
  Period ...................................................... 7
  Option B: Installments for Life with a
  Guaranteed Period ...................................... 7
  Option C: Benefit Deposited with Interest .............. 7
  Option D: Installments of a Selected Amount ......... 7
  Option E: Annuity.............................................. 7
  Option B Table ................................................ 8

Suicide ...................................................... 6

Termination of Insurance........................................ 6

### P O L I C Y   D A T A

|  |  |
|---|---|
|  | NOV 22 2010   POLICY DATE |
| EXPIRY DATE   NOV 22 2064 | 51   AGE OF INSURED |
| INSURED   BIANCA RUDOLPH | 42728878   POLICY NUMBER |
| FACE AMOUNT   $500,000 | NOV 22 2010   DATE OF ISSUE |
| SEX OF INSURED   FEMALE | NOV 22 2020   LAST DATE TO CONVERT |
| OWNER   THE INSURED | STANDARD NON-SMOKER   CLASS OF RISK |

- - - - - - - - - - - - - - - - - - - - -

THE CHARGE FOR ANY ADDITIONAL BENEFITS WHICH ARE PROVIDED BY RIDER IS SHOWN BELOW.  ONLY A BRIEF DESCRIPTION IS GIVEN.  THE COMPLETE PROVISIONS ARE INCLUDED IN THE RIDER.

| RIDER NUMBER | SCHEDULE OF ADDITIONAL BENEFITS | ANNUAL PREMIUM* |
|---|---|---|
| | NONE | NO CHARGE |

- - - - - - - - - - - - - - - - - - - - - -

TOTAL FIRST YEAR PREMIUMS (SEE FOLLOWING PAGE FOR PREMIUMS FOR  LATER YEARS):

| ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|
| $990.00 | $504.90 | $257.40 | * * * |

- - - - - - - - - - - - - - - - - - - - -

THE TOTAL INITIAL PREMIUMS SHOWN ABOVE ARE GUARANTEED FOR THE FIRST 10 POLICY YEARS. GUARANTEED PREMIUMS FOR SUBSEQUENT YEARS ARE SHOWN ON PAGE 2A.

P O L I C Y   D A T A   ( C O N T I N U E D )

SCHEDULE OF GUARANTEED MAXIMUM*
ANNUAL PREMIUMS

| POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS | POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS |
|---|---|---|---|
| NOV 22 2011 | $990.00 | NOV 22 2038 | $49,995.00 |
| NOV 22 2012 | 990.00 | NOV 22 2039 | 57,225.00 |
| NOV 22 2013 | 990.00 | NOV 22 2040 | 66,925.00 |
| NOV 22 2014 | 990.00 | NOV 22 2041 | 78,155.00 |
| NOV 22 2015 | 990.00 | NOV 22 2042 | 88,845.00 |
| NOV 22 2016 | 990.00 | NOV 22 2043 | 98,460.00 |
| NOV 22 2017 | 990.00 | NOV 22 2044 | 109,290.00 |
| NOV 22 2018 | 990.00 | NOV 22 2045 | 119,115.00 |
| NOV 22 2019 | 990.00 | NOV 22 2046 | 133,905.00 |
| NOV 22 2020 | 9,190.00 | NOV 22 2047 | 149,355.00 |
| NOV 22 2021 | 10,010.00 | NOV 22 2048 | 165,825.00 |
| NOV 22 2022 | 11,040.00 | NOV 22 2049 | 181,005.00 |
| NOV 22 2023 | 12,260.00 | NOV 22 2050 | 188,685.00 |
| NOV 22 2024 | 13,580.00 | NOV 22 2051 | 203,790.00 |
| NOV 22 2025 | 14,790.00 | NOV 22 2052 | 226,200.00 |
| NOV 22 2026 | 16,090.00 | NOV 22 2053 | 249,230.00 |
| NOV 22 2027 | 17,555.00 | NOV 22 2054 | 270,030.00 |
| NOV 22 2028 | 19,140.00 | NOV 22 2055 | 285,780.00 |
| NOV 22 2029 | 21,230.00 | NOV 22 2056 | 303,780.00 |
| NOV 22 2030 | 23,370.00 | NOV 22 2057 | 328,930.00 |
| NOV 22 2031 | 25,590.00 | NOV 22 2058 | 355,755.00 |
| NOV 22 2032 | 27,965.00 | NOV 22 2059 | 383,080.00 |
| NOV 22 2033 | 30,600.00 | NOV 22 2060 | 403,780.00 |
| NOV 22 2034 | 34,740.00 | NOV 22 2061 | 425,155.00 |
| NOV 22 2035 | 38,070.00 | NOV 22 2062 | 444,155.00 |
| NOV 22 2036 | 41,675.00 | NOV 22 2063 | 456,030.00 |
| NOV 22 2037 | 45,705.00 | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*PREMIUMS ARE SUBJECT TO CHANGE AFTER THE 10TH  POLICY YEAR AS DESCRIBED
IN THE CHANGE OF PREMIUMS PROVISION.

| | |
|---|---|
| **DEFINITIONS** | In this policy: |

**We, our** or **us** means Transamerica Life Insurance Company.

**You** and **your** means the owner of this policy.

**Administrative Office** means Transamerica Life Insurance Company, 4333 Edgewood Rd NE, Cedar Rapids, Iowa 52499.

**Age** means the Insured's age in years on the Insured's nearest birthday, unless reference is made to actual age.

The **Beneficiary** is the person to whom we will pay the death benefit if the Insured dies.

The **Date of Issue** is shown in the Policy Data.

**Lapse** means termination of the policy at the end of the grace period due to non-payment of premiums.

**Reinstate** means to restore coverage after the policy has lapsed, subject to the requirements in the Reinstatement provision.

A **Rider** is an attachment to the policy that provides an additional benefit.

**Written Request** means a signed request in a form satisfactory to us that is received at our Administrative Office.

We will send any **notice** under the provisions of this policy to your last known address and to any assignee of record.

We will use the **Policy Date** shown in the Policy Data to determine the premium due dates, policy anniversaries and policy years.

**OWNERSHIP**

**Owner of the Policy** -- Only you, the Owner, are entitled to the rights granted under this policy while the Insured is living. If you are an individual and you die before the Insured, your rights will pass to the executor or administrator of your estate for disposition, unless stated otherwise in this policy. If the Owner is a partnership, the rights belong to the partnership as it exists when a right is exercised.

**Assignment of the Policy** -- We are not responsible for the adequacy of any assignment. However, if you file the assignment with us and we record it at our Administrative Office, your rights and those of any revocable Beneficiary will be subject to it.

**THE BENEFICIARY**

**Who Receives the Death Benefit** -- When the Insured dies while this policy is in force, we will pay the death benefit to the Beneficiary. The Beneficiary is as designated in the application, unless changed as shown under "How to Change a Beneficiary" below. If the Beneficiary is a partnership, we will pay the death benefit to the partnership as it existed when the Insured died.

**Protection of the Death Benefit** -- To the extent permitted by law, no death benefit will be subject to the claims of the Beneficiary's creditors or to any legal process against the Beneficiary.

**If the Beneficiary Dies** -- If any Beneficiary dies before the Insured, that Beneficiary's interest in the death benefit will end. If any Beneficiary dies at the same time as the Insured, or within 30 days after the Insured, that Beneficiary's interest in the death benefit will end if no benefits have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended when the Insured dies, we will pay the death benefit to you. If you are not living at that time, we will pay the death benefit to the executor or administrator of your estate.

**How to Change a Beneficiary** -- You may change the designated Beneficiary while the Insured is living by sending a satisfactory written notice to us. The change will not be effective until we record it at our Administrative Office. Even if the Insured is not living when we record the change, the change will take effect as of the date it was signed. However, any benefits we pay before we record the change will not be subject to the change.

A Beneficiary designated irrevocably may not be changed without the written consent of that Beneficiary.

**PAYMENT OF THE DEATH BENEFIT**

**Proof of Death** -- We will pay any benefit payable because of death when we receive due proof of the Insured's death while this policy was in force. The proof must be sent to us at our Administrative Office. We will send appropriate forms to the Beneficiary upon request. Any of our agents will help the Beneficiary fill out the forms without charge.

**Interest on Life Insurance Proceeds** -- We will pay interest on the proceeds of any benefit paid under this policy more than 30 days after we receive due proof of the Insured's death. We will pay interest from the date of the Insured's death to the date the payment is made. The interest rate will be equal to the higher of: (a) the rate being used for Settlement Option C; or (b) the rate required by law on the date of the Insured's death.

**Death Benefit** -- The amount of the death benefit is equal to:

|      | (a) | the face amount of this policy, |
|------|-----|--------------------------------|
| plus | (b) | the face amount of any attached rider, subject to its terms, |
| plus | (c) | the amount of any portion of a paid premium which applies to a period beyond the Insured's date of death (excluding any premiums waived under any disability rider attached to this policy), |
| minus | (d) | the amount of any portion of a premium due under the grace period provision. |

The amount of the death benefit may be affected by the Misstatement of Age or Sex provision of this policy.

**PREMIUMS**

**Premium** -- To keep this policy in force, each premium must be paid in advance. Premiums should be sent to our Administrative Office or you may pay them to an agent we authorize. We will give you a receipt if you ask for one. The first premium is due on the Policy Date. Subsequent premiums are payable while the Insured is living and within the grace period. If any premium remains unpaid after the grace period, your policy will lapse. If a part of the premium ceases to be payable under the provisions of a rider, the premium will be reduced accordingly. The mode of premium payment may be changed on any policy anniversary to any other mode shown in the Policy Data.

**Schedule of Premiums** -- The guaranteed maximum annual premium for each policy year is shown in the Policy Data under Schedule of Guaranteed Maximum Annual Premiums. For any policy year, we will not charge an annual premium greater than the guaranteed annual maximum premium shown in that Schedule for that year.

**Change of Premiums** -- After the guaranteed level premium period shown on Policy Data page 2A, premiums are subject to change. We may charge a lower premium than the guaranteed maximum annual premium for a policy year exclusive of any riders, by sending a notice to your last known address. Such annual premiums are not guaranteed. A reduced annual premium will be effective for one year beginning on the policy anniversary immediately following the date we send the notice. Any reduction in the annual premium will apply to all policies having the same plan, issue year and premium schedule as this policy. The changed premium will never exceed the guaranteed maximum annual premium shown on page 2A. A change in the premiums for this policy will also apply uniformly to all other policies we issue on the same plan and on an insured with the same issue age, issue date, sex, face amount and class of risk as the Insured under this policy. The changed rates will not be affected by any change in health or occupation of the Insured. A change in the premiums for this policy will not change the premiums for any attached riders.

We will bill the Owner directly on an annual, semi-annual or quarterly basis if the Owner wishes. Direct billing on a monthly basis is only available if the annual premium for the basic coverage provided by this policy is $1,000 or more.

Monthly and quarterly premium payment modes are available if premium payments are to be made through automatic deductions from the Owner's checking account (pre-authorized checking). Annual and semi-annual premium payment modes are not available through pre-authorized checking.

The semi-annual, quarterly and monthly premiums for each policy year will be determined on the same basis used to determine the initial semi-annual, quarterly and monthly premiums.

Any change in the premium rates will be prospective and will be subject to our expectation as to future cost factors. Such cost factors may include, but are not limited to: mortality; expenses; interest; persistency; regulatory changes; and any applicable federal, state and local taxes.

**Grace Period for Paying Premiums** -- We will allow a period of 31 days after the premium due date for payment of each premium after the first premium. During the grace period, we will not charge any interest on the premium due. If the Insured dies during the grace period before the premium is paid, we will deduct the portion of the premium required to provide insurance from the premium due date to the date of the Insured's death from the proceeds payable under this policy.

**Premium Adjustment at Death** -- Any portion of a paid premium which applies to a period beyond the date of the Insured's death will be added to the proceeds payable under this policy. Premiums waived under any disability rider attached to the policy will not be included in this adjustment.

**Reinstatement** -- If this policy lapses, it may be reinstated. To reinstate the policy, you must meet the following conditions:

1.  You must request reinstatement in writing within three years after the date of lapse and before the expiry date.

2.  The Insured must provide evidence of insurability sufficient to satisfy us that the Insured continues to qualify for the same class of risk and rating upon which we based the issuance of this policy.

3.  The following amounts must be paid:

    a.  One twelfth of the annual premium at the time of lapse; and
    b.  The premium due at the time of reinstatement.

Insurance under the reinstated policy will be effective from the date we approve the reinstatement.

The effective date of any reinstatement will be the date of your request. If a person other than the Insured is covered by any attached rider, that person's coverage will be reinstated under the terms of that rider.

**GENERAL PROVISIONS**

**Incontestability of the Policy** -- Except for nonpayment of premiums, this policy will be incontestable after it has been in force during the Insured's lifetime for two years from the date of issue. This provision does not apply to any rider providing benefits specifically for disability or death by accident.

If the policy lapses during the first two years it is in force and it is reinstated, the reinstated policy may be rescinded only for a contestable reason that is in the application or reinstatement application. If the policy lapses after the first two years it is in force and it is reinstated, the reinstated policy may be rescinded only for a contestable reason that is in the reinstatement application. When the policy is reinstated, it will be incontestable with respect to statements in the reinstatement application after it has been in force during the Insured's lifetime for two years from the date of reinstatement.

**Amount Payable Is Limited in the Event of Suicide** -- If the Insured dies by suicide, while sane or insane, within two years from the date of issue, we will be liable only for the amount of premiums paid.

If the policy lapses during the first two years it is in force and it is reinstated, the reinstated policy may be rescinded only for a contestable reason that is in the application or reinstatement application. If the policy lapses after the first two years it is in force and it is reinstated, the reinstated policy may be rescinded only for a contestable reason that is in the reinstatement application. When the policy is reinstated, it will be incontestable with respect to statements in the reinstatement application after it has been in force during the Insured's lifetime for two years from the date of reinstatement.

**Misstatement of Age or Sex in the Application** -- If there is a misstatement of the Insured's age or sex in the application, we will adjust the death benefit to that which the premiums paid would have purchased at the correct age or sex.

**This Policy is Our Entire Contract with You** -- We have issued this policy in consideration of the application and payment of the premiums. A copy of the application is attached and is part of this policy. The policy, including the application and any endorsements and riders, forms our entire contract with you. All statements made by or for the Insured will, in the absence of fraud, be considered representations and not warranties. We will not use any statement made by or for the Insured to deny a claim unless the statement is in the application and the application is attached to this policy when we issue or deliver it.

**Who Can Make Changes in the Policy** -- Only our President or a Vice President together with our Secretary have the authority to make any change in this policy. Any change must be in writing.

**Renewability** -- On each policy anniversary up to the policy anniversary at age 105, this policy will be renewable for the policy year immediately following the anniversary provided that the policy is in force on the anniversary date. The guaranteed premiums for each policy year are shown in the Policy Data.

**Termination of Insurance** -- This policy will terminate at the earliest of:

1.    the date we receive your written request to terminate;

2.    the policy anniversary at age 105;

3.    the date of lapse for nonpayment of premiums;

4.    the date this policy is converted; or

5.    when the death benefit has been paid.

**No Dividends are Payable** -- This is nonparticipating insurance. It does not participate in our profits or surplus. We do not distribute past surplus or recover past losses by changing the premium rates.

**SETTLEMENT PROVISIONS**

When the Insured dies while this policy is in force, we will pay the death benefit in a lump sum unless you or the Beneficiary choose a settlement option. You may choose a settlement option while the Insured is living. The Beneficiary may choose a settlement option after the Insured has died. The Beneficiary's right to choose will be subject to any settlement agreement in effect at the Insured's death.

When we receive a satisfactory written request, we will pay the death benefit according to one of these options:

**Option A: Installments for a Guaranteed Period --** We will pay equal installments for a guaranteed period of from one to thirty years. Each installment will consist of part benefit and part interest. We will pay the installments monthly, quarterly, semi-annually or annually, as requested. The interest rate used to calculate Option A payments is 1.5%.

**Option B: Installments for Life with a Guaranteed Period --** We will pay equal monthly installments as long as the payee is living, but we will not make payments for less than the guaranteed period the payee chooses. The guaranteed period may be either 10 years or 20 years. We will pay the installments monthly. See Table B. Option B is based on the 2000 Annuity Mortality Table with projections and an interest rate of 1.5%.

**Option C: Benefit Deposited with Interest --** We will hold the benefit on deposit. It will earn interest at the annual interest rate we are paying as of the date of death. We will not pay less than 1.5% annual interest. We will pay the earned interest monthly, quarterly, semi-annually or annually, as requested. The payee may withdraw part or all of the benefit and earned interest at any time. The interest rate used to calculate Option C payments is 1.5%.

**Option D: Installments of a Selected Amount --** We will pay installments of a selected amount until we have paid the entire benefit and accumulated interest. The interest rate used to calculate Option D payments is 1.5%.

**Option E: Annuity --** We will use the benefit as a single premium to buy an annuity. The annuity may be payable to one or two payees. It may be payable for life with or without a guaranteed period, as requested. The annuity payment will not be less than what our current annuity contracts are then paying. The interest rate used to calculate Option E payments is 1.5%.

The payee may arrange any other method of settlement as long as we agree to it. The payee must be an individual receiving payment in his or her own right. There must be at least $10,000 available for any option and the amount of each installment to each payee must be at least $100. If the benefit amount is not enough to meet these requirements, we will pay the benefit in a lump sum.

We will pay the first installment under any option as of the date of death. Any unpaid balance we hold under Options A, B, or D will earn interest at the rate we are paying at the time of settlement. We will not pay less than 1.5% annual interest. Any benefit we hold will be combined with our general assets.

If the payee does not live to receive all guaranteed payments under Options A, B, D or E or any amount deposited under Option C, plus any accumulated interest, we will pay the remaining benefit as scheduled to the payee's estate. The payee may name and change a successor payee for any amount we would otherwise pay the payee's estate.

### TABLE B
### Monthly Installment for Each $1,000 Payable under Option B
### Based Upon Payee's Actual Age

**Male Payee**

| Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1.67 | 1.67 | 21 | 1.95 | 1.95 | 41 | 2.51 | 2.49 | 61 | 3.85 | 3.61 | 81 | 7.06 | 4.74 |
| 1 | 1.68 | 1.68 | 22 | 1.97 | 1.97 | 42 | 2.55 | 2.53 | 62 | 3.96 | 3.69 | 82 | 7.24 | 4.75 |
| 2 | 1.69 | 1.69 | 23 | 1.99 | 1.99 | 43 | 2.59 | 2.57 | 63 | 4.07 | 3.76 | 83 | 7.41 | 4.77 |
| 3 | 1.70 | 1.70 | 24 | 2.01 | 2.01 | 44 | 2.64 | 2.61 | 64 | 4.20 | 3.84 | 84 | 7.58 | 4.78 |
| 4 | 1.71 | 1.71 | 25 | 2.03 | 2.03 | 45 | 2.68 | 2.65 | 65 | 4.32 | 3.91 | 85 | 7.74 | 4.79 |
| 5 | 1.73 | 1.72 | 26 | 2.05 | 2.05 | 46 | 2.73 | 2.70 | 66 | 4.46 | 3.99 | 86 | 7.89 | 4.80 |
| 6 | 1.74 | 1.73 | 27 | 2.07 | 2.07 | 47 | 2.79 | 2.75 | 67 | 4.60 | 4.06 | 87 | 8.03 | 4.80 |
| 7 | 1.75 | 1.75 | 28 | 2.10 | 2.09 | 48 | 2.84 | 2.80 | 68 | 4.75 | 4.13 | 88 | 8.16 | 4.81 |
| 8 | 1.76 | 1.76 | 29 | 2.12 | 2.12 | 49 | 2.90 | 2.85 | 69 | 4.90 | 4.20 | 89 | 8.28 | 4.81 |
| 9 | 1.77 | 1.77 | 30 | 2.15 | 2.14 | 50 | 2.96 | 2.90 | 70 | 5.06 | 4.27 | 90 | 8.38 | 4.81 |
| 10 | 1.78 | 1.78 | 31 | 2.17 | 2.17 | 51 | 3.02 | 2.96 | 71 | 5.22 | 4.33 | 91 | 8.48 | 4.81 |
| 11 | 1.80 | 1.80 | 32 | 2.20 | 2.19 | 52 | 3.08 | 3.01 | 72 | 5.39 | 4.39 | 92 | 8.57 | 4.81 |
| 12 | 1.81 | 1.81 | 33 | 2.23 | 2.22 | 53 | 3.15 | 3.07 | 73 | 5.56 | 4.45 | 93 | 8.65 | 4.81 |
| 13 | 1.82 | 1.82 | 34 | 2.26 | 2.25 | 54 | 3.22 | 3.13 | 74 | 5.74 | 4.50 | 94 | 8.72 | 4.81 |
| 14 | 1.84 | 1.84 | 35 | 2.29 | 2.28 | 55 | 3.30 | 3.20 | 75 | 5.93 | 4.55 | 95 | 8.78 | 4.81 |
| 15 | 1.85 | 1.85 | 36 | 2.32 | 2.31 | 56 | 3.38 | 3.26 | 76 | 6.11 | 4.59 | 96 | 8.83 | 4.81 |
| 16 | 1.87 | 1.87 | 37 | 2.35 | 2.34 | 57 | 3.46 | 3.33 | 77 | 6.30 | 4.63 | 97 | 8.87 | 4.81 |
| 17 | 1.88 | 1.88 | 38 | 2.39 | 2.38 | 58 | 3.55 | 3.40 | 78 | 6.49 | 4.66 | 98 | 8.90 | 4.81 |
| 18 | 1.90 | 1.90 | 39 | 2.43 | 2.41 | 59 | 3.65 | 3.47 | 79 | 6.68 | 4.69 | 99 | 8.92 | 4.81 |
| 19 | 1.92 | 1.91 | 40 | 2.47 | 2.45 | 60 | 3.75 | 3.54 | 80 | 6.87 | 4.71 | 100 | 8.94 | 4.81 |
| 20 | 1.93 | 1.93 | | | | | | | | | | | | |

**Female Payee**

| Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. | Age | 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 1.68 | 1.68 | 21 | 1.94 | 1.94 | 41 | 2.45 | 2.44 | 61 | 3.66 | 3.51 | 81 | 6.93 | 4.74 |
| 1 | 1.69 | 1.69 | 22 | 1.96 | 1.96 | 42 | 2.49 | 2.48 | 62 | 3.76 | 3.59 | 82 | 7.13 | 4.75 |
| 2 | 1.70 | 1.69 | 23 | 1.98 | 1.98 | 43 | 2.53 | 2.51 | 63 | 3.87 | 3.67 | 83 | 7.33 | 4.77 |
| 3 | 1.71 | 1.71 | 24 | 2.00 | 2.00 | 44 | 2.57 | 2.55 | 64 | 3.98 | 3.74 | 84 | 7.52 | 4.78 |
| 4 | 1.72 | 1.72 | 25 | 2.02 | 2.02 | 45 | 2.61 | 2.59 | 65 | 4.09 | 3.82 | 85 | 7.69 | 4.79 |
| 5 | 1.73 | 1.73 | 26 | 2.04 | 2.04 | 46 | 2.66 | 2.64 | 66 | 4.22 | 3.90 | 86 | 7.86 | 4.80 |
| 6 | 1.74 | 1.74 | 27 | 2.06 | 2.06 | 47 | 2.70 | 2.68 | 67 | 4.35 | 3.98 | 87 | 8.01 | 4.80 |
| 7 | 1.75 | 1.75 | 28 | 2.08 | 2.08 | 48 | 2.75 | 2.73 | 68 | 4.49 | 4.06 | 88 | 8.15 | 4.81 |
| 8 | 1.76 | 1.76 | 29 | 2.10 | 2.10 | 49 | 2.80 | 2.77 | 69 | 4.64 | 4.14 | 89 | 8.27 | 4.81 |
| 9 | 1.77 | 1.77 | 30 | 2.13 | 2.12 | 50 | 2.86 | 2.82 | 70 | 4.79 | 4.21 | 90 | 8.38 | 4.81 |
| 10 | 1.78 | 1.78 | 31 | 2.15 | 2.15 | 51 | 2.91 | 2.88 | 71 | 4.95 | 4.28 | 91 | 8.48 | 4.81 |
| 11 | 1.80 | 1.80 | 32 | 2.18 | 2.17 | 52 | 2.97 | 2.93 | 72 | 5.12 | 4.35 | 92 | 8.57 | 4.81 |
| 12 | 1.81 | 1.81 | 33 | 2.20 | 2.20 | 53 | 3.03 | 2.99 | 73 | 5.30 | 4.42 | 93 | 8.64 | 4.81 |
| 13 | 1.82 | 1.82 | 34 | 2.23 | 2.22 | 54 | 3.10 | 3.04 | 74 | 5.49 | 4.47 | 94 | 8.71 | 4.81 |
| 14 | 1.84 | 1.84 | 35 | 2.26 | 2.25 | 55 | 3.17 | 3.10 | 75 | 5.68 | 4.53 | 95 | 8.77 | 4.81 |
| 15 | 1.85 | 1.85 | 36 | 2.29 | 2.28 | 56 | 3.24 | 3.17 | 76 | 5.88 | 4.57 | 96 | 8.82 | 4.81 |
| 16 | 1.86 | 1.86 | 37 | 2.32 | 2.31 | 57 | 3.32 | 3.23 | 77 | 6.09 | 4.62 | 97 | 8.86 | 4.81 |
| 17 | 1.88 | 1.88 | 38 | 2.35 | 2.34 | 58 | 3.40 | 3.30 | 78 | 6.30 | 4.65 | 98 | 8.90 | 4.81 |
| 18 | 1.90 | 1.89 | 39 | 2.38 | 2.37 | 59 | 3.48 | 3.37 | 79 | 6.51 | 4.69 | 99 | 8.92 | 4.81 |
| 19 | 1.91 | 1.91 | 40 | 2.42 | 2.41 | 60 | 3.57 | 3.44 | 80 | 6.72 | 4.71 | 100 | 8.94 | 4.81 |
| 20 | 1.93 | 1.93 | | | | | | | | | | | | |

## Conversion Option Endorsement

Transamerica Life Insurance Company has issued this endorsement as a part of the policy to which it is attached.

