# EXHIBIT C

23140 - 8
"Trust"

# THE RUDOLPH TRUST

## April 25, 2016

LAW OFFICES
**RICHMAN LAW, PLLC**

6424 E. GREENWAY PKWY.
SCOTTSDALE, ARIZONA 85254
Telephone: (480) 527-6008
Fax: (480) 550-8015

Copyright © 2016 Richman Law, PLLC

# The Rudolph Trust
# Table of Contents

| | | |
|---|---|---|
| **Article One** | **Establishing Our Trust** .............................................. **1-1** | |
| Section 1.01 | Identifying Our Trust ................................................................. 1-1 | |
| Section 1.02 | Reliance by Third Parties .......................................................... 1-1 | |
| Section 1.03 | Statement of Our Intent ............................................................ 1-2 | |
| Section 1.04 | Transferring Property to Our Trust ........................................ 1-2 | |
| Section 1.05 | Powers Reserved by Us as Trustmakers ................................ 1-3 | |
| Section 1.06 | Grantor Trust Status ................................................................. 1-5 | |
| | | |
| **Article Two** | **Family Information** ...................................................... **2-1** | |
| | | |
| **Article Three** | **Trustee Succession Provisions** ................................. **3-1** | |
| Section 3.01 | Resignation of a Trustee ........................................................... 3-1 | |
| Section 3.02 | Trustee Succession while Both of Us Are Alive ................... 3-1 | |
| Section 3.03 | Trustee Succession after the Death of Either or Both of Us ................................................................................................. 3-2 | |
| Section 3.04 | Notice of Removal and Appointment ..................................... 3-4 | |
| Section 3.05 | Appointment of a Co-Trustee .................................................. 3-4 | |
| Section 3.06 | Corporate Fiduciaries ............................................................... 3-5 | |
| Section 3.07 | Incapacity of a Trustee .............................................................. 3-5 | |
| Section 3.08 | Appointment of Independent Special Trustee ....................... 3-5 | |
| Section 3.09 | Rights of Successor Trustees .................................................... 3-5 | |
| | | |
| **Article Four** | **Trust Protector Provisions** ......................................... **4-1** | |
| Section 4.01 | Provisions for Trust Protector ................................................. 4-1 | |
| Section 4.02 | Designation of Trust Protector ................................................ 4-1 | |
| Section 4.03 | Removal of a Trust Protector .................................................... 4-1 | |
| Section 4.04 | Resignation of a Trust Protector ............................................. 4-1 | |
| Section 4.05 | Incapacity of a Trust Protector ................................................ 4-1 | |
| Section 4.06 | Authority of Successor Trust Protectors ............................... 4-2 | |
| Section 4.07 | Trust Protector Standard of Conduct ..................................... 4-2 | |
| Section 4.08 | Indemnification of Trust Protector ........................................ 4-2 | |
| Section 4.09 | Trust Protector Powers ............................................................. 4-3 | |
| Section 4.10 | Limitation on Trust Protector Powers .................................... 4-6 | |
| Section 4.11 | Trust Protector May Release Powers ....................................... 4-7 | |
| Section 4.12 | Trust Protector Considered to Have Consented ................... 4-7 | |
| Section 4.13 | Trust Protector Compensation ................................................ 4-7 | |
| Section 4.14 | Right to Examine Trust Records .............................................. 4-7 | |
| Section 4.15 | Employment of Professionals .................................................. 4-7 | |

**Article Five**       **Administration of Our Trust during a**
                        **Trustmaker's Incapacity**.................................................... **5-1**
Section 5.01            Definition of a Trustmaker's Incapacity................................ 5-1
Section 5.02            Determination of a Trustmaker's Incapacity ........................ 5-1
Section 5.03            Trust Distributions during a Trustmaker's Incapacity........... 5-2

**Article Six**        **Administration of Our Trust upon the Death of**
                        **a Trustmaker** ............................................................. **6-1**
Section 6.01            Surviving Trustmaker's Trust Property and Deceased
                        Trustmaker's Trust Property................................................. 6-1
Section 6.02            Administrative Trust............................................................ 6-1
Section 6.03            Payment of Expenses and Taxes.......................................... 6-1
Section 6.04            Restrictions on Certain Payments from Retirement
                        Plans..................................................................................... 6-2
Section 6.05            Excluding Life Insurance Proceeds from Creditors.............. 6-2
Section 6.06            Payment of Death Taxes...................................................... 6-3
Section 6.07            Coordination with the Personal Representative.................... 6-3
Section 6.08            Authority to Make Tax Elections ......................................... 6-4
Section 6.09            Payment of Charitable Bequests.......................................... 6-5

**Article Seven**      **Disposition of Tangible Personal Property ............. 7-1**
Section 7.01            Distribution of Tangible Personal Property by
                        Memorandum........................................................................ 7-1
Section 7.02            Distribution of Remaining Tangible Personal Property ........ 7-1
Section 7.03            Definition of Tangible Personal Property............................. 7-1
Section 7.04            Incidental Expenses and Encumbrances................................ 7-2
Section 7.05            Residuary Distribution.......................................................... 7-2

**Article Eight**      **Creating Trust Shares upon the Death of a**
                        **Trustmaker** ................................................................. **8-1**
Section 8.01            Distribution to the Deceased Trustmaker's Will ................... 8-1
Section 8.02            Division of the Deceased Trustmaker's Remaining
                        Trust Property ...................................................................... 8-1
Section 8.03            Disposition of Property upon Disclaimer by the
                        Surviving Trustmaker ........................................................... 8-3
Section 8.04            Option to Allocate Deceased Trustmaker Trust Property
                        to the Survivor's Trust.......................................................... 8-3

**Article Nine**       **The Survivor's Trust**................................................. **9-1**
Section 9.01            Trustee of the Survivor's Trust............................................. 9-1
Section 9.02            The Surviving Trustmaker's Right to Amend ....................... 9-1
Section 9.03            Survivor's Trust As Only Trust............................................. 9-1
Section 9.04            Separate Share for Deceased Trustmaker's Trust
                        Property................................................................................. 9-1

Rudolph Trust

ii

| | | |
|---|---|---|
| Section 9.05 | Distribution of Income | 9-1 |
| Section 9.06 | Distributions of Principal | 9-2 |
| Section 9.07 | Unproductive Property | 9-2 |
| Section 9.08 | Trust Distributions during the Incapacity of the Surviving Trustmaker | 9-2 |
| Section 9.09 | General Power of Appointment | 9-2 |
| Section 9.10 | Administration following the Surviving Trustmaker's Death | 9-2 |

**Article Ten** — **The Marital Trust** — **10-1**

| | | |
|---|---|---|
| Section 10.01 | Distributions of Net Income | 10-1 |
| Section 10.02 | Distributions of Principal | 10-1 |
| Section 10.03 | Effect of Remarriage on Principal Distributions | 10-1 |
| Section 10.04 | Nonproductive Property | 10-2 |
| Section 10.05 | Qualified Terminable Interest Property | 10-2 |
| Section 10.06 | Administration of the Marital Trust at the Death of the Surviving Trustmaker | 10-2 |

**Article Eleven** — **The Bypass Trust** — **11-1**

| | | |
|---|---|---|
| Section 11.01 | Bypass Trust Beneficiary | 11-1 |
| Section 11.02 | Distribution of Income | 11-1 |
| Section 11.03 | Distribution of Principal | 11-1 |
| Section 11.04 | Guidelines to Our Trustee | 11-1 |
| Section 11.05 | Effect of Remarriage on Bypass Trust Distributions | 11-1 |
| Section 11.06 | Termination of the Bypass Trust | 11-2 |

**Article Twelve** — **Our Descendants' Trusts** — **12-1**

| | | |
|---|---|---|
| Section 12.01 | Division of Our Trust Property | 12-1 |
| Section 12.02 | Administration of Descendants' Trusts | 12-1 |

**Article Thirteen** — **Remote Contingent Distribution** — **13-1**

**Article Fourteen** — **Distributions to Underage and Incapacitated Beneficiaries** — **14-1**

| | | |
|---|---|---|
| Section 14.01 | Supplemental Needs Trust | 14-1 |
| Section 14.02 | Underage and Incapacitated Beneficiaries | 14-5 |
| Section 14.03 | Methods of Distribution | 14-5 |
| Section 14.04 | Retention in Trust | 14-5 |
| Section 14.05 | Application of Article | 14-6 |

**Article Fifteen** — **Retirement Plans and Life Insurance Policies** — **15-1**

| | | |
|---|---|---|
| Section 15.01 | Retirement Plans | 15-1 |
| Section 15.02 | Life Insurance Policies | 15-4 |

Section 15.03          Liability of Payor .................................................................. 15-5
Section 15.04          Collection Efforts................................................................... 15-5
Section 15.05          No Obligation to Purchase or Maintain Benefits................. 15-5

**Article Sixteen**          **Trust Administration.............................................. 16-1**
Section 16.01          Deceased Spousal Exclusion Amount .................................. 16-1
Section 16.02          Distributions to Beneficiaries ............................................. 16-1
Section 16.03          Trust Decanting; Power to Appoint in Further Trust........... 16-1
Section 16.04          Beneficiary's Status ............................................................ 16-2
Section 16.05          Mandatory Payments of a Pecuniary Amount .................... 16-2
Section 16.06          No Court Proceedings.......................................................... 16-2
Section 16.07          No Bond................................................................................ 16-3
Section 16.08          Exoneration of Our Trustee ................................................. 16-3
Section 16.09          Limitations on Trustee Liability ......................................... 16-3
Section 16.10          Trustee Compensation ......................................................... 16-4
Section 16.11          Employment of Professionals .............................................. 16-4
Section 16.12          Exercise of Testamentary Power of Appointment............... 16-4
Section 16.13          Determination of Principal and Income............................... 16-5
Section 16.14          Trust Accounting ................................................................. 16-6
Section 16.15          Information to Beneficiaries ................................................ 16-7
Section 16.16          Action of Trustees and Delegation of Trustee Authority .... 16-8
Section 16.17          Trustee May Disclaim or Release Any Power..................... 16-8
Section 16.18          Trustee May Execute a Power of Attorney.......................... 16-8
Section 16.19          Additions to Separate Trusts............................................... 16-8
Section 16.20          Authority to Merge or Sever Trusts..................................... 16-8
Section 16.21          Authority to Terminate Trusts ............................................. 16-9
Section 16.22          Merger of Corporate Fiduciary .......................................... 16-10
Section 16.23          Funeral and Other Expenses of Beneficiary ...................... 16-10
Section 16.24          Marital Deduction Qualification......................................... 16-10
Section 16.25          Generation-Skipping Transfer Tax Provisions .................. 16-10

**Article Seventeen**          **Our Trustee's Powers.............................................. 17-1**
Section 17.01          Introduction to Trustee's Powers......................................... 17-1
Section 17.02          Execution of Documents by Our Trustee ............................ 17-1
Section 17.03          Investment Powers in General ............................................. 17-1
Section 17.04          Banking Powers ................................................................... 17-2
Section 17.05          Business Powers .................................................................. 17-2
Section 17.06          Contract Powers................................................................... 17-4
Section 17.07          Common Investments .......................................................... 17-4
Section 17.08          Environmental Powers......................................................... 17-5
Section 17.09          Farm, Ranch, and Other Agricultural Powers ..................... 17-5
Section 17.10          Insurance Powers ................................................................ 17-6
Section 17.11          Loans and Borrowing Powers.............................................. 17-6
Section 17.12          Nominee Powers.................................................................. 17-7
Section 17.13          Oil, Gas and Mineral Interests ............................................ 17-7

Section 17.14          Payment of Property Taxes and Expenses............................ 17-7
Section 17.15          Purchase of Assets from and Loans to a Deceased
                      Trustmaker's Probate Estate ................................................. 17-7
Section 17.16          Qualified Real Property Valuation ....................................... 17-8
Section 17.17          Qualified Tuition Programs .................................................. 17-8
Section 17.18          Real Estate Powers .............................................................. 17-8
Section 17.19          Residences and Tangible Personal Property........................ 17-9
Section 17.20          Digital Assets........................................................................ 17-9
Section 17.21          Retention and Abandonment of Trust Property................. 17-10
Section 17.22          Securities, Brokerage and Margin Powers......................... 17-10
Section 17.23          Settlement Powers ............................................................... 17-11
Section 17.24          Subchapter S Corporation Stock Provisions...................... 17-11
Section 17.25          Limitation on Our Trustee's Powers................................... 17-13


**Article Eighteen**      **General Provisions .................................................. 18-1**
Section 18.01          Maximum Term for Trusts .................................................. 18-1
Section 18.02          Spendthrift Provision .......................................................... 18-1
Section 18.03          Contest Provision................................................................. 18-1
Section 18.04          Survivorship Presumption .................................................. 18-1
Section 18.05          Effect of Legal Separation or Dissolution of Marriage ....... 18-2
Section 18.06          Changing the Governing Law and Situs of
                      Administration..................................................................... 18-2
Section 18.07          Definitions ........................................................................... 18-2
Section 18.08          General Provisions and Rules of Construction.................... 18-8

# The Rudolph Trust

## Article One
## Establishing Our Trust

The date of this trust is April 25, 2016. The parties to this trust are Lawrence P. Rudolph and Bianca T. Rudolph (the *Trustmakers*) and Lawrence P. Rudolph and Bianca T. Rudolph (collectively, our *Trustee*).

We intend to create a valid trust under the laws of Arizona and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of Arizona law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying Our Trust

For convenience, our trust may be referred to as:

"The Rudolph Trust dated April 25, 2016."

To the extent practicable, for the purpose of transferring property to our trust or identifying our trust in any beneficiary or pay-on-death designation, our trust should be identified as:

"Lawrence P. Rudolph and Bianca T. Rudolph, Trustees of the Rudolph Trust dated April 25, 2016, and any amendments thereto."

For all purposes concerning the identity of our trust or any property titled in or payable to our trust, any description referring to our trust will be effective if it reasonably identifies our trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of our Trustee or the powers held by our Trustee. To protect the confidentiality of this instrument, our Trustee may use an affidavit or a certification of trust that identifies our Trustee and sets forth the authority of our Trustee to transact business on behalf of our trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by our Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with our Trustee will not be required to inquire into this trust's terms or the authority of our Trustee, or to see to the application of funds or other property received by our Trustee. Our Trustee's receipt of any money or property paid, transferred,

or delivered to our Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by our Trustee is conclusive evidence of our Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by our Trustee asserting our Trustee's authority or seeking to effect a transfer of property to or from the trust.

### Section 1.03    Statement of Our Intent

We created this trust to facilitate the management of our assets during our lifetime, to provide a structured method of care management if we become incapacitated, and to establish the manner and time in which we want our assets to be distributed to our beneficiaries. We considered the respective maturity, financial acumen, understanding and use of life skills, needs, abilities, and relationships of our beneficiaries. It is our intention that our assets be used to fulfill the hopes, dreams, and aspirations of our family while preserving our assets from their creditors, their own potential or actual spendthrift habits, and estate, gift, and income taxes, to the full extent allowed by law while providing discretion that encourages and permits the worthwhile endeavors and accomplishments of our beneficiaries.

### Section 1.04    Transferring Property to Our Trust

Any person or entity may transfer any property to our trust in any manner authorized by law.

#### (a)    Funding of Our Trust

By executing this instrument, we transfer, convey, and assign the property described in the attached schedules to our Trustee. We also transfer all our right, title, and interest in and to all of our property that may legally be held in trust and that may be transferred to our trust by this assignment. This assignment includes all of our real, personal, tangible, and intangible property located in the United States, whether separate property or community property, and whether acquired before or after the execution of this instrument, except for these assets that are expressly not transferred by this instrument:

> life insurance policies, unless the ownership of a policy is transferred to our trust by a separate instrument that specifically refers to the policy;

> corporate and self-employed (*Keogh*) pension, profit-sharing, and stock bonus plans;

> qualified retirement plans;

> commercial annuities;

> Section 1244 (small business) stock; and

> any property, the transfer of which would result in the immediate recognition of income subject to income or other

taxes, would result in the loss of a homestead exemption, or would violate a restriction on transfer agreement.

### (b)    Acceptance by Our Trustee

By executing this instrument, our Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to our trust after the date of this trust must be acceptable to our Trustee. Our Trustee may refuse to accept any property. Our Trustee shall hold, administer, and dispose of all accepted trust property for our benefit and for the benefit of our beneficiaries, in accordance with the terms of this trust.

### (c)    Community Property

Any community property transferred to our trust, including the property's income and the proceeds from the property's sale or exchange, will retain its character as community property during our lives, to the same extent as if it had not been transferred to our trust.

### (d)    Separate Property

Separate property transferred to our trust will retain its character as separate property. Our separate property may be identified as the separate property of either of us on the attached schedules. The separate property of either of us, including the property's income and proceeds from the property's sale or exchange, will remain separate property. Each of us has the unrestricted right to remove all or any part of our separate property at any time.

An amount that is payable to our trust on a life insurance policy that is the separate property of either of us will retain its character as separate property.

### (e)    Joint Property

If joint tenancy property with right of survivorship is transferred to our trust, we will be considered to have severed the joint tenancy immediately before transferring the property, and no right of survivorship will exist with respect to this property.

## Section 1.05    Powers Reserved by Us as Trustmakers

As Trustmakers, we retain the powers set forth in this Section in addition to any powers that we reserve in other provisions of this instrument.

### (a)    Action on Behalf of Our Trust

Whenever both of us are serving as Trustee, either or both of us may act for and conduct business on behalf of our trust without the consent of any other Trustee.

Whenever one of us is alive but not serving as Trustee, and the other is serving as Trustee, the one who is serving as Trustee may act for and conduct business on behalf of our trust without the consent of any other Trustee.

After one of us dies, the ability of the survivor of us, when serving as
Trustee, to conduct business on behalf of us without the consent of any other
Trustee is subject to the terms and conditions of our trust.

**(b)    Amendment, Restatement, or Revocation**

Acting jointly, we may amend, restate, or revoke this instrument, in whole
or in part, for any purpose. Acting jointly, we retain the absolute right to
amend, restate, or revoke any term or provision of this trust in whole or in
part. Each of us individually retains the right to revoke any term or
provision of this trust in whole or in part as to each of our separate property.

Any amendment, restatement, or revocation must be made in writing and
delivered to our then-serving Trustee.

