IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON,**

Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## VERIFIED PETITION FOR ADJUDICATION OF
## INTERESTS IN PROPERTY ORDERED FORFEITED

---

Christopher P. Hotaling

**NIXON PEABODY LLP**
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:    312.977.4418
Fax:    833.968.0535

John R. Sandweg

**NIXON PEABODY LLP**
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:    202.585.8189
Fax:    877.743.5914

## INTRODUCTION

Having presided over the trial of this matter, the Court is well versed with the facts of this case. The events underlying Defendant Lawrence Rudolph's conviction began in October 2016, when Julian and AnaBianca Rudolph ("Petitioners") learned of the tragic passing of their mother. The news of Bianca Rudolph's death devastated Julian and AnaBianca, who had always shared an incredibly close bond with their mother and were deprived of the opportunity to be with her when she passed or to say goodbye in the way they would have wanted. The passage of the last six years since Mrs. Rudolph's death has not lessened their heartache. In fact, the last year-and-a-half has been particularly devastating. Not only have Petitioners been forced to deal with their father's indictment and subsequent conviction for murdering their mother, but they have also been subjected to mental and emotional torture at the hands of Defendant Lori Milliron. Moreover, they have been forced to manage the financial consequences of their father's conviction on the family dental practice in Pennsylvania.

Amidst all of this, Petitioners have also had to confront the potential loss of money and property that their mother intended to pass on to them as their lawful inheritance. The proceeds of the life insurance policies obtained by Bianca Rudolph during her lifetime constitute a significant portion of that inheritance, and these funds were wrongfully taken away from them by Dr. Rudolph. But for a portion of the conduct for which Dr. Rudolph was found guilty, namely, misrepresenting the circumstances of Bianca Rudolph's death when he submitted claims to the seven insurance companies which had policies on her life, Petitioners would have received the proceeds of these life insurance policies, either as the specifically named contingent beneficiaries or as the lawful beneficiaries of various Rudolph family trusts.

To correct this injustice, Petitioners, along with the Estate of Bianca Rudolph, have brought this Petition pursuant to 21 U.S.C. § 853(n) as third-party claimants to assert their superior right to the insurance proceeds and any assets (and the appreciation thereof) that were subsequently acquired using those proceeds or any accounts into which those proceeds were deposited. As is set forth below, by operation of the applicable Slayer Statutes, these proceeds have been held in a constructive trust for Petitioners' benefit since the time of Mrs. Rudolph's murder, and Petitioners therefore have a superior right to these proceeds.[1] Therefore, Petitioners respectfully ask this Court to grant the Petition and hold an ancillary hearing at which Petitioners will establish their superior claim to the insurance proceeds that Dr. Rudolph wrongfully obtained.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY[2]

On or about October 11, 2016, Mrs. Rudolph died from a single shotgun round to the chest while on a hunting trip with her husband in Zambia. Prior to her death, Mrs. Rudolph obtained nine life insurance policies from seven different insurance carriers on which she designated either Dr. Rudolph or a family trust (the "Rudolph Trust") controlled by Dr. Rudolph as the primary beneficiary. Petitioners were designated as the specifically named contingent beneficiaries on three

---

[1] This Court previously ruled that Petitioners were not "victims" of Dr. Rudolph's mail fraud offense within the meaning of the Crime Victims' Rights Act ("CVRA"), and therefore were not entitled to receive restitution in this matter. 22 CR 12, Dkt. #344 at 4. Petitioners further recognize the Court's decision in this regard was affirmed by the U.S. Court of Appeals for the Tenth Circuit. *Id.* at Dkt. #356. In its order, while noting that Petitioners "may be right" about their entitlement to the insurance proceeds, this Court concluded that this entitlement did not necessarily make them victims under the CVRA. *Id*. at 5-6. However, for the reasons discussed more fully in Part I.E *infra*, Petitioners have suffered a loss because the insurance companies are discharged of any obligation to make payments to Petitioners.

Further, although Petitioners make similar arguments regarding the Slayer Statutes and the creation of the constructive trust as in their previous briefing under the CVRA, these arguments are raised in the context of a § 853(n) petition. As such, this Court's ruling that Petitioners are not victims under the CVRA does not foreclose a finding that Petitioners have a superior right, title, or interest justifying an ancillary hearing under § 853(n). For the reasons discussed more fully in Part I.D *infra*, this petition under § 853(n) is the "proper forum" in which the Court may make these determinations. *Id.* at 5, n. 5.

