IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     LAWRENCE RUDOLPH, and
2.     LORI MILLIRON,

      Defendants.

---

**UNITED STATES' RESPONSE AND MOTION TO DISMISS VERIFIED PETITION FOR ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED**

---

Because petitioners Julian and AnaBianca Rudolph have failed to allege facts that establish their standing as claimants with a third-party interest in the property forfeited in this case, the United States of America moves to dismiss their Verified Petition for Adjudication of Interests in Property Ordered Forfeited (Docket # 367).

## I.    INTRODUCTION

Although the Court requested that the Government file a response to the Petition, the government responds by filing this Motion to Dismiss because the Petition fails to establish petitioners' legal interest in the property ordered forfeited in the Court's Preliminary Order of Forfeiture (Docket # 354), including all appreciation traceable to those assets. Specifically, the petitioners, as the children of the decedent killed by the defendant, are asserting a claim to the life insurance proceeds obtained by the fraudulent conduct of their father. But the petitioners are not the victims of the crime of the mail fraud and their Petition does not establish a vested legal

interest in those forfeitable funds.  Accordingly, this Court should dismiss the Petition under Federal Rule of Criminal Procedure 32.2(c) without a hearing.

## II.    <u>FACTUAL ALLEGATIONS</u>

The following relevant factual assertions were in the petitioners' Petition.[1]

1.      Julian Rudolph ("Julian") is the son of Defendant Lawrence Rudolph ("Dr. Rudolph") and decedent Bianca Rudolph ("Mrs. Rudolph").

2.      AnaBianca Rudolph ("AnaBianca") is the daughter of Dr. Rudolph and Mrs. Rudolph.

4.      On or about October 11, 2016, Mrs. Rudolph died from a single shotgun round to the chest while on a hunting trip with Dr. Rudolph in Zambia.

5.      Prior to her death, Mrs. Rudolph obtained nine life insurance policies from seven different insurance carriers.

7.      Although Mrs. Rudolph largely designated Dr. Rudolph, or a family trust (the "Rudolph Trust") controlled by Dr. Rudolph, as the primary beneficiary on these insurance policies, she ensured her children were also specifically designated as the contingent beneficiaries on multiple policies, ~~such that they became entitled to receive the proceeds on them should Dr. Rudolph predecease her or otherwise be disqualified (like what happened here)~~.[2]

9.      Almost immediately after Mrs. Rudolph's death, between October 31, 2016, and November 14, 2016, Dr. Rudolph began submitting claims for payment in relation to these nine policies. In so doing, he failed to disclose his role in the circumstances of her death.

---

[1] The United States references the paragraph numbers identified in the Petition.

[2] The factual portion of this paragraph is that the petitioners were the contingent beneficiaries on three or four of the nine policies.   *See* Petition, p. 3, fn. 2 and 3.

10.    Based on Dr. Rudolph's representations that Mrs. Rudolph's death was an accident, the insurance companies paid Dr. Rudolph, or the Rudolph Trust that Dr. Rudolph controlled, the proceeds of the various policies between January and March of 2017.

11.    In total, Dr. Rudolph and/or the Rudolph Trust he controlled received approximately $4,877,744.93 from the seven life insurance companies.

12.    Nearly five years after murdering his wife and fraudulently submitting claims for the proceeds of her life insurance policies, Dr. Rudolph was arrested by federal law enforcement.

13.    On January 5, 2022, a federal grand jury returned an indictment against Dr. Rudolph charging him with one count of first-degree overseas murder, in violation of 18 U.S.C. §§ 1111 and 1119, and one count of mail (insurance) fraud, in violation of 18 U.S.C. § 1341.

14.    A jury convicted Dr. Rudolph of both counts on August 1, 2022.

15.    After the conclusion of the trial, the government moved for an order that Dr. Rudolph: (1) forfeit property identified as proceeds of his insurance fraud offense; and (2) pay mandatory restitution to the victims of his crimes.

