**Attachment B**

Clerk of the Superior Court
*** Electronically Filed ***
T. Formosa, Deputy
5/2/2023 11:51:14 AM
Filing ID 15919609

DORSEY & WHITNEY LLP
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone:  (602) 735-2702
Facsimile:  (602) 508-6099

Isaac M. Gabriel (#021780)
gabriel.isaac@dorsey.com
Alissa Brice Castañeda (#027949)
castaneda.alissa@dorsey.com
Hannah-Kaye Fleming (#037369)
fleming.hannah-kaye@dorsey.com

*Attorneys for Plaintiffs*

## SUPERIOR COURT OF THE STATE OF ARIZONA

## COUNTY OF MARICOPA

| | |
|---|---|
| ANABIANCA RUDOLPH, an individual; and JULIAN L. RUDOLPH, in his individual capacity and as Trustee of the CREDIT BYPASS TRUST UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016,<br><br>Plaintiffs,<br><br>v.<br><br>LAWRENCE P. RUDOLPH, an individual; the LAWRENCE P. RUDOLPH AND BIANCA T. RUDOLPH TRUST DATED APRIL 25, 2016; and the LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016,<br><br>Defendants. | NO. CASENUMBER **CV2023-006718**<br><br>**COMPLAINT**<br><br>(Declaratory Judgment; Fraud; Negligent Misrepresentation; Conversion; Unjust Enrichment; Common Law Constructive Trust) |

4870-8185-0208\2

The Plaintiffs AnaBianca Rudolph, Julian L. Rudolph, in his individual capacity and as Trustee of the *Credit Bypass Trust Under the Rudolph Trust dated April 25, 2016* (collectively, the "Plaintiffs") hereby complain and allege as follows:

## PARTIES AND JURISDICTION

1.  Decedent, Bianca T. Rudolph ("Mrs. Rudolph"), was the mother of Plaintiffs, Julian L. Rudolph and AnaBianca Rudolph, and the wife of Defendant, Lawrence P. Rudolph. She was at all pertinent times a resident and domiciliary of Maricopa County, Arizona.

2.  Plaintiff AnaBianca Rudolph, is an individual residing in Pennsylvania.

3.  Plaintiff Julian L. Rudolph, is an individual residing in Miami, Florida.

4.  Plaintiff, Julian L. Rudolph, in his capacity as Trustee for the *Credit Bypass Trust under the Rudolph Trust dated April 25, 2016* (the "Credit Bypass Trust"). The Credit Bypass Trust is a valid trust established under the laws of Arizona.

5.  Defendant *Lawrence P. Rudolph and Bianca T. Rudolph Trust dated April 25, 2016*, and any amendments thereto, is a valid trust established under the laws of Arizona.

6.  Defendant *Lawrence P. Rudolph Survivor's Trust Created Under the Rudolph Trust Dated April 25, 2016*, as previously amended and restated, is a valid trust established under the laws of Arizona upon the death of Bianca Rudolph on October 11, 2016.

7.  Defendant Lawrence P. Rudolph ("Dr. Rudolph"), is an individual who, at all times relevant to this Complaint, resided in Maricopa County, Arizona.

8.  The Court has subject matter jurisdiction over this case pursuant to Article VI, Section 14 of the Arizona Constitution, and A.R.S. § 12-123.

9.  Venue in Maricopa County is proper pursuant to A.R.S. § 12-401.

## GENERAL ALLEGATIONS

**A.    Lawrence Rudolph and Mrs. Rudolph's Marriage; Mrs. Rudolph's Death**

10.  Dr. Rudolph and Mrs. Rudolph were married in 1982. They are the parents of two children born of the marriage: Plaintiffs AnaBianca Rudolph ("AnaBianca"), born June 9, 1986,

4870-8185-0208\2

and Julian L. Rudolph ("Julian"), born June 5, 1990.

11.    On October 11, 2016, Mrs. Rudolph died while on a hunting trip/safari overseas in Zambia.

12.    The only person present at the time of Mrs. Rudolph's death was Dr. Rudolph.

13.    For over five years, Dr. Rudolph represented and maintained that Mrs. Rudolph accidentally shot herself while handling a loaded gun.

14.    On December 23, 2021, the Federal Bureau of Investigation arrested Dr. Rudolph for the suspected murder of Mrs. Rudolph pursuant to a federal criminal complaint.

15.    The government alleged that Dr. Rudolph intentionally and feloniously killed Mrs. Rudolph.

16.    Thereafter, a federal grand jury returned an indictment and superseding indictment against Dr. Rudolph on January 5, 2022 and February 9, 2022, respectively, in the United States District Court for the District of Colorado, Case Number 22-CR-12 (the "Criminal Case").

17.    On August 1, 2022, following a jury trial in the Criminal Case, Dr. Rudolph was found guilty of the first degree overseas murder of Mrs. Rudolph and wire (insurance) fraud relating to his submission of insurance claims, and payment thereof, on policies in Mrs. Rudolph's name following her death.  A true and correct copy of the Verdict Form dated August 1, 2022 is attached hereto as **Exhibit A**.

**B.    Dr. Rudolph and Mrs. Rudolph's Assets at the Time of her Death.**

18.    Approximately six months before Mrs. Rudolph's death, Dr. Rudolph and Mrs. Rudolph established a revocable living trust, known as the *Rudolph Trust, dated April 25, 2016*, (the "Rudolph Family Trust") to hold all of their assets.  A true and correct copy of the Trustee's Certification for the Rudolph Family Trust and the Survivor's Trust (defined below) is attached hereto as **Exhibit B**.

19.    Dr. Rudolph and Mrs. Rudolph resided in Arizona at the time the Rudolph Family Trust was established.

20.    Upon information and belief, Dr. Rudolph and Mrs. Rudolph contemporaneously

3

created a record of their community assets, estimated to be worth $13,900,000.00 (the "Property"), at or around the time they established the Rudolph Family Trust.  A true and correct record of the Property and the estimated value is attached hereto as **Exhibit C**.

21.     Accordingly, Mrs. Rudolph's share of the Property at the time of her death was approximately $6,950,000.00.

22.     Between April 25, 2016 and October 11, 2016, the Rudolphs' assets did not materially change.

23.     Section 6.01 of Article 6 of the Rudolph Family Trust provided that a "Survivor's Trust" would be established for the benefit of the surviving spouse and funded with the assets of the deceased spouse.  Upon the death of the surviving spouse, the assets in the Rudolph Family Trust and the Survivor's Trust would inure to Dr. Rudolph's and Mrs. Rudolph's children, Plaintiffs Julian and AnaBianca.

24.     Accordingly, because the circumstances of her death were not known at the time, upon Mrs. Rudolph's death, Mrs. Rudolph's share of the Property (i.e., $6,900,000.00) was reallocated to the *Lawrence P. Rudolph Survivor's Trust created under the Rudolph Trust dated April 25, 2015*, as amended and restated (the "Survivor's Trust").

25.      Dr. Rudolph is the primary beneficiary under the Survivor's Trust.  Julian and AnaBianca were the secondary beneficiaries under the Survivor's Trust.

**C.     Dr. Rudolph Wrongfully Acquired Mrs. Rudolph's Estate.**

26.     Pursuant to A.R.S. § 14-2803(A)-(E) (among other subsections thereof), Arizona's Slayer Statute (the "Slayer Statute"), Dr. Rudolph, as the convicted killer of Mrs. Rudolph, forfeited his right to inherit or acquire property, assets or benefits from Mrs. Rudolph as a result of her death.

27.     Under the Slayer Statute, Dr. Rudolph, as the convicted killer of Mrs. Rudolph, caused the revocation of: (i) any "disposition or appointment of property made by [Mrs. Rudolph] to [Dr. Rudolph] in a governing instrument", and (ii) nomination of [Dr. Rudolph] in a governing instrument, nominating or appointing [Dr. Rudolph] to serve in any fiduciary or representative

4

capacity, including a personal representative, executor, trustee or agent."

28.    Under the Slayer Statute, the interests of Mrs. Rudolph and Dr. Rudolph "in property held by them at the time of the killing as joint tenants with the right of survivorship or as community property with the right of survivorship" is also severed upon death, "transforming the interests of the decedent and killer into tenancies in common."

29.    Under the Slayer Statute, the "provisions of a governing instrument are given effect as if [Dr. Rudolph] disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent."

30.    Because of the provisions of the Slayer Statute, Dr. Rudolph was not entitled to inherit, by way of trust or otherwise, Mrs. Rudolph's share of the Property.  Dr. Rudolph also was not entitled to serve in any fiduciary or representative capacity, including a personal representative, executor, trustee or agent of Mrs. Rudolph.

31.    Accordingly, Mrs. Rudolph's share of the Property should have passed upon her death to Plaintiffs AnaBianca and Julian to be placed in the Credit Bypass Trust had it been known that Dr. Rudolph was responsible for the death of Mrs. Rudolph.

32.    Upon Mrs. Rudolph's death, Dr. Rudolph wrongfully took possession and control of Mrs. Rudolph's estate, including her share of the Property (i.e., $6.9 million).

33.    Dr. Rudolph wrongfully acted as the Trustee of the Survivor's Trust.

34.    Dr. Rudolph concealed from Plaintiffs that he was the killer of Mrs. Rudolph.

35.    Dr. Rudolph intended to benefit from the death of Mrs. Rudolph and the concealment of the true facts surrounding her death by taking possession of Mrs. Rudolph's estate assets.

36.    Plaintiffs did not discover that Dr. Rudolph concealed the foregoing facts from Plaintiffs until the completion of his trial in July, 2022.

37.    By virtue of Dr. Rudolph's wrongful and concealed acts, Plaintiffs were deprived of at least $6,900,000.00, plus any appreciation or benefits derived therefrom.

4870-8185-0208\2

## COUNT I

### (Declaratory Judgment)

38.    Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count I.

39.    An actual and justiciable controversy exists between the parties as to the disposition of Mrs. Rudolph's share of the Property upon her death.

40.    Based on Dr. Rudolph's criminal conviction, Plaintiffs are entitled to declaratory relief determining that Dr. Rudolph caused the death of Bianca Rudolph by felonious and intentional killing pursuant to Arizona's Slayer Statute.

41.    Based on a preponderance of the evidence, Plaintiffs are entitled to declaratory relief determining that Dr. Rudolph caused the death of Bianca Rudolph by felonious and intentional killing pursuant to A.R.S. § 14-2803(F).

42.    Plaintiffs are entitled to declaratory relief determining that pursuant to A.R.S. § 14-2803, Dr. Rudolph, as Mrs.  Rudolph's killer, forfeited his right to acquire any property or benefits, including the $6,900,000.00 as a result of Mrs. Rfudolph's death.

43.    Plaintiffs are entitled to declaratory relief determining that Plaintiffs are/were the rightful owners of Mrs. Rudolph's estate effective immediately as of the time of her death pursuant to A.R.S. § 14-2803.

44.    Plaintiffs are entitled to declaratory relief determining that any transfers from the Defendants to the Plaintiffs of Mrs. Rudolph's share of the Property, or the money equivalent thereof, are legal, for fair consideration, and are not for an improper or fraudulent purpose.

**WHEREFORE**, Plaintiffs respectfully request that a declaratory judgment be entered in their favor and against Defendants as follows:

A.    Declaring that Dr. Rudolph is Mrs. Rudolph's "killer" pursuant to A.R.S. § 14-2803;

B.    Declaring that Dr. Rudolph forfeited his right and/or interest in Mrs. Rudolph's share of the Property under Arizona law;

C.    Declaring that Mrs. Rudolph's share of the Property never should have passed to

6

the Survivor's Trust administered by Dr. Rudolph;

D.      Declaring that Dr. Rudolph was barred from administering Mrs. Rudolph's share of the Property under Arizona law and wrongfully took possession and control of Mrs. Rudolph's share of the Property;

E.      Declaring that the Credit Bypass Trust was entitled to Mrs. Rudolph's share of the Property, in the amount of $6,900,000.00, immediately upon her death, with Julian and AnaBianca as the beneficiaries thereof;

F.      Declaring that the Credit Bypass Trust is entitled to $6,900,000.00 constituting Mrs. Rudolph's share of the Property, plus any appreciation, benefits, and/or proceeds from Mrs. Rudolph's share of the Property since the date of her death;

G.      Declaring that all assets remaining in the Survivor's Trust shall be properly transferred to the Credit Bypass Trust, where they should have been transferred upon Mrs. Rudolph's death;

H.      Determining that any transfers from the Defendants to the Plaintiffs of Mrs. Rudolph's share of the Property, or the money equivalent thereof, are legal, for fair consideration, and are not for an improper or fraudulent purpose; and

I.      For such other and further relief as this Court deems just and proper.

## COUNT II

### (Fraud/Fraudulent Concealment)

45.     Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count II.

46.     Dr. Rudolph misrepresented the circumstances of Mrs. Rudolph's death to Plaintiffs.

47.     Dr. Rudolph concealed the true cause of Mrs. Rudolph's death from Plaintiffs.

48.     Dr. Rudolph made these misrepresentations/omissions in order to acquire Mrs. Rudolph's share of the Property, among other benefits.

49.     Dr. Rudolph knew the representations were false and that he was

7

concealing/omitting the true circumstances of Mrs. Rudolph's death.

50.    Dr. Rudolph intended that Plaintiffs rely on his false representations/narrative to their financial detriment.

51.    Plaintiffs Julian and AnaBianca were ignorant of the false nature of Dr. Rudolph's representations and justifiably replied upon Dr. Rudolph's false representations to their detriment.

52.    As a result of Dr. Rudolph's fraudulent representations and/or omissions, Plaintiffs have been damaged in an amount no less than $6,900,000.00, which was Mrs. Rudolph's share of the Property at the time of her death.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants on Count II, jointly and severally, as follows:

A.    For damages in an amount no less than $6,900,000.00, plus any pre-judgment and post-judgment interest at the highest rate under applicable law;

B.    Disgorgement of $6,900,000.00 of Defendants' assets, plus any appreciation, benefits, and/or profits or proceeds derived therefrom;

C.    For specific performance, requiring the Survivor's Trust to transfer all trust assets held therein, in the amount of at least $6,900,000.00, to the Credit Bypass Trust;

D.    For a constructive trust over $6,900,000.00 of assets transferred from Mrs. Rudolph's share of the Property to the Defendants, plus any appreciation, benefits, and/or profits or proceeds derived therefrom;

E.    For all of Plaintiffs' costs; and

F.    For such other and further relief as this Court deems just and proper.

## COUNT III

### (Negligent Misrepresentation)

53.    Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count III.

54.    Upon information and belief, Dr. Rudolph continuously misrepresented the cause of Mrs. Rudolph's death, maintaining that her death was the result of an accident.

55.    Upon information and belief, Dr. Rudolph intended that Julian and AnaBianca rely on his misrepresentations so he could financially benefit from Mrs. Rudolph's death by, *inter alia*, acquiring her share of the Property and specifically made such false representations for that purpose.

56.    Dr. Rudolph failed to exercise reasonable care and competence in communicating the events surrounding Mrs. Rudolph's death.

57.    Plaintiffs justifiably relied on Dr. Rudolph's misrepresentations/narrative to their detriment.

58.    As a result, Plaintiffs have suffered damages in an amount to be proven at trial, but no less than Mrs. Rudolph's share of the Property at the time of her death in the amount of $6.9 million, plus an appreciation thereof.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants on Count III, jointly and severally, as follows:

A.    For damages in an amount no less than $6,900,000.00, plus any pre-judgment and post-judgment interest at the highest rate under applicable law;

B.    Disgorgement of $6,900,000.00 of Defendants' assets, plus any appreciation, benefits, and/or profits or proceeds derived therefrom;

C.    For all of Plaintiffs' costs; and

D.    For such other and further relief as this Court deems just and proper.

## COUNT IV

### (Conversion)

59.    Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count IV.

60.    As a result of Dr. Rudolph felonious and intentional acts against Mrs. Rudolph, Plaintiffs have a specific and identifiable interest in Mrs. Rudolph's share of the Property.

61.    Dr. Rudolph knew or should have known that, as the killer of Mrs. Rudolph, he would not be entitled to Mrs. Rudolph's share of the Property under Arizona law.

62. Dr. Rudolph wrongfully obtained and misappropriated Mrs. Rudolph's share of the Property for his own use and/or financial benefit.

63. Dr. Rudolph knew that Plaintiffs Julian and AnaBianca had a right to receive Mrs. Rudolph's estate as her children under Arizona law.

64. Dr. Rudolph knowingly and intentionally took possession of Mrs. Rudolph's share of the Property in the amount of $6,900,000.00 in complete derogation of Plaintiffs' known rights and interests.

65. As a direct and proximate result of Dr. Rudolph's actions, Plaintiffs have suffered damages in an amount no less than the value of Mrs. Rudolph's share of the Property at the time of her death, plus any appreciation thereof.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants on Count IV, jointly and severally, as follows:

A. For damages in an amount no less than $6,900,000.000, plus all prejudgment and postjudgment interest at the highest rate permitted under applicable law;

B. Disgorgement of $6,900,000.00 of Defendants' assets, plus any appreciation, benefits, and/or profits or proceeds derived therefrom;

C. For all of Plaintiffs' costs; and

D. For such other and further relief as this Court deems just and proper.

## COUNT V

### (Unjust Enrichment)

66. Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count V.

67. Upon Mrs. Rudolph's death, Dr. Rudolph wrongfully took possession and control of Mrs. Rudolph's share of the Property in violation of Arizona's Slayer Statute and Plaintiffs' known rights.

68. Dr. Rudolph was barred by law from receiving any property or benefits from Mrs. Rudolph as a result of her death.

10

69.     Mrs. Rudolph's share of the Property should have passed to the Credit Bypass Trust, with Julian and AnaBianca as beneficiaries, upon her death.

70.     By virtue of Dr. Rudolph's concealed and fraudulent acts, Dr. Rudolph was unjustly enriched in an amount no less than $6,900,000.00 at the expense of Plaintiffs, plus appreciation and interest accruing on such amount.

71.     There is no justification for the enrichment of Dr. Rudolph.

72.     Accordingly, the Court should exercise its equitable powers in order to prevent and correct Dr. Rudolph's unjust enrichment.

**WHEREFORE**, Plaintiff respectfully request that the Court enter the following relief for Plaintiffs and against Defendants on Count V, jointly and severally, as follows:

A.     Restitution in an amount no less than $6,900,000.00, plus prejudgment and postjudgment interest at the highest rate permitted by applicable law;

B.     Disgorgement of $6,900,000.00 of Defendants' assets, plus any appreciation, benefits, and/or profits or proceeds derived therefrom;

C.     For all of Plaintiffs' costs; and

D.     For such other and further relief as this Court deems just and proper.

## COUNT VI

### (Common Law Constructive Trust)

73.     Plaintiffs allege all of the foregoing paragraphs and incorporate them as if fully set forth in this Count VI.

74.     Dr. Rudolph and/or the Survivor's Trust wrongfully acquired Mrs. Rudolph's share of the Property in violation of Arizona's Slayer Statute.

75.     Plaintiffs were the proper recipients of Mrs. Rudolph's estate upon her death.

76.     Dr. Rudolph was unjustly enriched at Plaintiffs' expense.

77.     Dr. Rudolph's conduct was fraudulent, willful, intentional and in violation of the law.

78.     Accordingly, equity requires a constructive trust over Mrs. Rudolph's share of the

4870-8185-0208\2

Property effective as of the time of her death for the benefit of Plaintiffs, including the proceeds of such Property or any property purchased with such proceeds.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter the following relief in favor of Plaintiffs and against Defendants on Count VI as follows:

A.      Imposing a constructive trust in favor of Plaintiffs, determining Plaintiffs as owners effective as of October 11, 2016, over Mrs. Rudolph's share of the Property that were transferred to Dr. Rudolph and/or the Survivor's Trust in an amount no less than $6,900,000.00, regardless of whether such property has been transformed into a different character;

B.      For specific performance, requiring the Survivor's Trust to transfer trust assets in the amount of $6,900,000.00 to the Credit Bypass Trust; and

C.      For such other and further relief as this Court deems just and proper.

DATED this 2nd day of May, 2023.

Dorsey & Whitney LLP
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016


By */s/ Isaac M. Gabriel*

Isaac M. Gabriel
Alissa Brice Castañeda
Hannah-Kaye Fleming
*Attorneys for Plaintiffs*


ORIGINAL of the foregoing electronically filed
this 2nd day of May, 2023.

COPY of the foregoing mailed/e-mailed
this 2nd day of May, 2023, to:

*/s/ Jasmin Sing*

4870-8185-0208\2

# **<u>Exhibit A</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

     Defendants.

---

## VERDICT FORM

---

     Please do not write anything on this form except to check a response and to sign and date the form.

