IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON,**

Defendants.

___

**MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES' MOTION TO DISMISS PETITIONERS' VERIFIED PETITION FOR ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED**

___

Christopher P. Hotaling

**NIXON PEABODY LLP**
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:   312.977.4418
Fax:   833.968.0535

John R. Sandweg

**NIXON PEABODY LLP**
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:   202.585.8189
Fax:   877.743.5914

**INTRODUCTION**

Petitioners have established more than a "facially colorable interest in the seized property" to satisfy the standing requirements for an ancillary petition, *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009), and therefore have stated a cognizable claim for relief under 21 U.S.C. § 853(n). Notably, the United States does *not* dispute that a constructive trust qualifies as a legal interest in a forfeiture proceeding that can defeat its claim to the property subject to forfeiture in this case. Nor can they, given the consensus of the majority of the Circuits to have confronted this issue. *See Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 245 (2d Cir. 2011); *United States v. Lavin*, 942 F.2d 177, 185-87 & n. 10 (3d Cir. 1991); *United States v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir. 1988); *United States v. Marx*, 844 F.2d 1303, 1308 (7th Cir. 1988); *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004); *United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008). It is clear from the weight of authorities that a constructive trust can trump a government's purported interest in property under a Preliminary Order of Forfeiture. Such a trust was created here and, thus, Petitioners' claim to the forfeitable property is superior to that of the United States.

Undeterred in the face of this authority, the United States simply argues that the requirements of a constructive trust have not been met here. The United States is incorrect. While Petitioners do not contest that they have no "direct" interest in the property subject to forfeiture – "direct" meaning that they were not defrauded into providing assets directly to Dr. Rudolph – this distinction does not matter for purposes of imposing an equitable constructive trust. Additionally, an equitable constructive trust is necessary here to prevent unjust enrichment and compel the surrender of the trust assets to Petitioners as the rightful beneficiaries. Petitioners can clearly and easily demonstrate how the insurance proceeds and appreciation attributable to those proceeds

definitively belong to them, with no other available remedy at law.  Nothing about this inquiry is overly complex.  For these reasons, Petitioners have alleged a cognizable interest in the insurance proceeds and appreciation under 21 U.S.C. § 853(n) sufficient to establish standing and to state a claim for relief.

## FACTS

Petitioners AnaBianca and Julian Rudolph are the daughter and son of the deceased Mrs. Rudolph and Defendant Dr. Lawrence Rudolph.  (Verified Petition ¶¶ 1-2 (ECF No. 367).)  They have petitioned this Court for an ancillary hearing based on their legal interest, both personally and on behalf of their deceased mother's estate, in certain assets this Court has preliminarily ordered forfeited to the United States.  (*Id*. at ¶ 3.)

Prior to her death, Mrs. Rudolph obtained nine life insurance policies from seven insurance carriers.  (*Id*. at ¶ 5.)  Petitioners are specifically listed as contingent beneficiaries on three of the insurance policies, meaning they would receive the proceeds if the primary beneficiary (namely, Dr. Rudolph or the Rudolph Trust) is disqualified in any way.  (*Id*. at ¶¶ 5, 7.)  The Rudolph Trust, which is the primary beneficiary on six of the policies and of which Dr. Rudolph was the trustee until December 2022, provides for distribution of the trust property to Petitioners in the event that Dr. Rudolph is disqualified from acting as a beneficiary.  (*Id*. at ¶¶ 7 n. 6, 8; Pet. Ex. B (ECF No. 367-2).)

Dr. Rudolph began collecting on the life insurance policies almost immediately after Mrs. Rudolph's death in October 2016, receiving over $4.8 million in insurance proceeds.  (Pet. at ¶¶ 9, 11.)  Five years later, Dr. Rudolph was arrested for Mrs. Rudolph's murder.  (*Id*. at ¶ 12.)  He was subsequently tried and convicted in August 2022.  (*Id*. at ¶¶ 13-14.)

This Court entered a Preliminary Order of Forfeiture on May 17, 2023.  (ECF No. 354). On June 16, 2023, Petitioners filed their Verified Petition requesting an ancillary hearing to adjudicate their interest in the assets this Court preliminarily ordered forfeited.[1]  The United States filed their motion to dismiss the Verified Petition on July 28, 2023.  (ECF No. 396.)

