IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**1. LAWRENCE RUDOLPH**, and
2. LORI MILLIRON,

    Defendants.

## ORDER STRIKING BRIEFING ON PETITION AND MOTION TO DISMISS

This case is before the Court on Petitioners' Julian and AnaBianca Rudolph (jointly, "Petitioners") Verified Petition for Adjudication of Interests in Property Ordered Forfeited ("Petition") (ECF No. 367) and a memorandum of law in support (ECF No. 368). The Government filed a Response and Motion to Dismiss Verified Petition for Adjudication of Interests in Property Ordered Forfeited ("Motion"). (ECF No. 396.) Petitioners filed a response in opposition. (ECF No. 422.) The Government filed a reply and notice of errata. (ECF Nos. 441, 442.)

### I. INTRODUCTION

The Petition was filed on June 16, 2023, a couple of months before Defendant Lawrence Rudolph's ("Defendant") August 21, 203 sentencing hearing, asserting Petitioners' legal interest in all of the property ordered forfeited to the Government in the Preliminary Order of Forfeiture. (ECF No. 367, 412.) At the conclusion of the sentencing hearing, the Court ordered Defendant to pay $4,877,744.93 in restitution to

several life insurance companies.  (ECF No. 415 at 6–7.)  The Court also made its Preliminary Order of Forfeiture (ECF No. 354) final as to Defendant individually.  (ECF No. 412.)  Approximately one month after the sentencing hearing, on September 25, 2023, the parties' briefing on the Petition became ripe.  (ECF Nos. 367, 368, 396, 422, 441.)

The Court has thoroughly reviewed the parties' briefs on the Motion and, for the following reasons, has determined it is necessary to strike the parties' relevant briefing and begin anew.  Instead of setting forth the facts and law on the relevant issues, the briefing in this cases seems to raise more questions than it answers.  One primary point of confusion is **the parties' persistent conflation of restitution and forfeiture in the ancillary portion of the case**.  While the Court will discuss this issue in more depth below, suffice it to say that Petitioners' reliance on the Restatement of Restitution to support many of its arguments has left the Court hopelessly confused as to how to apply their arguments and authority to this proceeding involving forfeited assets.

Adding to the Court's confusion is the parties' dispute concerning the status of certain relevant entities in the case, including: Petitioners, Defendant, the trusts and trustees, and the insurance companies.  Questions abound concerning Petitioners' status as contingent beneficiaries of the life insurance policies, Defendant's shifting status as a trustee of the Rudolph Trust (and any other trusts involved in this case), Julian Rudolph's purported status as current trustee of at least one of the trusts in this case, and the insurance companies' positions as to whether they are victims or wish to assign Petitioners their restitution money.

Finally, rather than making cogent arguments based on the applicable law, the

Court also finds the parties are in large part speaking past each other regarding whether the elements of an equitable constructive trust have been met.

The forementioned issues have rendered the Court unable to address the merits of the Motion, or to determine whether Petitioners have standing to continue in this ancillary proceeding.  Therefore, below, the Court identifies in more detail some of the numerous issues and questions raised by the briefing and some points of clarification.

## II. ISSUES TO ADDRESS IN AMENDED MOTION PRACTICE

### A.    Conflation of Restitution and Forfeiture

The Petition asks the Court to adjudicate Petitioners' interests in the property ordered forfeited—not the restitution funds the Court ordered Defendant to pay to the insurance companies.  (ECF No. 367.)  Nevertheless, Petitioners' response relies on the Restatement of Restitution; informs the Court that at least five insurance companies have agreed to assign their restitution rights to Petitioners; and in a footnote "ask[s] that this Court find the insurance companies are the rightful beneficiaries of the constructive trust, such that the full amount of the proceeds and all appreciation be surrendered to them" and states that "[e]ither way, it is clear that the proceeds should not be forfeited to the government."  (ECF No. 422 at 7, 8, 9, 13.)

