IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    LAWRENCE RUDOLPH, and
2.    LORI MILLIRON,

    Defendants.

---

### UNITED STATES' AMENDED MOTION TO DISMISS VERIFIED PETITION FOR ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED

---

Pursuant to Fed. R. Crim. P. 32.2(c), the United States moves to dismiss Julian and AnaBianca Rudolph's Verified Petition for Adjudication of Interests in Property Ordered Forfeited (Docket # 367).

The petitioners are the adult children of the defendant, who killed their mother. They assert a claim to the life insurance proceeds obtained by the fraudulent conduct of their father. But they are not the victims of the mail fraud and have not established a vested legal interest in the funds derived from that fraud. Because their petition fails to establish a sufficient interest in the property forfeited, this Court should dismiss their petition for lack of standing.

    I.     **FACTUAL ALLEGATIONS IN THE PETITION**

The following paragraphs from the petition (following its numbering scheme) are the relevant factual assertions in the petition:

1.    Julian Rudolph ("Julian") is the son of Defendant Lawrence Rudolph ("Dr. Rudolph") and decedent Bianca Rudolph ("Mrs. Rudolph").

1

2. AnaBianca Rudolph ("AnaBianca") is the daughter of Dr. Rudolph and Mrs. Rudolph.

4. On or about October 11, 2016, Mrs. Rudolph died from a single shotgun round to the chest while on a hunting trip with Dr. Rudolph in Zambia.

5. Prior to her death, Mrs. Rudolph obtained nine life insurance policies from seven different insurance carriers.

7. Although Mrs. Rudolph largely designated Dr. Rudolph, or a family trust (the "Rudolph Trust") controlled by Dr. Rudolph, as the primary beneficiary on these insurance policies, she ensured her children were also specifically designated as the contingent beneficiaries on multiple policies, ~~such that they became entitled to receive the proceeds on them should Dr. Rudolph predecease her or otherwise be disqualified (like what happened here)~~.[1]

9. Almost immediately after Mrs. Rudolph's death, between October 31, 2016, and November 14, 2016, Dr. Rudolph began submitting claims for payment in relation to these nine policies. In so doing, he failed to disclose his role in the circumstances of her death.

10. Based on Dr. Rudolph's representations that Mrs. Rudolph's death was an accident, the insurance companies paid Dr. Rudolph, or the Rudolph Trust that Dr. Rudolph controlled, the proceeds of the various policies between January and March of 2017.

11. In total, Dr. Rudolph and/or the Rudolph Trust he controlled received approximately $4,877,744.93 from the seven life insurance companies.

12. Nearly five years after murdering his wife and fraudulently submitting claims for the proceeds of her life insurance policies, Dr. Rudolph was arrested by federal law enforcement.

---

[1] The factual portion of this paragraph is that the petitioners were the contingent beneficiaries on three or four of the nine policies. *See* Petition, p. 3, fn. 2 and 3.

13. On January 5, 2022, a federal grand jury returned an indictment against Dr. Rudolph charging him with one count of first-degree overseas murder, in violation of 18 U.S.C. §§ 1111 and 1119, and one count of mail (insurance) fraud, in violation of 18 U.S.C. § 1341.

14. A jury convicted Dr. Rudolph of both counts on August 1, 2022.

15. After the conclusion of the trial, the government moved for an order that Dr. Rudolph: (1) forfeit property identified as proceeds of his insurance fraud offense; and (2) pay mandatory restitution to the victims of his crimes.

21. Further, materiality witnesses called by the government as representatives of the insurance companies at trial each stated that disclosure concerning the circumstances of Mrs. Rudolph's death would have been valuable not for purposes of whether they were contractually required to pay claims (which they were), ~~but instead because the proceeds should have been paid to other lawful beneficiaries – namely, Julian and AnaBianca.~~ *See, e.g., U.S. v. Rudolph, et al.*, 22 CR 12, Trial Transcript, Day 6, Testimony of Greg Mirabelli, pg. 55-56, attached hereto as Exhibit E.[2]

26. On May 17, 2023, this Court entered the Preliminary Order of Forfeiture ordering the forfeiture assets identified as proceeds of Dr. Rudolph's insurance fraud offense.

**Additional Relevant Facts Not in The Petition**

1. The United States has compiled a chart of the nine relevant life insurance policies, which includes the amount, date of claim, date of payment, primary beneficiary, and contingent beneficiary. *See* Attachment A.

