IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00012-WJM-1

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **LAWRENCE RUDOLPH** and
2. **LORI MILLIRON,**

Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S AMENDED MOTION TO DISMISS PETITIONERS' VERIFIED PETITION FOR ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED**

---

Christopher P. Hotaling

**NIXON PEABODY LLP**
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:    312.977.4418
Fax:    833.968.0535

John R. Sandweg

**NIXON PEABODY LLP**
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:    202.585.8189
Fax:    877.743.5914

## **INTRODUCTION**

For Petitioners Julian and AnaBianca Rudolph, the last seven years have been a living hell and they come before this Court in desperate need of its assistance. They have lost their mother and have seen their father convicted of her murder. Adding insult to injury, the government has expended an incredible amount of effort to deprive Petitioners of what remains of their mother's estate and lawful inheritance, all under the auspices of its incredible forfeiture power. Almost immediately after Lawrence Rudolph's ("Rudolph") conviction at trial, the government has moved inexorably and blindly toward forfeiting any and all assets that Rudolph had in his possession with little regard for the fact that those same assets also constitute Petitioners' lawful inheritance from their mother. Now, only this Court stands in the way of what any objective observer would view as a travesty of justice – forfeiting and depriving Petitioners of all that remains of their mother's estate and what she wanted to have pass on to her children.

To accomplish their mission, the government has filed a motion to dismiss Petitioners' Verified Petition. However, the government's motion must be denied because Petitioners have established more than a "facially colorable interest in the seized property" to satisfy the standing requirements for an ancillary petition, *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009), and therefore have stated a cognizable claim for relief under 21 U.S.C. § 853(n). Specifically, Petitioners have sufficiently demonstrated, at this early stage of the proceedings, their superior claim to that of the government over the assets ordered forfeited in the Preliminary Order of Forfeiture by way of an equitable constructive trust under Arizona law.

Under Arizona law, constructive trusts are equitable remedies designed to address inequities and prevent unjust enrichment by ensuring that property ends up with the party to whom it justly belongs – the exact type of inequities this case is rife with. As the jury has concluded,

Rudolph murdered Petitioners' mother, and then fraudulently claimed over $4.8 million in her life insurance proceeds. As all parties concede, with one limited exception, those insurance proceeds would have flowed to, and justly belong to, Petitioners.[1] Since their payment in 2017, those insurance proceeds have now appreciated in value to over $10 million.[2]

Petitioners have more than demonstrated the elements of a constructive trust under Arizona law in their Verified Petition. A constructive trust is absolutely necessary to ensure that the property the government seeks to forfeit devolves to Petitioners as its rightful holders as well as to prevent unjust enrichment to Rudolph. The traceability of the assets is undisputed, and Petitioners have nowhere else to turn. Despite what the government would have this Court believe, it is not as simple as having the Petitioners file claims on Mrs. Rudolph's policies with the insurance companies. Because the government has complete discretion over the remission process, which is the only way by which the insurance companies will pay any claims submitted by Petitioners, it is

---

[1] To address a point raised in the government's amended Motion to Dismiss (Mot. at 4), Petitioners acknowledge that one of the insurance companies in this case, MetLife Insurance Company, has indicated it may elect to not pay out on Petitioners' insurance claim under its common law right of rescission based on Rudolph's conviction for insurance fraud, if it is paid restitution pursuant to this Court's sentencing order. While Petitioners are not waiving their right to seek relief from MetLife if it chooses to stand on its rescission right and deny coverage under that policy (and indeed hope MetLife does not invoke that right in the first place), they are nevertheless withdrawing their claim against the $772,901.17 in MetLife proceeds contained in their Verified Petition.

[2] Further compounding the inequities, Rudolph not only stole the insurance proceeds from Petitioners, but he also fraudulently obtained Mrs. Rudolph's share of the couple's community assets amounting to approximately $7 million, which also rightfully belong to Petitioners. As discussed below, Petitioners have already received a judgment from a court in Arizona imposing a constructive trust over Mrs. Rudolph's share of the community assets and awarding them damages. Though Petitioners have diligently worked to recover the amount of their judgment against Rudolph's other assets, they have now fully exhausted all other avenues of recovery, leaving more than half of their judgment unpaid. The assets ordered forfeited in the Preliminary Order of Forfeiture are the only remaining source of recovery for Petitioners to pick up the pieces of their lives following this horrific series of events.

the government – the same party that is seeking to forfeit the assets at issue in this case – that will ultimately control how, when, or even if, the insurance companies will ever pay on Petitioner's insurance claims.

