# EXHIBIT E

## ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

This is an Assignment Agreement and General Release of All Claims (hereinafter referred to as the "Agreement") entered into by and between AnaBianca Rudolph; Julian Rudolph, individually, in his capacity as the Trustee of the Rudolph Trust dated 04-25-2016, and in his capacity as the Executor and Personal Representative of the Estate of Bianca Rudolph; and Great-West Life & Annuity Insurance Company, through its administrator Protective Life Insurance Company, (hereinafter referred to collectively as the "Parties"). The effective date of this Agreement shall be April 1, 2023.

## DEFINITIONS

As used herein:

1. "Releasors" shall mean:

   a. AnaBianca Rudolph: (i) individually; and (ii) each of her predecessors, beneficiaries, successors, assigns, heirs, executors, administrators, agents, servants, employees, representatives, attorneys, and all other persons, firms, or corporations that may have or claim an interest by or through her;

   b. Julian Rudolph: (i) individually; and (ii) each of his predecessors, beneficiaries, successors, assigns, heirs, executors, administrators, agents, servants, employees, representatives, attorneys, and all other persons, firms, or corporations that may have or claim an interest by or through him;

   c. The Rudolph Trust dated 04-25-2016, through its trustee Julian Rudolph, and each of its successors, assigns, heirs, executors, administrators, agents, servants, employees, grantors, settlors, trustors, trustees, beneficiaries, representatives, and all other persons, firms, or corporations that may have or claim an interest by or through said Trust; and

   d. Estate of Bianca Rudolph, through its executor and personal representative Julian Rudolph, and each of said Estate's current, former, and future personal representatives, executors, executrixes, assigns, heirs, administrators, agents, servants, employees, beneficiaries, and all other persons, firms, or corporations that may have or claim an interest by or through said Estate.

2. "Great-West" shall mean:

   a. Great-West Life & Annuity Insurance Company and any of its current, former, and future divisions, successors, assigns, predecessors, agents, representatives, servants, employees, brokers, contractors, shareholders, principals, trustees, directors, officers, reinsurers, coinsurers, insurers, administrators, attorneys, distributors, dealers, partners, fiduciaries, heirs, members, independent contractors, registered representatives, claims administrators, experts, vendors,

Page 1 of 10

    managers, owners, legal representatives, subsidiaries, sister and parent corporations, and all other former, current, and future affiliated or related persons, firms, entities, and corporations, including, but not limited to, Empower Annuity Insurance Company of America; Empower Holdings, Inc. f/k/a GWL&A Financial, Inc.; Great-West Lifeco U.S. LLC; Great-West Lifeco, Inc.; Great-West Life Assurance Company; Power Corporation of Canada; and Power Financial Corporation; and

  b. Protective Life Insurance Company and any of its current, former, and future divisions, successors, assigns, predecessors, agents, representatives, servants, employees, brokers, contractors, shareholders, principals, trustees, directors, officers, reinsurers, coinsurers, insurers, administrators, attorneys, distributors, dealers, partners, fiduciaries, heirs, members, independent contractors, registered representatives, claims administrators, experts, vendors, managers, owners, legal representatives, subsidiaries, sister and parent corporations, and all other former, current, and future affiliated or related persons, firms, entities, and corporations, including, but not limited to, Protective Life & Annuity Insurance Company; Protective Life Corporation; The Dai-ichi Life Insurance Company, Limited; Dai-ichi Life Holdings, Inc.; and Dai-ichi Life International Holdings, LLC.

  3. The "Certificate" shall mean Great-West Life & Annuity Insurance Company Certificate No. 105665—the group term life insurance certificate issued under Group Policy No. 104TLP.

## RECITALS

  WHEREAS, on or around January 29, 1980, Dr. Lawrence P. Rudolph ("Dr. Rudolph") became insured under the American Dental Association's Group Policy No. 104TLP (the "Group Policy") and was issued the Certificate;

  WHEREAS, the Certificate contained a Life Insurance for Dependents Rider, which provided term life coverage of $500,000.00 and accidental death coverage of $500,000.00 to Dr. Rudolph's spouse, Bianca Rudolph;

  WHEREAS, on or around July 21, 2016, the beneficiary of the Certificate's Life Insurance for Dependents Rider was changed to "Lawrence P. Rudolph, Trustee under the Rudolph Trust dated 04-25-2016";

  WHEREAS, on or around October 11, 2016, Bianca Rudolph died;

  WHEREAS, on or around February 14, 2017, Great-West paid the term life and accidental death benefits of the Life Insurance for Dependents Rider, plus applicable interest, to Dr. Rudolph, as trustee of the Rudolph Trust dated 04-25-2016, in the total amount of $1,000,157.54 (the "Certificate Proceeds");

