# EXHIBIT F

DocuSign Envelope ID: FDB65E80-AA48-4B6E-8648-4489F474ADD3

# ASSIGNMENT AND RELEASE AGREEMENT

This Assignment and Release Agreement, dated as of August 18, 2023 (the "**Assignment and Release Agreement**"), between Transamerica Life Insurance Company (fka Transamerica Occidental Life Insurance Company), a corporation having its principal place of business at 6400 C Street, Cedar Rapids, Iowa, 52499 (the "**Insurer**"), and AnaBianca Rudolph, an individual domiciled in Pennsylvania, Julian Rudolph, an individual domiciled in Florida, and Julian Rudolph, in his capacity as the Trustee of the Rudolph Trust dated 4/25/16 and Executor/Personal Representative of the Estate of Bianca Rudolph (together with AnaBianca Rudolph and Julian Rudolph, in their personal capacities, the "**Beneficiaries**") (together with the Insurer, the "**Parties**," and each, a "**Party**"):

WHEREAS, the Insurer paid claims under the Term Life Insurance Policy No 42728878 and the Individual Life Insurance Policy No. 42186233 (collectively, the "Life Insurance Policies") to Dr. Lawrence Rudolph ("Dr. Rudolph") in the amount of $503,438.85 and $500,840.86, respectively, on March 16, 2017, following the death of his wife Bianca Rudolph (the "Insured");

WHEREAS, on January 5, 2022, Dr. Rudolph was indicted in the United States District Court for the District of Colorado, Case No. 22-cr-00012-WJM, for the foreign murder of the Insured under 18 U.S.C. §§ 1111 and 1119 and for mail fraud and aiding and abetting and willfully causing mail fraud under 18 U.S.C. §§ 1341 and 2 (the "Fraud");

WHEREAS, on December 21, 2021, the United States, by and through the United States Attorney's Office for the District of Colorado, instituted an *in rem* forfeiture action against all assets Dr. Rudolph obtained through the Fraud, which includes the proceeds the Insurer paid on Life Insurance Policies Nos. 42728878 and 42186233 (the "Forfeiture Proceeding");

WHEREAS, the Parties agree that Insurer is not a "victim" of the Fraud, as the term "victim" is defined in the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A(a)(2) and the Crime Victims' Rights Act, 18 U.S.C. § 3771(e)(2)(A). However, the parties further recognize that the U.S. District Court has determined that Insurer is a "victim" of the Fraud;

WHEREAS, the Parties agree that the Beneficiaries are "victims" of the Fraud;

WHEREAS, the Parties desire to execute and deliver this Assignment and Release Agreement on the terms and conditions set out herein;

NOW, THEREFORE, in consideration of the premises set out above and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Assignment of Rights to Restitution.</u>

1

As material consideration for the covenants, agreements, and undertakings of the Parties under this Assignment and Release Agreement:

(a) Insurer shall assign to the Beneficiaries any rights it may have in the Forfeiture Proceeding, including to any restitution arising from the proceeds Insurer paid to Dr. Rudolph as part of the Fraud;

(b) Insurer shall not independently pursue any claim in the Forfeiture Proceeding for restitution of the proceeds Insurer paid to Dr. Rudolph as part of the Fraud;

(c) Insurer shall otherwise reasonably cooperate with the Beneficiaries in any claim for restitution of the proceeds Insurer paid to Dr. Rudolph the Beneficiaries may pursue in the Forfeiture Proceeding.

2. <u>Mutual Release</u>.

(a) In consideration of the covenants, agreements and undertakings of the Parties under this Assignment and Release Agreement, effective upon the satisfaction of the Parties' obligations under Section 1, the Beneficiaries (collectively, "**Releasors**") hereby release, waive, and forever discharge the Insurer and its present and former, direct and indirect, parents, subsidiaries, affiliates, employees, officers, directors, shareholders, members, agents, representatives, permitted successors, and permitted assigns (collectively, "**Releasees**") of and from any and all actions, causes of action, suits, losses, liabilities, rights, debts, dues, sums of money, accounts, reckonings, obligations, costs, expenses, liens, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands, of every kind and nature whatsoever, whether now known or unknown, foreseen or unforeseen, matured or unmatured, suspected or unsuspected, in law, admiralty, or equity (collectively, "**Claims**"), which any of such Releasors ever had, now have, or hereafter can, shall, or may have against any of such Releasees for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of time through the date of this Assignment and Release Agreement arising out of or relating to the Agreement, except for any Claims relating to rights and obligations preserved by, created by or otherwise arising out of this Assignment and Release Agreement.