While the policy is in force and the Insured is alive, the policy may be converted at any time prior to the earlier of the following:

1. the end of the Initial Level Premium Period or

2. the Insured's 70th birthday

The policy, subject to all conditions stated herein, may be converted to:

1. a non-flexible premium level premium whole life insurance plan that we make available at the date of the request, or

2. a flexible premium adjustable life insurance plan that we make available at the date of the request.

At least one plan of insurance will be made available for conversion to the new policy at any time while this policy is in force. Evidence of insurability will not be required for the new policy for the same, or lower, face amount at the time the request for conversion is made.

The conversion is also subject to the following conditions:

1. We must receive the written request no later than 30 days after the earlier of:
   a. the end of the Initial Level Premium Period or
   b. the Insured's 70th birthday.

2. Unless you request otherwise, the policy date of the new policy will be the date we receive your application for the conversion accompanied by the first premium, or the Insured's 70th birthday, whichever is earlier.

3. The face amount of the new policy may be for an amount up to the face amount of this policy at the time the request for conversion is made, but no less than our then published minimum for the plan selected.

4. If the conversion is exercised within 2 years from the earlier of the policy date or issue date of the original policy, the contestability provision will apply to the new policy for the balance of that 2 year period.

5. Premiums for the original policy must be paid to the date of conversion. The premium for the new policy will be at our published rate for the plan selected at the time of conversion. We will use the Insured's age on the date of conversion to determine this rate. The new policy will be issued at the class of risk of this policy, if available. If such is not available at the time of conversion, the new policy will be issued at the class of risk available which is most similar to the class of risk of this policy.

6. Until the new policy becomes effective, the original policy will continue in force subject to its provisions. The original policy will automatically terminate at the exact time the new policy becomes effective. In no event will we provide insurance under both the original policy and a new policy at the same time.

Signed for Transamerica Life Insurance Company at Los Angeles, California, and effective on the date of issue of the policy to which this endorsement is attached unless a different date is shown here.

Craig D. Vermte

Secretary

Brenda Clancy

President

1-008 11-106

Bianca Rudolph 42 7 2 8 8 7 8

GA # 12658

**TRANSAMERICA**
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

C0510 RP

**Individual Life Insurance
Application For One Life
Part 1**

Proposed Insured: **Bianca Rudolph**
First        Middle        Last        Suffix    Mr./Mrs./Ms./Dr.

Birthdate: **12-4-59**  Age **50**  Birth Place: **Pittsburgh, PA**        Male ☐ Female ☒
Mo.  Day  Yr.

Soc. Sec. No.: **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**  U.S. Citizen ☒ Yes ☐ No If no, complete Residency & Travel Questionnaire

Employer: **Three Rivers Dental**        **7247579134**
Area Code & Work Phone

Occupation: **Manager**

Annual Income $ **100,000**        Net Worth $ **5,000,000 approx**

Residence: **336 Lakewood Rd.  Greensburg. PA. 15601**
No. & Street (Cannot be a P.O. Box)  City        State  Zip  Country  Area Code & Home Phone

Owner's Name: _____        Birthdate: _____
(If other than Proposed Insured)        Mo.  Day  Yr.

If Trust, provide name and date of Trust: _____

Relationship to Proposed Insured: _____

Address: _____
No. & Street (Cannot be a P.O. Box)  City        State  Zip  Country  Soc. Sec. or Tax No.

U.S. Citizen ☐ Yes ☐ No If no, VISA Type/Immigration Status: _____  E-mail: _____

Beneficiary's Name and Relationship to Proposed Insured: **Lawrence P. Rudolph. spouse 100%** (HIPAA (Policy/Billing Notices))
**contingent: Ana Bianca Rudolph, daughter 50% - Julian L. Rudolph. son 50%**

Address: _____
No. & Street (Cannot be a P.O. Box)  City        State  Zip  Country  Date of Trust, if Applicable

1. Plan Applied For: **Standard Plus -10**        Kind Code: **6558**
2. Risk Classification:  Preferred Plus/Select ☐    Preferred ☐    Standard Plus ☒    Standard ☐
   Extra Rating of ☐ _____  Other ☐ _____
3. Nicotine Classification: Nicotine ☐    Non-Nicotine ☒
4. Amount Applied For $ **1,000,000**
5. Additional Benefits by Rider: ☐ Waiver of Premium/Waiver Provision ☐ Accident Indemnity $_____ ☐ Other _____ $_____
6. Premium Payment Mode: ☐ Annual    ☐ Semi-Annual    ☒ Quarterly    ☐ Monthly    ☐ Other _____
   ☐ PAC    ☒ Direct Bill
7. Complete for Flexible Premium Plans:
   Required Premium Per Year (RAP) · $_____
   Planned Periodic Premium        $_____
   + Initial Lump Sum        $_____
   = Total Initial Premium        $_____
8. If the Automatic Premium Loan (APL) provision is available, do you want the provision to be in effect? ☐ Yes ☐ No (APL will be in effect unless no is checked.)
9. Do you have any existing life insurance or annuities? If none, check this box ☐. If yes, please list the policies below.
   a. Do you intend to discontinue, replace or change any existing life insurance or annuities with any company if the life insurance applied for is issued? Please indicate yes or no in the chart.

| Type of Coverage (Personal / Business / Employer Provided / Group) | Company/Policy Number | Face Amount | Replacement? |
|---|---|---|---|
| Great West Life + Annuity | 105665 (Group) | $500,000 | ☐ Yes ☒ No |
| Transamerica | 42186233 | $500,000 | ☒ Yes ☐ No |
|  |  | $ | ☐ Yes ☐ No |

b. Total Accidental Death insurance inforce with all companies: $_____

APA401008TPA

**APPLICATION (NB)**
continued on next page

Rev 12/08

* D T 0 J 8 *

Bianca Rudolph    42728878

10. Is any application for life insurance pending with any other company? I. I Yes ☒No
If yes, give company name, amount applied for and total amount to be placed. _____

11. Are there any life insurance policies on the life of the Proposed Insured that you do not own, including but not limited to any that you have sold or settled? ☐Yes ☒No    If yes, give insurance company name, owner's name, and amount of insurance of each policy.
_____

12. Mail Additional Premium Notices To: _____
Address: _____
| No. & Street | City | State | Zip | Country |

**Yes  No**    "You" means any person proposed to be insured.

☐ ☒ 13. Have you ever participated in, or within the next two years do you intend to participate in, hang-gliding, sky diving, parachuting, ultralight flying, vehicle racing, scuba diving, mountain or rock climbing, rodeos, competitive skiing or snowboarding, extreme sports or other hazardous activities? If yes, complete Sports and Hazardous Activities Questionnaire.

☒ ☐ 14. Do you plan to travel in the next 12 months for business or pleasure to a destination outside the U.S., Canada, Western Europe, Hong Kong, Australia or New Zealand? If yes, complete Residency & Travel Questionnaire.

15. Have you used nicotine at any time?    Date Last Used

☐ ☒ Cigarettes    _____
☐ ☒ Cigar/Pipe/Chewing Tobacco    _____
☐ ☒ Other    _____

16. Driver's License #: __188004/3__    State: __PA__
In the past five years, have you been convicted of or pleaded guilty to:

☐ ☒ a. Moving violations? If yes, give dates and type. _____
☐ ☒ b. Driving under the influence of alcohol and/or other drugs? If yes, give dates. _____
☐ ☒ c. Reckless driving? If yes, give dates. _____

☐ ☒ 17. Except as a passenger on a regularly scheduled flight, has the Proposed Insured flown within the past 2 years, or does the Proposed Insured have plans to fly in the future other than as a passenger? If yes, complete Aviation Questionnaire.

☐ ☒ 18. Have you ever been convicted of a felony, misdemeanor or infraction other than a traffic violation? If yes, provide full details including state and date of offense.

☐ ☒ 19. Are you a member of the armed forces including reserves? Intend to become a member? Any deployment orders outside U.S.? If yes, give full details.

☐ ☒ 20. Is the Proposed Insured currently in bankruptcy or has the Proposed Insured been the subject of any voluntary or involuntary bankruptcy proceeding pending within the last 12 months? If yes, please provide full details including Chapter 7, 11, or 13, date filed, and date of discharge and dismissal, if any.

**Remarks:** Give details for any questions answered yes
_____ See attached travel Questionnaire _____
_____
_____
_____
_____

I, the Proposed Insured, and I, the Owner if different, hereby represent that the statements and answers given in this application are true and correct to the best of my knowledge and belief. I/we agree: (1) this application shall consist of Part 1, Part 2, and any required application supplement(s)/amendment(s), and shall be the basis for any contract issued on this application; (2) except as otherwise provided in the conditional receipt, if issued, with the same Proposed Insured as on this application, any contract issued on this application shall not take effect until after all of the following conditions have been met: (a) the full first premium is paid, (b) the Owner has personally received the contract during the lifetime of and while the Proposed Insured is in good health, and (c) all of the statements and answers given in this application must be true and complete as of the date of Owner's personal receipt of the contract and that the contract will not take effect if the facts have changed; (3) no waiver or modification shall be binding upon Transamerica Life Insurance Company (the Company) unless in writing and signed by the President or a Vice President and the Secretary or an Assistant Secretary.

I/we understand that omissions or misstatements in this application could cause an otherwise valid claim to be denied under any contract issued from this application.

APA401008TPA



Bianca Rudolph  42728878

## NOTICE TO CONSUMER

The death benefit on many business related life insurance policies will be taxable to you under Section 101(j) of the Internal Revenue Code to the extent it exceeds the premiums and other considerations paid by you for the policy unless the written Notice and Consent is obtained **prior to policy issue** and certain other requirements of such section are met. These policies are often referred to as Employer-Owned Life Insurance Policies but can also include policies owned by others such as affiliates and business owners.

You are advised to consult with your qualified tax advisor prior to purchasing this policy.

## AUTHORIZATION TO OBTAIN INFORMATION

Transamerica Life Insurance Company (the Company)

**I, the Proposed Insured, hereby authorize** any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insuring or reinsuring company, the MIB Group, Inc. and its members or affiliates, consumer reporting agency, or employer having information available as to testing, diagnosis, treatment and prognosis with respect to any physical or mental condition (for example: coronary disease; cancer; Human Immunodeficiency Virus (HIV) related test results or disorders; metabolic, pulmonary, or neurological disorders) and/or treatment of me or my minor children and any other non-medical information of me or my minor children to give to the Company or its legal representative, any and all such information.

**I understand** the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing contract. Any information obtained will not be released by the Company to any person or organization **except** to reinsuring companies, the MIB Group, Inc. and its members or affiliates, or other persons or organizations performing business or legal services in connection with my application, claim or as may be otherwise lawfully required or as I may authorize.

**I know** that I may request to receive a copy of this Authorization. **I agree** that a photocopy of this Authorization shall be as valid as the original. I agree this Authorization shall be valid for two and one half years from the date shown below, regardless of my condition and whether I am living or not.

**I acknowledge** receipt of the Notice of Disclosure of Information. **I understand** that if an investigative consumer report is ordered in connection with this application, I may elect to be interviewed in connection with the preparation of the report and, upon request, I will be provided with a copy of the report. I elect to be interviewed if an investigative consumer report is prepared. ☐ Yes  ☐ No

**PLEASE MAKE CHECKS PAYABLE TO THE COMPANY. DO NOT MAKE CHECKS PAYABLE TO THE AGENT OR LEAVE PAYEE SPACE BLANK.**

Amount paid with this Application $ _____ ☐ Check # _____ ☐ Credit Card (Complete Credit Card Order Confirmation Form)

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Signed at _Greensburg PA_ on _9-27-10_ ,
City-State                          Date

X _Bianca Rudolph_          X _____
Signature of Proposed Insured (or parent or guardian if Proposed Insured is a minor)      Witness to Signature of Proposed Insured

Signed at _____ on _____
City-State                          Date

X _____          X _Wyman K_
Signature of Owner (if other than Proposed Insured)      Witness to Signature of Owner

If Owner is a Corporation, an authorized officer, other than the Proposed Insured must sign as Owner, give corporate title and full name of corporation below.

_____
_____          X _Wyman K Aym_
                         Signature of Licensed Producer

APA4010Q8TPA

Bianca Rudolph  42728878

# TRANSAMERICA
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

GA # _____

**Application Part 2**
**Non-Medical Health History**
File # _____

| 1. Proposed Insured: *(Print Full Name)* | 2. Date of Birth: Month 12 Day 4 Year 59 | 3. Social Security # 191403104 |
|---|---|---|

**4. Name/Address/Phone of primary care physician:**

Name: Dr Michael Lipinetti          Address: 3311 Main St

Phone: 412 920 8175          City/St/Zip: Munhall PA 15120

Date and reason for last visit: 11-2-09 annual checkup next appt 11-27-10

**5. Height:** 5ft 4 in          **Weight:** 160

Give complete details of all yes answers to questions 6 - 9, including but not limited to all dates, diagnoses, duration, outcome, treatments and medications prescribed and the names and addresses of all hospitals, attending physicians, health care providers and clinics. If additional space is required, attach sheet(s) of paper - signed, dated and witnessed.

**6. HAVE YOU EVER HAD, BEEN TOLD BY A MEMBER OF THE MEDICAL PROFESSION THAT YOU HAVE, OR BEEN DIAGNOSED WITH OR TREATED FOR:**

Details:

| | Yes | No |
|---|---|---|
| a. Seizure, fainting, stroke, loss of consciousness, tremor, paralysis, multiple sclerosis, epilepsy, or any disease or abnormality of the brain? | ☐ | ☒ |
| b. High blood pressure, heart attack, murmur, palpitation, or anemia or any disease or abnormality of the heart, blood vessels or blood? | ☐ | ☒ |
| c. Asthma, chronic bronchitis, pneumonia, emphysema, tuberculosis or any disease or abnormality of the lungs, bronchial tubes or respiratory system? | ☐ | ☒ |
| d. Ulcer, colitis, hepatitis, cirrhosis, or any disease or abnormality of the esophagus, stomach, intestines, rectum, gallbladder or liver? | ☐ | ☒ |
| e. Sugar, protein or blood in urine, sexually transmitted disease, stone or any disease or abnormality of the kidney, bladder, prostate, breasts, ovaries or reproductive system? | ☐ | ☒ |
| f. Diabetes or any disease or abnormality of the thyroid, adrenal, pituitary or other glands? | ☐ | ☒ |
| g. Arthritis, gout, connective tissue disease, back trouble or any disease or abnormality of the joints, muscles or bones? | ☐ | ☒ |
| h. Any disease or abnormality of the eyes, ears, nose, throat or skin? | ☐ | ☐ |
| i. Cancer, tumor, polyp or cyst? | ☒ | ☐ |
| j. Any physical deformity or amputation? | ☐ | ☒ |
| k. Anxiety, depression, suicide attempt or any psychiatric, mental or emotional condition or disorder? | ☐ | ☒ |
| l. Any immune deficiency disorder, Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), Human Immunodeficiency Virus (HIV), or tested positive on HIV antibody tests on blood, serum, urine or oral fluid, including Rapid HIV Antibody Screening Test and Home-Use HIV test kits or HIV viral testing as done by PCR or nucleotide testing? | ☐ | ☒ |

*I wear glasses/contacts*
*benign ovarian cyst 1999 -2000*

**7.**

| | Yes | No |
|---|---|---|
| a. Within the past ten years, have you ever used sedatives, amphetamines, barbiturates, morphine, cocaine/crack, methamphetamine, Ecstacy (MDMA), heroin, marijuana, LSD, PCP, any hallucinogenic drug or narcotic drug except as prescribed by a physician? | ☐ | ☒ |
| b. Have you ever been treated or counseled or been advised to seek treatment or counseling for the use of alcohol, drugs or other substance or joined an organization for alcohol or drug dependence or abuse? | ☐ | ☒ |

**8. OTHER THAN WHAT YOU HAVE ALREADY DISCLOSED, WITHIN THE PAST FIVE YEARS HAVE YOU:**

| | Yes | No |
|---|---|---|
| a. Consulted, been examined or been treated by any physician or practitioner? | ☐ | ☒ |
| b. Had or been advised to have an X-ray, electrocardiogram, laboratory test or other diagnostic study? | ☒ | ☐ |
| c. Had observation or treatment at a clinic, hospital or other medical facility? | ☒ | ☐ |
| d. Had or been advised to have a surgical procedure? | ☒ | ☐ |
| e. Had dizziness, shortness of breath, pain or pressure in the chest, or persistent fever? | ☐ | ☒ |
| f. Had any injury requiring treatment? | ☐ | ☒ |

*sonogram & subsequent core biopsy for mild dysplasia results benign 1-05*

**NON-MEDICAL**

MPN11008TPA          Page 1 of 2          TG

Bianca Rudolph   *427288878*

Application Part 2 Continued                                                      File # _____

9.
                                                                                                    Yes  No   *mother died of colon cancer*
a. Have any of your parents, brothers, sisters, or grandparents ever had cancer,                            *father had prostate cancer*
   diabetes, heart disease, mental illness or attempted suicide? .................................... ☒  ☐
b. Has your weight changed by more than 15 pounds in the past year? .......................... ☐  ☒
c. Has any application for life, health, disability or long term care insurance been
   declined, withdrawn, postponed, rated, modified, issued with exclusion rider,
   cancelled or non-renewed? ................... ............................................................... ☒  ☐
d. Are you now pregnant? ............................................................................................. ☐  ☒

10. OTHER THAN THOSE ALREADY DISCLOSED, ARE YOU CURRENTLY TAKING ANY PRESCRIPTION, VITAMIN,
    SUPPLEMENT OR OVER-THE-COUNTER MEDICATION?   ☐ Yes  ☒ No  *If yes, list all and indicate why.*

11. FAMILY RECORD: Show age and present health, or if deceased, show age at death and cause of death.

| | Age if Living | Present Health | Age at Death | Cause of Death |
|---|---|---|---|---|
| Father | 85 | Fair | | |
| Mother | (deceased) | | 58 | colon cancer |
| Brothers # 2 | 56 54 | both healthy | | |
| Sisters # 0 | | | | |

12. WITHIN THE PAST FIVE YEARS HAVE YOU USED NICOTINE IN ANY FORM? ☐ Yes ☒ No  *If yes, indicate type,*
    *frequency and date last used.* _____

13. FOR THE LAST 180 DAYS, HAVE YOU BEEN ACTIVELY AT WORK ON A FULL TIME BASIS AT YOUR USUAL
    PLACE OF BUSINESS OR EMPLOYMENT?   ☒ Yes  ☐ No   *If no, provide complete details.*
    *Part-time work mostly from my home*

14. Do you participate in regular weekly exercise? ............................................... ☒ Yes  ☐ No
15. Do you participate in athletics (Team or Individual)? .................................... ☐ Yes  ☒ No
16. Have you ever used any tobacco products? ................................................... ☐ Yes  ☒ No
17. Do you get regular examinations by your health care provider? ................... ☒ Yes  ☐ No  *gynecological*
18. Do you get regular annual dental checkups? ................................................. ☒ Yes  ☐ No
19. Do you clean your house or do yard work? .................................................... ☒ Yes  ☐ No
20. Do you have a pet? ..................................................................................... ☐ Yes  ☒ No
21. Are you a member of a social group or volunteer for charity work? .............. ☒ Yes  ☐ No

It is represented that the statements and answers given above are true, complete, and correctly recorded. To the extent allowed
by law, I waive my rights to prevent disclosure of any knowledge or information about the above questions. This waiver applies to
any health care provider, physician, hospital, official or employee, or other person who has attended or examined me, or who has
been consulted by me. I authorize such person(s) to make such disclosures. Such person(s) may also testify to their knowledge.
This authorization is made on behalf of myself and any person who shall have or claim any interest in any contract of insurance
issued on this application.

Signed at (City/State) _Greensburg_    PA      on  _Sept 25, 2010_

                                                        _____
                                                        Signature of Proposed Insured

AGENT'S STATEMENT: I certify that I have truly and
accurately recorded on this form the information supplied
by the Proposed Insured.

X _____            _____
Signature of Witness/Agent/Registered Representative      Print name of Proposed Insured

                            NON-MEDICAL
MPN11008TPA                 Page 2 of 2

Bianca Rudolph 42 72 88 78



**TRANSAMERICA**
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

**Application Supplement
Residency & Travel
Questionnaire**

1. Proposed Insured: _Bianca Rudolph_  2. Social Security No.: _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_
3. Date of Entry to USA: _____  4. Place of Birth: _Pittsburgh PA_  5. Date of Birth: _12-4-59_
6. Country of Citizenship _US citizen_ _____ (if U.S. Citizen, skip to 12.)
7. Do you possess an Alien Registration Receipt, "Green Card"? ☐ Yes ☐ No
8. Type of Visa (see listing of Visa types): _____
9. Visa Expiration Date: _____
10. Do you own assets or property outside the U.S.? (List) _____
11. Do you own assets or property inside the U.S.? (List) _____
12. Length of time with present employer: _2 years_
13. Do you plan to (travel) or reside outside of the U.S.? ☒ Yes ☐ No
   If yes, please provide details.

| | Next 12 Months | | | |
|---|---|---|---|---|
| **Destination(s)** | Zambia guided safari | Spain/England guided tour | Slovakia company trip at mt htly | Johannesburg SA guided tour & spouse at meeting |
| **Date(s)** | 9-24-10 to 10-15-10 | 9-20-10 to 10-27-10 | 12-2-10 to 12-6-10 | guided tour & spouse 11-10-10 to 11-18-10 |
| **Duration of Stay** | 2 weeks | 1 week | 5 days | 2 weeks |
| **How Often** | once | once | annual | once |

14. Remarks: _I'm an avid traveler, usually with a guided tour_
   _and always with a guide outside the USA or Europe._

**Visa Types**

| | | | |
|---|---|---|---|
| A: | Government Official | I: | Information Media Rep. |
| B1: | Visitor/Business | J: | USIA Education/Cultural Exchange |
| B2: | Visitor/Medical Treatment | K1: | Fiancée/Fiancé |
| C: | Transit | L: | Intra-Company Transfer |
| D: | Crewman | M: | Vocational/Non-Academic Studies |
| E1: | Treaty Trader | O1-2: | Science/Art |
| E2: | Treaty Investor | P1-3: | Athletes, Artists, Entertainers |
| E3-5: | Misc. Employment Visas | Q1: | INS Int'l Cultural Exchange |
| F1-4: | Family Based/Academic Studies | R: | Non-Immigrant Religious |
| G: | Representative to International Organization | SB-1: | Returning Resident Alien |
| H1-B: | Temporary Worker - Distinguished Merit/Ability | SD: | Immigrant - Religious |
| H-2A/B: Temporary Worker - General Labor | TN: | NAFTA Professionals |
| H-3: | Temporary Worker - Trainee | | Other Category: _____ |

It is represented that the statements and answers given in this supplement to the application are true, complete and correctly
recorded. It is agreed that this supplement shall be a part of the application to the Company for insurance on the life of the
Proposed Insured.

Signed at _Greensburg PA_  on _5/25.2010_

_____     _____
Witness                      Proposed Insured

**AGREEMENT OF OWNER IF OTHER THAN PROPOSED INSURED**
The Owner agrees to be bound by all statements, answers, and agreements made by the Proposed Insured in this supplement to
the application. If the Owner is a corporation, an authorized officer, other than the Proposed Insured, must sign as Owner, giving
corporate title and full name of corporation.