**(c)    Addition or Removal of Trust Property**

Either of us may add property to our trust. Both of us, acting jointly may
remove any property from our trust. Each of us, acting alone, may remove
our own separate property from our trust. Community property removed
from our trust will retain its character as community property.

**(d)    Control of Income and Principal Distributions**

We retain the right to control the distribution of income and principal from
our trust. We may direct our Trustee to distribute as much of the net income
and principal of the trust property as we consider advisable to us or to other
persons or entities. Our Trustee may distribute the net income and principal
to us or for our unrestricted use and benefit, even to the exhaustion of all
trust property. Any undistributed net income is to be added to the principal
of our trust.

Unless otherwise directed, our Trustee shall distribute the net income from
the community property to us at least quarterly and shall distribute the net
income from a Trustmaker's separate property to that Trustmaker at least
quarterly.

Our Trustee may also distribute principal of the community property for the
unrestricted use of either or both of us and the principal of a Trustmaker's
separate property for the unrestricted use and benefit of that Trustmaker,
even to the exhaustion of all trust property. Any undistributed net income
is to be added to the principal of our trust.

**(e)    Approval of Investment Decisions**

We reserve the absolute right to review and change our Trustee's investment
decisions as to the community property. Each of us reserves the absolute
right to review and change our Trustee's investment decisions as to our
respective separate property. But our Trustee is not required to seek our
approval before making investment decisions.

**Section 1.06     Grantor Trust Status**

By reserving the broad rights and powers set forth in Section 1.05 of this Article, we intend to qualify our trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, each of us will be treated as the owner of one-half of all the community property held in our trust and as the owner of our respective separate property as if we held the property individually.

During any period that our trust is a Grantor Trust, the Taxpayer Identification Number of our trust will be either of our Social Security numbers, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

## Article Two
## Family Information

We were married on September 4, 1982. Lawrence P. Rudolph is referred to in this trust as *husband*, and Bianca T. Rudolph is referred to in this trust as *wife*. We have two children. They are:

AnaBianca Rudolph, born on June 9, 1986 and

Julian L. Rudolph, born on June 5, 1990.

All references in this document to *our children* are references to these children.

References to *our descendants* are to our children and their descendants, including any deceased child's descendants.

We intentionally have not provided for Joseph Rudolph and his descendants as beneficiaries in this trust, therefore, for all purposes of this trust, they will be treated as having predeceased both of us.

# Article Three
# Trustee Succession Provisions

### Section 3.01        Resignation of a Trustee

A Trustee may resign by giving written notice to either of us.  If we are both incapacitated or deceased, a resigning Trustee shall give written notice to the trust's Income Beneficiaries and any other then-serving Trustee.

Upon the resignation of Ralph Finizio as Trustee, the resigning Trustee may appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 3.04, concurrent with the written notice described above.  If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon incapacity or death will govern, and the next named successors to the resigning Trustee will serve in the order listed.  Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02        Trustee Succession while Both of Us Are Alive

While we are both alive, this Section governs the removal and replacement of our Trustees.

#### (a)        Removal and Replacement by Both of Us

By joint agreement, we may remove any Trustee at any time, with or without cause.  If a Trustee is removed, resigns, or cannot continue to serve for any reason, either or both of us may serve as Trustee, we may appoint a Trustee to serve with either or both of us, or we may appoint a successor Trustee.

#### (b)        Removal and Replacement by One of Us

If one of us is incapacitated, the non-incapacitated Trustmaker may remove any Trustee at any time, with or without cause.  If a Trustee is removed, resigns, or cannot continue to serve for any reason, the non-incapacitated Trustmaker may serve as sole Trustee, appoint a Trustee to serve with the non-incapacitated Trustmaker, or appoint a successor Trustee.

#### (c)        Successor Trustee during Incapacity of a Trustmaker

During the incapacity of a Trustmaker, the other Trustmaker may serve as sole Trustee.

If the other Trustmaker is unable or unwilling to serve for any reason, then we name the following to serve as successor Trustee in this order:

Julian L. Rudolph;

AnaBianca Rudolph; then

Ralph Finizio.

Rudolph Trust
3-1

### (d)    Removal of Trustee during Incapacity of Both of Us

During any time both of us are incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

### (e)    Designation Default

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act during any time that one of us is incapacitated, the other Trustmaker may appoint a successor Trustee.

If the other Trustmaker is unable or unwilling to appoint a successor Trustee, our Trust Protector may appoint an individual or a corporate fiduciary to serve as successor Trustee.

If our Trust Protector is unable or unwilling to appoint a successor Trustee, the person appointed conservator may appoint a successor Trustee.

The Legal Representative of either of us may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days.  The petitioned court acquires jurisdiction over the trust only to the extent necessary to make the appointment.  The trust is not subject to the court's continuing jurisdiction.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee under Section 3.01.

All appointments, removals, and revocations must be by signed written instrument.

## Section 3.03    Trustee Succession after the Death of Either or Both of Us

After the death of either or both of us, this Section governs the removal and replacement of our Trustees.

### (a)    Upon the Death of a Trustmaker

Upon the death of a Trustmaker, the other Trustmaker may serve as sole Trustee of all trusts created under this instrument.

If the other Trustmaker is unable or unwilling to serve for any reason, we name the following to serve as successor Trustee in this order:

> Julian L. Rudolph;
>
> AnaBianca Rudolph; then
>
> Ralph Finizio.

### (b)    Trustees of the Separate Trusts

The Primary Beneficiary of a separate trust created under this instrument, upon attaining 25 years of age, may appoint himself or herself as a Co-

Trustee of his or her separate trust and may serve as the sole Trustee of the trust and may name any one or more individual or corporate fiduciaries to serve as current or successor Trustee or Co-Trustee.

If the interest of a beneficiary will be merged into a life estate or an estate for years because the beneficiary is serving as sole Trustee, the beneficiary must appoint a Co-Trustee to avoid this merger. Similarly, if the interest of a beneficiary becomes or is likely to become subject to the claims of any creditor or to legal process as a result of serving as sole Trustee, the beneficiary must appoint an Independent Trustee to serve as Co-Trustee.

Notwithstanding the previous provisions, the Primary Beneficiary of any trust administered as a Supplemental Needs Trust under this instrument may never appoint himself or herself as a Co-Trustee of his or her separate trust, and may not serve as the sole Trustee of his or her separate trust.

### (c)    Appointment of Successor Trustees by the Surviving Trustmaker

After the death of one of us, the surviving Trustmaker may appoint the current or successor Trustees for any trust created under this instrument. The surviving Trustmaker may amend or revoke this appointment. Except for the Trustee of the Survivor's Trust, any Trustee appointed by the surviving Trustmaker to a trust of which the surviving Trustmaker is a beneficiary must be an individual or corporate fiduciary that is not related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

### (d)    Removal of a Trustee

After the death of one of us, the surviving Trustmaker may remove any Trustee, with or without cause. If the surviving Trustmaker is incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

A Trustee may be removed by the surviving Trustmaker only if the surviving Trustmaker appoints an individual or corporate fiduciary by the effective removal date and this appointee simultaneously commences service as Trustee. The Trustee appointed to serve as successor Trustee may not be related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

After the death of both of us, any beneficiary may remove a Trustee only for cause, and with approval from a court of competent jurisdiction. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment.

The right to remove a Trustee under this Subsection is not to be interpreted to grant the person holding that right any of the powers of that Trustee.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

### (e)    Default of Designation

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act, the surviving Trustmaker may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

If the surviving Trustmaker is unable or unwilling to name a successor Trustee or if both of us are deceased, our Trust Protector may appoint the successor Trustee.

If our Trust Protector is unable or unwilling to name a successor Trustee, the trust's Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

## Section 3.04    Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed, along with any other then-serving Trustees. The removal notice will become effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and any other then-serving Trustees. The appointment will become effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05    Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee will serve only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not

become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06      Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal or state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

## Section 3.07      Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than one of us, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee if made in good faith will terminate the trusteeship. If the Trustee designated in the written declaration objects in writing to termination of the trusteeship within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trustee must be obtained before the trusteeship will be terminated. The Trustee objecting to termination of trusteeship must sign the necessary medical releases needed to obtain the physician's written opinion, or the trusteeship will be terminated without it.

## Section 3.08      Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, our Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). Our Trust Protector may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by our Trust Protector in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to our Trust Protector. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09      Rights of Successor Trustees

Each successor Trustee serving under this instrument, whether individual or corporate, will have all of the title, rights, powers and privileges granted to our initial Trustees named under this instrument. In addition, each successor Trustee will be subject to all of the

restrictions imposed on and to all discretionary and ministerial obligations and duties given
to the original Trustees.

# Article Four
# Trust Protector Provisions

### Section 4.01    Provisions for Trust Protector

The Trust Protector's purpose is to direct our Trustee in matters concerning the trust, and to assist in achieving our objectives as expressed by the other provisions of our estate plan if needed.

### Section 4.02    Designation of Trust Protector

Any Trust Protector authorized or required to act with respect to this instrument must be appointed by a court of competent jurisdiction on petition of a Trustee or beneficiary.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

For each power and authority granted to a Trust Protector in this instrument, unless the capacity is otherwise specifically stated, the Trust Protector's authority is conferred in a nonfiduciary capacity.

### Section 4.03    Removal of a Trust Protector

Any Trust Protector may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress. The court removing a Trust Protector may appoint one or more successor Trust Protectors to immediately replace the removed Trust Protector. The court acting to remove and replace a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Protector.

### Section 4.04    Resignation of a Trust Protector

A Trust Protector may resign by giving written notice to either of us. If both of us are deceased, a Trust Protector may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by us or by the trust's Primary Beneficiary. A resigning Trust Protector is not liable or responsible for the act of any successor Trust Protector.

### Section 4.05    Incapacity of a Trust Protector

If any individual Trust Protector becomes incapacitated, the incapacitated Trust Protector need not resign as Trust Protector. Any then-serving Trust Protector or the immediately

eligible successor Trust Protector may provide a written declaration that a Trust Protector is incapacitated.

The written declaration of the Trust Protector's incapacity will terminate the Trust Protector's service. If the Trust Protector designated in the written declaration objects in writing to termination of the Trust Protector's service within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trust Protector must be obtained before the Trust Protector's service will be terminated. The Trust Protector objecting to termination of the Trust Protector's service must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity, or the Trust Protector's service will be terminated without the physician's written opinion.

The provisions of Section 18.07(g) of this instrument govern the determination of a Trust Protector's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 18.07(g) governs the Trust Protector's obligations to submit to examination and provide necessary releases.

## Section 4.06    Authority of Successor Trust Protectors

Any successor Trust Protector has all the authority of any predecessor Trust Protector, but is not responsible for the predecessor's acts, omissions, or forbearances.

## Section 4.07    Trust Protector Standard of Conduct

The Trust Protector is not liable for any action, omission, or forbearance in the absence of an affirmative showing by clear and convincing evidence of bad faith by the Trust Protector to any of the beneficiaries.

## Section 4.08    Indemnification of Trust Protector

We recognize that some persons or institutions may be reluctant to serve as Trust Protector without indemnification by the trust for potential liability. Therefore, we direct that our Trustee may expend the trust assets to defend any claim brought against any Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the trust's value. If any claim brought against a Trust Protector is successful and the Trust Protector is shown to have acted in bad faith, our Trustee may seek reimbursement from that Trust Protector using any legal or equitable means available to the Trustee for the value of any trust assets used to defend the Trust Protector.

Any Trust Protector is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith. This must be done even if the cost of the Trust Protector's defense would exhaust the trust's value.

This Section applies to any currently serving Trust Protector and for claims brought against any former Trust Protector in connection with his or her acts, omissions, or forbearances in regard to the trust while serving as Trust Protector.

### Section 4.09    Trust Protector Powers

Any Trust Protector named or appointed under the provisions of this instrument has the following powers and authorities.

#### (a)    Power to Amend or Modify the Instrument

The Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to:

> alter the administrative and investment powers of any Trustee;

> reflect tax or other legal changes that affect trust administration. We recognize that the gift, estate, generation-skipping transfer tax, and income tax provisions of the Internal Revenue Code and Treasury Regulations are subject to change. We grant our Trust Protector the authority to amend this trust instrument's terms in this manner as will, in our Trust Protector's sole and absolute discretion, eliminate or minimize the state and federal taxes payable by either of our estates and provide the maximum benefit to our beneficiaries as expressed in this instrument. This includes dividing trust property into separate shares or funds;

> correct ambiguities, including scrivener errors, that might otherwise require court construction or reformation;

> grant any trust beneficiary of any trust created under this instrument the unlimited and unrestricted testamentary general power to appoint all or any portion of the principal and undistributed income of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. As a condition for the beneficiary's exercise of this power, our Trust Protector may require that the beneficiary first obtain the consent of our Trust Protector. Any testamentary power of appointment granted by our Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by our Trust Protector throughout that beneficiary's lifetime. We suggest that our Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it appears that it may reduce overall taxes; and

> add or modify terms of any trust created under this instrument so that the trust will protect the financial resources governed by this instrument and comply with the Trustmakers' intent that the trust assets not be considered income or resources for all entitlement benefits from any

government agency, such as Social Security Disability payments, Medicare, Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special-purpose benefits for which the beneficiary is eligible.

Our Trust Protector may not amend this instrument in any manner that would result in a reduction in the estate tax marital deduction under Internal Revenue Code Section 2056 or the estate tax charitable deduction under Section 2055, to which either of our estates would otherwise be entitled. Further, our Trust Protector may not amend this instrument in any manner that would limit or alter the rights of a beneficiary in any trust assets held by the trust before the amendment unless the purpose of the amendment is to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Notwithstanding any other provision of this instrument, the Trust Protector may not amend or modify any power or provision of the trust so as to expand the Trust Protector's amending powers or the Trust Protector's other existing powers, authorities, or discretions. But the previous provision does not prevent the Trust Protector from making amendments to correct scrivener's errors as to the Trust Protector's powers, authorities, and discretions, or to amend the trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trust Protector remain legally binding and valid under state and federal law or to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Any amendment made by the Trust Protector will be binding and conclusive on all persons interested in the trust, unless the amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector. The Trust Protector may not be liable for any consequences of amending or not amending the trust. Any amendment must be made in writing and signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the Primary Beneficiaries and Trustees of the amended trust.

**(b)     Power to Change the Governing Law and Situs of Administration**

The Trust Protector may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 18.06 of this instrument.

**(c)     Power to Terminate a Trust**

The Trust Protector may terminate this trust or any trust created under this instrument at any time as more specifically set forth in Section 16.21 of this instrument.

**(d)      Power to Decant a Trust**

The Trust Protector may appoint the property subject to our Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector, and as more specifically set forth in Section 16.03 of this instrument.

**(e)      Power to Remove and Appoint Trustees**

The Trust Protector may remove any Trustee (other than a Trustmaker) of any trust created under this instrument at any time, with or without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee.  A Trust Protector may not appoint any then-serving Trust Protector as a Trustee.

If the Trust Protector removes a Trustee, notice of removal must be made in writing and delivered to our Trustee being removed and any other then-serving Trustees.    The removal of our Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Protector may veto any removal, appointment, or both made by any beneficiary.

**(f)      Power to Refuse a Contribution in Whole or in Part**

Concurrent with our Trustee's acceptance of any contribution to the trust, our Trustee must notify the Trust Protector in writing that a contribution has been made, and must notify the donor that the Trust Protector may direct our Trustee to refuse the contribution in whole or in part.    The Trust Protector may direct our Trustee to refuse or reject any contribution made to the trust in whole or in part in the Trust Protector's sole and absolute discretion. The Trust Protector must make the direction to refuse or reject a contribution in writing. If the Trust Protector fails to act in writing within 10 days of the date on which the Trust Protector received written notice of the contribution, the Trust Protector will be considered to have approved the contribution *in toto*. If the Trust Protector directs our Trustee to refuse the contribution, our Trustee must return any refused property to the donor who contributed the property under the authority of this Subsection.

**(g)      Power to Compel, Approve, or Reject Trustee Accountings**

The Trust Protector may demand from time to time a written accounting from our Trustee, but not more often than quarter-annually.  If our Trustee fails to account to the Trust Protector within 30 days of a written demand, the Trust Protector may institute appropriate legal actions on behalf of our beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Protector must either approve or reject any accountings provided by any Trustee within 60 days after the Trustee provides the accounting. Failure to act by the Trust Protector within the 60-day period will be treated as approval of the accounting by the Trust Protector. If the Trust Protector approves an accounting, the approval will be binding on all other parties to the fullest extent allowable under the law. If the Trust Protector rejects a Trustee's accounting, the Trust Protector must provide the Trustee with an explanation that adequately enables the Trustee to revise its accounting. The Trustee will then present the revised accounting to the Trust Protector for approval or further revision, as necessary.

**(h)    Power to Construe the Terms of This Instrument**

The Trust Protector may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Protector is to ensure that the instrument is construed in a manner consistent with our estate planning objectives.

**(i)    Executing Documents Denoting Authority**

The Trust Protector may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Protector or our Trustee. All parties dealing with the Trust Protector and our Trustee may rely on statements and documents made by the Trust Protector and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Protector and our Trustee, assertions made by the Trust Protector will control, and any assertion made by our Trustee will be disregarded to the extent of the conflict.

**Section 4.10    Limitation on Trust Protector Powers**

A Trust Protector may not exercise any power or discretion in favor of the Trust Protector, for the Trust Protector's benefit, or for the benefit of any person to whom the Trust Protector is related or subordinate within the meaning of Internal Revenue Code Section 672(c). Our intent is that nothing in this instrument be construed in any manner that would cause the Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Protector or any related party from receiving reasonable fees for services rendered to the Trust.

If our Trust Protector exercises any one of the powers granted in Section 4.09(b), Section 4.09(c), or Section 4.09(d), the Trust Protector must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Protector under this agreement, the Trust Protector should make reasonable inquiry into any matter

or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

## Section 4.11     Trust Protector May Release Powers

Acting on behalf of itself and all successor Trust Protectors, a Trust Protector may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Protector at any time.

## Section 4.12     Trust Protector Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Protector before a Trustee can act and the Trust Protector does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Protector will be considered to have given consent or approval for the Trustee's proposed action.