[2] The accompanying Petition lays out the essential facts of this matter in more detail, but for ease of reference, the most salient facts are recounted here.

policies, while the Rudolph Trust or Dr. Rudolph were named as contingent beneficiaries on the remaining policies. Notably, the Rudolph Trust also provides for distribution of trust property to Petitioners in the event that either Dr. Rudolph predeceases them or he is otherwise prohibited from acting as a beneficiary.

Almost immediately after Mrs. Rudolph's death, Dr. Rudolph began submitting claims for payment in relation to these nine policies, while failing to disclose the role he played in her death. Based on Dr. Rudolph's fraudulent misrepresentations, the insurance companies paid Dr. Rudolph, or the Rudolph Trust that Dr. Rudolph controlled, the proceeds of the various policies between January and March of 2017 – approximately $4,877,744.93 in total.

Dr. Rudolph was arrested and indicted almost five years later. On August 5, 2022, a jury convicted Dr. Rudolph of one count of first degree overseas murder and one count of mail (insurance) fraud.

After the conclusion of the trial, the government moved for an order that Dr. Rudolph: (1) forfeit property identified as proceeds of his insurance fraud offense; and (2) pay mandatory restitution to the victims of his crimes. Although the government specifically stated in an earlier court filing that Petitioners are "the victims of the crime," *see* 22 CR 12, Dkt. #256, at 9, the government later took the position that the only victims entitled to restitution are the insurance companies. 22 CR 12, Dkt. # 296, at 8.

In response to the government's position, Petitioners filed a motion requesting leave to file a response to the Government's Motion for Mandatory Restitution and Forfeiture. 22 CR 12, Dkt. #319. This Court denied Petitioners' motion, finding that the Petitioners were victims of the first count of overseas murder, but not the second count of mail fraud. 22 CR 12, Dkt. #344.

On May 17, 2023, this Court entered the Preliminary Order of Forfeiture, 22 CR 12, Dkt. #354, ordering the forfeiture of the following assets identified by the government as traceable to Dr. Rudolph's insurance fraud offense:

a.  58.74% of the value of the real property located at 7000 N 39th Place, Paradise Valley, Arizona 85253;

b.  50.55% of the value of the real property located at 103 Morningside Drive, Cranberry Township, Pennsylvania 16066;

c.  Approximately $3,496,092.04 seized from Bank of New York Mellon account #10532701000, located at 500 Ross Street, Pittsburgh, Pennsylvania 15262, in the name of the Lawrence P. Rudolph Trust;

d.  Approximately $527,736.24 seized from Vanguard account #058588150069515, located at 100 Vanguard Blvd., Malvern, Pennsylvania 19355 in the name of the Lawrence P. Rudolph and Bianca T. Rudolph TR-Rudolph Trust;

e.  Approximately $751,776.28 seized from Vanguard account #054088150069515, located at 100 Vanguard Blvd., Malvern, Pennsylvania 19355 in the name of the Lawrence P. Rudolph and Bianca T. Rudolph TR-Rudolph Trust;

f.  A 2018 Ashton Martin DB-11, VIN # SCFRMFAV5JGL03309 seized on December 21, 2021 from Lawrence Rudolph located at 7175 E. Camelback Road, Scottsdale, Arizona 85251; and

g.  A 2017 Bentley Bentayga, VIN # SJAAC2ZV2HC014709 seized on December 21, 2021 from Lawrence Rudolph located at 7175 E. Camelback Road, Scottsdale, Arizona 85251.

Petitioners now bring this Petition as third-party claimants to assert their superior interest in the above-identified property.