21.    Further, materiality witnesses called by the government as representatives of the insurance companies at trial each stated that disclosure concerning the circumstances of Mrs. Rudolph's death would have been valuable not for purposes of whether they were contractually required to pay claims (which they were), ~~but instead because the proceeds should have been paid to other lawful beneficiaries—namely, Julian and AnaBianca.~~ *See, e.g., U.S. v. Rudolph, et al.*, 22 CR 12, Trial Transcript, Day 6, Testimony of Greg Mirabelli, pg. 55-56, attached hereto as Exhibit E.[3]

---

[3] This fact does not appear to be supported by petitioner's Exhibit E.

26.     On May 17, 2023, this Court entered the Preliminary Order of Forfeiture ordering the forfeiture assets identified as proceeds of Dr. Rudolph's insurance fraud offense.

**Additional Relevant Facts Not in The Petition**

1.     The United States has compiled a chart of the relevant nine life insurance policies, which includes the amount, date of claim, date of payment, primary beneficiary, contingent beneficiary, and choice of law provision for each life insurance policy.  *See* Attachment A.

2.     On May 2, 2023, AnaBianca Rudolph, Julian Rudolph in his individual capacity and as Trustee of the Credit Bypass Trust under the Rudolph Trust filed a Complaint against Lawrence Rudolph. *See* Attachment B.

3.     According to the Complaint, the Rudolph Family Trust had been established approximately six months prior to Bianca Rudolph's death with an estimated worth of $13,900,000.00 in assets.  Upon her death, Mrs. Rudolph's share of the Property (approximately $6,900,000.00) was "reallocated to the Lawrence P. Rudolph Survivor's Trust created under the Rudolph Trust." The Complaint asks that Lawrence Rudolph be found the slayer of Mrs. Rudolph under Arizona law; that Plaintiffs be awarded damages of $6,900,000.00; that a constructive trust be imposed over the $6,900,000.00 in assets transferred from Mrs. Rudolph's share of the Property in the Trust.

4.     The Complaint does not address any proceeds acquired by the Rudolph Trust or Lawrence Rudolph through the life insurance policies after Mrs. Rudolph's death.

5.     On June 16, 2023, Julian Rudolph and AnaBianca Rudolph filed a petition as the children of the defendant and decedent.  (Doc. 367).

### III.    APPLICABLE LAW

#### A.    Third-party petitions under 21 U.S.C. § 853(n)

A petitioner can establish their interest in the assets to be forfeited in one of two ways:[4]

(A)  the petitioner has a superior legal right, title, or interest in the property to the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property; or

(B)  the petitioner is a bona fide purchaser for value of the right, title, or interest in the property who lacked reasonable cause at the time of the purchase to the believe the property was subject to forfeiture.

21 U.S.C. § 853(n)(6).

To determine if the petitioners have a superior legal interest to the defendant, the Court must first look to state law to determine the nature of petitioners' legal interest. *See United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We recognize that in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law").  If petitioners do not have a legal interest under state law, they cannot have a superior interest to the defendant in the subject property.  *See United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012) (if claimant fails to establish a legal interest under state law, the inquiry ends and the claim fails for lack of standing); *United States v. Rammuno*, 599 F.3d 1269, 1272 (11th Cir. 2010) (same).

#### B.    Motion to dismiss a petition under Fed. R. Crim. P. 32.2(c)

If a third-party has filed a petition asserting an interest in the property to be forfeited, a court may dismiss the petition for lack of standing, for failure to state a claim, or for any other

---

[4] The United States has attached an Addendum to this Response, outlining the procedures for handling third-party petitions under 21 U.S.C. § 853(n).

lawful reason.[5]  Fed. R. Crim. P. 32.2(c)(1)(A).  "[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Berg*, 22-cr-00159, 2023 WL 121235, at *1 (D. Utah Jan. 6, 2023)).[6]