## COUNT 1

     We, the jury, upon our oaths, do unanimously find the defendant, LAWRENCE RUDOLPH, in Count One of the Superseding Indictment charging foreign murder:

       _____    Not Guilty

       ✓    Guilty

## COUNT 2

     We, the jury, upon our oaths, do unanimously find the defendant, LAWRENCE RUDOLPH, in Count Two of the Superseding Indictment charging mail fraud:

       _____    Not Guilty

       ✓    Guilty

## COUNT 3

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Three of the Superseding Indictment charging accessory-after-the-

fact to the foreign murder charged in Count One:

    _____        Not Guilty

    ___✓___        Guilty

## COUNT 4

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Four of the Superseding Indictment charging obstruction of a grand

jury proceeding:

    _____        Not Guilty

    ___✓___        Guilty

## COUNT 5

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Five of the Superseding Indictment charging perjury before a grand

jury:

    ___✓___        Not Guilty

    _____        Guilty

## COUNT 6

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Six of the Superseding Indictment charging perjury before a grand

jury:

_____      Not Guilty

✓      Guilty

## COUNT 7

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Seven of the Superseding Indictment charging perjury before a

grand jury:

✓      Not Guilty

_____      Guilty

## COUNT 8

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Eight of the Superseding Indictment charging perjury before a

grand jury:

✓      Not Guilty

_____      Guilty

## COUNT 9

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Nine of the Indictment charging perjury before a grand jury:

_____      Not Guilty

✓      Guilty

__0/1/2022____
**DATE**

# **Exhibit B**

<u>**TRUSTEE'S CERTIFICATION**</u>
**FOR THE RUDOLPH TRUST DATED APRIL 25, 2016 AND THE**
<u>**LAWRENCE P. RUDOLPH SURVIVOR'S TRUST DATED APRIL 25, 2016,**</u>
<u>**AS AMENDED AND RESTATED ON JUNE 15, 2021**</u>

The undersigned, Julian L. Rudolph, being legal age, under penalty of perjury, hereby state as follows:

1.     On April 25, 2016, Lawrence P. Rudolph and Bianca T. Rudolph as Trustors and Trustees established a revocable trust, known as the "Rudolph Trust, dated April 25, 2016."

2.     Trustor, Bianca T. Rudolph died on October 11, 2016, and Lawrence P. Rudolph was the surviving Trustor and Trustee.

3.     Pursuant to ARS §14-2803 (B) (1) (c) Lawrence P. Rudolph is now disqualified to serve as successor Trustee.

4.     On December 19, 2022, Lawrence P. Rudolph signed a Resignation of Trustee of the Rudolph Trust, dated April 25, 2016 and the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, attached hereto as <u>Exhibit A</u>.

5.     Pursuant to Article Three, Section 3.03 of the Rudolph Trust, dated April 25, 2016, Julian L. Rudolph is designated as the successor Trustee of the Rudolph Trust, dated April 25, 2016.

6.     Pursuant to Article 2, Section 2.01 of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, Julian L. Rudolph is designated as the successor Trustee of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021.

7.     Attached as <u>Exhibit B</u> are the true and correct copies of the certain pages of the Rudolph Trust dated April 25, 2016, which include the Declaration of Trust, Designation of Trustee, Revocation and Amendment Provision, Trust Protector, Trustees Powers and Executed Page.

8.     Attached as <u>Exhibit C</u> are the true and correct copies of the certain pages of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, which include the Declaration of Trust, Designation of Trustee, Revocation and Amendment Provision, Trust Protector, Trustees Powers and Executed Page.

9.     Any Trust property shall be titled in the name of the *"Julian L. Rudolph as successor Trustee of the Rudolph Trust dated April 25, 2016."*

10.    The tax identification number for the Rudolph Trust is 88-6721622.

DATED this **13TH** day of JANUARY, 20**23**.

_____
Julian L. Rudolph

STATE OF FLORIDA    )
                    ) ss.
County of Miami-Dade )

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me by Julian Rudolph, this 13 day of January, 20 23.

[Notary Seal]

_____
Notary Public

YARIZ PARRALES
Notary Public - State of Florida
Commission # HH 295796
My Comm. Expires Aug 1, 2026
Bonded through National Notary Assn.

**Exhibit A**

**Resignation of Lawrence P. Rudolph**

### RESIGNATION OF TRUSTEE

LAWRENCE P. RUDOLPH, hereby resigns as Trustee of the (i) LAWRENCE P.

RUDOLPH SURVIVOR'S TRUST dated April 25 2016, and as AMENDED AND

RESTATED on June 15, 2021 established by Lawrence P. Rudolph, as Trustor and (ii)

Rudolph Trust, dated April 25, 2016 established by Lawrence P. Rudolph and Blanca T.

Rudolph, as Trustors.

Dated this _19 TH_ day of December, 2022.

_____
LAWRENCE P. RUDOLPH, Trustee

Witnessed this date by John Castellano

By _____

9403823v1/23140-0008

**Exhibit B**

**Pages of Trust the Rudolph Trust, dated April 25, 2016**

# The Rudolph Trust

## Article One
## Establishing Our Trust

The date of this trust is April 25, 2016. The parties to this trust are Lawrence P. Rudolph and Bianca T. Rudolph (the *Trustmakers*) and Lawrence P. Rudolph and Bianca T. Rudolph (collectively, our *Trustee*).

We intend to create a valid trust under the laws of Arizona and under the laws of any state in which any trust created under this trust document is administered. The terms of this trust prevail over any provision of Arizona law, except those provisions that are mandatory and may not be waived.

### Section 1.01    Identifying Our Trust

For convenience, our trust may be referred to as:

"The Rudolph Trust dated April 25, 2016."

To the extent practicable, for the purpose of transferring property to our trust or identifying our trust in any beneficiary or pay-on-death designation, our trust should be identified as:

"Lawrence P. Rudolph and Bianca T. Rudolph, Trustees of the Rudolph Trust dated April 25, 2016, and any amendments thereto."

For all purposes concerning the identity of our trust or any property titled in or payable to our trust, any description referring to our trust will be effective if it reasonably identifies our trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02    Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of our Trustee or the powers held by our Trustee. To protect the confidentiality of this instrument, our Trustee may use an affidavit or a certification of trust that identifies our Trustee and sets forth the authority of our Trustee to transact business on behalf of our trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by our Trustee with respect to the representations contained in it. A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with our Trustee will not be required to inquire into this trust's terms or the authority of our Trustee, or to see to the application of funds or other property received by our Trustee. Our Trustee's receipt of any money or property paid, transferred,

or delivered to our Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by our Trustee is conclusive evidence of our Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by our Trustee asserting our Trustee's authority or seeking to effect a transfer of property to or from the trust.

## Section 1.03     Statement of Our Intent

We created this trust to facilitate the management of our assets during our lifetime, to provide a structured method of care management if we become incapacitated, and to establish the manner and time in which we want our assets to be distributed to our beneficiaries. We considered the respective maturity, financial acumen, understanding and use of life skills, needs, abilities, and relationships of our beneficiaries. It is our intention that our assets be used to fulfill the hopes, dreams, and aspirations of our family while preserving our assets from their creditors, their own potential or actual spendthrift habits, and estate, gift, and income taxes, to the full extent allowed by law while providing discretion that encourages and permits the worthwhile endeavors and accomplishments of our beneficiaries.

## Section 1.04     Transferring Property to Our Trust

Any person or entity may transfer any property to our trust in any manner authorized by law.

### (a)     Funding of Our Trust

By executing this instrument, we transfer, convey, and assign the property described in the attached schedules to our Trustee. We also transfer all our right, title, and interest in and to all of our property that may legally be held in trust and that may be transferred to our trust by this assignment. This assignment includes all of our real, personal, tangible, and intangible property located in the United States, whether separate property or community property, and whether acquired before or after the execution of this instrument, except for these assets that are expressly not transferred by this instrument:

> life insurance policies, unless the ownership of a policy is transferred to our trust by a separate instrument that specifically refers to the policy;
>
> corporate and self-employed (*Keogh*) pension, profit-sharing, and stock bonus plans;
>
> qualified retirement plans;
>
> commercial annuities;
>
> Section 1244 (small business) stock; and
>
> any property, the transfer of which would result in the immediate recognition of income subject to income or other

taxes, would result in the loss of a homestead exemption, or would violate a restriction on transfer agreement.

#### (b)    Acceptance by Our Trustee

By executing this instrument, our Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to our trust after the date of this trust must be acceptable to our Trustee. Our Trustee may refuse to accept any property. Our Trustee shall hold, administer, and dispose of all accepted trust property for our benefit and for the benefit of our beneficiaries, in accordance with the terms of this trust.

#### (c)    Community Property

Any community property transferred to our trust, including the property's income and the proceeds from the property's sale or exchange, will retain its character as community property during our lives, to the same extent as if it had not been transferred to our trust.

#### (d)    Separate Property

Separate property transferred to our trust will retain its character as separate property. Our separate property may be identified as the separate property of either of us on the attached schedules. The separate property of either of us, including the property's income and proceeds from the property's sale or exchange, will remain separate property. Each of us has the unrestricted right to remove all or any part of our separate property at any time.

An amount that is payable to our trust on a life insurance policy that is the separate property of either of us will retain its character as separate property.

#### (e)    Joint Property

If joint tenancy property with right of survivorship is transferred to our trust, we will be considered to have severed the joint tenancy immediately before transferring the property, and no right of survivorship will exist with respect to this property.

### Section 1.05    Powers Reserved by Us as Trustmakers

As Trustmakers, we retain the powers set forth in this Section in addition to any powers that we reserve in other provisions of this instrument.

#### (a)    Action on Behalf of Our Trust

Whenever both of us are serving as Trustee, either or both of us may act for and conduct business on behalf of our trust without the consent of any other Trustee.

Whenever one of us is alive but not serving as Trustee, and the other is serving as Trustee, the one who is serving as Trustee may act for and conduct business on behalf of our trust without the consent of any other Trustee.



After one of us dies, the ability of the survivor of us, when serving as Trustee, to conduct business on behalf of us without the consent of any other Trustee is subject to the terms and conditions of our trust.

**(b)    Amendment, Restatement, or Revocation**

Acting jointly, we may amend, restate, or revoke this instrument, in whole or in part, for any purpose. Acting jointly, we retain the absolute right to amend, restate, or revoke any term or provision of this trust in whole or in part. Each of us individually retains the right to revoke any term or provision of this trust in whole or in part as to each of our separate property.

Any amendment, restatement, or revocation must be made in writing and delivered to our then-serving Trustee.

**(c)    Addition or Removal of Trust Property**

Either of us may add property to our trust. Both of us, acting jointly may remove any property from our trust. Each of us, acting alone, may remove our own separate property from our trust. Community property removed from our trust will retain its character as community property.

**(d)    Control of Income and Principal Distributions**

We retain the right to control the distribution of income and principal from our trust. We may direct our Trustee to distribute as much of the net income and principal of the trust property as we consider advisable to us or to other persons or entities. Our Trustee may distribute the net income and principal to us or for our unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of our trust.

Unless otherwise directed, our Trustee shall distribute the net income from the community property to us at least quarterly and shall distribute the net income from a Trustmaker's separate property to that Trustmaker at least quarterly.

Our Trustee may also distribute principal of the community property for the unrestricted use of either or both of us and the principal of a Trustmaker's separate property for the unrestricted use and benefit of that Trustmaker, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of our trust.

**(e)    Approval of Investment Decisions**

We reserve the absolute right to review and change our Trustee's investment decisions as to the community property. Each of us reserves the absolute right to review and change our Trustee's investment decisions as to our respective separate property. But our Trustee is not required to seek our approval before making investment decisions.



Rudolph Trust
1-4

### Section 1.06     Grantor Trust Status

By reserving the broad rights and powers set forth in Section 1.05 of this Article, we intend
to qualify our trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677.
This means that, for federal income tax purposes, each of us will be treated as the owner
of one-half of all the community property held in our trust and as the owner of our
respective separate property as if we held the property individually.

During any period that our trust is a Grantor Trust, the Taxpayer Identification Number of
our trust will be either of our Social Security numbers, in accordance with Treasury
Regulation Section 301.6109-1(a)(2).

# Article Three
# Trustee Succession Provisions

### Section 3.01    Resignation of a Trustee

A Trustee may resign by giving written notice to either of us. If we are both incapacitated or deceased, a resigning Trustee shall give written notice to the trust's Income Beneficiaries and any other then-serving Trustee.

Upon the resignation of Ralph Finizio as Trustee, the resigning Trustee may appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 3.04, concurrent with the written notice described above. If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon incapacity or death will govern, and the next named successors to the resigning Trustee will serve in the order listed. Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02    Trustee Succession while Both of Us Are Alive

While we are both alive, this Section governs the removal and replacement of our Trustees.

#### (a)    Removal and Replacement by Both of Us

By joint agreement, we may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, either or both of us may serve as Trustee, we may appoint a Trustee to serve with either or both of us, or we may appoint a successor Trustee.

#### (b)    Removal and Replacement by One of Us

If one of us is incapacitated, the non-incapacitated Trustmaker may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, the non-incapacitated Trustmaker may serve as sole Trustee, appoint a Trustee to serve with the non-incapacitated Trustmaker, or appoint a successor Trustee.

#### (c)    Successor Trustee during Incapacity of a Trustmaker

During the incapacity of a Trustmaker, the other Trustmaker may serve as sole Trustee.

If the other Trustmaker is unable or unwilling to serve for any reason, then we name the following to serve as successor Trustee in this order:

Julian L. Rudolph;

AnaBianca Rudolph; then

Ralph Finizio.

**(d)    Removal of Trustee during Incapacity of Both of Us**

During any time both of us are incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

**(e)    Designation Default**

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act during any time that one of us is incapacitated, the other Trustmaker may appoint a successor Trustee.

If the other Trustmaker is unable or unwilling to appoint a successor Trustee, our Trust Protector may appoint an individual or a corporate fiduciary to serve as successor Trustee.

If our Trust Protector is unable or unwilling to appoint a successor Trustee, the person appointed conservator may appoint a successor Trustee.

The Legal Representative of either of us may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petitioned court acquires jurisdiction over the trust only to the extent necessary to make the appointment. The trust is not subject to the court's continuing jurisdiction.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee under Section 3.01.

All appointments, removals, and revocations must be by signed written instrument.

**Section 3.03    Trustee Succession after the Death of Either or Both of Us**

After the death of either or both of us, this Section governs the removal and replacement of our Trustees.

**(a)    Upon the Death of a Trustmaker**

Upon the death of a Trustmaker, the other Trustmaker may serve as sole Trustee of all trusts created under this instrument.

If the other Trustmaker is unable or unwilling to serve for any reason, we name the following to serve as successor Trustee in this order:

> Julian L. Rudolph;

> AnaBianca Rudolph; then

> Ralph Finizio.

**(b)    Trustees of the Separate Trusts**

The Primary Beneficiary of a separate trust created under this instrument, upon attaining 25 years of age, may appoint himself or herself as a Co-

Trustee of his or her separate trust and may serve as the sole Trustee of the trust and may name any one or more individual or corporate fiduciaries to serve as current or successor Trustee or Co-Trustee.

If the interest of a beneficiary will be merged into a life estate or an estate for years because the beneficiary is serving as sole Trustee, the beneficiary must appoint a Co-Trustee to avoid this merger. Similarly, if the interest of a beneficiary becomes or is likely to become subject to the claims of any creditor or to legal process as a result of serving as sole Trustee, the beneficiary must appoint an Independent Trustee to serve as Co-Trustee.

Notwithstanding the previous provisions, the Primary Beneficiary of any trust administered as a Supplemental Needs Trust under this instrument may never appoint himself or herself as a Co-Trustee of his or her separate trust, and may not serve as the sole Trustee of his or her separate trust.

(c)    **Appointment of Successor Trustees by the Surviving Trustmaker**

After the death of one of us, the surviving Trustmaker may appoint the current or successor Trustees for any trust created under this instrument. The surviving Trustmaker may amend or revoke this appointment. Except for the Trustee of the Survivor's Trust, any Trustee appointed by the surviving Trustmaker to a trust of which the surviving Trustmaker is a beneficiary must be an individual or corporate fiduciary that is not related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

(d)    **Removal of a Trustee**

After the death of one of us, the surviving Trustmaker may remove any Trustee, with or without cause. If the surviving Trustmaker is incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

A Trustee may be removed by the surviving Trustmaker only if the surviving Trustmaker appoints an individual or corporate fiduciary by the effective removal date and this appointee simultaneously commences service as Trustee. The Trustee appointed to serve as successor Trustee may not be related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

After the death of both of us, any beneficiary may remove a Trustee only for cause, and with approval from a court of competent jurisdiction. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment.

The right to remove a Trustee under this Subsection is not to be interpreted to grant the person holding that right any of the powers of that Trustee.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

Rudolph Trust
3-3

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

**(e)     Default of Designation**

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act, the surviving Trustmaker may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

If the surviving Trustmaker is unable or unwilling to name a successor Trustee or if both of us are deceased, our Trust Protector may appoint the successor Trustee.

If our Trust Protector is unable or unwilling to name a successor Trustee, the trust's Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days.  The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

## Section 3.04     Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed, along with any other then-serving Trustees.  The removal notice will become effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and any other then-serving Trustees.  The appointment will become effective at the time of acceptance by the successor Trustee.  A copy of the notice may be attached to this instrument.

## Section 3.05     Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee will serve only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee.  This Co-Trustee will not

become a successor Trustee upon the death, resignation, or incapacity of the appointing
Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee
may exercise all the powers of the appointing Trustee, the combined powers of this Co-
Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee
alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with
or without cause.

### Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust
company, or public charity that is qualified to act as a fiduciary under applicable federal or
state law and that is not related or subordinate to any beneficiary within the meaning of
Internal Revenue Code Section 672(c).

### Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign
as Trustee. For Trustees other than one of us, a written declaration of incapacity by the
Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee if made
in good faith will terminate the trusteeship. If the Trustee designated in the written
declaration objects in writing to termination of the trusteeship within 10 days of receiving
the declaration of incapacity, a written opinion of incapacity signed by a physician who
has examined the incapacitated Trustee must be obtained before the trusteeship will be
terminated. The Trustee objecting to termination of trusteeship must sign the necessary
medical releases needed to obtain the physician's written opinion, or the trusteeship will
be terminated without it.

### Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or
unable to act with respect to any trust property or any provision of this instrument, our
Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as
an Independent Special Trustee as to this property or with respect to this provision. The
Independent Special Trustee appointed may not be related or subordinate to any trust
beneficiary within the meaning of Internal Revenue Code Section 672(c). Our Trust
Protector may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust
unless expressly limited elsewhere in this instrument or by our Trust Protector in the
instrument appointing the Independent Special Trustee. An Independent Special Trustee
may resign at any time by delivering written notice of resignation to our Trust Protector.
Notice of resignation will be effective in accordance with the terms of the notice.

### Section 3.09    Rights of Successor Trustees

Each successor Trustee serving under this instrument, whether individual or corporate, will
have all of the title, rights, powers and privileges granted to our initial Trustees named
under this instrument. In addition, each successor Trustee will be subject to all of the

restrictions imposed on and to all discretionary and ministerial obligations and duties given
to the original Trustees.

# Article Four
## Trust Protector Provisions

### Section 4.01    Provisions for Trust Protector

The Trust Protector's purpose is to direct our Trustee in matters concerning the trust, and to assist in achieving our objectives as expressed by the other provisions of our estate plan if needed.

### Section 4.02    Designation of Trust Protector

Any Trust Protector authorized or required to act with respect to this instrument must be appointed by a court of competent jurisdiction on petition of a Trustee or beneficiary.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

For each power and authority granted to a Trust Protector in this instrument, unless the capacity is otherwise specifically stated, the Trust Protector's authority is conferred in a nonfiduciary capacity.

### Section 4.03    Removal of a Trust Protector

Any Trust Protector may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress.  The court removing a Trust Protector may appoint one or more successor Trust Protectors to immediately replace the removed Trust Protector.  The court acting to remove and replace a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Protector.

### Section 4.04    Resignation of a Trust Protector

A Trust Protector may resign by giving written notice to either of us.  If both of us are deceased, a Trust Protector may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by us or by the trust's Primary Beneficiary.  A resigning Trust Protector is not liable or responsible for the act of any successor Trust Protector.

### Section 4.05    Incapacity of a Trust Protector

If any individual Trust Protector becomes incapacitated, the incapacitated Trust Protector need not resign as Trust Protector.  Any then-serving Trust Protector or the immediately

Rudolph Trust
4-1

eligible successor Trust Protector may provide a written declaration that a Trust Protector is incapacitated.

The written declaration of the Trust Protector's incapacity will terminate the Trust Protector's service. If the Trust Protector designated in the written declaration objects in writing to termination of the Trust Protector's service within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trust Protector must be obtained before the Trust Protector's service will be terminated. The Trust Protector objecting to termination of the Trust Protector's service must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity, or the Trust Protector's service will be terminated without the physician's written opinion.

The provisions of Section 18.07(g) of this instrument govern the determination of a Trust Protector's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 18.07(g) governs the Trust Protector's obligations to submit to examination and provide necessary releases.

### Section 4.06    Authority of Successor Trust Protectors

Any successor Trust Protector has all the authority of any predecessor Trust Protector, but is not responsible for the predecessor's acts, omissions, or forbearances.

### Section 4.07    Trust Protector Standard of Conduct

The Trust Protector is not liable for any action, omission, or forbearance in the absence of an affirmative showing by clear and convincing evidence of bad faith by the Trust Protector to any of the beneficiaries.

### Section 4.08    Indemnification of Trust Protector

We recognize that some persons or institutions may be reluctant to serve as Trust Protector without indemnification by the trust for potential liability. Therefore, we direct that our Trustee may expend the trust assets to defend any claim brought against any Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the trust's value. If any claim brought against a Trust Protector is successful and the Trust Protector is shown to have acted in bad faith, our Trustee may seek reimbursement from that Trust Protector using any legal or equitable means available to the Trustee for the value of any trust assets used to defend the Trust Protector.