## LEGAL STANDARD

"For purposes of the motion [to dismiss a petition for an ancillary hearing], the facts set forth in the petition are assumed to be true."  Fed. R. Crim. P. 32.2(c)(1)(A).  "'Although . . . ancillary proceedings arise in the context of criminal forfeiture, they closely resemble . . . civil proceedings." *United States v. Corpus*, 491 F.3d 205, 208 (5th Cir. 2007).  *See also* Fed. R. Crim. P. 32.2 advisory committee's note to 2000 adoption (stating that courts should follow the Federal Rules of Civil Procedure for "fundamental areas" of ancillary proceedings, including motions to dismiss).  As a result, courts apply the standard of review under Federal Rule of Civil Procedure 12 to motions to dismiss petitions for ancillary proceedings.  *United States v. Butt*, 930 F.3d 410, 413 (5th Cir. 2019) (citations omitted).

A motion to dismiss based on lack of standing attacks the Court's subject matter jurisdiction, and is thus analyzed under Rule 12(b)(1).  *Colo. Env't. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004).  Rule 12(b)(1) challenges may be facial or factual.  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citations omitted).  Because the United States challenges the sufficiency of Petitioners' allegations, but does not dispute them by proffering its own evidence, its attack is facial.  *Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 22-00581, 2022 WL 1266612, at *2 (D. Colo.

---

[1] Petitioners also filed an action in Arizona state court seeking Mrs. Rudolph's share of her and Dr. Rudolph's community assets at the time of her death.  (*See* Mot. to Dismiss Ex. B (ECF No. 396-2).)  This action is unrelated to the present proceeding, which is concerned only with the insurance proceeds and the appreciation attributable to those proceeds.

3

Apr. 28, 2022) (citations omitted). "In reviewing a facial attack on plaintiffs' standing, the Court considers only the sufficiency of the complaint, as it would with a Federal Rule 12(b)(6) motion." *Id*. at 3 (quoting *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010)).

"In evaluating such a motion [under Rule 12(b)(6)], a court must 'assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff.'" *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 825 F. Supp. 2d 1072, 1076–77 (D. Colo. 2011) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "In ruling on such a motion, the dispositive inquiry is whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Id.* at 1077 (internal quotations and citations omitted). "Granting a motion to dismiss 'is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Id.* (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "'Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (internal quotations and citations omitted).

## ARGUMENT

I. **An Equitable Constructive Trust Is Appropriate and Necessary in This Case.**

    A. **Equitable Constructive Trusts Are Flexible Remedies That Do Not Require Restoration of Property to the Original Holder.**

The United States claims that Petitioners "wholly fail to explain how they are the beneficiaries of a constructive trust" (Mot. to Dismiss at 8 (ECF No. 396)), appearing to overlook Petitioners' lengthy Memorandum of Law in Support of their Verified Petition which explains exactly why and how a constructive trust exists for their benefit. (*See generally* Mem. (ECF No.

368).) According to the United States, under Arizona law,[2] Petitioners "must establish that they are asserting their rights and not those of third parties." (*Id*. at 10.) However, the constructive trust remedy is not so narrow. Petitioners do not necessarily need to be the party directly defrauded to be the proper beneficiaries of a constructive trust.

Under Arizona law, a constructive trust is a flexible remedy that is meant to adapt to the particular circumstances of a given situation. "Because imposition of a constructive trust is an equitable remedy, '[t]here is no set or unyielding formula' courts use to impose them." *Turley v. Ethington*, 213 Ariz. 640, 643 (Ct. App. 2006) (citing *Chirekos v. Chirekos*, 24 Ariz. App. 223, 224 (1975)). *See also Raestle v. Whitson*, 119 Ariz. 524, 526 (1978) ("Because of the variety of circumstances in which a constructive trust has been imposed, the doctrine has remained flexible . . . . A court in equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.") (internal quotations and citations omitted).[3]

Specifically, a constructive trust can be adapted to a situation such as this one, where the wrongdoer did not directly defraud the claimant, but defrauded a third party to re-direct the assets from the claimant as the rightful owner to the wrongdoer:

> There are some situations, however, in which a constructive trust is imposed in favor of a plaintiff who has not suffered a loss or who has not suffered a loss as great as the benefit received by the defendant. In these situations, the defendant is compelled to surrender the benefit on the ground that he would be unjustly enriched if he were permitted to retain it, even though that enrichment is not at the expense or wholly at the expense of the plaintiff.