Petitioners' citation to restitution law, reliance on the assignment of restitution funds, and request to find that the insurance companies are beneficiaries of a constructive trust simply make no sense to the Court in this context, particularly given the disparate purposes of restitution and forfeiture under the law.[1]

---

[1] The purpose of restitution "is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  *United States v. Hudson*, 483 F.3d 707, 710 (10th Cir. 2007) (citing *United States v. Arutunoff*, 1 F.3d 1112, 1121 (10th Cir. 1993)).  "Restitution is remedial in nature, and its goal

This Court has already ruled that the insurance companies, not Petitioners, are the victims of Defendant's mail fraud for restitution purposes. (ECF No. 344.) The Tenth Circuit affirmed this ruling. (ECF No. 356.) As the Government points out, "[h]ere, the criminal forfeiture is based on the mail fraud on the insurance companies." (ECF No. 441 at 6.) Accordingly, Petitioners' reliance on restitution law in the context of the Petition to adjudicate interests in property ordered forfeited is not adequately explained such that the Court can properly assess these arguments. Similarly, Petitioners fail to adequately explain to what end the Court would rule that the insurance companies—who will already be made whole through restitution—should be made the beneficiaries of an equitable constructive trust.

### B. Petitioners' Legal Status

The Court has been bogged down by the back and forth between the parties with respect to: Petitioners' legal status under the insurance policies as contingent beneficiaries[2]; Petitioners' legal status with respect to the Rudolph Trust and the

---

is to restore the victim's loss. Forfeiture, in stark contrast, is punitive, it seeks to disgorge any profits that the offender realized from his illegal activity." *United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010). Forfeiture vests title in the United States in a defendant's tainted property, focusing on not with how much an individual has but how much he received in connection with the commission of the crime. *United States v. Channon*, 973 F.3d 1105, 1112 (10th Cir. 2020). Because restitution (calculated based on the victim's loss) and forfeiture (calculated based on the offender's gain) are distinct remedies, "ordering both in the same or similar amounts does not generally amount to a double recovery." *McGinty*, 610 F.3d at 1247.

[2] In fact, Petitioners further complicated this issue by asserting in a footnote that they are no longer *contingent* beneficiaries and their interests in the insurance proceeds have fully ripened. (ECF No. 422 at 13 n.9.) However, they do not fully explain how this development affects the analysis, if at all.

The Government continues to argue that Petitioners' status as contingent beneficiaries is much ado about nothing, to wit: "Here, the criminal forfeiture is based on the mail fraud on the insurance companies. The insurance companies paid defendant based on defendant's material misrepresentations and were awarded restitution in the amount of their losses. The Petitioners were not defrauded, but now rely solely on their status as contingent beneficiaries or eventual

Lawrence P. Rudolph Survivor's Trust; and the ultimate effect of the assignment agreements with at least five of the insurance companies.[3] At bottom, Petitioners need to clarify for the Court their legal status on all of these points and clearly explain why their status entitles *them* to a constructive trust, as opposed to the insurance companies being the injured parties and obviating the Petition, or why Petitioners should not merely file a claim for insurance proceeds with the insurance companies. (*See* ECF No. 396 at 13 (Government argues "[n]ot insignificantly, petitioners are also attempting to shortcut a process which could provide them a legal remedy. The appropriate procedure would be for the proper contingent beneficiaries to file claims under each policy with the insurance companies. Once the restitution is paid to the insurance companies, each insurance company would be able to determine whether the benefits would be paid to any contingent beneficiaries, any trusts, any estate, or whether any benefit would be paid at all under the policy.").)

In a similar vein, Petitioners state that at least five insurance companies have assigned their rights to Petitioners, but the Government points out that these "agreements with the insurance companies do not appear to give the Petitioners the right to seek equitable rights in lieu of the legal right to obtain restitution." (ECF No. 441

---

beneficiaries of the Rudolph Trust. This is insufficient to demonstrate an interest in the forfeitable property to impose the constructive trust remedy in their favor." (ECF No. 441 at 6.)

The Government's point is key; Petitioners must tackle this argument on amendment.

[3] To this point, the Government argues that "[i]mportantly, the petitioners have not even established their rights under the life insurance policies and cannot do so because these are contractual rights that have not been determined by the life insurance companies and any claimants under those policies." (ECF No. 396 at 12.)

In the reply, the Government identifies trust provisions under which Defendant might revoke and amend the trust at any time, including changing beneficiaries or trustees and revoking power of attorney. (ECF No. 441 at 3–4.)

5

at 3.)  The Petition is not based on the recent assignment of rights agreements but the notion that all of the insurance funds are rightfully Petitioners'.  (*Id.* at 2.)  The Government also points out some legal and factual issues concerning the fact that several of the agreements reference the ability to seek restitution in the "Forfeiture Proceeding," which relates to the related civil forfeiture case, not this criminal case.  (*Id.*)  The Court simply does not know what to make of this legal wrinkle.