2. Julian Rudolph and AnaBianca Rudolph filed a petition as the children of the defendant and decedent. (ECF No. 367).

---

[2] This fact does not appear to be supported by petitioner's Exhibit E.

3. After filing the petition and some briefing on the matter, petitioners provided the government with Assignment And Release Agreements for four of the seven life insurance companies. (See ECF. Nos. 422-2, 422-3, 422-4, and 422-5). Petitioners did not provide similar agreements with AAA, Metlife, and Genworth.[3] Metlife has also indicated to the government that it has not determined if it will pay out its life insurance policy.

4. This Court has issued an order striking prior briefing related to the petition, including the Government's Motion to Dismiss the Petition. (ECF No. 446). In its Order, the Court clarified:

    a. Arizona is the applicable law as to whether a constructive trust exists;

    b. petitioners have no direct interest in the property;

    c. petitioners have conceded that they do not seek a statutory constructive trust under Arizona law and have waived their arguments with respect to Illinois and Pennsylvania statutory law; and

    d. the only issue appears to be whether this court will impose an equitable constructive trust under Arizona law that will provide petitioners with standing.

The United States apologizes for any conflation of restitution and forfeiture on its part. The letters referenced in its reply (ECF No. 422 at 3 n.2) that it sent to the insurance companies related to restitution only—not forfeiture. The United States merely wanted to convey that it is working with the insurance companies and petitioners to ensure that any payments made under the restitution order were being sent to the recipients (at the appropriate physical address) designated by the life insurance companies. It is the United States' position that petitioners'

---

[3] Genworth, did not assign their rights, but did agree that restitution should be paid to the beneficiaries of the Rudolph Trust dated 4/25/16, excluding Mr. Rudolph. (ECF No. 422-1).

status as contingent beneficiaries or assignees to the insurance proceeds or the Rudolph Trust is irrelevant to forfeiture. But, as explained below, there is a small overlap between restitution and forfeiture when it comes to discussing the last prong of an equitable constructive trust. To the extent that petitioners seek to impose such a trust via the insurance companies' rights, those companies have received an adequate remedy at law via restitution that precludes imposition of such a trust.

## II.   LAW GOVERNING PETITIONS UNDER 21 U.S.C. § 853

After entry of a preliminary order of forfeiture, third parties may assert their interest in forfeited property by filing a petition. Fed. R. Crim. P. 32.2(c)(1). The petition "must set forth the extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and] any additional facts supporting petitioner's claim." 21 U.S.C. § 853(n)(3).

Congress has, however, limited the ability for third parties to assert an interest in the forfeited property to two narrow categories of legal interests set forth in 21 U.S.C. § 853(n)(6). *United States v. Brinton*, 880 F. Supp. 2d 1158, 1160 (D. Utah 2012) (citing *United States v. Lavin,* 942 F.2d 177, 185 (3rd Cir.1991)).[4]

Under that provision, a petitioner can establish their interest in the forfeited property if they establish either:

> (A)  the petitioner has a superior legal right, title, or interest in the property to the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property; or
>
> (B)  the petitioner is a bona fide purchaser for value of the right, title, or interest in the property who lacked reasonable cause at the time of the purchase to the believe the property was subject to forfeiture.

---

[4] The United States has attached an Addendum to this Response, outlining the procedures for handling third-party petitions under 21 U.S.C. § 853(n).

21 U.S.C. § 853(n)(6)(A)-(B).

"If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing." *United States v. Brinton*, 880 F. Supp. 2d 1158, 1159–60 (D. Utah 2012) (citing *United States v. BCCI Holdings,* 919 F.Supp. 31, 36 (D.D.C.1996)); 21 U.S.C. § 853(n)(2); Fed. R. Crim. P. 32.2(c)*; see United States v. Swartz Family Trust*, 67 F.4th 505, 515 (2d Cir. 2023). It is the petitioners' burden to prove a legal interest in the property exists sufficient to establish their standing to assert an interest in the forfeited property. *United States v. Kluding*, No. CR-14-123-1-C, 2020 WL 5920269, at *2 (W.D. Okla. Oct. 6, 2020).