For these reasons, Petitioners have alleged a cognizable interest in the insurance proceeds and appreciation under 21 U.S.C. § 853(n) sufficient to establish standing and to state a claim for relief.

### FACTS

Petitioners AnaBianca and Julian Rudolph are the daughter and son of the deceased Bianca Rudolph ("Mrs. Rudolph") and Defendant Lawrence Rudolph.  (Verified Petition ¶¶ 1-2 (ECF No. 367).)  They have petitioned this Court for an ancillary hearing based on their legal interest, both personally and on behalf of their deceased mother's estate, in certain assets this Court has preliminarily ordered forfeited to the government.  (*Id*. at ¶ 3.)

Prior to her death, Mrs. Rudolph obtained nine life insurance policies from seven insurance carriers.  (*Id*. at ¶ 5.)  Petitioners are specifically listed as contingent beneficiaries on three of the insurance policies, meaning they would receive the proceeds if the primary beneficiary (namely, Rudolph or the Rudolph Trust) is disqualified in any way.  (*Id*. at ¶¶ 5, 7.)  The Rudolph Trust, which is the primary beneficiary on six of the policies and of which Rudolph was the trustee until December 2022, provides for distribution of the trust property to Petitioners in the event that he is disqualified from acting as a beneficiary.  (*Id*. at ¶¶ 7 n. 6, 8; Pet. Ex. B (ECF No. 367-2).)

Rudolph began collecting on the life insurance policies almost immediately after Mrs. Rudolph's death in October 2016, receiving over $4.8 million in insurance proceeds in 2017.[3] (Pet. at ¶¶ 9, 11.)

Five years later, Rudolph was arrested for Mrs. Rudolph's murder.  (Verified Petition at ¶ 12.)  He was subsequently tried and convicted in August 2022.  (*Id*. at ¶¶ 13-14.)

On August 25, 2023, this Court, following the jury trial, entered judgment in Rudolph's criminal case imposing a term of life imprisonment as well as ordering Rudolph to pay the insurance companies approximately $4.8 million in restitution (the "Restitution Order").  (ECF No. 415.)

With respect to the forfeiture component of this case, this Court also entered a Preliminary Order of Forfeiture on May 17, 2023.  (ECF No. 354).  On June 16, 2023, Petitioners filed their Verified Petition requesting an ancillary hearing to adjudicate their interest in the assets this Court preliminarily ordered forfeited.  The government filed its Motion to Dismiss the Verified Petition

---

[3] In addition to collecting the insurance proceeds, Rudolph also unlawfully diverted Mrs. Rudolph's share of their community assets.  At the time of Mrs. Rudolph's death, Rudolph and Mrs. Rudolph possessed approximately $13.9 million of community assets held in the Rudolph Trust and other devices, with Mrs. Rudolph's share of the property consisting of approximately $6.95 million.  (Declaration of Christopher Hotaling in Opposition to the Government's Amended Motion to Dismiss Ex. A at ¶¶ 20-21 (Arizona Civil Complaint).)  Because the circumstances of her murder were not known at the time, Mrs. Rudolph's share of the community property was reallocated to the Lawrence P. Rudolph Survivor's Trust created under the Rudolph Trust (the "Survivor's Trust").  (*Id*. at ¶ 24.)  Rudolph is the primary beneficiary under the Survivor's Trust. (*Id*. at ¶ 25.)  Petitioners are the secondary beneficiaries under the Survivor's Trust.  (*Id*.)

On May 2, 2023, Petitioners filed suit against Rudolph, the Rudolph Trust, and the Survivor's Trust in the Superior Court of the State of Arizona to recover Mrs. Rudolph's share of the community assets that had been fraudulently converted.  (*See id*.)  On July 24, 2023, the Court granted Petitioners' motion for default judgment and awarded Petitioners over $10 million in damages (including statutory interest), representing Mrs. Rudolph's share of the community assets that rightfully belong to Petitioners (the "Arizona Judgment").  (*See* Hotaling Decl. Ex. B (Arizona Judgment).)  To date, Petitioners have been able to recover about $4 million on the Arizona Judgment.  (Hotaling Decl. at ¶ 5.)  Approximately $6 million remains unsatisfied on the Arizona Judgment, and Petitioners have no further assets to pursue for recovery.  (*Id*. at ¶ 6.)

on July 28, 2023.  (ECF No. 396.)  On October 26, 2023, this Court entered an order striking the parties' briefing on the government's Motion to Dismiss and directed the parties to file amended briefing.  (ECF No. 446.)  On November 17, 2023, the government filed its Amended Motion to Dismiss the Verified Petition.  (ECF No. 463.)  This response follows.