WHEREAS, on January 5, 2022, Dr. Rudolph was indicted in the United States District Court for the District of Colorado, Case No. 22-cr-00012-WJM, for the foreign murder of the Bianca Rudolph under 18 U.S.C. §§ 1111 and 1119 and for mail fraud and aiding and abetting and willfully causing mail fraud under 18 U.S.C. §§ 1341 and 1342, and the United States sought to forfeit "any and all rights, title, and interest in all property constituting and derived from any proceeds he obtained directly and indirectly as a result of such offense or offenses" or a money judgment in the same amount (hereinafter referred to as the "Criminal Proceeding");

WHEREAS, Dr. Rudolph was convicted by a jury on August 1, 2022, in the Criminal Proceeding;

WHEREAS, the United States filed a Motion for Mandatory Restitution and Forfeiture on November 15, 2022, seeking to forfeit certain seized property, including insurance proceeds Dr. Rudolph received, and seeking restitution, including restitution to the insurance companies that were harmed by Dr. Rudolph's mail fraud, including $1,000,157.54 specifically to Great-West (hereinafter referred to as the "Restitution Motion");

WHEREAS, Dr. Rudolph disputed the United States' Motion for Mandatory Restitution and Forfeiture, including by arguing that the insurance companies are not "victims" entitled to restitution and this matter is being litigated;

WHEREAS, the United States District Court for the District of Colorado has ruled that the insurance companies, including Great-West, are victims entitled to restitution;

WHEREAS, on December 21, 2021, the United States, by and through the United States Attorney's Office for the District of Colorado, instituted an *in rem* forfeiture action against certain properties, including certain bank accounts—Case No. 1:21-cv-03423-MEH (hereinafter referred to as the "Forfeiture Proceeding");

WHEREAS, the Parties agree that, to the extent the Certificate Proceeds are not payable to Lawrence P. Rudolph as trustee of the Rudolph Trust dated 04-25-2016, they are payable to the current/successor trustee of the Rudolph Trust dated 04-25-2016;

WHEREAS, to expedite resolution of the issue of entitlement to the Certificate Proceeds, Great-West agrees to assign any and all rights it may have to Julian Rudolph, as the current/successor trustee of the Rudolph Trust dated 04-25-2016, to any restitution of the Certificate Proceeds that Great-West may be entitled to receive in connection with the Criminal Proceeding, the Restitution Motion, and the Forfeiture Proceeding;

WHEREAS, the Parties desire to execute and deliver this Assignment and General Release of All Claims Agreement on the terms and conditions set out herein;

NOW, THEREFORE, in consideration of the premises set out above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## **TERMS AND CONDITIONS**

1.  The above Definitions and Recitals form an integral part of this Agreement, and they are incorporated by reference as if fully set forth herein.

2.  Great-West hereby transfers and assigns to Julian Rudolph, as trustee of the Rudolph Trust dated 04-25-2016, any and all rights Great-West may have in connection with the Criminal Proceeding, the Restitution Motion, and the Forfeiture Proceeding, including to any restitution award which Great West may be entitled to recover. Great-West further agrees that, after the Effective Date of this Agreement, it will not independently take any position as to the issue of the proper "victim" for purposes of restitution and recovery of the Certificate Proceeds in connection with the Criminal Proceeding, the Restitution Motion, and the Forfeiture Proceeding.

3.  In consideration of the assignment set forth in Paragraph 2 above, the Releasors fully and forever release, acquit, and discharge Great-West from any and all liability on account of any and all claims, demands, actions or causes of action, whether in contract or tort, or pursuant to any statute, ordinance or regulation, whether direct or indirect, whether known or unknown, whether presently discoverable or undiscoverable, whether suspected or claimed, which Releasors had, now have, or may have in the future against Great-West arising from or relating in any way to the Certificate and the Certificate Proceeds (hereinafter referred to collectively as the "Released Claims"). This release by the Releasors specifically includes all claims, demands, and causes of action for emotional distress, mental anguish, anxiety, embarrassment, attorneys' fees, costs, general damages, compensatory damages, consequential damages, exemplary damages, treble damages, punitive damages, statutory damages, extra-contractual damages, pre-judgment interest, post-judgment interest, statutory interest, interest, damages under 215 ILCS § 5/155, and all other damages available under applicable law. Without in any way limiting the generality of this paragraph, this section shall be construed as a complete bar against any prosecution of any claim by any of the Releasors against Great-West, directly or indirectly, relating in any way to the Released Claims. The Releasors expressly agree and acknowledge that receipt of any money they may receive under the assignment set forth in Paragraph 2 will be the only payment of money they will ever receive in connection with the Certificate, and to the extent Releasors receive less than the $1,000,157.54 in connection with the Criminal Proceeding, the Restitution Motion, and the Forfeiture Proceeding, Releasors expressly agree and acknowledge that Great-West will not be liable to any of the Releasors to make up any difference or shortfall and Releasors will receive no additional money or benefit whatsoever from Great-West relating in any way to the Released Claims.