(b) Each Releasor understands that it may later discover Claims or facts that may be different from, or in addition to, those that it or any other Releasor now knows or believes to exist regarding the subject matter of the release contained in this Section 2, and which, if known at the time of signing this Assignment and Release Agreement, may have materially affected this Assignment and Release Agreement and such Party's decision to enter into it and grant the release contained in this Section 2. Nevertheless, the Releasors intend to fully, finally and forever settle and release all Claims that now exist, may exist, or previously existed, as set out in the release contained in this Section 2, whether known or unknown, foreseen or unforeseen, or suspected or unsuspected, and the release given herein is and will remain in effect as a complete release, notwithstanding the discovery or existence of such additional or different facts. The Releasors hereby waive any right or Claim that might arise as a result of such different or additional Claims or facts.

DocuSign Envelope ID: FDB65E80-AA48-4B6E-8648-4489F474ADD3

3. <u>Representations and Warranties</u>.

Each Party hereby represents and warrants to the other Party that:

(a) It has the full right, power and authority to enter into this Assignment and Release Agreement, to grant the release contained herein and to perform its obligations hereunder.

(b) The execution of this Assignment and Release Agreement by the individual whose signature is set out at the end of this Assignment and Release Agreement on behalf of such Party, and the delivery of this Assignment and Release Agreement by such Party, have been duly authorized by all necessary action on the part of such Party.

(c) This Assignment and Release Agreement has been executed and delivered by such Party and (assuming due authorization, execution and delivery by the other Party hereto) constitutes the legal, valid and binding obligation of such Party, enforceable against such Party in accordance with its terms.

(d) It (i) knows of no Claims against the other Party that are not covered by the release contained in Section 2 and (ii) has neither assigned nor transferred any of the Claims released herein to any person or entity and no person or entity has subrogated to or has any interest or rights in any Claims.

EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN SECTION 3 OF THIS AGREEMENT, (A) NEITHER PARTY HERETO NOR ANY PERSON ON SUCH PARTY'S BEHALF HAS MADE OR MAKES ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WHATSOEVER, EITHER ORAL OR WRITTEN, WHETHER ARISING BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE, ALL OF WHICH ARE EXPRESSLY DISCLAIMED, AND (B) EACH PARTY HERETO ACKNOWLEDGES THAT, IN ENTERING INTO THIS ASSIGNMENT AND RELEASE AGREEMENT, IT HAS NOT RELIED UPON ANY REPRESENTATION OR WARRANTY MADE BY THE OTHER PARTY, OR ANY OTHER PERSON ON SUCH OTHER PARTY'S BEHALF, EXCEPT AS SPECIFICALLY PROVIDED IN THIS SECTION 3.

4. <u>Indemnification</u>.

(a) **Beneficiaries** (as "**Indemnifying Party**") shall defend, indemnify and hold harmless the **Insurer**, and its officers, directors, employees, agents, affiliates, permitted successors, and permitted assigns (collectively, "**Indemnified Party**"), against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, fees and the costs of enforcing any right to indemnification under this Assignment and Release Agreement, and the cost of pursuing any insurance providers, incurred by an Indemnified Party or awarded against an Indemnified Party in a final non-

DocuSign Envelope ID: FDB65E80-AA48-4B6E-8648-4489F474ADD3

appealable judgment (collectively, "**Losses**"), arising out or resulting from any claim of a third party alleging:

(i) material breach by Indemnifying Party or its employees, consultants or other personnel of any representation, warranty, covenant or other obligations set out in this Assignment and Release Agreement; or

(ii) gross negligence or more culpable act or omission of an Indemnifying Party or its employees, consultants, or other personnel (including any recklessness or willful misconduct) in connection with the performance of its obligations under this Assignment and Release Agreement.

(b) Notwithstanding anything to the contrary in this Assignment and Release Agreement, the Indemnifying Party is not obligated to indemnify, defend, or hold harmless the Indemnified Party against any Losses arising out of or resulting, in whole or in part, from an Indemnified Party's:

(i) negligent acts or omissions; or

(ii) bad faith failure to materially comply with any of its obligations set out in this Assignment and Release Agreement.

(c) An Indemnified Party seeking indemnification under this Section 4 shall give the Indemnifying Party:

(i) prompt Notice (as defined below) of the relevant claim; provided, however, that failure to provide such notice shall not relieve the Indemnifying Party from its liability or obligation hereunder except to the extent of any material prejudice directly resulting from such failure; and

(ii) reasonable cooperation in the defense of such claim. The Indemnifying Party shall have the right to control the defense and settlement of any such claim; provided, however, that the Indemnifying Party shall not, without the prior written approval of the Indemnified Party, settle or dispose of any claims in a manner that affects the Indemnified Party's rights or interests. The Indemnified Party shall have the right to participate in the defense at its own expense.

THIS SECTION 4 SETS FORTH THE ENTIRE LIABILITY AND OBLIGATION OF EACH INDEMNIFYING PARTY AND THE SOLE AND EXCLUSIVE REMEDY OF EACH INDEMNIFIED PARTY FOR ANY DAMAGES COVERED BY THIS SECTION

5. <u>Miscellaneous</u>.