Signed at _____  on _____

_____     _____
Witness                      Owner

Corporate Title: _____     Corporation Name: _____

MPQ1610ssT                                                           TG

Bianca Rudolph #42728878

# American General
Life Companies

**Life Insurance Application**
**Part B**
**Pennsylvania Version**

☒ American General Life Insurance Company, Houston, TX
☐ The United States Life Insurance Company in the City of New York, New York, NY
☐ AIG Life Insurance Company, Wilmington, DE
*Subsidiaries of American International Group, Inc.*

The insurance company checked above ("Company") is responsible for the obligation and payment of benefits under any policy that it may issue. No other company is responsible for such obligations or payments.

| Personal Information |
| --- |

1. Proposed Insured *(Complete separate Part B for each Proposed Insured)*

Name *Bianca T Rudolph*        Date of Birth *12-4-1959* Social Security # *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*

| Medical History |
| --- |

*(Instructions: Please answer ALL medical history questions. Do not leave any questions blank.)*

2. **Physician Information**

   Name, address and phone number of the Proposed Insured's personal physician(s). *(If no personal physician, provide name, address and phone number of doctor last seen.)*

   Name *Michael Lupinetti, MD*        Phone *(412) 854-3121*
   Address *1300 Oxford Dn*    City, State *Bethel Park, PA*    ZIP *15102*
   Date, reason, findings and treatment at last visit *Fall 2008   Yearly Gyno - includes*
   *PAP + Mammogram - All Normal*

3. **Build**

   A. Admitted Height and Weight ___*5*___ ft. __*4*__ in. __*162*__ lbs
   *(Examiners: Also record measured height and weight on Exam page 1.)*

   B. Has the Proposed Insured had any weight change in excess of 10 lbs. in the past year? ☐ yes ☒ no  If yes, complete the following:
   Loss _____ lbs  Gain _____ lbs. Reason _____

4. **Family History**

| | Age if Living | Age at Death | Cause of Death | History of Heart Disease? | | History of Cancer? | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Father | 85 | | | ☐ No ☒ Yes 67 _Age of Onset_ | | ☐ No ☒ Yes 67 _Age of Onset_ | Type _prostate_ | |
| Mother | | 58 | | ☒ No ☐ Yes _Age of Onset_ | | ☐ No ☒ Yes 53 _Age of Onset_ | Type _Colon_ | |
| Brother ② 53 | | | | ☒ No ☐ Yes _Age of Onset_ | | ☒ No ☐ Yes _Age of Onset_ | Type | |
| Brother 55 | | | | ☒ No ☐ Yes _Age of Onset_ | | ☒ No ☐ Yes _Age of Onset_ | Type | |
| Sister 0 | | | | ☐ No ☐ Yes _Age of Onset_ | | ☐ No ☐ Yes _Age of Onset_ | Type | |
| Sister | | | | ☐ No ☐ Yes _Age of Onset_ | | ☐ No ☐ Yes _Age of Onset_ | Type | |

AGLC100565 PA-2008          Page 1 of 4

Bianca Rudolph #42728878

**5. Personal Health History**

**A.** Has the Proposed Insured ever been diagnosed as having, been treated for, or consulted a licensed health care provider for:

1) heart disease, heart attack, chest pain, irregular heartbeat, heart murmur, high cholesterol, high blood pressure or other disorder of the heart?  ☐ yes  ☒ no

2) a blood clot, aneurysm, stroke, or other disease, disorder or blockage of the arteries or veins?  ☐ yes  ☒ no

3) cancer, tumors, masses, cysts or other such abnormalities?  ☒ yes  ☐ no

4) diabetes, a disorder of the thyroid or other glands or a disorder of the immune system, blood or lymphatic system?  ☐ yes  ☒ no

5) colitis, hepatitis or a disorder of the esophagus, stomach, liver, pancreas, gall bladder or intestine?  ☐ yes  ☒ no

6) a disorder of the kidneys, bladder, prostate or reproductive organs, or sugar or protein in the urine?  ☒ yes  ☐ no

7) asthma, bronchitis, emphysema, sleep apnea or other breathing or lung disorder?  ☐ yes  ☒ no

8) seizures, a disorder of the brain or spinal cord or other nervous system abnormality, including a mental or nervous disorder?  ☐ yes  ☒ no

9) arthritis, muscle disorders, connective tissue disease or other bone or joint disorders?  ☐ yes  ☒ no

*(If yes, list condition and provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*

Details _5 A 3   BENIGN OVARIAN CYST - REMOVED 1988 AND 1999 -_
_NO RECURRENCE - FULL RECOVERY_
_MICHAEL LIBINETTI, MD    412-854-3121_
_1300 Oxford Dr.    BETHEL PARK, PA 15102_
_5 A 6  DYSPLASIA - REMOVED 2005 : SCRAPED BIOPSIED - ALL NORMAL/-_
_NO FURTHER TREATMENT. FULL RECOVERY - NO RECURRENCE_
_DR LUPINETTI (ABOVE)_

**B.** Is the Proposed Insured currently taking any medication, treatment or therapy or under medical observation?  ☐ yes  ☒ no

*(If yes, provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*
Details _____

**C.** Has the Proposed Insured in the past three years had but NOT sought treatment for:

1) fainting spells, nervous disorder, headaches, convulsions or paralysis?  ☐ yes  ☒ no

2) any pain or discomfort in the chest or shortness of breath?  ☐ yes  ☒ no

3) disorders of the stomach, intestines or rectum, or blood in the urine?  ☐ yes  ☒ no

*(If yes, list condition such as: date of first occurence; symptoms; and how treated.)*
Details _____

**D.** Has the Proposed Insured ever:

1) sought or received advice, counseling or treatment by a medical professional for the use of alcohol or drugs, including prescription drugs?  ☐ yes  ☒ no

2) used cocaine, marijuana, heroin, controlled substances or any other drug, except as legally prescribed by a physician?  ☐ yes  ☒ no

*(If yes answered to D1 or D2, please provide details below.)*

Type of drug(s)/alcohol product(s) _____  Date last used _____

Name(s) of doctor/facility _____  Phone ( ) _____

Address _____  City, State _____  ZIP. _____

Treatment Dates _____  _____

Support group(s) _____  Last date attended _____

Details of any drug or alcohol related arrests _____

Bianca Rudolph #42728878

5. **Personal Health History** *(continued)*

E. Has the Proposed Insured ever been diagnosed as having or been treated by any member of the medical profession for AIDS Related Complex (ARC) or Acquired Immune Deficiency Syndrome (AIDS)?    ☐yes  ☒no

*(If yes, provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*
Details _____
_____
_____

F. Other than previously stated, in the past 10 years, has the Proposed Insured:

1) been hospitalized, consulted a health care provider or had any illness, injury or surgery?    ☒yes  ☐no

*(If yes, provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*
Details
_____ 5 F1  SCREENING Colonscopy - Appox 2006 - ALL
_____ NORMAL
_____ William PROVANCE MD    724-532-2801
_____ 443 Frye Farm Road, Greensburg, PA 15601
_____
_____
_____

2) been advised to have any diagnostic test, hospitalization or treatment that was NOT completed?    ☐yes  ☒no

*(If yes, provide details such as: date of first diagnosis; name, address, and phone number of doctor; recommended tests, medications or treatment.)*
Details _____
_____
_____
_____

3) received or claimed disability or hospital indemnity benefits or a pension for any injury, sickness, disability or impaired condition?    ☐yes  ☒no

*(If yes, list condition and provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*
Details _____
_____
_____

G. Has the Proposed Insured been treated for or diagnosed with any other condition that is NOT disclosed above?    ☐yes  ☒no

*(If yes, provide details such as: date of first diagnosis; name, address, and phone number of doctor; tests performed; test results; medications or recommended treatment.)*
Details _____
_____
_____
_____
_____

Bianca Rudolph #42728878

## Agreement and Signatures

I, the Proposed Insured signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related attachments including supplement(s) and addendum(s); and (2) shall be the basis for any policy and any rider(s) issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period.

Except as may be provided in any Limited Temporary Life Insurance Agreement, I understand and agree that even if I paid a premium no insurance will be in effect under this application, or under any new policy or any rider(s) issued by the Company, unless or until all three of the following conditions are met: (1) the policy has been delivered and accepted; and (2) the full first modal premium for the issued policy has been paid; and (3) there has been no change in the health of the Proposed Insured(s) that would change the answers to any questions in the application before items (1) and (2) in this paragraph have occurred. I understand and agree that if all three conditions above are not met: (1) no insurance will begin in effect; and (2) the Company's liability will be limited to a refund of any premiums paid, regardless of whether loss occurs before premiums are refunded.

I understand and agree that no agent is authorized to: accept risks or pass upon insurability, make or modify contracts; or waive any of the Company's rights or requirements.

I have received a copy or have been read the Notices to the Proposed Insured(s).

**Fraud**

Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim, containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

SIGNATURE OF PROPOSED INSURED

Signed at (city, state) _____ GREENSBURG, PA _____    On (date) _8-7-2010_

X _____
Proposed Insured (If under age 18, signature of parent or guardian)

SIGNATURE(S) OF INTERVIEWER(S) – TO BE SIGNED BY ALL INTERVIEWERS, AS APPLICABLE

I certify that the information supplied by the Proposed Insured has been truthfully and accurately recorded on the Part B application

If Agent recorded information

| Writing Agent Name (Please print) | Writing Agent # | Date |

X _____     X _____
Writing Agent Signature          Countersigned (Licensed resident agent if state required)

If Tele-interviewer recorded information

| Name (Please print) | Company | Date |

If Paramedical Examiner/Medical Doctor recorded information
SUPERIOR MOBILE MEDICS
Examiner's Address _____ P O BOX 639014
San Diego, CA 92163-9014
Examiner's Phone # (___) ___  619-299-3926

Examiner's Name _STELLA A CRABLE, CPT_

Paramed: Use company stamp below.

SUPERIOR MOBILE MEDICS
PO Box 639014
San Diego, CA 92163-9014
800-898-3926

Examiner's Signature
X _Stella A Crable, CPT_  Date _8-7-2010_



**LIFE INSURANCE COMPANY**
Life Insured: **Bianca Rudolph**

Transamerica Life Insurance Company
Home Office: Cedar Rapids, IA

**APPLICATION AMENDMENT**

The Application for Policy No.    42728878    is amended as follows:

Application Part I Question 1 – Plan applied for: Trendsetter Super 10 Standard Non Smoker
Application Part I Question 4 – Amount applied for: $500,000
Application Part I Question 9: Issued as not replacing Transamerica policy 42186233

I/We declare that I/we have, in an identical manner, completed and signed the copy of this amendment that is attached to and made part of the Policy/Certificate issued by the Company.

It is agreed that this amendment shall be part of the application for the policy.

Signed at_____ on _____
                                                                                                                    Date

_____
Signature of Proposed Insured

_____
Signature of Owner
(Officer signature other than Proposed Insured,
if owner is a corporation)

_____
Signature of Other Proposed Insured

_____
Witness (can be Licensed Producer)

_____
Signature of Licensed Producer

APE 1-1008

Transamerica Life
Insurance Company
Home Office: Cedar Rapids, IA  52499
Marketing Office: Los Angeles, CA  90015
Administrative Office: 4333 Edgewood Rd NE
Cedar Rapids, IA 52499

**Policy Form  TS10NI**
Individual Life Insurance

**Renewable Term Insurance to the Policy Anniversary Following Insured's Actual Age 105**
**Level Death Benefit Payable at Death Before**
**the Policy Anniversary Following Insured's Actual Age 105**

**See Schedule of Guaranteed Maximum**
**Premiums in the Policy Data for Amount of Premiums**

**Premiums Payable During Life of Insured to the**
**Policy Anniversary Following Insured's Actual Age 105**

**Premiums are Subject to Change as Stated**
**in Change of Premiums Provision, But Will Not**
**Exceed Specified Guaranteed Maximum Premiums**

**Nonparticipating - No Dividends**

1-306 44-107



Transamerica Life Insurance Company
4333 Edgewood Road NE
Cedar Rapids, IA 52499

July 29, 2016

Bianca Rudolph
4141 E Lakeside Ln
Paradise Valley, AZ 85253-2826

Policy Number:  42728878
Insured(s):      Bianca Rudolph

Dear Mrs Rudolph:

We received your requested change and have recorded it as submitted.

Our records have been revised to read as follows:

Primary Beneficiary(ies): Rudolph Trust dated April 25, 2016 100%

Contingent Beneficiary(ies): Lawrence P Rudolph 100%

Legal Disclaimer:  Such recording does not mean we have passed on the legal adequacy or
validity of the documentation and/or transaction.  Please consult your own legal or tax advisor
for any such determination.

We appreciate your business and this opportunity to be of service to you.  If you have any
questions or need additional assistance, please contact the Customer Service Department at 1-
800-852-4678.

Thank you for choosing Transamerica!

Customer Service Department
Fax 1-866-622-5051
tii.customerservice@transamerica.com

cc:    E Financial Llc 15138
Agin, Norman R 1205838

Bianca Rudolph

**TRANSAMERICA**
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

GA # _____

**Application Part 2**
**Non-Medical Health History**
File # _____

| 1. **Proposed Insured:** *(Print Full Name)* | 2. **Date of Birth:** Month 12 Day 4 Year 59 | 3. **Social Security #** 191 403104 |
|---|---|---|

4. **Name/Address/Phone of primary care physician:**

Name: Dr Michael Lupinetti   Address: 3311 Main St

Phone: 412 920 8175   City/St/Zip: Munhall PA 15120

Date and reason for last visit: 11-2-09 annual checkup  next appt 11-27-10

5. **Height:** 5 ft 4 in   **Weight:** 160

Give complete details of all yes answers to questions 6 - 9, including but not limited to all dates, diagnoses, duration, outcome, treatments and medications prescribed and the names and addresses of all hospitals, attending physicians, health care providers and clinics. If additional space is required, attach sheet(s) of paper - **signed, dated and witnessed.**

| 6. **HAVE YOU EVER HAD, BEEN TOLD BY A MEMBER OF THE MEDICAL PROFESSION THAT YOU HAVE, OR BEEN DIAGNOSED WITH OR TREATED FOR:** | Yes | No | Details: |
|---|---|---|---|
| a. Seizure, fainting, stroke, loss of consciousness, tremor, paralysis, multiple sclerosis, epilepsy, or any disease or abnormality of the brain? | ☐ | ☒ | |
| b. High blood pressure, heart attack, murmur, palpitation, or anemia or any disease or abnormality of the heart, blood vessels or blood? | ☐ | ☒ | |
| c. Asthma, chronic bronchitis, pneumonia, emphysema, tuberculosis or any disease or abnormality of the lungs, bronchial tubes or respiratory system? | ☐ | ☒ | |
| d. Ulcer, colitis, hepatitis, cirrhosis, or any disease or abnormality of the esophagus, stomach, intestines, rectum, gallbladder or liver? | ☐ | ☒ | |
| e. Sugar, protein or blood in urine, sexually transmitted disease, stone or any disease or abnormality of the kidney, bladder, prostate, breasts, ovaries or reproductive system? | ☐ | ☒ | |
| f. Diabetes or any disease or abnormality of the thyroid, adrenal, pituitary or other glands? | ☐ | ☒ | |
| g. Arthritis, gout, connective tissue disease, back trouble or any disease or abnormality of the joints, muscles or bones? | ☐ | ☒ | |
| h. Any disease or abnormality of the eyes, ears, nose, throat or skin? | ☐ | ☐ | I wear glasses/contacts |
| i. Cancer, tumor, polyp or cyst? | ☒ | ☐ | benign ovarian cyst 1999 & 2000 |
| j. Any physical deformity or amputation? | ☐ | ☒ | |
| k. Anxiety, depression, suicide attempt or any psychiatric, mental or emotional condition or disorder? | ☐ | ☒ | |
| l. Any immune deficiency disorder, Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), Human Immunodeficiency Virus (HIV), or tested positive on HIV antibody tests on blood, serum, urine or oral fluid, including Rapid HIV Antibody Screening Test and Home-Use HIV test kits or HIV viral testing as done by PCR or nucleotide testing? | ☐ | ☒ | |

| 7. | Yes | No | |
|---|---|---|---|
| a. Within the past ten years, have you ever used sedatives, amphetamines, barbiturates, morphine, cocaine/crack, methamphetamine, Ecstacy (MDMA), heroin, marijuana, LSD, PCP, any hallucinogenic drug or narcotic drug except as prescribed by a physician? | ☐ | ☒ | |
| b. Have you ever been treated or counseled or been advised to seek treatment or counseling for the use of alcohol, drugs or other substance or joined an organization for alcohol or drug dependence or abuse? | ☐ | ☒ | |

| 8. **OTHER THAN WHAT YOU HAVE ALREADY DISCLOSED, WITHIN THE PAST FIVE YEARS HAVE YOU:** | Yes | No | |
|---|---|---|---|
| a. Consulted, been examined or been treated by any physician or practitioner? | ☐ | ☒ | sonogram & subsequent colposcopy for mild dysplasia results benign 1-05 |
| b. Had or been advised to have an X-ray, electrocardiogram, laboratory test or other diagnostic study? | ☐ | ☐ | |
| c. Had observation or treatment at a clinic, hospital or other medical facility? | ☐ | ☐ | |
| d. Had or been advised to have a surgical procedure? | ☐ | ☐ | |
| e. Had dizziness, shortness of breath, pain or pressure in the chest, or persistent fever? | ☐ | ☒ | |
| f. Had any injury requiring treatment? | ☐ | ☒ | |

**NON-MEDICAL**

MPN11008TPA

Page 1 of 2

* D T 0 3 8 *

TG

Bianca Rudolph

Application Part 2 Continued                                                    File # _____

9.
a. Have any of your parents, brothers, sisters, or grandparents ever had cancer,      **Yes No**    mother died colon cancer
   diabetes, heart disease, mental illness or attempted suicide? ..............................  ☒ ☐    father had prostate cancer
b. Has your weight changed by more than 15 pounds in the past year? ...................  ☐ ☒
c. Has any application for life, health, disability or long term care insurance been
   declined, withdrawn, postponed, rated, modified, issued with exclusion rider,
   cancelled or non-renewed? ................................................................................  ☒ ☐
d. Are you now pregnant? ..........................................................................................  ☐ ☒

10. **OTHER THAN THOSE ALREADY DISCLOSED, ARE YOU CURRENTLY TAKING ANY PRESCRIPTION, VITAMIN,
    SUPPLEMENT OR OVER-THE-COUNTER MEDICATION?**    ☐ Yes  ☒ No  *If yes, list all and indicate why.*

_____

11. **FAMILY RECORD:**  Show age and present health, or if deceased, show age at death and cause of death.

|              | Age if Living | Present Health | Age at Death | Cause of Death |
|--------------|---------------|----------------|--------------|----------------|
| Father       | 85            | Fair           |              |                |
| Mother       | (deceased)    |                | 53           | colon cancer   |
| Brothers # 2 | 56 & 54       | both healthy   |              |                |
| Sisters # 2  |               |                |              |                |

12. **WITHIN THE PAST FIVE YEARS HAVE YOU USED NICOTINE IN ANY FORM?**  ☐ Yes  ☒ No  *If yes, indicate type,*
    *frequency and date last used.* _____

13. **FOR THE LAST 180 DAYS, HAVE YOU BEEN ACTIVELY AT WORK ON A FULL TIME BASIS AT YOUR  USUAL
    PLACE OF BUSINESS OR EMPLOYMENT?**   ☒ Yes  ☐ No  *If no, provide complete details.*
    _____ Part-time work mostly from my home

14. Do you participate in regular weekly exercise? .............................................  ☒ Yes  ☐ No
15. Do you participate in athletics *(Team or Individual)*? ....................................  ☐ Yes  ☒ No
16. Have you ever used any tobacco products? .................................................  ☐ Yes  ☒ No
17. Do you get regular examinations by your health care provider? ...................  ☒ Yes  ☐ No gynecological
18. Do you get regular annual dental checkups? ...............................................  ☒ Yes  ☐ No
19. Do you clean your house or do yard work? ..................................................  ☒ Yes  ☐ No
20. Do you have a pet? ....................................................................................  ☐ Yes  ☒ No
21. Are you a member of a social group or volunteer for charity work? ..............  ☒ Yes  ☐ No

It is represented that the statements and answers given above are true, complete, and correctly recorded.  To the extent allowed by law, I waive my rights to prevent disclosure of any knowledge or information about the above questions.  This waiver applies to any health care provider, physician, hospital, official or employee, or other person who has attended or examined me, or who has been consulted by me.  I authorize such person(s) to make such disclosures.  Such person(s) may also testify to their knowledge. This authorization is made on behalf of myself and any person who shall have or claim any interest in any contract of insurance issued on this application.

Signed at (City/State) _____ Greensburg _____ PA _____    on _____ Sept 25, 2016 _____

                                                                                    _____
                                                                                    Signature of Proposed Insured                    a

**AGENT'S STATEMENT:** I certify that I have truly and
accurately recorded on this form the information supplied
by the Proposed Insured.

X _____              _____
Signature of Witness/Agent/Registered Representative        Print name of Proposed Insured

**NON-MEDICAL**
MPN11C08TPA

Bianca Rudolph

**TRANSAMERICA**
LIFE INSURANCE COMPANY

Transamerica Life Insurance Company
Home Office: 4333 Edgewood Road NE
Cedar Rapids, IA 52499

**Application Supplement**
**Residency & Travel**
**Questionnaire**

1. Proposed Insured: Bianca Rudolph   2.Social Security No.: 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
3. Date of Entry to USA: _____   4.Place of Birth: Pittsburgh PA   5. Date of Birth: 12-4-59
6. Country of Citizenship: US Citizen   (if U.S. Citizen, skip to 12.)
7. Do you possess an Alien Registration Receipt, "Green Card"? ☐ Yes ☐ No
8. Type of Visa (see listing of Visa types): _____
9. Visa Expiration Date: _____
10. Do you own assets or property outside the U.S.? (List) _____
11. Do you own assets or property inside the U.S.? (List) _____
12. Length of time with present employer: 2 years
13. Do you plan to travel or reside outside of the U.S.? ☒Yes ☐No
     If yes, please provide details.

| | | Next 12 Months | | |
|---|---|---|---|---|
| **Destination(s)** | Zambia Guided safari | Spain/England guided tour | Slovakia accompany spouse at meeting | Johannesburg SA Vic Falls Zimbabwe guided tour 3 spouse at meeting |
| **Date(s)** | 9-24-10 to 10-15-10 | 10-20-10 to 10-27-10 | 12-2-10 to 12-6-10 | 11-6-10 to 11-14-10 |
| **Duration of Stay** | 2 weeks | 1 week | 5 days | 3 weeks |
| **How Often** | once | once | annual | once |

14.Remarks: I'm an avid traveler, usually with a guided tour
and always with a guide outside the USA or Europe

Visa Types

| | | | | |
|---|---|---|---|---|
| **A:** | Government Official | **I:** | Information Media Rep. |
| **B1:** | Visitor/Business | **J:** | USIA Education/Cultural Exchange |
| **B2:** | Visitor/Medical Treatment | **K1:** | Fiancée/Fiancé |
| **C:** | Transit | **L:** | Intra-Company Transfer |
| **D:** | Crewman | **M:** | Vocational/Non-Academic Studies |
| **E1:** | Treaty Trader | **O1-2:** | Science/Art |
| **E2:** | Treaty Investor | **P1-3:** | Athletes, Artists, Entertainers |
| **E3-5:** | Misc. Employment Visas | **Q1:** | INS Int'l Cultural Exchange |
| **F1-4:** | Family Based/Academic Studies | **R:** | Non-Immigrant Religious |
| **G:** | Representative to International Organization | **SB-1:** | Returning Resident Alien |
| **H1-B:** | Temporary Worker - Distinguished Merit/Ability | **SD:** | Immigrant - Religious |
| **H-2A/B:** | Temporary Worker - General Labor | **TN:** | NAFTA Professionals |
| **H-3:** | Temporary Worker - Trainee | | Other Category: _____ |

* D T 0 3 9 *

It is represented that the statements and answers given in this supplement to the application are true, complete and correctly recorded. It is agreed that this supplement shall be a part of the application to the Company for insurance on the life of the Proposed Insured.

Signed at ____Greensburg PA____   on ____SO125.2010____

_____   _____
Witness   Proposed Insured

AGREEMENT OF OWNER IF OTHER THAN PROPOSED INSURED

The Owner agrees to be bound by all statements, answers, and agreements made by the Proposed Insured in this supplement to the application. If the Owner is a corporation, an authorized officer, other than the Proposed Insured, must sign as Owner, giving corporate title and full name of corporation.

Signed at _____   on _____

_____   _____
Witness   Owner

Corporate Title:_____   Corporation Name: _____
MPQ161008T   TG

Bianca Rudolph
336 Lakewood Rd.
Greensburg, PA  15601-9769

Policy Number: 42186233

C0510-RP
AG-10

Amount of term insurance requested: $_____, Level Term for 10 years.
( $100,000 to $5,000,000 )

Telephone number:  (Home) _____ (Office) _____ (Cell) _____

Email Address: _____

Height _____ Weight _____ Birth Date: 12/4/1959    Sex __F__

| | Yes | No |
|---|---|---|
| Any nicotine use in the last 5 years? | | ✓ |
| Do you have any life insurance policies? | X | |
| Are you planning on replacing any life insurance policies? | | ✓ |
| Do you have a history of cancer, heart or vascular disease, hypertension or diabetes? | | ✓ |
| Do you have parents or siblings who were diagnosed with heart disease or cancer prior to age 60? | | ✓ |
| Do you have parents or siblings who died prior to age 60 from heart disease or cancer? | ✓ | |
| Are you on any medication? If yes, indicate the reason and name of medication? | | ✓ |

Give details to any "Yes" answers (*Indicate Age and Cause of death): _my mother died of colon_
_cancer at age 58_



**TRANSAMERICA OCCIDENTAL LIFE** ® ℠

Transamerica Occidental
Life Insurance Company
1150 South Olive Street
Los Angeles, CA 90015

**POLICY FORM  TS10NI**
Individual Life Insurance

| INSURED | BIANCA RUDOLPH | 42186233 | POLICY NUMBER |
|---|---|---|---|

| FACE AMOUNT | $500,000 | MAR 15 2004 | DATE OF ISSUE |
|---|---|---|---|

While this policy is in force, Transamerica Occidental Life Insurance Company will pay the death benefit to the Beneficiary if the Insured dies before the policy anniversary nearest the Insured's age 95. All payments are subject to the provisions of this policy.

Signed for the Company at Los Angeles, California, on the date of issue.