## Section 4.13     Trust Protector Compensation

Any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

> the market rate for similar services in the jurisdiction in which the Trust Protector serves;

> the breadth and nature of the powers, authorities, and discretions granted to the Trust Protector;

> the amount of time the Trust Protector will likely devote to overseeing the trust and our Trustee; and

> the trust property's current value and the projected amount of appreciation.

The Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including reasonable travel expenses.

Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services, the Trust Protector is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Protector's ordinary compensation as Trust Protector.

## Section 4.14     Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Protector at all reasonable times.

## Section 4.15     Employment of Professionals

Any Trust Protector may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Protector's duties. The Trust

Protector may act on the recommendations of the persons or entities employed, with or
without independent investigation.

The Trust Protector may reasonably compensate an individual or entity employed to assist
or advise the Trust Protector, regardless of any other relationship existing between the
individual or entity and the Trust Protector.

The Trust Protector may direct and our Trustee will pay the usual compensation for
services contracted for under this Section out of trust income or principal as the Trust
Protector deems advisable. The Trust Protector may direct payment of compensation to an
individual or entity employed to assist or advise the Trust Protector without diminishing
the compensation to which the Trust Protector is entitled under this instrument. A Trust
Protector who is a partner, stockholder, officer, director, or corporate affiliate in any entity
employed to assist or advise the Trust Protector may nonetheless receive the Trust
Protector's share of the compensation paid to the entity.

# Article Five
# Administration of Our Trust during a Trustmaker's Incapacity

### Section 5.01    Definition of a Trustmaker's Incapacity

A Trustmaker will be considered incapacitated during any time when the Trustmaker is unable to effectively manage his or her property or financial affairs because of age, illness, mental disorder, dependence on prescription medication or other substances, or any other cause.

### Section 5.02    Determination of a Trustmaker's Incapacity

For purposes of this instrument, a Trustmaker is incapacitated if determined to be so under any one of the following Subsections.

#### (a)    Determination by the Other Trustmaker and Attending Physician

A Trustmaker will be considered incapacitated if the then-existing circumstances fall within the definition of incapacity as provided in Section 5.01 in the opinion of the other Trustmaker and the incapacitated Trustmaker's attending physician.

If the other Trustmaker is unable to make this determination, the incapacitated Trustmaker's attending physician will determine whether the incapacitated Trustmaker's then-existing circumstances fall within the definition of incapacity as provided in Section 5.01.

A Trustmaker will be considered restored to capacity if the Trustmaker's personal or attending physician signs a written opinion that the Trustmaker can manage his or her property and financial affairs.

#### (b)    Court Determination

A Trustmaker will be considered incapacitated if a court of competent jurisdiction determines that the Trustmaker is legally incapacitated, incompetent, or otherwise unable to effectively manage his or her property or financial affairs.

#### (c)    Detention, Disappearance, or Absence

A Trustmaker will be considered incapacitated if the Trustmaker has an unexplained disappearance or absence for more than 30 days, or is detained under duress. A Trustmaker's disappearance, absence, or detention under duress may be established by an affidavit of our Trustee, or, if no Trustee is then serving under this trust, by the affidavit of any beneficiary of any trust created under this instrument. The affidavit must describe the circumstances of the Trustmaker's disappearance, absence, or detention

under duress. A third party dealing with our Trustee in good faith may always rely on the representations contained in the affidavit.

A Trustmaker will be considered restored to capacity upon written notice by the missing or detained Trustmaker to the successor Trustee that he or she can manage his or her property and financial affairs.

### Section 5.03    Trust Distributions during a Trustmaker's Incapacity

For purposes of this Article, *incapacitated Trustmaker's trust property* refers to the net income and principal of the incapacitated Trustmaker's separate property and the net income and principal of the incapacitated Trustmaker's share of the community property, during any period when a Trustmaker is incapacitated.

Our Trustee shall administer the incapacitated Trustmaker's trust property as follows.

### (a)    Distributions for the Incapacitated Trustmaker's Benefit

Our Trustee shall regularly and conscientiously make appropriate distributions of income and principal for the benefit of the incapacitated Trustmaker under the circumstances existing at the time each distribution is made.

Appropriate distributions under this Subsection include the payment of any of the incapacitated Trustmaker's enforceable legal obligations and premiums for insurance policies owned by the incapacitated Trustmaker or by our trust, including life, medical, disability, property and casualty, errors and omissions, and longterm health care policies.

Our Trustee is authorized to honor pledges and continue to make gifts to charitable organizations that the incapacitated Trustmaker has regularly supported in the customarily given amounts.

The examples included in this Subsection are for purposes of illustration only and are not intended to limit the authority of our Trustee to make any distribution for the incapacitated Trustmaker's benefit that our Trustee determines appropriate.

### (b)    Manner of Making Distributions

Our Trustee may make distributions for the incapacitated Trustmaker's benefit in any one or more of the following ways:

to the incapacitated Trustmaker, but only to the extent he or she is able to manage these distributions;

to other persons and entities for the incapacitated Trustmaker's use and benefit;

to an agent or attorney in fact authorized to act for the incapacitated Trustmaker under a legally valid durable power of attorney executed by the incapacitated Trustmaker before his or her incapacity; and

to the incapacitated Trustmaker's guardian or conservator who has assumed responsibility for the incapacitated Trustmaker under any court order, decree, or judgment issued by a court of competent jurisdiction.

**(c)      Distributions to Agents under General Durable Power of Attorney**

Under a valid power of attorney executed by the incapacitated Trustmaker, our Trustee may make distributions to any agent for the purpose of making gifts as authorized in the power of attorney, or to assist our agent in carrying out our estate planning objectives.

# Article Six
# Administration of Our Trust upon the Death of a
# Trustmaker

### Section 6.01    Surviving Trustmaker's Trust Property and Deceased
### Trustmaker's Trust Property

After the first of us dies, the surviving Trustmaker's interest in any community property of
our trust and the surviving Trustmaker's separate trust property will be referred to as the
*surviving Trustmaker's trust property*. The surviving Trustmaker's trust property will be
referred to as the Survivor's Trust, and our Trustees shall administer the Survivor's Trust
as provided in Article Nine.

The deceased Trustmaker's interest in any community property of our trust and the
deceased Trustmaker's separate trust property will be referred to as the *deceased
Trustmaker's trust property*.

### Section 6.02    Administrative Trust

Upon a Trustmaker's death, our trust will become irrevocable as it pertains to the
administration and distribution of the deceased Trustmaker's trust property. Our Trustee
may need to apply for a separate Taxpayer Identification Number for the deceased
Trustmaker's trust property.

Before the distribution of the deceased Trustmaker's trust property as provided in this trust,
the deceased Trustmaker's trust property will be referred to as the *administrative trust*, but
may continue to be known as the Rudolph Trust during the administration period. The
administrative trust will exist for the period reasonably necessary to complete the
administrative tasks set forth in this Article.

### Section 6.03    Payment of Expenses and Taxes

Our Trustee may pay from the deceased Trustmaker's trust property:

> expenses of the deceased Trustmaker's last illness, funeral, and burial or
> cremation, including expenses of memorials and memorial services;

> legally enforceable claims against the deceased Trustmaker or the deceased
> Trustmaker's estate;

> expenses of administering the trust and the deceased Trustmaker's estate;
> and

> court-ordered allowances for those dependent upon the deceased
> Trustmaker.

These payments are discretionary with our Trustee. Our Trustee may make decisions on
these payments without regard to any limitation on payment of the expenses and may make
payments without any court's approval. No third party may enforce any claim or right to
payment against the trust by virtue of this discretionary authority.

If payment would decrease the federal estate tax charitable deduction available to the deceased Trustmaker's estate, our Trustee may not pay any administrative expenses from assets passing to an organization that qualifies for the federal estate tax charitable deduction.

If payment would decrease the federal estate tax marital deduction available to the deceased Trustmaker's estate or violate the provisions of Treasury Regulation Section 20.2056(b)-4(d), our Trustee may not pay any administrative expenses from the net income of property qualifying for the federal estate tax marital deduction.

Our Trustee shall pay death taxes out of the trust property's principal, as provided in Section 6.06. But if a probate estate is opened within six months after the date of the deceased Trustmaker's death, the deceased Trustmaker's Personal Representative shall pay any outstanding claims and expenses as authorized by the Personal Representative, as well as any death taxes from the deceased Trustmaker's probate estate to the extent that the cash and readily marketable assets in the deceased Trustmaker's probate estate are sufficient.

### Section 6.04    Restrictions on Certain Payments from Retirement Plans

The term *designation date* means September 30 of the calendar year following the year of the deceased Trustmaker's death, or another date as established by Treasury Regulations or other tax law authority as the final date for determining whether this trust meets the requirements for treatment of the trust's oldest beneficiary as if the beneficiary was named individually as beneficiary of any qualified retirement plan payable to this trust.

Notwithstanding any other provision of this trust or state law to the contrary, and except as provided in Article Thirteen, our Trustee may not distribute any qualified retirement benefit payable to our trust or any trust created under this trust to or for the benefit of the deceased Trustmaker's estate, any charity, or any beneficiary other than an individual, on or after the *designation date*. Our intent is that all qualified retirement benefits held by or payable to this trust on or after the designation date be distributed to or held only for individual beneficiaries, within the meaning of Internal Revenue Code Section 401(a)(9).

Qualified retirement benefits payable to the trust may not be used or applied on or after the designation date for payment of the deceased Trustmaker's debts, taxes, expenses of administration, or other claims against the deceased Trustmaker's estate, or for payment of estate, inheritance, or similar transfer taxes due because of the deceased Trustmaker's death, other than those directly attributable to and the legal obligation of a particular qualified retirement plan. This Section does not apply to any bequest or expense that is specifically directed to be funded with qualified retirement benefits.

### Section 6.05    Excluding Life Insurance Proceeds from Creditors

Despite anything to the contrary in this instrument, any life insurance proceeds payable to the Trustee under this instrument must never be or become part of our probate or testamentary estate. Nothing in this instrument directs that these life insurance proceeds be used to pay our debts or expenses.

### Section 6.06    Payment of Death Taxes

For the purposes of this Article, the term *death taxes* refers to any taxes imposed by reason of the deceased Trustmaker's death by federal, state, or local authorities, including estate, inheritance, gift, and direct-skip generation-skipping transfer taxes.  For purposes of this Section, *death taxes* does not include any additional estate tax imposed by Internal Revenue Code Section 2031(c)(5)(C) or Section 2032A(c), or any other comparable recapture tax imposed by any taxing authority.  Nor does the term include any generation-skipping transfer tax, other than a direct-skip generation-skipping transfer tax.

Except as to qualified retirement benefits and as otherwise specified in this Article or elsewhere in this trust, our Trustee shall apportion death taxes among the beneficiaries as those beneficiaries are determined for the purpose of the tax.  In doing this, our Trustee shall charge the death taxes only against the property generating the tax, taking into consideration the applicable provisions of the Internal Revenue Code, other applicable laws apportioning the death taxes, and the provisions of any instrument governing the property.  The values used in determining the tax are to be used for tax apportionment purposes.

To the extent practicable, the Trustee shall deduct the death taxes from the property distributable under this trust, and must recover the allocable share of death taxes from the beneficiaries of property passing other than under this trust, unless the Trustee determines that the cost of recovery is greater than warranted.  If death taxes are not collected from the beneficiaries of property passing other than under this trust, the Trustee shall apportion this unrecovered amount equitably among the beneficiaries who are subject to apportionment.

If our Trustee or the surviving Trustmaker's Personal Representative waives any right of recovery granted by Section 2207A and corresponding provisions of applicable state law, death taxes may not be apportioned to any property included in the deceased Trustmaker's gross estate under Internal Revenue Code Section 2044.

### Section 6.07    Coordination with the Personal Representative

The following provisions are intended to help facilitate the coordination between the deceased Trustmaker's Personal Representative and our Trustee.  These provisions apply even if the Personal Representative and the Trustee are the same person or entity.

#### (a)    Reliance on Information from the Personal Representative

Our Trustee may rely upon the written request of the deceased Trustmaker's Personal Representative for payments authorized under this Article and the amounts included in those payments without computing the sums involved.  If a payment is made under this Article to the deceased Trustmaker's Personal Representative, our Trustee will have no duty to inquire into the application of the payment.

#### (b)    Receipt of Probate Property

Our Trustee may accept or decline any distributions of property tendered to our Trustee by the deceased Trustmaker's Personal Representative.  If our

Trustee accepts the property, our Trustee may do so without audit, and will not be required to review the Personal Representative's records.

**(c)     Discretionary Distributions to the Deceased Trustmaker's Personal Representative**

Our Trustee may distribute cash, accrued income, or other trust property to the deceased Trustmaker's probate estate as a beneficiary of this trust, to the extent our Trustee determines that doing so is in the best interests of the trust beneficiaries.

## Section 6.08     Authority to Make Tax Elections

After a Trustmaker's death, our Trustee may make tax elections as provided in this Section. But if a Personal Representative is appointed for the deceased Trustmaker's probate estate, the discretionary authority granted to our Trustee as to any tax election will be subordinate to the Personal Representative's statutorily delegated authority.

**(a)     Tax Elections**

Our Trustee may make any tax elections necessary for the efficient administration of the deceased Trustmaker's estate, including:

> valuing assets according to an alternate valuation date;

> electing whether to take administration expenses as estate tax deductions or income tax deductions;

> allocating a Trustmaker's unused generation-skipping exemption to any portion of the trust property;

> electing special-use valuation;

> deferring payment of all or any portion of any taxes; and

> treating any portion of the deceased Trustmaker's administrative trust as part of the deceased Trustmaker's estate for federal or state income tax purposes, or both.

In addition, our Trustee, in its sole and absolute discretion, may elect to waive, in whole or in part, the deceased Trustmaker's right to have the deceased Trustmaker's estate reimbursed for any tax paid as a result of the inclusion in the deceased Trustmaker's taxable estate of property held in a qualified terminable interest property (QTIP) trust created for the surviving Trustmaker by the deceased Trustmaker.

Our Trustee may make equitable adjustments between income and principal because of any tax elections made by our Trustee.

**(b)     Qualified Terminable Interest Property**

Our Trustee may elect to have any trust property qualify for the federal estate tax marital deduction as qualified terminable interest property under Internal Revenue Code Section 2056(b)(7) (the *QTIP election*) and for any

state death tax marital deduction under any state's law (the *state QTIP election*). Our Trustee is not required to make the same election for both federal estate tax purposes and for state death tax purposes. If our Trustee makes a partial QTIP election, our Trustee will divide the trust on the basis of the fair market value of the trust assets at the time of the division.

Our Trustee is indemnified and held harmless from any loss, claim, or damage incurred as a result of any action taken by a beneficiary against our Trustee arising out of our Trustee's decision regarding the QTIP election for any portion of the trust property. Our Trustee is specifically authorized to use trust property to pay directly or to reimburse himself or herself for any expenses incurred to defend any threatened or actual legal action arising under this provision.

Our Trustee may make the special election under Internal Revenue Code Section 2652(a)(3) to treat all of the property of a trust created under this trust for which the QTIP election is made as if that election had not been made, making the deceased Trustmaker the transferor of the property for purposes of the generation-skipping transfer tax. We desire that our Trustee set apart the property to which the election has been made as a separate trust, so that the inclusion ratio of the separate qualified trust, as defined in the Internal Revenue Code, is zero.

### (c)    Allocation of GST Exemption

Our Trustee may elect to allocate or not allocate any portion of the Available GST Exemption under Internal Revenue Code Section 2631, or a counterpart exemption under any applicable state law to any property of which the deceased Trustmaker is considered the transferor for generation-skipping transfer tax purposes. This includes any property transferred by the deceased Trustmaker during the deceased Trustmaker's life for which the deceased Trustmaker did not make an allocation prior to death. The exercise of our Trustee's discretion should be based on the transfers, gift tax returns, and other information known to our Trustee, with no requirement that allocations benefit the various transferees or beneficiaries in any particular manner.

### (d)    Qualified Conservation Easements

Our Trustee may create a qualified conservation easement, as defined in Internal Revenue Code Section 2031(c)(8)(A), in any land held by the trust and may make the necessary election provided by Section 2031(c)(6).

## Section 6.09    Payment of Charitable Bequests

To the extent possible, our Trustee must make all charitable distributions from property that constitutes *income in respect of a decedent* (IRD) as that term is defined under the U.S. income tax laws. The distribution will qualify for the income tax charitable deduction under Internal Revenue Code Section 642(c)(2), as amended.

# Article Seven
# Disposition of Tangible Personal Property

### Section 7.01    Distribution of Tangible Personal Property by Memorandum

Each of us may dispose of items of tangible personal property by a signed written memorandum executed after we sign this instrument. The memorandum must refer to our trust and must reasonably identify the items and the beneficiary designated to receive each item. If either or both of us executes a memorandum, our Trustee shall incorporate the memorandum by reference into this instrument to the extent permitted by law.

Our Trustee shall distribute the items of tangible personal property listed in the memorandum as promptly as practicable after the death of a Trustmaker who completed the memorandum, together with any insurance policies covering the property and any claims under those policies, as provided in the memorandum. If either or both of us leave multiple written memoranda that conflict as to the disposition of any item of tangible personal property, the memorandum with the most recent date will control as to that item.

If the memorandum with the most recent date conflicts with a provision of this instrument as to the specific distribution of any item of tangible personal property, the provisions of the memorandum with the most recent date will control as to those items that are in conflict.

If the law does not permit incorporation of the memorandum by reference, the memorandum will then serve as an amendment to our trust, but only to the extent this amendment solely disposes of tangible personal property. We request that our Trustee follow our wishes and distribute the items of tangible personal property listed in the memorandum according to its terms.

### Section 7.02    Distribution of Remaining Tangible Personal Property

Our Trustee shall distribute any of the deceased Trustmaker's remaining tangible personal property not disposed of by a written memorandum to the Survivor's Trust to be administered as provided in Article Nine. If we are both deceased, our Trustee shall distribute the property as provided in the following Articles.

### Section 7.03    Definition of Tangible Personal Property

For purposes of this Article, the term *tangible personal property* includes household furnishings, appliances and fixtures, works of art, motor vehicles, pictures, collectibles, apparel and jewelry, books, sporting goods, and hobby paraphernalia. The term does not include any property that our Trustee, in its sole and absolute discretion, determines to be part of any business or business interest owned by the deceased Trustmaker or our trust.