## STANDARD OF REVIEW

Under the criminal forfeiture statute, a third party may "petition the court for a hearing to adjudicate . . . [its] alleged interest in property" to be forfeited. *See* 21 U.S.C. § 853(n)(2). At that hearing, the petitioner will have the opportunity to prove its legal interest by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6). Under Federal Rule of Criminal Procedure 32.2, the allegations in a petition for an ancillary hearing prior to discovery or a hearing are evaluated under the *Twombly-Iqbal* pleading requirements of Federal Rule of Civil Procedure 12(b)(6). *See Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 241 (2d Cir. 2011) (citations omitted). As such, in order to satisfy their obligation to provide the grounds for an entitlement to relief, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

Petitioners bring this Petition pursuant to 21 U.S.C. § 853(n) asserting a superior ownership interest to that of the government in the property that this Court has determined to be subject to forfeiture in the Preliminary Order of Forfeiture. Under § 853(n)(6)(A), the government is not permitted to forfeit property where a third party can show that it possesses a superior "right, title,

or interest" to that "of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A). For the reasons discussed in detail below, Dr. Rudolph was disqualified from receiving the proceeds of Mrs. Rudolph's life insurance policies. The insurance proceeds should have instead been paid, according to their policy terms, to Petitioners as the contingent beneficiaries, and thus Dr. Rudolph merely held the proceeds in a constructive trust for the benefit of the Petitioners. Because Dr. Rudolph never possessed any right to the proceeds, Petitioners had a superior interest to Dr. Rudolph at the time of his commission of the mail fraud offense. Thus, Petitioners are the rightful owners of the insurance proceeds, and are entitled to receive the entire amount paid out on those claims, as well as the appreciation in value of any assets purchased with those proceeds.

## I.    PETITIONERS HAVE A SUPERIOR OWNERSHIP INTEREST IN THE FORFEITED PROPERTY VIA CONSTRUCTIVE TRUST

The government has moved to forfeit Dr. Rudolph's interest in the insurance proceeds. However, there is no such interest to forfeit, as these funds are held in a constructive trust for Petitioners' benefit. "A constructive trust is a legal fiction, 'an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant.'" *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008) (quoting *Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp.)*, 75 F.3d 1447, 1451-52 (10th Cir. 1996)). *See also CGC Holding Co. v. Hutchens*, 974 F.3d 1201, 1216 (10th Cir. 2020) ("[A] constructive trust is a flexible remedy that a district court may employ when justice so requires."). As such, "[i]t is a proper remedy when a recipient acquired property by defrauding the claimant." *Andrews*, 530 F.3d at 1237 (citing *Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 776 (10th Cir. 1982)).

A constructive trust, and the rights of the constructive trust beneficiary, are created at the time the constructive trustee acquires legal title. *See* Restatement (Third) of Restitution and Unjust Enrichment § 55 (2011). As a result, "if a constructive trust properly should be imposed on particular property that was in the possession of the [constructive trustee], it was never truly the [constructive trustee]'s property." *Willis Management*, 652 F.3d at 245. Instead, "[t]he recipient of the property, the constructive trustee, is deemed to hold legal title to the property for the benefit of the claimant, and it is the obligation of the constructive trustee to surrender the property to the claimant." *Andrews*, 530 F.3d at 1237 (citing Rstmt. § 55(1)-(2)).

### A.  The Applicable State Laws Recognize Constructive Trusts.

The Tenth Circuit has stated that "in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law." *Id.* (citations omitted). In proceedings such as this one, where the forfeited property is located in several different states, federal courts will apply the law of the property's location. *See United States v. Salti*, 579 F.3d 656, 669 (6th Cir. 2009). *Cf. United States v. Real Prop. Located at Incline Vill.*, 976 F. Supp. 1327, 1340-41 (D. Nev. 1997). As detailed in the Asset Forfeiture Complaint, the forfeited property is located in Arizona and Pennsylvania. Additionally, the life insurance policies at issue are governed by Arizona, Pennsylvania, and Illinois law, per the policies' choice of law provisions.[3]

Arizona, Pennsylvania, and Illinois law all recognize constructive trusts. Under Arizona law, "[a] court may impose a constructive trust 'whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy

---

[3] The policies issued by AAA Life Insurance Company, Fidelity Life, Genworth First Colony, and MetLife Insurance are governed by Arizona law; the policies issued by Ameritas Life Insurance and Transamerica Life Insurance are governed by Pennsylvania law; and the policies issued by Great-West Life & Annuity Insurance Company are governed by Illinois law.

its beneficial interest.'" *Turley v. Ethington*, 213 Ariz. 640, 643 (Ct. App. 2006) (quoting *Harmon v. Harmon*, 126 Ariz. 242, 244 (Ct. App. 1980)). A constructive trust arises by operation of law rather than agreement, and will be imposed "when property is acquired under inequitable circumstances resulting in unjust enrichment of one at the expense of another." *Golleher v. Horton*, 148 Ariz. 537, 544 (Ct. App. 1985) (citations omitted). *See also Turley*, 213 Ariz. at 643 (quoting *Harmon*, 126 Ariz. at 244). "Because imposition of a constructive trust is an equitable remedy, '[t]here is no set or unyielding formula' courts use to impose them." *Id.* (citing *Chirekos v. Chirekos*, 24 Ariz. App. 223, 224 (1975)).