## IV.    LEGAL ARGUMENT

### A.   Petitioners lack standing

When a third-party asserts an interest in forfeitable property, the first question is do they have standing.  21 U.S.C. § 853(n)(2); Fed. R. Crim. P. 32.2(c)*; see United States v. Swartz Family Trust*, 67 F.4th 505, 515 (2d Cir. 2023).  "A claimant need not prove the merits of his underlying claim, but he must claim a facially colorable interest in the seized property to satisfy the requirements of standing."  *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009); *see also United States v. Dadha*, No. 12-20083-01/11, 2020 WL 7056099 at *3 (D. Kan. Dec. 2, 2020). There are two types of standing petitioners must establish: statutory and Constitutional standing. "Statutory standing is 'simply a question of whether the particular plaintiff has a cause of action under the statute.'"  *Swartz Family Trust*, 67 F.4th at 515-516.  To establish that they have statutory standing under Section 853(n), the petitioners must first demonstrate that they have a legal interest in the property to contest the forfeiture.  *United States v. Kluding*, No. CR-14-123-1-C, 2020 WL 5920269, at *2 (W.D. Okla. Oct. 6, 2020).  A "court can dismiss claim for lack of

---

[5] Because petitioners have failed to establish a legal interest in the property subject to forfeiture here, their petition here could be dismissed for failure to state a claim in the same manner that it should be dismissed for lack of standing.

[6] If the Court denies a motion to dismiss the petition, and before conducting a hearing on the petition, the Court may permit discovery under the Federal Rules of Civil Procedure, after which the parties may move for summary judgment, and then the Court would conduct any ancillary hearing.  Fed. R. Crim. P. 32.2(c)(1)(B).

statutory standing without first addressing constitutional standing." *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 96-97 (1998)).

It is the petitioners' burden to prove a legal interest in the property exists. *Kluding,* 2020 WL 5920269 at *2. If the petitioners have no valid legal interest in the property under state law the inquiry ends, and the claim fails for lack of standing. *Swartz Family Trust*, 67 F.4th at 516. Here, petitioners argue that they are the beneficiaries of a constructive trust over the assets subject to forfeiture. But petitioners cannot establish a constructive trust over the insurance companies' monies and the property traceable thereto.

**1.   Petitioners do not have a direct interest in the property subject to forfeiture**

The proceedings to date have made clear – the petitioners never provided any monies to Defendant Rudolph and have suffered no financial loss because of the mail fraud committed by Defendant Rudolph. It was the insurance companies who have paid out the funds used to procure the assets in this matter. (Docket # 367, para. 11).

The Petition recognizes that it would be the insurance companies, if anyone, who might have an interest in the property. (Docket # 367, para. 25). And this Court has denied petitioners' previous attempt to stand in the shoes of the life insurance companies as victims of the mail fraud count of conviction. (Docket # 344). The life insurance companies are the entities that paid out the funds that are now the subject of forfeiture.[7] The petitioners do not have a separate

_____

[7] As the life insurance companies are the subject of the United States' request for restitution, they will be made whole under that theory. Forfeiture is not about making victims whole, it is about punishing the criminal offender. To that extent, the restitution process will make the victims of the mail fraud whole. Petitioners cannot force the life insurance companies to choose a different remedy. *See In re Schick*, 246 B.R. 41, 46 (Bankr. S.D.N.Y. Mar. 13, 2000); *Harmon v. Harmon,* 613 P.2d 1298, 1300-1301 (Ariz. Ct. App. 1980) ("Even though a person may have a claim for the imposition of a constructive trust, there is no requirement that he enforce it;" they may elect other remedies such as restitution.).

and second right to the same proceeds paid out by the life insurance policies. Simply put, the petitioners do not have standing to assert a right for a third-party as the statute requires the signors of any petition to have the legal interest in the property. 21 U.S.C. § 853(n)(3); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (a party "must assert his own legal rights and interest, and cannot rest his claim to relief on the legal rights or interests of third parties.").