Any Trust Protector is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith. This must be done even if the cost of the Trust Protector's defense would exhaust the trust's value.

This Section applies to any currently serving Trust Protector and for claims brought against any former Trust Protector in connection with his or her acts, omissions, or forbearances in regard to the trust while serving as Trust Protector.

Rudolph Trust
4-2

### Section 4.09     Trust Protector Powers

Any Trust Protector named or appointed under the provisions of this instrument has the following powers and authorities.

#### (a)     Power to Amend or Modify the Instrument

The Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to:

alter the administrative and investment powers of any Trustee;

reflect tax or other legal changes that affect trust administration. We recognize that the gift, estate, generation-skipping transfer tax, and income tax provisions of the Internal Revenue Code and Treasury Regulations are subject to change. We grant our Trust Protector the authority to amend this trust instrument's terms in this manner as will, in our Trust Protector's sole and absolute discretion, eliminate or minimize the state and federal taxes payable by either of our estates and provide the maximum benefit to our beneficiaries as expressed in this instrument. This includes dividing trust property into separate shares or funds;

correct ambiguities, including scrivener errors, that might otherwise require court construction or reformation;

grant any trust beneficiary of any trust created under this instrument the unlimited and unrestricted testamentary general power to appoint all or any portion of the principal and undistributed income of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. As a condition for the beneficiary's exercise of this power, our Trust Protector may require that the beneficiary first obtain the consent of our Trust Protector. Any testamentary power of appointment granted by our Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by our Trust Protector throughout that beneficiary's lifetime. We suggest that our Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it appears that it may reduce overall taxes; and

add or modify terms of any trust created under this instrument so that the trust will protect the financial resources governed by this instrument and comply with the Trustmakers' intent that the trust assets not be considered income or resources for all entitlement benefits from any

government agency, such as Social Security Disability payments, Medicare, Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special-purpose benefits for which the beneficiary is eligible.

Our Trust Protector may not amend this instrument in any manner that would result in a reduction in the estate tax marital deduction under Internal Revenue Code Section 2056 or the estate tax charitable deduction under Section 2055, to which either of our estates would otherwise be entitled. Further, our Trust Protector may not amend this instrument in any manner that would limit or alter the rights of a beneficiary in any trust assets held by the trust before the amendment unless the purpose of the amendment is to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Notwithstanding any other provision of this instrument, the Trust Protector may not amend or modify any power or provision of the trust so as to expand the Trust Protector's amending powers or the Trust Protector's other existing powers, authorities, or discretions. But the previous provision does not prevent the Trust Protector from making amendments to correct scrivener's errors as to the Trust Protector's powers, authorities, and discretions, or to amend the trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trust Protector remain legally binding and valid under state and federal law or to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Any amendment made by the Trust Protector will be binding and conclusive on all persons interested in the trust, unless the amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector. The Trust Protector may not be liable for any consequences of amending or not amending the trust. Any amendment must be made in writing and signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the Primary Beneficiaries and Trustees of the amended trust.

**(b)     Power to Change the Governing Law and Situs of Administration.**

The Trust Protector may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 18.06 of this instrument.

**(c)     Power to Terminate a Trust**

The Trust Protector may terminate this trust or any trust created under this instrument at any time as more specifically set forth in Section 16.21 of this instrument.

**(d)    Power to Decant a Trust**

The Trust Protector may appoint the property subject to our Trustee's power
of distribution in trust for the benefit of one or more beneficiaries of any
trust created under this instrument under the terms established by the Trust
Protector, and as more specifically set forth in Section 16.03 of this
instrument.

**(e)    Power to Remove and Appoint Trustees**

The Trust Protector may remove any Trustee (other than a Trustmaker) of
any trust created under this instrument at any time, with or without cause.
If the office of Trustee of a trust is vacant and no successor Trustee is
effectively named, the Trust Protector may appoint an individual or a
corporate fiduciary to serve as Trustee. A Trust Protector may not appoint
any then-serving Trust Protector as a Trustee.

If the Trust Protector removes a Trustee, notice of removal must be made
in writing and delivered to our Trustee being removed and any other then-
serving Trustees. The removal of our Trustee will be effective in
accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or
remove and replace Trustees, the Trust Protector may veto any removal,
appointment, or both made by any beneficiary.

**(f)    Power to Refuse a Contribution in Whole or in Part**

Concurrent with our Trustee's acceptance of any contribution to the trust,
our Trustee must notify the Trust Protector in writing that a contribution has
been made, and must notify the donor that the Trust Protector may direct
our Trustee to refuse the contribution in whole or in part. The Trust
Protector may direct our Trustee to refuse or reject any contribution made
to the trust in whole or in part in the Trust Protector's sole and absolute
discretion. The Trust Protector must make the direction to refuse or reject
a contribution in writing. If the Trust Protector fails to act in writing within
10 days of the date on which the Trust Protector received written notice of
the contribution, the Trust Protector will be considered to have approved
the contribution *in toto*. If the Trust Protector directs our Trustee to refuse
the contribution, our Trustee must return any refused property to the donor
who contributed the property under the authority of this Subsection.

**(g)    Power to Compel, Approve, or Reject Trustee
         Accountings**

The Trust Protector may demand from time to time a written accounting
from our Trustee, but not more often than quarter-annually. If our Trustee
fails to account to the Trust Protector within 30 days of a written demand,
the Trust Protector may institute appropriate legal actions on behalf of our
beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Protector must either approve or reject any accountings provided by any Trustee within 60 days after the Trustee provides the accounting. Failure to act by the Trust Protector within the 60-day period will be treated as approval of the accounting by the Trust Protector. If the Trust Protector approves an accounting, the approval will be binding on all other parties to the fullest extent allowable under the law. If the Trust Protector rejects a Trustee's accounting, the Trust Protector must provide the Trustee with an explanation that adequately enables the Trustee to revise its accounting. The Trustee will then present the revised accounting to the Trust Protector for approval or further revision, as necessary.

### (h)  Power to Construe the Terms of This Instrument

The Trust Protector may settle any disputes concerning the interpretation of any provision contained in this instrument that arise as a result of any perceived ambiguity. In doing so, the role of the Trust Protector is to ensure that the instrument is construed in a manner consistent with our estate planning objectives.

### (i)  Executing Documents Denoting Authority

The Trust Protector may execute and deliver, and may direct any Trustee to execute and deliver, any documents necessary to carry out any power granted to the Trust Protector or our Trustee. All parties dealing with the Trust Protector and our Trustee may rely on statements and documents made by the Trust Protector and by any Trustee. No party is required to inquire into any statement or document's validity. If any conflict exists between assertions of authority made by the Trust Protector and our Trustee, assertions made by the Trust Protector will control, and any assertion made by our Trustee will be disregarded to the extent of the conflict.

## Section 4.10   Limitation on Trust Protector Powers

A Trust Protector may not exercise any power or discretion in favor of the Trust Protector, for the Trust Protector's benefit, or for the benefit of any person to whom the Trust Protector is related or subordinate within the meaning of Internal Revenue Code Section 672(c). Our intent is that nothing in this instrument be construed in any manner that would cause the Trust Protector to possess a general power of appointment within the meaning of Internal Revenue Code Sections 2041 and 2514. This provision, however, does not prohibit the Trust Protector or any related party from receiving reasonable fees for services rendered to the Trust.

If our Trust Protector exercises any one of the powers granted in Section 4.09(b), Section 4.09(c), or Section 4.09(d), the Trust Protector must direct that an amount of assets will be left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the reasonable claims, expenses and taxes that the Trustee may incur in defending any anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Protector under this agreement, the Trust Protector should make reasonable inquiry into any matter

or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

### Section 4.11    Trust Protector May Release Powers

Acting on behalf of itself and all successor Trust Protectors, a Trust Protector may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Protector at any time.

### Section 4.12    Trust Protector Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Protector before a Trustee can act and the Trust Protector does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Protector will be considered to have given consent or approval for the Trustee's proposed action.

### Section 4.13    Trust Protector Compensation

Any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

> the market rate for similar services in the jurisdiction in which the Trust Protector serves;

> the breadth and nature of the powers, authorities, and discretions granted to the Trust Protector;

> the amount of time the Trust Protector will likely devote to overseeing the trust and our Trustee; and

> the trust property's current value and the projected amount of appreciation.

The Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including reasonable travel expenses.

Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services, the Trust Protector is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Protector's ordinary compensation as Trust Protector.

### Section 4.14    Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Protector at all reasonable times.

### Section 4.15    Employment of Professionals

Any Trust Protector may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Protector's duties. The Trust

Protector may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Protector may reasonably compensate an individual or entity employed to assist or advise the Trust Protector, regardless of any other relationship existing between the individual or entity and the Trust Protector.

The Trust Protector may direct and our Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Protector deems advisable. The Trust Protector may direct payment of compensation to an individual or entity employed to assist or advise the Trust Protector without diminishing the compensation to which the Trust Protector is entitled under this instrument. A Trust Protector who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Protector may nonetheless receive the Trust Protector's share of the compensation paid to the entity.

# Article Seventeen
## Our Trustee's Powers

### Section 17.01    Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, our Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Arizona or any other jurisdiction whose law applies to this trust. The powers set forth in ARS 14-10815 and 14-10816 are specifically incorporated into this trust.

Our Trustee shall exercise the Trustee powers in the manner our Trustee determines to be in the beneficiaries' best interests. Our Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

Our Trustee may have duties and responsibilities in addition to those described in this trust. We encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if our Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 17.02    Execution of Documents by Our Trustee

Our Trustee may execute and deliver any written instruments that our Trustee considers necessary to carry out any powers granted in this trust.

### Section 17.03    Investment Powers in General

Our Trustee may invest in any type of investment that our Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

Without limiting our Trustee's investment authority in any way, we request that our Trustee exercise reasonable care and skill in selecting and retaining trust investments. We also request that our Trustee take into account the following factors in choosing investments:

  the potential return from the investment, both in income and appreciation;

  the potential income tax consequences of the investment;

  the investment's potential for volatility; and

  the role the investment will play in the trust's portfolio.

We request that our Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

Our Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.



Rudolph Trust
17-1

### Section 17.04    Banking Powers

Our Trustee may establish any type of bank account in any banking institutions that our Trustee chooses.  If our Trustee makes frequent disbursements from an account, the account does not need to be interest bearing.  Our Trustee may authorize withdrawals from an account in any manner.

Our Trustee may open accounts in the name of our Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust.  When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

### Section 17.05    Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, our Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to our Trustee in this trust.

#### (a)    No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, our Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, we, our descendants, and the spouses of our descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property.  We specifically authorize our Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability.  We waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

We recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, we authorize our Trustee to acquire or retain any noncontrolling business interests.

#### (b)    Specific Management Powers

Our Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection.  Our Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

Our Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), our Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

Our Trustee may enter into management trusts and nominee trusts in which our Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

Our Trustee, individually, or if our Trustee is a corporate fiduciary, then an employee of our Trustee, may act as a director, general or limited partner, associate, or officer of the business.

Our Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. Our Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

Our Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. Our Trustee may subject the trust's principal and income to the risks of the business for any term or period, as our Trustee determines.

For any business in which the trust has an interest, our Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. Our Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

Our Trustee may select and vote for directors, partners, associates, and officers of the business. Our Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

Our Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

Our Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

Our Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. Our Trustee may sell or liquidate the business or business interest on terms our Trustee deems advisable and in the best interests of the trust and the beneficiaries. Our Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. Our Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

Our Trustee may exercise all of the business powers granted in this trust even though our Trustee may be personally invested in or otherwise involved with the business.

**(c)      Business Liabilities**

If any tort or contract liability arises in connection with the business, and if the trust is liable, our Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by our Trustee.

**(d)      Trustee Compensation**

In addition to the compensation set forth in Section 16.10, our Trustee may receive additional reasonable compensation for services in connection with the operation of the business. Our Trustee may receive this compensation directly from the business, the trust or both.

**(e)      Conflicts of Interest**

Our Trustee may exercise all of the powers granted in this trust even though our Trustee may be involved with or have a personal interest in the business.

**Section 17.06    Contract Powers**

Our Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that our Trustee deems advisable. Our Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

Our Trustee may enter into contracts, and may deliver deeds or other instruments, that our Trustee considers appropriate.

**Section 17.07    Common Investments**

For purposes of convenience with regard to the trust property's administration and investment, our Trustee may invest part or all of the trust property jointly with property of other trusts for which our Trustee is also serving as a Trustee. A corporate fiduciary acting as our Trustee may use common funds for investment. When trust property is managed and invested in this manner, our Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

## Section 17.08    Environmental Powers

Our Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

Our Trustee may refuse to accept property if our Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

Our Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;
>
> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;
>
> institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;
>
> comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and
>
> employ agents, consultants, and legal counsel to assist our Trustee in these actions.

Our Trustee is not liable for any loss or reduction in value sustained by the trust as a result of our Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless our Trustee contributed to that loss through willful misconduct or gross negligence.

Our Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of our Trustee's actions to comply with any environmental law, including any reporting requirement.

Our Trustee may release, relinquish, or disclaim any power held by our Trustee that our Trustee determines may cause our Trustee to incur individual liability under any environmental law.

## Section 17.09    Farm, Ranch, and Other Agricultural Powers

Our Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

Our Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

Our Trustee may engage and participate in any government farm program, whether state or federally sponsored.

Our Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

Our Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

Our Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

### Section 17.10    Insurance Powers

Our Trustee may purchase, accept, hold, and deal with as owner, insurance policies on either or both of our lives, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

Our Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary. Our Trustee may purchase annuities and similar investments for any beneficiary.

Our Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy. Our Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source. Our Trustee may assign the policy as security for the loan.

Our Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

Our Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

Our Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

Our Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, our Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

### Section 17.11    Loans and Borrowing Powers

Our Trustee may make loans to any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

Our Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor. The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.



Our Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by either or both of us or by any Trustee, and may release or foreclose on any mortgage or security interest payable to either or both of us or to the trust.

Our Trustee may borrow money at interest rates and on other terms that our Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

Our Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. Our Trustee may accept deeds instead of foreclosing.

### Section 17.12  Nominee Powers

Our Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

### Section 17.13  Oil, Gas and Mineral Interests

Our Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

Our Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that our Trustee deems advisable.



Our Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

Our Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

Our Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

### Section 17.14  Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, our Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by our Trustee out of income. If the income is insufficient, then our Trustee may make any payments of property taxes or expenses out of the trust property's principal. Our Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

### Section 17.15  Purchase of Assets from and Loans to a Deceased Trustmaker's Probate Estate



Upon the death of a Trustmaker, our Trustee may purchase at fair market value and retain in the form received any property that is a part of the deceased Trustmaker's probate or

Rudolph Trust
17-7

trust estate as an addition to the trust.  In addition, our Trustee may make secured and unsecured loans to the deceased Trustmaker's probate or trust estate.  Our Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

Our Trustee may not use any trust property for the benefit of the deceased Trustmaker's estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in the deceased Trustmaker's gross estate for federal estate tax purposes.

### Section 17.16    Qualified Real Property Valuation

Our Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

### Section 17.17    Qualified Tuition Programs

Our Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses.  With respect to an interest in any qualified tuition program, our Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program.  Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

### Section 17.18    Real Estate Powers

Our Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as our Trustee deems appropriate.

Our Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

Our Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

Our Trustee may enter into contracts to sell real estate. Our Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. Our Trustee may enter into any contracts, covenants, and warranty agreements that our Trustee deems appropriate.

### Section 17.19    Residences and Tangible Personal Property

Our Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. Our Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

Our Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. Our Trustee may pay for the repair and maintenance of the property.

Our Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

Our Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that our Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

Our Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

### Section 17.20    Digital Assets

Our Trustee has the authority to access, modify, control, archive, transfer, and delete our digital assets.

Digital assets include our sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

Our digital assets may be stored in the cloud or on our own digital devices. Our Trustee may access, use, and control our digital devices in order to access, modify, control, archive, transfer, and delete our digital assets—this power is essential for access to our digital assets that are only accessible through our digital devices. Digital devices include desktops,

laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

### Section 17.21    Retention and Abandonment of Trust Property

Our Trustee may retain any property constituting the trust at the time of its creation, at the time of the death of a Trustmaker, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. Our Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

Our Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of our Trustee. On the other hand, our Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

Our Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

Our Trustee may abandon any property that our Trustee considers of insignificant value.

### Section 17.22    Securities, Brokerage and Margin Powers

Our Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. Our Trustee may write and purchase call or put options, and other derivative securities. Our Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to our Trustee or to or for a beneficiary's benefit.

Our Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. Our Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. Our Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

Our Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. Our Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

Our Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. Our Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. Our Trustee may give proxies or powers of attorney



Rudolph Trust
17-10

that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

### Section 17.23    Settlement Powers

Our Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. Our Trustee may release or abandon any claim in favor of the trust.

### Section 17.24    Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

#### (a)    Electing Treatment as an Electing Small Business Trust

If our Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, our Trustee shall:

> apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

> administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

#### (b)    Electing Treatment as a Qualified Subchapter S Trust

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), our Trustee shall:

> refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

> administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

Rudolph Trust
17-11

maintain the Qualified Subchapter S Trust as a separate trust
held for the benefit of only one beneficiary as required in
Section 1361(d)(3).

Our Trustee shall recommend that the current Income Beneficiary of the
trust make a timely election to cause federal tax treatment of the trust as a
Qualified Subchapter S Trust.

### (1)    Current Income Beneficiary

The *current Income Beneficiary* of a Qualified Subchapter S
Trust is the person who has a present right to receive income
distributions from the trust to which the Trustee has
allocated the S corporation stock. A Qualified Subchapter S
Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a
present right to receive income distributions from the trust
originally holding the S corporation stock, our Trustee shall
segregate the S corporation stock into separate Qualified
Subchapter S Trusts for each of these people.

### (2)    Distributions

Until the earlier of the death of the current Income
Beneficiary or the date on which the trust no longer holds
any S corporation stock (the *QSST termination date*), our
Trustee shall distribute at least annually all of the trust's *net
income*, as defined in Internal Revenue Code Section 643(b)
to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was
originally allocated govern distributions of principal from
the Qualified Subchapter S Trust. But until the QSST
termination date, our Trustee may distribute principal only
to the current Income Beneficiary of the Qualified
Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the
lifetime of the current Income Beneficiary, our Trustee shall
distribute all assets of the Qualified Subchapter S Trust to
the current Income Beneficiary outright and free of the trust.

### (3)    Allocation of Income and Expenses

Our Trustee shall characterize receipts and expenses of any
Qualified Subchapter S Trust in a manner consistent with
Internal Revenue Code Section 643(b).

### (4)    Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may
seem to the contrary, our Trustee may not merge any

Rudolph Trust
17-12

Qualified Subchapter S Trust with another trust's assets if
doing so would jeopardize the qualification of either trust as
a Qualified Subchapter S Trust.

### (c)    Governance of the Trusts

The following additional provisions apply to any separate trust created
under this Section.

#### (1)    Protection of S Corporation Status

Our Trustee must not administer a trust holding S
corporation stock in a manner that would cause the
termination of the S corporation status of the entity whose
stock is held as part of the trust. Therefore, during any
period that the trust holds S corporation stock, our Trustee
must construe the terms and provisions of this trust in a
manner that is consistent with the trust qualifying as an
Electing Small Business Trust or as a Qualified Subchapter
S Trust. Our Trustee must disregard any provision of this
trust that cannot be so construed or applied.

#### (2)    Methods of Distribution

Our Trustee may not make distributions in a manner that
would jeopardize the trust's qualification as an Electing
Small Business Trust or as a Qualified Subchapter S Trust.

#### (3)    Disposition of S Corporation Stock

If our Trustee believes the continuation of any trust would
result in the termination of the S corporation status of any
entity whose stock is held as a part of the trust property, our
Trustee, other than an Interested Trustee, in addition to the
power to sell or otherwise dispose of the stock, has the power
to distribute the stock to the person who is then entitled to
receive the income from the trust.

## Section 17.25    Limitation on Our Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth
in this Section, unless explicitly excluded by reference to this Section. The limitations set
forth in this Section do not apply to either of us while we are both alive, and do not apply
if either of us is serving as Trustee of the Survivor's Trust.

### (a)    An Interested Trustee Limited to Ascertainable
Standards

An Interested Trustee may only make discretionary decisions when they
pertain to a beneficiary's health, education, maintenance, or support as
described under Internal Revenue Code Sections 2041 and 2514.

**(b)    Interested Trustee Prohibited from Acting**

Whenever this trust specifically prohibits or limits an Interested Trustee from exercising discretion or performing an act, then any Interested Trustee serving as our Trustee is prohibited from participating in the exercise of that discretion or performance of that act. If there is no Trustee serving who is not an Interested Trustee, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the discretion or perform the act.

**(c)    Exclusive Powers of My Independent Trustee**

Whenever a power or discretion is granted exclusively to our Independent Trustee, then any Interested Trustee who is then serving as our Trustee is prohibited from participating in the exercise of the power or discretion. If there is no Independent Trustee then serving, then an Independent Special Trustee may be appointed under the provisions of Section 3.08 to exercise the power or discretion that is exercisable only by our Independent Trustee.

**(d)    No Distributions in Discharge of Certain Legal Obligations**

Our Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of our Trustee, including the obligation of support.

If a beneficiary or any other person has the power to remove a Trustee, that Trustee may not exercise or participate in the exercise of discretion with respect to the distribution of income or principal that would in any manner discharge a legal obligation of the person having the power to remove the Trustee, including that person's obligation of support.