---

[2] The United States argues that Arizona law governs because it is the location where the mail fraud occurred. (Mot. at 9.) Petitioners contend Arizona, Pennsylvania, and Illinois law applies. (Mem. at 8.) However, whether Arizona law or another state's law applies, the result is the same. Petitioners are entitled to an equitable constructive trust over the insurance proceeds and their appreciation.

[3] While the Tenth Circuit mentions in *United States v. Andrews* that a constructive trust "is a proper remedy when a recipient acquired property by defrauding the claimant," 530 F.3d 1232, 1237 (10th Cir. 2008) (citations omitted), it did not state that constructive trusts may *only* be used in these situations.

5

Restatement (First) of Restitution § 160 cmt. d. One such example occurs "where the defendant wrongfully prevents the plaintiff from acquiring property and acquires the property for himself." *Id*. In that situation, "the defendant can be compelled to surrender the property to the plaintiff, and not merely to restore the property to the person from whom the defendant wrongfully acquired it" through a constructive trust. *Id. See also id.* § 169 ("Where a person acquires property from another by fraud, duress or undue influence under such circumstances that a third person is entitled to restitution from the transferee, the transferee holds the property upon a constructive trust for the third person.").

The case here is one such situation. Dr. Rudolph acquired the proceeds from the insurance companies by fraud, but Petitioners were the rightful owners of those proceeds. It would not be equitable to return the proceeds to the insurance companies, because (as further discussed below) they were contractually obligated to pay the proceeds to a legal beneficiary regardless of Dr. Rudolph's actions – the only question was *who* they were obligated to pay. (*See* Mem. at 15-17; *see also* Supplemental Authority, *In re Julian Rudolph, et al.*, No. 23-1162 (10th Cir. May 23, 2023).) Common sense and the law (including the Slayer Statutes) tell us that if the insurance companies had known at the time about Dr. Rudolph's involvement in Mrs. Rudolph's death, they would have bypassed Dr. Rudolph and paid the proceeds directly to Petitioners. (*See id.*; Pet. ¶ 20; Pet. Ex. D (ECF No. 367-4); Pet. Ex. E (ECF No. 367-5).) As such, a constructive trust remedy exists to compel Dr. Rudolph to surrender the proceeds to Petitioners, not to the insurance companies from whom he wrongfully acquired them. *See* Restatement (First) of Restitution §§ 160 cmt. d, 169. *See also Kent v. Klein*, 352 Mich. 652, 658 (1958) (applying constructive trust to

surrender property from recipient to third party, not original holder); *Mesa Petroleum Co. v. Coniglio*, 16 B.R. 1015, 1019 (M.D. Fla. 1982).[4]

### B.     An Equitable Constructive Trust Is Necessary.

The United States similarly misses the mark when arguing that it is not necessary for this Court to impose a constructive trust. According to the United States, a constructive trust only exists to prevent unjust enrichment, and is not required to address the rights of the rightful owners of the assets. (Mot. at 12.) Because forfeiting the assets will prevent Dr. Rudolph from keeping his ill-gotten gains, the United States reasons, the forfeiture will accomplish the same goal as the constructive trust, rendering the remedy unnecessary. (*Id*.) The United States is wrong. Their position is contradicted by the case law (some of which the United States itself relies on) and the public policy rationale underlying constructive trusts.

As the United States recognizes (*id*. at 9), "[a] constructive trust is a legal fiction, 'an equitable remedy devised to prevent unjust enrichment *and compel restitution* of property that in equity and good conscience does not belong to the Defendant.'" *Andrews*, 530 F.3d at 1237 (quoting *Amdura Nat'l Distrib. Co. v. Amdura Corp., Inc. (In re Amdura Corp.)*, 75 F.3d 1447, 1451–52 (10th Cir. 1996)) (emphasis added). "The recipient of the property, the constructive trustee, is deemed to hold legal title to the property for the benefit of the claimant, *and it is the obligation of the constructive trustee to surrender the property to the claimant*." *Id*. (citing Restatement (Third) of Restitution and Unjust Enrichment, § 55(1)-(2) (Tentative Draft No. 6, 2008)) (emphasis added). *See also Matter of Est. of Stoloff–Kelter*, No. 1 CA-CV 15-0451, 2016 WL 6441013, at *4 (Ariz. Ct. App. Nov. 1, 2016) (a constructive trust "is a remedial device, used

---

[4] In the alternative, Petitioners ask that this Court find the insurance companies are the rightful beneficiaries of the constructive trust, such that the full amount of the proceeds and all appreciation be surrendered to them. (*See* Mem. at 17-18.) Either way, it is clear that the proceeds should not be forfeited to the government.