The parties must untangle these factual issues before the Court can evaluate the merits of the Petition.  Moreover, if Petitioners have valid, binding assignment agreements from certain insurance companies, they must clarify why they continue to seek relief from this Court and not the insurance companies.[4]  (*See* ECF No. 441 at 9.)

However, the fault does not entirely lie with Petitioners.  In its reply, the Government states that it is "sending letters to the insurance companies to determine where any restitution payments should be made from the Clerk of Court.  Specifically, whether to have the funds remitted directly to Petitioners or to the insurance company so that they can remit to the Petitioners for accounting purposes." (ECF No. 441 at 3 n.2.)  In the Court's view, this statement appears to be key to this ancillary proceeding

---

[4] Petitioners state that "most of the insurance companies in this case have expressly indicated that they believe they have satisfied their contractual obligations under Mrs. Rudolph's policies.  They have told Petitioners as well as the United States that they do not believe the insurance proceeds should be returned to them and instead should be paid to Petitioners as the lawful beneficiaries under the policies. . . . The insurance companies are not the defendants before this Court. Therefore, Petitioners have no adequate remedy at law vis-à-vis the insurance companies, and the United States' cases on this point are inapposite."   (ECF No. 422 at 14.)

Petitioners have still failed to adequately explain to the Court why they cannot simply file claims with those insurance companies that have not agreed to pay their restitution awards to Petitioners.  To the extent the insurance companies decline to pay Petitioners as contingent beneficiaries, it would appear Petitioners could file a lawsuit against those insurance companies for breach of contract.

and could affect Petitioners' (and perhaps the Government's) position on whether the Court must adjudicate their interests in that portion of the forfeiture assets.[5]

### C. Other Issues

As the parties are well aware, the aforementioned legal and factual issues are not the only ones raised in the briefing on the Motion. For instance, while the Court will not give the tracing arguments the same thorough treatment as the issues above, the Court requires the Government to clarify how it can argue that the assets were traceable at the sentencing hearing but now contend that Petitioners cannot trace the assets to establish the fourth element of a constructive trust. (*See* ECF No. 441 at 7 ("[A]s shown during sentencing, all of the life insurance proceeds were eventually commingled into one [Vanguard account]. From there, those commingled funds were then transferred to multiple accounts and eventually the assets subject to forfeiture. Thus, while all of the forfeiture assets are traceable to the collective life insurance proceeds, it is incredibly difficult to delineate between the proceeds from the seven different life insurance companies and their traceability to the forfeited assets.").) The Court also finds Petitioners' arguments with respect to tracing unhelpful and notes that it remains Petitioners' burden to *establish* the elements of a constructive trust, not merely to respond vaguely to the Government's arguments. (ECF No. 422 at 15–16.)

Accordingly, the Court directs amended briefing whereby the parties examine each other's arguments and thoroughly address them in their subsequent briefing.

---

[5] To the extent the responses from the insurance companies affect the merits of the amended motion to dismiss, the Government is directed to so notify the Court so that the briefing deadlines may be adjusted.

### III. POINTS OF CLARIFICATION

In order to attempt to streamline the amended briefing, the Court makes a few points of clarification here.

#### A.   Choice of Law

First, the Court agrees with the Government that Arizona law applies to the issue of whether a constructive trust exists over the forfeitable property because the unlawful mail fraud acts occurred in that jurisdiction.[6]  *See e.g., DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7 (S.D.N.Y. Mar. 1, 2023) (when a party seeks the imposition of a constructive trust, the Court could apply the laws of the state where the alleged unjust acts justifying a constructive trust occurred).  Therefore, the parties need not spend additional time briefing what state's law applies to this issue.

#### B.   Petitioners Have No Direct Interest in the Property

Next, in the Motion, the Government argues that Petitioners never provided monies to Defendant and have suffered no financial loss because of the mail fraud he committed.  (ECF No. 396 at 7.)  In response, Petitioners do not contest that they have no "direct" interest in the property subject to forfeiture to the extent that they were not defrauded into providing assets directly to Defendant.  (ECF No. 422 at 2.)

Accordingly, based on Petitioners' concession, the Court finds that Petitioners

---

[6] Petitioners contend in their response that Arizona, Pennsylvania, and Illinois law applies.  (ECF No. 422 at 6 n.2.)  However, they also state that whether Arizona law or another state's law applies, the result is the same, and they are entitled to an equitable constructive trust over the insurance proceeds and their appreciation.  (*Id.*)

Because Petitioners fail to develop their argument that Pennsylvania and/or Illinois law applies, the Court considers it waived and applies Arizona law.  *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (cursory argument not meaningfully developed by any analysis or citation is deemed waived).  In any event, this determination will not affect the outcome of the Motion, as Petitioners state that the result is the same regardless of which state's law is applied.