When determining if a petitioner has standing, the Court must first look to state law to determine the nature of petitioners' legal interest. *See United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We recognize that in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law"). If the petitioners have no valid legal interest in the property under state law, the inquiry ends, and the Petition fails for lack of standing. *Swartz Family Trust*, 67 F.4th at 516; s*ee United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012) (if claimant fails to establish a legal interest under state law, the inquiry ends and the claim fails for lack of standing); *United States v. Rammuno*, 599 F.3d 1269, 1272 (11th Cir. 2010) (same).

As set forth below, the petition fails to establish the petitioners' standing to contest the forfeited property.

### III.   LEGAL ARGUMENT

**Petitioners Fail to Meet the Elements for Imposition of a Constructive Trust**

Because petitioners' prior filings failed to establish a sufficient case for their allegedly-superior interest in the forfeited property, the Court has narrowed their claim to whether they can establish an equitable constructive trust in the forfeited proceeds under Arizona law. They cannot meet the elements required to do so.

Petitioners argue that a constructive trust arose upon receipt of the funds by their father (as the constructive trustee) based on a combination of the following reasons:

- they would have been paid the life insurance proceeds as the contingent beneficiaries on some life insurance policies had defendant Rudolph's conduct been known;
- they would have been paid the life insurance proceeds as beneficiaries of the Rudolph Trust because defendant Rudolph would have been disqualified as a beneficiary of that Trust had his conduct been known; and
- that even if they are not beneficiaries of a constructive trust some of the life insurance companies have assigned their rights to them.

None of these establish the required elements for a constructive trust over the property traceable to the mail fraud proceeds.

A constructive trust is an equitable remedy imposed by state common law to prevent unjust enrichment. *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008) (noting that a constructive trust is a legal fiction and an equitable remedy devised to prevent unjust enrichment and compel **restitution** of property that does not belong to a defendant) (emphasis added). The imposition of a constructive trust is an equitable remedy over which this Court has discretion. *Id*. at 1238. Even if all of the elements of a constructive trust are met under state law, the Court may

7

still decline to impose one where it would not prevent unjust enrichment and would instead deliver inequitable results. *Id*. at 1238-1239.

In Arizona, "[a] court may impose a constructive trust when title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or similar means, of if there has been a breach of fiduciary duty." *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409, 276 P.3d 11, 43 (Ct. App. 2012). Arizona law creates an equitable constructive trust when there is:

> (1) a wrongful holding of property;
>
> (2) which unjustly enriches the holder of the property;
>
> (3) at the expense of the party who was defrauded and seeks the constructive trust;
>
> (4) that the party seeking the constructive trust can trace their funds/assets to the property wrongfully acquired; and
>
> (5) there is not an adequate remedy at law such that the court should act in equity.

*Harmon v. Harmon*, 126 Ariz. 242, 244, 613 P.2d 1298, 1300 (Ct. App. 1980); *Matter of Lloyd Revocable Tr.,* No. 1 CA-CV 16-0458, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017) (finding that Plaintiffs seeking a constructive trust had to identify specific assets that could be traced back to the defendant that belonged to them); *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569, 334 P.3d 745, 752 (Ariz. Ct. App. 2014) (no constructive trust where adequate remedy at law). The burden is on the party seeking the constructive trust to establish the requirements by "clear and convincing evidence." *Harmon*, 126 Ariz. At 244, 613 P.2d at 1300.[5]

---

[5] Arizona case law regarding the elements of constructive trusts seem to only address certain elements depending on the facts of the case. The United States was not able to find an Arizona case that succinctly defines each element of a constructive trust, rather the cases cited above, taken together, work to layout the elements of constructive trust under Arizona law.

### (a) The Defendant Does Not Hold the Property Such that He is Unjustly Enriched

At the time of acquisition of the life insurance proceeds, defendant Rudolph wrongfully held the insurance proceeds and was unjustly enriched. But the Preliminary Order of Forfeiture divested him of his interest and title to the forfeited property. Because the forfeiture disgorged his ill-gotten gains, a constructive trust is not needed to deprive defendant Rudolph of the property or to prevent unjust enrichment by him.

### (b) The Acquisition of the Property Was Not at the Expense of the Petitioners as the Defrauded Party

To set forth a cause of action for the imposition of a constructive trust, a party must establish that they have a right to seek the relief, i.e. standing. Because defendant Rudolph did not acquire the forfeited property at petitioners' expense, they cannot establish their right to imposition of an equitable constructive trust.

To establish standing for a constructive trust, the petitioners must establish that they are asserting their own rights and not those of third parties. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975); *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (prudential standing prohibits most litigants for asserting the rights of third parties). This concept of prudential standing applies in equal force to the imposition or creation of a constructive trust over property. *See e.g. Fine v. Chloeta Fire, LLC*, No. 13-CV-743-JHP-FHM, 2014 WL 12700982, at *2 (N.D. Okla. Aug. 26, 2014) (dismissing constructive trust claim on standing grounds because Plaintiff did not have any personal involvement in the transactions), *report and recommendation adopted,* No. 13-CV-743-JHP-FHM, 2014 WL 12708962 (N.D. Okla. Sept. 12, 2014); *see also In Re Schick*, 246 B.R. at 46 ("The personal nature of the equitable right prevents someone other than the beneficiary from

using it offensively or defensively. Thus, a stranger cannot sue to impose a constructive trust for the benefit of a defrauded party.").

The forfeited property here was purchased and/or funded using life insurance proceeds obtained as a result of defendant Rudolph's mail fraud. (ECF Nos. 309, 354). The petitioners are not the victims of the mail fraud. The petitioners never received the insurance proceeds, never provided any monies to defendant Rudolph, and have suffered no financial loss because of the mail fraud committed by defendant Rudolph. It was the seven insurance companies who were defrauded, and whose funds were used to procure the forfeitable property in this matter. [6] (ECF. No. 367, para. 11). The petition also recognizes that it would be the insurance companies, if anyone, who might have an interest in the forfeited property. (ECF No. 367, para. 25). But the petition does not assert a legal interest on behalf of the life insurance companies. (ECF No. 367, p.1 "Petitioners Julian and AnaBianca Rudolph . . . "assert their interest as innocent third parties with respect to the property . . .").

Insomuch as petitioners rely on the Assignment Agreements obtained from some of the life insurance companies to assert a right to a constructive trust in this ancillary proceeding, these assignments do not appear to confer the life insurance companies' right to file a petition in this criminal forfeiture proceedings. The majority of the agreements reference the ability to seek restitution in the "Forfeiture Proceeding." The definition of "Forfeiture Proceedings" references

---

[6] As the life insurance companies were awarded restitution, they will be made whole under that order. Forfeiture is not about making victims whole, it is about punishing the criminal offender. To that extent, the restitution process will make the victims of the mail fraud whole. Petitioners cannot force the life insurance companies to choose a different remedy. *See In re Schick*, 246 B.R. 41, 46 (Bankr. S.D.N.Y. Mar. 13, 2000); *Harmon v. Harmon,* 613 P.2d 1298, 1300-1301 (Ariz. Ct. App. 1980) ("Even though a person may have a claim for the imposition of a constructive trust, there is no requirement that he enforce it;" they may elect other remedies such as restitution.).

only the related civil forfeiture case filed on December 21, 2021, not this criminal case. *See* ECF Nos. # 422-2, 422-3, 422-5. The only exception appears to be the agreement with Great-West Life & Annuity Insurance Company. *See* ECF No. 422-4. In addition, petitioners do not have assignment agreements with all of the life insurance companies, and consequently they cannot assert the rights of all of the insurance company victims and an interest in 100% of the forfeitable property.

Petitioners take the position that they can be "substituted" for the defrauded parties—the life insurance companies—based on speculation that all of the insurance policies would be paid to them had the murder been known. But at least one insurance company has indicated that it does not intend to remit its restitution to the petitioners based on its belief that the policy was fraudulently obtained with the intent to commit the murder of Bianca Rudolph. Simply put, the petitioners have not offered sufficient facts to establish a vested interest in monies that may or may not have been paid out to them. Even if the funds would have been paid to them, nothing has occurred "at their expense" if they are receiving funds from the insurers to which they would have been entitled absent their father's fraud. If the insurers aren't paying them funds to which they were entitled, the law provides an adequate remedy to them. See below.

### (c) Petitioners Cannot Trace their Funds to the Forfeitable Assets

The petition also fails to set forth tracing of their funds to the forfeitable assets. In fact, the petitioners cannot trace their funds to the forfeitable assets as the assets were obtained or funded with insurance proceeds obtained through mail fraud on the insurance companies. *See Matter of Lloyd Revocable Tr.,* 2017 WL 4682255, at *3 (finding that Plaintiffs seeking a constructive trust had to identify specific assets that could be traced back to the defendant that **belonged to them**) (emphasis added); *see e.g. Swartz Family Trust*, 67 F.4th at 518 ("Because

11

Orienta does not allege that Swartz used its funds to acquire the Asset, the District Court was right to reject its constructive trust claim."); *Andrews*, 530 F.3d at 1237 (a constructive trust may be "a proper remedy when a recipient acquired property by ***defrauding the claimant***.") (emphasis added).

Even if the Court were persuaded that petitioners had an interest in funds paid out under some of the insurance policies by way of the assignments or otherwise, the Court should still decline to impose a constructive trust because petitioners have not provided any tracing to do so. *See Amtitle Trust Co. v. Fitch*, 541 P.2d 1166, 1168 (Ariz. Ct. App. 1975) ("A prerequisite to the imposition of a constructive trust is the identification of specific property, or res, in which the claimant has an interest."); *see also Rammuno*, 599 F.3d at 1275 (declining to impose constructive trust on behalf of victim where it would elevate those interests over similarly situated victims). Petitioners are attempting to impose a constructive trust over all of the forfeited assets, but without specific tracing, a constructive trust is inappropriate. *See e.g. United States v. One Silicon Valley Bank Acct., 3300355711,* 549 F. Supp. 2d 940, 955 (W.D. Mich. 2008) (constructive trust denied when multiple parties collectively traced funds; however; individual parties should be treated independently and "if they are not treated as a single entity then the funds do not have a clear traceable path."). The failure to trace is especially critical when at least two insurance companies (AAA and MetLife) have not agreed the petitioners should have received the proceeds of their insurance policies.

Although the government was able to trace the $4.8 million in collective insurance proceeds to the forfeitable assets, the government also provided evidence that the funds from all of the insurance companies were eventually commingled into one bank account (Vanguard #88150069515). From there, the $4.8 million in commingled funds were then transferred to

12

multiple accounts and eventually the assets subject to forfeiture. Because the petitioners have not established their right to all $4.8 million and all nine life insurance policies, especially Metlife, who has not assigned their rights and has not determined that they would have paid any funds on their policy if they had been aware of the murder and fraud, the petitioners cannot rely on the government's tracing for all nine policies to trace their property interests to all of the forfeitable property.

Put simply, the government's tracing established that all of the funds were ill-gotten, which was all that was required for forfeiture. But the petitioners have not likewise shown that they are entitled to all of those funds (let alone any of those funds), even though that is required for them to establish a superior interest to the government and other parties. Were they to demonstrate a superior right to a portion of the funds, they would need to offer a reasonable accounting method to break off their share that is not unfair to others with an interest in the commingled funds.

For instance, a constructive trust for all $4.8 million and all of the forfeitable assets for the benefit of the petitioners would permit the petitioners to obtain assets traceable to life insurance policies for which they do not have rights, namely AAA and Metlife. While all of the forfeiture assets are traceable to the collective life insurance proceeds, petitioners have not met their burden to trace those funds to proceeds over which they claim a superior right. *See United States v. $7,599,358.09*, No. CIV.A. 10-5060 SRC, 2011 WL 3611451, at *3 (D.N.J. Aug. 15, 2011) ("there is no doubt that the funds . . . from the Claimants were commingled and pooled into one or more homogenized master accounts. Claimants have not sufficiently traced the alleged trust funds by merely identifying transfers from the commingled accounts to the [assets].").

Because a constructive trust is based solely on equity, a constructive trust should not be imposed if it elevates one victim over another. *Andrews*, 530 F.3d at 1238. Petitioners are clearly asking the Court to prefer them over other insurance victims of the mail fraud by creating a constructive trust for them over *all* of the forfeitable assets. This is to the detriment of victims whose funds have been commingled to purchase the forfeitable property, but have not given assignments, nor agreed, that petitioners are entitled to the proceeds. *See id.* at 1238–39; *United States v. Wilson,* 659 F.3d 947, 956 (9th Cir. 2011) ( "[U]nder our precedent, courts generally will not indulge in tracing when doing so would allow one fraud victim to recover all of his losses at the expense of other victims."); *United States v. Ramunno,* 599 F.3d 1269, 1275 (11th Cir. 2010) (no constructive trust imposed because it would elevate one victim over those similarly situated victims).

### *(d)* There is an adequate remedy at law and an equitable remedy is inappropriate

Lastly, under Arizona constructive trust law, "[t]he court may not . . . impose a constructive trust if the claimant has an adequate remedy at law." *Matter of Lloyd Revocable Tr.*, No. 1 CA-CV 16-0458, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017); *ML Servicing Co.*, 235 Ariz. at 569, 334 P.3d at 752 (A constructive trust is improper when another adequate remedy at law is available to the harmed party); *see also Acedo v. Mannion*, No. 1 CA-CV 20-0017, 2020 WL 6286716, at *2 (Ariz. Ct. App. Oct. 27, 2020) (same).

The life insurance company victims of defendant Rudolph's fraud have an adequate remedy at law. They have elected to pursue and collect restitution against the defendant. Petitioners cannot force the life insurance companies to choose a different remedy. *See In re Schick*, 246 B.R. 41, 46 (Bankr. S.D.N.Y. Mar. 13, 2000); *Harmon v. Harmon,* 613 P.2d 1298, 1300-1301 (Ariz. Ct. App. 1980) ("Even though a person may have a claim for the imposition of

a constructive trust, there is no requirement that he enforce it;" they may elect other remedies such as restitution.). Nor can they use assignment agreements to reverse course and elect an alternative remedy to the restitution that made the insurers whole.

The United States does not intend to conflate restitution and forfeiture. The Court is correct that the two are generally separate inquiries, as one is remedial to restore a victim's losses and the other is punitive. But overlap exists here in that petitioners are trying to claim a superior interest to the United States through an equitable trust that is based in large part (if not entirely) on a claim that the restitution did not cover the losses caused by Rudolph's fraud of the insurers. The United States disagrees with that claim, but cannot address it without mentioning both restitution and forfeiture.

Petitioners also have an adequate remedy without a constructive trust. As evidenced by their Assignment Agreements, several insurance companies have agreed to pay their restitution to the petitioners. Petitioners could file claims with the insurance companies, who have not agreed to an assignment or agreement for their benefit. Their right to any payments would then be determined by the relevant provisions in the insurance contracts.

## CONCLUSION

The Court should dismiss the Petition (Docket # 367) as the petitioners lack standing and the Petition fails to state a claim; therefore, no ancillary hearing regarding this petition is necessary.

DATED this 17th day of November 2023.

Respectfully submitted,

COLE FINEGAN
United States Attorney

15

s/**Kurt J. Bohn**
Kurt J. Bohn
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: kurt.bohn@usdoj.gov

s/**Tonya Andrews**
Tonya S. Andrews
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: tonya.andrews@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 17th day of November 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

                *s/ Charisha Cruz*
                Charisha Cruz
                Paralegal Specialist

# ADDENDUM

## THIRD-PARTY PETITION PROCEDURES UNDER 21 U.S.C. § 853(n)

The process for third parties to assert an interest in property that has been ordered forfeited to the United States is provided for in 21 U.S.C. § 853(n). After an order of forfeiture has been entered by the court, the United States must publish notice of the order and provide direct written notice of the order to persons with a known interest in the assets that are to be forfeited to the United States. 21 U.S.C. § 853(n)(1). Any person, other than the defendant, who wants to assert an interest in the property ordered to be forfeited to the United States must file a petition to the court within 30 days of the final publication of notice, or receipt of written notice, whichever is earlier. 21 U.S.C. § 853(n)(2).

The petition itself must be signed by the petitioner(s) under penalty of perjury and must set forth the following:

a. the nature and extend of the petitioner's right, title, or interest in the property;
b. the time and circumstances the petitioner acquired the right, title, or interest in the property;
c. facts supporting their claim; and
d. the relief they seek.

21 U.S.C. § 853(n)(3).

Within 30 days of the filing of a petition, or consistent with the interests of justice, a hearing on the petition should be held, although the court may consolidate that hearing with any other petitions that may be filed. 21 U.S.C. § 853(n)(4). During any such hearing, the court may take additional evidence and consider any relevant portion of the record of the criminal case that resulted in the order of forfeiture. 21 U.S.C. § 853(n)(5). The burden of proof at any third-party hearing is on the petitioner to prove their claim by a preponderance of the evidence. 21 U.S.C. § 853(n)(6).