## **LEGAL STANDARD**

"For purposes of the motion [to dismiss a petition for an ancillary hearing], the facts set forth in the petition are assumed to be true."  Fed. R. Crim. P. 32.2(c)(1)(A). "'Although . . . ancillary proceedings arise in the context of criminal forfeiture, they closely resemble . . . civil proceedings."  *United States v. Butt*, 930 F.3d 410, 413 (5th Cir. 2019) (quoting *United States v. Corpus*, 491 F.3d 205, 208 (5th Cir. 2007)).  *See also* Fed. R. Crim. P. 32.2 advisory committee's note to 2000 adoption (stating that courts should follow the Federal Rules of Civil Procedure for "fundamental areas" of ancillary proceedings, including motions to dismiss).  As a result, courts apply the standard of review under Federal Rule of Civil Procedure 12 to motions to dismiss petitions for ancillary proceedings.  *Butt*, 930 F.3d at 413 (citations omitted).

A motion to dismiss based on lack of standing attacks the Court's subject matter jurisdiction, and is thus analyzed under Rule 12(b)(1).  *Colo. Env't. Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004).  Rule 12(b)(1) challenges may be facial or factual.  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citations omitted).  Because the government challenges the sufficiency of Petitioners' allegations, but does not dispute them by proffering its own evidence, its attack is facial.  *Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election Integrity Plan*, No. 22-00581, 2022 WL 1266612, at *2 (D. Colo. Apr. 28, 2022) (citations omitted).  "In reviewing a facial attack on plaintiffs' standing, the Court considers only the sufficiency of the complaint, as it would with a Federal Rule 12(b)(6) motion."

*Id.* at *3 (quoting *Muscogee (Cr.) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010)).

"In evaluating such a motion [under Rule 12(b)(6)], a court must 'assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff.'" *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 825 F. Supp. 2d 1072, 1076-77 (D. Colo. 2011) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). "In ruling on such a motion, the dispositive inquiry is whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Id.* at 1077 (internal quotations and citations omitted). "Granting a motion to dismiss 'is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Id.* (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). "'Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (internal quotations and citations omitted).

## ARGUMENT

Arizona courts have consistently found that the creation of an equitable constructive trust is appropriate "to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Harmon v. Harmon*, 126 Ariz. 242, 244 (Ct. App. 1980). "The gist of the conduct which will lead to the imposition of a constructive trust is the wrongful holding of property which unjustly enriches the defendant at the expense of the plaintiff." *Id.* Numerous Arizona courts have reaffirmed this standard. *See Matter of Lloyd Revocable Tr.*, No. 1 CA-CV 16-0458, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017) ("A constructive trust compels a defendant who unfairly holds a property interest to convey that interest to whom it justly

belongs."); *Turley v. Ethington*, 213 Ariz. 640, 643 (Ct. App. 2006) (citing *Chirekos v. Chirekos*, 24 Ariz. App. 223, 224 (1975)) ("A constructive trust is an equitable doctrine that prevents one person from being unjustly enriched at the expense of another.").  As is set forth below, Petitioners have clearly met this standard.[4]

### A. The Imposition of an Equitable Constructive Trust is Warranted Because Petitioners Are the Party to Whom the Insurance Proceeds Justly Belong.

Although the government argues that Arizona law requires a showing that the party seeking a constructive trust is the "party who was defrauded" (Mot. at 8), such a statement is a mischaracterization of the Arizona standard.  None of the Arizona state cases cited in the government's Amended Motion to Dismiss require an individual to be a "party who was defrauded" in order to have standing to seek an equitable constructive trust.  Rather, each of those courts applied a broader standard, finding that the petitioner only needed to demonstrate that the property in question "justly belongs" to them.  Thus, contrary to the government's representations, courts in Arizona define an individual who has standing to seek imposition of a constructive trust more generally as one "to whom [the property interest] justly belongs," or one "at whose expense" the defendant is unjustly enriched; the cases do not require any showing that a petitioner was the victim or was "the party who was defrauded."  *See Harmon*, 126 Ariz. at 244; *Matter of Lloyd Revocable Tr.*, 2017 WL 4682255, at *3; *Turley*, 213 Ariz. at 643.

---

[4]  The government presents a set of five elements that it claims are necessary to establish a constructive trust under Arizona law.  (Mot. at 8.)  The government's five elements are not explicitly stated in any Arizona case, but rather appear to have been assembled by the government based on its reading of several different Arizona cases.  (*Id*. at 8 n. 5.)  Petitioners disagree with the government's formulation of Arizona's constructive trust standard, as well as its application to the facts of this case.  To be clear, what the Arizona cases do say regarding the imposition of a constructive trust is that it can be imposed in situations where it is necessary "to compel one who unfairly holds a property interest to convey that interest to another *to whom it justly belongs*." *Harmon*, 126 Ariz. at 244.  Nevertheless, in Part A of this brief, Petitioners will address the third "element" of the government's standard, and discuss why this element is misstated.  Part B of this brief will address the remaining "elements" of the government's standard.

Petitioners recognize that this Court previously held that Petitioners are not the victims of Rudolph's mail fraud offense.  (22 CR 12, Dkt. #344.)  While they may respectfully disagree, Petitioners acknowledge this ruling, and do not seek to relitigate this issue at this time.  Rather, Petitioners' claim is predicated differently: while Petitioners may not be considered victims, as defined in the federal Mandatory Victim Restitution Act ("MVRA") and Crime Victim's Rights Act ("CVRA"), they are parties to whom the interest in the property preliminarily ordered forfeited justly belongs under Arizona law.  The fact that Petitioners were held not to be victims under federal law is irrelevant to this inquiry.

To make the point, under the MVRA, a "victim" is defined as "a person directly and proximately harmed as a result of the commission of an offense[.]"  18 U.S.C. § 3663A(a)(2).[5]  To meet this standard, the Tenth Circuit requires a showing that "the defendant's conduct is the 'but-for' cause of the individual's harm and that the defendant 'proximately' caused the harm."  *United States v. Speakman*, 594 F.3d 1165, 1171-72 (10th Cir. 2010).  *See also* 24 C.J.S. Criminal Procedure and Rights of Accused § 2505 ("'Direct and proximate harm' . . . [under the MVRA] means that the loss would not have occurred but for the offense and that it was foreseeable."); *In re Antrobus,* 519 F.3d 1123, 1126 (10th Cir. 2008) (Tymkovich, J., concurring) (applying "traditional rules of 'but-for' and 'proximate' causation" in the CVRA context, and noting that direct harm "encompasses a 'but-for' causation notion" that is different from proximate harm);

---

[5] The CVRA similarly defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. § 3771(e)(2)(A).  Because the definition of a "victim" in the MVRA is "virtually identical" to the CVRA's definition of a "crime victim," the Tenth Circuit has looked to both MVRA and CVRA precedent when interpreting the statutes.  *See United States v. Maldonado-Passage*, 4 F.4th 1097, 1102-03 (10th Cir. 2021).

21A Am. Jur. 2d Criminal Law § 1209 ("[T]he CVRA requirement that the victim be 'directly and proximately harmed' encompasses the traditional but for and proximate cause analyses.").

Unlike the requirements for victim status under the MVRA and CVRA, Arizona law does not require "direct" or "proximate" harm for a party to have standing to seek imposition of a constructive trust. As previously discussed, courts in Arizona require only that a party must be one "to whom [the property interest] justly belongs," or one "at whose expense" the defendant is unjustly enriched. *See Harmon*, 126 Ariz. at 244; *Matter of Lloyd Revocable Tr.*, 2017 WL 4682255, at *3; *Turley*, 213 Ariz. at 643.

Indeed, courts in Arizona would not place such a limitation on standing to seek a constructive trust, as such restrictions contradict the entire purpose of the constructive trust remedy. Under Arizona law, a constructive trust is a flexible remedy that is meant to adapt to the particular circumstances of a given situation. "Because imposition of a constructive trust is an equitable remedy, '[t]here is no set or unyielding formula' courts use to impose them." *Turley*, 213 Ariz. at 643 (citing *Chirekos*, 24 Ariz. App. at 224). *See also Raestle v. Whitson*, 119 Ariz. 524, 526 (1978) ("Because of the variety of circumstances in which a constructive trust has been imposed, the doctrine has remained flexible . . . . A court in equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.") (internal quotations and citations omitted).

Moreover, courts in Arizona will impose constructive trusts in situations where the constructive trust beneficiary was not directly or proximately harmed, such as in the context of a breach of fiduciary duty. *See Turley*, 213 Ariz. at 644 ("If a court imposes a constructive trust based on a breach of fiduciary duty, it may be doing so in favor of a plaintiff who has not suffered a loss . . . on the ground that [the defendant] would be unjustly enriched if he were permitted to

retain [the property], even though that enrichment is not at the expense . . . of the plaintiff.") (internal citations omitted). *See also Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 130-31 (Ct. App. 2012), *as amended* (June 29, 2012) ("The remedy is tied to unjust enrichment of the defendant and, although typically invoked when the enrichment is at the plaintiff's expense, it may be imposed when the plaintiff has not suffered a loss of ownership, *such as when the defendant wrongly prevented the plaintiff from acquiring the property* or reaped a profit through violation of a fiduciary duty owed to the plaintiff.") (emphasis added) (citations omitted).

The scenario presented in this case is ideal under Arizona law for the imposition of an equitable constructive trust. The proceeds of Mrs. Rudolph's life insurance policies "justly" belong to Petitioners, and it would be unconscionable to allow anyone but Petitioners to retain them. Prior to her death, Mrs. Rudolph designated her children (or trusts that ultimately benefit them) as the contingent beneficiaries of her life insurance policies. With limited exceptions, the insurance companies who wrote the policies agree that Petitioners are the proper beneficiaries of the policies. (Hotaling Decl. Exs. C, D, E, F (Assignment Agreements), G (Genworth Letter).)

It is well-settled that an insurance company is obligated to pay a contingent beneficiary (or the estate of the insured, if there are no contingent beneficiaries) if the primary beneficiary pre-deceases the insured, or is in some other way disqualified, such as by murdering the insured. *See Genworth Life & Annuity Ins. Co. v. James Butwin Ins. Tr. Fund*, No. 12-01732, 2014 WL 12689490, at *4 (D. Ariz. Apr. 30, 2014), *dismissed*, 651 F. App'x 572 (9th Cir. 2016) (finding contingent beneficiaries on life insurance policy were rightful recipients of proceeds where primary beneficiary predeceased insured); *Matter of Estate of Chiesi v. First Citizens Bank, N.A.*, 613 N.E.2d 14 (Ind. 1993) ("The Court of Appeals correctly noted that when a named beneficiary murders a policy holder, the beneficiary forfeits whatever rights he or she had under the policy.

11

The beneficiary is deemed to hold the proceeds of the policy in constructive trust for the estate of the deceased"); *Glass v. United States*, 506 F.2d 379, 382 (10th Cir. 1974) ("Prior to [insured's killer's] conviction the Plaintiffs had no right to claim the policy proceeds. Their rights to claim were as contingent beneficiaries, and as such, secondary to the primary rights claimed by [insured's killer] as principal beneficiary. It was only after her conviction that [insured's killer], in legal effect, forfeited her right to the policy proceeds."). In fact, it is common practice for insurance companies to file interpleader actions where suspicious circumstances surround an insured's death, to determine who the rightful recipient of the proceeds is – the primary beneficiary, or some other previous or contingent beneficiary. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, 57 (Ct. App. 2009) (affirming judgment in interpleader action for previously-named beneficiary of life insurance policy where primary beneficiary was found to be responsible for insured's death, and thus disqualified from receiving insurance proceeds). *Cf. Harper v. Prudential Ins. Co. of Am.*, 233 Kan. 358, 372 (1983) (insurance company who paid primary beneficiary who insurance company was reasonably certain had murdered insured should have filed suit interpleading contingent beneficiary).[6]

If the insurance companies had known at the time about Rudolph's involvement in Mrs. Rudolph's death, they would have bypassed Rudolph and paid the proceeds directly to Petitioners. (*See* Pet. ¶ 20; Pet. Ex. D (ECF No. 367-4); Pet. Ex. E (ECF No. 367-5).) Even the government

---

[6] Analogous support is found in the probate context, where Arizona law provides that a person who kills the decedent forfeits any benefit from the decedent's estate. *See* 12 Ariz. Prac., Estate Planning and Probate Handbook § 3:19. According to the Arizona Practice Series: "Another alternative to interpleading the funds or property is a constructive trust. The decedent's estate has standing to petition the probate court to create a constructive trust on the killer's property or estate to secure proper payments if the killer's actions resulted in a criminal conviction, the killer was a spouse of the victim, or the parent of the victim." *Id.*

largely concedes that the proceeds of the insurance policies should rightfully go to Petitioners. (Mot. at 15.)  As such, a constructive trust remedy exists to compel Rudolph to surrender the proceeds to Petitioners.  *Cf. Turley*, 213 Ariz. at 644 (citations omitted).  *See also Kent v. Klein*, 352 Mich. 652, 658 (1958) (applying constructive trust to surrender property from recipient to third party, not original holder); *Mesa Petroleum Co. v. Coniglio*, 16 B.R. 1015, 1019 (M.D. Fla. 1982).  There can be no doubt that Petitioners are the party to whom the insurance proceeds justly belong.  As such, Petitioners have clearly established their entitlement to a constructive trust under Arizona law.

## B.  The Government's Arguments on the Remaining "Elements" of its Constructive Trust Standard Are Unavailing.

As is set forth above, Petitioners have demonstrated that the imposition of a constructive trust is appropriate under Arizona law because the assets subject to forfeiture justly belong to Petitioners.  Regarding the remaining "elements" of the government's formulation of the constructive trust standard, its arguments are either inaccurate or unpersuasive.

### 1. The Preliminary Order of Forfeiture Does Not Defeat the Petitioner's Claim.

The government argues that Petitioners cannot demonstrate the first two "elements" of its constructive trust standard – that Rudolph is wrongfully holding the assets in a way that unjustly enriches him – because the Preliminary Order of Forfeiture entered by this Court on May 16, 2023 divests him of his interest and title to the forfeited property.  (Mot. at 9.)  Petitioners do not disagree with the hypertechnical position that a preliminary order of forfeiture has the effect of divesting a defendant of title to the forfeited property.

However, a preliminary order of forfeiture is what initiates the third-party claims process and allows third parties to assert a superior claim to those assets.  In other words, a third party with a superior right, title, or interest in the forfeited property is not able to assert a claim without the

Court first entering a preliminary order of forfeiture.  If the government is implying that Petitioners should have asserted their claim to the assets via constructive trust *before* the Preliminary Order of Forfeiture was entered, such a position is nonsensical and blatantly contradicted by the clear requirements of 21 U.S.C. § 853(n), according to the government's own theory of the case.  (*See* Addendum to Mot. ("*After an order of forfeiture has been entered by the court* . . . [a]ny person, other than the defendant, who wants to assert an interest in the property ordered to be forfeited to the United States must file a petition to the court within 30 days of the final publication of notice, or receipt of written notice").)

Moreover, if the government's position were correct, no petitioner would ever succeed in establishing a constructive trust to invalidate a preliminary order of forfeiture.  And yet, numerous federal circuits have recognized constructive trusts to defeat the government's claim to assets preliminarily ordered forfeited.  *See Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 245 (2d Cir. 2011); *United States v. Lavin*, 942 F.2d 177, 185-87 & n. 10 (3d Cir. 1991); *United States v. Campos*, 859 F.2d 1233, 1238-39 (6th Cir. 1988); *United States v. Marx*, 844 F.2d 1303, 1308 (7th Cir. 1988); *United States v. $4,224,958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004); *United States v. Shefton*, 548 F.3d 1360, 1365 (11th Cir. 2008).   In these cases, a preliminary order of forfeiture had been entered, meaning the defendant had technically been divested of all interest in the property preliminarily ordered forfeited.  *See Willis Mgmt.*, 652 F.3d at 239; *Lavin*, 942 F.2d at 179; *Campos*, 859 F.2d at 1234; *Shefton*, 548 F.3d at 1362.  Nonetheless, the courts still imposed constructive trusts and recognized those constructive trusts as invalidating the preliminary orders of forfeiture.  Thus, the Court's entry of the Preliminary Order of Forfeiture therefore has no effect on Petitioners' ability to establish their entitlement to a constructive trust here.

To the extent the government argues that the constructive trust remedy is not necessary here to prevent an unjust enrichment to Rudolph, as forfeiture deprives Rudolph of his ill-gotten gains (Mot. at 9), the government overlooks the key dual aim of constructive trusts under Arizona law. A constructive trust "is a remedial device, used 'to compel one who unfairly holds a property interest *to convey that interest to another to whom it justly belongs*.'" *Matter of Est. of Stoloff–Kelter*, No. 1 CA-CV 15-0451, 2016 WL 6441013, at *4 (Ariz. Ct. App. Nov. 1, 2016) (citations omitted) (emphasis added). A constructive trust is not simply about preventing unjust enrichment of a wrongdoer; it is about preventing unjust enrichment of a wrongdoer *and* transferring the constructive trust assets to the rightful owner.

As such, a constructive trust is concerned with addressing the rights of those who were wronged, *in addition to* preventing an unjust enrichment. In this sense, forfeiting the proceeds and appreciation from Rudolph only accomplishes half the goal. It may prevent the unjust enrichment, but it falls short of turning over the assets to Petitioners as the rightful owners. Thus, a constructive trust is a necessary remedy in this case.[7]

### 2. Petitioners Have Traced Their Assets to the Property Wrongfully Acquired.

The government argues that Petitioners cannot demonstrate the fourth "element" of its constructive trust standard – tracing their property interest to the forfeited assets – because those assets "were obtained or funded with insurance proceeds obtained through mail fraud on the insurance companies." (Mot. at 11.) This argument appears to be a rehash of the government's previous argument regarding the "party who was defrauded" – i.e., Petitioners are unable to

---

[7] To the extent the government argues that the insurance proceeds must be forfeited to punish Rudolph (Mot. at 10 n. 6), such punishment will happen whether the assets are forfeited or found to be held in constructive trust and turned over to Petitioners. Either way, Rudolph is forced to disgorge his ill-gotten gains. Just because the government wishes to punish Rudolph does not mean it can do so by forfeiting assets that never legally belonged to Rudolph in the first place.

establish traceability for a constructive trust because they cannot establish that the property belongs to them.  For the reasons previously discussed in Part B *supra*, the government is incorrect.[8]

The government also argues that even if Petitioners could establish an interest in the insurance proceeds (which they have), they have not provided any tracing to do so.  (Mot. at 12.) The government is wrong again.  According to the government's own cases, under Arizona law, a party need only identify the "specific property, or res, in which the claimant has an interest." *Amtitle Tr. Co. v. Fitch*, 25 Ariz. App. 182, 184 (1975).  *See also Matter of Lloyd Revocable Tr.*, 2017 WL 4682255, at *3.  Petitioners have clearly done so – they have a direct interest in Mrs. Rudolph's insurance proceeds and any appreciated assets that flow therefrom.  (*See* Verified Pet. at ¶ 3.)  In doing so, Petitioners incorporated the government's extensive tracing analysis, in which it documented in detail the tracing of the insurance proceeds (which justly belong to Petitioners) into various bank accounts and real and personal property.  Petitioners do not dispute the government's tracing as accurate, and can further present such evidence at an ancillary hearing to clearly and convincingly establish traceability of these assets.

Plaintiffs have more than plausibly alleged their entitlement to the insurance proceeds and thus their standing to pursue their Verified Petition.

---

[8] Furthermore, the cases the government cites in support of their argument that Petitioners cannot trace their funds to the seized assets are inapposite.  In *Matter of Lloyd Revocable Tr.*, 2017 WL 4682255, at *3 and *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 518 (2d Cir. 2023), the parties made no showing whatsoever that their funds were used to acquire the assets over which they sought to establish a constructive trust.  Here, Petitioners have clearly shown their rights to the insurance proceeds and their possessory interest in the assets purchased with those proceeds. The government also cites *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008), which did not concern traceability issues.  Rather, the Tenth Circuit refused to impose a constructive trust because there were many different claimants to the property, and the circumstances were such that it was not fair to give one claimant priority over another.  Here, there are no other potential claimants besides Petitioners.  (*See* Mem. at 15 n. 6 (ECF No. 368).)

### 3. Petitioners Have No Adequate Remedy at Law.

Lastly, the government claims that Petitioners cannot demonstrate the fifth "element" of its constructive trust standard – that there is no adequate remedy at law – because it claims that both Petitioners and the insurance companies have an adequate remedy at law. (Mot. at 14-15.) Specifically, the government argues that the insurance companies will receive restitution under the Restitution Order, and Petitioners can assert claims against the insurance companies. (*Id*.) The government is again incorrect. Neither the insurance companies nor Petitioners have an adequate remedy at law.

First, any recourse the insurance companies may have is highly speculative and almost completely dependent on the government's own discretion. There are no assets left against which the government may execute to satisfy the Restitution Order. (Hotaling Decl. at ¶ 7.) All of Rudolph's remaining assets are subject to the Preliminary Order of Forfeiture. As such, the insurance companies' only potential for recovery on the Restitution Order is through the remission process provided in § 853(i), in which the Department of Justice may, *in its own discretion*, restore forfeited property to the victims of an offense. *See* 21 U.S.C. § 853(i)(1). The Second and Eleventh Circuits have explicitly rejected this remission process as an "adequate remedy at law" that would deprive the district court of the power to recognize a constructive trust. *See Willis Mgmt.*, 652 F.3d at 244-45; *Shefton*, 548 F.3d at 1364. *See also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) (noting that, to preclude equitable remedies, a proposed legal alternative "cannot be adequate if its adequacy depends upon the will of the opposing party") (internal quotation marks omitted). Such administrative recourse through the Department of Justice is therefore insufficient to constitute an "adequate remedy at law."

Further, Petitioners have no recourse against the insurance companies. Under Arizona law, the insurance companies are immunized from double liability for making payments on the

17

insurance policies to Rudolph because they paid out the policies in good faith, before they received notice of his involvement in Mrs. Rudolph's death. *See* A.R.S. § 14-2803(G) ("A payor or other third party is not liable for having made a payment or transferred an item of property or any other benefit to a beneficiary designated in a governing instrument affected by an intentional and felonious killing or for having taken any other action in good faith reliance on the validity of the governing instrument on request and satisfactory proof of the decedent's death and before the payor or other third party received written notice of a claimed forfeiture or revocation under this section."). *Cf. Colonial Life & Acc. Ins. Co. v. Heveder*, 274 Ga. App. 377 (2005) (holding similar exoneration provision under Georgia law discharged life insurance company from liability who paid proceeds to beneficiary who was later found to have killed the insured); *Alfa Life Ins. Corp. v. Culverhouse*, 729 So. 2d 325, 328 (Ala. 1999) (same under Alabama law).

As such, the insurance companies are under no obligation to pay the claims submitted by Petitioners unless and until they receive their restitution payments.  Once they receive their restitution payments, they would at that point become obligated to pay Petitioners the policy amounts as the contingent beneficiaries.  (*See* discussion in Part A, *supra*.)  The insurance companies have accordingly indicated to Petitioners' counsel that they will not make any payments on claims submitted by Petitioners on the policies until they receive their restitution payments (Hotaling Decl. at ¶ 11),[9] which, as previously discussed, is highly speculative and uncertain. Petitioners therefore have no adequate remedy at law against the insurance companies.

_____

[9] Four of the insurance companies executed Assignment and Release Agreements memorializing this position.  (*See* Hotaling Decl. Exs. C, D, E, F (Assignment Agreements).) Petitioners also received a letter from a fifth insurance company, Genworth, stating as much.  (*See* Hotaling Decl. Ex. G (Genworth Letter).)   Contrary to the government's characterization of Petitioners' intent regarding these agreements (Mot. at 10), Petitioners are not seeking to stand in the shoes of the insurance companies and assert their rights in this ancillary proceeding.  Rather, Petitioners introduce these agreements merely to show: (1) that the insurance companies do not

Lastly, the government fails to appreciate that "'the adequate remedy at law is limited to cases in which there is an adequate legal remedy *against the defendants that are before the court*.'" *ML Servicing Co. v. Coles*, 235 Ariz. 562, 569 (Ct. App. 2014) (quoting *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 211 (Ct. App. 2010)) (further citations omitted) (emphasis added).  The insurance companies are not defendants before this Court.  Therefore, Petitioners have no adequate remedy at law vis-à-vis the insurance companies, and the government's cases on this point are inapposite.  *See ML Servicing Co.*, 235 Ariz. at 569 (finding adequate remedy at law existed against defendants under specific Arizona exemption statute); *Acedo v. Mannion*, No. 1 CA-CV 20-0017, 2020 WL 6286716, at *2 (Ariz. Ct. App. Oct. 27, 2020) (finding adequate remedy at law existed against defendants for money damages).

## CONCLUSION

For the foregoing reasons, Petitioners Julian Rudolph and AnaBianca Rudolph respectfully request that this Court deny the government's Amended Motion to Dismiss the Verified Petition, and hold an ancillary hearing pursuant to 21 U.S.C. § 853(n)(5) at which Petitioners may testify and present evidence supporting their superior interests in the forfeited property.  Petitioners further respectfully request that this Court recognize their interests in the Final Order of Forfeiture, and order that the forfeited property along with any appreciation in value be disbursed to Petitioners.

*[Signature block on next page]*

---

view themselves as victims; and (2) that the insurance companies intend to pay Petitioners any restitution they are awarded, to the point where they have directly assigned their rights to that restitution to Petitioners.  (*See* Hotaling Decl. Exs. C, D, E, F (Assignment Agreements), G (Genworth Letter).)  However, for all the reasons previously discussed, that assignment of rights is meaningless without other assets to collect against, or if that collection is dependent on the government's own discretion under 21 U.S.C. § 853(i)(1).

Dated: December 8, 2023

PETITIONERS' COUNSEL

*/s/Christopher P. Hotaling*
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:    312.977.4418

*/s/John R. Sandweg*
John R. Sandweg (DC Bar #1027208)
NIXON PEABODY LLP
799 9th Street NW, Suite 500
Washington, DC 20001-5327
Tel:    202.585.8189

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically on December 8, 2023, and thereby delivered by electronic means to all registered participants.

*/s/Christopher P. Hotaling*
Christopher P. Hotaling (IL Bar #6272432)
NIXON PEABODY LLP
70 West Madison, Suite 5200
Chicago, IL 60602-4378
Tel:    312.977.4418