4.  Releasors agree, represent, warrant, understand, and acknowledge that factual matters now unknown to him relating to the Released Claims may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses that are presently unknown, unanticipated, and unsuspected, and which if known by Releasors at the present time may have materially affected their respective decisions to execute this Agreement. Releasors further agree, represent, and warrant that this Agreement has been negotiated and agreed upon in light of that understanding, and that Releasors nevertheless hereby intend to release, discharge, and acquit Great-West from any such unknown causes of action, claims, demands, debts, controversies, damages, costs, losses, and expenses arising from and relating to the Released Claims. Releasors acknowledge and agree that by reason of this

Agreement, they are assuming any risk of such unknown facts and such unknown and unsuspected claims against Great-West.

5. Releasors hereby acknowledge that acceptance of this settlement is in full accord and satisfaction of all claims asserted or which could have been asserted against Great-West arising out of or relating to the Released Claims. Releasors further agree and understand that, by reason of this Agreement, it is Great-West's objective and intention that it be released from any and all liability and claims arising out of or relating to the Released Claims.

6. Releasors agree and understand that Great-West has not provided, and will not provide, any tax advice concerning any payment, restitution, or consideration described herein. Releasors acknowledge that it is their sole responsibility to seek tax advice from an independent tax professional, if they so choose, at their own expense. Releasors agree and understand that they are solely responsible for determining any tax consequences and satisfying all applicable tax obligations resulting from any payment, restitution, or consideration described herein. If any federal or state tax agency seeks payment from Great-West for any tax liability incurred by Releasors as a result of any payment, restitution, or consideration described herein, Releasors shall indemnify and hold harmless Great-West for any such liability.

7. Releasors warrant and represent that there are no additional claims held or asserted by third parties to the Released Claims. Releasors further warrant and represent that they have not assigned, sold, transferred, or subrogated any part of any claim, lien, demand, right, or cause of action, whether known or unknown, for any monies, injuries, or damages arising out of or relating to the Released Claims to any other person or entity, and Releasors claim to be the sole and exclusive owner of any and all such claims.

8. In further consideration of the acts, promises, and obligations set forth herein, Releasors agree to indemnify, defend, and hold harmless Great-West against any and all subsequent claim(s) to any portion of the death benefit of the Certificate's Life Insurance for Dependents Rider insuring Bianca Rudolph, and any and all future actions, causes of action, claims, demands, damages, costs, losses, expenses, fees, compensation, and suits of any kind or of any nature whatsoever arising out of or relating to the Certificate's Life Insurance for Dependents Rider insuring Bianca Rudolph.

9. Releasors expressly warrant and represent that Julian Rudolph is the sole appointed executor and personal representative of the Estate of Bianca Rudolph, and that said appointment has not been revoked or terminated prior to Julian Rudolph's execution of this Agreement on behalf of the Estate of Bianca Rudolph.

10. Releasors expressly warrant and represent that Julian Rudolph is the sole appointed trustee of the Rudolph Trust dated 04-25-2016, and that said appointment has not been revoked or terminated prior to Julian Rudolph's execution of this Agreement on behalf of the Rudolph Trust dated 04-25-2016. Releasors further expressly warrant and represent that Julian Rudolph and AnaBianca Rudolph are the sole beneficiaries of the Rudolph Trust dated 04-25-2016.

11. The Parties acknowledge the sufficiency of the consideration for this Agreement and all paragraphs contained herein.

12. Releasors expressly understand, acknowledge, and agree that this settlement is not an admission of liability on the part of Great-West, but is made solely to compromise claims for the purpose of avoiding future and protracted litigation. Releasors hereby expressly acknowledge and agree that Great-West expressly denies any and all alleged wrongdoing in connection with the matters released herein.

13. This Agreement contains the entire agreement between the Parties and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the subject matter hereof, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written, are merged into and superseded by this Agreement. This Agreement is entered into and executed without reliance upon any promise, warranty, or representation by any Party or any representative of any Party, other than those expressly contained herein. Each Party has carefully read this Agreement, has been advised of its meaning and consequences by their respective counsel, and executes this Agreement of their own free will.

14. This Agreement shall not be modified except by a written document signed by all Parties. No waiver of this Agreement or of any of its promises, obligations, terms, or conditions shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

15. No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver. If any provision of this Agreement is found to be void or unenforceable, the remaining provisions shall nonetheless be binding with the same effect as though the void or unenforceable provisions were deleted.

16. The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without regard to such State's conflict of laws rules.

17. The language of all parts of this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. None of the Parties shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations amongst the Parties. The Parties cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any of the Parties.

18. Each of the Parties shall do and perform, or cause to be done and performed, all such further acts and things, and shall execute and deliver all such other agreements and documents, as any of the other Parties may reasonably request to carry out the intent and accomplish the purposes of this Agreement and the consummation of the transactions contemplated hereby.

19. This Agreement shall be binding upon and inure to the benefit of all Parties and their respective spouses, children, heirs, representatives, successors, and assigns. This Agreement shall be binding, enforceable, discoverable, and admissible to establish the rights, obligations, and duties of the Parties in any action brought to enforce this Agreement. In the event that a subsequent action, other proceeding, or motion is brought to enforce the terms and conditions contained in this

Agreement, the prevailing party will be entitled to its reasonable attorneys' fees and costs associated with such enforcement.

20. This Agreement may be executed in any number of counterparts and may be transmitted by facsimile or electronic transmission. Each counterpart so executed shall be deemed to be an original, and all of which together shall be deemed one and the same instrument.

21. The Parties represent and acknowledge that they have been represented by legal counsel in connection with the drafting and negotiation of this Agreement; that they have carefully reviewed this Agreement and have consulted with their respective legal counsel prior to executing this Agreement; that they have been advised of the meaning and consequences of this Agreement by their respective legal counsel; that they understand the meanings and consequences of the Agreement; and that they are executing this Agreement voluntarily, of their own free will, and fully intending to be legally bound thereby.

**[Remainder of Page Intentionally Left Blank]**
**Signature Pages to Follow**

## ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

BY SIGNING BELOW, I DECLARE THAT I HAVE READ THIS ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS, THAT I HAVE HAD THE OPPORTUNITY TO DISCUSS IT WITH MY ATTORNEYS, THAT I HAVE THE CAPACITY AND AUTHORITY TO AGREE TO THE TERMS HEREOF, AND THAT I UNDERSTAND AND AGREE TO THE TERMS HEREOF.

I FURTHER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF, OR BASED UPON, THIS AGREEMENT.

_____
ANNABIANCA RUDOLPH, Releasor


State of Pennsylvania         )
                              ) ss.
County of Butler              )

On the 28th day of June, in the year 2023, before me, the undersigned, a Notary Public in and for said State, personally appeared AnaBianca Rudolph, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by her signature on the instrument, the individual executed the instrument.

_____
Notary Public
My Commission Expires: July 27, 2025

Commonwealth of Pennsylvania - Notary Seal
LASHEA N HOLYFIELD - Notary Public
Allegheny County
My Commission Expires July 27, 2025
Commission Number 1384571

Page 8 of 10

## ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

BY SIGNING BELOW, I DECLARE THAT I HAVE READ THIS ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS, THAT I HAVE HAD THE OPPORTUNITY TO DISCUSS IT WITH MY ATTORNEYS, THAT I HAVE THE CAPACITY AND AUTHORITY TO AGREE TO THE TERMS HEREOF, AND THAT I UNDERSTAND AND AGREE TO THE TERMS HEREOF.

I FURTHER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF, OR BASED UPON, THIS AGREEMENT.

_____
JULIAN RUDOLPH, individually, as trustee of the Rudolph Trust dated 04-25-2016, and as Executor and Personal Representative of the Estate of Bianca Rudolph, Releasors

State of  **FL**          )
                          ) ss.
County of **MIAMI-DADE**  )

On the **28** day of **JUNE**, in the year 2023, before me, the undersigned, a Notary Public in and for said State, personally appeared Julian Rudolph, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public
My Commission Expires: **4.16.27**

Notary Public State of Florida
Rebecca Remon
My Commission HH 386770
Expires 4/16/2027

Page 9 of 10

## ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS

BY SIGNING BELOW, I DECLARE THAT I HAVE READ THIS ASSIGNMENT AGREEMENT AND GENERAL RELEASE OF ALL CLAIMS, THAT I HAVE HAD THE OPPORTUNITY TO DISCUSS IT WITH MY ATTORNEYS, THAT I HAVE THE CAPACITY AND AUTHORITY TO AGREE TO THE TERMS HEREOF, AND THAT I UNDERSTAND AND AGREE TO THE TERMS HEREOF.

I FURTHER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION ARISING OUT OF, OR BASED UPON, THIS AGREEMENT.

**GREAT-WEST LIFE & ANNUITY INSURANCE COMPANY,**
by and through its administrator **PROTECTIVE LIFE INSURANCE COMPANY**, Releasee

By: _____

Its: Senior Vice President and Senior Counsel

State of Alabama    )
                    ) ss.
County of Jefferson )

On the 14th day of July, in the year 2023, before me, the undersigned, a Notary Public in and for said State, personally appeared Cary Tynes Wahlheim personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by her signature on the instrument, the individual executed the instrument.

_____
Notary Public
My Commission Expires: 7/15/2023



Page 10 of 10