(a) Any notices, requests, consents, claims, demands, waivers, summons, or other legal process, or similar types of communications hereunder (each, a "**Notice**") must be in writing and addressed to the relevant Party at the address set out on the first page of this Assignment and Release Agreement. All Notices must be delivered by personal

4

delivery, nationally recognized overnight courier (with all fees pre-paid), or certified or registered mail (in each case, return receipt requested, postage prepaid). A Notice is effective only (i) on receipt by the receiving Party and (ii) if the Party giving the Notice has complied with the requirements of this Section 5(a).

(b)     This Assignment and Release Agreement and all matters arising out of or relating to this Assignment and Release Agreement are governed by, and construed in accordance with, the laws of the State of Illinois, without regard to the conflict of laws provisions of such State. Any legal suit, action, or proceeding arising out of or based upon or relating to this Assignment and Release Agreement must be instituted in the federal courts of the United States of America or the courts of the State of Illinois, in each case located in the City of Chicago and County of Cook, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Service of process, summons, notice, or other document by certified mail in accordance with Section 5(a) will be effective service of process for any suit, action or other proceeding brought in any such court.

(c)     This Assignment and Release Agreement, and each of the terms and provisions hereof, may only be amended, modified, waived, or supplemented by an agreement in writing signed by each Party.

(d)     Neither Party may assign, transfer, or delegate any or all of its rights or obligations under this Assignment and Release Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed; provided, however, that either Party may assign this Assignment and Release Agreement to an affiliate, a successor-in-interest by consolidation, merger or operation of law or to a purchaser of all or substantially all of the Party's assets. No assignment will relieve the assigning party of any of its obligations hereunder. Any attempted assignment, transfer, or other conveyance in violation of the foregoing will be null and void. This Assignment and Release Agreement will inure to the benefit of and be binding on each of the Parties and each of their respective permitted successors and permitted assigns.

(e)     This Assignment and Release Agreement may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement. Delivery of an executed counterpart of this Assignment and Release Agreement electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Assignment and Release Agreement.

(f)     For purposes of this Assignment and Release Agreement, (i) the words "include," "includes" and "including" are deemed to be followed by the words "without limitation"; (ii) the word "or" is not exclusive; (iii) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Assignment and Release Agreement as a whole; (iv) words denoting the singular have a comparable meaning when used in the plural, and vice-versa; and (v) words denoting any gender include all genders. The Parties drafted this Assignment and Release Agreement without regard to any presumption or rule requiring

construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

(g) The headings in this Assignment and Release Agreement are for reference only and do not affect the interpretation of this Assignment and Release Agreement.

(h) If any term or provision of this Assignment and Release Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Assignment and Release Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction; provided, however, that if any fundamental term or provision of this Assignment and Release Agreement is invalid, illegal, or unenforceable, the remainder of this agreement shall be unenforceable. Upon such determination that any term or other provision is invalid, illegal, or unenforceable, the parties hereto shall negotiate in good faith to modify this Assignment and Release Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

(i) Each of the Parties shall, and shall cause its respective affiliates to, from time to time at the request and sole expense of the other Party, without any additional consideration, furnish the other Party such further information or assurances, execute and deliver such additional documents, instruments and conveyances, and take such other actions and do such other things, as may be reasonably necessary or appropriate in the opinion of counsel to the requesting party to carry out the provisions of this Assignment and Release Agreement and give effect to the transactions contemplated hereby.

(j) This Assignment and Release Agreement is the sole and entire agreement of the Parties regarding the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, regarding such subject matter.

(k) Each Party shall pay its own costs and expenses in connection with the drafting, negotiation, and execution of this Assignment and Release Agreement (including the fees and expenses of its advisors, accountants, and legal counsel).

(l) Except as expressly set out in the second sentence of this Section 5(l), this Assignment and Release Agreement benefits solely the Parties hereto and their respective permitted successors and permitted assigns, and nothing in this Assignment and Release Agreement, express or implied, confers on any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Assignment and Release Agreement. The Parties hereby designate all Releasees as third-party beneficiaries of Section 2, having the right to enforce such Section.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DocuSign Envelope ID: FDB65E80-AA48-4B6E-8648-4489F474ADD3

IN WITNESS WHEREOF, the Parties have executed this Assignment and Release Agreement as of the date first written above.

By _[DocuSigned signature: 5F3FFF9CAC584AF...]_

Name: Transamerica Life Insurance Company

Title:

By _[signature]_

Name: AnaBianca Rudolph

By _[signature]_  August 15, 2023

Name: Julian Rudolph

By _[signature]_  August 15, 2023

Name: Julian Rudolph

Title: Executor/Personal Representative of the Estate of Bianca Rudolph

By _[signature]_  August 15, 2023

Name: Julian Rudolph

Title: Trustee for the Rudolph Trust Dated 4-25-16