*Craig D. Vermie*

Secretary

President

---

**Right to Examine and Return Policy Within 10 Days** --  At any time within 10 days after you receive this policy, you may return it to us or to the agent through whom you bought it. We will cancel the policy and void it from the beginning. We will refund to you any premiums paid.

**Renewable Term Insurance to the Policy Anniversary Nearest Age 95**
**Level Death Benefit Payable at Death Before**
**the Policy Anniversary Nearest Age 95**

**See Schedule of Guaranteed Premiums in the**
**Policy Data for Amount of Premiums**

**Premiums Payable During Life of Insured to the**
**End of the Term Period**

**Premiums are Subject to Change as Stated**
**in Schedules of Premiums Provision,**
**But Will Not Exceed Specified Guaranteed Premiums**

**Nonparticipating – No Dividends**

This policy is a legal contract between you, the Owner of this Policy,
and Transamerica Occidental Life Insurance Company.

### READ YOUR POLICY CAREFULLY

### POLICY SUMMARY

We will pay the death benefit to the Beneficiary if the Insured dies while this policy is in force,
before the policy anniversary nearest age 95.

Premiums are subject to change in accordance with the premium change provision and as
shown in the Schedule of Premiums in the Policy Data, but will not exceed specified guaranteed
premiums. Premiums are payable during the life of the Insured to age 95.

Additional benefits, if any, are provided by rider.

This is only a brief description. The insurance is fully described in the various provisions of
the policy.

### GUIDE TO POLICY PROVISIONS

| Page | | Page |
|---|---|---|
| Amount of Death Benefit........................ 4 | Policy Data............................................ 2 | |
| Application Copy................................ after 8 | Policy Date............................................ 3 | |
| Authorization to Make Changes............... 6 | Premiums............................................ 4,5 | |
| Assignment of Policy........................... 3 | Proof of Death..................................... 4 | |
| Beneficiary's Rights........................... 3,4 | Reinstatement...................................... 6 | |
| Change of Beneficiary......................... 4 | Riders............................................. after 8 | |
| Death Benefit.................................. 4 | Schedules of Premiums.......................... 2A | |
| Definitions..................................... 3 | Settlement Provisions............................ 7 | |
| Dividends...................................... 6 | Option A: Instalments for a Guaranteed Period............................................ 7 | |
| Grace Period................................... 5 | Option B: Instalments for Life with a Guaranteed Period............................ 7 | |
| Incontestability of the Policy................. 6 | Option C: Benefit Deposited with Interest.... 7 | |
| Misstatement of Age or Sex................... 6 | Option D: Instalments of a Selected Amount... 7 | |
| | Option E: Annuity.............................. 7 | |
| Ownership and Beneficiary Provisions......... 3,4 | Option A Table................................. 8 | |
| | Option B Table................................. 8 | |
| Payment of the Death Benefit................. 4 | Suicide.......................................... 6 | |
| Policy Contract................................ 6 | Termination of Insurance....................... 6 | |

## P O L I C Y    D A T A

|  |  |  |  |
|---|---|---|---|
| | | MAR 15 2004 | POLICY DATE |
| EXPIRY DATE | MAR 15 2055 | 44 | AGE OF INSURED |
| INSURED | BIANCA RUDOLPH | 42186233 | POLICY NUMBER |
| FACE AMOUNT | $500,000 | MAR 15 2004 | DATE OF ISSUE |
| OWNER | THE INSURED | PREFERRED PLUS | CLASS OF RISK |

- - - - - - - - - - - - - - - - - - - - - - - - - -

THE CHARGE FOR ANY ADDITIONAL BENEFITS WHICH ARE PROVIDED BY RIDER IS SHOWN
BELOW.  ONLY A BRIEF DESCRIPTION IS GIVEN.  THE COMPLETE PROVISIONS ARE
INCLUDED IN THE RIDER.

RIDER NUMBER    SCHEDULE OF ADDITIONAL BENEFITS                ANNUAL PREMIUM
- - - - - - - -    - - - - - - - - - - - - - - - - - - - - - - - - - -          - - - - - - - - - - - -

NONE                                               NO CHARGE

- - - - - - - - - - - - - - - - - - - - - - - - - -

TOTAL FIRST YEAR PREMIUMS (SEE FOLLOWING PAGES FOR PREMIUMS FOR LATER YEARS):

| ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY |
|---|---|---|---|
| $300.00 | $156.00 | $79.50 | * * * |

- - - - - - - - - - - - - - - - - - - - - - - - - -

P O L I C Y   D A T A   ( C O N T I N U E D )

SCHEDULE OF GUARANTEED MAXIMUM*
ANNUAL PREMIUMS

| POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS | POLICY YEAR BEGINNING | POLICY EXCLUDING RIDERS |
|---|---|---|---|
| MAR 15 2005 | $300.00 | MAR 15 2030 | $22,085.00 |
| MAR 15 2006 | 300.00 | MAR 15 2031 | 24,460.00 |
| MAR 15 2007 | 300.00 | MAR 15 2032 | 27,365.00 |
| MAR 15 2008 | 300.00 | MAR 15 2033 | 30,845.00 |
| MAR 15 2009 | 300.00 | MAR 15 2034 | 34,855.00 |
| MAR 15 2010 | 300.00 | MAR 15 2035 | 39,330.00 |
| MAR 15 2011 | 300.00 | MAR 15 2036 | 44,175.00 |
| MAR 15 2012 | 300.00 | MAR 15 2037 | 49,370.00 |
| MAR 15 2013 | 300.00 | MAR 15 2038 | 54,990.00 |
| MAR 15 2014 | 5,875.00 | MAR 15 2039 | 61,220.00 |
| MAR 15 2015 | 6,330.00 | MAR 15 2040 | 68,305.00 |
| MAR 15 2016 | 6,785.00 | MAR 15 2041 | 76,455.00 |
| MAR 15 2017 | 7,235.00 | MAR 15 2042 | 85,850.00 |
| MAR 15 2018 | 7,680.00 | MAR 15 2043 | 96,450.00 |
| MAR 15 2019 | 8,185.00 | MAR 15 2044 | 108,140.00 |
| MAR 15 2020 | 8,780.00 | MAR 15 2045 | 120,785.00 |
| MAR 15 2021 | 9,510.00 | MAR 15 2046 | 134,300.00 |
| MAR 15 2022 | 10,420.00 | MAR 15 2047 | 148,665.00 |
| MAR 15 2023 | 11,540.00 | MAR 15 2048 | 163,890.00 |
| MAR 15 2024 | 12,800.00 | MAR 15 2049 | 180,100.00 |
| MAR 15 2025 | 14,155.00 | MAR 15 2050 | 197,415.00 |
| MAR 15 2026 | 15,560.00 | MAR 15 2051 | 216,245.00 |
| MAR 15 2027 | 17,000.00 | MAR 15 2052 | 237,290.00 |
| MAR 15 2028 | 18,485.00 | MAR 15 2053 | 262,035.00 |
| MAR 15 2029 | 20,145.00 | MAR 15 2054 | 293,815.00 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*PREMIUMS ARE SUBJECT TO CHANGE AFTER THE 10TH POLICY YEAR AS DESCRIBED
IN THE CHANGE OF PREMIUMS PROVISION.

**DEFINITIONS**

In this policy:

**We, our** or **us** means Transamerica Occidental Life Insurance Company.

**You** and **your** means the owner of this policy.

**Administrative Office** means Transamerica Occidental Life Insurance Company, Box 419521, Kansas City, Missouri 64141-6521.

**Age** means the Insured's age on his or her birthday on or immediately prior to the policy date.

The **Beneficiary** is the person to whom we will pay the death benefit if the Insured dies.

**Home Office** means Transamerica Occidental Life Insurance Company, Box 512101, Los Angeles, California 90051-0101.

**Lapse** means termination of the policy at the end of the grace period due to non-payment of premiums.

**Reinstate** means to restore coverage after the policy has lapsed, subject to the requirements in the Reinstatement provision.

A **Rider** is an attachment to the policy that provides an additional benefit.

**Written Request** means a signed request in a form satisfactory to us that is received at our Administrative Office.

We will send any **notice** under the provisions of this policy to your last known address and to any assignee of record.

We will use the **Policy Date** shown in the Policy Data to determine the premium due dates, policy anniversaries and policy years.

**OWNERSHIP**

**Owner of the Policy** -- Only you, the Owner, are entitled to the rights granted under this policy while the Insured is living. If you are an individual and you die before the Insured, your rights will pass to the executor or administrator of your estate for disposition, unless stated otherwise in this policy. If the Owner is a partnership, the rights belong to the partnership as it exists when a right is exercised.

**Assignment of the Policy** -- We are not responsible for the adequacy of any assignment. However, if you file the assignment with us and we record it at our Administrative Office, your rights and those of any revocable Beneficiary will be subject to it.

**THE BENEFICIARY**

**Who Receives the Death Benefit** -- When the Insured dies while this policy is in force, we will pay the death benefit to the Beneficiary. The Beneficiary is as designated in the application, unless changed as shown under "How to Change a Beneficiary" below. If the Beneficiary is a partnership, we will pay the death benefit to the partnership as it existed when the Insured died.

**Protection of the Death Benefit** -- To the extent permitted by law, no death benefit will be subject to the claims of the Beneficiary's creditors or to any legal process against the Beneficiary.

**If the Beneficiary Dies** -- If any Beneficiary dies before the Insured, that Beneficiary's interest in the death benefit will end. If any Beneficiary dies at the same time as the Insured, or within 30 days after the Insured, that Beneficiary's interest in the death benefit will end if no benefits have been paid to that Beneficiary. If the interest of all designated Beneficiaries has ended when the Insured dies, we will pay the death benefit to you. If you are not living at that time, we will pay the death benefit to the executor or administrator of your estate.

**How to Change a Beneficiary** -- You may change the designated Beneficiary while the Insured is living by sending a satisfactory written notice to us. The change will not be effective until we record it at our Administrative Office. Even if the Insured is not living when we record the change, the change will take effect as of the date it was signed. However, any benefits we pay before we record the change will not be subject to the change.

A Beneficiary designated irrevocably may not be changed without the written consent of that Beneficiary.

## PAYMENT OF THE DEATH BENEFIT

**Proof of Death** -- We will pay any benefit payable because of death when we receive due proof of the Insured's death while this policy was in force. The proof must be sent to us at our Administrative Office. We will send appropriate forms to the Beneficiary upon request. Any of our agents will help the Beneficiary fill out the forms without charge.

**Death Benefit** -- The amount of the death benefit is equal to:

| | (a) | the face amount of this policy, |
| plus | (b) | the face amount of any attached rider, subject to its terms, |
| plus | (c) | the amount of any portion of a paid premium which applies to a period beyond the Insured's date of death (excluding any premiums waived under any disability rider attached to this policy), |
| minus | (d) | the amount of any portion of a premium due under the grace period provision. |

The amount of the death benefit may be affected by the Misstatement of Age or Sex provision of this policy.

## PREMIUMS

**Premium** -- To keep this policy in force, each premium must be paid in advance. Premiums should be sent to our Administrative Office or you may pay them to an agent we authorize. We will give you a receipt if you ask for one. The first premium is due on the Policy Date. Subsequent premiums are payable while the Insured is living and within the grace period. If any premium remains unpaid after the grace period, your policy will lapse. If a part of the premium ceases to be payable under the provisions of a rider, the premium will be reduced accordingly. The mode of premium payment may be changed on any policy anniversary to any other mode shown in the Policy Data.

**Schedules of Premiums** -- The guaranteed maximum annual premium for each policy year is shown in the Policy Data under Schedule of Guaranteed Maximum Annual Premiums. For any policy year, we will not charge an annual premium greater than the guaranteed annual premium shown in that Schedule for that year.

**Change of Premiums** -- After the guaranteed level premium period shown on policy data page 2A, premiums are subject to change. We may charge a lower premium than the guaranteed maximum annual premium for a policy year exclusive of any riders, by sending a notice to your last known address. Such annual premiums are not guaranteed. A reduced annual premium will be effective for one year beginning on the policy anniversary immediately following the date we send the notice. Any reduction in the annual premium will apply to all policies having the same plan, issue year and premium schedule as this policy. The changed premium will never exceed the guaranteed maximum annual premium shown on page 2A. A change in the premiums for this policy will also apply uniformly to all other policies we issue on the same plan and on an Insured with the same issue age, issue date, sex, face amount and class of risk as the Insured under this policy. The changed rates will not be affected by any change in health or occupation of the Insured. A change in the premiums for this policy will not change the premiums for any attached riders.

We will bill the owner directly on an annual, semi-annual or quarterly basis if the owner wishes. Direct billing on a monthly basis is only available if the annual premium for the basic coverage provided by this policy is $1,000 or more.

Monthly and quarterly premium payment modes are available if premium payments are to be made through automatic deductions from the owner's checking account (pre-authorized checking). Annual and semi-annual premium payment modes are not available through pre-authorized checking.

The semi-annual, quarterly and monthly premiums for each policy year will be determined on the same basis used to determine the initial semi-annual, quarterly and monthly premiums.

Any change in the non-guaranteed premium rates will be prospective and will be subject to our expectation as to future cost factors. Such cost factors may include, but are not limited to: mortality; expenses; interest; persistency; regulatory changes; and any applicable federal, state and local taxes.

**Grace Period** -- A grace period of 31 days will be provided for you to pay premiums after the premium due date for each premium due after the first premium. We will let you know, by sending a notice to your last known address, that the grace period has begun and that you must pay the premium due before the 31 day grace period has expired. If you do not pay the premium due, your policy will lapse.

During the grace period, we will not charge interest on the premium due. If the Insured dies during the grace period and before you pay the premium, we will subtract from the death benefit the cost of coverage to the date the Insured died.

**Premium Adjustment at Death** -- Any portion of a paid premium which applies to a period beyond the date of the Insured's death will be added to the proceeds payable under this policy. Premiums waived under any disability rider attached to the policy will not be included in this adjustment.

**Reinstatement** -- If this policy lapses. it may be reinstated. To reinstate the policy, you must meet the following conditions:

1.  You must request reinstatement in writing within five years after the date of lapse and before the expiry date.

2.  The Insured must still be insurable by our standards.

3.  The following amounts must be paid:

    a. One twelfth of the annual premium at the time of lapse; and

    b. The premium due at the time of reinstatement.

Insurance under the reinstated policy will be effective from the date the reinstated application is signed or the date we approve the reinstatement, if that occurs 30 days or more after the application date. If a person other than the Insured is covered by any attached rider, that person's coverage will be reinstated under the terms of this provision.

## GENERAL PROVISIONS

**Incontestability of the Policy** -- Except for nonpayment of premiums, this policy will be incontestable after it has been in force during the Insured's lifetime for two years from the date of issue. This provision does not apply to any rider providing benefits specifically for disability or death by accident.

**Amount Payable Is Limited in the Event of Suicide** -- If the Insured dies by suicide, while sane or insane, within two years from the date of issue, we will be liable only for the amount of premiums paid.

**Misstatement of Age or Sex in the Application** -- If there is a misstatement of the Insured's age or sex in the application, we will adjust the death benefit to that which the premiums paid would have purchased at the correct age or sex.

**This Policy is Our Contract with You** -- We have issued this policy in consideration of the application and payment of the premiums. A copy of the application is attached and is part of this policy. The policy, including the application and any endorsements and riders, forms our contract with you. All statements made by or for the Insured will be considered representations and not warranties. We will not use any statement made by or for the Insured to deny a claim unless the statement is in the application and the application is attached to this policy when we issue or deliver it.

**Who Can Make Changes in the Policy** -- Only our President or a Vice President together with our Secretary have the authority to make any change in this policy. Any change must be in writing.

**Termination of Insurance** -- This policy will terminate at the earliest of:

1.  the date we receive your written request to terminate;

2.  the policy anniversary nearest age 95; or

3.  the date of lapse for nonpayment of premiums.

**No Dividends are Payable** -- This is nonparticipating insurance. It does not participate in our profits or surplus. We do not distribute past surplus or recover past losses by changing the premium rates.

**SETTLEMENT
PROVISIONS**

When the Insured dies while this policy is in force, we will pay the death benefit in a lump sum unless you or the Beneficiary choose a settlement option. You may choose a settlement option while the Insured is living. The Beneficiary may choose a settlement option after the Insured has died. The Beneficiary's right to choose will be subject to any settlement agreement in effect at the Insured's death.

When we receive a satisfactory written request, we will pay the death benefit according to one of these options:

**Option A: Instalments for a Guaranteed Period** -- We will pay equal instalments for a guaranteed period of from one to thirty years. Each instalment will consist of part benefit and part interest. We will pay the instalments monthly, quarterly, semi-annually or annually, as requested. See Table A on the last page.

**Option B: Instalments for Life with a Guaranteed Period** -- We will pay equal monthly instalments as long as the payee is living, but we will not make payments for less than the guaranteed period the payee chooses. The guaranteed period may be either 10 years or 20 years. We will pay the instalments monthly. See Table B on the last page.

**Option C: Benefit Deposited with Interest** -- We will hold the benefit on deposit. It will earn interest at the annual interest rate we are paying as of the date of death. We will not pay less than 2 1/2% annual interest. We will pay the earned interest monthly, quarterly, semi-annually or annually, as requested. The payee may withdraw part or all of the benefit and earned interest at any time.

**Option D: Instalments of a Selected Amount** -- We will pay instalments of a selected amount until we have paid the entire benefit and accumulated interest.

**Option E: Annuity** -- We will use the benefit as a single premium to buy an annuity. The annuity may be payable to one or two payees. It may be payable for life with or without a guaranteed period, as requested. The annuity payment will not be less than what our current annuity contracts are then paying.

The payee may arrange any other method of settlement as long as we agree to it. The payee must be an individual receiving payment in his or her own right. There must be at least $10,000 available for any option and the amount of each instalment to each payee must be at least $100. If the benefit amount is not enough to meet these requirements, we will pay the benefit in a lump sum.

We will pay the first instalment under any option on the date of death. Any unpaid balance we hold under Options A, B, or D will earn interest at the rate we are paying at the time of settlement. We will not pay less than 3% annual interest. Any benefit we hold will be combined with our general assets.

If the payee does not live to receive all guaranteed payments under Options A, B, D or E or any amount deposited under Option C, plus any accumulated interest, we will pay the remaining benefit as scheduled to the payee's estate. The payee may name and change a successor payee for any amount we would otherwise pay the payee's estate.

## TABLE A
### Instalments for Each $1,000 Payable under Option A

Multiply the Monthly Instalment by 11.83895 for Annual, by 5.96330 for Semi-Annual, or by 2.99263 for Quarterly Instalments

| Guaranteed Period (Yrs.) | Monthly Instalment | Guaranteed Period (Yrs.) | Monthly Instalment | Guaranteed Period (Yrs.) | Monthly Instalment |
|---|---|---|---|---|---|
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.48 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

## TABLE B
### Monthly Instalment for Each $1,000 Payable under Option B

#### Male Payee

| Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.90 | $2.89 | 26 | $3.20 | $3.19 | 41 | $3.77 | $3.71 | 56 | $4.92 | $4.59 | 71 | $7.27 | $5.42 |
| 12 | 2.91 | 2.91 | 27 | 3.22 | 3.21 | 42 | 3.82 | 3.76 | 57 | 5.03 | 4.66 | 72 | 7.48 | 5.45 |
| 13 | 2.93 | 2.92 | 28 | 3.25 | 3.24 | 43 | 3.88 | 3.81 | 58 | 5.15 | 4.73 | 73 | 7.68 | 5.46 |
| 14 | 2.94 | 2.94 | 29 | 3.28 | 3.27 | 44 | 3.94 | 3.86 | 59 | 5.27 | 4.80 | 74 | 7.88 | 5.48 |
| 15 | 2.96 | 2.96 | 30 | 3.31 | 3.30 | 45 | 4.00 | 3.91 | 60 | 5.40 | 4.87 | 75 | 8.08 | 5.49 |
| 16 | 2.98 | 2.97 | 31 | 3.34 | 3.33 | 46 | 4.07 | 3.97 | 61 | 5.53 | 4.94 | 76 | 8.27 | 5.50 |
| 17 | 3.00 | 2.99 | 32 | 3.38 | 3.36 | 47 | 4.14 | 4.02 | 62 | 5.68 | 5.00 | 77 | 8.46 | 5.50 |
| 18 | 3.01 | 3.01 | 33 | 3.41 | 3.39 | 48 | 4.21 | 4.08 | 63 | 5.83 | 5.07 | 78 | 8.63 | 5.51 |
| 19 | 3.03 | 3.03 | 34 | 3.45 | 3.43 | 49 | 4.28 | 4.14 | 64 | 5.98 | 5.13 | 79 | 8.79 | 5.51 |
| 20 | 3.05 | 3.05 | 35 | 3.49 | 3.46 | 50 | 4.36 | 4.20 | 65 | 6.15 | 5.18 | 80 | 8.94 | 5.51 |
| 21 | 3.08 | 3.07 | 36 | 3.53 | 3.50 | 51 | 4.44 | 4.26 | 66 | 6.32 | 5.24 | 81 | 9.07 | 5.51 |
| 22 | 3.10 | 3.09 | 37 | 3.57 | 3.54 | 52 | 4.53 | 4.32 | 67 | 6.50 | 5.28 | 82 | 9.18 | 5.51 |
| 23 | 3.12 | 3.11 | 38 | 3.62 | 3.58 | 53 | 4.62 | 4.39 | 68 | 6.68 | 5.33 | 83 | 9.28 | 5.51 |
| 24 | 3.14 | 3.14 | 39 | 3.67 | 3.62 | 54 | 4.71 | 4.46 | 69 | 6.88 | 5.36 | 84 | 9.36 | 5.51 |
| 25 | 3.17 | 3.16 | 40 | 3.72 | 3.67 | 55 | 4.81 | 4.52 | 70 | 7.07 | 5.40 | 85 | 9.42 | 5.51 |

#### Female Payee

| Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. | Age | Guaranteed Period 10 Yrs. | 20 Yrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 | $2.83 | $2.83 | 26 | $3.08 | $3.07 | 41 | $3.54 | $3.52 | 56 | $4.51 | $4.35 | 71 | $6.73 | $5.36 |
| 12 | 2.84 | 2.84 | 27 | 3.10 | 3.10 | 42 | 3.59 | 3.56 | 57 | 4.61 | 4.42 | 72 | 6.94 | 5.40 |
| 13 | 2.86 | 2.85 | 28 | 3.12 | 3.12 | 43 | 3.63 | 3.60 | 58 | 4.71 | 4.50 | 73 | 7.16 | 5.43 |
| 14 | 2.87 | 2.87 | 29 | 3.15 | 3.14 | 44 | 3.68 | 3.65 | 59 | 4.82 | 4.57 | 74 | 7.38 | 5.48 |
| 15 | 2.88 | 2.88 | 30 | 3.17 | 3.17 | 45 | 3.73 | 3.69 | 60 | 4.94 | 4.65 | 75 | 7.60 | 5.47 |
| 16 | 2.90 | 2.90 | 31 | 3.20 | 3.19 | 46 | 3.78 | 3.74 | 61 | 5.06 | 4.72 | 76 | 7.82 | 5.48 |
| 17 | 2.91 | 2.91 | 32 | 3.23 | 3.22 | 47 | 3.84 | 3.79 | 62 | 5.19 | 4.80 | 77 | 8.04 | 5.49 |
| 18 | 2.93 | 2.93 | 33 | 3.26 | 3.25 | 48 | 3.90 | 3.85 | 63 | 5.33 | 4.88 | 78 | 8.25 | 5.50 |
| 19 | 2.95 | 2.94 | 34 | 3.29 | 3.28 | 49 | 3.96 | 3.90 | 64 | 5.47 | 4.95 | 79 | 8.45 | 5.51 |
| 20 | 2.96 | 2.96 | 35 | 3.32 | 3.31 | 50 | 4.03 | 3.96 | 65 | 5.63 | 5.02 | 80 | 8.64 | 5.51 |
| 21 | 2.98 | 2.98 | 36 | 3.35 | 3.34 | 51 | 4.10 | 4.02 | 66 | 5.79 | 5.09 | 81 | 8.82 | 5.51 |
| 22 | 3.00 | 2.99 | 37 | 3.39 | 3.37 | 52 | 4.17 | 4.08 | 67 | 5.96 | 5.15 | 82 | 8.97 | 5.51 |
| 23 | 3.02 | 3.01 | 38 | 3.42 | 3.41 | 52 | 4.25 | 4.14 | 68 | 6.14 | 5.21 | 83 | 9.11 | 5.51 |
| 24 | 3.04 | 3.03 | 39 | 3.46 | 3.44 | 54 | 4.33 | 4.21 | 69 | 6.33 | 5.27 | 84 | 9.23 | 5.51 |
| 25 | 3.06 | 3.05 | 40 | 3.50 | 3.48 | 55 | 4.42 | 4.28 | 70 | 6.53 | 5.32 | 85 | 9.32 | 5.51 |

Ages younger than 11 are the same as shown for age 11, and ages older than 85 are the same as shown for age 85.

## PREMIUM DEPOSIT AGREEMENT

Transamerica Occidental Life Insurance Company has issued this endorsement as a part of the policy to which it is attached.

**Deposits** – Subject to the provisions of this agreement, the Company will accept deposits for the purpose of paying future premiums on the policy. The accumulation of such deposits or any remainder is called "the deposit fund" in this agreement.

**Limit on Deposits** – Each deposit must be at least $5. The maximum in the deposit fund shall be limited to the sum of the future premiums on the policy. Any deposits which are not acceptable under this provision will be refunded to the owner of the policy.

**Automatic Premium Payment** – Any premium for the policy which remains unpaid at the end of the grace period shall be paid automatically from the deposit fund. If the deposit fund is insufficient to pay such premium, the premium of the next more frequent mode of payment shall be paid automatically from the deposit fund. If the deposit fund is insufficient to pay the premium of the most frequent mode of payment available under the policy, the deposit fund will be refunded to the owner of the policy, and the premium for the policy will remain unpaid, subject to the provisions of the policy. Premiums shall be paid from the deposit fund before payment is made under any effective automatic premium loan provision under the policy.

**Interest** – On each policy anniversary the deposit fund shall be credited with interest based on the minimum balance in the deposit fund during each half of the preceding year. The interest rate shall be the rate determined annually by the Company for deposit funds.

**Settlement** – Upon death of the Insured, the deposit fund will be paid in one sum to the owner of the policy, except if the Insured is the owner, the deposit fund shall be paid in one sum to the beneficiary of the policy. If the policy is surrendered or is continued under a non-forfeiture provision, or if the Company commences to waive premiums under a rider in the policy providing such a benefit the deposit fund shall then be paid in one sum to the owner of the policy.

**Withdrawal** – Upon written request to the Company, the owner of the policy may make withdrawals from the deposit fund. Each withdrawal must be at least $50 except for full withdrawal of the deposit fund. The Company may defer payment of withdrawals in cash for a period of not more than 90 days or any shorter period required by law.

**Assignment** – No assignment of the rights under this endorsement may be made except in an assignment of the policy. Any assignment of the policy will include the rights under this agreement unless specifically excluded in such assignment.

**Receipt for Deposits** – Deposits must be made to the Company and only in exchange for an official receipt signed by the President or Secretary of the Company. Deposits may be mingled with the general assets of the Company.

**Annuity** – If this agreement is attached to an annuity, the terms "Insured" and "policy" shall mean "Annuitant" and "contract".

Signed for the Company at Los Angeles, California, on the date of issue of the policy unless a different date is shown here.

Secretary

President

1-006 11-159

**TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY**

**CONVERSION OPTION
ENDORSEMENT**

Transamerica Occidental Life Insurance Company has issued this endorsement as a part of the policy to which it is attached.

While this policy is in force and before the Insured's 75th birthday, this policy may be converted, subject to all conditions stated herein, to a plan of whole life, variable universal life, or flexible premium, universal life insurance which we make available at the time the conversion is requested. Evidence of insurability will not be required for the new policy for the same, or lower, face amount at the time the request for conversion is made. At least one plan of insurance will be available.

The conversion is also subject to the following conditions:

1.   We must receive the written request no later than 30 days after the Insured's 75th birthday.

2.   Unless you request otherwise, the policy date of the new policy will be the date we receive your application for conversion accompanied by the first premium.

3.   The face amount of the new policy may be for an amount up to the face amount of this policy at the time the request for conversion is made, but not less than our then published minimum for the plan selected.

4.   If the conversion is exercised within 2 years from the earlier of the policy date or issue date of the original policy, the contestability and suicide provisions will apply to the new policy for the balance of that 2 year period.

5.   Premiums for the original policy must be paid to the date of conversion. The premium for the new policy will be at our published rate for the plan selected at the time of conversion. We will use the Insured's age on the date of conversion to determine this rate. The new policy will be issued at the class of risk of this policy, if available. If such is not available at the time of conversion, the new policy will be issued at the class of risk available which is most similar to the class of risk of this policy.

6.   Until the new policy becomes effective, the original policy will continue in force subject to its provisions. The original policy will automatically terminate at the exact time the new policy becomes effective. In no event will we provide insurance under both the original policy and a new policy at the same time.

Signed for Transamerica Occidental Life Insurance Company at Los Angeles, California, and effective on the date of issue of the policy to which this endorsement is attached unless a different date is shown here.

Craig D. Vermie

Secretary

President

1-002 44-102

## CONDITIONAL EXCHANGE OPTION

Transamerica Occidental Life Insurance Company has issued this option as part of the policy to which it is attached.

This policy may be exchanged for a new policy on the life of the Insured. The exchange can only be made on the tenth policy anniversary, but not beyond age 75. The selected policy anniversary will be the date of the exchange.

The exchange is subject to the following conditions:

1. Written request must be made to us within 60 days before or after the proposed date of exchange.

2. Premiums for this policy must be paid to the date of exchange.

3. The exchange is subject to evidence of insurability of the Insured satisfactory to us. Upon receipt of a request to exchange this policy, we will inform the owner of the evidence of insurability required.

   The evidence of insurability which we require will be paid for by us with an initial request for exchange of this policy, whether the request is approved or denied. If the initial request is denied, we will also pay for the evidence of insurability which we require for a later request, but only if such request is approved.

4. The policy date of the new policy will be the date of exchange.

5. The new policy will be the same plan of insurance as this policy. If the same plan is no longer available, we will offer the most similar plan available at that time. At least one plan of insurance will be made available.

6. The face amount of the new policy cannot exceed the face amount of this policy.

7. Premiums for the new policy will be based on the Insured's age nearest birthday to the date of exchange.

8. If an exchange is made after age 65 of the Insured, the new policy will not include a Conditional Exchange Option.

9. If an exchange is made after age 65 of the Insured, the new policy will not include a Conversion Option.

10. The contestability provision will start anew in the new policy, but only to the extent that the face amount of the new policy will exceed the amount that could have been provided under this policy if the premiums paid for the new policy had been applied to premium payments due on this policy. As a result, a lower death benefit may be payable.

11. Any rider attached to this policy may be continued in the new policy at the premiums shown in the policy data of this policy, subject to the provisions of the rider. Any provision in the rider providing for automatic termination of the rider solely because of the termination of this policy shall not prevail.

12. The new policy will not become effective unless and until the full first premium is paid to us, and the new policy is delivered to the owner during the lifetime and continued insurability (as stated in the request for exchange) of the Insured.

13. Until the new policy becomes effective, this policy will continue in force subject to its provisions. This policy will automatically terminate when the new policy becomes effective. In no event will we provide insurance under both this policy and a new policy at the same time.

Signed for the Company at Los Angeles, California, on the date of issue of this policy.

Craig D. Vermut

Secretary

President

1-003  10-196

Transamerica Occidental
Life Insurance Company
Home Office:  Los Angeles, CA    **APPLICATION AMENDMENT**

Life Insured: B I A N C A   R U D O L P H

The Application for Policy No.   42186233           is amended as follows:
       QUESTION   3   PART 1 :
       AMOUNT APPLIED FOR — $500,000.00
       QUESTION 6 PART 1:   MODE IS QUARTERLY

I represent to the best of my knowledge, that since the date of the application for the policy no person to
be covered by the policy has, except as stated below,
1.  Had a change in health due to injury or sickness; or
2.  Consulted, been examined or been treated by any physician or practitioner; or
3.  Changed occupation, aviation or military status; or
4.  Had any life or accident and sickness, or medical service benefits declined, modified, cancelled, or been
    refused issue, renewal or reinstatement of such insurance or benefits; or
5.  Applied for issuance or reinstatement of any insurance providing income during disability or providing
    hospital or medical expense benefits.
The only exceptions are: (State "none" if there are no exceptions)_____

It is agreed that this amendment shall be part of the application for the policy.

Signed at_____                           on_____
                    (City, State)                                        Date

Witness to all signatures

                              B I A N C A   R U D O L P H

APE 2-185

42186233

# TRANSAMERICA
## OCCIDENTAL LIFE

Transamerica Occidental Life Insurance Company
Home Office: Cedar Rapids, IA 52499
Marketing Office: Los Angeles, CA 90015
Administrative Office: P.O. box 419521
Kansas City, MO 64141-6521

C0903

## Life Insurance Application
## For One Life    Part 1

APA 40-2701

| | | |
|---|---|---|
| Proposed Insured: | Bianca Rudolph, | JAN 0 9 2004 | Mrs. |

Proposed Insured: **Bianca Rudolph,** _____ JAN 0 9 2004

First    Middle    Last    Mr./Mrs./Ms./Dr.

Birthdate: Mo. **12/04/1959**  Age **43**  Birth Place: **Pittsburgh PA**    Male ☐  Female ☒

Mo.  Day  Yr.

Soc. Sec. No.: **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**  Employer: **none**

Occupation: **housewife**    Annual Income $ **?**    **(724)832-1026**

Duties    **none personally**    Work Phone

Residence: **63 Lakewood Rd Greensburg, PA 15601**  **household is over #700000**  **(724)864-2888**

No. & Street    City    State    Zip    Home Phone

Owner's Name: _____    Birthdate: ____

(If other than Proposed Insured)    Mo.  Day  Yr.

Relationship to Proposed Insured: _____

Address: _____

No. & Street    City    State    Zip    Soc. Sec. Or Tax No.

Beneficiary's Name and Relationship to Proposed Insured: **Lawrence Rudolph -spouse**

Address **63 Lakewood Rd Greensburg PA 15601**

No. & Street    City    State    Zip    Date of Trust, if Applicable

**Special Information for Premium Notices:** A secondary addressee may be named who will receive copies of premium notices and letters regarding possible lapse in coverage.

Name: _____

Billing Address: _____

1. Plan Applied For:  **Trendsetter Super 10**    Kind Code: ~~0244~~ **C025**    **Preferred Plus**

   Preferred Plus ☒  Preferred ☐  Standard Plus ☐  Standard ☐  Other ☐

2. Non-Nicotine Qualification ☒  Nicotine Qualification ☐

3. Amount Applied For  $  **250,000**

4. Rating Class of Risk Applied For:  ☐ Standard  ☐ Extra Rating of ____

5. Additional Benefits By Rider:  ☐ Waiver of Premium/ Waiver Provision  ☐ Accident Indemnity $ ____

6. Premium Payment Mode:  ☐ Annual  ☐ Semi-Annual  ☐ Quarterly  ☐ Monthly/PAC

7. Complete for Flexible Premium Plans:

   Required Premium Per Year (RAP)  $ _____

   Planned Periodic Premium  $ _____  Per:  ☐ A  ☐ S  ☐ Q  ☐ M/PAC

   + Initial Lump Sum  $ _____

   = Total Initial Premium  $ _____

8. If the Automatic Premium Loan provision is available, it is to be:  Effective ☐  Not Effective ☐

9. Total insurance in force with all companies:  Personal $ **500,000** **00**

   Business $ _____

   Accidental Premium Notices now in force: $ _____  Waiver Premium/Wavier Provision Coverage: $ _____

10. Mail Additional Premium Notices To:

    Address: _____

    No. & Street    City    State    Zip

**"You"** means any person proposed to be insured.

| Yes | No | | |
|---|---|---|---|
| ☐ | ☒ | 11. | May insurance, including annuities, in any company be discontinued, changed, or replaced if the insurance applied for is issued? If "Yes", give company names. |
| | | | a. Do you have an existing annuity contract? _____ |
| ☐ | ☒ | 12. | Is any application for life insurance pending with any other company? If "Yes", give company name, amount applied for and total amount to be placed. |
| ☐ | ☐ | 13. | Do you plan to travel outside the U.S., Canada, W. Europe, Hong Kong or Australia/New Zealand, for business or pleasure, within the next 24 months? If "Yes", complete Foreign Travel Questionnaire |
| | ☒ | 14. | In the past two years, have you participated in aeronautics, powered racing or competitive vehicles, skin or scuba diving, mountain climbing, rodeos or competitive skiing? If "Yes", complete Sports and Avocation Questionnaire. |
| | | 15. | Have you used nicotine at any time?    Date Last Used _____ |
| ☒ | | | Cigarettes _____ |
| ☐ | | | Cigar/Pipe/Chewing Tobacco _____ |
| ☐ | | | Other _____ |
| | | 16. | Driver's license #: **18 800 413**    State: **PA** |
| | | | In the past five years, have you been convicted of or pleaded guilty to: |
| ☒ | | a. | Moving violations? If "Yes", give dates and type. _____ |
| ☒ | | b. | Driving under the influence of alcohol and/or other drugs? If "Yes", give dates. _____ |
| ☒ | | c. | Reckless driving? If "Yes", give dates. _____ |
| ☒ | | 17. | Do you intend to fly other than as a passenger or have flown other than as a passenger during the past two years? If "Yes", complete Aviation Questionnaire. |
| ☒ | | 18. | Have you ever been convicted of a misdemeanor (other than a traffic violation) or a felony? |
| ☒ | | 19. | Are you a member of the armed forces including the reserves? Intend to become a member? |

40-2701    **APPLICATION (NB)**

D T 0 0 8

**Remarks:** Give details for any questions answered "YES"

*I have traveled to Africa in the past for pleasure and*
*may do so again sometime in the future.*

I, the Proposed Insured and I, the Owner if different, hereby represent that the statements and answers given in this Application are true, complete and correctly
I/we agree: (1) This Application shall consist of Part 1, Part 2 and any required application supplement(s), and shall be the basis for any contract issued on this Appli
Except as otherwise provided in the conditional receipt, if issued, with the same Proposed Insured as on this Application, any contract issued on this Application sha
effect until after all of the following conditions have been met: (a) The full first premium is paid, (b) The Owner has personally received the contract during the lifeti
while the Proposed Insured is in good health, and (c) All of the statements and answers given in this Application to the best of my/our belief must be true and complet
date of Owner's personal receipt of the contract and that the contract will not take effect if the facts have changed; (3) No waiver or modification shall be bin
Transamerica Occidental Life Insurance Company ("the Company") unless in writing and signed by the President or a Vice President and the Secretary or an Assistant

I/we understand that omissions or misstatements in this Application could cause an otherwise valid claim to be denied under any contract issued from this Application.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER P
OF CLAIM CONTAINING ANY MARTERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF
THERETO COMMITS A FRAUDULENT ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL

## AUTHORIZATION TO OBTAIN INFORM

Transamerica Occidental Life Insurance Company ("the Company")

I, the Proposed Insured, hereby authorize any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insuring or reinsuring company, t
Information Bureau, Inc., consumer reporting agency, or employer having information available as to testing, diagnosis, treatment and prognosis with respect to any physica
condition (for example: coronary disease; cancer; Human Immunodeficiency Virus (HIV) related test results or disorders; metabolic, pulmonary, or neurological disorders) and/or t
me or my minor children and any other non-medical information of me or my minor children to give to the Company or its legal representative, any and all such information.

I understand the information obtained by use of the Authorization will be used by the Company to determine eligibility for insurance and eligibility for benefits under an existing co
information obtained will not be released by the Company to any person or organization except to reinsuring companies, the Medical Information Bureau, Inc., or other persons or o
performing business or legal services in connection with my application, claim or as may be otherwise lawfully required or as I may authorize.

I know that I may request to receive a copy of this Authorization. I agree that a photocopy of this Authorization shall be as valid as the original. I agree this Authorization shall be v
and one half years from the date shown below. (For Rhode Island applications, this shall be valid for 24 months from the policy issue date.)

I acknowledge receipt of the Notice of Disclosure of Information. I understand that if an investigative consumer report is ordered in connection with this application, I may
interviewed in connection with the preparation of the report and, upon request, I will be provided with a copy of the report. I elect to be interviewed if an investigative consumer repo
prepared.    ☐ Yes    ☐ No

PLEASE MAKE CHECKS PAYABLE TO THE COMPANY. DO NOT MAKE CHECKS PAYABLE TO THE AGENT OR LEAVE PAYEE SPACE BLANK.
Amount paid with this Application $ — None —    Check or M.O. # — None —    ☐ Credit Card *    — None —
*Complete Credit Card Order Confirmation Form

Signed at  *Greensburg  PA*    on  *1-7-04*
        City-State                                        Date

SIGN HERE

*Bianca Rudolph*    Bianca Rudolph    X    *Norman R Agin*
Signature of Proposed Insured (or parent or guardian if Proposed Insured is a minor)    Witness to Signature of Proposed Insured

X
    Signature of additional adult Proposed Insured or spouse, if any

X
    Signature of Proposed Insured Age 18 or over, if any

Signed at    on
        City-State                                        Date

X                                                          X
    Signature of Owner (if other than Proposed Insured)    Witness to Signature of Owner

If Owner is a Corporation, an authorized officer, other than the Proposed Insured must    Signature of a Licensed Resident Agent as required, below.
sign as Owner, give corporate title and full name of corporation below.    *Norman R Agin*

        X

**TRANSAMERICA LIFE COMPANIES**

Transamerica
1150 South (
Los Angeles,

**Application Part 2**
**Paramedical History**
MPM 2-898

☐ Transamerica Occidental Life Insurance Company    ☐ Transamerica Assurance Company    *(Check One)*

| 1. PROPOSED INSURED: *(Print Full Name)* BIANCA T Rudolph | 2. DATE OF BIRTH: Month 12    Day 4    Year 59 |
|---|---|

3. FAMILY RECORD: Give age and present health, or if deceased, give age at death and cause of death.

| | Age | Present Health | Cause of Death | Brothers & Sisters 0 | Ages | Present Health or Cause of Death |
|---|---|---|---|---|---|---|
| Father | 79 | SP CA prostate | | No. living 2 | 45 | Healthy |
| Mother | 58 | | CA colon | No. deceased 0 | 47 | " |

4. Name and address of your personal physician: Michael Lupinetti MD, Pittsburgh, Pa

5. Date and reason for last visit to your physician: 9-03 Annual Gyn exam c pap smear

6. ☐ Yes  ☑ No   Are you presently taking medication?

---

Give details of all "Yes" answers including all dates, diagnoses, durations, outcome and the names and addresses of all attending physicians, clinics and hospitals.

**7. WITHIN THE PAST FIVE YEARS HAVE YOU:**

|  | Yes | No |
|---|---|---|
| a. Consulted, been examined or been treated by a physician? | ☐ | ☑ |
| b. Had an X-ray, electrocardiogram or any laboratory test or study? | ☑ | ☐ |
| c. Had observation or treatment at a clinic or hospital? | ☐ | ☑ |
| d. Had or been scheduled to have surgery? | ☑ | ☐ |
| e. Had dizziness, shortness of breath, pain or pressure in the chest? | ☐ | ☑ |
| f. Had any injury requiring treatment? | ☐ | ☑ |
| g. Used nicotine in any form? *(Indicate type and frequency)* | ☐ | ☑ |

7d. ® ovarian cyst excised 7-01
John Mellinger MD
Magee Hospital, PGH, Pa

7B. Colonoscopy 10-02
Wm Provance MD
LAtrobe, Pa 15650
WNL - (screening test)

7B. mammogram 10-02
Lupinetti MD. WNL

8g. Arthritis 3rd finger
© hand - Michael
Dolecki MD. Greensburg, Pa
15601 Vioxx prn

**8. TO THE BEST OF YOUR KNOWLEDGE, HAVE YOU HAD OR BEEN TOLD BY A MEMBER OF THE MEDICAL PROFESSION YOU HAD:**

|  | Yes | No |
|---|---|---|
| a. Epilepsy, fainting spells, nervous or mental condition, neuritis, paralysis, or any disease or abnormality of the brain or nervous system? | ☐ | ☑ |
| b. Heart attack, murmur, palpitation, high blood pressure, anemia, or any disease or abnormality of the heart, blood or blood vessels? | ☐ | ☑ |
| c. Tuberculosis, asthma, or any disease or abnormality of the lungs, bronchial tubes, throat or respiratory system? | ☐ | ☑ |
| d. Ulcer, indigestion, colitis, gallstone, hernia or any disease or abnormality of the stomach, intestines, rectum, gall bladder or liver? | ☐ | ☑ |
| e. Urinary sugar, albumin or stone, syphilis, menstrual disorder, or disease or abnormality of the breasts, kidneys, prostate, urinary or genital systems? | ☐ | ☑ |
| f. Diabetes, gout, or any disease or abnormality of the thyroid or other glands? | ☐ | ☑ |
| g. Arthritis, rheumatic fever, back trouble, or any disease or abnormality of the joints, muscles or bones? | ☑ | ☐ |
| h. Any disease or abnormality of the eyes, ears or skin? | ☐ | ☑ |
| i. Cancer, tumor, leukemia, Hodgkin's Disease, or lymphoma? | ☐ | ☑ |
| j. A diagnosis of or treatment by a member of the medical profession for an immune deficiency disorder, Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or sexually transmitted disease, or positive test results for antibodies to the AIDS virus? | ☐ | ☑ |

**9. WITHIN THE PAST TEN YEARS, HAVE YOU USED:**

|  | Yes | No |
|---|---|---|
| a. Amphetamines, barbiturates or sedatives except as prescribed by a physician? | ☐ | ☑ |
| b. Cocaine, heroin, morphine, LSD, marijuana, PCP, or any other hallucinogenic or narcotic drug? | ☐ | ☑ |

10a. father SP CABG
7vessel - occlusion/MI
during test
father HBP

**10.**

|  | Yes | No |
|---|---|---|
| a. Have any of your close relatives ever had cancer, diabetes, heart disease or a cardiovascular disorder? | ☑ | ☐ |
| b. Has your weight changed more than 15 pounds in the past year? | ☐ | ☑ |
| c. Have you ever received treatment or joined an organization for alcohol or drug abuse or dependence? | ☐ | ☑ |

---

The statements and answers given above are true, complete and correctly recorded, to the best of my knowledge and belief. To the extent allowed by law, I waive my rights to prevent disclosure of any knowledge or information about the above questions. This waiver applies to any physician, hospital official or employee, or other person who has attended or examined me, or who has been consulted by me. I authorize such person to make such disclosures. Such person may also testify to their knowledge. This authorization is made on behalf of myself and any person who shall have or claim any interest in any contract of insurance issued on this application.

Signed at  Greensburg  Pa    on  10-2-03

Witness  Penny Seubler

Signature of Paramedical Representative

X  Bianca T Rudolph

Signature of Proposed Insured

MPM 2-898

**EXAMINER'S REPORT**

*The questions on page one of the form must be completed and signed by Proposed Insured in front of Paramedical Representative.*

## IDENTIFICATION SECTION

**1. Identification of Proposed Insured:**

BIANca Rudolph

Print Name

191 40 3104

Social Security #

63 LAkewood Rd.

Address No.                    Street

GreenSburg         Pa         15601

City                    State         Zip Code

**2. Agent's Identification:**

Full Name   Comprehensive Life

Agency _____   Code   3704

**3. Paramedical Firm Identification:**

*PORTAMEDIC*
*RD 8, Box 130-L, Route 30 East*
*Greensburg, PA 15601*
*(724) 834-1662 • (800) 456-3969*

**4. AMOUNT OF INSURANCE $** 250,000

## MEASUREMENTS

**1. Height**
5 ' 5 "
Ft. In.

**2. Weight** 163 Lbs.
Did you weigh? Yes

**6. Pulse Rate** 60 _____ per minute
Irregularities: ☑ No    ☐ Yes
Give # _____

**Males Only**

**3. A.** Chest Expanded _____ Inches

**B.** Chest Contracted _____ Inches

**C.** Abdomen _____ Inches

**4. Blood Pressure**    Obtain 3 Blood Pressure Readings

Systolic  104 mm  106 mm  106 mm

Diastolic  78 mm  78 mm  78 mm

(Phase V)

**5.** Are you related to the Proposed Insured or Agent?

☐ Yes         ☑ No

### INSTRUCTIONS TO EXAMINER

**Check Box if Completed:**

☑ ABC *(including HOS)*

☐ DBS *(including HOS)*

☐ HOS Only

☐ ECG

☐ APR Dr. _____

☐ OTHER _____

Complete all questions above.

Mail the specimen for laboratory analysis to the laboratory indicated in the instructions from your company.

No examiner has any authority to issue a certificate of health or to declare the Proposed Insured acceptable for insurance. Under our rule only the Company's underwriting department has authority to determine the insurability of the applicants for insurance.

Date _____ 10-8-03 _____

Penny Seibel LPN

Signature of Paramedical Representative

**IMPORTANT:**   Please refer to the instructions from your company for mailing.

Transamerica Life Companies
Individual Underwriting & Issue     OR
P.O. Box 419521
Kansas City, MO 64141-6521

Transamerica Assurance Company
P.O. Box 30852
Los Angeles, CA 90030-0852

**TRANSAMERICA** OCCIDENTAL LIFE

Transamerica Occidental Life Company
Home Office: Cedar Rapids, IA 52499
Marketing Office: Los Angeles, CA 90015
Administrative Office: P.O. Box 419521
Kansas City, MO 64141-6521

**Application Supplement**
Foreign Nationals & Foreign Travel
MPQ 16-199

1. Name: BIANCA RUDOLPH   2. Social Security No.: 191 - 40 - 3104
3. Place of Birth: Pittsburgh PA   4. Date of Entry to USA: N/A
5. Country of Citizenship (if US Citizen, skip to 12.) US
6. Do you possess an Alien Registration Receipt, "Green Card"? ☐ Yes ☐ No
7. Type of Visa (see listing of Visa types): _____
8. Visa Expiration Date: _____
9. When was the last time you traveled outside the US? Provide details. CAPTIVATING/CRUISE OCT 03
N/A

10. Do you own assets or property outside the US? (List) NO N/A

11. Do you own assets or property inside the US? (List) N/A

12. Length of Time with Present Employer: 15 years .
13. Do you plan to travel or reside outside of the US? ☑ Yes ☐ No
If Yes, please provide details.

| | Past 12 Months | Current 12 Months | Next 12 Months |
|---|---|---|---|
| **Destination(s)** | CAPTIVATING CRUISE Botswana Africa | Caribbean Cruise | Italy / Europe |
| **Date(s)** | Dec May 03 | Dec 03 | Summer 04 |
| **Duration of stay** | 10 days | 10 days | 2 weeks |
| **How Often** | every 2-3 years | | every 2 years |

14. Remarks: _____

**Types of Visas**

| | | | |
|---|---|---|---|
| A: | Government Official | I: | Information Media Rep. |
| B1: | Visitor/Business | J: | USIA Education/Cultural Exchange |
| B2: | Visitor/Medical Treatment | K1: | Fiancée/Fiancé I: Information Media Rep |
| C: | Transit | L: | Intra-Company Transfer |
| D: | Crewman | M: | Vocational/Non-Academic Studies |
| E1: | Treaty Trader | O1-2: | Science/Art |
| E2: | Treaty Investor | P1-3: | Athletes, Artists, Entertainers |
| E3-5: | Misc. Employment Visas | Q1: | INS Int'l Cultural Exchange |
| F1-4: | Family Based/Academic Studies | R: | Non-Immigrant Religious |
| G: | Representative to International Organization | SB-1: | Returning Resident Alien |
| H1-B: | Temporary Worker - Distinguished Merit/Ability | SD: | Immigrant - Religious |
| H-2A/B: | Temporary Worker - General Labor | TN: | NAFTA Professionals |
| H-3: | Temporary Worker - Trainee | | Other Category: ~ |

It is represented that the statements and answers given in this supplement to the application are true, complete and correctly recorded to the best of my knowledge and belief. It is agreed that this supplement shall be a part of the application to the Company for insurance on the life of the Proposed Insured.

Signed at Greensburg, PA   SIGN HERE on 1-17-04

**AGREEMENT OF OWNER IF OTHER THAN PROPOSED INSURED**
The Owner agrees to be bound by all statements, answers, and agreements made by the Proposed Insured in this supplement to the application. If the Owner is a corporation, an authorized officer, other than the Proposed Insured must sign as owner, giving corporate title and full name of corporation.

Signed at _____   on _____

Witness _____   Owner _____

Corporate Title: _____   Corporation Name: _____
MPQ 16-199

Transamerica Occidental
Life Insurance Company
1150 South Olive Street
Los Angeles, CA  90015

Policy Form  **TS10NI**
Individual Life Insurance

**Renewable Term Insurance to the Policy Anniversary Nearest Age 95
Level Death Benefit Payable at Death Before
the Policy Anniversary Nearest Age 95**

**See Schedule of Guaranteed Premiums in the
Policy Data for Amount of Premiums**

**Premiums Payable During Life of Insured to the
End of the Term Period**

**Premiums are Subject to Change as Stated
in Schedules of Premiums Provision,
But Will Not Exceed Specified Guaranteed Premiums**

**Nonparticipating – No Dividends**



Transamerica Life Insurance Company
4333 Edgewood Road NE
Cedar Rapids, IA 52499

July 29, 2016

Bianca Rudolph
4141 E Lakeside Ln
Paradise Valley, AZ 85253-2826

Policy Number:  42186233
Insured(s):    .   Bianca Rudolph

Dear Mrs Rudolph:

We received your requested change and have recorded it as submitted.

Our records have been revised to read as follows:

Primary Beneficiary(ies): Rudolph Trust dated April 25, 2016 100%

Contingent Beneficiary(ies): Lawrence P Rudolph 100%

Legal Disclaimer:  Such recording does not mean we have passed on the legal adequacy or
validity of the documentation and/or transaction.  Please consult your own legal or tax advisor
for any such determination.

We appreciate your business and this opportunity to be of service to you.  If you have any
questions or need additional assistance, please contact the Customer Service Department at 1-
800-852-4678.

Thank you for choosing Transamerica!

Customer Service Department
Fax 1-866-622-5051
tii.customerservice@transamerica.com

cc:    Oncor Insurance Services Llc 13504
Oncor Insurance Services Llc 1064655

## AAA

### *Life Insurance Company*

**(A Stock Company)**

# Group Insurance Certificate

Group Policy # GT8107

*Josh 1*

Certificate Holder:

Certificate #4019648262

BIANCA RUDOLPH
336 Lakewood Rd
Greensburg, PA 15601-9769

**PLEASE READ YOUR CERTIFICATE CAREFULLY**. This Certificate is a legal contract between You and Us. We issue it in return for Your application and payment of the first premium. An index to the Certificate's contents is on the next page.

We issue this Certificate to You as evidence of coverage under the Group Policy. We agree to pay the benefits provided by the terms of the Group Policy, which are summarized in this Certificate. If there is a discrepancy between this Certificate and the Group Policy, the terms and conditions of the Group Policy will govern.

**Beneficiary.** As stated on Your application, unless later changed as allowed by this Certificate.

**Thirty-one Day Right to Examine.** You have the right to examine this Certificate for a period 31 days after receipt. If You are not satisfied with the coverage provided, You may return this Certificate. All You have to do is mail or deliver it within 31 days to Our Home Office with a written request that We cancel it. If returned within the right to examine period. the Certificate will be considered void from the start and We will refund, within 31 days of its return, all premiums You have paid.

**THE BENEFITS OF THIS CERTIFICATE PROVIDING YOUR COVERAGE ARE GOVERNED BY THE LAWS OF A STATE OTHER THAN PENNSYLVANIA**

*Harold W Huffstetler*

*Robert J Dotson*

Harold W. Huffstetler, Jr., President

Robert J. Dotson, Secretary

### TOLL FREE INFORMATION AND COMPLAINT NUMBER:  (800) 624-1662

#### GROUP TERM LIFE INSURANCE

Offered Exclusively for Members of the American Automobile Association
Non-Participating – Not Eligible for Dividends

Home Office Mailing Address:  17900 N. Laurel Park Drive, Livonia, Michigan, 48152
Website:  www.aaalife.com

ALDM-19105-410-XX

## INDEX

**Provision**                                                        **Page**

Schedule Page.................................................................................3.

Part I – Definitions .........................................................................4.

Part II – Insurance Provisions ........................................................5.

Part III – General Provisions .........................................................6.

Part IV – Termination of Insurance...............................................7.

Part V – Beneficiary .....................................................................7.

Part VI – Claims and Benefit Payments ........................................8.

Part VII – Conversion ...................................................................9.

**The application, any endorsements, riders or related material follow the last page.**

P1YI9400500022S

# Certificate of Group Term Life Insurance
## Schedule of Benefits and Premiums

*CAMELBACK pay nest*

**Group Master Policyholder:**    BankNewport as Trustee of the AAA Group Insurance Trust, Newport, Rhode Island

| | | | |
|---|---|---|---|
| **Insured:** | BIANCA RUDOLPH | **Certificate Number:** | 4019648262 |
| **Effective Date:** | April 8, 2012 | **Issue Date:** | April 3, 2012 |
| **Issue Age:** | 52 | **Date of Birth:** | 12/4/1959 |
| **Sex:** | Female | **Issue State:** | PA |
| **Premium Class:** | STANDARD NON-NICOTINE | **Total Initial Annual Premium:** | $599.88* |
| **Premium Frequency Mode:** | Monthly | **Total Initial Modal Premium:** | $49.99* |
| **Conversion Age:** | To the Insured's Attained Age 65.   No conversions will be allowed once the insured reaches age 65 or on those certificates issued on or after age 65. | | |

**An administrative fee of $3.00/month will be added for Direct Monthly Billing.**

| Benefit Type | Benefit Amount | Monthly Premium | Effective Date | Expiration Date |
|---|---|---|---|---|
| Base Term Life Insurance | $200,000 | $49.99 | 4/8/2012 | 4/8/2040 |
| **Endorsements** | | | | |
| Accelerated Death Benefit Endorsement | | No charge | 4/8/2012 | 4/8/2040 |

Coverage is renewable annually, but not beyond the Expiration Date.   Expiration Dates shown are contingent upon this Certificate and Group Master Policy continuing in force.

*The Total premium shown includes the Base Term Life Insurance premium for your Attained Age, and the premium for any Riders attached hereto.

**Print Date**: April 3, 2012

GT8107CERTPA                                    3

## PART I – DEFINITIONS

**Attained Age**
means, on any given date, Your age on the most recent Renewal Date. During the first year of coverage under this Certificate, Your Attained Age is Your Issue Age.

**Effective Date**
means the date this Certificate becomes effective. It is shown on the Certificate Schedule of Benefits and Premiums Page (Schedule Page). The Effective Date is the date We use to determine Renewal Dates.

**Eligible Member (Member)**
means, on the Issue Date, a person whose name appears in good standing in the active files of the American Automobile Association.

**Eligible Spouse (Spouse)**
means on the Issue Date, the legal Spouse of a Member.

**Evidence of Insurability**
means proof satisfactory to Us that an Insured is an acceptable risk under the Group Policy.

**Group Policy**
means Group Life Insurance Policy bearing the number GT8107, issued to the Policyholder by Us. It includes any Riders or Endorsements attached to it.

**Home Office**
means the main administrative office of AAA Life Insurance Company located at 17900 N. Laurel Park Drive, Livonia, Michigan 48152.

**Insured**
means a Member or Spouse whose name appears on the Schedule Page, and who is insured under the Group Policy, including any elected Riders or Endorsements.

**Issue Date**
means the date we issue this Certificate, which is shown on the Schedule Page. The Issue Date is the date We use to measure the applicable time periods of the Suicide and Incontestability provisions in this Certificate.

**Officer of the Company**
means the President, a Vice President or Secretary of AAA Life Insurance Company.

**Policyholder**
means the Group Policyholder named on the Schedule Page.

**Renewal Period**
means each one-year period, after the first year, that this Certificate remains in force.

**We, Our, and Us**
means AAA Life Insurance Company at its Home Office.

**Written Notice**
means notification satisfactory to Us and received by Us at our Home Office.

**You and Your**
means the person insured by this Certificate as named on the Schedule Page.

## PART II – INSURANCE PROVISIONS

Only the Insured, named on the Schedule Page is covered for the insurance described in this Certificate.

**Effective Date of Insurance**
> The Certificate will be effective on the date shown on the Schedule Page, provided We receive premium during Your lifetime and within 31 days from the Issue Date.

**Benefits**
> The amount of life insurance You are covered for is shown on the Schedule Page. We will pay the amount of life insurance to Your beneficiaries when We receive proof of Your death while this Certificate and the Group Policy are in force. Please refer to PART VI – CLAIMS AND BENEFIT PAYMENTS for more information.

> The amount of life insurance payable will be reduced if You have received benefits under the Accelerated Death Benefit Endorsement.

> Payment of benefits under any riders or endorsements will be in accordance with the terms of the rider or endorsement.

**Certificate of Group Insurance**
This Certificate is issued to You because We approved Your application for insurance. This Certificate, a copy of Your application and any attached riders form the entire Certificate.

> The Schedule Page states:

> 1. The Effective Date and the amount of life insurance for which You are covered under the Group Policy.
> 2. The Effective Date of any endorsements or riders attached to this Certificate.
> 3. The premium required under this Certificate.

> We will provide You with a replacement Schedule Page whenever any of the above items are changed. The changed item(s) will be shown on the replacement Schedule Page and will apply as of the effective date of the change.

**Entire Contract**
> The Group Policy, the application of the Policyholder, and any attached riders, endorsements or amendments, constitutes the entire contract between the parties. Only an Officer of the Company can change the terms of the Policy/Certificate, and then only in writing.

**Premium Payment**
> The first premium due is the Total Initial Modal Premium shown on the Schedule Page. You must pay the first premium within 31 days of the Issue Date and during Your lifetime. You must pay all subsequent premiums on or before the premium due date, or within the 31 day grace period. We will consider the premium paid when it is received at Our mailing address shown on the first page of this Certificate.

> We guarantee premiums for one year from the Effective Date. After that date We may adjust premiums at any time. Any change We make in the premium rates will apply to all Insureds of the same age, sex, class, insurance amount, and year of issue.

> We will give You at least 45 days advance Written Notice of any change in premiums.

> The premium rates shown do not include the premium charged for any future additional benefits or riders.

# PART III – GENERAL PROVISIONS

**Suicide Limitation**

If You die by suicide, while sane or insane, within 2 years of the Issue Date, Our liability will be limited to a refund of the premiums paid.

**Incontestability**

We will not contest the validity of Your insurance after it has been in force for a period of 2 years from the Issue Date, during Your lifetime.  We will not use a statement made by You on the application to contest a claim unless:

1.  You die within 2 years of the Issue Date; and
2.  Any answer, representation or acknowledgment made by You on the application for insurance was not true and/or complete; and
3.  If We had known the correct facts, We would not have issued the Certificate, or the Certificate would not have been issued in its present form for the amount of insurance and/or the premium rate.

If We reinstate this Certificate, any statements made by You on the application for reinstatement are subject to the provisions of this section as of the reinstatement date.

**Statements**

We consider all statements made by You in the application to be representations and not warranties, unless they are fraudulent.  No statement will be used to void coverage or reduce benefits unless:

1.  It is in writing; and
2.  A copy is attached to this Certificate.

**Assignment**

You may not use the benefits under this Certificate for a collateral assignment.

**Misstatement of Age or Sex**

If Your age or sex was misstated, Your correct age or sex as of the date of application will be used to determine:

1.  The Effective, Renewal, or Expiration Dates of any benefits provided under this Certificate;
2.  The amount of insurance; and
3.  Any other rights or benefits under the Certificate.

If Your age or sex was misstated, We will adjust the amount of life insurance to be the amount that the premiums would have purchased at Your correct age or sex, on the date of application.

If, based on Your correct age, coverage under this Certificate would not have become effective, Our liability will be limited to a refund of Premiums, and the Certificate will be considered void from the start.

**Grace Period**

We will allow a 31 day grace period for all premiums due, except the first one. During this period the coverage will remain in force.  If the premium due is not paid by the end of the Grace Period, the coverage provided by the Certificate will lapse.  All insurance ends when the Certificate lapses.  If Your death occurs during the Grace Period, We will deduct any unpaid premium due from the benefit amount otherwise payable.

**Reinstatement of Insurance**

If We terminate insurance for non-payment of premium, You may reinstate coverage within 90 days following the last unpaid premium due date.  You must pay all overdue premiums and provide Us with satisfactory Evidence of Insurability.  We will not cover any loss under the reinstated Certificate that occurred during the lapse period.  If You have converted Your coverage to an individual policy of permanent insurance under the Conversion Privilege, You may not reinstate Your coverage under this Certificate

GT8107CERTPA                                    6

## PART IV – TERMINATION OF INSURANCE

Your coverage under the Group Policy will terminate on the earliest of the following dates:
1. The Expiration Date as shown on the Schedule Page;
2. The date You die;
3. The date You make a request to Us to cancel Your coverage under this Certificate;
4. The end of the last period for which You paid premiums;
5. The date the Group Policy is canceled.

## PART V – BENEFICIARY

You may name one or more beneficiaries to receive the benefits payable under the Certificate upon Your death.

During Your lifetime You may change the beneficiary if:
1. You give us a signed, dated, Written Request; and
2. We approve and record the change at Our Home Office; and
3. We have the beneficiary's written consent, if he/she is an irrevocable beneficiary.

No change will take effect until We have recorded it at Our Home Office. Once recorded (even if You have then died), the change will take effect on the date You signed the request. We may require that You send us Your Certificate so We can record the change. A change will not affect any payment We make before receiving Your request at Our Home Office.

GT8107CERTPA                    7

## PART VI – CLAIMS AND BENEFIT PAYMENTS

**Payment of Claims**

Life Insurance Benefits will be payable according to the beneficiary designation in effect at time of payment. All other benefits are paid directly to You.

**Notice of Claim**

Written Notice of Claim must be given to Us within 30 days after a covered Loss occurs, or as soon after that as reasonably possible. The notice should be sent to Our Home Office. Our mailing address for Notice of Claim is shown on the first page of this Certificate. Notice should include Your name and the Certificate Number.

**Claim Forms**

When We receive a Notice of Claim, We will furnish to the claimant our normal forms for filing Proofs of Loss. If We do not furnish those forms within 15 days after we receive the Notice, the claimant may submit Written Proof of Loss which includes a Death Certificate, if applicable, and a description of the occurrence, extent and character of the loss for which claim is made. Written Proof of Loss is subject to the time frames outlined in the next paragraph.

**Written Proof of Loss**

We must receive Written Proof of Loss, satisfactory to Us, at Our Home Office within 90 days after the date the Loss occurs. If it was not reasonably possible to give Us Written Proof of Loss within 90 days We will not reduce or deny a claim for this reason, provided the Written Proof of Loss was submitted as soon as reasonably possible. However, in no event, except in the absence of legal capacity, will benefits be paid if Written Proof of Loss is not submitted within 1 year from the date the Loss occurs.

**Time Payment of Claims**

We will pay the Claims for benefits provided under this Certificate within 60 days of Our receipt of Written Proof of Loss.

**Payment of Death Benefit Proceeds**

Unless restricted by law, We will pay the benefit proceeds due upon Your death as follows:

1.  If You have named 1 or more beneficiaries, the benefit proceeds will be paid to the surviving beneficiary or beneficiaries in equal shares, unless otherwise stated by You; or
2.  If You have not named a beneficiary, or if no named beneficiary survives You, the benefit will be paid to Your estate.
3.  If any benefit is payable to Your estate or to a beneficiary who is a minor or otherwise not competent to give a valid release, We may pay an amount up to $10,000 to any relative by blood or marriage whom We consider to be equitably entitled. If we make such a payment in good faith, We will not be liable for the amount paid.

**Physical Examination and Autopsy**

We have the right, at Our expense, to examine the person for whom a claim is made under this Certificate when and as often as it may reasonably require during the pendency of a claim and to have an autopsy performed in case of death where it is not forbidden by law.

**Legal Actions**

Legal action may not be taken to receive benefits until 60 days after the date Written Proof of Loss was submitted as described above. Legal action may not be taken after the expiration of the applicable statute of limitations.

**Benefit Proceeds Payment Options**

Any amount payable under the Certificate in settlement of a claim will be paid by Us in one lump sum, or any payment option mutually agreed upon.

## PART VII – CONVERSION PRIVILEGE

**Eligibility**

You are entitled to convert the life insurance provided under this Certificate to a permanent policy of life insurance (a converted policy) upon termination of Your insurance due to:
1.  cancellation of the Group Policy; or
2.  the end of the last period for which premiums have been paid, but before the Conversion Age shown on the Schedule Page.

**The Converted Policy**

You may convert the insurance under this Certificate to an individual permanent life insurance policy, which is then offered by Us for conversion purposes, other than term insurance.

You may convert any amount up to the amount of life insurance in force on Your life on the conversion date, subject to Our minimum policy amount requirements. The premium rate for the converted policy will be the premium rate for the amount and type of policy at Your Attained Age, sex, and class of insurance as of the effective date of the converted policy.

**Conversion Period**

To qualify for a converted policy, You must submit a written application to Us and pay the first premium due within 31 days after the date Your life insurance benefit under this Certificate terminates.

**Death Within the Conversion Period upon Termination of the Group Policy**

If You die during the 31 day conversion period, whether or not You have submitted an application for conversion, We will pay to Your beneficiary the amount of life insurance that was in force before the Certificate terminated.

If You applied for a converted policy during the 31 day conversion period, whether or not it was issued, the converted policy will be null and void, and the death claim will be paid for the amount of life insurance that was in force before the Certificate terminated. We will return any premium paid for the converted policy to the beneficiary as part of the death claim.

**Conditions for Conversion**

Other than Conversions due to Termination of the Group Policy, Conversion to an individual policy of permanent insurance is subject to all of the following conditions:

1.  Premiums are not being waived under any disability waiver of premium benefit.
2.  Premiums are current under this Certificate.
3.  The Issue Date of the new policy will be the date of the conversion.
4.  A new suicide or contestability period will not apply to benefits converted from this Certificate to the new policy. The suicide and contestability period under the new policy will be measured from the Issue Date of this Certificate.
5.  Accidental Death Benefits and Disability Waiver of Premium benefits that are included in Your coverage under this Certificate and in force on the date of conversion may be issued with the new policy only if offered by Us at Your Attained Age on the date of conversion. Any disability waiver of premium benefits will be subject to new Evidence of Insurability satisfactory to Us. The new policy will provide any accidental death benefits and disability waiver of premium benefits only for bodily injury or disease that starts after the date of conversion.
6.  Additional benefits will be issued with the new policy only with Our consent, and subject to Our requirements.



**(A Stock Company)**

17900 N. Laurel Park Drive, Livonia, MI 48152
(800) 624-1662

**Website: www.aaalife.com**

**CERTIFICATE OF GROUP TERM LIFE INSURANCE**

**Offered Exclusively for Members of the American Automobile Association**
Non-Participating - Not Eligible for Dividends



**Life Insurance
Company**

(A Stock Company)
**17900 N. Laurel Park Drive, Livonia, MI 48152-3985
(800) 624-1662**

## ACCELERATED DEATH BENEFIT ENDORSEMENT
(THIS ENDORSEMENT PROVIDES FOR IMMINENT DEATH AND IS NOT A LONG -TERM
CARE ENDORSEMENT)

**IMPORTANT NOTICE:  BENEFITS PROVIDED UNDER YOUR CERTIFICATE OF GROUP TERM LIFE
INSURANCE WILL BE REDUCED IF THE ACCELERATED DEATH BENEFIT IS PAID.**

**BENEFITS PAID UNDER THIS ENDORSEMENT MAY BE TAXABLE AND MAY AFFECT YOUR
ELIGIBILITY FOR GOVERNMENT PROGRAMS SUCH AS MEDICAID OR OTHER BENEFITS UNDER
STATE OR FEDERAL LAW.  YOU SHOULD CONTACT YOUR TAX ADVISOR TO ASSESS THE IMPACT
OF THIS BENEFIT ON YOUR PERSONAL SITUATION.  WE OR OUR AGENTS CANNOT PROVIDE TAX
OR LEGAL ADVICE.**

This Endorsement is attached to and becomes a part of Your Certificate.  Wherever the term "Schedule Page"
appears in this Endorsement, it shall have the same meaning as the term Data Page.  This Endorsement will
remain in effect only while the Certificate remains in effect. It is governed by the terms of the Group Policy and
Certificate that are not in conflict with the provisions of this Endorsement.

### EFFECTIVE DATE
This Endorsement will not become effective unless the Certificate is in force.

The Effective Date of this Endorsement is shown on the Schedule Page  (page 3a. of Your Certificate.)
If We reinstate coverage under this Endorsement, the Effective Date of the reinstated coverage will be
shown in a new Schedule Page (page 3a of Your Certificate.)

### BENEFIT
This Endorsement allows You to request an Accelerated Death Benefit Amount subject to all the
provisions of the Group Policy and Your Certificate.  This Endorsement is not intended to provide
health, nursing home, or long-term care insurance.

### INSURED ("YOU" OR "YOUR")
If You are the Insured named on the Schedule Page, You are covered by this Endorsement.

### PHYSICIAN
A doctor of medicine (M.D.) or osteopathy (D.O.) legally authorized to practice medicine or surgery,
within the scope of such authorization, by the state which he or she performs such function or action.
A Physician must not be the spouse, child, sibling, parent, grandparent, grandchild, or in-law of the
Insured.

### TERMINAL CONDITION
A  medical condition that is expected to result in Your death within twelve (12) months or less,
notwithstanding appropriate medical care.

### ELIGIBILITY
Before We make a payment under this Endorsement You must provide Us with Written Proof from a
licensed Physician that You suffer from a Terminal Condition.  As part of any proof, We may require
You to be examined, at Our expense, by a Physician chosen by us.  Such second opinion will be final.

In addition, You must provide Us with:
1.  a completed request for Accelerated Death Benefit form; and
2.  the written consent of any irrevocable Beneficiary or Assignee.

**CONDITIONS FOR ACCELERATED BENEFIT**
This Endorsement provides for the accelerated payment of a portion of your Certificate's base term life insurance benefit. This Endorsement is not intended to permit creditors and government agencies to cause You to involuntarily access proceeds ultimately payable to Your Beneficiary. Therefore, You are not eligible for this Benefit if You are required by law to use this Benefit to:
1.  satisfy the claims of creditors; or
2.  apply for, obtain or retain government Benefits.

You may apply for an Accelerated Death Benefit Amount provided Your Certificate is in force but not in the Grace Period.

**EXCLUSION**
The Accelerated Death Benefit Amount will not be available if the Terminal Illness results from an intentionally self-inflicted injury.

**ACCELERATED DEATH BENEFIT AMOUNT**
You may request an Accelerated Death Amount of up to fifty percent (50%) of your base Life Insurance Amount. However:
1.  You may not request a total greater than $500,000; and
2.  You must request at least $5,000; and
3.  the remaining Death Benefit payable under this Certificate and any Endorsements must be at least $5,000.

Only one Accelerated Death Benefit payment can be made under this Certificate.

**METHOD OF PAYMENT**

Immediately upon Our approval of Your request for an Accelerated Death Benefit Amount, We will make payment in one lump sum to the Owner or the Owner's estate, provided the Insured is living at the time payment is made. . The Accelerated Death Benefit payment will be the Accelerated Death Benefit Amount, less the $75 processing fee as set forth below.

**PREMIUM**
Your premiums payable under this Certificate will not be reduced because of any Accelerated Death Benefit payment We make. You must continue to pay premiums when they are due or within the Grace Period.

**FEES AND INTEREST**
We will charge a processing fee of $75 if We make an Accelerated Death Benefit Amount. The processing fee will be deducted from the Accelerated Death Benefit Amount otherwise payable.

We will charge interest at the rate of 8% annually in arrears on the amount of the Accelerated Death Benefit Amount. Any unpaid interest will be subtracted from the death benefit payable upon Your death.

**EFFECT OF BENEFIT**
Upon payment of an Accelerated Death Benefit, the death benefit payable under Your Certificate will be reduced by:
1.  the amount of the Accelerated Death Benefit payment; and
2.  any accrued and unpaid interest on the Accelerated Death Benefit payment.

**TERMINATION**
This Endorsement will terminate on the earliest of:
1.  the date when the Certificate this Endorsement is attached to terminates; or
2.  when You request that we cancel it by notifying us in writing; or
3.  upon Your death.

Signed for AAA Life Insurance Company at its Home Office in Livonia, Michigan.

Harold W. Huffstetler, Jr., President

Robert J. Dotson, Secretary

GT8108ENDCERTPA                                    3

## GROUP TERM LIFE INSURANCE APPLICATION

**AAA Life Insurance Company**

**How to apply:** Complete this form in ink and PRINT clearly. All sections must be completed to process your application. Mail in the postage-free envelope. Your spouse may also apply with or without you, even if they are not a AAA member. You do NOT have to send money now. Remember — you have 31 days to review your Certificate of Insurance when it arrives. **Questions? Call TOLL-FREE 1-800-974-1593.**

**It's as easy as 1-2-3!...**

Master Policy GT8107
215-4382152013980809
12MD215N6A K055003546

To help us speed this through for you,
**PLEASE COMPLETE AND MAIL BY APR. 20**
**SEND NO MONEY NOW**

### ① Member Information

DTOI 10/111.
R5

M6X
·········ECRLOT··R-014
Bianca Rudolph
336 Lakewood Rd
Greensburg, PA 15601-9769

483X000/69589

**Member Coverage Amount Desired:**
→ ☑ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☐ Male  ☑ Female
Date of Birth 1 2 / 0 4 / 1 9 5 9 (Must be age 18-69 to apply.)
Social Security Number 1 9 1 / 4 0 / 3 1 0 4
Place of Birth _Pittsburgh , Pa_
Height _5_ ft. _3_ in. Weight _130_ lbs.
Telephone Number ( 724 ) 832- 2408
E-Mail Address _Bianca Rudolph@comcast.net_
Beneficiary Name _Larry Rudolph_ Relationship _Husband_

### ② Spouse Information (if applying)

Name _____
First    Middle Initial    Last

Home Address _____

_____
City    State    Zip

Telephone Number ( )
E-Mail Address _____
Are you a AAA member or spouse of a member? ☐ Yes ☐ No

**Spouse Coverage Amount Desired:**
→ ☐ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☐ Male  ☐ Female
Date of Birth _ _ /_ _ /_ _ _ _ (Must be age 18-69 to apply.)
Social Security Number _ _ _ /_ _ /_ _ _ _
Place of Birth _____
Height ___ ft. ___ in. Weight ___ lbs.
Beneficiary Name _____ Relationship _____

### ③ Complete All Questions — for each person applying

| | MEMBER Yes | MEMBER No | SPOUSE Yes | SPOUSE No |
|---|---|---|---|---|
| 1. In the past 12 months have you used nicotine in any form? | ☐ | ☑ | ☐ | ☐ |
| **In the past 5 years, have you been:** | | | | |
| 2. Convicted of a felony, DUI, or had your license suspended or revoked? | ☐ | ☑ | ☐ | ☐ |
| 3. Diagnosed, treated, or advised to seek treatment for alcohol or substance abuse? | ☐ | ☑ | ☐ | ☐ |
| 4. Advised to have any surgery, treatment, follow-up test, hospital care, or medical investigations that are still pending for any abnormalities? | ☐ | ☑ | ☐ | ☐ |
| **In the past 10 years, have you been diagnosed or treated by a member of the medical profession for:** | | | | |
| 5. Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC) or Human Immunodeficiency Virus (HIV) infection? | ☐ | ☑ | ☐ | ☐ |
| 6. Paralysis, insulin dependent diabetes, lupus, Amyotrophic Lateral Sclerosis (ALS), multiple sclerosis, bipolar disorder, schizophrenia, major depression, stroke, heart or circulatory disorder, cancer, or tumor? (Answer **NO** if **you ONLY have** high blood pressure, or basal or squamous cell skin cancer.) | ☐ | ☑ | ☐ | ☐ |
| 7. Chronic kidney disease, cirrhosis, hepatitis C, blood disorders including leukemia, any central nervous system disorder including epilepsy, or lung disorders? (Answer **NO if you ONLY have** asthma or bronchitis.) | ☐ | ☑ | ☐ | ☐ |
| Will this certificate, if issued, replace any life insurance or annuity now in force? | ☐ | ☑ | ☐ | ☐ |

(If "YES," please list name of company, and policy number of policy to be replaced.)
Company/Policy # (Member): _N/A_    Company/Policy # (Spouse): _N/A_

### ④ Payment Method — SEND NO MONEY NOW, but please give us your payment choice. Absolutely No Obligation

**↓ Select One Payment Option**

☐ I authorize, until I revoke in writing, deduction of the **monthly premium** from my checking account. (Please attach a void check if you select this option.)

☑ I authorize, until I revoke in writing, the payment of the **monthly premium** from my credit card account (VISA, MasterCard, Discover or AmEx only.)

Credit Card Number: 4 2 5 7  0 7 1 0  0 1 7 8  5 3 9 5   Expiration Date: 0 1 / 1 2

• Please print name as it appears on checking account or credit card: _Lawrence P. Rudolph_

### ⑤ Please Read, Sign and Date

All answers in this application and any questionnaire completed in connection with this application are, to the best of my knowledge and belief, true. I understand the answers will be used to determine if coverage will be issued, and will be part of the Certificate. • If I misstate any of the information above, the Certificate may be voidable from inception by AAA Life Insurance Company. • Coverage will take effect on the Effective Date shown on the Certificate of Insurance; provided the first premium has been paid and there has been no change in my health since the date of the application. If my health changes prior to the issue date of the Certificate, I must inform the Company in writing. • To determine eligibility for insurance benefits, I authorize any licensed physician, medical practitioner, hospital, clinic, pharmacy, pharmacy benefit manager or other medical-related facility, insurance company, the Medical Information Bureau (MIB) or other organization that has any records or knowledge of medical or prescription history about me to give any such information to AAA Life Insurance Company, its reinsurer(s) or any agency employed by the Company to collect and transmit such information. • The Company will not use or disclose medical information for any purposes other than stated above except as

may be required by law. Such medical information may be subject to redisclosure and may no longer be protected by federal privacy regulations. • This authorization shall be valid for 24 months from the date signed. A copy of this authorization will be as valid as the original. • I have the right to revoke this authorization in writing to the Company; however if I do, the Company may decline my application. • I further acknowledge receiving the "NOTIFICATION" regarding the MIB. • **Fraud Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

_[signature]_
**Member** Signature (required if applying)    Date Signed (required) 3 /27/ 12

_[signature]_
**Spouse** Signature (required if applying)    Date Signed (required) 3 / /

**AAA Life Insurance Company** • 17900 N. Laurel Park Drive • Livonia, Michigan 48152 • **1-800-974-1593**

GT8107APP-10r
03-511-6-27/4401

P1Y5400500025

# Certificate of Group Term Life Insurance
## Schedule of Benefits and Premiums

**Group Master Policyholder:** BankNewport as Trustee of the AAA Group Insurance Trust. Newport, Rhode Island

| | | | |
|---|---|---|---|
| **Insured:** | BIANCA RUDOLPH | **Certificate Number:** | 4019648262 |
| **Effective Date:** | April 8, 2012 | **Issue Date:** | April 3, 2012 |
| **Issue Age:** | 52 | **Date of Birth:** | 12/4/1959 |
| **Sex:** | Female | **Issue State:** | PA |
| **Premium Class:** | STANDARD NON-NICOTINE | **Total Initial Annual Premium:** | $599.88* |
| **Premium Frequency Mode:** | Monthly | **Total Initial Modal Premium:** | $49.99* |
| **Conversion Age:** | To the Insured's Attained Age 65.  No conversions will be allowed once the insured reaches age 65 or on those certificates issued on or after age 65. | | |

**An administrative fee of $3.00/month will be added for Direct Monthly Billing.**

| Benefit Type | Benefit Amount | Monthly Premium | Effective Date | Expiration Date |
|---|---|---|---|---|
| Base Term Life Insurance | $200,000 | $49.99 | 4/8/2012 | 4/8/2040 |
| **Endorsements** | | | | |
| Accelerated Death Benefit Endorsement | | No charge | 4/8/2012 | 4/8/2040 |

Coverage is renewable annually, but not beyond the Expiration Date.  Expiration Dates shown are contingent upon this Certificate and Group Master Policy continuing in force.

*The Total premium shown includes the Base Term Life Insurance premium for your Attained Age, and the premium for any Riders attached hereto.

**Print Date**: April 3, 2012


**Life Insurance Company**

17900 N. Laurel Park Drive
Livonia, MI 48152
1-800-624-1662

## IMPORTANT NOTICE: REPLACEMENT OF LIFE INSURANCE OR ANNUITIES

This document must be signed by the applicant, and copy left with the applicant.

You are contemplating the purchase of a life insurance policy or annuity contract. In some cases this purchase may involve discounting or changing an existing policy or contract. If so, a replacement is occurring. Financed purchases are also considered replacements.

A replacement occurs when a new policy or contract is purchased and, in connection with the sale, you discontinue making premium payments on the existing policy or contract, or an existing policy or contract is surrendered, forfeited, assigned to the replacing insurer, or otherwise terminated or used in a financed purchase.

A financed purchase occurs when the purchase of a new life insurance policy involves the use of funds obtained by the withdrawal or surrender of or by borrowing some or all of the policy values, including accumulated dividends, of an existing policy to pay all or part of any premium or payment due on the new policy. A financed purchase is a replacement.

You should carefully consider whether a replacement is in your best interest. You will pay acquisition costs and there may be surrender costs deducted from your policy or contract. You may be able to make changes to your existing policy or contract to meet your insurance needs at less cost. A financed purchase will reduce the value of your exiting policy ad may reduce the amount paid upon the death of the insured.

We want you to understand the effects of replacements before you make your purchase decision and ask that you answer the following questions and consider the questions on the back of this form.

1. Are you considering discontinuing making premium payments, surrendering, forfeiting, assigning to the insurer, or otherwise terminating your existing policy or contract? ____YES ____NO

2. Are you considering using funds from your existing policies or contracts to pay premiums due on the new policy or contract? ____YES ____NO

If you answered "yes" to either of the above questions, list each existing policy or contract you are contemplating replacing (include the name of the insurer, the insured or annuitant and the policy or contract number if available) and whether each policy will be replaced or used as a source of financing:

| INSURER NAME | CONTRACT OR POLICY # | INSURED OR ANNUITANT | REPLACED (R) OR FINANCING (F) |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Make sure you know the facts. Contact your existing company or its agents for information about the old policy or contract. If you request one, an in force illustration, policy summary or available disclosure documents must be sent to you by the existing insurer.

Ask for and retain all sales material regarding this sale. Be sure you are making an informed decision.

The existing policy or contract is being replaced because _____.

ALDM-19050-310-XX

I certify that the responses herein are, to the best of my knowledge, accurate:

---

Applicant's Printed Name          Applicant's Signature          Date

A replacement may not be in your best interest, or your decision could be a good one. You should make a careful comparison of the costs and benefits of your existing policy or contract and the proposed policy or contract. One way to do this is to ask the company or agent that sold you your existing policy or contract to provide you with the information concerning your existing policy or contract. This may include an illustration of how your existing policy or contract is working now and how it would perform in the future based on certain assumptions. Illustrations should not, however, be used as a sole basis to compare policies or contracts. You should discuss the following with your agent to determine whether replacement or financing your purchase makes sense:

## PREMIUMS:
Are they affordable?
Could they change?
You're older—are premiums higher for the proposed new policy?
How long will you have to pay premiums on the new policy? On the old policy?

## POLICY VALUES:
New policies usually take longer to build cash values and to pay dividends.
Acquisition costs for the old policy may have been paid, you will incur costs for the new one.
What surrender charges do the policies have?
What expense and sales charges will you pay on the new policy?
Does the new policy provide more insurance coverage?

## INSURABILITY:
If your health has changed since you bought your old policy, the new one could cost you more, or you could be turned down. You may need a medical exam for a new policy. Claims on most new policies for up to the first two years can be denied based on inaccurate statements. Suicide limitations may begin anew on the new coverage.

## IF YOU ARE KEEPING THE OLD POLICY AS WELL AS THE NEW POLICY:
How are premiums for both policies paid?
How will the premiums on your existing policy be affected?
Will a loan be deducted from death benefits?
What values from the old policy are being used to pay premiums?

## IF YOU ARE SURRENDERING AN ANNUITY OR INTEREST SENSITIVE LIFE PRODUCT:
Will you pay surrender charges on your old contract?
What are the interest rate guarantees for the new contract?
Have you compared the contract charges or other policy expenses?

## OTHER ISSUES TO CONSIDER FOR ALL TRANSACTIONS:
What are the tax consequences of buying the new policy?
Is this a tax free exchange? (See your tax advisor.)
Is there a benefit from favorable "grandfathered" treatment of the old policy under the federal tax code?
Will the existing insurer be willing to modify the old policy?
How does the quality and financial stability of the new company compare with your existing company?

ALDM-19050-310-XX

# PRIVACY NOTICE


**AAA**
*Life Insurance Company*

*Important Information*
*About Your Privacy*

**DEAR VALUED CUSTOMER:**
We thank you for your trust and confidence. We are committed to providing you, our customer, with competitive insurance and annuity products and services to help you meet your changing needs. We are equally committed to protecting the private and personal information we collect and maintain about you. This notice describes our current privacy policy and practices relating to your nonpublic personal information. We will provide this notice to you at least once a year as required by law. You do not need to contact us to benefit from our privacy protections.

## DO YOU NEED TO DO ANYTHING?
**You do NOT need to take any action in response to this Privacy Notice.** Because we do not share your private or nonpublic personal information with anyone other than as described below, you do not need to "opt-out" or "opt-in." If you have questions after reading this notice, please feel free to contact us at 1-800-624-1662.

## OUR PRIVACY PRINCIPLES:
- We do not sell or rent your personal information.
- We do not share your personal information with companies who want to market their products or services to you.
- We do not allow those who do business on our behalf to use our customer information for their own marketing purposes.
- We require all entities providing products or services on our behalf to protect customer information.
- We do not share your medical information unless you expressly authorize it, it is permitted or required by law, or your application, policy, or contract with us permits disclosure.
- All customers (former, existing, and potential) receive the same privacy protections.

## INFORMATION WE MAY COLLECT AND USE
In order to provide our insurance and annuity products and services to you, we gather private and nonpublic personal information about you. Private and nonpublic personal information is information about you that cannot be obtained from public sources such as telephone directories or government records. We seek to collect and use only information that is necessary to conduct our business, advise you of our products and services, provide you with customer service, and confirm your identity.

We may gather nonpublic information about you through sources such as:
- Applications, forms, and medical exams and tests that you complete;
- Policies, certificates, and contracts for products that you have with us;
- Written, electronic, telephone, and other communications from you, your agent, or your AAA Club;
- Your transactions or experiences with us, such as payment, underwriting, and claim information.

With your written authorization, we may also collect and use data from:
- Medical or other health care providers;
- Consumer reporting agencies in compliance with the federal Fair Credit Reporting Act;
- Your employer, business associates or advisors, or other companies with whom you do business.

## HOW WE USE INFORMATION ABOUT YOU
We use your personal information to:
- Process your application (including underwriting, rating, and issuance determinations);
- Process your claims;
- Provide customer service;
- Offer additional products that may suit your insurance needs.

## CONFIDENTIALITY OF MEDICAL INFORMATION
You may have a special concern about the privacy and protection of your medical information. We only use and share personally-identifiable medical information for the following limited purposes:
- To underwrite life insurance and make eligibility, risk rating, and policy/certificate/contract issuance determinations;
- To administer your policy/certificate/contract or claim;
- For such other purposes as required or permitted by law, such as in response to legal process.

## INFORMATION WE MAY DISCLOSE
We do not disclose nonpublic personal information about you to anyone except as required or permitted by applicable law. We do not sell, or otherwise distribute for sale, customer lists or any nonpublic personal information about our customers. However, in order to provide you with quality service, sometimes it is necessary for us to share your personal information with others.

We may share your personal information with:
- Your AAA Club, insurance agent, or broker authorized to represent us in order to better serve you and help meet your product and service needs;
- Companies or individuals performing services on our behalf such as marketing, printing, and mailing vendors;
- The Medical Information Bureau, consumer reporting agencies, or other entities as needed to underwrite policies, process claims, and protect against fraud;
- Regulatory authorities, law enforcement, or other government agencies as required by law or in response to a valid subpoena.

ALAN-17778-N10-XX

Page 1 of 2



**Life Insurance Company**

We do not allow those doing business on our behalf to use our customer information for their own marketing purposes. We require all third parties providing services to us to keep confidential and protect all customer information and use such information only for the services we have authorized.

## CUSTOMER RECORDS

Maintaining complete and accurate customer information is important to us. Generally, you have the right to review, copy, and correct your personal information. We will not make available to you any information collected in connection with or in anticipation of a claim or lawsuit in which you are involved. We may charge you for copies of your records.

If you believe that any of our records are incorrect, you may notify us in writing of any corrections. We will correct your information within 30 days or provide you with the reasons the change is not made and inform you of your right to file a statement about the corrections. Your statement will be kept on file and provided to anyone reviewing your records. Any corrections will be sent to those parties who may have received information from us within the past two years or to support organizations that have received such information during the past seven years. If you believe that our records contain incorrect information, or you would like more information on how to view or correct your information, please contact us at 1-800-624-1662.

## PROTECTING CUSTOMER INFORMATION

We have implemented high standards to safeguard your personal information and maintain strict control over access to such information. These standards meet or exceed the federal and state law requirements. In order to ensure the safety and confidentiality of your nonpublic personal information, we continually:

- Maintain and monitor physical, electronic, and procedural safeguards;
- Review our policies and practices;
- Monitor our computer networks;
- Test the strength of our security;
- Restrict employee access to those who need the information to perform their assigned duties and provide products and services to you;
- Perform a full and thorough employee background screening which includes criminal background and drug screening processes.

## FOR THOSE VISITING AAALIFE.COM

Our concern for the privacy of your personal information extends to your use of our website. We use technologies such as data encryption and Secure Sockets Layer (SSL) protocol to provide a high level of security and privacy when you utilize our website.

Our website offers customized features that require use of "HTTP cookies" and similar data files – tiny pieces of information that we ask your browser to store. We make very limited use of these data files. We don't use them to pull data from your hard drive, to learn your email address, or to view data in cookies or other similar data files created by other websites. Our "cookies" are used only when you are visiting our websites. By themselves, the "cookies" do not tell us personally-identifiable information about you. Only you can provide that information on our websites – if you so choose. We will not share the information in these data files or give others access to it – except to help us better serve your needs.

When you visit our website, we may collect certain technical and navigational information, such as computer browser type, Internet protocol address, pages visited, and average time spent on our website. This information may be used, for example, to alert you about software compatibility issues or to resolve technical or service problems, or it may be analyzed to improve our site design and functionality, as well as our ability to serve you.

In certain instances, we may use third-party service providers to place advertisements for us on other websites and help us measure the effectiveness of our online advertising. These service providers may use cookies and tracking pixels, tiny invisible graphics that contain unique identifiers, to collect limited Web navigation information, such as the advertisement presented, IP address, operating system and browser type, and pages visited on our site. We do not provide any personally-identifiable information about our users or customers to these service providers, and they do not collect such information for us.

---

This notice applies to AAA Life Insurance Company, Auto Club Life Insurance Company, and their agents. If you have a relationship with AAA or affiliated AAA companies, you may receive additional privacy notices from them.

*Thank you for choosing us. We value you as a customer and appreciate the opportunity to serve you.*

17900 N. Laurel Park Drive • Livonia, MI 48152
800-624-1662 • www.aaalife.com



# Record

*of*

# Application

I, _Lawrence Rudolph_ on _5/5/12_

**PRINT YOUR NAME**

did hereby apply for Term Life Insurance in the amount of (check one):

☑ **$200,000**⁰⁰

☐ **$100,000**⁰⁰

☐ **$50,000**⁰⁰

☐ **$25,000**⁰⁰

from *AAA Life Insurance Company*, Master Policy GT8107. In the event of my death before receipt of my Certificate of Coverage, call AAA Life toll-free **1-800-974-1593** to ascertain the status of my coverage and the amount of benefits that may be due to my heirs.



*Keep this in your Certificate Holder until you receive your Certificate of Coverage.*

**AAA Life Insurance Company • 17900 N. Laurel Park Drive • Livonia, Michigan 48152**

KEEP UNTIL YOU RECEIVE CERTIFICATE OF COVERAGE

# AAA Life Insurance Company

## GROUP TERM LIFE INSURANCE APPLICATION

**How to apply:** Complete this form in ink and PRINT clearly. All sections must be completed to process your application. Mail in the postage-free envelope. Your spouse may also apply with or without you, even if they are not a AAA member. You do NOT have to send money now. Remember – you have 31 days to review your Certificate of Insurance when it arrives. **Questions? Call TOLL-FREE 1-800-974-1593.**

**It's as easy as 1-2-3!...**

Master Policy GT8107
215-4382152013980809
12AD215N4A K071335676

To help us speed this through for you,
**PLEASE COMPLETE AND MAIL BY JUN. 1**
SEND NO MONEY NOW

DTO1 10/11f M7

## 1 Member Information

45P
Bianca Rudolph
336 Lakewood Rd
Greensburg, PA 15601-9769

470/21343/23118

**Member Coverage Amount Desired:**
→ ☐ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☐ Male  ☐ Female
Date of Birth _ _ / _ _ / _ _ _ _ (Must be age 18-69 to apply.)
Social Security Number _ _ _ / _ _ / _ _ _ _
Place of Birth _____
Height ____ ft. ____ in. Weight ____ lbs.
Telephone Number ( ____ ) _____
E-Mail Address _____
Beneficiary Name _____ Relationship _____

## 2 Spouse Information (if applying)

Name  **Lawrence**  **Rudolph**
   First      Middle Initial      Last

Home Address  **336 Lakewood Rd**
**Greensburg**  **PA**  **15601**
   City      State      Zip

Telephone Number **(724) 757 9134**
E-Mail Address **biancarudolph@comcast.net**
Are you a AAA member or spouse of a member? ☐ Yes ☐ No

**Spouse Coverage Amount Desired:**
→ ☑ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☑ Male  ☐ Female
Date of Birth **1 / 7 / 1955** (Must be age 18-69 to apply.)
Social Security Number **1 95 46 3852**
Place of Birth **Pittsburgh PA**
Height **5** ft. **11** in. Weight **175** lbs.
Beneficiary Name **Bianca Rudolph** Relationship **wife**

## 3 Complete All Questions — for each person applying

| | MEMBER | | SPOUSE | |
|---|---|---|---|---|
| | **Yes** | **No** | **Yes** | **No** |
| **1.** In the past 12 months have you used nicotine in any form? | ☐ | ☐ | ☐ | ☑ |
| **In the past 5 years, have you been:** | | | | |
| **2.** Convicted of a felony, DUI, or had your license suspended or revoked? | ☐ | ☐ | ☐ | ☑ |
| **3.** Diagnosed, treated, or advised to seek treatment for alcohol or substance abuse? | ☐ | ☐ | ☐ | ☑ |
| **4.** Advised to have any surgery, treatment, follow-up test, hospital care, or medical investigations that are still pending for any abnormalities? | ☐ | ☐ | ☐ | ☑ |
| **In the past 10 years, have you been diagnosed or treated by a member of the medical profession for:** | | | | |
| **5.** Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC) or Human Immunodeficiency Virus (HIV) infection? | ☐ | ☐ | ☐ | ☑ |
| **6.** Paralysis, insulin dependent diabetes, lupus, Amyotrophic Lateral Sclerosis (ALS), multiple sclerosis, bipolar disorder, schizophrenia, major depression, stroke, heart or circulatory disorder, cancer, or tumor? (Answer **NO if you ONLY have** high blood pressure, or basal or squamous cell skin cancer.) | ☐ | ☐ | ☑ | ☐ |
| **7.** Chronic kidney disease, cirrhosis, hepatitis C, blood disorders including leukemia, any central nervous disorder including epilepsy, or lung disorders? (Answer **NO if you ONLY have** asthma or bronchitis.) | ☐ | ☐ | ☐ | ☑ |
| Will this certificate, if issued, replace any life insurance or annuity now in force? | ☐ | ☐ | ☐ | ☑ |

(If "YES," please list name of company, and policy number of policy to be replaced.)

Company/Policy # (Member): _____  Company/Policy # (Spouse): _____

## 4 Payment Method — SEND NO MONEY NOW, but please give us your payment choice. Absolutely No Obligation.

↓ **Select One Payment Option**

☐ I authorize, until I revoke in writing, deduction of the **monthly premium** from my checking account. (Please attach a void check if you select this option.)

☑ I authorize, until I revoke in writing, the payment of the **monthly premium** from my credit card account. (VISA, MasterCard, Discover or AmEx only.)

Credit Card Number: ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐  Expiration Date: ☐☐/☐☐

• Please print name as it appears on checking account or credit card: _____

Telephone Number ( )
E-Mail Address _____
Beneficiary Name _____ Relationship ____

## 2 Spouse Information (if applying)

Name **Lawrence** **Rudolph**
First    Middle Initial    Last

Home Address **336 Lakewood Rd**
**Greensburg    PA    15601**
City    State    Zip

Telephone Number **(724) 757 9134**

E-Mail Address **biancarudolph@comcast.net**

Are you a AAA member or spouse of a member? ☐ Yes ☐ No

**Spouse Coverage Amount Desired:**
→ ☑ $200,000 ☐ $100,000 ☐ $50,000 ☐ $25,000

Gender: ☑ Male ☐ Female

Date of Birth **1/7/1955** (Must be age 18-69 to apply.)

Social Security Number **1 55 46 3852**

Place of Birth **Pittsburgh PA**

Height **5** ft. **11** in. Weight **175** lbs.

Beneficiary Name **Bianca Rudolph** Relationship **wife**

## 3 Complete All Questions — for each person applying

| | MEMBER | | SPOUSE | |
|---|:---:|:---:|:---:|:---:|
| | Yes | No | Yes | No |
| **1.** In the past 12 months have you used nicotine in any form? | ☐ | ☐ | ☐ | ☑ |
| **In the past 5 years, have you been:** | | | | |
| **2.** Convicted of a felony, DUI, or had your license suspended or revoked? | ☐ | ☐ | ☐ | ☑ |
| **3.** Diagnosed, treated, or advised to seek treatment for alcohol or substance abuse? | ☐ | ☐ | ☐ | ☑ |
| **4.** Advised to have any surgery, treatment, follow-up test, hospital care, or medical investigations that are still pending for any abnormalities? | ☐ | ☐ | ☐ | ☑ |
| **In the past 10 years, have you been diagnosed or treated by a member of the medical profession for:** | | | | |
| **5.** Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC) or Human Immunodeficiency Virus (HIV) infection? | ☐ | ☐ | ☐ | ☑ |
| **6.** Paralysis, insulin dependent diabetes, lupus, Amyotrophic Lateral Sclerosis (ALS), multiple sclerosis, bipolar disorder, schizophrenia, major depression, stroke, heart or circulatory disorder, cancer, or tumor? (Answer **NO if you ONLY have** high blood pressure, or basal or squamous cell skin cancer.) | ☐ | ☐ | ☑ | ☐ |
| **7.** Chronic kidney disease, cirrhosis, hepatitis C, blood disorders including leukemia, any central nervous disorder including epilepsy, or lung disorders? (Answer **NO if you ONLY have** asthma or bronchitis.) | ☐ | ☐ | ☐ | ☑ |
| Will this certificate, if issued, replace any life insurance or annuity now in force? | ☐ | ☐ | ☐ | ☑ |

(If "YES," please list name of company, and policy number of policy to be replaced.)

Company/Policy # (Member): _____ Company/Policy # (Spouse): _____

## 4 Payment Method — SEND NO MONEY NOW, but please give us your payment choice. Absolutely No Obligation.

↓ **Select One Payment Option**

☐ I authorize, until I revoke in writing, deduction of the **monthly premium** from my checking account. (Please attach a void check if you select this option.)

☑ I authorize, until I revoke in writing, the payment of the **monthly premium** from my credit card account. (VISA, MasterCard, Discover or AmEx only.)

Credit Card Number: ☐☐☐☐ ☐☐☐☐ ☐☐☐☐ ☐☐☐☐  Expiration Date: ☐☐/☐☐

• Please print name as it appears on checking account or credit card: _____

## 5 Please Read, Sign and Date

All answers in this application and any questionnaire completed in connection with this application are, to the best of my knowledge and belief, true. I understand the answers will be used to determine if coverage will be issued, and will be part of the Certificate. • If I misstate any of the information above, the Certificate may be voidable from inception by AAA Life Insurance Company. • Coverage will take effect on the Effective Date shown on the Certificate of Insurance; provided the first premium has been paid and there has been no change in my health since the date of the application. If my health changes prior to the issue date of the Certificate, I must inform the Company in writing. • To determine eligibility for insurance benefits, I authorize any licensed physician, medical practitioner, hospital, clinic, pharmacy, pharmacy benefit manager or other medical-related facility, insurance company, the Medical Information Bureau (MIB) or other organization that has any records or knowledge of medical or prescription history about me to give any such information to AAA Life Insurance Company, its reinsurer(s) or any agency employed by the Company to collect and transmit such information. • The Company will not use or disclose medical information for any purposes other than stated above except as

may be required by law. Such medical information may be subject to redisclosure and may no longer be protected by federal privacy regulations. • This authorization shall be valid for 24 months from the date signed. A copy of this authorization will be as valid as the original. • I have the right to revoke this authorization in writing to the Company; however if I do, the Company may decline my application. • I further acknowledge receiving the "NOTIFICATION" regarding the MIB. • **Fraud Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

✓ **Member** Signature (required if applying)    **5 15 12** Date Signed (required)

✓ **Spouse** Signature (required if applying)    **5 15 12** Date Signed (required)

**AAA Life Insurance Company** • 17900 N. Laurel Park Drive • Livonia, Michigan 48152 • **1-800-974-1593**

GT8107APP-10r
14-S156-33/2082

## AAA Life Insurance Company
### respects your privacy

**Notification that information regarding your insurability will be treated as confidential.** AAA Life Insurance Company, or its reinsurers may, however, make a brief report thereon to the Medical Information Bureau (MIB), a not-for-profit membership organization of insurance companies, which operates an information exchange on behalf of its members. If you apply to another MIB member company for life or health insurance coverage, or a claim for benefits is submitted to such a company, MIB, upon request, will supply such company with the information in its file.

Upon receipt of a request from you, MIB will arrange disclosure of any information it may have in your file. Please contact MIB at 1-866-692-6901 (TTY 1-866-346-3642). If you question the accuracy of information in MIB's file, you may contact MIB and seek a correction in accordance with the procedures set forth in the federal Fair Credit Reporting Act. The address of MIB's information office is 50 Braintree Hill Park, Suite 400, Braintree, MA 02184-8734. Their website is www.mib.com.

AAA Life Insurance Company, or its reinsurers, may also release information in its file to other insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitted.

**This entire package is an outline of the Certificate provisions and does not contain all of the benefits and exclusions. For complete terms of the insurance coverage, please refer to your Certificate or the Group Master Policy.**

### Your Accelerated Death Benefit Endorsement

Under this benefit, if an insured member is diagnosed with a terminal illness that will cause death in 12 months or less, as much as 50% of the total benefit can be applied for as one lump sum, to be used as you choose.* The remaining benefit payable at death will be reduced by the accelerated death benefit paid and any accrued and unpaid interest.

Receipt of accelerated death benefits may affect your eligibility for public assistance programs and may be taxable. You should consult with the appropriate social service agency and seek the advice of tax counsel before applying for these funds.

**We will deduct a processing fee of $75.00.**

The Accelerated Death Benefit is not available if the terminal illness results from an intentionally self-inflicted injury.

Benefit may not be available in all states.

Exclusions: In the event of a suicide during the first two years of your coverage, benefits are limited to a full return of premium.**

*Length of time varies by state.
**12 months in North Dakota, Colorado, and Missouri.
Form Series GT8107

## AAA Life Insurance Company
17900 N. Laurel Park Drive • Livonia, MI 48152

### Call toll-free 1-800-974-1593
#### Please refer to "GT8107"



**Life Insurance Company**

## GROUP TERM LIFE INSURANCE APPLICATION

**How to apply:** Complete this form in ink and PRINT clearly. All sections must be completed to process your application. Mail in the postage-free envelope. Your spouse may also apply with or without you, even if they are not a AAA member. You do NOT have to send money now. Remember – you have 31 days to review your Certificate of Insurance when it arrives. **Questions? Call TOLL-FREE 1-800-974-1593.**



Master Policy GT8107
215-4382152013980809
12MD215N6A K055003546

To help us speed this through for you,
**PLEASE COMPLETE AND MAIL BY APR. 20**
SEND NO MONEY NOW

### ● Member Information

DTOI 10/11f
R5

**M6X**
•••••••••••••••••ECRLOT**R-014
Bianca Rudolph          483/000/69589
336 Lakewood Rd
Greensburg, PA 15601-9769

**Member Coverage Amount Desired:**
→ ☑ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☐ Male  ☑ Female
Date of Birth _1 2_ / _0 4_ / _1 9 5 9_ (Must be age 18-69 to apply.)
Social Security Number _1 9 1_ / _4 0_ / _3 1 0 4_
Place of Birth _PITTSBURGH . PA_
Height _5_ ft. _3_ in. Weight _130_ lbs.
Telephone Number (_724_) _832-2408_
E-Mail Address _BIANCA RUDOLPH@COMCAST.NET_
Beneficiary Name _Larry Rudolph_ Relationship _Husband_

### ● Spouse Information (if applying)

Name _____
First        Middle Initial        Last

Home Address _____

_____
City        State        Zip

Telephone Number (____) _____

E-Mail Address _____

Are you a AAA member or spouse of a member? ☐ Yes ☐ No

**Spouse Coverage Amount Desired:**
→ ☐ $200,000  ☐ $100,000  ☐ $50,000  ☐ $25,000

Gender: ☐ Male  ☐ Female
Date of Birth _ _ / _ _ / _ _ _ _ (Must be age 18-69 to apply.)
Social Security Number _ _ _ / _ _ / _ _ _ _
Place of Birth _____
Height ____ ft. ____ in. Weight ____ lbs.
Beneficiary Name _____ Relationship _____

### ● Complete All Questions — for each person applying

| | MEMBER | | SPOUSE | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| 1. In the past 12 months have you used nicotine in any form? | ☐ | ☑ | ☐ | ☐ |
| **In the past 5 years, have you been:** | | | | |
| 2. Convicted of a felony, DUI, or had your license suspended or revoked? | ☐ | ☑ | ☐ | ☐ |
| 3. Diagnosed, treated, or advised to seek treatment for alcohol or substance abuse? | ☐ | ☑ | ☐ | ☐ |
| 4. Advised to have any surgery, treatment, follow-up test, hospital care, or medical investigations that are still pending for any abnormalities? | ☐ | ☑ | ☐ | ☐ |
| **In the past 10 years, have you been diagnosed or treated by a member of the medical profession for:** | | | | |
| 5. Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC) or Human Immunodeficiency Virus (HIV) infection? | ☐ | ☑ | ☐ | ☐ |
| 6. Paralysis, insulin dependent diabetes, lupus, Amyotrophic Lateral Sclerosis (ALS), multiple sclerosis, bipolar disorder, schizophrenia, major depression, stroke, heart or circulatory disorder, cancer, or tumor? (Answer **NO** if you **ONLY have** high blood pressure, or basal or squamous cell skin cancer.) | ☐ | ☑ | ☐ | ☐ |
| 7. Chronic kidney disease, cirrhosis, hepatitis C, blood disorders including leukemia, any central nervous disorder including epilepsy, or lung disorders? (Answer **NO if you ONLY have** asthma or bronchitis.) | ☐ | ☑ | ☐ | ☐ |
| Will this certificate, if issued, replace any life insurance or annuity now in force? | ☐ | ☑ | ☐ | ☐ |

(If "YES," please list name of company, and policy number of policy to be replaced.)
Company/Policy # (Member): _N/A_          Company/Policy # (Spouse): _N/A_

### ● Payment Method — SEND NO MONEY NOW, but please give us your payment choice. Absolutely No Obligation.

↓ **Select One Payment Option**

☐ I authorize, until I revoke in writing, deduction of the **monthly premium** from my checking account. (Please attach a void check if you select this option.)

☑ I authorize, until I revoke in writing, the payment of the **monthly premium** from my credit account (VISA, MasterCard, Discover or AmEx only.)

Credit Card Number: |4|2|5|9| |0|7|1|0| |0|1|7|3| |3|5|4|5|     Expiration Date: |0|7|/|1|4|

• Please print name as it appears on checking account or credit card: _LAWRENCE P. RUDOLPH_

... blood pressure, or basal or squamous cell skin cancer.) ................................ ☐ ☑ ☐ ☐

...dney disease, cirrhosis, hepatitis C, blood disorders including leukemia, any central nervous disorder ...ing epilepsy, or lung disorders? (Answer **NO if you ONLY have** asthma or bronchitis.) ................ ☐ ☑ ☐ ☐

...s certificate is issued, replace any life insurance or annuity now in force? .......................... ☐ ☑ ☐ ☐

...ES please list name of company, and policy number of policy to be replaced.)

...pany/Policy # (Member):  _N/A_          Company/Policy # (Spouse):  _N/A_

## Payment Method — SEND NO MONEY NOW, but please give us your payment choice. Absolutely No Obligation.

**Select One Payment Option**

☐ I authorize, until I revoke in writing, deduction of the **monthly premium** from my <u>checking account</u>. (Please attach a void check if you select this option.)

☐ I authorize, until I revoke in writing, the payment of the **monthly premium** from my <u>credit card account</u> (VISA, MasterCard, Discover or AmEx only.)

Credit Card Number  `4 2 5 9  0 7 0 6  0 7 3 3  3 3 4 5`     Expiration Date:  `0 7` / `1 4`

Please print name as it appears on checking account or credit card:  _Lowrance P. Rudolph_

## Please Read, Sign and Date

...swers in this application and any questionnaire completed in connection with ...pplication are, to the best of my knowledge and belief, true. I understand the ...rs will be used to determine if coverage will be issued, and will be part of ...rtificate  • If I misstate any of the information above, the Certificate may be ...le from inception by AAA Life Insurance Company.  • Coverage will take ...on the Effective Date shown on the Certificate of Insurance; provided the first ...um has been paid and there has been no change in my health since the date of ...plication. If my health changes prior to the issue date of the Certificate, I must ...the Company in writing.  • To determine eligibility for insurance benefits, I ...ize any licensed physician, medical practitioner, hospital, clinic, pharmacy, ...acy benefit manager or other medical-related facility, insurance company, ...edical Information Bureau (MIB) or other organization that has any records or ...edge of medical or prescription history about me to give any such information ...A Life Insurance Company, its reinsurer(s) or any agency employed by the ...any to collect and transmit such information.  • The Company will not use or ...se medical information for any purposes other than stated above except as

may be required by law. Such medical information may be subject to redisclosure and may no longer be protected by federal privacy regulations.  • This authorization shall be valid for 24 months from the date signed. A copy of this authorization will be as valid as the original.  • I have the right to revoke this authorization in writing to the Company; however if I do, the Company may decline my application.  • I further acknowledge receiving the "NOTIFICATION" regarding the MIB.  • **Fraud Warning:** Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

✓ _Lawrence Rudolph_          3 /27/ 12
**Member** Signature (required if applying)    Date Signed (required)

✓ _Lori _____ _          3 / /
**Spouse** Signature (required if applying)    Date Signed (required)

**AAA Life Insurance Company** • 17900 N. Laurel Park Drive • Livonia, Michigan 48152 • **1-800-974-1593**

APP-10r

**Bianca Rudolph**

| | |
|---|---|
| From: | <helpdesk@AAALIFE.COM> |
| Date: | Wednesday, April 04, 2012 1:51 AM |
| To: | <Biancarudolph@comcast.net> |
| Subject: | Your Insurance Application Has Been Approved |

*queue peuu  Sep 8  2013*

Congratulations Bianca!

Your application for $200,000 of AAA Annual Renewable Term Life Insurance offered by AAA Life
Insurance Company has been APPROVED. Your certificate number is 4019648262.

Be on the look-out for your Welcome Packet in the mail, which contains important information about
your coverage. You should receive it shortly.

If you chose on your application to make your premium payment from a credit card or checking
account, the payment will be automatically drafted and applied to your account. Your coverage will
begin once the payment has been applied. If you elected our direct bill option, you can make your
premium payment using one of the payment methods below to start your insurance coverage.

Pay Online: Visit www.aaalife.com/billpay to make a single payment or to set-up automatic recurring
payments. You will need to have your certificate number ready to make your payment.

Pay by Phone: Just dial 1-800-684-4222 and provide payment to one of our Member Service Advocates.

Pay by Mail: Send us your premium notice in the envelope enclosed in your Welcome Packet.

Thank you for placing your trust in AAA Life Insurance Company.

We greatly appreciate the opportunity to serve you! Any questions, please contact our Member Services
department at 1-800-684-4222.

P.S. If your premium payment has already been made, please disregard this email and accept our sincere
thanks for your business.

AAA Life Insurance Company, 17900 N. Laurel Park Drive, Livonia, MI 48152

*User Name  Password*

This is a system-generated message. Please do not reply to this email.

4/10/2012



**Life Insurance
Company**

17900 N. Laurel Park Drive
Livonia, MI 48152-3985
1-800-624-1662
Fax: 866-494-3254

www.AAALife.com

May 25, 2016

Bianca Rudolph
4141 E Lakeside Ln
Paradise Vly, AZ 85253-2826

Re:  AAA Life Insurance Company Certificate#: 4019648262
     Insured: Bianca Rudolph

Dear Bianca Rudolph:

We have received your request to add or change Beneficiary(ies) to your Certificate.

Enclosed is a new *Request for Change Beneficiary/Name* form for you to complete. For your convenience, we have provided a return envelope. Once your request has been processed, we will send you a confirmation for your records.

Here are some key points to remember when completing this form:
- The Primary Beneficiary(ies) needs to be restated even when adding or changing a Contingent Beneficiary(ies).
- Proceeds are paid to the Primary Beneficiary first; if none are surviving, then proceeds are paid to the Contingent Beneficiary.
- If listing more than one person as Primary Beneficiary or Contingent Beneficiary, the Death Benefit will be shared equally unless you tell us otherwise. If you choose to list percentages, the designations must equal 100% for Primary Beneficiary(ies) and 100% for Contingent Beneficiary(ies).
- If a Trust is designated, you must include the date the Trust was established.
- The signature of the Policy Owner must be included.
- The signature date must be included.
- On covered travel accident plans, distributions of funds for the covered family members are outlined within the contract language. The additional insured section does not apply on family policies, as beneficiaries are assigned for the Primary Insured only.

If you have any questions, please contact one of our Member Services Advocates toll-free at 1-800-624-1662. We value you as a customer and thank you for the opportunity to meet your insurance needs.

Sincerely,

Jaxon Weber

Jaxon Weber
Member Services
Enclosure

cc:    AUTO CLUB OF SOUTHERN CALIFORNIA
       AAA EAST CENTRAL

ALAN-18907-713-XX
80603
*EC00139*



**Life Insurance Company**

# REQUEST FOR CHANGE BENEFICIARY/NAME

17900 N. Laurel Park Dr. ● Livonia, MI 48152-3985 ● (800) 624-1662

**BENEFICIARY CHANGE** *(Complete this section if you are changing your beneficiary —- PLEASE PRINT)*
I (we) hereby revoke any previous designation of beneficiary and request that proceeds of the policy be paid to the beneficiary(ies) below. Unless otherwise indicated, the owner reserves the right to further change beneficiaries. **If you designate more than one primary or contingent beneficiary, you have the option to assign percentages to equal 100%.** It is understood and agreed that, **unless otherwise directed, proceeds will be paid in equal shares to any primary beneficiaries who survive the insured**; but if none survive, proceeds will be paid in equal shares to any contingent beneficiaries who survive the insured. **NOTE:** this change of beneficiary will NOT affect the beneficiary arrangement for any Family, Spouse's or Children's Rider that may be attached to the policy unless otherwise specifically provided. If the current beneficiary is irrevocable, please have them sign and date below.

**Insured Name:** Braya Runyon          **Policy #:** F2 401964 32 62

**Additional Insured Name:**

I wish to change my **Primary Beneficiary(ies)** and **Contingent Beneficiary(ies)** to:

### INSURED'S BENEFICIARIES

| PRIMARY Name | Address | Relationship | SSN/Tax ID # | Date of Birth | Benefit % (Total = 100%) |
|---|---|---|---|---|---|
| Runyon Trust | 4141 E. Lakeside Lane | Trust | 19140314 | 4-29-16 | 100% |
| | | | | trust | established |
| | | | | | |
| | | | | | |

| CONTINGENT Name | Address | Relationship | SSN/Tax ID # | Date of Birth | Benefit % (Total = 100%) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### ADDITIONAL INSURED'S BENEFICIARIES

| PRIMARY Name | Address | Relationship | SSN/Tax ID # | Date of Birth | Benefit % (Total = 100%) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| CONTINGENT Name | Address | Relationship | SSN/Tax ID # | Date of Birth | Benefit % (Total = 100%) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**NAME CHANGE** *(Complete this section if you are changing your name — PLEASE PRINT)*

From: _____          To: _____
            *(Full Name)*                                   *(Full Name)*

Reason for change:  ☐ Marriage  ☐ Divorce  ☐ Other_____
                                                          *(Attach legal evidence)*

I direct that any policy change requested above takes effect on the date this request is signed but without any liability to the Company on account of payment made or action taken by it before this request was received by the Company.

_____   9 / 04 / 16          _____   /   /
Signature of Policy Owner        Date                  Signature of Joint Policy Owner      Date

4141 East Lakeside Lane          _____
Street Address of Policy Owner                         Street Address of Joint Policy Owner

Paradise Valley AZ 85253          _____
City            State      ZIP                          City                State          ZIP

**IF APPLICABLE:**

_____   _____   /   /
Printed Name of Irrevocable Beneficiary   Signature of Irrevocable Beneficiary   Date

ALAN-10044-613-XX
*EC00140*



**Life Insurance
Company**

17900 N. Laurel Park Drive
Livonia, MI 48152-3985
1-800-624-1662
Fax: 866-494-3254

July 27, 2016

Bianca Rudolph
4141 E Lakeside Ln
Paradise Vly, AZ 85253-2826

RE: AAA Life Insurance Company  Certificate Number 4019648262
Insured: Bianca Rudolph

Dear Bianca Rudolph,

We recently received your Beneficiary Change Request form indicating a change to the named
beneficiaries on your AAA Annual Renewable Term Life Insurance Certificate.  The beneficiary
information listed on your AAA Annual Renewable Term Life Insurance Certificate has been changed to
the new beneficiaries indicated on the form you submitted, and is listed below.

Please take a few minutes to review this information. It will ensure that what we have on file matches
your change request.

| **Primary Beneficiary** | **Relationship to Insured** | **Benefit %** |
|---|---|---|
| Rudolph Trust | | 100.00 % |
| **Contingent Beneficiary** | **Relationship to Insured** | **Benefit %** |
| Lawrence P Rudolph | Spouse | 100.00 % |

We encourage you to keep this letter, which confirms the change to your beneficiaries with
your original Certificate. You may also want to consider alerting your beneficiaries so that
they are aware of the change in your Certificate.

This letter contains your primary and contingent beneficiary information.  For those with
additional beneficiaries, please contact our Member Services department at 1-800-624-1662
to obtain the information. Our Member Service Advocates can also answer any questions
you have about your coverage.

Thank you for trusting us with your life insurance needs.

Sincerely,

Jaxon Weber
Member Services
cc:    AUTO CLUB OF SOUTHERN CALIFORNIA
       AAA EAST CENTRAL

ALAN-20542-713-XX
P80643

BC00025   BCS00025

**Life Insurance Company**

AAA Life Insurance Company
17900 N. Laurel Park Dr.
Livonia, MI 48152
Call Toll-Free: **1-800-684-4222**

P1Y8400500028

April 3, 2012

*[handwritten: Paid month / Auto W. Holdevel / $ 74.99 / month / Cause 6+4el / JwsA]*

BIANCA RUDOLPH
336 Lakewood Rd
Greensburg, PA 15601-9769

Dear BIANCA RUDOLPH:

**Congratulations!  Your application for $200,000 of Group Term Life Insurance has been
approved.**

Your insurance will go into effect on April 8, 2012.  Once in effect, you can renew it through
the age 79 regardless of any changes in your health.  In compliance with current insurance regulations,
we are enclosing a replacement form.  If this policy is intended to replace any other life insurance,
please complete the form in its entirety and return it to us within 30 days at the address listed above.

By your thoughtfulness today, you have helped ensure your family will have the money they
need for tomorrow, should anything happen to you.

Please allow me to add my personal thanks for giving us this opportunity to serve you.  We
work hard both to provide you with excellent insurance at an exceptional value and to ensure your
continued satisfaction.

Sincerely,

*Harold W. Huffstetler*

Harold W. Huffstetler, Jr.
President and Fellow Member

**BIANCA RUDOLPH,**
**Your Certificate of Insurance along with a copy of your application is enclosed.  Please
review it now to be sure everything is satisfactory.  Also, please keep the portion
below as a convenient reminder of your coverage.**                    ALDM-15648-09-03

## Keep This Portion For Your Records

## GROUP TERM LIFE INSURANCE FOR $200,000

Insured .....................BIANCA RUDOLPH
**Certificate No** ...........4019648262
**Coverage** .................$200,000
**Billing Interval**..........Monthly
**Billing Amount**.........$49.99
**Coverage Starts** .......April 8, 2012

BIANCA RUDOLPH, if you have any questions about your coverage, please call us toll-free at
1-800-684-4222, Monday to Friday from 7:00 A.M. to 9:00 P.M. Central Time, Saturday from
8:00 A.M. to 5:00 P.M. Central Time.  One of our Customer Service Advocates will be delighted
to help you.