After the death of a Trustmaker, if our Trustee receives property to be distributed under this Article from the deceased Trustmaker's probate estate or in any other manner, our Trustee shall distribute the property in accordance with this Article's terms. The fact that an item of tangible personal property was not received by our trust until after the death of a Trustmaker does not diminish the validity of the gift. If property to be distributed under this Article is not part of the trust property upon the death of a Trustmaker and is not

subsequently transferred to our Trustee from the deceased Trustmaker's probate estate or
in any other manner, then the specific distribution of property made in this Article is null
and void, without any legal or binding effect.

## Section 7.04    Incidental Expenses and Encumbrances

Until property distributed in accordance with this Article is delivered to the appropriate
beneficiary or his or her Legal Representative, our Trustee shall pay the reasonable
expenses of securing, storing, insuring, packing, transporting, and otherwise caring for the
property as an administration expense.   Except as otherwise provided in our trust, our
Trustee shall distribute property under this Article subject to all liens, security interests,
and other encumbrances on the property.

## Section 7.05    Residuary Distribution

The deceased Trustmaker's remaining property will be administered as provided in the
following Articles.

# Article Eight
# Creating Trust Shares upon the Death of a Trustmaker

Our Trustee shall administer the deceased Trustmaker's remaining trust property as provided in this Article.

### Section 8.01    Distribution to the Deceased Trustmaker's Will

This Section applies if the surviving Trustmaker is a disabled person (as defined in United States Code Title 42, Section 1382c(a)(3), or under Arizona law related to means-based government programs), or is eligible to receive or is receiving assistance (as defined in United States Code Title 42, Section 1396d(a), or under Arizona law related to means-based government programs) or other benefits under a means-based government program, such as Medicaid or Supplemental Security Income.

If the surviving Trustmaker meets the criteria set forth above, our Trustee shall distribute the deceased Trustmaker's remaining trust property to the Personal Representative of the deceased Trustmaker's estate for administration and distribution under the terms of the deceased Trustmaker's Will.

But if the surviving Trustmaker does not meet the criteria set forth above, our Trustee shall administer the deceased Trustmaker's remaining trust property as otherwise provided in this Article.

### Section 8.02    Division of the Deceased Trustmaker's Remaining Trust Property

Our Trustee shall divide the deceased Trustmaker's remaining trust property as provided in this Section.

#### (a)    Creation of the Marital Share

Our Trustee shall allocate to the Marital Share a fractional share of the deceased Trustmaker's remaining trust property calculated as follows.

##### (1)    The Numerator

Assuming the value qualifies for the federal tax marital deduction, the fraction's numerator will equal the minimum value sufficient to reduce the federal estate tax to the lowest possible amount. In computing the numerator, our Trustee shall take into account the deceased Trustmaker's transfers, including transfers treated as made by the deceased Trustmaker, and all deductions, exclusions, credits, and reductions in value allowed in computing this tax.

##### (2)    The Denominator

The denominator will be the value of the deceased Trustmaker's remaining trust property as finally determined for federal estate tax purposes.

Rudolph Trust
8-1

The Marital Share must carry its *pro rata* share of the income, but the Marital Share must not receive less income than that required to be paid to the surviving Trustmaker under applicable state law.

**(b)      Creation of the Non-Marital Share**

Our Trustee shall allocate the balance of the trust property to the Non-Marital Share.

**(c)      Funding the Fractional Share**

Our Trustee has complete authority to satisfy the fractional gift by cash contributions, by in-kind contributions, by a combination of cash and in-kind contributions, or by undivided interests in property. If there are insufficient assets qualifying for the federal estate tax marital deduction to fully fund the Marital Share, our Trustee shall reduce the funding to the Marital Share accordingly. We acknowledge that the funding amount may be affected by actions by our Trustee and by the deceased Trustmaker's Personal Representative in making certain tax elections.

Once calculated in this way, the fraction is fixed, and may not vary with changes in the property value after the valuation date used for federal estate tax purposes. Because the fractional gift is not intended to be a specified dollar amount or pecuniary in nature, our Trustee shall apply the fraction to the trust assets at their actual value on the effective allocation date, so that the actual value resulting from the application of the fraction will reflect fluctuations in the trust property's value. Our Trustee may fund the fractional share on a *non pro rata* basis if the funding is based on the total fair market value of the assets on the allocation date.

Our Trustee's allocations of assets are limited as set forth below.

> **(1)      Ineligible Assets**
>
> Our Trustee may only allocate property and the proceeds of any property to the Marital Share that qualify for the federal estate tax marital deduction.
>
> **(2)      Tax Consequences of Certain Allocations**
>
> We request that our Trustee always consider the tax consequences of allocating or distributing to the Marital Share any insurance policy that insures the surviving Trustmaker's life, property subject to the foreign death credit, property on which a tax credit is available, or property that is income in respect of a decedent under the Internal Revenue Code.

Our Trustee shall administer the Marital Share as provided in Article Ten. Our Trustee shall administer the Non-Marital Share as provided in Article Eleven.

**Section 8.03**    **Disposition of Property upon Disclaimer by the Surviving Trustmaker**

The surviving Trustmaker, his or her fiduciary, or his or her agent serving under a power of attorney may disclaim any portion of any interest in or power over property passing from the deceased Trustmaker to or for the surviving Trustmaker's benefit under this instrument. If the surviving Trustmaker disclaims any property that would otherwise be allocated to the Marital Trust, our Trustee shall allocate the disclaimed property to the Non-Marital Share.

If the surviving Trustmaker disclaims his or her interest in any portion of the Non-Marital Share, our Trustee shall dispose of the disclaimed interest as though the surviving Trustmaker had predeceased the deceased Trustmaker.

**Section 8.04**    **Option to Allocate Deceased Trustmaker Trust Property to the Survivor's Trust**

Our Trustee may waive any allocation to the the Marital and Non-Marital Shares and administer all of the trust assets under the provisions of the Survivor's Trust if:

> the combined value of the deceased and surviving Trustmakers' assets is less than the exemption equivalent for the deceased Trustmaker allowed by the Internal Revenue Service; and

> all of the then-living current and remainder beneficiaries entitled to the assets of any trusts that would otherwise be created from the Marital Share, Non-Marital Share, or both agree to waive any allocation to those shares or trusts or both in writing.

If any of the beneficiaries is a minor, the minor's parent or guardian may waive the allocation on behalf of the minor in writing.

# Article Nine
# The Survivor's Trust

Our Trustee shall administer the Survivor's Trust as provided in this Article.

## Section 9.01    Trustee of the Survivor's Trust

The surviving Trustmaker may serve as sole Trustee of the Survivor's Trust. The surviving Trustmaker may remove and replace the Trustee of the Survivor's Trust at any time, with or without cause. Notwithstanding any other provision in this instrument, the surviving Trustmaker may appoint any individual or corporate fiduciary to serve as Trustee of the Survivor's Trust.

## Section 9.02    The Surviving Trustmaker's Right to Amend

The surviving Trustmaker also has the absolute right to amend the Survivor's Trust's terms by restating them in full. The restated Survivor's Trust must be in writing and signed by the surviving Trustmaker and the Trustee of the restated Survivor's Trust.

The right to amend by restatement may be exercised only by the surviving Trustmaker.

## Section 9.03    Survivor's Trust As Only Trust

If the Survivor's Trust is the only trust established on the death of the deceased Trustmaker, a transfer to that trust need not be evidenced by a change of title.

## Section 9.04    Separate Share for Deceased Trustmaker's Trust Property

If the Survivor's Trust becomes the beneficiary of death benefits under any qualified retirement plan, our Trustee shall hold this property in a separate share of the Survivor's Trust during the surviving Trustmaker's lifetime. Our Trustee shall administer the separate share in accordance with all of this Article's provisions. But the surviving Trustmaker may not amend the terms of the separate share.

The purpose of the separate share is to keep the deceased Trustmaker's trust property and its accumulated income separate from the main share during the lifetime of the surviving Trustmaker, in order to qualify the separate share as a designated beneficiary under qualified retirement plans.

Our Trustee shall distribute as much of the principal and accumulated income of the separate share to the main share of the Survivor's Trust as the surviving Trustmaker directs in writing. This right to direct distribution from the separate share to the main account may be exercised only by the surviving Trustmaker.

## Section 9.05    Distribution of Income

Our Trustee shall distribute all of the net income of the Survivor's Trust to the surviving Trustmaker at least annually. Nothing contained in this instrument may limit the right of the surviving Trustmaker to receive the Survivor's Trust's entire net income.

## Section 9.06    Distributions of Principal

Our Trustee shall distribute as much of the principal of the Survivor's Trust to the surviving
Trustmaker as he or she requests in writing for any reason.

Our Trustee may also distribute as much of the principal of the Survivor's Trust to the
surviving Trustmaker as our Trustee determines necessary or advisable for any purpose.

## Section 9.07    Unproductive Property

Upon the written request of the surviving Trustmaker, our Trustee shall convert any
nonproductive property held in the Survivor's Trust to productive property.

## Section 9.08    Trust Distributions during the Incapacity of the Surviving
Trustmaker

During any time the surviving Trustmaker is incapacitated, our Trustee shall administer the
Survivor's Trust according to the provisions of Section 5.03.

## Section 9.09    General Power of Appointment

The surviving Trustmaker may appoint all or any portion of the principal and undistributed
income remaining in the Survivor's Trust at the surviving Trustmaker's death among one
or more persons or entities, including the creditors of the surviving Trustmaker's estate.
The surviving Trustmaker has the exclusive right to exercise this general power of
appointment.

## Section 9.10    Administration following the Surviving Trustmaker's Death

The Survivor's Trust becomes irrevocable upon the death of the surviving Trustmaker, and
our Trustee shall administer the Survivor's Trust consistent with the provisions of Article
Six for administration following the death of the first of us to die.

Upon completion of the administrative tasks, our Trustee shall administer the unappointed
balance or remainder of the Survivor's Trust as provided in Article Twelve.

# Article Ten
# The Marital Trust

Our Trustee shall administer the Marital Share in trust as provided in this Article. The trust will be referred to as the *Marital Trust*.

## Section 10.01    Distributions of Net Income

Our Trustee shall distribute all of the net income of the Marital Trust to the surviving Trustmaker at least annually during the surviving Trustmaker's lifetime. Nothing contained in this instrument limits the right of the surviving Trustmaker to receive the entire net income of the Marital Trust.

## Section 10.02    Distributions of Principal

Our Trustee shall distribute as much of the principal of the Marital Trust to the surviving Trustmaker as our Trustee determines necessary or advisable for the surviving Trustmaker's health, education, maintenance or support.

Our Trustee, in its sole and absolute discretion, may consider the needs of the surviving Trustmaker and other income and resources available to the surviving Trustmaker.

## Section 10.03    Effect of Remarriage on Principal Distributions

Upon the remarriage of the surviving Trustmaker:

if the surviving Trustmaker is then serving as Trustee of the Marital Trust, the surviving Trustmaker is to be removed and replaced under the provisions of Article Three and

all distributions of principal from the Marital Trust will terminate unless the surviving Trustmaker and the surviving Trustmaker's fiancé execute a valid prenuptial agreement that complies with the terms set forth below. For purposes of this trust, *remarriage* means any marriage, including a common law marriage, entered into by the surviving Trustmaker after the death of the first of us to die that is valid in the jurisdiction where it took place.

If the surviving Trustmaker chooses to remarry after the death of the first of us to die and executes a valid prenuptial agreement not less than 30 days prior to the time of the remarriage that complies with the following terms, then in our judgment, there will be sufficient protection for the other beneficiaries named in this trust. The distributions under this Article will not be restricted because of this remarriage, and the surviving Trustmaker need not be replaced as Trustee. The prenuptial agreement must be in writing and signed by the surviving Trustmaker and the surviving Trustmaker's fiancé, with each having been represented by independent legal counsel. Prior to the execution of the agreement, each party must make full disclosure of their then-existing assets. The prenuptial agreement must provide that the surviving Trustmaker's fiancé waives any right to any portion of the surviving Trustmaker's share of the surviving Trustmaker's premarital assets, the surviving Trustmaker's share of the Marital Trust in the event of dissolution of the marriage or the

death of the surviving Trustmaker, with the new spouse surviving the surviving
Trustmaker.

### Section 10.04    Nonproductive Property

Upon written request of the surviving Trustmaker, our Trustee shall convert any
nonproductive property held in the Marital Trust to productive property. In addition, the
surviving Trustmaker has the right to require that any nonproductive property held in any
qualified retirement plan, private or commercial annuity, individual retirement annuity,
pension, profit-sharing plan, stock-bonus plan, stock ownership plan, or similar
arrangement made payable to the Marital Trust be converted to productive property.

### Section 10.05    Qualified Terminable Interest Property

Our intent is that the Marital Trust property constitute Qualified Terminable Interest
Property (QTIP) for federal and state death tax purposes if and to the extent our Trustee or
Personal Representative makes the necessary elections. This trust should be interpreted to
accomplish this intent.

If our Trustee or Personal Representative elects to have some but not all of the property in
the Marital Trust qualify as qualified terminable interest property for federal or state
purposes, our Trustee shall separate the qualified property and the nonqualified property
into separate shares as necessary. Our Trustee shall hold and administer each share upon
identical terms and conditions as if no division had occurred. The separate shares may be
invested in a common fund with each share owning a proportionate fractional share of the
fund.

### Section 10.06    Administration of the Marital Trust at the Death of the
###                  Surviving Trustmaker

The Marital Trust will terminate upon the death of the surviving Trustmaker.

Our Trustee shall distribute the balance or remainder of the Marital Trust as provided in
Article Twelve.

# Article Eleven
# The Bypass Trust

Our Trustee shall hold and administer the Non-Marital Share in a separate trust as provided in this Article. This document refers to the trust as the *Bypass Trust.*

## Section 11.01    Bypass Trust Beneficiary

The surviving Trustmaker is the only beneficiary of the Bypass Trust during the surviving Trustmaker's lifetime.

## Section 11.02    Distribution of Income

Our Trustee shall distribute all of the net income of the Bypass Trust to the surviving Trustmaker at least annually during the surviving Trustmaker's lifetime.

## Section 11.03    Distribution of Principal

Our Trustee shall distribute as much principal of the Bypass Trust to the surviving Trustmaker as our Trustee determines necessary or advisable for the surviving Trustmaker's health, education, maintenance or support.

## Section 11.04    Guidelines to Our Trustee

The surviving Trustmaker is the only beneficiary of the Bypass Trust. In making discretionary distributions under this Article, our Trustee should bear in mind that our primary concern and objective is to provide for the well-being of the surviving Trustmaker, and the preservation of principal is not as important as this objective.

Without limiting our Trustee's discretion, we recommend that our Trustee not distribute principal from the Bypass Trust to the surviving Trustmaker until the principal of the Marital Trust is substantially exhausted.

## Section 11.05    Effect of Remarriage on Bypass Trust Distributions

Upon the remarriage of the surviving Trustmaker, the Bypass Trust will terminate unless the surviving Trustmaker and the surviving Trustmaker's fiancé execute a valid prenuptial agreement that complies with the terms set forth below. For purposes of this trust, *remarriage* means any marriage, including a common law marriage, entered into by the surviving Trustmaker after the death of the first of us to die that is valid in the jurisdiction where the marriage took place.

If terminated, our Trustee shall administer the balance or remainder of the Bypass Trust as provided in Article Twelve.

If the surviving Trustmaker should choose to remarry after the death of the first of us to die and executes a valid prenuptial agreement not less than 30 days prior to the surviving Trustmaker's remarriage then, in our judgment, there will be sufficient protection for the other beneficiaries named in this trust, and the Bypass Trust will not terminate. The prenuptial agreement must be in writing and signed by the surviving Trustmaker and the

surviving Trustmaker's fiancé with each represented by independent legal counsel. Prior to the execution of the agreement, each party must make full disclosure of their assets as these assets exist at that time. The prenuptial agreement must provide that the surviving Trustmaker's fiancé waives any right to any portion of the surviving Trustmaker's share of the surviving Trustmaker's premarital assets and the surviving Trustmaker's interest in any trust created under this instrument in the event of dissolution of the marriage, or in the event of the death of the surviving Trustmaker with the new spouse surviving the surviving Trustmaker.

## Section 11.06    Termination of the Bypass Trust

The Bypass Trust will terminate upon the death of the surviving Trustmaker and our Trustee shall administer the balance or remainder of the Bypass Trust as provided in Article Twelve.

# Article Twelve
# Our Descendants' Trusts

Upon the death of the survivor of us, our Trustee shall administer and distribute our remaining trust property (not distributed under prior Articles of this instrument), or other property allocated to this Article under the terms of this Article.

## Section 12.01    Division of Our Trust Property

Our Trustee shall divide our remaining trust property into separate shares for our descendants, *per stirpes*.

Our Trustee shall administer the share for each of our descendants in a separate trust for the descendant's benefit as provided in the next Section.

## Section 12.02    Administration of Descendants' Trusts

Our Trustee shall administer the trust for each descendant as follows:

### (a)    Distributions of Income and Principal

Our Independent Trustee may distribute to the beneficiary as much of the income and principal of the beneficiary's trust as the Trustee, in its sole and absolute discretion, advises for any purpose. If no Independent Trustee is then serving, our Trustee shall distribute to the beneficiary as much income and principal of the beneficiary's trust as our Trustee determines is necessary or advisable for the health, education, maintenance or support of the beneficiary.

Our Trustee shall add any undistributed net income to principal.

### (b)    Guidelines for Discretionary Distributions

In making discretionary distributions to the beneficiary, we desire to encourage the beneficiary to develop a strong work ethic, to be a productive and contributing member of society, and to provide for those who are dependent on the beneficiary for care and support. Accordingly, we request that our Trustee always consider the other known resources available to the beneficiary before making discretionary distributions. We desire that preservation of principal be a priority for purposes of this trust and that the beneficiary show genuine need before our Trustee makes any discretionary distribution.

### (c)    Right to Withdraw Principal

At the intervals set forth below, the beneficiary may withdraw from the beneficiary's trust, at any time, amounts not to exceed in the aggregate:

> $100,000 of the accumulated trust income and principal, each calendar year after funding of the beneficiary's trust, increased by $100,000 of the accumulated trust income and

principal not already subject to withdrawal, calculated by taking the total accumulated trust income and principal and deducting any amount already subject to withdrawal but not actually withdrawn, each additional year after funding of the beneficiary's trust; and

any amount of the accumulated trust income and principal, once the beneficiary reaches the age of 40 years old.

These withdrawal rights are cumulative and the amount of each successive withdrawal right will be added to any existing withdrawal right. The amount of each withdrawal right will be determined by applying the applicable fraction to the trust's principal and accumulated income as of the date the beneficiary first has the right to exercise the withdrawal right.

The beneficiary may exercise this right at any time by delivering written notice to our Trustee, setting forth the desired withdrawal amount. Upon receiving a notice, our Trustee shall convey and deliver the requested amount to the beneficiary, free of trust. This right of withdrawal is a privilege that may be exercised only by the beneficiary, and is not subject to the claims of any creditor or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. This provision does not limit the beneficiary's exercise of any power of appointment the beneficiary may have.

**(d)    Distribution upon the Death of the Beneficiary**

If the beneficiary dies after the beneficiary's trust is established, but before the complete distribution of the beneficiary's trust, our Trustee shall distribute the remaining trust property *per stirpes* in trusts to the beneficiary's descendants. If the beneficiary has no then-living descendants, our Trustee shall distribute the balance of the trust property *per stirpes* in trusts to the descendants of the beneficiary's nearest lineal ancestor who was a descendant of ours or, if no descendant of this kind is then living, *per stirpes* in trusts to our descendants. Our Trustee shall administer the trusts under the same terms as the beneficiary's trust.

If we have no then-living descendants, our Trustee shall distribute the balance of the trust property as provided in Article Thirteen.

# Article Thirteen
# Remote Contingent Distribution

If at any time no person or entity is qualified to receive final distribution of any part of our trust estate under the foregoing provisions of this trust, this portion of the trust estate must be distributed to St. Jude Children's Research Hospital, Inc., or its successor in interest, to be used exclusively for its general charitable purposes. If the organization has no certainly identifiable successors in interest, our Trustee must designate one or more charitable organizations with similar charitable purposes as St. Jude Children's Research Hospital, Inc. to receive that property. Our Trustee shall determine the amounts, shares, and interests of the distributions. Each charitable organization must be a charity of a type described in Internal Revenue Code Section 2055(a).

# Article Fourteen
# Distributions to Underage and Incapacitated Beneficiaries

## Section 14.01    Supplemental Needs Trust

If under any provision of this trust our Trustee is directed to distribute to or for the benefit of any beneficiary when that person is receiving or applying for needs-based government benefits, our Trustee shall retain and administer the trust property as follows:

### (a)    Not a Conduit Trust

The distributions from Retirement Plans (*conduit trust provisions*) set forth in Section 15.01 do not apply to the provisions of Section 14.01.

### (b)    Distributions for Supplemental Needs

In its sole, absolute, and unreviewable discretion, our Trustee may distribute discretionary amounts of net income and principal for supplemental needs of the beneficiary not otherwise provided by governmental financial assistance and benefits, or by the providers of services.

*Supplemental needs* refers to the basic requirements for maintaining the good health, safety, and welfare when, in the discretion of our Trustee, these basic requirements are not being provided by any public agency, office, or department of any state or of the United States.

*Supplemental needs* will also include medical and dental expenses; annual independent checkups; clothing and equipment; programs of training, education, treatment, and rehabilitation; private residential care; transportation, including vehicle purchases; maintenance; insurance; and essential dietary needs. *Supplemental needs* may include spending money; additional food; clothing; electronic equipment such as radio, recording and playback, television and computer equipment; camping; vacations; athletic contests; movies; trips; and money to purchase appropriate gifts for relatives and friends.

Our Trustee will have no obligation to expend trust assets for these needs. But if our Trustee, in its sole, absolute and unreviewable discretion, decides to expend trust assets, under no circumstances should any amounts be paid to or reimbursed to the federal government, any state, or any governmental agency for any purpose, including for the care, support, and maintenance of the beneficiary.

### (c)    Objective to Promote Independence of the Beneficiary

While actions are in our Trustee's sole, absolute, and unreviewable discretion, all parties to this trust should be mindful that our wish is that the beneficiary live as independently, productively, and happily as possible.

### (d)     Trust Assets Not to be Considered Available Resource to the Beneficiary

The purpose of the provisions of this Section 14.01 is to supplement any benefits received, or for which the beneficiary may be eligible, from various governmental assistance programs, and not to supplant any benefits of this kind. All actions of our Trustee shall be directed toward carrying out this intent, and our Trustee's discretion granted under this instrument to carry out this intent is sole, absolute, and unreviewable.

For purposes of determining the beneficiary's eligibility for any of these benefits, no part of the trust estate's principal or undistributed income will be considered available to the beneficiary for public benefit purposes. The beneficiary must not be considered to have access to the trust's principal or income, or to have ownership, right, authority, or power to convert any asset into cash for his or her own use.

Our Trustee shall hold, administer, and distribute all property allocated to this trust for the exclusive benefit of the beneficiary during his or her lifetime. All distributions from this trust share are in the sole, absolute, and unreviewable discretion of our Trustee, and the beneficiary is legally restricted from demanding trust assets for his or her support and maintenance.

In the event our Trustee is requested to release principal or income of the trust to or on behalf of the beneficiary to pay for equipment, medication, or services that any government agency is authorized to provide, or to petition a court or any other administrative agency for the release of trust principal or income for this purpose, our Trustee is authorized to deny this request and to take whatever administrative or judicial steps are necessary to continue the beneficiary's eligibility for benefits. This includes obtaining legal advice about the beneficiary's specific entitlement to public benefits and obtaining instructions from a court of competent jurisdiction ruling that neither the trust corpus nor the trust income is available to the beneficiary for eligibility purposes. Any expenses incurred by our Trustee in this regard, including reasonable attorney fees, will be a proper charge to the trust estate.

### (e)     Distribution Guidelines

Our Trustee shall be responsible for determining what discretionary distributions will be made from this trust. Our Trustee may distribute discretionary amounts of income and principal to or for the benefit of the beneficiary for those supplemental needs not otherwise provided by governmental financial assistance and benefits, or by the providers of services. Any undistributed income will be added to principal. In making distributions, our Trustee must:

> consider any other known income or resources of the beneficiary that are reasonably available;

Rudolph Trust
14-2

consider all entitlement benefits from any government agency, including Social Security disability payments, Medicare, Medicaid (or any state Medicaid program equivalent), Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other supplemental purpose benefits for which the beneficiary is eligible;

consider resource and income limitations of any assistance program;

make expenditures so that the beneficiary's standard of living will be comfortable and enjoyable;

not be obligated or compelled to make specific payments;

not pay or reimburse any amounts to any governmental agency or department, unless proper demand is made by this governmental agency or reimbursement is required by the state; and

not be liable for any loss of benefits.

**(f)    No Seeking of Order to Distribute**

For purposes of determining the beneficiary's state Medicaid program equivalent eligibility, no part of the trust estate's principal or undistributed income may be considered available to the beneficiary. Our Trustee shall deny any request by the beneficiary to:

release trust principal or income to or on behalf of the beneficiary to pay for equipment, medication, or services that the state Medicaid program equivalent would provide if the trust did not exist; or

petition a court or any other administrative agency for the release of trust principal or income for this purpose.

In its sole, absolute, and unreviewable discretion, our Trustee may take necessary administrative or legal steps to protect the beneficiary's state Medicaid program equivalent eligibility. This includes obtaining a ruling from a court of competent jurisdiction that the trust principal is not available to the beneficiary for purposes of determining state Medicaid program equivalent eligibility. Expenses for this action, including reasonable attorney fees, will be a proper charge to the trust estate.

**(g)    Indemnification of Trustee When Acting in Good Faith**

Our Trustee will be indemnified from the trust property for any loss or reduction of public benefits sustained by the beneficiary as a result of our Trustee exercising the authority granted to our Trustee under this Section in good faith.

**(h)     Termination and Distribution of the Supplemental Needs Trust**

If our Trustee, in its sole, absolute, and unreviewable discretion, determines that the beneficiary is no longer dependent on others and is able to independently support himself or herself, our Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 14.01 had not been effective.

If the other provisions of this trust do not provide for the remaining property's distribution or retention, then our Trustee shall distribute the remaining property to the beneficiary outright and free of trust.

*Independently support* is satisfied when the beneficiary has been gainfully employed for 33 months of the 36-month period immediately preceding the decision to terminate the trust share.

The terms *gainful employment* and *gainfully employed* mean the full-time employment that produces sufficient net income to enable the beneficiary to contribute not less than 100% of the funds (exclusive of other revenue sources) that are necessary to provide for the beneficiary's independent care, support, maintenance, and education.  In its sole, absolute, and unreviewable discretion, our Trustee shall determine whether or not the beneficiary has satisfied the condition of gainful employment.

**(i)     Distribution upon the Death of the Beneficiary**

Upon the beneficiary's death, our Trustee shall distribute or retain the remaining property according to the other provisions of this trust as though the provisions of this Section 14.01 had not been effective.  If the other provisions of this trust provide for the beneficiary's share to be held in trust, then those provisions will be interpreted as though the beneficiary died after the establishment of that trust.

If the other provisions of this trust do not provide for the distribution or retention of the remaining property, then the beneficiary will have the testamentary limited power to appoint all or any portion of the principal and undistributed income remaining in the beneficiary's trust at his or her death among one or more persons or entities.  But the beneficiary may not exercise this limited power of appointment to appoint to himself or herself, his or her estate, his or her creditors or the creditors of his or her estate.

We intend to create a limited power of appointment and not a general power of appointment as defined in Internal Revenue Code Section 2041.

If any part of the beneficiary's trust is not effectively appointed, our Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants.    If the beneficiary has no then-living descendants, our Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor

who was a descendant of ours or, if there is no then-living descendant, *per stirpes* to our descendants.

If we have no then-living descendants, our Trustee shall distribute the balance of the trust property as provided in Article Thirteen.

## Section 14.02    Underage and Incapacitated Beneficiaries

If our Trustee is authorized or directed under any provision of this trust to distribute net income or principal to a person who has not yet reached 25 years of age or who is incapacitated as defined in Section 18.07(g), our Trustee may make the distribution by any one or more of the methods described in Section 14.03. Alternatively, our Trustee may retain the trust property in a separate trust to be administered by our Trustee under Section 14.04.

We request that before making a distribution to a beneficiary, our Trustee consider, to the extent reasonable, the ability the beneficiary has demonstrated in managing prior distributions of trust property.

## Section 14.03    Methods of Distribution

Our Trustee may distribute trust property for any beneficiary's benefit, subject to the provisions of Section 14.02 in any one or more of the following methods:

Our Trustee may distribute trust property directly to the beneficiary.

Our Trustee may distribute trust property to the beneficiary's guardian, conservator, parent, other family member, or any person who has assumed the responsibility of caring for the beneficiary.

Our Trustee may distribute trust property to any person or entity, including our Trustee, as custodian for the beneficiary under the Uniform Transfers to Minors Act or similar statute.

Our Trustee may distribute trust property to other persons and entities for the beneficiary's use and benefit.

Our Trustee may distribute trust property to an agent or attorney in fact authorized to act for the beneficiary under a valid durable power of attorney executed by the beneficiary before becoming incapacitated.

## Section 14.04    Retention in Trust

Our Trustee may retain and administer trust property in a separate trust for any beneficiary's benefit, subject to the provisions of Section 14.02 as follows.

### (a)    Distribution of Net Income and Principal

Our Independent Trustee may distribute to the beneficiary as much of the net income and principal of any trust created under this Section as our Independent Trustee may determine advisable for any purpose. If there is no then-serving Independent Trustee, our Trustee shall distribute to the beneficiary as much of the net income and principal of the trust created

under this Section as our Trustee determines is necessary or advisable for the beneficiary's health, education, maintenance or support. Any undistributed net income will be accumulated and added to principal.

**(b)    Right of Withdrawal**

When the beneficiary whose trust is created under this Section either reaches 25 years of age or is no longer incapacitated, the beneficiary may withdraw all or any portion of the accumulated net income and principal from the trust.

**(c)    Distribution upon the Death of the Beneficiary**

Subject to the terms of the next paragraph, the beneficiary whose trust is created under this Section may appoint all or any portion of the principal and undistributed net income remaining in the beneficiary's trust at the beneficiary's death among one or more persons or entities, and the creditors of the beneficiary's estate. The beneficiary has the exclusive right to exercise this general power of appointment.

The beneficiary may not exercise this power of appointment to appoint to the beneficiary, the beneficiary's estate, the beneficiary's creditors, or creditors of the beneficiary's estate from the *limited share* of the beneficiary's trust. For purposes of this power of appointment, the *limited share* of the beneficiary's trust is that portion of the beneficiary's trust that has an inclusion ratio for generation-skipping transfer tax purposes of zero or that without the exercise of the power of appointment, would not constitute a taxable generation-skipping transfer at the beneficiary's death. If the generation-skipping tax does not then apply, the limited share will be the beneficiary's entire trust.

If any part of the beneficiary's trust is not effectively appointed, our Trustee shall distribute the remaining unappointed balance *per stirpes* to the beneficiary's descendants. If the beneficiary has no then-living descendants, our Trustee shall distribute the unappointed balance *per stirpes* to the then-living descendants of the beneficiary's nearest lineal ancestor who was a descendant of ours or, if there is no then-living descendant, *per stirpes* to our descendants.

If we have no then-living descendants, our Trustee shall distribute the balance of the trust property as provided in Article Thirteen.

## Section 14.05    Application of Article

Any decision made by our Trustee under this Article is final, controlling, and binding upon all beneficiaries subject to the provisions of this Article.

The provisions of this Article do not apply to distributions to either of us from any trust established under this trust.

Except as provided in Section 14.01, the provisions of this Article do not apply to distributions that are required to be made to a beneficiary under the provisions of Section 15.01.

# Article Fifteen
## Retirement Plans and Life Insurance Policies

The provisions of this Article apply to qualified retirement plans and insurance policies owned by or made payable to our trust.

### Section 15.01    Retirement Plans

Notwithstanding any contrary provision in this trust, this Section's provisions apply to qualified retirement plans.

#### (a)    Rights of Our Trustee

Subject to the provisions below pertaining to distributions from qualified retirement plans, our Trustee may exercise the right to determine the manner and timing of payments of qualified retirement plan benefits that are permitted and are consistent with the federal income tax rules regarding required minimum distributions under Internal Revenue Code Section 401(a)(9).

Our Trustee may make a qualified disclaimer of any qualified retirement benefits payable or non-qualified annuity benefits to our trust.

No beneficiary may hold our Trustee liable for any decision regarding the selection of the death benefit election or the disclaimer of any qualified retirement benefits payable to our trust.

Our Trustee may not change or designate beneficiaries under any retirement plan. Any power extended to our Trustee under the terms of a retirement plan that gives or appears to give our Trustee the power to change the identity or rights of any beneficiaries under the plan is void *ab initio*.

#### (b)    Distributions from Retirement Plans to the Survivor's Trust

To the extent that at least part of any tax-favored retirement plan is distributed to the Survivor's Trust, our Trustee may (or must, if so requested by the surviving Trustmaker) cause the plan or part of the plan to be paid directly to the surviving Trustmaker as beneficiary, or must (if so required by the surviving Trustmaker) cause the plan or part of the plan to be transferred directly into another retirement plan in the surviving Trustmaker's name, without the intervening step of transferring it to the Survivor's Trust.

If the Survivor's Trust becomes the beneficiary of death benefits under any qualified retirement plan, each year, beginning with the year of the deceased Trustmaker's death, our Trustee shall withdraw at least the greater of:

> the net income earned on the Survivor's Trust's share of the plan during the year; and

Rudolph Trust
15-1

> the minimum distribution required to be withdrawn from the Survivor's Trust's share of the plan under Internal Revenue Code Section 401(a)(9).

Our Trustee may withdraw additional amounts from the Survivor's Trust's share of the plan as our Trustee deems advisable. Our Trustee shall immediately distribute all amounts withdrawn to the surviving Trustmaker.

If the surviving Trustmaker is then deceased, our Trustee shall instead distribute the amount that would have been distributed to the surviving Trustmaker to the remainder beneficiary.

This Subsection's purpose is to ensure that the life expectancy of the surviving Trustmaker may be used to calculate the minimum distributions required by the Internal Revenue Code. This Subsection is to be interpreted consistent with this intent, despite any direction to the contrary in this trust.

Notwithstanding any other provision of this trust, our Trustee shall treat annuity and other periodic payments from any qualified retirement plans in any given year as income, to the extent the distribution represents income generated and treated as generated by any qualified retirement plan for that year. If income information is not available, then our Trustee shall apportion the annuity and other periodic payments between principal and income in an equitable and practical manner under Section 16.13.

**(c)     Distributions from Retirement Plans to the Marital Trust**

If the Marital Trust becomes the beneficiary of death benefits under any qualified retirement plan, each year, beginning with the year of the deceased Trustmaker's death, our Trustee shall withdraw at least the greater of:

> the net income earned on Marital Trust's share of the plan during the year; and

> the minimum distribution required to be withdrawn from Marital Trust's share of the plan under Internal Revenue Code Section 401(a)(9).

Our Trustee may withdraw additional amounts from Marital Trust's share of the plan as our Trustee deems advisable, but only if the dispositive terms of the trust authorize our Trustee to immediately distribute the withdrawn amount as provided in this Subsection to the surviving Trustmaker. Our Trustee shall immediately distribute all amounts withdrawn to the surviving Trustmaker.

If the surviving Trustmaker is then deceased, our Trustee shall instead distribute the amount that would have been distributed to the surviving Trustmaker to the remainder beneficiary.

This Subsection's purpose is to ensure that the life expectancy of the surviving Trustmaker may be used to calculate the minimum distributions

required by the Internal Revenue Code. This Subsection is to be interpreted consistent with this intent despite any direction to the contrary in this trust.

Notwithstanding any other provision of this trust, our Trustee shall treat annuity and other periodic payments from any qualified retirement plans in any given year as income, to the extent the distribution represents income generated and treated as generated by any qualified retirement plan for that year. If income information is not available, then our Trustee shall apportion the annuity and other periodic payments between principal and income in an equitable and practical manner under Section 16.13.

**(d)     Distributions from Retirement Plans to Trusts Other Than Trusts That Qualify for the Federal Estate Tax Marital Deduction**

Unless specifically stated otherwise beginning with the year of a Trustmaker's death, if any trust created under this instrument that does not qualify for the federal estate tax marital deduction becomes the beneficiary of death benefits under any qualified retirement plan, our Trustee shall annually withdraw from the trust's share of the plan the minimum distribution required under Internal Revenue Code Section 401(a)(9). This subsection applies to any administrative trust created under Article Six. Our Trustee may withdraw additional amounts from the trust's share of the plan as our Trustee deems advisable, but only if the dispositive terms of the trust authorize our Trustee to immediately distribute the withdrawn amount as provided in this Subsection.

Our Trustee shall immediately distribute all amounts withdrawn to:

> the surviving Trustmaker, if a trust beneficiary;

> if the surviving Trustmaker is not a trust beneficiary, to our descendants, *per stirpes*, who are trust beneficiaries; and

> if the surviving Trustmaker is not a trust beneficiary and no descendant of ours is a trust beneficiary, then equally to the trust's Income Beneficiaries.

Amounts required to be withdrawn and distributed under this Subsection will reduce mandatory distribution amounts under other provisions of this trust that otherwise require distribution of all the trust's income.

This Subsection's purpose is to ensure that the trust beneficiaries' life expectancies may be used to calculate the minimum distributions required by the Internal Revenue Code. This Subsection is to be interpreted consistent with our intent, despite any direction to the contrary in this trust.

**(e)     Minimum Required Distribution**

In administering the trust, the minimum required distribution for each qualified retirement plan for any year is the greater of:

the value of the qualified retirement plan determined as of the preceding year end, divided by the applicable distribution period; and

the amount that our Trustee is required to withdraw under the laws then applicable to the trust to avoid penalty.

If a Trustmaker dies before the required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy. If a Trustmaker dies on or after the required beginning date for a qualified retirement plan, the applicable distribution period means the beneficiary's life expectancy, or the deceased Trustmaker's remaining life expectancy, if longer.

Notwithstanding the foregoing, if a Trustmaker's death occurs on or after the required beginning date for a qualified retirement plan, the minimum required distribution for the year of death means:

the amount that was required to be distributed to the Trustmaker with respect to the qualified retirement plan during the year; minus

amounts actually distributed to the Trustmaker.

*Life expectancy*, *required beginning date* and other similar terms used in this Subsection, are to be determined in accordance with Internal Revenue Code Section 401(a)(9).

### Section 15.02    Life Insurance Policies

The following provisions apply to life insurance policies owned by or made payable to our trust.

#### (a)    Provisions during Our Lives

During our lives, each of us individually reserves all of the rights, powers, privileges, and options, with respect to any insurance policy, annuity, or any other third-party beneficiary contract owned by or made payable to our trust. This includes the rights to designate and change beneficiaries, to borrow money, to surrender the policy, to receive any payments as owner, and to make any available elections.

Our Trustee does not have a duty to exercise or to not exercise any rights, powers, privileges, or options with respect to any insurance policy, annuity contract, or other third-party beneficiary contract. Our Trustee does not have an obligation to pay premiums or other contractual amounts that may be payable under any policy.

#### (b)    Provisions after Our Death

After the death of a Trustmaker, our Trustee may make all appropriate elections with respect to these policies and may collect all sums made payable to our trust or to our Trustee under all these policies or contracts.

Our Trustee may exercise any settlement options or other options or rights that may be available under the terms of any policy or contract. No beneficiary may hold our Trustee liable because of any election our Trustee has made with respect to any policy or contract.

## Section 15.03    Liability of Payor

Persons or entities dealing in good faith with our Trustee are not required to see to the proper application of proceeds delivered to our Trustee, or to inquire into any provision of this trust.

A receipt signed by our Trustee for any proceeds or benefits paid will be a sufficient discharge to the person or entity making the payment.

## Section 15.04    Collection Efforts

Our Trustee shall make reasonable efforts to collect all life insurance policy proceeds and qualified retirement benefits payable to our trust.

Our Trustee may commence legal or administrative proceedings to collect any life insurance policy proceeds or qualified retirement benefits to which the trust is entitled. Our Trustee need not begin these proceedings until our Trustee is satisfactorily indemnified for any expenses and liabilities our Trustee may incur in connection with the proceeding.

Our Trustee may settle any claims with respect to the collection of any life insurance proceeds or qualified retirement benefits to which our trust may be entitled. A settlement made by our Trustee is binding on all beneficiaries.

## Section 15.05    No Obligation to Purchase or Maintain Benefits

Nothing in this trust imposes any obligation on either of us or on our Trustee to purchase, invest, or maintain any qualified retirement plan or life insurance policy.

# Article Sixteen
# Trust Administration

### Section 16.01    Deceased Spousal Exclusion Amount

Upon the death of the first of us to die, then to the extent the first to die spouse's *applicable exclusion amount* as defined in Internal Revenue Code Section 2010(c)(2) cannot be fully used, our Trustee shall make an election under Internal Revenue Code Section 2010(c)(5)(A) to allow the second of us to die to take the first-to-die spouse's *deceased spousal unused exclusion amount* as defined in Internal Revenue Code Section 2010(c)(4), if any, into account in calculating the second to die spouse's applicable exclusion amount.

### Section 16.02    Distributions to Beneficiaries

Whenever this trust authorizes or directs our Trustee to make a net income or principal distribution to a beneficiary, our Trustee may apply any property that otherwise could be distributed directly to the beneficiary for his or her benefit. Our Trustee is not required to inquire into the beneficiary's ultimate disposition of the distributed property unless specifically directed otherwise by this trust.

Our Trustee may make cash distributions, in-kind distributions, or distributions partly in each, in proportions and at values determined by our Trustee. Our Trustee may allocate undivided interests in specific assets to a beneficiary or trust in any proportion or manner that our Trustee determines, even though the property allocated to one beneficiary may be different from that allocated to another beneficiary.

Our Trustee may make these determinations without regard to the income tax attributes of the property and without the consent of any beneficiary.

### Section 16.03    Trust Decanting; Power to Appoint in Further Trust

Our Trust Protector may appoint the property subject to our Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector. Any trust established by the Trust Protector and funded by the exercise of the power granted under this Section must meet these requirements:

> the trust must not reduce any fixed income, annuity, or unitrust right provided by this trust instrument to any beneficiary;

> the trust must provide for one or more of the beneficiaries of a trust created under this instrument; and

> the interests of remainder beneficiaries of the trust created under this instrument must not be accelerated under the terms of the new trust.

A Trust Protector may not use the powers granted under this Section to extend the term of the new trust beyond the period of perpetuities provided under the governing law of this instrument.

Any trust created under this provision must not contain any provision that, if applicable, would cause the trust to fail to qualify for the marital deduction or charitable deduction, fail to qualify any gift to the trust for any gift, estate, or generation-skipping transfer annual exclusion, or disqualify the trust as a qualified subchapter S corporation shareholder.

If any beneficiary holds a presently exercisable right to withdraw property from this trust, that right may not be defeated by the exercise of the Trust Protector's powers granted under this Section.

### Section 16.04    Beneficiary's Status

Until our Trustee receives notice of the incapacity, birth, marriage, death, or other event upon which a beneficiary's right to receive payments may depend, our Trustee will not be held liable for acting or not acting with respect to the event, or for disbursements made in good faith to persons whose interest may have been affected by the event. Unless otherwise provided in this trust, a parent or Legal Representative may act on behalf of a minor or incapacitated beneficiary.

Our Trustee may rely on any information provided by a beneficiary with respect to the beneficiary's assets and income. Our Trustee will have no independent duty to investigate the status of any beneficiary and will not incur any liability for not doing so.

### Section 16.05    Mandatory Payments of a Pecuniary Amount

If any person holds the right to receive a pecuniary amount from our trust upon our death, our Trustee must either:

> satisfy the entire pecuniary amount or irrevocably set aside property to satisfy the entire pecuniary amount within 15 months of our death; or

> pay appropriate interest, as defined in Treasury Regulations Section 26.2642-2(b)(4)(ii)(B), to the person.

If our Trustee satisfies the pecuniary amount with an in-kind distribution, our Trustee will allocate assets to satisfy the pecuniary amount in a manner that fairly reflects net appreciation or depreciation in the value of the available assets, as measured from the valuation date to the payment date.

### Section 16.06    No Court Proceedings

Our Trustee shall administer this trust with efficiency, with attention to the provisions of this trust, and with freedom from judicial intervention. If our Trustee or another interested party institutes a legal proceeding, the court will acquire jurisdiction only to the extent necessary for that proceeding. Any proceeding to seek instructions or a court determination may only be initiated in the court with original jurisdiction over matters relating to the construction and administration of trusts. Seeking instructions or a court determination is not to be construed as subjecting this trust to the court's continuing jurisdiction.

### Section 16.07    No Bond

Our Trustee is not required to furnish any bond for the faithful performance of the Trustee's duties unless required by a court of competent jurisdiction, and only if the court finds that a bond is needed to protect the beneficiaries' interests. No surety will be required on any bond required by any law or court rule, unless the court specifies its necessity.

### Section 16.08    Exoneration of Our Trustee

No successor Trustee is obligated to examine the accounts, records, or actions of any previous Trustee or the Personal Representative of a deceased Trustmaker. No successor Trustee may be held responsible for any act, omission, or forbearance by any previous Trustee or of the Personal Representative of a deceased Trustmaker. Absent clear and convincing evidence of willful bad faith on the part of our Trustee, our Trustee is exonerated from any liability for the acts, omissions, or forbearances of any Trust Protector and from any liability for our Trustee's own acts, omissions, or forbearances directed by the Trust Protector.

Any Trustee may obtain written agreements from the beneficiaries or their Legal Representatives releasing and indemnifying the Trustee from any liability that may have arisen from the Trustee's acts, omissions, or forbearances. If acquired from all the trust's living beneficiaries or their Legal Representatives, any agreement is conclusive and binding on all parties, born or unborn, who may have or who may later acquire an interest in the trust.

Our Trustee may require a refunding agreement before making any distribution or allocation of trust income or principal, and may withhold distribution or allocation pending determination or release of a tax or other lien. This refunding agreement provision will not apply to any distribution that qualifies for the federal estate tax unlimited marital deduction or the federal estate tax charitable deduction.

### Section 16.09    Limitations on Trustee Liability

We recognize that some individuals and institutions may be reluctant to serve as Trustee because of a concern about potential liability. Therefore, we direct that any individual or corporate fiduciary that serves as our Trustee will not incur any liability by reason of any error of judgment, mistake of law, or action or inaction of any kind in connection with the administration of any trust created under this trust, unless our Trustee's decision is shown by clear and convincing evidence to have been made in bad faith.

Any individual or corporate fiduciary currently serving as our Trustee may expend any portion of the trust assets to defend any claim brought against the Trustee, even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Any individual or corporate fiduciary that formerly served as our Trustee is entitled to reimbursement from the trust estate for any expenses, including attorney's fees and litigation costs reasonably incurred to defend any claim brought against the Trustee even if the Trustee's defense costs would exhaust the trust's value, unless the Trustee is shown to have acted in bad faith by clear and convincing evidence.

Except for cases of willful misconduct or gross negligence on the Trustee's part, any action, omission, or forbearance made in good faith reliance on information, consent, or directions received from a Trust Protector will be considered to have been made in good faith for this Section's purposes.

## Section 16.10    Trustee Compensation

During any period we or each of us or any individual Beneficiary or Beneficiaries are serving as Trustee under this agreement, neither we nor the individual Beneficiary or Beneficiaries will receive a fee in connection with service as Trustee.

Any other individual serving as Trustee is entitled to fair and reasonable compensation for the services provided as a fiduciary. A corporate fiduciary serving as Trustee will be compensated by agreement between an individual serving as Trustee and the corporate fiduciary. In the absence of an individual Trustee or an agreement, a corporate fiduciary will be compensated in accordance with the corporate fiduciary's current published fee schedule.

A Trustee entitled to compensation may charge additional fees for services provided that are beyond the ordinary scope of duties, such as fees for legal services, tax return preparation, and corporate finance or investment banking services.

In addition to receiving compensation, a Trustee may be reimbursed for reasonable costs and expenses incurred in carrying out the Trustee's duties under this trust.

## Section 16.11    Employment of Professionals

Our Trustee may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of our Trustee's duties. Our Trustee may act on the recommendations of the persons or entities employed, with or without independent investigation.

Our Trustee may reasonably compensate an individual or entity employed to assist or advise our Trustee, regardless of any other relationship existing between the individual or entity and our Trustee.

Our Trustee may compensate providers of contracted services at the usual rate out of the trust's income or principal, as our Trustee deems advisable. Our Trustee may compensate an individual or entity employed to assist or advise our Trustee without diminishing the compensation the Trustee is entitled to under this trust. A Trustee who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise our Trustee may still receive the Trustee's share of the compensation paid to the entity.

## Section 16.12    Exercise of Testamentary Power of Appointment

A testamentary power of appointment granted under this trust may be exercised by a will or living trust specifically referring to the power of appointment. The holder of a testamentary power of appointment may exercise the power to appoint property among the permissible appointees in equal or unequal proportions, and may designate the terms and

conditions, whether outright or in trust. The holder of a testamentary power of appointment may grant further powers of appointment to any person to whom principal may be appointed, including a presently exercisable limited or general power of appointment.

Our Trustee may conclusively presume that any power of appointment granted to any beneficiary of a trust created under this trust has not been exercised by the beneficiary if our Trustee has no knowledge of the existence of a will or living trust exercising the power within three months after the beneficiary's death.

### Section 16.13    Determination of Principal and Income

The rights among beneficiaries in matters concerning principal and income are to be determined in accordance with the Arizona Principal and Income Act. If the Arizona Principal and Income Act does not contain a provision concerning a particular item, our Trustee shall determine what will be credited, charged, and apportioned between principal and income in a fair, equitable, and practical manner with respect to that item.

Notwithstanding any provision of the Arizona Principal and Income Act or Arizona law to the contrary, our Trustee shall treat distributions from any qualified retirement account to any trust established under this trust in any given year as income to the extent the distribution represents income generated or treated as generated by any qualified retirement account for that year.

#### (a)    Annuity and Other Periodic Payments

*Annuity and other periodic payments* refers to distributions made to our Trustee over a fixed number of years or during the life of one or more individuals because of services provided or property transferred to the payor in exchange for future payments. This includes payments made in money or property from the payor's general assets or from a separate fund created by the payor, including a private or commercial annuity, individual retirement annuity, pension, profit-sharing plan, stock-bonus plan, stock-ownership plan, or similar arrangement. Our Trustee shall treat annuity and other periodic payments to any trust established under this trust in any given year as income to the extent the distribution represents income generated and treated as generated by the annuity or other periodic payment for that year. If income information is not available, then our Trustee shall apportion the annuity and other periodic payments between principal and income in a fair, equitable and practical manner under the guidelines set forth in this Section.

To the extent an annuity or other periodic payment is characterized as interest, dividend, or other item of income, or an annuity or other periodic payment is made instead of interest, dividend, or other item of income, our Trustee shall allocate the payment to income. Our Trustee shall allocate to principal the balance of the annuity or other periodic payment as well as any other payment received in the same accounting period that is not characterized as interest, dividend, or other item of income.

To the extent annuity and other periodic payments are made and no part of the payments are characterized as interest, dividend, or other item of income, our Trustee shall use the present value of the annuity and other periodic payments as finally determined for federal estate tax purposes, and the Internal Revenue Code Section 7520 rate used to determine the value for federal estate tax purposes to prepare an annuitization table to allocate the payments between income and principal.

If the amounts of annuity and other periodic payments change because of changes in the investment markets or other changes, our Trustee shall allocate the change in the amount of the payments between income and principal in a fair, equitable, and practical manner.

**(b)    Protection of Estate Tax Marital Deduction**

If, to obtain an estate tax marital deduction for a trust established under this trust, our Trustee must allocate more of a payment to income than provided for by this Section, then our Trustee shall allocate to income the additional amount necessary to obtain the marital deduction.

## Section 16.14    Trust Accounting

Except to the extent required by law, our Trustee is not required to file accountings in any jurisdiction. During our lifetimes or the lifetime of the survivor of us, and as long as at least one of us is serving as a Trustee, our Trustee is not required to provide an accounting to any person. If neither of us is serving as Trustee, our Trustee must provide an accounting to us at least annually unless waived. If both of us are incapacitated, or if one of us is deceased and the other is incapacitated, then our Trustee must provide the accounting to our Legal Representatives, unless waived by our Legal Representatives. After the death of the first of us to die, our Trustee must provide an annual accounting to the Qualified Beneficiaries of any trust created under this trust unless waived by the Qualified Beneficiaries.

The annual accounting must include the receipts, expenditures, and distributions of income and principal and the assets on hand for the accounting period. A copy of the federal fiduciary tax return filed for a trust during the accounting will satisfy this reporting requirement.

In the absence of fraud or obvious error, assent by all Qualified Beneficiaries to a Trustee's accounting will make the matters disclosed in the accounting binding and conclusive upon all persons, including those living on this date and those born in the future who have or will have a vested or contingent interest in the trust property. In the case of a Qualified Beneficiary who is a minor or incapacitated, the beneficiary's natural guardian or Legal Representative may give the assent required under this Section.

In all events, a beneficiary's Legal Representative may receive any notices and take any action on behalf of the beneficiary as to an accounting. If any beneficiary's Legal Representative fails to object to any accounting in writing within 60 days after our Trustee provides the accounting, the beneficiary's Legal Representative will be considered to assent to the accounting.

## Section 16.15    Information to Beneficiaries

Privacy is an important issue to us. This Section defines our Trustee's duties to inform, account, and report to beneficiaries of various trusts created under this trust, and to other individuals during our lifetime and after our death. Except to the extent required by law, our Trustee is not required to comply with a request to furnish a copy of this trust to a Qualified Beneficiary at any time, and our Trustee is not required to send annual reports or reports upon termination of the trust to any Permissible Distributee or Qualified Beneficiary who requests the report. If our Trustee decides, in our Trustee's sole and absolute discretion, to provide any information to a Permissible Distributee or Qualified Beneficiary, our Trustee may exclude any information that our Trustee determines is not directly applicable to the beneficiary receiving the information. Any decision by our Trustee to make information available to any beneficiary does not constitute an obligation to provide any information to any beneficiary in the future.

### (a)    Providing Information while Either of Us Is Alive and Not Incapacitated

We waive all our Trustee's duties to give notice, information, and reports to any Qualified Beneficiaries other than us while either of us is alive and able to manage our financial resources effectively. Our Trustee is not required to keep Qualified Beneficiaries of any trust created under this trust other than us informed of the administration of our trust in any manner. Further, our Trustee is not required to respond to any request for information related to the administration of the trust from anyone who is not a Qualified Beneficiary, other than us.

### (b)    Providing Information while Both of Us Are Incapacitated and after Our Deaths

Our Trustee shall deliver any notice, information, or reports which would otherwise be required to be delivered to either of us or to a Qualified Beneficiary to our Trust Protector during any period that both of us are alive but incapacitated, during any period when one of us is deceased and the other is incapacitated, and after the death of both us. To preserve our privacy and the privacy of Qualified Beneficiaries under our trust, we request that while either of us is alive, our Trustee not provide any copies of our trust or any other information which may otherwise be required to be distributed to any beneficiary under Arizona law to any beneficiary to whom the information is not directly relevant. Our Trust Protector may, in his or her sole and absolute discretion and without waiver, distribute copies of all or any part of our trust or other relevant information about our trust to one or more Qualified Beneficiaries or other interested parties during any period that we are both incapacitated or one of us is deceased and the other is incapacitated.

## Section 16.16    Action of Trustees and Delegation of Trustee Authority

When neither of us is serving as a Trustee, if two Trustees are eligible to act with respect to a given matter, they must agree unanimously for action to be taken unless the express terms of the Trustees' appointment provide otherwise. If more than two Trustees are eligible to act with respect to a given matter, the Trustees must agree by majority for action to be taken.

A nonconcurring Trustee may dissent or abstain from a decision of the majority. A Trustee will be absolved from personal liability by registering the dissent or abstention in the trust records. After doing so, the dissenting Trustee must then act with our other Trustees in any way necessary or appropriate to effect the majority decision.

Subject to the limitations set forth in Section 17.25, any Trustee may, by written instrument, delegate to any other Trustee the right to exercise any power, including a discretionary power, granted to our Trustee in this trust. During the time a delegation under this Section is in effect, the Trustee to whom the delegation is made may exercise the power to the same extent as if the delegating Trustee has personally joined in the exercise of the power. The delegating Trustee may revoke the delegation at any time by giving written notice to the Trustee to whom the power was delegated.

## Section 16.17    Trustee May Disclaim or Release Any Power

Notwithstanding any provision of this trust to the contrary, any Trustee may relinquish any Trustee power in whole or in part, irrevocably or for any specified period of time, by a written instrument. The Trustee may relinquish a power personally or may relinquish the power for all subsequent Trustees.

## Section 16.18    Trustee May Execute a Power of Attorney

Our Trustee may appoint any individual or entity to serve as our Trustee's agent under a power of attorney to transact any business on behalf of our trust or any other trust created under this trust.

## Section 16.19    Additions to Separate Trusts

If upon the death of the survivor of us, or upon the termination of any trust created under this trust, a final distribution is to be made to a person who is the Primary Beneficiary of another trust established under this trust, and there is no specific indication whether the distribution is to be made in trust or outright, our Trustee shall make the distribution to the second trust instead of distributing the property to the beneficiary outright. For purposes of administration, the distribution will be treated as though it had been an original part of the second trust.

## Section 16.20    Authority to Merge or Sever Trusts

Our Trustee may merge a trust created under this trust with any other trust, if the two trusts contain substantially the same terms for the same beneficiaries and have at least one Trustee in common. Our Trustee may administer the merged trust under the provisions of the instrument governing the other trust, and this trust will no longer exist if it merges into

another trust. Accordingly, in the event another trust is merged into this trust or a trust created under the provisions of this trust document, our Trustee may shorten the period during which this trust subsists to comply with Section 18.01, if necessary, to effect the merger. But if a merger does not appear feasible, our Trustee may consolidate the trusts' assets for purposes of investment and trust administration while retaining separate records and accounts for each respective trust.

Our Trustee may sever any trust on a fractional basis into two or more separate and identical trusts, or may segregate a specific amount or asset from the trust property by allocating it to a separate account or trust. The separate trusts may be funded on a *non pro rata* basis, but the funding must be based on the assets' total fair market value on the funding date. After the segregation, income earned on a segregated amount or specific asset passes with the amount or asset segregated. Our Trustee shall hold and administer each severed trust upon terms and conditions identical to those of the original trust.

Subject to the trust's terms, our Trustee may consider differences in federal tax attributes and other pertinent factors in administering the trust property of any separate account or trust, in making applicable tax elections and in making distributions. A separate trust created by severance must be treated as a separate trust for all purposes from the effective severance date; however, the effective severance date may be retroactive to a date before our Trustee exercises the power.

### Section 16.21    Authority to Terminate Trusts

Our Trust Protector may terminate any trust created under this trust at any time, if our Trust Protector determines that administering a trust created under this trust is no longer economical. Once distributed, our Trustee will have no further responsibility with respect to that trust property. Our Trustee will distribute the trust property from a terminated trust in this order:

> to us, if we are both then living;

> if one of us is deceased, to the surviving Trustmaker, if the surviving Trustmaker is then a trust beneficiary;

> if we are both deceased or the surviving Trustmaker is not a trust beneficiary, to the beneficiaries then entitled to mandatory distributions of the trust's net income, in the same proportions; and then

> if none of the beneficiaries are entitled to mandatory distributions of net income, to the beneficiaries then eligible to receive discretionary distributions of the trust's net income, in the amounts and shares our Trust Protector determines.

But if a Trust Protector is not then serving, only an Independent Trustee will possess the power to terminate any trust created under this trust, and the Independent Trustee can act only as authorized and with the specific powers and discretions permitted under this Section.

## Section 16.22    Merger of Corporate Fiduciary

If any corporate fiduciary acting as the Trustee under this trust is merged with or transfers substantially all of its trust assets to another corporation, or if a corporate fiduciary changes its name, the successor will automatically succeed to the trusteeship as if that successor had been originally named a Trustee. No document of acceptance of trusteeship will be required.

## Section 16.23    Funeral and Other Expenses of Beneficiary

Upon the death of an Income Beneficiary, our Trustee may pay the funeral expenses, burial or cremation expenses, enforceable debts, or other expenses incurred due to the death of the beneficiary from trust property. This Section only applies to the extent the Income Beneficiary has not exercised any testamentary power of appointment granted to the beneficiary under this trust.

Our Trustee may rely upon any request by the deceased beneficiary's Legal Representative or family members for payment without verifying the validity or the amounts and without being required to see to the application of the payment. Our Trustee may make decisions under this Section without regard to any limitation on payment of expenses imposed by statute or court rule and without obtaining the approval of any court having jurisdiction over the administration of the deceased beneficiary's estate.

## Section 16.24    Marital Deduction Qualification

The marital gift as described in Article Eight of this trust is intended to qualify for the federal estate tax marital deduction, and the provisions of this trust are to be construed to reflect this intent. To the extent that exercising a provision of this trust would disqualify the marital gift from the federal estate tax unlimited marital deduction, that provision is void except to the extent our Trustee or the deceased Trustmaker's Personal Representative elects that all or a portion of the marital gift not qualify for the unlimited marital deduction.

## Section 16.25    Generation-Skipping Transfer Tax Provisions

If any trust created under this trust would be partially exempt from generation-skipping transfer tax after the intended allocation of Available GST Exemption to the trust, then our Trustee may divide the partially exempt trust so that the allocation of Available GST Exemption can be made to a trust that will be entirely exempt from generation-skipping transfer tax. If our Trustee chooses to divide a trust that would otherwise be a partially exempt trust, our Trustee must create and administer the separate trusts as provided in this Section.

### (a)    Division into Exempt and Non-Exempt Trusts

Our Trustee shall divide the property of the otherwise partially-exempt trust into two separate trusts, the *exempt trust* and the *nonexempt trust*. The exempt trust will consist of the largest fractional share of the otherwise partially exempt trust's total assets that will permit the exempt trust to be entirely exempt from generation-skipping transfer tax. The *nonexempt trust*

will consist of the balance of the otherwise partially exempt trust's total assets.

To compute the fractional share, our Trustee will use asset values as finally determined for federal estate tax purposes. Our Trustee must then apply the fraction to the assets at their actual value on the effective date or dates of distribution so that the actual value of the fractional share resulting from the application of the fraction will include fluctuations in the trust property's value. We request that our Trustee allocate the value of any Roth IRAs payable to our trust to the exempt trust to the extent possible.

**(b)    Administration of the Trusts**

Our Trustee shall administer the exempt and nonexempt trusts created under this Section as separate and independent trusts, but under the same terms as the original trust. To the extent possible, our Trustee should make distributions to a non-skip person as defined by Internal Revenue Code Section 2613 from the nonexempt trust and distributions to a skip person as defined by Section 2613 from an exempt trust. Our Trustee may designate names for the exempt and nonexempt trusts.

If an exempt trust and a nonexempt trust are further divided under the terms of this trust, our Trustee may allocate property from the exempt trust first to the trust from which a generation-skipping transfer is more likely to occur.

**(c)    Expression of Our Intent**

Our intent is to minimize the application of the generation-skipping transfer tax to the trust property, but not to affect the total amount of trust property to which any beneficiary may be entitled under this trust. This trust must be construed and interpreted to give effect to this intent.

**(d)    Additions of Property to Exempt and Non-Exempt Trusts**

If at any time any property that has an inclusion ratio greater than zero for generation-skipping transfer tax purposes would be added to a trust with property that has an inclusion ratio of zero, then our Trustee will instead hold the property in a separate trust on the same terms and conditions as the original trust.

**(e)    Re-Allocation**

If our Trustee's determination of whether a trust in this trust is partially, entirely, or not exempt from GST taxes is later incorrect (for example, if the Congress by law or the Service by regulation or ruling applies the generation-skipping transfer tax retroactively to the trust), our Trustee may re-allocate the assets as of the initial division date, as provided in this Section.

# Article Seventeen
# Our Trustee's Powers

### Section 17.01    Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, our Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Arizona or any other jurisdiction whose law applies to this trust. The powers set forth in ARS 14-10815 and 14-10816 are specifically incorporated into this trust.

Our Trustee shall exercise the Trustee powers in the manner our Trustee determines to be in the beneficiaries' best interests. Our Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

Our Trustee may have duties and responsibilities in addition to those described in this trust. We encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if our Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 17.02    Execution of Documents by Our Trustee

Our Trustee may execute and deliver any written instruments that our Trustee considers necessary to carry out any powers granted in this trust.

### Section 17.03    Investment Powers in General

Our Trustee may invest in any type of investment that our Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

Without limiting our Trustee's investment authority in any way, we request that our Trustee exercise reasonable care and skill in selecting and retaining trust investments. We also request that our Trustee take into account the following factors in choosing investments:

> the potential return from the investment, both in income and appreciation;

> the potential income tax consequences of the investment;

> the investment's potential for volatility; and

> the role the investment will play in the trust's portfolio.

We request that our Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

Our Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.

### Section 17.04    Banking Powers

Our Trustee may establish any type of bank account in any banking institutions that our Trustee chooses. If our Trustee makes frequent disbursements from an account, the account does not need to be interest bearing. Our Trustee may authorize withdrawals from an account in any manner.

Our Trustee may open accounts in the name of our Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust. When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

### Section 17.05    Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, our Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to our Trustee in this trust.

#### (a)    No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, our Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, we, our descendants, and the spouses of our descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property. We specifically authorize our Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability. We waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

We recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, we authorize our Trustee to acquire or retain any noncontrolling business interests.

#### (b)    Specific Management Powers

Our Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection. Our Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

Our Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), our Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

Our Trustee may enter into management trusts and nominee trusts in which our Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

Our Trustee, individually, or if our Trustee is a corporate fiduciary, then an employee of our Trustee, may act as a director, general or limited partner, associate, or officer of the business.

Our Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. Our Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

Our Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. Our Trustee may subject the trust's principal and income to the risks of the business for any term or period, as our Trustee determines.

For any business in which the trust has an interest, our Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. Our Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

Our Trustee may select and vote for directors, partners, associates, and officers of the business. Our Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

Our Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

Our Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

Our Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. Our Trustee may sell or liquidate the business or business interest on terms our Trustee deems advisable and in the best interests of the trust and the beneficiaries. Our Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. Our Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

Our Trustee may exercise all of the business powers granted in this trust even though our Trustee may be personally invested in or otherwise involved with the business.

### (c)  Business Liabilities

If any tort or contract liability arises in connection with the business, and if the trust is liable, our Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by our Trustee.

### (d)  Trustee Compensation

In addition to the compensation set forth in Section 16.10, our Trustee may receive additional reasonable compensation for services in connection with the operation of the business. Our Trustee may receive this compensation directly from the business, the trust or both.

### (e)  Conflicts of Interest

Our Trustee may exercise all of the powers granted in this trust even though our Trustee may be involved with or have a personal interest in the business.

## Section 17.06   Contract Powers

Our Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that our Trustee deems advisable. Our Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

Our Trustee may enter into contracts, and may deliver deeds or other instruments, that our Trustee considers appropriate.

## Section 17.07   Common Investments

For purposes of convenience with regard to the trust property's administration and investment, our Trustee may invest part or all of the trust property jointly with property of other trusts for which our Trustee is also serving as a Trustee. A corporate fiduciary acting as our Trustee may use common funds for investment. When trust property is managed and invested in this manner, our Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

## Section 17.08    Environmental Powers

Our Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property.  For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

Our Trustee may refuse to accept property if our Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

Our Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;
>
> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;
>
> institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;
>
> comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and
>
> employ agents, consultants, and legal counsel to assist our Trustee in these actions.

Our Trustee is not liable for any loss or reduction in value sustained by the trust as a result of our Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless our Trustee contributed to that loss through willful misconduct or gross negligence.

Our Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of our Trustee's actions to comply with any environmental law, including any reporting requirement.

Our Trustee may release, relinquish, or disclaim any power held by our Trustee that our Trustee determines may cause our Trustee to incur individual liability under any environmental law.

## Section 17.09    Farm, Ranch, and Other Agricultural Powers

Our Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

Our Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

Our Trustee may engage and participate in any government farm program, whether state or federally sponsored.

Our Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

Our Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

Our Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

## Section 17.10    Insurance Powers

Our Trustee may purchase, accept, hold, and deal with as owner, insurance policies on either or both of our lives, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

Our Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. Our Trustee may purchase annuities and similar investments for any beneficiary.

Our Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. Our Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. Our Trustee may assign the policy as security for the loan.

Our Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

Our Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

Our Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

Our Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, our Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

## Section 17.11    Loans and Borrowing Powers

Our Trustee may make loans to any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

Our Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.

Our Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by either or both of us or by any Trustee, and may release or foreclose on any mortgage or security interest payable to either or both of us or to the trust.

Our Trustee may borrow money at interest rates and on other terms that our Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

Our Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. Our Trustee may accept deeds instead of foreclosing.

### Section 17.12    Nominee Powers

Our Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

### Section 17.13    Oil, Gas and Mineral Interests

Our Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

Our Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that our Trustee deems advisable.

Our Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

Our Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

Our Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

### Section 17.14    Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, our Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by our Trustee out of income. If the income is insufficient, then our Trustee may make any payments of property taxes or expenses out of the trust property's principal. Our Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

### Section 17.15    Purchase of Assets from and Loans to a Deceased
### Trustmaker's Probate Estate

Upon the death of a Trustmaker, our Trustee may purchase at fair market value and retain in the form received any property that is a part of the deceased Trustmaker's probate or

Rudolph Trust
17-7

trust estate as an addition to the trust. In addition, our Trustee may make secured and unsecured loans to the deceased Trustmaker's probate or trust estate. Our Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

Our Trustee may not use any trust property for the benefit of the deceased Trustmaker's estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in the deceased Trustmaker's gross estate for federal estate tax purposes.

### Section 17.16    Qualified Real Property Valuation

Our Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

### Section 17.17    Qualified Tuition Programs

Our Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, our Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

### Section 17.18    Real Estate Powers

Our Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as our Trustee deems appropriate.

Our Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

Our Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

Our Trustee may enter into contracts to sell real estate. Our Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. Our Trustee may enter into any contracts, covenants, and warranty agreements that our Trustee deems appropriate.

## Section 17.19    Residences and Tangible Personal Property

Our Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. Our Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

Our Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. Our Trustee may pay for the repair and maintenance of the property.

Our Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

Our Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that our Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

Our Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

## Section 17.20    Digital Assets

Our Trustee has the authority to access, modify, control, archive, transfer, and delete our digital assets.

Digital assets include our sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

Our digital assets may be stored in the cloud or on our own digital devices. Our Trustee may access, use, and control our digital devices in order to access, modify, control, archive, transfer, and delete our digital assets—this power is essential for access to our digital assets that are only accessible through our digital devices. Digital devices include desktops,

laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

## Section 17.21    Retention and Abandonment of Trust Property

Our Trustee may retain any property constituting the trust at the time of its creation, at the time of the death of a Trustmaker, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. Our Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

Our Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of our Trustee. On the other hand, our Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

Our Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

Our Trustee may abandon any property that our Trustee considers of insignificant value.

## Section 17.22    Securities, Brokerage and Margin Powers

Our Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. Our Trustee may write and purchase call or put options, and other derivative securities. Our Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to our Trustee or to or for a beneficiary's benefit.

Our Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. Our Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. Our Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

Our Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. Our Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

Our Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. Our Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. Our Trustee may give proxies or powers of attorney

that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

### Section 17.23    Settlement Powers

Our Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. Our Trustee may release or abandon any claim in favor of the trust.

### Section 17.24    Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

#### (a)    Electing Treatment as an Electing Small Business Trust

If our Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, our Trustee shall:

> apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

> administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

#### (b)    Electing Treatment as a Qualified Subchapter S Trust

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), our Trustee shall:

> refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

> administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).

Our Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

### (1)　Current Income Beneficiary

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally holding the S corporation stock, our Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

### (2)　Distributions

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), our Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, our Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, our Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

### (3)　Allocation of Income and Expenses

Our Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

### (4)　Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may seem to the contrary, our Trustee may not merge any

Rudolph Trust
17-12

Qualified Subchapter S Trust with another trust's assets if
doing so would jeopardize the qualification of either trust as
a Qualified Subchapter S Trust.

**(c)    Governance of the Trusts**

The following additional provisions apply to any separate trust created
under this Section.

### (1)    Protection of S Corporation Status

Our Trustee must not administer a trust holding S
corporation stock in a manner that would cause the
termination of the S corporation status of the entity whose
stock is held as part of the trust. Therefore, during any
period that the trust holds S corporation stock, our Trustee
must construe the terms and provisions of this trust in a
manner that is consistent with the trust qualifying as an
Electing Small Business Trust or as a Qualified Subchapter
S Trust. Our Trustee must disregard any provision of this
trust that cannot be so construed or applied.

### (2)    Methods of Distribution

Our Trustee may not make distributions in a manner that
would jeopardize the trust's qualification as an Electing
Small Business Trust or as a Qualified Subchapter S Trust.

### (3)    Disposition of S Corporation Stock

If our Trustee believes the continuation of any trust would
result in the termination of the S corporation status of any
entity whose stock is held as a part of the trust property, our
Trustee, other than an Interested Trustee, in addition to the
power to sell or otherwise dispose of the stock, has the power
to distribute the stock to the person who is then entitled to
receive the income from the trust.

## Section 17.25    Limitation on Our Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth
in this Section, unless explicitly excluded by reference to this Section. The limitations set
forth in this Section do not apply to either of us while we are both alive, and do not apply
if either of us is serving as Trustee of the Survivor's Trust.

**(a)    An Interested Trustee Limited to Ascertainable
Standards**

An Interested Trustee may only make discretionary decisions when they
pertain to a beneficiary's health, education, maintenance, or support as
described under Internal Revenue Code Sections 2041 and 2514.

**(b)      Interested Trustee Prohibited from Acting**

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as our Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

**(c)      Exclusive Powers of My Independent Trustee**

Whenever a power or discretion is granted exclusively to our Independent Trustee, then any Interested Trustee who is then serving as our Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by our Independent Trustee.

**(d)      No Distributions in Discharge of Certain Legal
           Obligations**

Our Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of our Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

**(e)      Insurance Policy on the Life of Our Trustee**

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries (excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

**(f)      Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an

insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

# Article Eighteen
# General Provisions

## Section 18.01    Maximum Term for Trusts

Notwithstanding any other provision of this agreement, unless sooner terminated under other provisions hereof, any trust share created under this agreement shall terminate upon the expiration of the longest period that property may be held in trust under this agreement without violation of the applicable Rule Against Perpetuities. As of the date this trust is created, the interest must vest within five-hundred (500) years after its creation. The applicable period can be determined by reference to A.R.S. Section 14-2901, as amended from time to time, but the time period shall not be shortened as a result of any change in a statute effective after the effective date of this declaration of trust.

At that time, the remaining trust property shall vest in and be distributed to those persons then entitled to mandatory distributions of net income of the trust and in the same proportions. If no beneficiary is entitled to mandatory distributions of net income, the remaining trust property shall vest in and be distributed to the beneficiaries then eligible to receive discretionary distributions of net income of the trust, in equal shares *per stirpes*.

## Section 18.02    Spendthrift Provision

No beneficiary may assign, anticipate, encumber, alienate, or otherwise voluntarily transfer the income or principal of any trust created under this trust. In addition, neither the income nor the principal of any trust created under this trust is subject to attachment, bankruptcy proceedings or any other legal process, the interference or control of creditors or others, or any involuntary transfer.

This Section does not restrict a beneficiary's right to disclaim any interest or exercise of any power of appointment granted in this trust. In addition, this Section does not limit the ability of an Independent Trustee to appoint property in further trust for any beneficiary as provided in Section 16.03.

## Section 18.03    Contest Provision

If any person attempts to contest or oppose the validity of this trust or any amendment to this trust, or commences, continues, or prosecutes any legal proceedings to set this trust aside, then that person will forfeit his or her share, cease to have any right or interest in the trust property, and will be considered to have predeceased the last of us to die for purposes of this instrument.

## Section 18.04    Survivorship Presumption

If we die under circumstances in which the order of our deaths cannot be established, each of us will be considered to have predeceased the other and each Trustmaker's interest in any community property of our trust, and each Trustmaker's separate trust property will be administered as provided in Section 9.10 for administering the remaining property in the Survivor's Trust upon death of the surviving Trustmaker.

If any other beneficiary is living at the death of a Trustmaker, but dies within 30 days after the Trustmaker's death, then the beneficiary will be considered to have predeceased the Trustmaker for purposes of this trust.

## Section 18.05   Effect of Legal Separation or Dissolution of Marriage

If either of us files a petition for legal separation or dissolution of marriage, each of us, each of our respective parents as to the other of us, all of our descendants who are not the descendants of the other of us, and all spouses of such persons who are not descendants of our respective parents will be deemed to have died intestate on the date of the filing for all purposes of this instrument (except Section 18.01, above). Any exercise or exercises of any power of appointment by any person named identified in this paragraph that has not become effective prior to the filing date will be null and void. If, however, a court issues any order dismissing a petition described above, and we accept the dismissal of the petition by a written acknowledgement, then the persons identified in this paragraph will no longer be deemed to have died intestate for purposes of this instrument

## Section 18.06   Changing the Governing Law and Situs of Administration

At any time, our Trust Protector may change the governing law of the trust; change the situs of the administration of the trust; and remove all or any part of the property from one jurisdiction to another. Our Trust Protector may elect, by filing an instrument with the trust records, that the trust will then be construed, regulated, and governed by the new jurisdiction's laws. Our Trust Protector may take action under this Section for any purpose our Trust Protector considers appropriate, including the minimization of any taxes in respect of the trust or any trust beneficiary.

If considered necessary or advisable by our Trust Protector, our Trust Protector may appoint an Independent Trustee to serve as Trustee in the new situs.

If necessary and if our Trust Protector does not appoint an Independent Trustee within 30 days of our Trust Protector's action to change the governing law or situs of the trust, the beneficiaries entitled to receive distributions of the trust's net income may appoint a corporate fiduciary in the new situs by majority consent. If a beneficiary is a minor or is incapacitated, the beneficiary's parent or Legal Representative may act on the beneficiary's behalf.

## Section 18.07   Definitions

For purposes of this trust, the following terms have these meanings:

### (a)   Adopted and Afterborn Persons

A person in any generation who is legally adopted before reaching 18 years of age and his or her descendants, including adopted descendants, have the same rights and will be treated in the same manner under this trust as natural children of the adopting parent. A person is considered legally adopted if the adoption was legal at the time when and in the jurisdiction in which it occurred.

A fetus *in utero* later born alive will be considered a person in being during the period of gestation.

**(b)    Available GST Exemption**

The deceased Trustmaker's *Available GST Exemption* means the GST exemption provided in Internal Revenue Code Section 2631 in effect at the deceased Trustmaker's death; reduced by the aggregate of:

> any amount of GST exemption allocated to the deceased Trustmaker's lifetime transfers, including those allocations made at the time of the deceased Trustmaker's death by the deceased Trustmaker's Personal Representative, by the deceased Trustmaker's Trustee, or by operation of law; and

> any amount allocated to direct-skip persons as defined in Internal Revenue Code Section 2612(c)(1) that does not qualify for an exclusion from the generation-skipping transfer tax occurring at the deceased Trustmaker's death to or for the benefit of the deceased Trustmaker's descendants.

At the time of the deceased Trustmaker's death, if the deceased Trustmaker has made a lifetime transfer to a trust with an inclusion ratio of greater than zero but have not filed a gift tax return and the due date for the gift tax return has not yet passed, the deceased Trustmaker's Available GST Exemption will also be reduced so that the trust inclusion ratio is zero, in order to exempt the transfer from generation-skipping transfer tax.

**(c)    Charitable Organization**

The terms *charitable organization*, *qualified charitable organization*, and *charity* mean any charitable organization of a type described in Internal Revenue Code Sections 170(c), 2055(a), and 2522(a).

**(d)    Descendants**

The term *descendants* means persons who directly descend from a person, such as children, grandchildren, or great-grandchildren. The term *descendants* does not include collateral descendants, such as nieces and nephews.

**(e)    Education**

The term *education* is intended to be an ascertainable standard under Internal Revenue Code Sections 2041 and 2514 and includes:

> enrollment at private elementary, junior, and senior high school, including boarding school;

> undergraduate and graduate study in any field at a college or university;

> specialized, vocational, or professional training or instruction at any institution, as well as private instruction; and

> any other curriculum or activity that our Trustee considers useful for developing a beneficiary's abilities and interests including athletic training, musical instruction, theatrical training, the arts, and travel.

The term *education* also includes expenses such as tuition, room and board, fees, books, supplies, computers and other equipment, tutoring, transportation, and a reasonable allowance for living expenses.

**(f)     Good Faith**

For the purposes of this trust, a Trustee has acted in good faith if:

> an action or inaction is not a result of intentional wrongdoing;

> the Trustee did not make the decision to act or not act with reckless indifference to the beneficiaries' interests; and

> an action or inaction does not result in an improper personal benefit to the Trustee.

Further, all parties subject to the provisions of this trust will treat any action or inaction made in reliance on information, consent, or directions received from the Personal Representative of each of our estates as made in good faith for the purposes of this Section, except for cases of willful misconduct or malfeasance on the Trustee's part.

**(g)     Incapacity**

Except as otherwise provided in this trust, a person is considered incapacitated in any of the following circumstances.

### (1)     The Opinion of Two Licensed Physicians

> An individual is considered to be incapacitated whenever two licensed physicians give the opinion that the individual is unable to effectively manage his or her property or financial affairs, whether as a result of age; illness; use of prescription medications, drugs, or other substances; or any other cause. If an individual whose capacity is in question refuses to provide necessary documentation or otherwise submit to examination by licensed physicians, that individual will be considered incapacitated.

> An individual is considered restored to capacity whenever the individual's personal or attending physician provides a written opinion that the individual is able to effectively manage his or her property and financial affairs.

Rudolph Trust

18-4

### (2)    Court Determination

An individual is considered incapacitated if a court of competent jurisdiction has declared the individual to be disabled, incompetent, or legally incapacitated.

### (3)    Detention, Disappearance, or Absence

An individual is considered to be incapacitated whenever he or she cannot effectively manage his or her property or financial affairs due to the individual's unexplained disappearance or absence for more than 30 days, or whenever he or she is detained under duress.

An individual's disappearance, absence, or detention under duress may be established by an affidavit of our Trustee, or by the affidavit of any beneficiary if no Trustee is then serving. The affidavit must describe the circumstances of the individual's disappearance, absence, or detention, and may be relied upon by any third party dealing in good faith with our Trustee.

## (h)    Include, Includes, Including

In this document, the words include, includes, and including mean include without limitation, includes without limitation and including without limitation, respectively. Include, includes, and including are words of illustration and enlargement, not words of limitation or exclusivity.

## (i)    Income Beneficiary

The term *Income Beneficiary* means any beneficiary who is then entitled to receive distributions of the trust's net income, whether mandatory or discretionary.

Unless otherwise provided in this trust, the phrase *majority of the Income Beneficiaries* means any combination of Income Beneficiaries who would receive more than 50% of the accrued net income if that income were distributed on the day of a vote. For purposes of this calculation, beneficiaries who are eligible to receive discretionary distributions of net income receive the imputed income in equal shares.

References to a *majority* refer to a majority of the entire trust collectively until our Trustee allocates property to separate trusts or trust shares. After our Trustee allocates property to separate trusts or trust shares, references to a *majority* refer to a majority of each separate trust or trust share.

## (j)    Income in Respect of a Decedent (IRD)

The term *income in respect of a decedent* (IRD) means income received after a decedent's death that would have been taxable to the decedent if the income had been received by the decedent during the decedent's lifetime. For example, payments under qualified retirement plans and other deferred

compensation arrangements are IRD. For purposes of this trust, IRD means any income that would be classified as IRD under Internal Revenue Code Section 691(a).

**(k)    Independent Trustee**

The term *Independent Trustee* means any Trustee who is not an Interested Trustee as defined in Subsection (m) and includes an Independent Special Trustee appointed under the provisions of Section 3.08.

**(l)    Instrument**

The term *this instrument* means this trust, and includes all trusts created under the terms of this trust.

**(m)    Interested Trustee**

The term *Interested Trustee* means a Trustee who:

> is a transferor or beneficiary;

> is related or subordinate to a transferor or beneficiary;

> can be removed and replaced by a transferor with either the transferor or a party who is related or subordinate to the transferor; or

> can be removed and replaced by a beneficiary with either the beneficiary or a party who is related or subordinate to the beneficiary.

For purposes of this Subsection, *transferor* means a person who transferred property to the trust, including a person whose disclaimer resulted in property passing to the trust. *Beneficiary* means a person who is or may become eligible to receive income or principal from the trust under the terms of the trust, even if this person has only a remote contingent remainder interest in the trust, but not if the person's only interest is as a potential appointee under a power of appointment. *Related or subordinate* is used as defined in Internal Revenue Code Section 672(c).

**(n)    Internal Revenue Code and Treasury Regulations**

References to the *Internal Revenue Code* or to its provisions are to the Internal Revenue Code of 1986, as amended, and any corresponding Treasury Regulations. References to the *Treasury Regulations*, are to the Treasury Regulations under the Internal Revenue Code in effect. If a particular provision of the Internal Revenue Code is renumbered or the Internal Revenue Code is superseded by a subsequent federal tax law, any reference is considered to be made to the renumbered provision or to the corresponding provision of the subsequent law, unless to do so would clearly be contrary to our intent as expressed in this trust. The same rule applies to references to the Treasury Regulations.

**(o)     Legal Representative or Personal Representative**

As used in this trust document, the term *Legal Representative* or *Personal Representative* means a person's guardian, conservator, executor, administrator, Trustee, attorney in fact under a Durable Power of Attorney, or any other person or entity representing a person or the person's estate. In the case of a minor beneficiary, the beneficiary's parent or another adult with custody of the beneficiary, except for any transferor to a trust created under this instrument, will be considered the beneficiary's Legal Representative for purposes of this trust.

**(p)     Per Stirpes**

Whenever a distribution is to be made to a person's descendants *per stirpes*, the distribution will be divided into as many equal shares as there are then-living children and deceased children who left then-living descendants. Each then-living child will receive one share, and the share of each deceased child will be divided among the deceased child's then-living descendants in the same manner.

**(q)     Permissible Distributee**

"Permissible Distributee" means a beneficiary who is currently eligible to receive distributions of trust income or principal, whether the distribution is mandatory or discretionary.

**(r)     Primary Beneficiary**

The *Primary Beneficiary* of a trust created under this trust is that trust's oldest Income Beneficiary, unless some other individual is specifically designated as the Primary Beneficiary of that separate trust.

**(s)     Qualified Beneficiary**

"Qualified Beneficiary" means a beneficiary who, on the date the beneficiary's qualification is determined:

(1)  is a distributee or Permissible Distributee of trust income or principal;

(2)  would be a distributee or Permissible Distributee of trust income or principal if the interests of the distributees described in subparagraph (1) terminated on that date; or

(3)  would be a distributee or Permissible Distributee of trust income or principal if the trust terminated on that date.

**(t)     Qualified Retirement Benefits**

The term *qualified retirement plan* means a plan qualified under Internal Revenue Code Section 401, an individual retirement arrangement under Section 408 or Section 408A, or a tax-sheltered annuity under Section 403.

The term *qualified retirement benefits* means the amounts held in or distributed pursuant to a plan qualified under Section 401, an individual retirement arrangement under Section 408 or Section 408A, a tax-sheltered annuity under Section 403, or any other benefit subject to the distribution rules of Section 401(a)(9).

### (u)    Shall and May

Unless otherwise specifically provided in this trust or by the context in which used, we use the word *shall* in this trust to impose a duty, command, direct, or require, and the word *may* to allow or permit, but not require. In the context of our Trustee, when we use the word *shall* we intend to impose a fiduciary duty on our Trustee. When we use the word *may* we intend to empower our Trustee to act with the Trustee's sole and absolute discretion unless otherwise stated in this trust. When we use the words *may not* in reference to our Trustee, we specifically mean our Trustee *is not permitted to*.

### (v)    Trust

The terms *this trust, this document, instrument,* and *this trust document* refer to this trust and all trusts created under the terms of this trust.

### (w)    Trustee

The terms *our Trustee* and *Trustee* refer to the Initial Trustees named in Article One and to any successor, substitute, replacement, or additional person, corporation, or other entity that ever acts as the Trustee of any trust created under the terms of this trust. The term *Trustee* refers to singular or plural as the context may require.

### (x)    Trustmaker

*Trustmaker* has the same legal meaning as *Grantor, Settlor, Trustor* or any other term referring to the maker of a trust.

### (y)    Trust Property

The term *trust property* means all property acquired from any source and held by a Trustee under this trust.

## Section 18.08    General Provisions and Rules of Construction

The following general provisions and rules of construction apply to this trust.

### (a)    Multiple Originals; Validity of Paper or Electronic Copies

This trust may be executed in any number of counterparts, each of which will be considered an original.

Any person may rely on a paper or electronic copy of this trust that the Trustee certifies to be a true copy as if it were an original.

**(b)    Singular and Plural; Gender**

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or,* when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

**(c)    Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d)    Governing State Law**

This trust is governed, construed, and administered according to the laws of Arizona, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 18.06.

**(e)    Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f)    Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

We have executed this trust on April 25, 2016. This trust instrument is effective when signed by us, whether or not now signed by a Trustee.

_____
Lawrence P. Rudolph, Trustmaker and Trustee

Rudolph Trust
18-9



Bianca T. Rudolph, Trustmaker and Trustee

STATE OF ARIZONA                    )
                                    ) ss.
COUNTY OF MARICOPA                  )

This instrument was acknowledged before me on April 25, 2016, by Lawrence P. Rudolph, as Trustmaker and as Trustee, and Bianca T. Rudolph, as Trustmaker and as Trustee.

[Seal]

WHITNEY W PACI
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 3, 2018

Whitney W. Paci, Notary Public
My commission expires: Feb 3, 2018

Rudolph Trust
18-10

# Schedule C
# Community Property

Ten Dollars Cash

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

# Schedule T-1
# Lawrence P. Rudolph's Separate Property

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

# Schedule T-2
# Bianca T. Rudolph's Separate Property

_____

_____

_____

_____

_____

_____

_____

_____

_____