Pennsylvania law follows the same standard for the imposition of a constructive trust:

> A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it. The necessity for such a trust may arise from circumstances evidencing fraud, duress, undue influence or mistake. The controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment.

*Biros v. U Lock Inc.*, 255 A.3d 489, 495 (Pa. Super. 2021), *reargument denied* (July 28, 2021), *appeal denied*, 271 A.3d 875 (Pa. 2022) (quoting *Nagle v. Nagle*, 799 A.2d 812, 819 (Pa. Super. 2002)) (further citations omitted). Illinois follows substantially the same principles as well:

> A constructive trust is a remedy for unjust enrichment. Usually, unjust enrichment results from wrongdoing, such as actual fraud or the breach of a fiduciary duty, but it is possible to be unjustly enriched without having done anything wrong. . . . A constructive trust rectifies unjust enrichment, not just wrongdoing. 'When a person has obtained money to which he is not entitled, under such circumstances that in equity and good conscience he ought not retain it, a constructive trust can be imposed to avoid unjust enrichment.'

*Tummelson v. White*, 47 N.E.3d 579, 584–85 (Ill. App. 2015) (internal citations omitted).

**B. The Slayer Statutes Provide the Circumstances Necessary to Impose a Constructive Trust Under State Law.**

In addition to recognizing the equitable remedy of constructive trusts, each of these states has enacted a "Slayer Statute" that specifically operates to disqualify a murderer from benefiting financially from a murder, including via life insurance proceeds. Arizona's Slayer Statute provides that "[a] wrongful acquisition of property or interest by a killer not covered by this section shall be treated in accordance with the principle that a killer cannot profit from that person's wrong." Ariz. Rev. Stat. Ann. § 14-2803(E). Thus, a person "who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property and a family allowance." Ariz. Rev. Stat. Ann. § 14-2803(A). Importantly, the Slayer Statute relates back to the time of the murder. *See* Ariz. Rev. Stat. Ann § 14-2803(K). Courts in Arizona have specifically held that the Slayer Statute precludes the killer from benefitting from life insurance proceeds. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 56 (Ct. App. 2009). *See also In re Morris*, 154 B.R. 556, 558 (Bankr. D. Ariz. 1993).

Pennsylvania and Illinois have Slayer Statutes with similar provisions regarding insurance proceeds. *See* 20 Pa. Cons. Stat. § 8802 ("No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following."); 20 Pa. Cons. Stat. § 8811(a) ("Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid to the estate of the decedent, unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him."); 755 Ill. Comp. Stat. 5/2.6 ("A person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest

by reason of the death, whether as heir, legatee, beneficiary, joint tenant, survivor, appointee or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration, testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance.").

Thus, the Slayer Statutes provide the circumstances resulting in unjust enrichment that justify the imposition of a constructive trust. As the Supreme Court of Vermont aptly put it, "[i]t is the intent to kill, which when accomplished, leads to the profit of the slayer that brings into play the constructive trust to prevent the unjust enrichment of the slayer by reason of his intentional killing." *In re Mahoney's Est.*, 220 A.2d 475, 478 (Vt. 1966). *See also In re Moses' Est.*, 300 N.E.2d 473, 480 (Ill. App. 1973) ("The imposition of such a [constructive] trust under the circumstances of the instant case, where the defendant has acquired the sole legal title to the entire property and thereby enhanced his property rights through the murder of his joint tenant, has approbation not only in the case law, the Restatement of Restitution, and in legal treatises, but is consistent with the legislative policy evidenced in [Illinois' Probate Act containing its Slayer Statute]"); *Preston v. Chabot*, 412 A.2d 930, 933 (Vt. 1980) ("[C]onstructive trust is a tool often used by courts to prevent unjust enrichment . . . and is, under these facts [where husband killed wife], a most appropriate vehicle.") (citations omitted); *Abbey v. Lord*, 336 P.2d 226, 230-31 (Cal. Ct. App. 1959) ("[M]ost jurisdictions apply the constructive trust theory that where a murderer attempts to acquire title to property by virtue of his crime and to keep it he takes the property but holds it upon a constructive trust. . . . [T]he California rule is that the killer will be precluded from receiving and keeping the proceeds of the policy; and that a constructive trust is imposed."); *Est. of Chiesi v. First Citizens Bank, N.A.*, 613 N.E.2d 14, 14 (Ind. 1993) ("[W]hen a named beneficiary murders a policy holder, the beneficiary forfeits whatever rights he or she had under the policy.

11

The beneficiary is deemed to hold the proceeds of the policy in constructive trust for the estate of the deceased.").[4]

### C. Under the Slayer Statutes, Dr. Rudolph Held the Insurance Proceeds in a Constructive Trust for the Benefit of Petitioners at the Time of Forfeiture.

Applying these substantively identical laws to the facts alleged in the Petition, Dr. Rudolph is plainly disqualified from receiving any of the life insurance proceeds, and Petitioners are clearly the ultimate rightful beneficiaries of the proceeds. It is undisputed that Dr. Rudolph collected payouts in 2017 following Mrs. Rudolph's death as the primary beneficiary of her life insurance policies, without disclosing his role in her death. It is also undisputed that Dr. Rudolph has been convicted of Mrs. Rudolph's murder. Thus, under the Slayer Statutes, Dr. Rudolph wrongfully acquired the insurance proceeds. Because the elements of the Slayer Statutes are met, Dr. Rudolph forfeited any right he had to the proceeds as the primary beneficiary under the policies, and the proceeds automatically flowed to Petitioners as the contingent beneficiaries.

In other words, because the jury concluded that Dr. Rudolph intentionally murdered Mrs. Rudolph, the Slayer Statutes render any subsequent action Dr. Rudolph took after the murder with respect to the claims on her various insurance policies a legal nullity. Because Dr. Rudolph never had a legitimate interest in the proceeds in the first place, at the moment he obtained those funds, as well as any other property acquired using those funds, he took legal title only as a constructive trustee on behalf of Petitioners as constructive trust beneficiaries. Those proceeds and property are still subject to that constructive trust today.[5]

---

[4] In fact, these concepts of the Slayer Statutes and constructive trusts are so closely intwined that the Indiana Slayer Statute specifically codifies the slayer as imposing a constructive trust. *See* Ind. Code Ann. § 29-1-2-12.1.

[5] This is the case even if, as the Court has previously determined, the insurance companies are determined to be victims for purposes of restitution.

Petitioners have alleged facts that are more than sufficient to state a claim of constructive trust, and will be able to prove these facts should they be granted the opportunity for an ancillary hearing.

### D.  Petitioners' Constructive Trust Creates a Superior Right, Title, or Interest in the Forfeited Property.

Petitioners' claim of constructive trust, if established at an ancillary hearing, would defeat the government's claim to the forfeited property. As third-party claimants seeking to assert an interest in property ordered to be forfeited under 21 U.S.C. § 853, Petitioners must establish by a preponderance of the evidence that they have "a legal right, title, or interest" in the forfeited property, and that "right, title, or interest renders the order of forfeiture invalid" because it "was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S.C. § 853(n)(6)(A). For the reasons previously discussed, the facts alleged in the Petition clearly demonstrate the existence of a constructive trust by operation of the applicable Slayer Statutes. Because of the existence of the constructive trust, at the time when Dr. Rudolph fraudulently claimed the insurance proceeds – "the time of the commission of the acts which gave rise to the forfeiture of the property" – either the interests of the Rudolph Trust, or those of Petitioners, depending on the applicable policy, were superior to Dr. Rudolph's nonexistent interest. This constructive trust therefore nullifies the government's forfeiture claim.

Of the seven other Circuits to address this issue, all but one have concluded that a constructive trust qualifies as a "legal interest" in a forfeiture proceeding that can defeat the government's claim to forfeited property and invalidate a forfeiture order. *See United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008) ("We agree with the large majority of courts that have determined (1) that a constructive trust, despite being an equitable remedy, constitutes a 'legal

right, title, or interest in . . . property' under § 853(n)(6)(A), and (2) that a constructive trust can render a forfeiture order invalid pursuant to that subsection."); *Willis Mgmt.*, 652 F.3d at 245 (finding property in the constructive trust "was never truly the [constructive trustee]'s property and is not subject to forfeiture to the United States in the first instance."); *United States v. Marx*, 844 F.2d 1303, 1308 (7th Cir. 1988) (holding that a constructive trust interest in forfeited property can entitle a petitioner to relief from forfeiture); *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004) (where government acquired property "impressed with a constructive trust" and "moved for forfeiture without recognizing the rights of the beneficiaries of the constructive trust," "its acquisition of the res did not wipe out these equitable interests"); *United States v. Lavin*, 942 F.2d 177, 185-87 & n. 10 (3d Cir. 1991) (stating that "legal interests" extend to equitable ones); *United States v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir.1988) (stating that a constructive trust would constitute a superior interest under 21 U.S.C. § 853(n)). *See also United States v. Bailey*, No. 11-10, 2012 WL 569744, at *11 (W.D.N.C. Feb. 22, 2012) ("A constructive trust constitutes a superior 'legal right, title, or interest' in property under § 853(n)(6)(A) and thus may invalidate a criminal forfeiture order.").

The Tenth Circuit has not squarely addressed whether a constructive trust constitutes a superior "legal right, title or interest" in the forfeited property for purposes of 21 U.S.C. § 853. However, it has expressed support for this view. In *United States v. Andrews*, the government took the position that a constructive trust could never support a claim under 21 U.S.C. § 853(n)(6)(A) because such a trust does not exist until imposed by the court, and thus the interest created by the constructive trust cannot exist at the time of the commission of the offense which gave rise to the forfeiture. *Andrews*, 530 F.3d at 1237. Although the Tenth Circuit did not find it necessary at that time to address whether a constructive trust could satisfy the requirements of 21 U.S.C. §

853(n)(6)(A), it clearly disagreed with the government's argument that the constructive trust did not exist until imposed by the court, noting that "[w]e have previously held in the bankruptcy context . . . that 'the effective date of the constructive trust is the date the wrongful act occurred.'" *Id.* (quoting *U.S. Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir. 1990) (emphasis omitted)).[6]

Petitioners' interest by way of the constructive trust is clearly superior to any that Dr. Rudolph may have had. Under these circumstances, it would violate 21 U.S.C. § 853(n) to forfeit property that rightfully belongs, and has always belonged, to Petitioners. As such, Petitioners have established an interest that negates any claim of forfeiture to the proceeds and property deriving from the proceeds, and Petitioners are entitled to pursue their third-party claims at an ancillary hearing.

### E. Petitioners, and Not the Insurance Companies, Are the Proper Beneficiaries of the Constructive Trust.

As noted elsewhere, most of the insurance companies that paid the life insurance proceeds to Dr. Rudolph have indicated  that they do not view themselves as the victims of Dr. Rudolph's

---

[6] While the Tenth Circuit in *Andrews* declined to recognize a constructive trust, the circumstances of that case are highly distinguishable from the facts here. In *Andrews*, the defendant engaged in an investment scheme that scammed many investors out of millions of dollars. *Andrews*, 530 F.3d at 1234. By the time the government seized her bank accounts, the defendant had spent all but approximately $61,000, which she agreed to forfeit so that the government could distribute the proceeds among all of her investors. *Id.* The last investors to buy into her scheme filed a petition under § 853(n), claiming that they were entitled to all $61,000 because that amount was directly traceable to them. *Id.* They asked the district court to impose a constructive trust that would grant them priority over all of the other investors. *Id.* The district court denied the request as unfair to the other investors, which were all on equal footing with the petitioners, and the Tenth Circuit affirmed. *Id.* at 1238.

Here, Petitioners are not asserting priority over any other individuals or entities who may have an interest in the forfeited property deriving from the mail fraud offense. Aside from a bank which has a secured interest through a mortgage note on one of the pieces of real estate at issue, Petitioners *are* the only ones with such an interest. As detailed in the Petition, most of the insurance companies do not view themselves as entitled to any restitution. Pet. ¶¶ 17, 21-23. As the insurance companies recognized, Dr. Rudolph's conduct did not alter their contractual obligations to pay these claims; it only affected the identities of the lawful beneficiaries. *See* Part I.E *infra*. Thus, the insurance companies have not asserted any right or interest in the forfeited property, nor can they. *See United States v. Sharma*, 703 F.3d 318, 323-24 (5th Cir. 2012) (defrauded health care insurers' actual loss for restitution purposes could only include amounts that would not have been paid but for fraud). As such, this situation "is not a case where imposing a constructive trust would unfairly elevate the petitioners' claims over those of multiple 'similarly situated victims.'" *Willis Mgmt.*, 652 F.3d at 246.

fraud, despite this Court's ruling that they, and only they, are the victims of Dr. Rudolph's mail fraud offense. Petitioners presume that the insurance companies have taken this position in no small part because they have, as a matter of law, entirely discharged their liability under the life insurance policies. *See*, *e.g.*, Pet. Ex. D. Put more plainly, because they have already paid out the policies, the life insurance companies have no obligation to pay Petitioners as the contingent beneficiaries to whom the proceeds should have been paid. As such, Petitioners are unable to "bring a claim against the insurers for any proceeds to which they believe they are entitled," and therefore "have suffered no loss." 22 CR 12, Dkt. #344 at 6.

It is well established that "[a]n insurer who is contractually obligated to remit the proceeds of a life insurance policy upon the death of the insured is discharged from liability under the policy if, in good faith, it pays the proceeds to the beneficiary designated by the policyholder." *See*, *e.g.*, *Bigley v. Pacific Standard Life Ins. Co.*, 642 A.2d 4, 6 (Conn. 1994); *see also Weed v. Equitable Life Assurance Soc'y of the United States*, 288 F.2d 463, 464 (4th Cir. 1961) ("Payment in good faith to the beneficiary of record by the insurance company without knowledge of facts vitiating the claim will prevent a second recovery by another claimant."). "This general rule relieves the insurer from liability under the policy in circumstances where, for example, the insurer had paid the beneficiary designated by the policyholder without knowledge that … the beneficiary was criminally responsible for the death of the policyholder." *Bigley*, 642 A.2d at 6 (citing *In re Estate of Thompson*, 426 N.E.2d 1 (Ill. 1981)). A life insurance company acts in good faith in paying out proceeds to the primary beneficiary even where "it knew the police strongly suspected [the primary beneficiary's] complicity in [the decedent's] death." *In re Estate of Thompson*, 426 N.E.2d at 2.

The relevant Slayer Statutes also protect insurers from liability for having paid claims to a designated beneficiary in good faith. *See*, *e.g.*, 20 Pa. Cons. Stat. § 8812 ("Any insurance company

16

making payment according to the terms of its policy … shall not be subject to additional liability by the terms of this chapter, if such payment or performance is made without notice of the killing by a slayer."); *see also* 755 Ill. Comp. Stat. 5/2-6 ("The holder of any property subject to the provisions of this Section shall not be liable for distributing or releasing said property to the person causing the death if such distribution or release occurs prior to a determination made under this Section."); Ariz. Rev. Stat. Ann. § 14-2803(G) ("A payor or other third party is not liable for having made a payment … to a beneficiary designated in a governing instrument affected by an intentional and felonious killing or for having taken any other action in good faith reliance on the validity of the governing instrument on request and satisfactory proof of the decedent's death and before the payor or other third party received written notice of a claimed forfeiture or revocation under this section."). Moreover, the insurance contracts themselves explicitly state that "[f]ull payment of the death benefit proceeds to the beneficiary discharges [the insurer] from any and all claims." *See*, *e.g.*, Ameritas Policy, Pet. Ex. A.

    **F.** Petitioners do not purport to know what level of knowledge or suspicion the life insurance companies held with regards to Dr. Rudolph's possible guilt at the time they paid out the proceeds of the policies. However, Petitioners know of no evidence that the insurance companies had more knowledge than the company in *In re Estate of Thompson* that acted with good faith. Obviously, the insurance companies did not have notice of Dr. Rudolph's conviction prior to paying out on the policies. As a result, it is evident that the life insurance companies have discharged their contractual obligations. Having discharged their contractual obligations to pay, the life insurance companies have no need for the return of the funds, as doing so would unjustly enrich the life insurance companies. **Alternatively, If Petitioners Are Not the Proper Beneficiaries, the Insurance Companies Have a Superior Right in the Forfeited Property.**

In the event this Court finds that Petitioners are not the proper beneficiaries of the constructive trust (they are), then Petitioners request that this Court recognize that the insurance companies have a superior right to the forfeited property as they are the beneficiaries of the constructive trust. For the reasons previously discussed, Dr. Rudolph's fraud created a constructive trust and Dr.

Rudolph never held lawful title to these funds. To the extent that this Court concludes that Petitioners are not the beneficiaries of this trust, then it should find that the funds were held for the benefit of the insurance companies as Dr. Rudolph's victims. The insurance companies therefore have a superior right to the funds they paid and any property deriving from those funds, which negates any claim of forfeiture by the government. In other words, whether Petitioners or the insurance companies are the proper beneficiaries of the constructive trust, one thing is clear – the proceeds do not belong to the government.

## II.    PETITIONERS ARE ENTITLED TO ALL OF THE INSURANCE PROCEEDS AND ANY APPRECIATION IN VALUE OF ASSETS PURCHASED WITH THE INSURANCE PROCEEDS

The constructive trust includes all of the assets identified in the Preliminary Order of Forfeiture, as well as any appreciation in value of those assets. As detailed in the Petition, the constructive trust includes all of the insurance proceeds from all nine policies, as Petitioners are either specifically designated in these policies as contingent beneficiaries, or Dr. Rudolph or the Rudolph Trust are so designated, meaning that the funds ultimately flow to Petitioners as the beneficiaries of the Trust.

Moreover, the constructive trust includes the appreciation in value of any assets purchased with the insurance proceeds.

Dr. Rudolph fraudulently received approximately $4.8 million in insurance proceeds. In the years between receiving the payouts and his arrest, he purchased several real properties and vehicles with those proceeds. The assets deriving from the insurance proceeds have since appreciated in value, based on the purported fair market value of the properties in question. Petitioners respectfully contend that the constructive trust includes this appreciation, as well as the underlying $4.8 million directly paid out on the insurance policies.

According to other states' courts applying substantially similar law on constructive trusts as Arizona, Pennsylvania, and Illinois, a constructive trust includes the appreciation in value of an asset that is subject to the trust. *See*, *e.g.*, *Sulzer v. Diedrich*, 664 N.W.2d 641, 648 (Wis. 2003) (finding constructive trust should include the interest and appreciation on claimant's portion of retirement accounts until the date of payment); *ProData Computer Servs., Inc. v. Ponec*, 590 N.W.2d 176, 182–83 (Neb. 1999) ("The law is clear that if the beneficiary of a constructive trust proves his or her entitlement to imposition of such a trust by clear and convincing evidence, the beneficiary's judgment interest may in appropriate cases be satisfied not only by the original value which constitutes the trust corpus, but also by the reasonable value of the appreciation of that asset."); *Zane v. Minion*, 63 A.D.3d 1151, 1153 (N.Y. 2d Dep't 2009) (constructive trust includes benefit of appreciation of $1.7 million in improvements to property); *Parks v. Zions First Nat. Bank*, 673 P.2d 590, 603 (Utah 1983) (constructive trust includes income and profits realized upon the trust res). *See also Bailey*, 2012 WL 569744, at *11 ("Property obtained with, or traceable to, [constructive] trust funds is also subject to the protection of the trust.").

As such, Petitioners are entitled not only to the $4.8 million that had been fraudulently paid to Dr. Rudolph, but also to the total appreciation of the assets traceable to those insurance proceeds.

## **CONCLUSION**

For the foregoing reasons, Petitioners Julian Rudolph, AnaBianca Rudolph, and the Estate of Bianca Rudolph respectfully request that this Court grant their Petition and hold an ancillary hearing pursuant to 21 U.S.C. § 853(n)(5) at which Petitioners may testify and present evidence supporting their superior interests in the forfeited property. Petitioners further respectfully request that this Court recognize their interests in the Final Order of Forfeiture, and order that the forfeited property along with any appreciation in value be disbursed to Petitioners.

Dated: June 16, 2023

PETITIONERS' COUNSEL

/s/  *Christopher P. Hotaling*_
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:     312.977.4418

/s/ *John R. Sandweg*__
John R. Sandweg (DC Bar #1027208)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:     202.585.8189

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on June 16, 2023, and thereby delivered by electronic means to all registered participants.

/s/  *John R. Sandweg*
    John R. Sandweg (DC Bar #1027208)
    NIXON PEABODY LLP
    799 9th Street NW, Suite 500
    Washington, DC 20001-5327
    Tel: 202.585.8189
    Fax: 877.743.5914