At most, petitioners have established that they were the contingent beneficiaries on some of the life insurance policies, but a contingent interest is insufficient to establish standing. *See Kluding*, 2020 WL 5920269, at *2–3 (court granted government's motion to dismiss for lack of standing defendant's spouse and children's ancillary petitions whose interests in substitute property were as contingent beneficiaries of revocable trust). As stated above, it is unknown if the life insurance companies would have even chosen to pay absent the fraud. Similarly, petitioners cannot leapfrog into a legal interest for standing purposes by simply asserting that they are the beneficiaries of the Estate of Bianca Rudolph or the Rudolph Trust. Those entities may have obligations to disburse payments to individuals or entities other than the petitioners.

## 2. Petitioners do not have a legal interest in the property subject to forfeiture through a constructive trust

Petitioners attempt to establish a superior interest in the life insurance proceeds by alleging that a constructive trust exists for their benefit. They argue that the constructive trust arose upon receipt of the funds by their father as the constructive trustee. But petitioners wholly fail to explain how they are the beneficiaries of a constructive trust. They also conflate the imposition of an equitable constructive trust under common law theory and a statutorily created

constructive trust under a slayer statute. But under either a common law or slayer statute theory of constructive trust, they fail to meet the elements to establish such a trust.

### a. **Petitioners are not the beneficiaries of an equitable constructive trust**

#### i. **Choice of law**

A constructive trust is an equitable remedy imposed by state common law to prevent unjust enrichment. *Andrews*, 530 F.3d at 1237 (noting that a constructive trust is a legal fiction and an equitable remedy devised to prevent unjust enrichment and compel **restitution** of property that does not belong to a defendant) (emphasis added). Based on the mail fraud, the Court should apply Arizona constructive trust law to determine whether a constructive trust exists over the forfeitable property because the unlawful mail fraud acts occurred in that jurisdiction. *See e.g. DarkPulse, Inc. v. EMA Fin., LLC*, No. 22 CIV. 45 (LGS), 2023 WL 2307386, at *7 (S.D.N.Y. Mar. 1, 2023) (when a party seeks the imposition of a constructive trust, the Court could apply the laws of the state where the alleged unjust acts justifying a constructive trust occurred).[8]

#### ii. **Petitioners fail to meet the elements of a constructive trust under Arizona law**

In Arizona, "[a] court may impose a constructive trust when title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or similar means, of if there has been a breach of fiduciary duty." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409, 276 P.3d 11, 43 (Ct. App. 2012). A constructive trust in an equitable remedy that can be used "to compel one who unfairly holds a property interest to convey that

---

[8] Petitioners suggest that the law of the property's location (Arizona and Pennsylvania) or the choice of law provisions of the life insurance policies (Arizona, Pennsylvania, and Illinois) could apply in this case. (Docket # 368, p.8).

interest to another to whom it justly belongs." *Id.* In sum, Arizona law creates an equitable constructive trust when there is:

>   (1) a wrongful holding of property;
>
>   (2) which unjustly enriches the holder of the property;
>
>   (3) at the expense of the party seeking the constructive trust;
>
>   (4) that the party seeking the constructive trust can trace their funds/assets to the property wrongfully acquired; and
>
>   (5) there is not an adequate remedy at law such that the court should act in equity.

*Harmon v. Harmon*, 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (Ct. App. 1980); *Matter of Lloyd Revocable Tr.,* No. 1 CA-CV 16-0458, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017) (finding that Plaintiffs seeking a constructive trust had to identify specific assets that could be traced back to the defendant that belonged to them); *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569, 334 P.3d 745, 752 (Ariz. Ct. App. 2014) (no constructive trust where adequate remedy at law). The burden is on the party seeking the constructive trust to establish the requirements by "clear and convincing evidence." *Harmon*, 126 Ariz. at 244, 613 P.2d at 1300.

To establish that petitioners have standing for a constructive trust, they must establish that they are asserting their rights and not those of third parties.[9] *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975); *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (prudential standing prohibits most litigants for asserting the rights of third parties). This concept of prudential standing applies in equal force to the imposition or creation of a constructive trust over property. *See e.g. Fine v. Chloeta Fire, LLC*, No. 13-CV-743-JHP-FHM, 2014 WL 12700982, at *2 (N.D. Okla. Aug. 26, 2014)

---

[9] This standing question is similar to the overall standing question in this matter of whether they have established the third-party interests necessary to challenge the forfeiture.

(dismissing constructive trust claim on standing grounds because Plaintiff did not have any personal involvement in the transactions), *report and recommendation adopted,* No. 13-CV-743-JHP-FHM, 2014 WL 12708962 (N.D. Okla. Sept. 12, 2014); *see also In Re Schick*, 246 B.R. at 46 ("The personal nature of the equitable right prevents someone other than the beneficiary from using it offensively or defensively. Thus, a stranger cannot sue to impose a constructive trust for the benefit of a defrauded party.")

Petitioners cannot establish that they have an interest in the property sought for forfeiture. As discussed in detail above, petitioners were not the party defrauded, and are clearly attempting to assert the rights of the insurance companies. The proceeds and property traceable to the proceeds are derived from the insurance company as a result of mail fraud. Accordingly, they cannot establish prudential standing to seek the imposition of an equitable constructive trust. *Id*.

Moreover, petitioners cannot trace their funds to the seized assets as those assets were insurance proceeds obtained through mail fraud on the insurance companies. *See Matter of Lloyd Revocable Tr.,* 2017 WL 4682255, at *3 (finding that Plaintiffs seeking a constructive trust had to identify specific assets that could be traced back to the defendant that ***belonged to them***) (emphasis added); *see e.g. Swartz Family Trust*, 67 F.4th at 518 ("Because Orienta does not allege that Swartz used its funds to acquire the Asset, the District Court was right to reject its constructive trust claim."); *Andrews*, 530 F.3d at 1237 (a constructive trust may be "a proper remedy when a recipient acquired property by ***defrauding the claimant***.") (emphasis added).

Even if the Court were persuaded that the petitioners had an interest in the funds paid out under the insurance policies that designated them as contingent beneficiaries, the Court should still decline to impose a constructive trust because it would be impossible to segregate those funds and the property appreciable thereto from the rest of the property. *See Amtitle Trust Co. v.*

*Fitch*, 541 P.2d 1166, 1168 (Ariz. Ct. App. 1975) ("A prerequisite to the imposition of a constructive trust is the identification of specific property, or res, in which the claimant has an interest."); *see also Rammuno*, 599 F.3d at 1275 (declining to impose constructive trust on behalf of victim where it would elevate those interests over similarly situated victims).

The imposition of a constructive trust is not necessary to prevent defendant Rudolph from being unjustly enriched as the government is forfeiting the assets from him.   The forfeiture of the assets will force the defendant to disgorge himself of his ill-gotten gains.  Consistent with this principle, a constructive trust is also not required to address the rights of the victims.  The victims of defendant Rudolph's fraud—the life insurance companies—have an adequate remedy at law.  The life insurance companies have elected to pursue restitution against the defendant. Under Arizona constructive trust law, when the harmed party has another remedy at law, the imposition of a constructive trust is improper.  *See ML Servicing Co.*, 235 Ariz. at 569, 334 P.3d at 752 (A constructive trust is improper when another adequate remedy at law is available to the harmed party); *see also Acedo v. Mannion*, No. 1 CA-CV 20-0017, 2020 WL 6286716, at *2 (Ariz. Ct. App. Oct. 27, 2020) (same).

Importantly, the petitioners have not even established their rights under the life insurance policies and cannot do so because these are contractual rights that have not been determined by the life insurance companies and any claimants under those policies.  Petitioners take a speculative position that all of the insurance policies would be paid out to them, and that they can be "substituted" for the defrauded parties—the life insurance companies.  As evidence that petitioners' claims are speculative, at least one insurance company has indicated that they will seek restitution of the monies they paid for the claim but, at this time, does not intend to make any further payment under the policy based on their belief that the policy was obtained with the

intent to commit the murder of Bianca Rudolph.  Moreover, many of the policies were paid to the Rudolph Trust, which is an entity separate and distinct from Lawrence Rudolph.  Simply put, the petitioners have not offered facts to establish that they have any vested interest in monies that may or may not have been paid out to them.  Accordingly, the Court cannot find based on their Petition that they would be the "lawful beneficiaries" under all of the life insurance policies under which fraud proceeds were paid, even those that identified them as contingent beneficiaries.

Not insignificantly, petitioners are also attempting to shortcut a process which could provide them a legal remedy.  The appropriate procedure would be for the proper contingent beneficiaries to file claims under each policy with the insurance companies.  Once the restitution is paid to the insurance companies, each insurance company would be able to determine whether the benefits would be paid to any contingent beneficiaries, any trusts, any estate, or whether any benefit would be paid at all under the policy. Such a procedure makes sense as there could be additional beneficiaries or creditors, who are unknown and could potentially file additional insurance claims as beneficiaries or otherwise outside of the two children who have filed the Petition here.[10]  Indeed, petitioners stand exactly where they stood years ago—in the position to submit claims to the insurance companies as beneficiaries.  There is no basis in equity to impose a constructive trust, and the elements to do so have not been met.

   **b.  <u>Petitioners are also not the beneficiaries of a statutory constructive trust under a slayer statute.</u>**

Petitioners' attempt to invoke state law regarding various slayer statutes also does not create an interest in the property.  In arguing for the imposition of an equitable constructive trust

---

[10] This could result in several contractual disputes that would require separate and distinct litigation from this action.

against the fraud proceeds, petitioners have argued they also have a statutorily imposed
constructive trust under a slayer statute.

The imposition of a remedy under a slayer statute is needless in relation to this criminal
forfeiture action and restitution.  The equities at issue do not dictate the imposition of a
constructive trust under a slayer statute. As a matter of equity, the common law, now codified by
many states in so-called "slayer statutes," prevented a person who wrongfully killed another
from profiting or benefiting from their wrongdoing.  *See* 26B C.J.S. Descent and Distribution §
73.  When a wrongdoer is not ultimately rewarded an interest as a result of his wrongdoing, as
here through federal forfeiture, then the imposition of remedies under the slayer statutes are
unnecessary to prevent an unjust result.  Likewise, the result requested by the petitioners would
result in the preference of some victims (the petitioners) over the victims of the crime (the
insurance companies).  Courts are hesitant to impose a constructive trust for actual victims of
crimes when it would be for the benefit of some victims over others.  *See Andrews*, 530 F.3d at
1238 ("When a constructive trust would not serve to prevent unjust enrichment, and would
instead deliver inequitable results, declining to impose one is not inconsistent with (state
constructive trust law)."  Accordingly, the overall intent and purpose of such statutes are not at
issue in the matter before the Court.  Defendant Rudolph has been divested of his ill-gotten gains
from fraud and the killing of his wife through forfeiture without the imposition of a remedy
under a slayer statute, and the victims of the crimes will be made whole through restitution.
Accordingly, equity does not require the imposition of a constructive trust.

### i.    <u>Choice of Law</u>

Again, petitioners do not affirmatively articulate which state's slayer statute under which
they seek the imposition of a constructive trust.  To determine the legal interest, if any, afforded

14

to the petitioners under a slayer statute, the Court must first determine which slayer statute applies.[11]

The creation of the rights and when and how they are created under the slayer statutes is different in the various possible jurisdictions suggested by the petitioners (Arizona, Pennsylvania, and Illinois), requiring the Court to apply a choice-of-law analysis.  When conducting such an analysis, the federal court applies the state's choice-of law rules of the state in which it sits.  *Richardson v. Allstate Fire and Casualty Ins. Co*., 21-cv-02043, 2022 WL 16527945, at *2 (D. Colo. Oct. 28. 2022) (citing *Boyd Rosene & Associates, Inc. v. Kansas Municipal Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997)).  Further, as noted in the *Richardson* case, the "state having the 'most significant relationship' to the particular issue" applies for contract and tort claims, absent contractual choice-of-law provisions.  *Id*. But when the issue is one of interpretation of slayer statutes, it becomes more difficult because "slayer statutes affect obligations under insurance contracts, but also sound in inheritance and succession."  *Butterfly-Biles v. State Farm Life Ins. Co*., No. 09-CV-0086-CVE-PJC, 2010 WL 346839 at *3 (N.D. Okla. Jan. 21, 2010).  Thus, when analyzing slayer statutes, the Oklahoma Court in *Butterfly-Biles v. State Farm Life Ins. Co*., looked to the place of contracting and the place of decedent's domicile and determined the place of decedent's domicile was the most appropriate. *Id*. That court noted the significant relationship between the facts and the state that had the greatest interest in application of their slayer statute. *Id*. The Court's finding in *Butterfly-Biles* makes particular sense when viewed in the context of succession and inheritance, which are

---

[11] Generally, there are two kinds of state slayer statutes.  Some slayer statutes provide a specific legal remedy to divest the murderer of the benefits received from the wrongdoing.  Other slayer statutes merely provide that a murderer cannot benefit from their wrongdoing and, an interested party must file a civil or interpleader action to obtain the relief articulated in the statute.

often based on the decedent's state of domicile.  *Id*. at *3 n. 11; *see e.g*. Colo. Rev. Stat. § 15-12-408 (state of domicile determines will construction and validity).

Based on the reasoning in *Butterfly-Biles*, as well as the 'most significant relationship' test articulated in *Richardson,* Arizona is the state with the most significant relationship to the issue of beneficial rights obtained by defendant Lawrence Rudolph as the result of Bianca Rudolph's murder.  A constructive trust remedy is an *in personam* remedy against the constructive trustee: in this case, the defendant.  And the slayer statutes, by definition, address the receipts flowing from the death of an individual to the murderer, which includes any inheritance.  In this case, both Lawrence Rudolph and Bianca Rudolph resided in the state of Arizona at the time of her death.  As a result, Arizona has the most significant relationship with this issue, and their law should be applied when determining if the petitioners have a legal interest under the slayer statute.

## ii.    Arizona's Slayer Statute

Arizona's slayer statute is codified in Arizona Revised Statute § 14-2803, *et seq*.  Section 2803(A) provides that "a person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate."  Accordingly, the Arizona slayer statute prevents a killer from receiving life insurance proceeds.  *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 53, 213 P.3d 197, 202 (Ct. App. 2009) (finding that a wife, who had feloniously and intentionally killed her husband, was not entitled to life insurance proceeds).

The Arizona slayer statute also sets forth a specific process for the imposition of a statutory constructive trust under § 14-2803.  Specifically, subsection K, provides as follows:

> The decedent's estate may petition the court to establish a constructive trust on the property or the estate of the killer, effective from the time of the killer's act that caused the death, in order to secure the payment of all damages and

judgments from conduct that, pursuant to subsection F of this section, resulted in criminal conviction of either spouse in which the other spouse . . . was the victim. Section 2803(K)

A constructive trust under subsection K would not work as petitioners suggest. The Arizona slayer statute vests a right in *the estate of the decedent* to petition the court for a constructive trust in the assets of the killer *to secure the payment of all damages and judgments* arising from the murder.  It does not provide that any disgorgement of benefits from the killer would automatically result in the distribution of those benefits to the estate, or certain heirs of the deceased, irrespective of any contractual rights of payments, such as those set forth in the life insurance policies.  Put simply, the statute does not create new rights for heirs that would trump the contractual terms and rights set forth in the life insurance policies themselves.

Petitioners' assertion that they would be the beneficiaries of a statutorily imposed constructive trust under Subsection K fails for at least three reasons.  First, a statutory constructive trust under Section 2803(K) cannot be created without a final criminal conviction, including the exhaustion of all appeals.  *In re Est. of Butwin*, 239 Ariz. 338, 341, 371 P.3d 666, 669 (Ct. App. 2016) ("the plain language of Subsection K contains a specific limitation to Subsection K's application: the killer's conduct must have '*resulted in criminal conviction* of either spouse in which the other spouse or a child was the victim.'"). This is because Subsection F states that "after a right to appeal has been exhausted," a judgment of conviction establishes the convicted person as the decedent's killer for purposes of the statute.  A.R.S. § 14-2803(F). As the Court is aware, defendant Rudolph's conviction is not final.[12]  In sum, the petitioners request for a statutorily imposed constructive trust is premature.

---

[12] In the absence of a conviction, an interested party could petition the court to find a person would be held criminally liable.  A.R.S. § 14-2803(F).  It appears that the petitioners have filed such a petition in Arizona in May 2023 in relation to the disposition of assets belonging to the estate of Bianca Rudolph in existence prior to her murder.  Although this may yield relief for the

Second, petitioners are not the decedent's estate.[13]  They have not filed their Petition as the decedent's estate, but only as the children of the deceased.  This is not without import.  If it is a decedent's estate that has the right to a constructive trust under Subsection K, any assets pulled back from defendant Rudolph as the constructive trustee would be held on behalf of the decedent's estate, which could provide for the eventual disposition of these assets to other heirs and creditors that are not the petitioners.

Third, there is no evidence before the Court that the decedent's estate has filed a petition before an Arizona court for the imposition of a constructive trust over the insurance proceeds and property traceable to those proceeds that are subject to forfeiture in this case.

In light of the foregoing, petitioners are not beneficiaries of a constructive trust under the Arizona slayer statute, and, therefore, do not have a legal interest in the assets subject to forfeiture under this theory.

## **CONCLUSION**

The Court should dismiss the Petition (Docket # 367) as the petitioners lack standing and the Petition fails to state a claim; therefore, no ancillary hearing regarding this petition is necessary.

---

petitioners under other subsections of the statute, such as revocation of an inheritance, it is insufficient for the imposition of a statutory constructive trust under subsection K.

[13] Petitioners may argue that insurance proceeds are a non-probate asset that should not go to the estate and should be remitted to the contingent beneficiaries or as otherwise provided by the terms of the policy.  However, this would only further support the Government's argument that they are not entitled to a constructive trust under the provisions of the Arizona slayer statute.

DATED this 28th day of July 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney


*s/**Kurt J. Bohn**_____*
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov

***s/Tonya Andrews_____***
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: tonya.andrews@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.


*s/ Charisha Cruz*
Charisha Cruz
Paralegal Specialist

## __ADDENDUM__

### THIRD-PARTY PETITION PROCEDURES UNDER 21 U.S.C. § 853(n)

The process for third parties to assert an interest in property that has been ordered forfeited to the United States is provided for in 21 U.S.C. § 853(n). After an order of forfeiture has been entered by the court, the United States must publish notice of the order and provide direct written notice of the order to persons with a known interest in the assets that are to be forfeited to the United States. 21 U.S.C. § 853(n)(1). Any person, other than the defendant, who wants to assert an interest in the property ordered to be forfeited to the United States must file a petition to the court within 30 days of the final publication of notice, or receipt of written notice, whichever is earlier. 21 U.S.C. § 853(n)(2).

The petition itself must be signed by the petitioner(s) under penalty of perjury and must set forth the following:

    a. the nature and extend of the petitioner's right, title, or interest in the property;
    b. the time and circumstances the petitioner acquired the right, title, or interest in the property;
    c. facts supporting their claim; and
    d. the relief they seek.

21 U.S.C. § 853(n)(3).

Within 30 days of the filing of a petition, or consistent with the interests of justice, a hearing on the petition should be held, although the court may consolidate that hearing with any other petitions that may be filed. 21 U.S.C. § 853(n)(4). During any such hearing, the court may take additional evidence and consider any relevant portion of the record of the criminal case that resulted in the order of forfeiture. 21 U.S.C. § 853(n)(5). The burden of proof at any third-party hearing is on the petitioner to prove their claim by a preponderance of the evidence. 21 U.S.C. § 853(n)(6).