**(e)    Insurance Policy on the Life of Our Trustee**

If the trust holds a policy that insures the life of a Trustee, that Trustee may not exercise any powers or rights with respect to the policy. Instead, a Co-Trustee or an Independent Special Trustee must exercise the powers and rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured Trustee to name an Independent Special Trustee as an incident of ownership of the policy, then a majority of the then current Income Beneficiaries (excluding the insured Trustee if he or she is a beneficiary) will select the Independent Special Trustee.

**(f)    Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary, individually or as Trustee, may not exercise any power over the policy, its cash value, or its proceeds. This denial of power is intended to prevent an

insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

**(b)    Singular and Plural; Gender**

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or*, when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

**(c)    Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d)    Governing State Law**

This trust is governed, construed, and administered according to the laws of Arizona, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 18.06.

**(e)    Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f)    Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

We have executed this trust on April 25, 2016. This trust instrument is effective when signed by us, whether or not now signed by a Trustee.

Lawrence P. Rudolph, Trustmaker and Trustee

Rudolph Trust
18-9



Bianca T. Rudolph, Trustmaker and Trustee

STATE OF ARIZONA                    )
                                    ) ss.
COUNTY OF MARICOPA                  )

This instrument was acknowledged before me on April 25, 2016, by Lawrence P. Rudolph, as Trustmaker and as Trustee, and Bianca T. Rudolph, as Trustmaker and as Trustee.

[Seal]

WHITNEY W PACI
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 3, 2018

Whitney W. Paci, Notary Public

My commission expires: Feb 3, 2018

Rudolph Trust
18-10

**Exhibit C**

**Pages of Trust the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016,
as amended and restated on June 15, 2021**

## LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016, AS AMENDED AND RESTATED

THIS AGREEMENT is entered into this *2* day of June, 2022 between LAWRENCE P. RUDOLPH, the "Trustor," and JULIAN L. RUDOLPH, the "Trustee." This Agreement amends and restates, in the entirety the LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016, as previously amended and restated on June 15, 2021 and as amended in part on February 1, 2022, by the Trust Protector, ROBERT E. JONES, JR.

WHEREAS, Trustors LAWRENCE P. RUDOLPH and BIANCA T. RUDOLPH previously established a revocable living trust under agreement dated April 25, 2016, in which agreement the right to amend said trust was reserved by the surviving Trustor in regards to the Survivor's Trust provisions provided for under Section 9.02 of Article 9 of the Trust;

WHEREAS, BIANCA T. RUDOLPH passed away on October 11, 2016, and LAWRENCE P. RUDOLPH is the surviving Trustor;

WHEREAS, upon the death of BIANCA T. RUDOLPH and pursuant to Section 6.01 of Article 6 of said trust, the surviving Trustor's trust property was required to be allocated to the Survivor's Trust;

WHEREAS, pursuant to Section 9.02 of Article 9 of said Trust; the surviving Trustor, LAWRENCE P. RUDOLPH, held the power to amend or revoke the Survivor's Trust contained in Article 6 of said trust agreement;

WHEREAS, the Trustor amended and restated the Survivor's Trust of said trust agreement in its entirety on June 15, 2021, and

1

WHEREAS, the Trustor has or will transfer to the Trustee certain properties which, together with all increments and other properties later transferred to the Trustee, shall constitute the principal of the trust estate to be held and administered under the terms of this Agreement, and

WHEREAS, the Trustee has agreed to accept said properties and to hold, manage and invest the same, and any properties derived therefrom and, after payment of all proper charges and expenses, to dispose of the net income and principal of the trust estate under the terms of this Agreement.

NOW, THEREFORE, the parties agree as follows:

# ARTICLE 1

## Trust Name, Purpose, Trustor and Family

1.1 <u>Designation of Trust</u>. The trust created hereby shall be known as the LAWRENCE

P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED

APRIL 25, 2016, and may also be designated by such number as the Trustee may determine.

1.2 <u>Purpose of Trust</u>. The Trustor desires to establish a plan for the management,

conservation and eventual disposition of his assets and intends by establishing this Trust:

     1.2.1     To provide a means by which the Trustee can hold and manage his assets

during his lifetime as provided for herein;

     1.2.2     To provide a legal entity for the receipt of assets from his estate as well

as for the receipt of proceeds of life insurance policies at the death of the Trustor.

1.3 <u>Trustor and Family</u>. The Trustor is unmarried and is the parent of two (2) children,

namely:

       ANABIANCA RUDOLPH born June 9, 1986

       JULIAN L. RUDOLPH, born June 5,1990

## ARTICLE 2

### <u>Trustees and Successors</u>

2.1     Until a Trustee shall decline or become incapable of serving the following persons,
shall serve as Trustee or successor Trustee in the order stated:

First:      JULIAN L. RUDOLPH

Second:     ANABIANCA RUDOLPH

2.2     Any person serving as a sole Trustee may name a Special Trustee to serve as a co-
Trustee.  Each child may act as sole Trustee of his or her Trust.

4

## ARTICLE 10

### Revocation and Amendment

The Trustor shall have the right to revoke and to amend this trust at any time. The amendment or revocation of this trust may not be made by a Last Will and Testament, and the powers of revocation and amendment are personal to the Trustor and shall not be exercised by a representative. No amendment shall increase the duties of a Trustee without the consent of the Trustee. On the Trustor's death, each trust established hereunder shall be irrevocable and not subject to amendment or revocation by any person whomsoever, other than as provided for in ARTICLE 16 herein.

## ARTICLE 14

### Powers of Trustee

14.1   Each Trustee shall have all powers conferred by law or which are necessary to administer each trust created by this trust agreement including, but not limited to, the following:

14.1.1   The Trustee may hold any properties received in the trust as long as is deemed advisable, regardless of the proportion such property or properties of a similar character so held may bear to the entire amount of the trust estate. The Trustee shall have full power and authority to operate and continue to operate any business or enterprise and to enter into any agreement relating to the operation, expansion, consolidation, merger, sale, termination or reorganization of any such business.

14.1.2   The Trustee may buy, sell, convey, grant options, manage, exchange or otherwise dispose of real or personal property on such terms and for such consideration as is deemed advisable and may invest or reinvest all, or any part of the trust estate, in bank accounts, common or preferred stocks, bonds, debentures, mutual funds, mortgages, notes or other securities, and shall not be restricted to forms of investments which Trustees may be otherwise permitted by law to make.

14.1.3   The Trustee may lease for a term, within or beyond the duration of the trust, assign, partition, divide, subdivide, vacate, improve, alter, repair, mortgage and encumber any property received, acquired or held hereunder, and may give, grant and release to others, licenses, easements, rights and privileges therein either with, or without, consideration, as the Trustee may deem best.

14.1.4   The Trustee may vote in person or by general or limited proxy with respect to any shares of stock or other security and consent directly or through a committee or

33

other agent to the reorganization, consolidation, merger, division, dissolution or liquidation of any corporation in which the trust estate may have an interest.

      14.1.5    The Trustee may hold shares of stock, or other property, in the name of the Trustee, in the name of any nominee of the Trustee, or in bearer form, and may exercise any powers herein set forth through such nominee, with or without disclosure of the trust.

      14.1.6    Except as otherwise provided herein, determination of what is principal or income shall be governed by the Arizona Revised Uniform Principal and Income Act from time to time existing. Any matter not provided for herein, or in the Arizona Revised Uniform Principal and Income Act, shall be determined by the Trustee.

      14.1.6.1    The Trustee shall not be required to establish any reserve for depreciation or to make any charge to depreciation against all or any portion of the income of the trust estate, including any income realized through the use of any portion of the trust estate principal in the conduct of a business by the trust; but the Trustee may determine whether to establish such a reserve and, if so, to fund the same by appropriate charges against the income of the trust estate, such reserve and charges to be established on such assumptions and in such amounts as the Trustee may determine. In exercising the discretion conferred on the Trustee, the Trustee is required to consider that the Trustor's desire is to benefit primarily the income beneficiaries.

      14.1.7    The Trustee may borrow money or advance funds for any trust purpose, with or without interest, and pledge all or any part of the trust estate, or income therefrom, to secure repayment.

      14.1.8    The Trustee may carry insurance of such kinds and in such amounts as is deemed advisable; litigate, settle or compromise any claim in favor of or against the trust estate

and hold all or any part of the trust estate uninvested for such reasonable periods as shall be deemed advisable.

14.1.9    The Trustee may make division or distribution of property in kind or in money, or partly in kind and partly in money, and may determine the reasonable value of properties for the purpose of such division or distribution; the Trustee may transfer undivided interests in properties or may transfer different properties of equivalent value in making payment, division or distribution of principal or income.

14.1.10    The Trustee shall render, in the absence of a waiver, annual statements of the receipts and disbursements of the income and principal of each trust to the beneficiary thereof after the death of the Trustor.

14.1.11    The Trustee may engage attorneys and such other persons including proxies, auditors, investment advisors and/or agents (even if such persons are affiliated or associated with any corporate trustee), to delegate to them such powers as the Trustee considers desirable, to advise or assist the Trustee in the performance of administrative duties, to act without independent investigation on their recommendations and, instead of acting personally, to employ one or more agents to perform any act or administration, whether or not discretionary (and any fees, compensation and expenses of such attorneys and such other persons, including those persons who are affiliates of any corporate trustee shall be, unless already included in the compensation of the corporate trustee as set forth in its prevailing schedule of fees, in addition to the compensation of the Trustee, an expense of the trust), which services may include but shall not be limited to:

14.1.11.1    any retained affiliate may manage the investment of trust assets or advise on the investment of such assets directly or through the retention of investment managers who may also be affiliates of any corporate trustee;

35

14.1.11.2    any retained affiliate may be custodian of all or part of the trust assets;

14.1.11.3    the retained affiliate may execute or affect transactions for the trust and provide such other services to the trust as are normally provided by a broker-dealer.

14.1.12    The Trustee may lend money to any person, including the probate estate of the Trustor, provided that such a loan shall be adequately secured and bear a reasonable rate of interest, and the Trustee may purchase property at its fair market value as determined, in the Trustee's discretion, from the probate estate of the Trustor.

14.1.13    The Trustee shall not be required to make an actual partition or division of properties among the trusts created hereunder except as may be necessary to effect a total or partial distribution of a trust estate or as otherwise specifically provided by the trust. The Trustee may, in the Trustee's discretion, hold, administer and invest the funds of each trust in one or more common funds and assign undivided interests therein to each trust. A separate accounting shall be made for the interests of each trust in a joint investment, and the income and expenses thereof shall be apportioned according to the interests of each trust. The Trustee shall have the right at any time to equitably separate jointly invested properties into separate trust funds.

14.1.14    The Trustee may apply monies or properties for the benefit of a beneficiary and need not distribute said properties directly to the beneficiaries.

14.1.15    The Trustee may indemnify any and all of the individual Trustees, or former individual Trustees, against expenses incurred by them or any of them, including legal fees, or judgments or penalties rendered or levied against them or any of them in a legal action or suit brought against or threatened to be brought against them or any of them for any action or omission alleged to have been committed by them or any of them while acting as a Trustee hereunder,

36

including, but non limited to, the exercise of discretion conferred upon the Trustee hereunder, under the following circumstances: (1) the Trustee is successful on the merits or otherwise in defense of any issue or matter therein, or (2) the Court in which such action or suit was brought shall, despite the adjudication of liability, make a finding that the Trustee in incurring such liability did not act willfully or with gross negligence or with fraudulent or criminal intent in regard to the matter involved in such action or suit.

14.1.16    The Trustee may exercise all tax related elections, options, discretion, and choices under the Internal Revenue Code or any other laws in such manner as the Trustee, in its sole but reasonable judgment (with the advice of tax counsel where appropriate) believes will achieve the overall minimum in total combined present and reasonably anticipated (but appropriately discounted) future administrative expense and tax burden of all kinds, upon the Trust and the beneficiaries, or other Trusts involved and their beneficiaries, and the Trustor's probate estate, including, but not limited to, the following:

14.1.16.1    To exclude any assets from, or include any assets in, the gross estate of the Trustor, and to make decisions concerning valuation of assets, including valuation agreements, alternate valuation elections, etc;

14.1.16.2    To make elections concerning the status of entities under Subchapter S of the Code, installment payment of taxes, installment reporting of capital gains, alternative methods of taxing annuities, employee benefits, etc.;

14.1.16.3    To allocate such administration expenses as are available for reduction of either federal or state estate taxes or income taxes;

14.1.16.4    To select the income tax fiscal year of the Trusts hereunder; to determine the time of distributions and or payment of deductible expenses; to select assets for

allocation and/or distribution (with or without election of gain or loss pro rata allocation of cost basis); to disclaim benefits of any kind receivable by any trust hereunder; to elect to defer or accelerate state inheritance taxation of remainder interests in trusts; etc.

The Trustee shall not be accountable to any person interested in any trust or in the Trustor's estate for the manner in which, in good faith, it carries out this direction to minimize taxes and expenses (including any decision not to incur the expense of detailed analysis of alternative choices) and, even though the Trustee's decision in this regard may result in increased tax or decreased distributions to a Trust, to the estate of the Trustor, or to one or more beneficiaries, there shall in no event be any compensation adjustments or reimbursements between any of the trusts hereunder or any of the trust or estate accounts or beneficiaries by reason of the manner in which the Trustee thus carries out said direction.

14.1.17    The Trustee may choose not to amortize premiums or accumulate discounts.

14.1.18    The Trustee may establish out of income and credit to principal reasonable reserves for depreciation, obsolescence and depletion.

14.1.19    The Trustee may exercise all powers and authority, including any discretion, conferred herein after the termination of any trust created hereunder until such trust is finally distributed.

14.1.20    The Trustee may make, if otherwise consistent with the terms and provision of this Trust Agreement and consented to by the beneficiaries whose interest may be affected, charitable contributions which qualify under Section 170(c) of the Code.

14.1.21    The Trustee may perform other acts necessary or proper for the prudent administration of this Trust Agreement, including execute and deliver necessary instruments and give full receipts and discharges.

14.1.22    The Trustee may transfer the situs of this Trust or any portion of this Trust to some other place, and in so doing, to resign and appoint a substitute trustee or trustees who may delegate any or all trustee power to the appointing Trustee as agent, and to remove any substitute Trustee appointed pursuant to this paragraph at any time and appoint another or others, including the original Trustee.

14.1.23    To make gifts which are excluded from taxation under Sections 2503(b) and 529 of the Internal Revenue Code of 1986, as amended.

14.1.24    The Trustee shall have the power to borrow funds from any person or entity; to guarantee indebtedness or indemnify others in the name of the Trust and to secure any such obligation by mortgage (including, but not limited to, reverse mortgages), pledge, security interest or other encumbrance; and to renew, extend or modify any such obligation for a term within or extending beyond the administration of the term of the Trust.  No lender shall be bound to see to, or be liable for, the application of the proceeds of any obligation.

14.1.25    The Trustee shall not be liable for any act or failure to act unless committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries and the Trustee shall be reimbursed for the defense of any claim against the Trustee unless the Trustee is held to have acted or failed to act in bad faith or with reckless disregard for the interests of the beneficiaries.

IN WITNESS WHEREOF, the parties hereto have signed this Trust on the above date.

TRUSTOR:

_____
LAWRENCE P. RUDOLPH

STATE OF COLORADO    )
                     ) ss.
County of Denver        )

    SUBSCRIBED, SWORN TO and ACKNOWLEDGED before me this 2nd day of June,
2022 by LAWRENCE P. RUDOLPH, as Trustor.

[Notary seal and expiration date]

_____
Notary

JOHN CASTELLANO
Notary Public
State of Colorado
Notary ID # 20074021840
My Commission Expires 07-31-2023

64

# **Exhibit C**

**ESTATE OF BIANCA RUDOLPH**
**Allocation to Credit ByPass Trust**

| Asset | Dated Acquired | Value AT Approx Apr 2016 | Value Current | Bianca's Share |
|---|---|---|---|---|
| | | | | 6,915,974.00 |
| William Building Inc. Stock | Aug-88 | | | |
| ARGALI LLC | Jul-99 | | | |
| L. P. Rudolph Holdings, LLC | Apr-08 | | | |
| Three Rivers Dental Group/Greensburg LLC | Jul-08 | | | |
| R. P. N. C. LLC | Sep-09 | | | |
| Cookman Community Development Urban Renewal, LLC | Oct-09 | | | |
| Camelback Consulting Marketing, LLC | Jan-11 | | | |
| Market Place Investors, LLC | Jan-11 | | | |
| Mars Hill Investors, LLC | Jul-11 | | | |
| 4141 E. Lakeside Lane (value less debt) sold 3/2019 | Feb-12 | 1,481,680.00 2,300,000.00 | | 740,840.00 |
| 7350 SW 89th St, # 412S, Miami, FL sold 5/2017 | Aug-12 | 330,000.00 | | |
| 101 Moulton Lane, Victor Idaho house | Mar-14 | 500,000.00 | | 250,000.00 |
| Wells Fargo Saving 5336388672 | pre - 2016 | 1,602.00 | 20,635.28 | |
| Wells Fargo Checking 1101536678 | pre - 2016 | 25,385.00 | 30,505.54 | |
| Wells Fargo Checking 2895619639 | pre - 2016 | | 1,060.00 | |
| Wells Fargo Checking 3855643049 | pre - 2016 | 98,178.00 | 54,128.68 | |
| Citizens Bank Checking xxx-871-2 | | 7,710.00 | | |
| Morgan Stanley # xxx-0234-125 | | 7,384.00 | | |
| Morgan Stanley # xxx-0236-125 | | 1,664,636.00 | | 2,000,000.00 |
| Morgan Stanley # xxx-0237-125 | | 1,890,083.00 | | |
| Morgan Stanley # xxx-2572-125 | | 9,980.00 | | |
| Vanguard # xxx-5266 | | 822,021.00 | | 400,000.00 |
| TD Ameritrade | | 2,998.00 | | |
| Nuveen Insured Mun Funds 529 shares | | | | |
| Wells Fargo Bank  Bus Checking 9749 | | 6,876.00 | | |
| Wells Fargo Bank Bus Savings 0368 | | 1,386.00 | | |
| PNC Bank Bus Checking 4196 | | 5,008.00 | | |
| PNC Bank Bus Checking 5268 | | 102,098.00 | | |
| PNC Bank Bus Checking 5033 | | 84,660.00 | | |
| PNC Bank Bus Checking 4188 | | 81,250.00 | | |
| PNC Bank Bus Checking 0548 | | 64,007.00 | | |
| Morgan Stanley Larry's IRA 0238-125 | | 609,129.00 | | |
| Morgan Stanley Larry's IRA 2309-125 | | 1,007,595.00 | | |
| Morgan Stanley Bianca's IRA 2585-125 | | 368,666.00 | 376,822.00 | Moved to Survivor's Trust or Dr. Rudolph 02/2017 |
| Morgan Stanley Bianca's IRA 1397-058 | | 39,427.00 | 41,482.00 | Moved to Survivor's Trust or Dr. Rudolph 01/2017 |
| Vanguard Bianca's IRA 3793 | | 159,485.00 | 183,251.00 | Moved to Survivor's Trust or Dr. Rudolph 12/2016 |

# **<u>Exhibit A</u>**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

      Defendants.

---

## VERDICT FORM

---

    Please do not write anything on this form except to check a response and to sign and date the form.

### COUNT 1

    We, the jury, upon our oaths, do unanimously find the defendant, LAWRENCE RUDOLPH, in Count One of the Superseding Indictment charging foreign murder:

    _____    Not Guilty

     ✓    Guilty

### COUNT 2

    We, the jury, upon our oaths, do unanimously find the defendant, LAWRENCE RUDOLPH, in Count Two of the Superseding Indictment charging mail fraud:

    _____    Not Guilty

     ✓    Guilty

## COUNT 3

We, the jury, upon our oaths, do unanimously find the defendant, LORI MILLIRON, in Count Three of the Superseding Indictment charging accessory-after-the-fact to the foreign murder charged in Count One:

| _____ | Not Guilty |
| ✓ | Guilty |

## COUNT 4

We, the jury, upon our oaths, do unanimously find the defendant, LORI MILLIRON, in Count Four of the Superseding Indictment charging obstruction of a grand jury proceeding:

| _____ | Not Guilty |
| ✓ | Guilty |

## COUNT 5

We, the jury, upon our oaths, do unanimously find the defendant, LORI MILLIRON, in Count Five of the Superseding Indictment charging perjury before a grand jury:

| ✓ | Not Guilty |
| _____ | Guilty |

## COUNT 6

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Six of the Superseding Indictment charging perjury before a grand

jury:

    _____      Not Guilty

      √       Guilty

## COUNT 7

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Seven of the Superseding Indictment charging perjury before a

grand jury:

      √       Not Guilty

    _____      Guilty

## COUNT 8

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Eight of the Superseding Indictment charging perjury before a

grand jury:

      √       Not Guilty

    _____      Guilty

## COUNT 9

We, the jury, upon our oaths, do unanimously find the defendant, LORI

MILLIRON, in Count Nine of the Indictment charging perjury before a grand jury:

    _____      Not Guilty

      √       Guilty

_01/1/2022_
**DATE**

# **<u>Exhibit B</u>**

**TRUSTEE'S CERTIFICATION
FOR THE RUDOLPH TRUST DATED APRIL 25, 2016 AND THE
LAWRENCE P. RUDOLPH SURVIVOR'S TRUST DATED APRIL 25, 2016,
AS AMENDED AND RESTATED ON JUNE 15, 2021**

The undersigned, Julian L. Rudolph, being legal age, under penalty of perjury, hereby state as follows:

1.  On April 25, 2016, Lawrence P. Rudolph and Bianca T. Rudolph as Trustors and Trustees established a revocable trust, known as the "Rudolph Trust, dated April 25, 2016."

2.  Trustor, Bianca T. Rudolph died on October 11, 2016, and Lawrence P. Rudolph was the surviving Trustor and Trustee.

3.  Pursuant to ARS §14-2803 (B) (1) (c) Lawrence P. Rudolph is now disqualified to serve as successor Trustee.

4.  On December 19, 2022, Lawrence P. Rudolph signed a Resignation of Trustee of the Rudolph Trust, dated April 25, 2016 and the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, attached hereto as Exhibit A.

5.  Pursuant to Article Three, Section 3.03 of the Rudolph Trust, dated April 25, 2016, Julian L. Rudolph is designated as the successor Trustee of the Rudolph Trust, dated April 25, 2016.

6.  Pursuant to Article 2, Section 2.01 of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, Julian L. Rudolph is designated as the successor Trustee of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021.

7.  Attached as Exhibit B are the true and correct copies of the certain pages of the Rudolph Trust dated April 25, 2016, which include the Declaration of Trust, Designation of Trustee, Revocation and Amendment Provision, Trust Protector, Trustees Powers and Executed Page.

8.  Attached as Exhibit C are the true and correct copies of the certain pages of the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016, as amended and restated on June 15, 2021, which include the Declaration of Trust, Designation of Trustee, Revocation and Amendment Provision, Trust Protector, Trustees Powers and Executed Page.

9.  Any Trust property shall be titled in the name of the *"Julian L. Rudolph as successor Trustee of the Rudolph Trust dated April 25, 2016."*

10. The tax identification number for the Rudolph Trust is 88-6721622.

DATED this **13th** day of JANUARY, 20**23**.

_____
Julian L. Rudolph

STATE OF FLORIDA            )
                           ) ss.
County of _Miami-Dade_ )

    SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me by Julian Rudolph, this _13_ day of _January_, 20 _23_.

[Notary Seal]

_____
Notary Public

YARIZ PARRALES
Notary Public - State of Florida
Commission # HH 295796
My Comm. Expires Aug 1, 2026
Bonded through National Notary Assn.

**Exhibit A**

**Resignation of Lawrence P. Rudolph**

**RESIGNATION OF TRUSTEE**

LAWRENCE P. RUDOLPH, hereby resigns as Trustee of the (i) LAWRENCE P.
RUDOLPH SURVIVOR'S TRUST dated April 25 2016, and as AMENDED AND
RESTATED on June 15, 2021 established by Lawrence P. Rudolph, as Trustor and (ii)
Rudolph Trust, dated April 25, 2016 established by Lawrence P. Rudolph and Blanca T.
Rudolph, as Trustors.

Dated this _19 TH_ day of December, 2022.

_____
LAWRENCE P. RUDOLPH, Trustee

Witnessed this date by John Castellano

By _____

9403823v1/23140-0008

## Exhibit B

**Pages of Trust the Rudolph Trust, dated April 25, 2016**

# The Rudolph Trust

## Article One
## Establishing Our Trust

The date of this trust is April 25, 2016.  The parties to this trust are Lawrence P. Rudolph and Bianca T. Rudolph (the *Trustmakers*) and Lawrence P. Rudolph and Bianca T. Rudolph (collectively, our *Trustee*).

We intend to create a valid trust under the laws of Arizona and under the laws of any state in which any trust created under this trust document is administered.  The terms of this trust prevail over any provision of Arizona law, except those provisions that are mandatory and may not be waived.

### Section 1.01     Identifying Our Trust

For convenience, our trust may be referred to as:

"The Rudolph Trust dated April 25, 2016."

To the extent practicable, for the purpose of transferring property to our trust or identifying our trust in any beneficiary or pay-on-death designation, our trust should be identified as:

"Lawrence P. Rudolph and Bianca T. Rudolph, Trustees of the Rudolph Trust dated April 25, 2016, and any amendments thereto."

For all purposes concerning the identity of our trust or any property titled in or payable to our trust, any description referring to our trust will be effective if it reasonably identifies our trust and indicates that the trust property is held in a fiduciary capacity.

### Section 1.02     Reliance by Third Parties

Third parties may require documentation to verify the existence of this trust, or particular provisions of it, including the name of our Trustee or the powers held by our Trustee.  To protect the confidentiality of this instrument, our Trustee may use an affidavit or a certification of trust that identifies our Trustee and sets forth the authority of our Trustee to transact business on behalf of our trust instead of providing a copy of this instrument. The affidavit or certification may include pertinent pages from this instrument, including title or signature pages.

A third party may rely upon an affidavit or certification of trust that is signed by our Trustee with respect to the representations contained in it.  A third party relying upon an affidavit or certification of trust will be exonerated from any liability for actions the third party takes or does not take in reliance upon the representations contained in the affidavit or certification of trust.

A third party dealing with our Trustee will not be required to inquire into this trust's terms or the authority of our Trustee, or to see to the application of funds or other property received by our Trustee.  Our Trustee's receipt of any money or property paid, transferred,

or delivered to our Trustee will be a sufficient discharge to the third party from all liability in connection with its application. A written statement by our Trustee is conclusive evidence of our Trustee's authority. Third parties are not liable for any loss resulting from their reliance on a written statement by our Trustee asserting our Trustee's authority or seeking to effect a transfer of property to or from the trust.

## Section 1.03    Statement of Our Intent

We created this trust to facilitate the management of our assets during our lifetime, to provide a structured method of care management if we become incapacitated, and to establish the manner and time in which we want our assets to be distributed to our beneficiaries. We considered the respective maturity, financial acumen, understanding and use of life skills, needs, abilities, and relationships of our beneficiaries. It is our intention that our assets be used to fulfill the hopes, dreams, and aspirations of our family while preserving our assets from their creditors, their own potential or actual spendthrift habits, and estate, gift, and income taxes, to the full extent allowed by law while providing discretion that encourages and permits the worthwhile endeavors and accomplishments of our beneficiaries.

## Section 1.04    Transferring Property to Our Trust

Any person or entity may transfer any property to our trust in any manner authorized by law.

### (a)    Funding of Our Trust

By executing this instrument, we transfer, convey, and assign the property described in the attached schedules to our Trustee. We also transfer all our right, title, and interest in and to all of our property that may legally be held in trust and that may be transferred to our trust by this assignment. This assignment includes all of our real, personal, tangible, and intangible property located in the United States, whether separate property or community property, and whether acquired before or after the execution of this instrument, except for these assets that are expressly not transferred by this instrument:

> life insurance policies, unless the ownership of a policy is transferred to our trust by a separate instrument that specifically refers to the policy;

> corporate and self-employed (*Keogh*) pension, profit-sharing, and stock bonus plans;

> qualified retirement plans;

> commercial annuities;

> Section 1244 (small business) stock; and

> any property, the transfer of which would result in the immediate recognition of income subject to income or other

taxes, would result in the loss of a homestead exemption, or would violate a restriction on transfer agreement.

**(b)    Acceptance by Our Trustee**

By executing this instrument, our Trustee accepts and agrees to hold the property transferred to the trust as trust property. All property transferred to our trust after the date of this trust must be acceptable to our Trustee. Our Trustee may refuse to accept any property. Our Trustee shall hold, administer, and dispose of all accepted trust property for our benefit and for the benefit of our beneficiaries, in accordance with the terms of this trust.

**(c)    Community Property**

Any community property transferred to our trust, including the property's income and the proceeds from the property's sale or exchange, will retain its character as community property during our lives, to the same extent as if it had not been transferred to our trust.

**(d)    Separate Property**

Separate property transferred to our trust will retain its character as separate property. Our separate property may be identified as the separate property of either of us on the attached schedules. The separate property of either of us, including the property's income and proceeds from the property's sale or exchange, will remain separate property. Each of us has the unrestricted right to remove all or any part of our separate property at any time.

An amount that is payable to our trust on a life insurance policy that is the separate property of either of us will retain its character as separate property.

**(e)    Joint Property**

If joint tenancy property with right of survivorship is transferred to our trust, we will be considered to have severed the joint tenancy immediately before transferring the property, and no right of survivorship will exist with respect to this property.

**Section 1.05    Powers Reserved by Us as Trustmakers**

As Trustmakers, we retain the powers set forth in this Section in addition to any powers that we reserve in other provisions of this instrument.

**(a)    Action on Behalf of Our Trust**

Whenever both of us are serving as Trustee, either or both of us may act for and conduct business on behalf of our trust without the consent of any other Trustee.

Whenever one of us is alive but not serving as Trustee, and the other is serving as Trustee, the one who is serving as Trustee may act for and conduct business on behalf of our trust without the consent of any other Trustee.



Rudolph Trust
1-3

After one of us dies, the ability of the survivor of us, when serving as Trustee, to conduct business on behalf of us without the consent of any other Trustee is subject to the terms and conditions of our trust.

**(b)     Amendment, Restatement, or Revocation**

Acting jointly, we may amend, restate, or revoke this instrument, in whole or in part, for any purpose. Acting jointly, we retain the absolute right to amend, restate, or revoke any term or provision of this trust in whole or in part. Each of us individually retains the right to revoke any term or provision of this trust in whole or in part as to each of our separate property.

Any amendment, restatement, or revocation must be made in writing and delivered to our then-serving Trustee.

**(c)     Addition or Removal of Trust Property**

Either of us may add property to our trust. Both of us, acting jointly may remove any property from our trust. Each of us, acting alone, may remove our own separate property from our trust. Community property removed from our trust will retain its character as community property.

**(d)     Control of Income and Principal Distributions**

We retain the right to control the distribution of income and principal from our trust. We may direct our Trustee to distribute as much of the net income and principal of the trust property as we consider advisable to us or to other persons or entities. Our Trustee may distribute the net income and principal to us or for our unrestricted use and benefit, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of our trust.

Unless otherwise directed, our Trustee shall distribute the net income from the community property to us at least quarterly and shall distribute the net income from a Trustmaker's separate property to that Trustmaker at least quarterly.

Our Trustee may also distribute principal of the community property for the unrestricted use of either or both of us and the principal of a Trustmaker's separate property for the unrestricted use and benefit of that Trustmaker, even to the exhaustion of all trust property. Any undistributed net income is to be added to the principal of our trust.

**(e)     Approval of Investment Decisions**

We reserve the absolute right to review and change our Trustee's investment decisions as to the community property. Each of us reserves the absolute right to review and change our Trustee's investment decisions as to our respective separate property. But our Trustee is not required to seek our approval before making investment decisions.



Rudolph Trust
1-4

**Section 1.06     Grantor Trust Status**

By reserving the broad rights and powers set forth in Section 1.05 of this Article, we intend to qualify our trust as a *Grantor Trust* under Internal Revenue Code Sections 671 to 677. This means that, for federal income tax purposes, each of us will be treated as the owner of one-half of all the community property held in our trust and as the owner of our respective separate property as if we held the property individually.

During any period that our trust is a Grantor Trust, the Taxpayer Identification Number of our trust will be either of our Social Security numbers, in accordance with Treasury Regulation Section 301.6109-1(a)(2).

# Article Three
# Trustee Succession Provisions

### Section 3.01     Resignation of a Trustee

A Trustee may resign by giving written notice to either of us. If we are both incapacitated or deceased, a resigning Trustee shall give written notice to the trust's Income Beneficiaries and any other then-serving Trustee.

Upon the resignation of Ralph Finizio as Trustee, the resigning Trustee may appoint the resigning Trustee's successor as Trustee in the manner set forth in Section 3.04, concurrent with the written notice described above. If the resigning Trustee fails to make the appointment, the other provisions of this Article regarding Trustee succession upon incapacity or death will govern, and the next named successors to the resigning Trustee will serve in the order listed. Likewise, if no named successors to the resigning Trustees are available to serve and the resigning Trustee fails to designate a successor, the other provisions of this Article regarding the filling of a vacant Trustee office will govern.

### Section 3.02     Trustee Succession while Both of Us Are Alive

While we are both alive, this Section governs the removal and replacement of our Trustees.

#### (a)     Removal and Replacement by Both of Us

By joint agreement, we may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, either or both of us may serve as Trustee, we may appoint a Trustee to serve with either or both of us, or we may appoint a successor Trustee.

#### (b)     Removal and Replacement by One of Us

If one of us is incapacitated, the non-incapacitated Trustmaker may remove any Trustee at any time, with or without cause. If a Trustee is removed, resigns, or cannot continue to serve for any reason, the non-incapacitated Trustmaker may serve as sole Trustee, appoint a Trustee to serve with the non-incapacitated Trustmaker, or appoint a successor Trustee.

#### (c)     Successor Trustee during Incapacity of a Trustmaker

During the incapacity of a Trustmaker, the other Trustmaker may serve as sole Trustee.

If the other Trustmaker is unable or unwilling to serve for any reason, then we name the following to serve as successor Trustee in this order:

    Julian L. Rudolph;

    AnaBianca Rudolph; then

    Ralph Finizio.



**(d)     Removal of Trustee during Incapacity of Both of Us**

During any time both of us are incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

**(e)     Designation Default**

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act during any time that one of us is incapacitated, the other Trustmaker may appoint a successor Trustee.

If the other Trustmaker is unable or unwilling to appoint a successor Trustee, our Trust Protector may appoint an individual or a corporate fiduciary to serve as successor Trustee.

If our Trust Protector is unable or unwilling to appoint a successor Trustee, the person appointed conservator may appoint a successor Trustee.

The Legal Representative of either of us may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petitioned court acquires jurisdiction over the trust only to the extent necessary to make the appointment. The trust is not subject to the court's continuing jurisdiction.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee under Section 3.01.

All appointments, removals, and revocations must be by signed written instrument.

**Section 3.03     Trustee Succession after the Death of Either or Both of Us**

After the death of either or both of us, this Section governs the removal and replacement of our Trustees.

**(a)     Upon the Death of a Trustmaker**

Upon the death of a Trustmaker, the other Trustmaker may serve as sole Trustee of all trusts created under this instrument.

If the other Trustmaker is unable or unwilling to serve for any reason, we name the following to serve as successor Trustee in this order:

> Julian L. Rudolph;
>
> AnaBianca Rudolph; then
>
> Ralph Finizio.

**(b)     Trustees of the Separate Trusts**



The Primary Beneficiary of a separate trust created under this instrument, upon attaining 25 years of age, may appoint himself or herself as a Co-



Trustee of his or her separate trust and may serve as the sole Trustee of the trust and may name any one or more individual or corporate fiduciaries to serve as current or successor Trustee or Co-Trustee.

If the interest of a beneficiary will be merged into a life estate or an estate for years because the beneficiary is serving as sole Trustee, the beneficiary must appoint a Co-Trustee to avoid this merger. Similarly, if the interest of a beneficiary becomes or is likely to become subject to the claims of any creditor or to legal process as a result of serving as sole Trustee, the beneficiary must appoint an Independent Trustee to serve as Co-Trustee.

Notwithstanding the previous provisions, the Primary Beneficiary of any trust administered as a Supplemental Needs Trust under this instrument may never appoint himself or herself as a Co-Trustee of his or her separate trust, and may not serve as the sole Trustee of his or her separate trust.

### (c)    Appointment of Successor Trustees by the Surviving Trustmaker

After the death of one of us, the surviving Trustmaker may appoint the current or successor Trustees for any trust created under this instrument. The surviving Trustmaker may amend or revoke this appointment. Except for the Trustee of the Survivor's Trust, any Trustee appointed by the surviving Trustmaker to a trust of which the surviving Trustmaker is a beneficiary must be an individual or corporate fiduciary that is not related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

### (d)    Removal of a Trustee

After the death of one of us, the surviving Trustmaker may remove any Trustee, with or without cause. If the surviving Trustmaker is incapacitated, the person appointed conservator may remove any Trustee, with or without cause.

A Trustee may be removed by the surviving Trustmaker only if the surviving Trustmaker appoints an individual or corporate fiduciary by the effective removal date and this appointee simultaneously commences service as Trustee. The Trustee appointed to serve as successor Trustee may not be related or subordinate to the surviving Trustmaker within the meaning of Internal Revenue Code Section 672(c).

After the death of both of us, any beneficiary may remove a Trustee only for cause, and with approval from a court of competent jurisdiction. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment.

The right to remove a Trustee under this Subsection is not to be interpreted to grant the person holding that right any of the powers of that Trustee.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.



Rudolph Trust
3-3

Nothing in this Subsection limits the authority of a Trust Protector to remove a Trustee under the provisions of Section 4.09(e).

**(e)     Default of Designation**

If the office of Trustee of a trust created under this instrument is vacant and no designated Trustee is able and willing to act, the surviving Trustmaker may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

If the surviving Trustmaker is unable or unwilling to name a successor Trustee or if both of us are deceased, our Trust Protector may appoint the successor Trustee.

If our Trust Protector is unable or unwilling to name a successor Trustee, the trust's Primary Beneficiary may appoint an individual or corporate fiduciary that is not related or subordinate to the person or persons making the appointment within the meaning of Section 672(c) of the Internal Revenue Code as successor Trustee.

Any beneficiary may petition a court of competent jurisdiction to appoint a successor Trustee to fill any vacancy lasting longer than 30 days. The petition may subject the trust to the jurisdiction of the court only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

If a Trustee vacancy arises due to resignation, and the Trustee is one of the Trustees identified in Section 3.01, the previous provisions apply only if the resigning Trustee fails to appoint a successor Trustee in the manner more fully set forth in Section 3.01.

## Section 3.04     Notice of Removal and Appointment

Notice of removal must be in writing and delivered to the Trustee being removed, along with any other then-serving Trustees. The removal notice will become effective in accordance with its provisions.

Notice of appointment must be in writing and delivered to the successor Trustee and any other then-serving Trustees. The appointment will become effective at the time of acceptance by the successor Trustee. A copy of the notice may be attached to this instrument.

## Section 3.05     Appointment of a Co-Trustee

Any individual Trustee may appoint an individual or a corporate fiduciary as a Co-Trustee. This Co-Trustee will serve only as long as the appointing Trustee serves, or as long as the last to serve if more than one Trustee appointed the Co-Trustee. This Co-Trustee will not

become a successor Trustee upon the death, resignation, or incapacity of the appointing Trustee, unless appointed under the terms of this instrument. Although this Co-Trustee may exercise all the powers of the appointing Trustee, the combined powers of this Co-Trustee and the appointing Trustee may not exceed the powers of the appointing Trustee alone. The Trustee appointing a Co-Trustee may revoke the appointment at any time, with or without cause.

## Section 3.06    Corporate Fiduciaries

Any corporate fiduciary serving under this instrument as a Trustee must be a bank, trust company, or public charity that is qualified to act as a fiduciary under applicable federal or state law and that is not related or subordinate to any beneficiary within the meaning of Internal Revenue Code Section 672(c).

## Section 3.07    Incapacity of a Trustee

If any individual Trustee becomes incapacitated, the incapacitated Trustee need not resign as Trustee. For Trustees other than one of us, a written declaration of incapacity by the Co-Trustee or, if none, by the party designated to succeed the incapacitated Trustee if made in good faith will terminate the trusteeship. If the Trustee designated in the written declaration objects in writing to termination of the trusteeship within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trustee must be obtained before the trusteeship will be terminated. The Trustee objecting to termination of trusteeship must sign the necessary medical releases needed to obtain the physician's written opinion, or the trusteeship will be terminated without it.

## Section 3.08    Appointment of Independent Special Trustee

If for any reason the Trustee of any trust created under this instrument is unwilling or unable to act with respect to any trust property or any provision of this instrument, our Trust Protector shall appoint, in writing, a corporate fiduciary or an individual to serve as an Independent Special Trustee as to this property or with respect to this provision. The Independent Special Trustee appointed may not be related or subordinate to any trust beneficiary within the meaning of Internal Revenue Code Section 672(c). Our Trust Protector may revoke any appointment of this kind at any time.

An Independent Special Trustee will exercise all fiduciary powers granted by this trust unless expressly limited elsewhere in this instrument or by our Trust Protector in the instrument appointing the Independent Special Trustee. An Independent Special Trustee may resign at any time by delivering written notice of resignation to our Trust Protector. Notice of resignation will be effective in accordance with the terms of the notice.

## Section 3.09    Rights of Successor Trustees

Each successor Trustee serving under this instrument, whether individual or corporate, will have all of the title, rights, powers and privileges granted to our initial Trustees named under this instrument. In addition, each successor Trustee will be subject to all of the

restrictions imposed on and to all discretionary and ministerial obligations and duties given
to the original Trustees.

# Article Four
# Trust Protector Provisions

### Section 4.01    Provisions for Trust Protector

The Trust Protector's purpose is to direct our Trustee in matters concerning the trust, and to assist in achieving our objectives as expressed by the other provisions of our estate plan if needed.

### Section 4.02    Designation of Trust Protector

Any Trust Protector authorized or required to act with respect to this instrument must be appointed by a court of competent jurisdiction on petition of a Trustee or beneficiary.

The court acting to appoint a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary to make the appointment and may not subject the trust to the continuing jurisdiction of the court.

A minor or incapacitated beneficiary's parent or Legal Representative may act on his or her behalf.

For each power and authority granted to a Trust Protector in this instrument, unless the capacity is otherwise specifically stated, the Trust Protector's authority is conferred in a nonfiduciary capacity.

### Section 4.03    Removal of a Trust Protector

Any Trust Protector may be removed for cause only as determined by a court of competent jurisdiction on the petition of any Trustee or beneficiary not acting under compulsion or any kind of duress. The court removing a Trust Protector may appoint one or more successor Trust Protectors to immediately replace the removed Trust Protector. The court acting to remove and replace a Trust Protector will acquire jurisdiction or authority over the trust only to the extent necessary for the removal and replacement of the Trust Protector.

### Section 4.04    Resignation of a Trust Protector

A Trust Protector may resign by giving written notice to either of us. If both of us are deceased, a Trust Protector may resign by giving written notice to the Income Beneficiaries of the trust and to the then-serving Trustee.

Resignation will take effect on the date set forth in the notice, but not earlier than 30 days after the delivery date of the notice of resignation, unless an earlier effective date is agreed to by us or by the trust's Primary Beneficiary. A resigning Trust Protector is not liable or responsible for the act of any successor Trust Protector.

### Section 4.05    Incapacity of a Trust Protector

If any individual Trust Protector becomes incapacitated, the incapacitated Trust Protector need not resign as Trust Protector. Any then-serving Trust Protector or the immediately

eligible successor Trust Protector may provide a written declaration that a Trust Protector is incapacitated.

The written declaration of the Trust Protector's incapacity will terminate the Trust Protector's service. If the Trust Protector designated in the written declaration objects in writing to termination of the Trust Protector's service within 10 days of receiving the declaration of incapacity, a written opinion of incapacity signed by a physician who has examined the incapacitated Trust Protector must be obtained before the Trust Protector's service will be terminated. The Trust Protector objecting to termination of the Trust Protector's service must sign the necessary medical releases needed to obtain the physician's written opinion of incapacity, or the Trust Protector's service will be terminated without the physician's written opinion.

The provisions of Section 18.07(g) of this instrument govern the determination of a Trust Protector's incapacity, except that a single physician may make the determination of incapacity instead of two physicians. Further, Section 18.07(g) governs the Trust Protector's obligations to submit to examination and provide necessary releases.

## Section 4.06     Authority of Successor Trust Protectors

Any successor Trust Protector has all the authority of any predecessor Trust Protector, but is not responsible for the predecessor's acts, omissions, or forbearances.

## Section 4.07     Trust Protector Standard of Conduct

The Trust Protector is not liable for any action, omission, or forbearance in the absence of an affirmative showing by clear and convincing evidence of bad faith by the Trust Protector to any of the beneficiaries.

## Section 4.08     Indemnification of Trust Protector

We recognize that some persons or institutions may be reluctant to serve as Trust Protector without indemnification by the trust for potential liability. Therefore, we direct that our Trustee may expend the trust assets to defend any claim brought against any Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith, even if the cost of the Trust Protector's defense would exhaust the trust's value. If any claim brought against a Trust Protector is successful and the Trust Protector is shown to have acted in bad faith, our Trustee may seek reimbursement from that Trust Protector using any legal or equitable means available to the Trustee for the value of any trust assets used to defend the Trust Protector.

Any Trust Protector is entitled to reimbursement from the trust estate for any expenses, including reimbursement for attorney's fees and costs of litigation reasonably incurred to defend any claim brought against the Trust Protector, unless the Trust Protector is shown by clear and convincing evidence to have acted in bad faith. This must be done even if the cost of the Trust Protector's defense would exhaust the trust's value.

This Section applies to any currently serving Trust Protector and for claims brought against any former Trust Protector in connection with his or her acts, omissions, or forbearances in regard to the trust while serving as Trust Protector.

## Section 4.09    Trust Protector Powers

Any Trust Protector named or appointed under the provisions of this instrument has the following powers and authorities.

### (a)    Power to Amend or Modify the Instrument

The Trust Protector may amend or modify this instrument as it applies to any trust over which the Trust Protector is serving as Trust Protector to:

alter the administrative and investment powers of any Trustee;

reflect tax or other legal changes that affect trust administration. We recognize that the gift, estate, generation-skipping transfer tax, and income tax provisions of the Internal Revenue Code and Treasury Regulations are subject to change. We grant our Trust Protector the authority to amend this trust instrument's terms in this manner as will, in our Trust Protector's sole and absolute discretion, eliminate or minimize the state and federal taxes payable by either of our estates and provide the maximum benefit to our beneficiaries as expressed in this instrument. This includes dividing trust property into separate shares or funds;

correct ambiguities, including scrivener errors, that might otherwise require court construction or reformation;

grant any trust beneficiary of any trust created under this instrument the unlimited and unrestricted testamentary general power to appoint all or any portion of the principal and undistributed income of the beneficiary's trust or trust share to the creditors of the beneficiary's estate. As a condition for the beneficiary's exercise of this power, our Trust Protector may require that the beneficiary first obtain the consent of our Trust Protector. Any testamentary power of appointment granted by our Trust Protector may only be exercised personally by the beneficiary, must be exercised in writing, and may be revoked by our Trust Protector throughout that beneficiary's lifetime. We suggest that our Trust Protector exercise this authority to subject trust property to estate tax instead of the generation-skipping transfer tax or when it appears that it may reduce overall taxes; and

add or modify terms of any trust created under this instrument so that the trust will protect the financial resources governed by this instrument and comply with the Trustmakers' intent that the trust assets not be considered income or resources for all entitlement benefits from any

Rudolph Trust
4-3

government agency, such as Social Security Disability payments, Medicare, Supplemental Security Income (SSI), In-Home Support Service (IHSS), and any other special-purpose benefits for which the beneficiary is eligible.

Our Trust Protector may not amend this instrument in any manner that would result in a reduction in the estate tax marital deduction under Internal Revenue Code Section 2056 or the estate tax charitable deduction under Section 2055, to which either of our estates would otherwise be entitled. Further, our Trust Protector may not amend this instrument in any manner that would limit or alter the rights of a beneficiary in any trust assets held by the trust before the amendment unless the purpose of the amendment is to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Notwithstanding any other provision of this instrument, the Trust Protector may not amend or modify any power or provision of the trust so as to expand the Trust Protector's amending powers or the Trust Protector's other existing powers, authorities, or discretions. But the previous provision does not prevent the Trust Protector from making amendments to correct scrivener's errors as to the Trust Protector's powers, authorities, and discretions, or to amend the trust in any manner required for the sole purpose of ensuring that the powers, authorities, and discretions of the Trust Protector remain legally binding and valid under state and federal law or to modify an existing trust provision that defeats the Trustmakers' intent of preserving a beneficiary's or beneficiaries' public benefits.

Any amendment made by the Trust Protector will be binding and conclusive on all persons interested in the trust, unless the amendment is shown by clear and convincing evidence to have been made in bad faith by the Trust Protector. The Trust Protector may not be liable for any consequences of amending or not amending the trust. Any amendment must be made in writing and signed by the Trust Protector. The Trust Protector must deliver a copy of the amendment to the Primary Beneficiaries and Trustees of the amended trust.

**(b)     Power to Change the Governing Law and Situs of Administration**

The Trust Protector may change the governing law of the trust, remove all or any part of the property, or change the situs of administration of the trust from one jurisdiction to another as more specifically set forth in Section 18.06 of this instrument.

**(c)     Power to Terminate a Trust**

The Trust Protector may terminate this trust or any trust created under this instrument at any time as more specifically set forth in Section 16.21 of this instrument.

### (d)  Power to Decant a Trust

The Trust Protector may appoint the property subject to our Trustee's power of distribution in trust for the benefit of one or more beneficiaries of any trust created under this instrument under the terms established by the Trust Protector, and as more specifically set forth in Section 16.03 of this instrument.

### (e)  Power to Remove and Appoint Trustees

The Trust Protector may remove any Trustee (other than a Trustmaker) of any trust created under this instrument at any time, with or without cause. If the office of Trustee of a trust is vacant and no successor Trustee is effectively named, the Trust Protector may appoint an individual or a corporate fiduciary to serve as Trustee. A Trust Protector may not appoint any then-serving Trust Protector as a Trustee.

If the Trust Protector removes a Trustee, notice of removal must be made in writing and delivered to our Trustee being removed and any other then-serving Trustees. The removal of our Trustee will be effective in accordance with the terms of the notice of removal.

If one or more beneficiaries also hold the power to remove, replace, or remove and replace Trustees, the Trust Protector may veto any removal, appointment, or both made by any beneficiary.

### (f)  Power to Refuse a Contribution in Whole or in Part

Concurrent with our Trustee's acceptance of any contribution to the trust, our Trustee must notify the Trust Protector in writing that a contribution has been made, and must notify the donor that the Trust Protector may direct our Trustee to refuse the contribution in whole or in part. The Trust Protector may direct our Trustee to refuse or reject any contribution made to the trust in whole or in part in the Trust Protector's sole and absolute discretion. The Trust Protector must make the direction to refuse or reject a contribution in writing. If the Trust Protector fails to act in writing within 10 days of the date on which the Trust Protector received written notice of the contribution, the Trust Protector will be considered to have approved the contribution *in toto*. If the Trust Protector directs our Trustee to refuse the contribution, our Trustee must return any refused property to the donor who contributed the property under the authority of this Subsection.

### (g)  Power to Compel, Approve, or Reject Trustee Accountings

The Trust Protector may demand from time to time a written accounting from our Trustee, but not more often than quarter-annually. If our Trustee fails to account to the Trust Protector within 30 days of a written demand, the Trust Protector may institute appropriate legal actions on behalf of our beneficiaries to compel a full accounting and for other appropriate relief.

The Trust Protector must either approve or reject any accountings provided
by any Trustee within 60 days after the Trustee provides the accounting.
Failure to act by the Trust Protector within the 60-day period will be treated
as approval of the accounting by the Trust Protector. If the Trust Protector
approves an accounting, the approval will be binding on all other parties to
the fullest extent allowable under the law. If the Trust Protector rejects a
Trustee's accounting, the Trust Protector must provide the Trustee with an
explanation that adequately enables the Trustee to revise its accounting.
The Trustee will then present the revised accounting to the Trust Protector
for approval or further revision, as necessary.

### (h)    Power to Construe the Terms of This Instrument

The Trust Protector may settle any disputes concerning the interpretation of
any provision contained in this instrument that arise as a result of any
perceived ambiguity. In doing so, the role of the Trust Protector is to ensure
that the instrument is construed in a manner consistent with our estate
planning objectives.

### (i)    Executing Documents Denoting Authority

The Trust Protector may execute and deliver, and may direct any Trustee to
execute and deliver, any documents necessary to carry out any power
granted to the Trust Protector or our Trustee. All parties dealing with the
Trust Protector and our Trustee may rely on statements and documents
made by the Trust Protector and by any Trustee. No party is required to
inquire into any statement or document's validity. If any conflict exists
between assertions of authority made by the Trust Protector and our Trustee,
assertions made by the Trust Protector will control, and any assertion made
by our Trustee will be disregarded to the extent of the conflict.

## Section 4.10    Limitation on Trust Protector Powers

A Trust Protector may not exercise any power or discretion in favor of the Trust Protector,
for the Trust Protector's benefit, or for the benefit of any person to whom the Trust
Protector is related or subordinate within the meaning of Internal Revenue Code Section
672(c). Our intent is that nothing in this instrument be construed in any manner that would
cause the Trust Protector to possess a general power of appointment within the meaning of
Internal Revenue Code Sections 2041 and 2514. This provision, however, does not
prohibit the Trust Protector or any related party from receiving reasonable fees for services
rendered to the Trust.

If our Trust Protector exercises any one of the powers granted in Section 4.09(b), Section
4.09(c), or Section 4.09(d), the Trust Protector must direct that an amount of assets will be
left with the Trustee, sufficient in the Trustee's discretion to cover an estimate of the
reasonable claims, expenses and taxes that the Trustee may incur in defending any
anticipated claims or winding up the trust.

In exercising and considering whether to exercise any power granted to a Trust Protector
under this agreement, the Trust Protector should make reasonable inquiry into any matter

or seek any information that reasonably bear upon the Trust Protector's decision to exercise the power.

### Section 4.11    Trust Protector May Release Powers

Acting on behalf of itself and all successor Trust Protectors, a Trust Protector may irrevocably release, renounce, suspend, or limit any power or discretion held by the Trust Protector at any time.

### Section 4.12    Trust Protector Considered to Have Consented

If any provision of this Article requires the consent or approval of a Trust Protector before a Trustee can act and the Trust Protector does not affirmatively deny consent to the proposed action in writing within 10 days of being notified in writing that approval or consent is sought for the particular act, the Trust Protector will be considered to have given consent or approval for the Trustee's proposed action.

### Section 4.13    Trust Protector Compensation

Any Trust Protector serving under this instrument is entitled to receive reasonable compensation for services rendered, taking into consideration:

> the market rate for similar services in the jurisdiction in which the Trust Protector serves;
>
> the breadth and nature of the powers, authorities, and discretions granted to the Trust Protector;
>
> the amount of time the Trust Protector will likely devote to overseeing the trust and our Trustee; and
>
> the trust property's current value and the projected amount of appreciation.

The Trust Protector is entitled to reimbursement for all expenses incurred in the performance of its duties as Trust Protector, including reasonable travel expenses.

Serving in the capacity of Trust Protector does not prevent the Trust Protector from also providing legal, investment, or accounting services on behalf of the trust or the trust beneficiaries. If the Trust Protector is providing professional services, the Trust Protector is entitled to charge its normal and customary fees for services provided or to be provided, in addition to the Trust Protector's ordinary compensation as Trust Protector.

### Section 4.14    Right to Examine Trust Records

The books and records of each trust created under this instrument, including all documentation, inventories, and accountings, must be open and available for inspection by the Trust Protector at all reasonable times.

### Section 4.15    Employment of Professionals

Any Trust Protector may appoint, employ, and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, advisors, agents, and employees to advise or assist in the performance of the Trust Protector's duties. The Trust





Protector may act on the recommendations of the persons or entities employed, with or without independent investigation.

The Trust Protector may reasonably compensate an individual or entity employed to assist or advise the Trust Protector, regardless of any other relationship existing between the individual or entity and the Trust Protector.

The Trust Protector may direct and our Trustee will pay the usual compensation for services contracted for under this Section out of trust income or principal as the Trust Protector deems advisable. The Trust Protector may direct payment of compensation to an individual or entity employed to assist or advise the Trust Protector without diminishing the compensation to which the Trust Protector is entitled under this instrument. A Trust Protector who is a partner, stockholder, officer, director, or corporate affiliate in any entity employed to assist or advise the Trust Protector may nonetheless receive the Trust Protector's share of the compensation paid to the entity.

# Article Seventeen
# Our Trustee's Powers

### Section 17.01    Introduction to Trustee's Powers

Except as otherwise specifically provided in this trust, our Trustee may exercise the powers granted by this trust without prior approval from any court, including those powers set forth under the laws of the State of Arizona or any other jurisdiction whose law applies to this trust. The powers set forth in ARS 14-10815 and 14-10816 are specifically incorporated into this trust.

Our Trustee shall exercise the Trustee powers in the manner our Trustee determines to be in the beneficiaries' best interests. Our Trustee must not exercise any power inconsistent with the beneficiaries' right to the enjoyment of the trust property in accordance with the general principles of trust law.

Our Trustee may have duties and responsibilities in addition to those described in this trust. We encourage any individual or corporate fiduciary serving as Trustee to obtain appropriate legal advice if our Trustee has any questions concerning the duties and responsibilities as Trustee.

### Section 17.02    Execution of Documents by Our Trustee

Our Trustee may execute and deliver any written instruments that our Trustee considers necessary to carry out any powers granted in this trust.

### Section 17.03    Investment Powers in General

Our Trustee may invest in any type of investment that our Trustee determines is consistent with the investment goals of the trust, whether inside or outside the geographic borders of the United States of America and its possessions or territories, taking into account the overall investment portfolio of the trust.

Without limiting our Trustee's investment authority in any way, we request that our Trustee exercise reasonable care and skill in selecting and retaining trust investments. We also request that our Trustee take into account the following factors in choosing investments:

      the potential return from the investment, both in income and appreciation;

      the potential income tax consequences of the investment;

      the investment's potential for volatility; and

      the role the investment will play in the trust's portfolio.

We request that our Trustee also consider the possible effects of inflation or deflation, changes in global and US economic conditions, transaction expenses, and the trust's need for liquidity while arranging the trust's investment portfolio.

Our Trustee may delegate his or her discretion to manage trust investments to any registered investment advisor or corporate fiduciary.



Rudolph Trust
17-1

### Section 17.04   Banking Powers

Our Trustee may establish any type of bank account in any banking institutions that our Trustee chooses.   If our Trustee makes frequent disbursements from an account, the account does not need to be interest bearing.  Our Trustee may authorize withdrawals from an account in any manner.

Our Trustee may open accounts in the name of our Trustee, with or without disclosing fiduciary capacity, and may open accounts in the name of the trust.  When an account is in the name of the trust, checks on that account and authorized signatures need not disclose the account's fiduciary nature or refer to any trust or Trustee.

### Section 17.05   Business Powers

If the trust owns or acquires an interest in a business entity, whether as a shareholder, partner, general partner, sole proprietor, member, participant in a joint venture, or otherwise, our Trustee may exercise the powers and authority provided for in this Section. The powers granted in this Section are in addition to all other powers granted to our Trustee in this trust.

#### (a)      No Duty to Diversify

Notwithstanding any duty to diversify imposed by state law or any other provision of this trust, our Trustee may acquire or indefinitely retain any ownership interest in or indebtedness of any closely held or nonpublicly traded entity in which the trust, we, our descendants, and the spouses of our descendants have an ownership interest (the *business interests*), and even though any business interest may constitute all or a substantial portion of the trust property.  We specifically authorize our Trustee to invest or indefinitely retain all or any part of the trust property in these business interests, regardless of any resulting risk, lack of income, diversification, or marketability.  We waive any applicable prudent investor rule, as well as the Trustee's standard of care and duty to diversify with respect to the acquisition or retention of these business interests.

We recognize that the value of a noncontrolling interest in a business entity may be less than the underlying value of the entity's net assets. Nevertheless, we authorize our Trustee to acquire or retain any noncontrolling business interests.

#### (b)      Specific Management Powers

Our Trustee has all power and authority necessary to manage and operate any business owned by the trust, whether directly or indirectly, including the express powers set forth in this Subsection.  Our Trustee may participate directly in the conduct of the business, by serving as a general partner of a limited partnership, a member, manager or managing member of a limited liability company, or a shareholder of a corporation, or may employ others to serve in that capacity.

Our Trustee may participate in the management of the business and delegate management duties and powers to any employee, manager, partner, or associate of the business, without incurring any liability for the delegation. To the extent that the business interest held by the trust is not one that includes management powers (such as a minority stock interest, limited partnership interest, or a membership interest in a limited liability company), our Trustee has no obligation to supervise the management of the underlying assets, and no liability for the actions of those who do manage the business.

Our Trustee may enter into management trusts and nominee trusts in which our Trustee and the trust may serve as the exclusive manager or nominee of property or property interests on behalf of any limited partnership, limited liability company, or corporation.

Our Trustee, individually, or if our Trustee is a corporate fiduciary, then an employee of our Trustee, may act as a director, general or limited partner, associate, or officer of the business.

Our Trustee may participate with any other person or entity in the formation or continuation of a partnership either as a general or limited partner, or in any joint venture. Our Trustee may exercise all the powers of management necessary and incidental to a membership in the partnership, limited partnership, or joint venture, including making charitable contributions.

Our Trustee may reduce, expand, limit, or otherwise adjust the operation or policy of the business. Our Trustee may subject the trust's principal and income to the risks of the business for any term or period, as our Trustee determines.

For any business in which the trust has an interest, our Trustee may advance money or other property, make loans (subordinated or otherwise) of cash or securities, and guarantee the loans of others made to the business. Our Trustee may borrow money for the business, either alone or with other persons interested in the business, and may secure the loan or loans by a pledge or mortgage of any part of any trust property.

Our Trustee may select and vote for directors, partners, associates, and officers of the business. Our Trustee may enter into owners' agreements with a business in which the trust has an interest or with the other owners of the business.

Our Trustee may execute agreements and amendments to agreements as may be necessary to the operation of the business, including stockholder agreements, partnership agreements, buy-sell agreements, and operating agreements for limited liability companies.

Our Trustee may generally exercise any powers necessary for the continuation, management, sale, or dissolution of the business.

Rudolph Trust
17-3

Our Trustee may participate in the sale, reorganization, merger, consolidation, recapitalization, or liquidation of the business. Our Trustee may sell or liquidate the business or business interest on terms our Trustee deems advisable and in the best interests of the trust and the beneficiaries. Our Trustee may sell any business interest held by the trust to one or more of the beneficiaries of this trust or to any trust in which a majority of the beneficiaries are beneficiaries of this trust. Our Trustee may make the sale in exchange for cash, a private annuity, an installment note, or any combination of those.

Our Trustee may exercise all of the business powers granted in this trust even though our Trustee may be personally invested in or otherwise involved with the business.

**(c)     Business Liabilities**

If any tort or contract liability arises in connection with the business, and if the trust is liable, our Trustee will first satisfy the liability from the assets of the business, and only then from other trust property as determined by our Trustee.

**(d)     Trustee Compensation**

In addition to the compensation set forth in Section 16.10, our Trustee may receive additional reasonable compensation for services in connection with the operation of the business. Our Trustee may receive this compensation directly from the business, the trust or both.

**(e)     Conflicts of Interest**

Our Trustee may exercise all of the powers granted in this trust even though our Trustee may be involved with or have a personal interest in the business.

## Section 17.06     Contract Powers

Our Trustee may sell at public or private sale, transfer, exchange for other property, and otherwise dispose of trust property for consideration and upon terms and conditions that our Trustee deems advisable. Our Trustee may grant options of any duration for any sales, exchanges, or transfers of trust property.

Our Trustee may enter into contracts, and may deliver deeds or other instruments, that our Trustee considers appropriate.

## Section 17.07     Common Investments

For purposes of convenience with regard to the trust property's administration and investment, our Trustee may invest part or all of the trust property jointly with property of other trusts for which our Trustee is also serving as a Trustee. A corporate fiduciary acting as our Trustee may use common funds for investment. When trust property is managed and invested in this manner, our Trustee will maintain records that sufficiently identify this trust's portion of the jointly invested assets.

Rudolph Trust
17-4

## Section 17.08   Environmental Powers

Our Trustee may inspect trust property to determine compliance with or to respond to any environmental law affecting the property. For purposes of this trust, *environmental law* means any federal, state, or local law, rule, regulation, or ordinance protecting the environment or human health.

Our Trustee may refuse to accept property if our Trustee determines that the property is or may be contaminated by any hazardous substance or is or was used for any purpose involving hazardous substances that could create liability to the trust or to any Trustee.

Our Trustee may use trust property to:

> conduct environmental assessments, audits, or site monitoring;

> take remedial action to contain, clean up, or remove any hazardous substance including a spill, discharge, or contamination;

> institute, contest, or settle legal proceedings brought by a private litigant or any local, state, or federal agency concerned with environmental compliance;

> comply with any order issued by any court or by any local, state, or federal agency directing an assessment, abatement, or cleanup of any hazardous substance; and

> employ agents, consultants, and legal counsel to assist our Trustee in these actions.

Our Trustee is not liable for any loss or reduction in value sustained by the trust as a result of our Trustee's decision to retain property on which hazardous materials or substances requiring remedial action are discovered, unless our Trustee contributed to that loss through willful misconduct or gross negligence.

Our Trustee is not liable to any beneficiary or to any other party for any decrease in the value of property as a result of our Trustee's actions to comply with any environmental law, including any reporting requirement.

Our Trustee may release, relinquish, or disclaim any power held by our Trustee that our Trustee determines may cause our Trustee to incur individual liability under any environmental law.

## Section 17.09   Farm, Ranch, and Other Agricultural Powers

Our Trustee may retain, acquire, and sell any farm or ranching operation, whether as a sole proprietorship, partnership, or corporation.

Our Trustee may engage in the production, harvesting, and marketing of farm and ranch products, either by operating directly or indirectly with management agencies, hired labor, tenants, or sharecroppers.

Our Trustee may engage and participate in any government farm program, whether state or federally sponsored.

Our Trustee may purchase or rent machinery, equipment, livestock, poultry, feed, and seed.

Our Trustee may improve and repair all farm and ranch properties; construct buildings, fences, and drainage facilities; and acquire, retain, improve, and dispose of wells, water rights, ditch rights, and priorities of any nature.

Our Trustee may do all things customary or desirable to operate a farm or ranch operation for the benefit of the beneficiaries.

## Section 17.10   Insurance Powers

Our Trustee may purchase, accept, hold, and deal with as owner, insurance policies on either or both of our lives, any beneficiary's life, or any person's life in whom any beneficiary has an insurable interest.

Our Trustee may purchase disability, medical, liability, longterm health care and other insurance on behalf of and for the benefit of any beneficiary.  Our Trustee may purchase annuities and similar investments for any beneficiary.

Our Trustee may execute or cancel any automatic premium loan agreement with respect to any policy, and may elect or cancel any automatic premium loan provision in a life insurance policy.  Our Trustee may borrow money to pay premiums due on any policy, either by borrowing from the company issuing the policy or from another source.  Our Trustee may assign the policy as security for the loan.

Our Trustee may exercise any option contained in a policy with regard to any dividend or share of surplus apportioned to the policy to reduce the amount of a policy, to convert or exchange the policy, or to surrender a policy at any time for its cash value.

Our Trustee may elect any paid-up insurance or extended-term insurance nonforfeiture option contained in a policy.

Our Trustee may sell any policy at its fair market value to anyone having an insurable interest in the policy, including the insured.

Our Trustee may exercise any other right, option, or benefit contained in a policy or permitted by the issuing insurance company.

Upon termination of the trust, our Trustee may transfer and assign the policies held by the trust as a distribution of trust property.

## Section 17.11   Loans and Borrowing Powers

Our Trustee may make loans to any person including a beneficiary, as well as an entity, trust, or estate, for any term or payable on demand, and secured or unsecured.

Our Trustee may encumber any trust property by mortgages, pledges, or otherwise, and may negotiate, refinance, or enter into any mortgage or other secured or unsecured financial arrangement, whether as a mortgagee or mortgagor.  The term may extend beyond the trust's termination and beyond the period required for an interest created under this trust to vest in order to be valid under the rule against perpetuities.



Rudolph Trust
17-6

Our Trustee may enter into, negotiate, or modify the terms of any mortgage or any other secured or unsecured agreement granted in connection with any loan entered into by either or both of us or by any Trustee, and may release or foreclose on any mortgage or security interest payable to either or both of us or to the trust.

Our Trustee may borrow money at interest rates and on other terms that our Trustee deems advisable from any person, institution, or other source including, in the case of a corporate fiduciary, its own banking or commercial lending department.

Our Trustee may purchase, sell at public or private sale, trade, renew, modify, and extend mortgages. Our Trustee may accept deeds instead of foreclosing.

### Section 17.12   Nominee Powers

Our Trustee may hold real estate, securities, and any other property in the name of a nominee or in any other form, without disclosing the existence of any trust or fiduciary capacity.

### Section 17.13   Oil, Gas and Mineral Interests

Our Trustee may acquire, maintain, develop, and exploit, either alone or jointly with others, any oil, gas, coal, mineral, or other natural resource rights or interests.

Our Trustee may drill, test, explore, mine, develop, extract, remove, convert, manage, retain, store, sell, and exchange any of those rights and interests on terms and for a price that our Trustee deems advisable.



Our Trustee may execute leases, pooling, unitization, and other types of agreements in connection with oil, gas, coal, mineral, and other natural resource rights and interests, even though the terms of those arrangements may extend beyond the trust's termination.

Our Trustee may execute division orders, transfer orders, releases, assignments, farm outs, and any other instruments that it considers proper.

Our Trustee may employ the services of consultants and outside specialists in connection with the evaluation, management, acquisition, disposition, and development of any mineral interest, and may pay the cost of the services from the trust's principal and income.

### Section 17.14   Payment of Property Taxes and Expenses

Except as otherwise provided in this trust, our Trustee may pay any property taxes, assessments, fees, charges, and other expenses incurred in the administration or protection of the trust. All payments will be a charge against the trust property and will be paid by our Trustee out of income. If the income is insufficient, then our Trustee may make any payments of property taxes or expenses out of the trust property's principal. Our Trustee's determination with respect to this payment will be conclusive on the beneficiaries.

### Section 17.15   Purchase of Assets from and Loans to a Deceased Trustmaker's Probate Estate



Upon the death of a Trustmaker, our Trustee may purchase at fair market value and retain in the form received any property that is a part of the deceased Trustmaker's probate or

trust estate as an addition to the trust. In addition, our Trustee may make secured and unsecured loans to the deceased Trustmaker's probate or trust estate. Our Trustee may not be held liable for any loss suffered by the trust because of the exercise of the powers granted in this Section.

Our Trustee may not use any trust property for the benefit of the deceased Trustmaker's estate as defined in Code of Federal Regulations Title 26 Section 20.2042-1(b), unless the property is included in the deceased Trustmaker's gross estate for federal estate tax purposes.

### Section 17.16    Qualified Real Property Valuation

Our Independent Trustee has the power to amend the terms of a trust holding *qualified real property* as defined in Internal Revenue Code Section 2032A, in order to permit the qualified real property to qualify for special use valuation permitted under Section 2032A, even if the amendment changes beneficial interests and that directs the segregation of trust property into more than one trust.

### Section 17.17    Qualified Tuition Programs

Our Trustee may purchase tuition credits or certificates or make contributions to an account in one or more qualified tuition programs as defined under Internal Revenue Code Section 529 on a beneficiary's behalf for the purpose of meeting the beneficiary's qualified higher education expenses. With respect to an interest in any qualified tuition program, our Trustee may act as contributor, administering the interest by actions including:

> designating and changing the designated beneficiary of the interest in the qualified tuition program;
>
> requesting both qualified and nonqualified withdrawals;
>
> selecting among investment options and reallocating funds among different investment options;
>
> making rollovers to another qualified tuition program; and
>
> allocating any tax benefits or penalties to the beneficiaries of the trust.

Notwithstanding anything in this provision to the contrary, the designated beneficiary must always be a beneficiary of the trust from which the funds were distributed to establish the interest in the qualified tuition program. Investment in a qualified tuition program will not be considered a delegation of investment responsibility under any applicable statute or other law.

### Section 17.18    Real Estate Powers

Our Trustee may sell at public or private sale, convey, purchase, exchange, lease for any period, mortgage, manage, alter, improve, and in general deal in and with real property in the manner and on the terms and conditions as our Trustee deems appropriate.

Our Trustee may grant or release easements in or over, subdivide, partition, develop, raze improvements to, and abandon any real property.

Rudolph Trust
17-8

Our Trustee may manage real estate in any manner considered best, and may exercise all other real estate powers necessary to effect this purpose.

Our Trustee may enter into contracts to sell real estate. Our Trustee may enter into leases and grant options to lease trust property, even though the term of the agreement extends beyond the termination of any trusts established under this trust and beyond the period that is required for an interest created under this trust to vest in order to be valid under the rule against perpetuities. Our Trustee may enter into any contracts, covenants, and warranty agreements that our Trustee deems appropriate.

### Section 17.19    Residences and Tangible Personal Property

Our Trustee may acquire, maintain, and invest in any residence for the beneficiaries' use and benefit, whether or not the residence is income producing and without regard to the proportion that the residence's value may bear to the trust property's total value, even if retaining the residence involves financial risks that Trustees would not ordinarily incur. Our Trustee may pay or make arrangements for others to pay all carrying costs of any residence for the beneficiaries' use and benefit, including taxes, assessments, insurance, maintenance, and other related expenses.

Our Trustee may acquire, maintain, and invest in articles of tangible personal property, whether or not the property produces income. Our Trustee may pay for the repair and maintenance of the property.

Our Trustee is not required to convert the property referred to in this Section to income-producing property, except as required by other provisions of this trust.

Our Trustee may permit any Income Beneficiary of the trust to occupy any real property or use any personal property owned by the trust on terms or arrangements that our Trustee determines, including rent free or in consideration for the payment of taxes, insurance, maintenance, repairs, or other charges.

Our Trustee is not liable for any depreciation or loss resulting from any decision to retain or acquire any property as authorized by this Section.

### Section 17.20    Digital Assets

Our Trustee has the authority to access, modify, control, archive, transfer, and delete our digital assets.

Digital assets include our sent and received emails, email accounts, digital music, digital photographs, digital videos, gaming accounts, software licenses, social-network accounts, file-sharing accounts, financial accounts, domain registrations, Domain Name System (DNS) service accounts, blogs, listservs, web-hosting accounts, tax-preparation service accounts, online stores and auction sites, online accounts, and any similar digital asset that currently exists or may be developed as technology advances.

Our digital assets may be stored in the cloud or on our own digital devices. Our Trustee may access, use, and control our digital devices in order to access, modify, control, archive, transfer, and delete our digital assets—this power is essential for access to our digital assets that are only accessible through our digital devices. Digital devices include desktops,

laptops, tablets, peripherals, storage devices, mobile telephones, smartphones, and any similar hardware that currently exists or may be developed as technology advances.

### Section 17.21    Retention and Abandonment of Trust Property

Our Trustee may retain any property constituting the trust at the time of its creation, at the time of the death of a Trustmaker, or as the result of the exercise of a stock option, without liability for depreciation or loss resulting from retention. Our Trustee may retain property, notwithstanding the fact that the property may not be of the character prescribed by law for the investment of assets held by a fiduciary, and notwithstanding the fact that retention may result in inadequate diversification under any applicable Prudent Investor Act or other applicable law.

Our Trustee may hold property that is not income producing or is otherwise nonproductive if holding the property is in the best interests of the beneficiaries in the sole and absolute discretion of our Trustee. On the other hand, our Trustee will invest contributions of cash and cash equivalents as soon as reasonably practicable after the assets have been acquired by the trust.

Our Trustee may retain a reasonable amount in cash or money market accounts to pay anticipated expenses and other costs, and to provide for anticipated distributions to or for the benefit of a beneficiary.

Our Trustee may abandon any property that our Trustee considers of insignificant value.

### Section 17.22    Securities, Brokerage and Margin Powers

Our Trustee may buy, sell, trade, and otherwise deal in stocks, bonds, investment companies, mutual funds, common trust funds, commodities, and other securities of any kind and in any amount, including short sales. Our Trustee may write and purchase call or put options, and other derivative securities. Our Trustee may maintain margin accounts with brokerage firms, and may pledge securities to secure loans and advances made to our Trustee or to or for a beneficiary's benefit.

Our Trustee may place all or any part of the securities held by the trust in the custody of a bank or trust company. Our Trustee may have all securities registered in the name of the bank or trust company or in the name of the bank's nominee or trust company's nominee. Our Trustee may appoint the bank or trust company as the agent or attorney in fact to collect, receive, receipt for, and disburse any income, and generally to perform the duties and services incident to a custodian of accounts.

Our Trustee may employ a broker-dealer as a custodian for securities held by the trust, and may register the securities in the name of the broker-dealer or in the name of a nominee; words indicating that the securities are held in a fiduciary capacity are optional. Our Trustee may hold securities in bearer or uncertificated form, and may use a central depository, clearing agency, or book-entry system, such as The Depository Trust Company, Euroclear, or the Federal Reserve Bank of New York.

Our Trustee may participate in any reorganization, recapitalization, merger, or similar transaction. Our Trustee may exercise or sell conversion or subscription rights for securities of all kinds and descriptions. Our Trustee may give proxies or powers of attorney



Rudolph Trust
17-10

that may be discretionary and with or without powers of substitution, and may vote or refrain from voting on any matter.

### Section 17.23    Settlement Powers

Our Trustee may settle any claims and demands in favor of or against the trust by compromise, adjustment, arbitration, or other means. Our Trustee may release or abandon any claim in favor of the trust.

### Section 17.24    Subchapter S Corporation Stock Provisions

During any period the trust is not treated as a grantor trust for tax purposes under Internal Revenue Code Section 671, this trust or any trust created under this trust may hold any S corporation stock held as a separate *Electing Small Business Trust*, or as a separate *Qualified Subchapter S Trust*, as provided in this Section.

For purposes of this Section, *S corporation stock* means all capital stock issued by a corporation (or other entity taxable as a corporation for federal income tax purposes) that is treated or is intended to be treated under Section 1361(a) as an *S corporation* for federal income tax purposes.

**(a)    Electing Treatment as an Electing Small Business Trust**

If our Trustee elects under Internal Revenue Code Section 1361(e)(3) to qualify any portion of the trust as an *Electing Small Business Trust*, our Trustee shall:

apportion a reasonable share of the unallocated expenses of all trusts created under this trust to the Electing Small Business Trust under the applicable provisions of the Internal Revenue Code and Treasury Regulations; and

administer the trust as an Electing Small Business Trust, under Internal Revenue Code Section 1361(e).

**(b)    Electing Treatment as a Qualified Subchapter S Trust**

If the current Income Beneficiary of the trust makes an election under Section 1361(d)(2) to qualify the trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3), our Trustee shall:

refer to the Qualified Subchapter S Trust using the same name as the trust to which the stock was originally allocated, plus the name of the current Income Beneficiary of the trust, followed by the letters QSST;

administer the Qualified Subchapter S Trust in accordance with the same provisions contained in the trust to which the Trustee allocated the S corporation stock, as long as the provisions of this Subsection control the trust administration to the extent that they are inconsistent with the provisions of the original trust; and

Rudolph Trust
17-11

maintain the Qualified Subchapter S Trust as a separate trust held for the benefit of only one beneficiary as required in Section 1361(d)(3).

Our Trustee shall recommend that the current Income Beneficiary of the trust make a timely election to cause federal tax treatment of the trust as a Qualified Subchapter S Trust.

### (1)    Current Income Beneficiary

The *current Income Beneficiary* of a Qualified Subchapter S Trust is the person who has a present right to receive income distributions from the trust to which the Trustee has allocated the S corporation stock. A Qualified Subchapter S Trust may have only one current Income Beneficiary.

If, under the terms of the trust, more than one person has a present right to receive income distributions from the trust originally holding the S corporation stock, our Trustee shall segregate the S corporation stock into separate Qualified Subchapter S Trusts for each of these people.

### (2)    Distributions

Until the earlier of the death of the current Income Beneficiary or the date on which the trust no longer holds any S corporation stock (the *QSST termination date*), our Trustee shall distribute at least annually all of the trust's *net income*, as defined in Internal Revenue Code Section 643(b) to the current Income Beneficiary.

The terms of the trust to which the S corporation stock was originally allocated govern distributions of principal from the Qualified Subchapter S Trust. But until the QSST termination date, our Trustee may distribute principal only to the current Income Beneficiary of the Qualified Subchapter S Trust and not to any other person or entity.

If the Qualified Subchapter S Trust terminates during the lifetime of the current Income Beneficiary, our Trustee shall distribute all assets of the Qualified Subchapter S Trust to the current Income Beneficiary outright and free of the trust.

### (3)    Allocation of Income and Expenses

Our Trustee shall characterize receipts and expenses of any Qualified Subchapter S Trust in a manner consistent with Internal Revenue Code Section 643(b).

### (4)    Trust Merger or Consolidation

Notwithstanding any other provision of this trust that may seem to the contrary, our Trustee may not merge any

Rudolph Trust
17-12

Qualified Subchapter S Trust with another trust's assets if
doing so would jeopardize the qualification of either trust as
a Qualified Subchapter S Trust.

### (c) Governance of the Trusts

The following additional provisions apply to any separate trust created
under this Section.

#### (1) Protection of S Corporation Status

Our Trustee must not administer a trust holding S
corporation stock in a manner that would cause the
termination of the S corporation status of the entity whose
stock is held as part of the trust. Therefore, during any
period that the trust holds S corporation stock, our Trustee
must construe the terms and provisions of this trust in a
manner that is consistent with the trust qualifying as an
Electing Small Business Trust or as a Qualified Subchapter
S Trust. Our Trustee must disregard any provision of this
trust that cannot be so construed or applied.

#### (2) Methods of Distribution

Our Trustee may not make distributions in a manner that
would jeopardize the trust's qualification as an Electing
Small Business Trust or as a Qualified Subchapter S Trust.

#### (3) Disposition of S Corporation Stock

If our Trustee believes the continuation of any trust would
result in the termination of the S corporation status of any
entity whose stock is held as a part of the trust property, our
Trustee, other than an Interested Trustee, in addition to the
power to sell or otherwise dispose of the stock, has the power
to distribute the stock to the person who is then entitled to
receive the income from the trust.

### Section 17.25  Limitation on Our Trustee's Powers

All powers granted to Trustees under this trust or by applicable law are limited as set forth
in this Section, unless explicitly excluded by reference to this Section. The limitations set
forth in this Section do not apply to either of us while we are both alive, and do not apply
if either of us is serving as Trustee of the Survivor's Trust.

#### (a) An Interested Trustee Limited to Ascertainable Standards

An Interested Trustee may only make discretionary decisions when they
pertain to a beneficiary's health, education, maintenance, or support as
described under Internal Revenue Code Sections 2041 and 2514.

Rudolph Trust
17-13

**(b)    Interested Trustee Prohibited from Acting**

Whenever this trust specifically prohibits or limits an Interested Trustee
from exercising discretion or performing an act, then any Interested Trustee
serving as our Trustee is prohibited from participating in the exercise of that
discretion or performance of that act.  If there is no Trustee serving who is
not an Interested Trustee, then an Independent Special Trustee may be
appointed under the provisions of Section 3.08 to exercise the discretion or
perform the act.

**(c)    Exclusive Powers of My Independent Trustee**

Whenever a power or discretion is granted exclusively to our Independent
Trustee, then any Interested Trustee who is then serving as our Trustee is
prohibited from participating in the exercise of the power or discretion.  If
there is no Independent Trustee then serving, then an Independent Special
Trustee may be appointed under the provisions of Section 3.08 to exercise
the power or discretion that is exercisable only by our Independent Trustee.

**(d)    No Distributions in Discharge of Certain Legal
Obligations**

Our Trustee may not exercise or participate in the exercise of discretion with
respect to the distribution of income or principal that would in any manner
discharge a legal obligation of our Trustee, including the obligation of
support.

If a beneficiary or any other person has the power to remove a Trustee, that
Trustee may not exercise or participate in the exercise of discretion with
respect to the distribution of income or principal that would in any manner
discharge a legal obligation of the person having the power to remove the
Trustee, including that person's obligation of support.

**(e)    Insurance Policy on the Life of Our Trustee**

If the trust holds a policy that insures the life of a Trustee, that Trustee may
not exercise any powers or rights with respect to the policy.  Instead, a Co-
Trustee or an Independent Special Trustee must exercise the powers and
rights with respect to the policy.

If any rule of law or court decision construes the ability of the insured
Trustee to name an Independent Special Trustee as an incident of ownership
of the policy, then a majority of the then current Income Beneficiaries
(excluding the insured Trustee if he or she is a beneficiary) will select the
Independent Special Trustee.

**(f)    Insurance Policy on a Beneficiary's Life**

If the trust holds a policy that insures a beneficiary's life, the beneficiary,
individually or as Trustee, may not exercise any power over the policy, its
cash value, or its proceeds.  This denial of power is intended to prevent an

insured beneficiary from holding any power that would constitute an incident of ownership of the policy.

In addition, no distribution of income or principal to the insured beneficiary may be satisfied out of the policy's proceeds, cash value, or other economic benefit of the policy.

The limitations of this Subsection do not apply if, upon the beneficiary's death, the policy's proceeds would otherwise be included in the beneficiary's gross estate for federal estate tax purposes.

**(b)    Singular and Plural; Gender**

Unless the context requires otherwise, singular words may be construed as plural, and plural words may be construed as singular. Words of one gender may be construed as denoting another gender as is appropriate within the context. The word *or*, when used in a list of more than two items, may function as both a conjunction and a disjunction as the context requires.

**(c)    Headings of Articles, Sections, and Subsections**

The headings of Articles, Sections, and Subsections used within this trust are included solely for the convenience of the reader. They have no significance in the interpretation or construction of this trust.

**(d)    Governing State Law**

This trust is governed, construed, and administered according to the laws of Arizona, as amended except as to trust property required by law to be governed by the laws of another jurisdiction and unless the situs of administration is changed under Section 18.06.

**(e)    Notices**

Unless otherwise stated, any notice required under this trust will be in writing. The notice may be personally delivered with proof of delivery to the party requiring notice and will be effective on the date personally delivered. Notice may also be mailed, postage prepaid, by certified mail with return receipt requested to the last known address of the party requiring notice. Mailed notice is effective on the date of the return receipt. If a party giving notice does not receive the return receipt but has proof that he or she mailed the notice, notice will be effective on the date it would normally have been received via certified mail. If the party requiring notice is a minor or incapacitated individual, notice will be given to the parent or Legal Representative.

**(f)    Severability**

The invalidity or unenforceability of any provision of this trust does not affect the validity or enforceability of any other provision of this trust. If a court of competent jurisdiction determines that any provision is invalid, the remaining provisions of this trust are to be interpreted as if the invalid provision had never been included.

We have executed this trust on April 25, 2016. This trust instrument is effective when signed by us, whether or not now signed by a Trustee.

Lawrence P. Rudolph, Trustmaker and Trustee

Rudolph Trust
18-9



Bianca T. Rudolph, Trustmaker and Trustee

STATE OF ARIZONA                )
                                ) ss.
COUNTY OF MARICOPA              )

This instrument was acknowledged before me on April 25, 2016, by Lawrence P. Rudolph, as Trustmaker and as Trustee, and Bianca T. Rudolph, as Trustmaker and as Trustee.

[Seal]

WHITNEY W PACI
Notary Public - Arizona
Maricopa County
My Comm. Expires Feb 3, 2018

Whitney W. Paci, Notary Public
My commission expires: Feb 3, 2018

Rudolph Trust
18-10

**Exhibit C**

**Pages of Trust the Lawrence P. Rudolph Survivor's Trust dated April 25, 2016,
as amended and restated on June 15, 2021**

## LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016, AS AMENDED AND RESTATED

THIS AGREEMENT is entered into this _2_ day of June, 2022 between LAWRENCE P. RUDOLPH, the "Trustor," and JULIAN L. RUDOLPH, the "Trustee." This Agreement amends and restates, in the entirety the LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016, as previously amended and restated on June 15, 2021 and as amended in part on February 1, 2022, by the Trust Protector, ROBERT E. JONES, JR.

WHEREAS, Trustors LAWRENCE P. RUDOLPH and BIANCA T. RUDOLPH previously established a revocable living trust under agreement dated April 25, 2016, in which agreement the right to amend said trust was reserved by the surviving Trustor in regards to the Survivor's Trust provisions provided for under Section 9.02 of Article 9 of the Trust;

WHEREAS, BIANCA T. RUDOLPH passed away on October 11, 2016, and LAWRENCE P. RUDOLPH is the surviving Trustor;

WHEREAS, upon the death of BIANCA T. RUDOLPH and pursuant to Section 6.01 of Article 6 of said trust, the surviving Trustor's trust property was required to be allocated to the Survivor's Trust;

WHEREAS, pursuant to Section 9.02 of Article 9 of said Trust; the surviving Trustor, LAWRENCE P. RUDOLPH, held the power to amend or revoke the Survivor's Trust contained in Article 6 of said trust agreement;

WHEREAS, the Trustor amended and restated the Survivor's Trust of said trust agreement in its entirety on June 15, 2021, and

WHEREAS, the Trustor has or will transfer to the Trustee certain properties which, together with all increments and other properties later transferred to the Trustee, shall constitute the principal of the trust estate to be held and administered under the terms of this Agreement, and

WHEREAS, the Trustee has agreed to accept said properties and to hold, manage and invest the same, and any properties derived therefrom and, after payment of all proper charges and expenses, to dispose of the net income and principal of the trust estate under the terms of this Agreement.

NOW, THEREFORE, the parties agree as follows:

# ARTICLE 1

## Trust Name, Purpose, Trustor and Family

1.1    Designation of Trust. The trust created hereby shall be known as the LAWRENCE P. RUDOLPH SURVIVOR'S TRUST CREATED UNDER THE RUDOLPH TRUST DATED APRIL 25, 2016, and may also be designated by such number as the Trustee may determine.

1.2    Purpose of Trust. The Trustor desires to establish a plan for the management, conservation and eventual disposition of his assets and intends by establishing this Trust:

    1.2.1    To provide a means by which the Trustee can hold and manage his assets during his lifetime as provided for herein;

    1.2.2    To provide a legal entity for the receipt of assets from his estate as well as for the receipt of proceeds of life insurance policies at the death of the Trustor.

1.3    Trustor and Family. The Trustor is unmarried and is the parent of two (2) children, namely:

        ANABIANCA RUDOLPH born June 9, 1986

        JULIAN L. RUDOLPH, born June 5,1990

## ARTICLE 2

### Trustees and Successors

2.1    Until a Trustee shall decline or become incapable of serving the following persons, shall serve as Trustee or successor Trustee in the order stated:

First:        JULIAN L. RUDOLPH

Second:     ANABIANCA RUDOLPH

2.2    Any person serving as a sole Trustee may name a Special Trustee to serve as a co-Trustee.  Each child may act as sole Trustee of his or her Trust.

4

## ARTICLE 10

### Revocation and Amendment

The Trustor shall have the right to revoke and to amend this trust at any time. The amendment or revocation of this trust may not be made by a Last Will and Testament, and the powers of revocation and amendment are personal to the Trustor and shall not be exercised by a representative. No amendment shall increase the duties of a Trustee without the consent of the Trustee. On the Trustor's death, each trust established hereunder shall be irrevocable and not subject to amendment or revocation by any person whomsoever, other than as provided for in ARTICLE 16 herein.

## ARTICLE 14

### Powers of Trustee

14.1    Each Trustee shall have all powers conferred by law or which are necessary to administer each trust created by this trust agreement including, but not limited to, the following:

14.1.1    The Trustee may hold any properties received in the trust as long as is deemed advisable, regardless of the proportion such property or properties of a similar character so held may bear to the entire amount of the trust estate. The Trustee shall have full power and authority to operate and continue to operate any business or enterprise and to enter into any agreement relating to the operation, expansion, consolidation, merger, sale, termination or reorganization of any such business.

14.1.2    The Trustee may buy, sell, convey, grant options, manage, exchange or otherwise dispose of real or personal property on such terms and for such consideration as is deemed advisable and may invest or reinvest all, or any part of the trust estate, in bank accounts, common or preferred stocks, bonds, debentures, mutual funds, mortgages, notes or other securities, and shall not be restricted to forms of investments which Trustees may be otherwise permitted by law to make.

14.1.3    The Trustee may lease for a term, within or beyond the duration of the trust, assign, partition, divide, subdivide, vacate, improve, alter, repair, mortgage and encumber any property received, acquired or held hereunder, and may give, grant and release to others, licenses, easements, rights and privileges therein either with, or without, consideration, as the Trustee may deem best.

14.1.4    The Trustee may vote in person or by general or limited proxy with respect to any shares of stock or other security and consent directly or through a committee or

33

other agent to the reorganization, consolidation, merger, division, dissolution or liquidation of any corporation in which the trust estate may have an interest.

14.1.5    The Trustee may hold shares of stock, or other property, in the name of the Trustee, in the name of any nominee of the Trustee, or in bearer form, and may exercise any powers herein set forth through such nominee, with or without disclosure of the trust.

14.1.6    Except as otherwise provided herein, determination of what is principal or income shall be governed by the Arizona Revised Uniform Principal and Income Act from time to time existing. Any matter not provided for herein, or in the Arizona Revised Uniform Principal and Income Act, shall be determined by the Trustee.

14.1.6.1    The Trustee shall not be required to establish any reserve for depreciation or to make any charge to depreciation against all or any portion of the income of the trust estate, including any income realized through the use of any portion of the trust estate principal in the conduct of a business by the trust; but the Trustee may determine whether to establish such a reserve and, if so, to fund the same by appropriate charges against the income of the trust estate, such reserve and charges to be established on such assumptions and in such amounts as the Trustee may determine. In exercising the discretion conferred on the Trustee, the Trustee is required to consider that the Trustor's desire is to benefit primarily the income beneficiaries.

14.1.7    The Trustee may borrow money or advance funds for any trust purpose, with or without interest, and pledge all or any part of the trust estate, or income therefrom, to secure repayment.

14.1.8    The Trustee may carry insurance of such kinds and in such amounts as is deemed advisable; litigate, settle or compromise any claim in favor of or against the trust estate

and hold all or any part of the trust estate uninvested for such reasonable periods as shall be deemed advisable.

14.1.9    The Trustee may make division or distribution of property in kind or in money, or partly in kind and partly in money, and may determine the reasonable value of properties for the purpose of such division or distribution; the Trustee may transfer undivided interests in properties or may transfer different properties of equivalent value in making payment, division or distribution of principal or income.

14.1.10    The Trustee shall render, in the absence of a waiver, annual statements of the receipts and disbursements of the income and principal of each trust to the beneficiary thereof after the death of the Trustor.

14.1.11    The Trustee may engage attorneys and such other persons including proxies, auditors, investment advisors and/or agents (even if such persons are affiliated or associated with any corporate trustee), to delegate to them such powers as the Trustee considers desirable, to advise or assist the Trustee in the performance of administrative duties, to act without independent investigation on their recommendations and, instead of acting personally, to employ one or more agents to perform any act or administration, whether or not discretionary (and any fees, compensation and expenses of such attorneys and such other persons, including those persons who are affiliates of any corporate trustee shall be, unless already included in the compensation of the corporate trustee as set forth in its prevailing schedule of fees, in addition to the compensation of the Trustee, an expense of the trust), which services may include but shall not be limited to:

14.1.11.1    any retained affiliate may manage the investment of trust assets or advise on the investment of such assets directly or through the retention of investment managers who may also be affiliates of any corporate trustee;

35

14.1.11.2    any retained affiliate may be custodian of all or part of the trust assets;

14.1.11.3    the retained affiliate may execute or affect transactions for the trust and provide such other services to the trust as are normally provided by a broker-dealer.

14.1.12    The Trustee may lend money to any person, including the probate estate of the Trustor, provided that such a loan shall be adequately secured and bear a reasonable rate of interest, and the Trustee may purchase property at its fair market value as determined, in the Trustee's discretion, from the probate estate of the Trustor.

14.1.13    The Trustee shall not be required to make an actual partition or division of properties among the trusts created hereunder except as may be necessary to effect a total or partial distribution of a trust estate or as otherwise specifically provided by the trust. The Trustee may, in the Trustee's discretion, hold, administer and invest the funds of each trust in one or more common funds and assign undivided interests therein to each trust. A separate accounting shall be made for the interests of each trust in a joint investment, and the income and expenses thereof shall be apportioned according to the interests of each trust. The Trustee shall have the right at any time to equitably separate jointly invested properties into separate trust funds.

14.1.14    The Trustee may apply monies or properties for the benefit of a beneficiary and need not distribute said properties directly to the beneficiaries.

14.1.15    The Trustee may indemnify any and all of the individual Trustees, or former individual Trustees, against expenses incurred by them or any of them, including legal fees, or judgments or penalties rendered or levied against them or any of them in a legal action or suit brought against or threatened to be brought against them or any of them for any action or omission alleged to have been committed by them or any of them while acting as a Trustee hereunder,

including, but non limited to, the exercise of discretion conferred upon the Trustee hereunder,
under the following circumstances: (1) the Trustee is successful on the merits or otherwise in
defense of any issue or matter therein, or (2) the Court in which such action or suit was brought
shall, despite the adjudication of liability, make a finding that the Trustee in incurring such liability
did not act willfully or with gross negligence or with fraudulent or criminal intent in regard to the
matter involved in such action or suit.

   14.1.16  The Trustee may exercise all tax related elections, options, discretion,
and choices under the Internal Revenue Code or any other laws in such manner as the Trustee, in
its sole but reasonable judgment (with the advice of tax counsel where appropriate) believes will
achieve the overall minimum in total combined present and reasonably anticipated (but
appropriately discounted) future administrative expense and tax burden of all kinds, upon the Trust
and the beneficiaries, or other Trusts involved and their beneficiaries, and the Trustor's probate
estate, including, but not limited to, the following:

    14.1.16.1  To exclude any assets from, or include any assets in, the
gross estate of the Trustor, and to make decisions concerning valuation of assets, including
valuation agreements, alternate valuation elections, etc;

    14.1.16.2  To make elections concerning the status of entities under
Subchapter S of the Code, installment payment of taxes, installment reporting of capital gains,
alternative methods of taxing annuities, employee benefits, etc.;

    14.1.16.3  To allocate such administration expenses as are available
for reduction of either federal or state estate taxes or income taxes;

    14.1.16.4  To select the income tax fiscal year of the Trusts hereunder;
to determine the time of distributions and or payment of deductible expenses; to select assets for

allocation and/or distribution (with or without election of gain or loss pro rata allocation of cost basis); to disclaim benefits of any kind receivable by any trust hereunder; to elect to defer or accelerate state inheritance taxation of remainder interests in trusts; etc.

The Trustee shall not be accountable to any person interested in any trust or in the Trustor's estate for the manner in which, in good faith, it carries out this direction to minimize taxes and expenses (including any decision not to incur the expense of detailed analysis of alternative choices) and, even though the Trustee's decision in this regard may result in increased tax or decreased distributions to a Trust, to the estate of the Trustor, or to one or more beneficiaries, there shall in no event be any compensation adjustments or reimbursements between any of the trusts hereunder or any of the trust or estate accounts or beneficiaries by reason of the manner in which the Trustee thus carries out said direction.

14.1.17    The Trustee may choose not to amortize premiums or accumulate discounts.

14.1.18    The Trustee may establish out of income and credit to principal reasonable reserves for depreciation, obsolescence and depletion.

14.1.19    The Trustee may exercise all powers and authority, including any discretion, conferred herein after the termination of any trust created hereunder until such trust is finally distributed.

14.1.20    The Trustee may make, if otherwise consistent with the terms and provision of this Trust Agreement and consented to by the beneficiaries whose interest may be affected, charitable contributions which qualify under Section 170(c) of the Code.

14.1.21    The Trustee may perform other acts necessary or proper for the prudent administration of this Trust Agreement, including execute and deliver necessary instruments and give full receipts and discharges.

14.1.22    The Trustee may transfer the situs of this Trust or any portion of this Trust to some other place, and in so doing, to resign and appoint a substitute trustee or trustees who may delegate any or all trustee power to the appointing Trustee as agent, and to remove any substitute Trustee appointed pursuant to this paragraph at any time and appoint another or others, including the original Trustee.

14.1.23    To make gifts which are excluded from taxation under Sections 2503(b) and 529 of the Internal Revenue Code of 1986, as amended.

14.1.24    The Trustee shall have the power to borrow funds from any person or entity; to guarantee indebtedness or indemnify others in the name of the Trust and to secure any such obligation by mortgage (including, but not limited to, reverse mortgages), pledge, security interest or other encumbrance; and to renew, extend or modify any such obligation for a term within or extending beyond the administration of the term of the Trust. No lender shall be bound to see to, or be liable for, the application of the proceeds of any obligation.

14.1.25    The Trustee shall not be liable for any act or failure to act unless committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries and the Trustee shall be reimbursed for the defense of any claim against the Trustee unless the Trustee is held to have acted or failed to act in bad faith or with reckless disregard for the interests of the beneficiaries.

39

IN WITNESS WHEREOF, the parties hereto have signed this Trust on the above date.

TRUSTOR:

_____

LAWRENCE P. RUDOLPH

STATE OF COLORADO    )
                     ) ss.
County of DENVER     )

SUBSCRIBED, SWORN TO and ACKNOWLEDGED before me this 2nd day of June, 2022 by LAWRENCE P. RUDOLPH, as Trustor.

[Notary seal and expiration date]

Notary _____

JOHN CASTELLANO
Notary Public
State of Colorado
Notary ID # 20074021840
My Commission Expires 07-31-2023

64

# **Exhibit C**

**ESTATE OF BIANCA RUDOLPH**
**Allocation to Credit ByPass Trust**

| Asset | Dated Acquired | Value AT Approx Apr 2016 | Value Current | Bianca's Share |
|---|---|---|---|---|
| | | | | 6,915,974.00 |
| William Building Inc. Stock | Aug-88 | | | |
| ARGALI LLC | Jul-99 | | | |
| L. P. Rudolph Holdings, LLC | Apr-08 | | | |
| Three Rivers Dental Group/Greensburg LLC | Jul-08 | | | |
| R. P. N. C. LLC | Sep-09 | | | |
| Cookman Community Development Urban Renewal, LLC | Oct-09 | | | |
| Camelback Consulting Marketing, LLC | Jan-11 | | | |
| Market Place Investors, LLC | Jan-11 | | | |
| Mars Hill Investors, LLC | Jul-11 | | | |
| 4141 E. Lakeside Lane (value less debt) sold 3/2019 | Feb-12 | 1,481,680.00 2,300,000.00 | | 740,840.00 |
| 7350 SW 89th St, # 412S, Miami, FL sold 5/2017 | Aug-12 | 330,000.00 | | |
| 101 Moulton Lane, Victor Idaho house | Mar-14 | 500,000.00 | | 250,000.00 |
| Wells Fargo Saving 5336388672 | pre - 2016 | 1,602.00 | 20,635.28 | |
| Wells Fargo Checking 1101536678 | pre - 2016 | 25,385.00 | 30,505.54 | |
| Wells Fargo Checking 2895619639 | pre - 2016 | | 1,060.00 | |
| Wells Fargo Checking 3855643049 | pre - 2016 | 98,178.00 | 54,128.68 | |
| Citizens Bank Checking xxx-871-2 | | 7,710.00 | | |
| Morgan Stanley # xxx-0234-125 | | 7,384.00 | | |
| Morgan Stanley # xxx-0236-125 | | 1,664,636.00 | | 2,000,000.00 |
| Morgan Stanley # xxx-0237-125 | | 1,890,083.00 | | |
| Morgan Stanley # xxx-2572-125 | | 9,980.00 | | |
| Vanguard # xxx-5266 | | 822,021.00 | | 400,000.00 |
| TD Ameritrade | | 2,998.00 | | |
| Nuveen Insured Mun Funds 529 shares | | | | |
| Wells Fargo Bank  Bus Checking 9749 | | 6,876.00 | | |
| Wells Fargo Bank Bus Savings 0368 | | 1,386.00 | | |
| PNC Bank Bus Checking 4196 | | 5,008.00 | | |
| PNC Bank Bus Checking 5268 | | 102,098.00 | | |
| PNC Bank Bus Checking 5033 | | 84,660.00 | | |
| PNC Bank Bus Checking 4188 | | 81,250.00 | | |
| PNC Bank Bus Checking 0548 | | 64,007.00 | | |
| Morgan Stanley Larry's IRA 0238-125 | | 609,129.00 | | |
| Morgan Stanley Larry's IRA 2309-125 | | 1,007,595.00 | | |
| Morgan Stanley Bianca's IRA 2585-125 | | 368,666.00 | 376,822.00 | Moved to Survivor's Trust or Dr. Rudolph 02/2017 |
| Morgan Stanley Bianca's IRA 1397-058 | | 39,427.00 | 41,482.00 | Moved to Survivor's Trust or Dr. Rudolph 01/2017 |
| Vanguard Bianca's IRA 3793 | | 159,485.00 | 183,251.00 | Moved to Survivor's Trust or Dr. Rudolph 12/2016 |