'to compel one who unfairly holds a property interest *to convey that interest to another to whom it justly belongs*.'") (citations omitted) (emphasis added); Restatement (Third) of Restitution and Unjust Enrichment § 55(2) ("The obligation of a constructive trustee is *to surrender the constructive trust property to the claimant*, on such conditions as the court may direct.") (emphasis added). In other words, a constructive trust is not simply about preventing unjust enrichment of a wrongdoer, as the United States argues. It is about preventing unjust enrichment of a wrongdoer *and* providing the constructive trust assets to the rightful owner.

This dual purpose of constructive trusts is also emphasized in the commentary to the Restatement:

> [E]very judicial order recognizing that "B holds X in constructive trust for A" may be seen to comprise, in effect, two remedial components. The first of these is a declaration that B's legal title to X is subject to A's superior equitable claim. The second is a mandatory injunction directing B to surrender X to A or to take equivalent steps.

Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. b. The previous version of the Restatement of Restitution echoes this sentiment:

> In most cases where a constructive trust is imposed the result is to restore to the plaintiff property of which he has been unjustly deprived and to take from the defendant property the retention of which by him would result in a corresponding unjust enrichment of the defendant; in other words the effect is to prevent a loss to the plaintiff and a corresponding gain to the defendant, and to put each of them in the position in which he was before the defendant acquired the property.

Restatement (First) of Restitution § 160 cmt. d.

As such, contrary to the United States's contention, a constructive trust is concerned with addressing the rights of those who were wronged, *in addition to* preventing an unjust enrichment. In this sense, forfeiting the proceeds and appreciation from Dr. Rudolph only accomplishes half

8

the goal. It may prevent the unjust enrichment, but it falls short of turning over the assets to Petitioners as the rightful owners. Thus, a constructive trust is a necessary remedy in this case.[5]

II.     **Petitioners Have Plausibly Alleged Their Interests in the Insurance Proceeds and Thus Have Cognizable Standing to Bring the Verified Petition.**

A.     **The Insurance Proceeds Belong to Petitioners.**

The United States argues that Petitioners "cannot trace their funds to the seized assets" because "those assets were insurance proceeds obtained through mail fraud on the insurance companies" (Mot. at 11), appearing to contend that Petitioners lack standing because they cannot satisfy the traceability requirement for a constructive trust, as the proceeds originated from the insurance companies and were distributed to Dr. Rudolph, without ever passing to Petitioners. The United States is incorrect. For the reasons previously discussed in Part I.A, *supra*, Petitioners can establish a constructive trust over the insurance proceeds, even though they never possessed the proceeds themselves. And for the reasons discussed in Part I.B, *supra*, a constructive trust is necessary here to prevent an unjust enrichment and provide Petitioners with their rightful property. As further shown below, the vast majority of insurance proceeds belong to Petitioners, such that Petitioners may trace their property to the seized assets.

A straightforward examination of the relevant insurance policies demonstrates that Petitioners are entitled to the majority, if not all, of the insurance proceeds, as well as any appreciation in value of the assets purchased with the insurance proceeds in the intervening years since the proceeds were distributed. (*See* Pet. ¶ 5.) For ease of discussion, the nine insurance policies at issue can be separated into two groups – the first group consists of the two Ameritas,

---

[5] To the extent the United States argues that the insurance proceeds must be forfeited to punish Dr. Rudolph, such punishment will happen whether the assets are forfeited or found to be held in constructive trust and turned over to Petitioners. Either way, Dr. Rudolph is forced to disgorge his ill-gotten gains. Just because the United States wishes to punish Dr. Rudolph does not mean it can do so by forfeiting assets that never legally belonged to Dr. Rudolph in the first place.

9

and the MetLife policies ("Group One") and the second group consists of the AAA, Genworth, Fidelity, Great-West, and TransAmerica policies ("Group Two"). What differentiates these two groups is that, with respect to Group One, Petitioners are specifically designated in the policies as contingent beneficiaries while, for Group Two, Petitioners are not identified as contingent beneficiaries, but either the Rudolph Trust or Dr. Rudolph himself are so designated.

Group One poses little difficulty in terms of concluding to whom the proceeds of those particular insurance policies should have been, and now should be, paid. Petitioners were specifically and individually designated by Mrs. Rudolph as the contingent beneficiaries for both Ameritas policies and the MetLife policy. With respect to the proceeds from these particular policies, as discussed in Petitioners' Memorandum of Law (Mem. at 12), Dr. Rudolph cannot claim any right to them because his role in Mrs. Rudolph's murder disqualifies him pursuant to the applicable Slayer Statutes. Because of his disqualification, the proceeds from these Group One policies, by their express terms, revert to the contingent beneficiaries – Petitioners. *See Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475-76 (7th Cir. 1999) ("The usual consequence when a primary beneficiary disclaims or is forced to disclaim an interest under an insurance policy . . . is that the contingent beneficiary takes in the place of the primary one. And this is the approach that a majority of courts take when the beneficiary is disqualified by reason of having murdered his benefactor.") (collecting cases).

This same logic applies to the polices in Group Two. For these policies, either the Rudolph Trust or Dr. Rudolph himself are the primary or contingent beneficiaries. With respect to any possessory interest Dr. Rudolph may personally have in any of these policies, because of the role he played in Mrs. Rudolph's death, the Slayer Statutes extinguish that interest. As it pertains to any interest Dr. Rudolph may have in the Rudolph Trust, that too was terminated. Thus, pursuant

10

to Article 12, Section 12.01 of the Rudolph Trust instrument, the property held by the Trust must be divided "into separate shares for [the trustees'] descendants," *i.e.*, Petitioners. (Pet. Ex. C (ECF No. 367-3).) Moreover, as of December 19, 2022, Dr. Rudolph resigned as Trustee of the Rudolph Trust. (*See* Pet. Ex. B.[6]) As relevant here, Julian now acts as Trustee for the Rudolph Trust in place of his father, and he has Power of Attorney over the Rudolph Trust. Petitioners are now the beneficiaries of the Rudolph Trust. (*See* Pet. Ex. C, Section 12.01.)

Plaintiffs have more than plausibly alleged their entitlement to the insurance proceeds and thus their standing to pursue their Verified Petition. Furthermore, the cases the United States cites in support of their argument that Petitioners cannot trace their funds to the seized assets are inapposite. In *Matter of Lloyd Revocable Tr.*, No. 1 CA-CV 16-0458, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017) and *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 518 (2d Cir. 2023), the parties made no showing whatsoever that their funds were used to acquire the assets over which they sought to establish a constructive trust. Here, Petitioners have clearly shown their rights to the insurance proceeds and their possessory interest in the assets purchased with those proceeds.[7]

**B.    Petitioners' Rights Are Not Speculative, and There Is No Other Remedy at Law Available to Them.**

The United States further contends that Petitioners cannot establish their rights to the insurance proceeds because they involve contractual rights that must be determined by the

---

[6] This document also demonstrates why the United States's point that the Rudolph Trust "is an entity separate and distinct from Lawrence Rudolph" (Mot. at 13) does not matter. Dr. Rudolph was the trustee and controlled the Rudolph Trust at the time the insurance companies paid out the proceeds to the Trust. He did not resign as trustee until December 2022. Therefore, he had control over the proceeds the Trust received, making these proceeds subject to the constructive trust as well.

[7] The United States also cites *Andrews*, 530 F.3d at 1237, which did not concern traceability issues. Rather, the Tenth Circuit refused to impose a constructive trust because there were many different claimants to the property, and the circumstances were such that it was not fair to give one claimant priority over another. Here, there are no other potential claimants besides Petitioners. (*See* Mem. at 15 n. 6; Part II.C, *infra*.)

11

insurance companies and any other claimants under those policies, claiming that Petitioners' right is "speculative." (Mot. at 12-13.) However, it is not unknown whether the insurance companies would have paid the proceeds to Petitioners absent the fraud. Most of the insurance companies have specifically indicated that they were obligated to pay on the policies regardless of the manner of Mrs. Rudolph's death. The only relevant question was who they had to pay. (*See* Pet. ¶ 20; Pet. Ex. D.) The great majority of the insurance companies have also made it clear that they are not seeking to pursue restitution, as they do not view themselves as victims, and thus have no further interests in the proceeds.[8] (*See* Pet. ¶ 20; Pet. Ex. D.) As such, there is no question that Petitioners would have received a large percentage of the proceeds had the insurance companies known about Dr. Rudolph's responsibility for Mrs. Rudolph's murder.[9]

Nor is there any recourse for Petitioners through the insurance companies. For one thing, most of the insurance companies in this case have expressly indicated that they believe they have satisfied their contractual obligations under Mrs. Rudolph's policies. They have told Petitioners as well as the United States that they do *not* believe the insurance proceeds should be returned to them and instead should be paid to Petitioners as the lawful beneficiaries under the policies. As

---

[8] As the Court learned during the August 21, 2023, sentencing hearing of Dr. Rudolph, five of the seven insurance companies who issued policies on Mrs. Rudolph's life have either specifically indicated they do not consider themselves victims in this case entitled to restitution (Genworth) or have executed assignment and release agreements with Petitioners in which they have assigned any and all rights they have as victims of Dr. Rudolph's criminal offenses, including the right to be paid restitution, to Petitioners (Ameritas, Fidelity, Great-West, and TransAmerica). *See* Exhibits A-E. The total value of these policies is $3,904,843.76. Copies of these agreements were previously provided to the United States and are further attached to the Verified Petition as Exhibit A. One insurance company (AAA) has filed a claim with the Court for restitution (policy value of $200,000). The last insurance company (MetLife) has indicated it is still reviewing its recission rights given that Dr. Rudolph took out the policy on Mrs. Rudolph within six months of her death (policy value of $772,901.17).

[9] Petitioners' interest is also not contingent on any further action (Mot. at 8), unlike in *United States v. Kluding*, No. 14-123-1, 2020 WL 5920269 (W.D. Okla. Oct. 6, 2020). *Kluding*, which did not involve a constructive trust, concerned the interest of a beneficiary under a revocable trust that was contingent upon the death of the trustee. 2020 WL 5920269, at *2. Although Petitioners were contingent beneficiaries under several of the policies, their interests are no longer contingent on any event. Because Dr. Rudolph is disqualified from the insurance proceeds due to his role in Mrs. Rudolph's death, Petitioners' interests in the proceeds have fully ripened. (*See* Mem. at 12.)

explained above, *see* footnote 8 *supra*, five of the seven insurance companies have signed agreements with Petitioners in which they have washed their hands of this process and assigned any and all victim rights they have for restitution to Petitioners. (*See* Mem. at 15-17; *see also* Exhibits A-E.[10]) Additionally, the "'adequate remedy at law is limited to cases in which there is an adequate legal remedy *against the defendants that are before the court*.'" *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569 (Ct. App. 2014) (quoting *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 211 (Ct. App. 2010)) (further citations omitted) (emphasis added). The insurance companies are not the defendants before this Court. Therefore, Petitioners have no adequate remedy at law vis-à-vis the insurance companies, and the United States' cases on this point are inapposite. *See ML Servicing Co.*, 235 Ariz. at 569 (finding adequate remedy at law existed against defendants under specific Arizona exemption statute); *Acedo v. Mannion*, No. 1 CA-CV 20-0017, 2020 WL 6286716, at *2 (Ariz. Ct. App. Oct. 27, 2020) (finding adequate remedy at law existed against defendants for money damages).

Nor do Petitioners have an adequate remedy at law against Dr. Rudolph, the defendant in this criminal action. For the reasons the United States provides (Mot. at 17-18), Petitioners cannot establish a statutory constructive trust under A.R.S. § 14-2803(K). Nor do they seek to, as discussed in Part III, *infra*.

### C. Surrendering the Insurance Proceeds to Petitioners Does Not Involve a Complex Inquiry.

The United States's concern about the difficulty of tracing the insurance proceeds and the appreciation attributable to those proceeds (Mot. at 11-12) is overblown. The United States claims that "it would be impossible to segregate those funds and the property appreciable thereto from

---

[10] Because these agreements were previously provided to the United States, including as part of Dr. Rudolph's sentencing, Petitioners are seeking leave to supplement their Verified Petition with these Exhibits instanter.

the rest of the property" (Mot. at 11), but it provides no explanation as to how or why such an inquiry would be "impossible." The cases it cites in support of this point are also inapposite. In *Amtitle Tr. Co. v. Fitch*, there was no evidence that any of the funds disbursed by the title companies was derived from the defendant or from the land in which he had an interest. 25 Ariz. App. 182, 184 (1975). *United States v. Rammuno*, like *Andrews*, did not concern traceability issues at all, but rather denied a constructive trust on the grounds that it would elevate the interests of one claimant over similarly situated claimants, which is not at issue here. 599 F.3d 1269, 1275 (11th Cir. 2010).

The United States similarly contends that this inquiry would be complex based on the pure speculation that "there could be additional beneficiaries or creditors, who are unknown and could potentially file additional insurance claims as beneficiaries or otherwise outside of the two children who have filed the Petition here," thereby requiring "separate and distinct litigation from this action." (Mot. at 13 & n. 10.) This is a red herring and the Court should discount it. There are no other beneficiaries of Mrs. Rudolph's insurance policies. The clear and unambiguous language of those policies states who or what entities are either the direct or contingent beneficiaries. There are no mysterious claimants lurking in the shadows waiting to swoop in to file a last-minute claim against the policies. Similarly, there are no unknown creditors against these policies. If these creditors existed (and they do not), they would certainly have asserted whatever claims they had against Mrs. Rudolph's policies at some point over the last seven years. The absence of any such claims over that time makes it plain that the government's argument on this point is nothing more than rank speculation. Moreover, should any other claimants come forward, they may assert claims for the insurance proceeds against Petitioners, if the law permits.[11]

---

[11] To the extent there is any factual issue regarding Petitioners' entitlement to the insurance proceeds, this Court should allow the parties to conduct factual discovery, as permitted under Federal Rule of Criminal Procedure 32.2(c)(1)(B).

14

**III.     The Slayer Statutes Illustrate the Need for an Equitable Constructive Trust.**

Lastly, the United States contends that Petitioners are not entitled to a statutory constructive trust under the Slayer Statutes. (Mot. at 13-18.) However, Petitioners do not seek the imposition of a statutory constructive trust under the Slayer Statutes. Rather, Petitioners rely on the Slayer Statutes to illustrate the circumstances of the unjust enrichment that justify disqualifying Dr. Rudolph from the insurance proceeds and imposing an equitable constructive trust on such proceeds for the benefit of Petitioners. (*See* Mem. at 10-11.) The Slayer Statutes of most jurisdictions seek to prevent a slayer from benefiting from a killing. Dr. Rudolph has been found guilty of murdering Mrs. Rudolph, and thus he should not benefit in any way from her murder. In this sense, the Slayer Statutes demonstrate why Dr. Rudolph should be deemed disqualified to any rights under the insurance proceeds, and why he should be deemed to have been holding those proceeds in an equitable constructive trust for Petitioners.[12]

## CONCLUSION

For the foregoing reasons, Petitioners Julian Rudolph and AnaBianca Rudolph respectfully request that this Court deny the Government's Motion to Dismiss the Verified Petition, and hold an ancillary hearing pursuant to 21 U.S.C. § 853(n)(5) at which Petitioners may testify and present evidence supporting their superior interests in the forfeited property. Petitioners further respectfully request that this Court recognize their interests in the Final Order of Forfeiture, and order that the forfeited property along with any appreciation in value be disbursed to Petitioners.

---

[12] The United States points out that Mrs. Rudolph's estate has not filed an action in Arizona to impose a constructive trust (Mot. at 18), but by the United States's own arguments, such an action would be futile. The estate cannot establish a statutory constructive trust because Dr. Rudolph's conviction is not final yet. (*Id*. at 17.) By the time his conviction is final, the insurance proceeds may already be forfeited to the government, and there would be no chance of recovery for the estate. For these reasons, an equitable constructive trust in favor of Petitioners as the rightful beneficiaries of the insurance proceeds is necessary now to prevent this injustice.

15

Dated: September 8, 2023

PETITIONERS' COUNSEL

*/s/Christopher P. Hotaling*
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:    312.977.4418

*/s/John R. Sandweg*
John R. Sandweg (DC Bar #1027208)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:    202.585.8189

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on September 8, 2023, and thereby delivered by electronic means to all registered participants.

/s/*Christopher P. Hotaling*
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:   312.977.4418