8

have no direct interest in the Property. Nevertheless, Petitioners assert that an equitable constructive trust is necessary here to prevent unjust enrichment and compel the surrender of the trust assets to Petitioners as the rightful beneficiaries. (*Id.*) Thus, the Court will consider whether to impose an equitable constructive trust once the amended motion practice is ripe.

**C.      Statutory Constructive Trust**

In Petitioners' memorandum in support of their Petition, they argue that slayer statutes provide the circumstances necessary to impose a constructive trust under state law. (ECF No. 368 at 10.) In the Motion, the Government argues that Petitioners are not the beneficiaries of a constructive trust under Arizona's slayer statute.[7] (ECF No. 396 at 13–18.)

In Petitioners' response, they concede that for the reasons the Government explains in the Motion, they cannot establish a statutory constructive trust under Arizona's slayer statute, nor do they seek to do so. (ECF No. 422 at 14 (citing ECF No. 396 at 17–18).) Petitioners do not argue in their response that they can establish a statutory constructive trust under Illinois or Pennsylvania law, the two other jurisdictions they mention in connection with potentially applicable state slayer statutes in their memorandum, or why Colorado's choice of law principles would mandate application of either of these two states' slayer statutes. (ECF No. 368 at 10; *see generally* ECF No. 422.) Accordingly, the Court finds they have waived their arguments with respect to Illinois or Pennsylvania slayer statutes. *See Hunter*, 739 F.3d at 495.

---

[7] The Government argues that as the domicile of Bianca Rudolph, the decedent, under Colorado's choice of law principles, Arizona has the most significant relationship to the issue of beneficial rights obtained by Defendant as the result of Bianca Rudolph's murder. (ECF No. 396 at 16.)

Given the foregoing, it appears to the Court that the only issue to be determined at this stage of the ancillary proceeding is whether Petitioners have standing, and such standing will be determined by whether the Court agrees with them that it should impose an equitable constructive trust.  Therefore, unless the parties believe the Court is mistaken, they need not further brief the issue of whether the Court should impose a statutory constructive trust.

## IV. CONCLUSION

While the Court has highlighted issues plaguing both sides, ultimately, *Petitioners* have the burden to prove a legal interest in the property exists and to establish the requirements of a constructive trust.  Given the foregoing issues identified by the Court, at this juncture of the ancillary proceeding, Petitioners have fallen decidedly short of meeting their burden.  However, because so many threshold questions remain, the Court has determined that it is only fair to permit both parties a second bite at the apple.  But the parties are on notice that there will not be a third.

For the reasons explained above, the Court ORDERS that:

1. The Government's Motion to Dismiss (ECF No. 396), Petitioners' response (ECF No. 422), and the Government's reply (ECF No. 441) are STRICKEN;

2. The Government is DIRECTED to file an amended motion to dismiss by **November 17, 2023**;

3. Petitioners are DIRECTED to file an amended response by **December 8, 2023**;

4. The Government is DIRECTED to file an amended reply by **December 22, 2013**;

5. The Court has not imposed page limitations on the amended briefing in order to allow the parties to fully explain their positions, cite appropriate authority, and address the issues raised above by the Court; however, the parties are on notice that the Court expects the number of pages filed to be *reasonable*;

6. To the extent the parties have any procedural or substantive questions concerning this Order and the Court's expectations with respect to any amended briefing, they should identify their questions, confer, and jointly contact the undersigned's chambers for clarification; and

7. Finally, given the issues identified above, in the Court's view it would be vastly preferable, and almost certainly far easier for all involved, if the parties could come to an agreement on the issues raised in the Petition without the Court's involvement. To that end, by **December 29, 2023**, the parties are DIRECTED to file a joint notice explaining their positions as to whether mediation before a third-party neutral experienced in these matters would be fruitful.

8. To the extent the parties agree such an exercise would not be one in futility, the parties are DIRECTED to identify at least three proposed, agreed-upon mediators, with a brief summary of their qualifications and experience. If the parties cannot agree on a mediator, each party is DIRECTED to similarly identify two proposed mediators, and the Court will decide upon a mediator.

Dated this 26th day of October, 2023.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge