**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 22-cr-012-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. LAWRENCE RUDOLPH, and
2. LORI MILLIRON,

      Defendants.

---

**ORDER GRANTING THE GOVERNMENT'S AMENDED MOTION TO DISMISS
VERIFIED PETITION AND DISMISSING PETITIONERS' VERIFIED PETITION FOR
ADJUDICATION OF INTERESTS IN PROPERTY ORDERED FORFEITED**

---

This case is before the Court on Petitioners Julian and AnaBianca Rudolph (jointly, "Petitioners") Verified Petition for Adjudication of Interests in Property Ordered Forfeited ("Petition") (ECF No. 367) and a memorandum of law in support (ECF No. 368). The Government filed a Response and Motion to Dismiss Verified Petition for Adjudication of Interests in Property Ordered Forfeited ("Motion"). (ECF No. 396.) Petitioners filed a response in opposition. (ECF No. 422.) The Government filed a reply and notice of errata. (ECF Nos. 441, 442.)

After reviewing the briefing on the Petition and the Motion, the Court issued an Order Striking Briefing on Petition and Motion to Dismiss. (ECF No. 446.) The Court primarily took issue with the parties' conflation of the concepts of restitution and forfeiture and directed the parties to clarify their factual and legal positions on this and several other issues, which the Court need not reiterate in full here; the Court

incorporates its prior Order by reference.

The Court also clarified several issues, including finding that: Arizona law applies as to whether a constructive trust exists; Petitioners have no direct interest in the property; Petitioners conceded that they do not seek a statutory constructive trust under Arizona law and waived their arguments with respect to the application of Illinois and Pennsylvania statutory law; and the Court considered the main remaining issue to be whether the Court would impose an equitable constructive trust under Arizona law that would provide Petitioners with standing to proceed with their Petition. (*Id.*)

Thereafter, the Government filed an Amended Motion to Dismiss Verified Petition for Adjudication of Interests in Property Ordered Forfeited ("Amended Motion") (ECF No. 463), Petitioners filed a response in opposition (ECF No. 464), and the Government filed a reply (ECF No. 465).

Although Petitioners requested an ancillary hearing pursuant to 21 U.S.C. § 853(n)(2), incorporating 18 U.S.C. § 982 (ECF No. 367 at 1), the Court has determined that Petitioners lack standing, and thus, a hearing is not necessary to rule on the Petition or the Motion.  For the following reasons, the Amended Motion is granted, and the Petition is dismissed.

## I. BACKGROUND AND PROCEDURAL HISTORY

On August 1, 2022, Defendant Lawrence Rudolph ("Defendant") was convicted by a jury of committing foreign murder, in violation of 18 U.S.C. §§ 1119 and 1111 (Count 1).  (ECF No. 247.)  The jury also convicted him of committing mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 (Count 2). (*Id.*)  With respect to Count 2, nine insurance policies paid claims out due to the mail fraud committed by Defendant.

On May 17, 2023, the Court entered its Preliminary Order of Forfeiture, which determined which specific assets are forfeitable by Defendant.  (ECF No. 354.)  On August 21, 2023, the Court conducted the sentencing hearing as to Defendant, at which it also addressed restitution and forfeiture.  (ECF No. 412.)  The Court ordered that Defendant must pay $4,877,744.93 in restitution to the insurance company victims of Count 2 as set forth in the life insurance payments table appended as Exhibit 1 to the Government's Motion for Order of Restitution and Forfeiture.  (ECF No. 296-2; ECF No. 415.)  Additionally, the Court made the Preliminary Order of Forfeiture final as to Defendant.  (ECF No. 415.)

## II. FACTUAL ALLEGATIONS[1]

### A.    Allegations from the Petition

Petitioners are the daughter and son of the deceased, Bianca Rudolph, and Defendant. (¶¶ 1–2.)  They have petitioned this Court for an ancillary hearing based on their legal interest, both personally and on behalf of their deceased mother's estate, in certain assets this Court has preliminarily ordered forfeited to the United States.  (¶ 3 (listing forfeited property).)

Prior to her death, Bianca Rudolph obtained nine life insurance policies from seven different insurance carriers.  (¶ 5.)  Petitioners are specifically listed as contingent beneficiaries on three of the insurance policies, meaning they would receive the proceeds if the primary beneficiary (namely, Defendant or the Rudolph Trust) is

---

[1] The Factual Allegations section is drawn from the Petition.  (ECF No. 367.)  The Court assumes the allegations contained in the Petition to be true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Citations to (¶ ___), without more, are references to the Petition.

disqualified in any way.[2]  (¶ 5, 7.)  The Rudolph Trust, which is the primary beneficiary on six of the policies and of which Defendant was the trustee until December 2022, provides for distribution of the trust property to Petitioners if Defendant is disqualified from acting as a beneficiary.  (¶¶ 7 n.6, 8; Pet. Ex. B (ECF No. 367-2).)

Defendant began collecting on the life insurance policies almost immediately after Bianca Rudolph's death in October 2016, receiving $4,877,744.93 in insurance proceeds between January and March 2017.  (¶¶ 9–11.)  In doing so, he failed to disclose his role in the circumstances of her death.  (¶ 9.)  Five years later, Defendant was arrested for Bianca Rudolph's murder.  (¶ 12.) He was subsequently tried and convicted in August 2022.  (¶¶ 13–14; ECF No. 247 (jury verdict).)

After the conclusion of the trial, the Government moved for an order that Defendant: (1) forfeit property identified as proceeds of his insurance fraud offense; and (2) pay mandatory restitution to the victims of his crimes.  (¶ 15.)  Further, materiality witnesses called by the Government as representatives of the insurance companies at trial each stated that disclosure concerning the circumstances of Bianca Rudolph's death would have been valuable not for purposes of whether they were contractually required to pay claims (which they were), *but instead because the proceeds should have been paid to other lawful beneficiaries – namely, Julian and AnaBianca*.[3]  (¶ 21 (citing ECF No. 367-5 (*U.S. v. Rudolph*, 22-cr-012-WJM, Trial Tr., Day 6, Testimony of

---

[2] The Government states that the latter portion of this paragraph is argument.  (ECF No. 463 at 2 n.1.)

[3] The Government states that the italicized language does not appear to be supported by Petitioners' Exhibit E.  The Court has reviewed Exhibit E and agrees with the Government's position.

Greg Mirabelli, pg. 55–56, Exhibit E) (emphasis added).)  On May 17, 2023, the Court entered the Preliminary Order of Forfeiture ordering the forfeiture assets identified as proceeds of Defendant's insurance fraud offense.  (¶ 21.)

**B.    Additional Relevant Facts Not in the Petition[4]**

The Government compiled a chart of the nine relevant life insurance policies, which includes the amount, date of claim, date of payment, primary beneficiary, and contingent beneficiary.  (ECF No. 463-1.)  Julian and AnaBianca Rudolph filed the Petition as the children of the Defendant and decedent.  (ECF No. 367).

After filing the Petition and some briefing on the matter, Petitioners provided the Government with Assignment And Release Agreements for four of the seven life insurance companies.  (*See* ECF Nos. 422-2, 422-3, 422-4, and 422-5.  Petitioners did not provide similar agreements with three others (AAA, Metlife, and Genworth).  Genworth did not assign their rights but did agree that restitution should be paid to the beneficiaries of the Rudolph Trust dated April 25, 2016, excluding Defendant.  (ECF No. 422-1).  MetLife has also indicated to the Government that it has not determined if it will pay out its life insurance policy.  (ECF No. 463 at 3.)

In their response, Petitioners state that while they are not waiving their right to seek relief from MetLife if it chooses to stand on its rescission right and deny coverage under that policy, they are nevertheless withdrawing their claim against the $772,901.17 in MetLife proceeds contained in their Petition.  (ECF No. 464 at 3 n.1.)

---

[4] In the Amended Motion, the Government provides additional relevant facts not in the Petition for clarity of the circumstances surrounding the Petition and the Amended Motion.

### III. LEGAL STANDARDS AND PROCEDURES

A petitioner can establish their interest in the assets to be forfeited in one of two ways:

> (A) the petitioner has a superior legal right, title, or interest in the property to the defendant at the time of the commission of the acts that gave rise to the forfeiture of the property; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property who lacked reasonable cause at the time of the purchase to the believe the property was subject to forfeiture.[5]

21 U.S.C. § 853(n)(6).

Here, to determine if Petitioners have a superior legal interest to Defendant, the Court must first look to state law to determine the nature of Petitioners' legal interest. *See United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We recognize that in federal forfeiture proceedings, ownership interests (including constructive trusts) are defined by state law"). If Petitioners do not have a legal interest under state law, they cannot have a superior interest to the defendant in the subject property. *See United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012) (if claimant fails to establish a legal interest under state law, the inquiry ends and the claim fails for lack of standing); *United States v. Rammuno*, 599 F.3d 1269, 1272 (11th Cir. 2010) (same).

"For purposes of the motion [to dismiss a petition for an ancillary hearing], the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A). "'Although . . . ancillary proceedings arise in the context of criminal forfeiture, they closely resemble . . . civil proceedings." *United States v. Corpus*, 491 F.3d 205, 208

---

[5] Because Petitioners do not argue that they are bona fide purchasers for value, only § 853(n)(6)(A) is at issue here.

(5th Cir. 2007).  *See also* Fed. R. Crim. P. 32.2 advisory committee's note to 2000

adoption (stating that courts should follow the Federal Rules of Civil Procedure for

"fundamental areas" of ancillary proceedings, including motions to dismiss).  As a result,

courts apply the standard of review under Federal Rule of Civil Procedure 12 to motions

to dismiss petitions for ancillary proceedings.  *United States v. Butt*, 930 F.3d 410, 413

(5th Cir. 2019) (citations omitted).

A motion to dismiss based on lack of standing attacks the Court's subject-matter

jurisdiction and is thus analyzed under Rule 12(b)(1).  *Colo. Env't. Coalition v. Wenker*,

353 F.3d 1221, 1227 (10th Cir. 2004).  Rule 12(b)(1) challenges may be facial or

factual.  *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001)

(citations omitted).  Because the Government challenges the sufficiency of Petitioners'

allegations but does not dispute them by proffering its own evidence, its attack is facial.

*Colorado Montana Wyoming State Area Conf. of NAACP v. United States Election*

*Integrity Plan*, 2022 WL 1266612, at *2 (D. Colo. Apr. 28, 2022) (citations omitted).  "In

reviewing a facial attack on plaintiffs' standing, the Court considers only the sufficiency

of the complaint, as it would with a Federal Rule 12(b)(6) motion."  *Id*. at 3 (quoting

*Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir.

2010)).

"In evaluating such a motion [under Rule 12(b)(6)], a court must 'assume the

truth of the [Petitioners']well-pleaded factual allegations and view them in the light most

favorable to the plaintiff.'"  *Auraria Student Hous. at the Regency, LLC v. Campus Vill.*

*Apartments, LLC*, 825 F. Supp. 2d 1072, 1076–77 (D. Colo. 2011) (quoting *Ridge at*

*Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).  "In ruling on

such a motion, the dispositive inquiry is whether the [Petition]contains enough facts to state a claim to relief that is plausible on its face." *Id*. at 1077 (internal quotations and citations omitted). "Granting a motion to dismiss 'is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice.'" *Id*. (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "'Thus, a well-pleaded [Petition]may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id*. (internal quotations and citations omitted).

If the Court denies a motion to dismiss a petition, and before conducting a hearing on the petition, the Court may permit discovery under the Federal Rules of Civil Procedure, after which the parties may move for summary judgment, and then the Court would conduct any ancillary hearing. Fed. R. Crim. P. 32.2(c)(1)(B).

## IV. ANALYSIS

When a third party asserts an interest in forfeitable property, the first question is whether the party has standing. 21 U.S.C. § 853(n)(2); Fed. R. Crim. P. 32.2(c); *see United States v. Swartz Family Trust*, 67 F.4th 505, 515 (2d Cir. 2023). "A claimant need not prove the merits of his underlying claim, but he must claim a facially colorable interest in the seized property to satisfy the requirements of standing." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009); *see also United States v. Dadha*, 2020 WL 7056099 at *3 (D. Kan. Dec. 2, 2020).

There are two types of standing Petitioners must establish: statutory and constitutional standing. "Statutory standing is 'simply a question of whether the particular plaintiff has a cause of action under the statute.'" *Swartz Family Trust*, 67

F.4th at 515–16.  To establish that they have statutory standing under § 853(n),

Petitioners must first demonstrate that they have a legal interest in the property to

contest the forfeiture.  *United States v. Kluding*, 2020 WL 5920269, at *2 (W.D. Okla.

Oct. 6, 2020).  A "court can dismiss claim for lack of statutory standing without first

addressing constitutional standing."  *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d

921, 926 (10th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S.

83, 96–97 (1998)).

Petitioners have the burden to prove a legal interest in the property exists.

*Kluding*, 2020 WL 5920269 at *2.  If Petitioners have no valid legal interest in the

property under state law the inquiry ends, and the claim fails for lack of standing.

*Swartz Family Trust*, 67 F.4th at 516.

Here, Petitioners argue that they are the beneficiaries of a constructive trust over

the assets subject to forfeiture.  (ECF Nos. 367, 464.)  The Government contends that

Petitioners cannot establish a constructive trust over the insurance companies' monies

and the property traceable thereto.  (ECF Nos. 463, 465.)  For the following reasons,

the Court concludes that Petitioners have not met their burden to establish that they are

entitled to a constructive trust under Arizona law.  As a result, they cannot establish that

they have standing to contest the forfeited property.

**A.     Choice of Law**

A constructive trust is an equitable remedy imposed by state common law to

prevent unjust enrichment.  *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir.

2008) (noting that a constructive trust is a legal fiction and an equitable remedy devised

to prevent unjust enrichment and compel restitution of property that does not belong to

a defendant) (emphasis added).  Based on the mail fraud conviction, the Court applies

Arizona constructive trust law to determine whether a constructive trust exists over the forfeitable property because the unlawful mail fraud acts Defendant committed occurred in that jurisdiction.  (*See e.g., DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *7 (S.D.N.Y. Mar. 1, 2023) (when a party seeks the imposition of a constructive trust, the court could apply the laws of the state where the alleged unjust acts justifying a constructive trust occurred); *see also* ECF No. 446 at 8 (undersigned's Order concluding Arizona law applies).)

**B.   Elements of Equitable Constructive Trust**

In Arizona, "[a] court may impose a constructive trust when title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or similar means, or if there has been a breach of fiduciary duty."  *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 276 P.3d 11, 43 (Ariz. Ct. App. 2012).  According to the Government, Arizona law creates an equitable constructive trust when there is:

> (1) a wrongful holding of property;
>
> (2) which unjustly enriches the holder of the property;
>
> (3) at the expense of the party seeking the constructive trust;
>
> (4) that the party seeking the constructive trust can trace their funds/assets to the property wrongfully acquired; and
>
> (5) there is not an adequate remedy at law such that the court should act in equity.

(ECF No. 463 at 8 (citing *Harmon v. Harmon*, 613 P.2d 1298, 1300 (Ariz. Ct. App. 1980)).)  The burden is on the party seeking the constructive trust to establish the requirements by "clear and convincing evidence."  *Id.*

Petitioners argue that the elements of a constructive trust set forth by the Government in the Amended Motion are not explicitly provided for in Arizona case law.

(ECF No. 464 at 8 n.4.)  Specifically, they "disagree with the government's formulation of Arizona's constructive trust standard, as well as its application to the facts of this case.  To be clear, what the Arizona cases do say regarding the imposition of a constructive trust is that it can be imposed in situations where it is necessary 'to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs.'"  (*Id*. (citing *Harmon*, 613 P.2d at 1300).)

Despite Petitioners' disagreement with the Government's recitation of the elements, the Government underscores that they "do not proffer an alternative set of elements necessary to establish a constructive trust or elaborate on which, if any, elements are inapplicable."  (ECF No. 465 at 2.)  Accordingly, the Government contends that "[s]uch an undeveloped argument should be deemed a waiver."  (*Id*. (citing *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013)).)

The Court agrees that Petitioners' failure to support their argument with an alternative recitation of the elements of an Arizona constructive trust—to the extent one even exists—completely undermines their point.  Therefore, the Court deems their argument waived.  But even under Petitioners' arguably broader formulation of a constructive trust under *Harmon*—which, incidentally, is the same case the Government cites for support of its elements—the Court's analysis and findings are the same.

1.    Implications of Preliminary Order of Forfeiture

The Government argues that following the entry of the Preliminary Order of Forfeiture, Defendant was divested of his interest and title to the forfeited property. (ECF No. 463 at 9.)  As a result, the forfeiture disgorged him of his ill-gotten gains, and a constructive trust is not necessary to deprive Defendant of the property or prevent unjust enrichment.  (*Id*.)

Petitioners dispute the Government's position that the Preliminary Order of Forfeiture has divested Defendant of his assets, and therefore he is no longer wrongfully holding the assets in a way that unjustly enriches him.  (ECF No. 463 at 9; ECF No. 464 at 13.)

In its reply, the Government states that it "agrees that this element alone would not prevent the imposition of a constructive trust where the Court deems appropriate." (ECF No. 465 at 5.)

Although the Government has not completely conceded the argument, the Court views its statement in the reply as a tacit concession.  Regardless, this argument is not dispositive of the outcome of the Amended Motion, and the Court concludes that it need not discuss this argument any further in its consideration of whether to impose a constructive trust.

    2.    <u>Party to Whom the Insurance Proceeds "Justly Belong"</u>

Regardless of whether the Court uses the Governments elements for a constructive trust—"at the expense of the party who was defrauded and seeks the constructive trust" (ECF No. 463 at 8)—or Petitioners' statement that a constructive trust "can be imposed in situations where it is necessary to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs" (ECF No. 464 at 8 n.4), the outcome is the same.  The Court finds that Petitioners are not entitled to a constructive trust in these circumstances.

To establish standing for a constructive trust, Petitioners must establish that they are asserting their own rights and not those of third parties.  *See Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Fine v. Chloeta Fire, LLC*, 2014 WL 12700982, at *2 (N.D. Okla. Aug. 26, 2014) (dismissing constructive trust claim on standing grounds because

plaintiff did not have any personal involvement in the transactions), *report and recommendation adopted*, 2014 WL 12708962 (N.D. Okla. Sept. 12, 2014).  Petitioners state that they assert their rights as innocent third parties with respect to the property. (ECF No. 367 at 1.)  However, the Government points out that to execute his crime, Defendant fraudulently collected millions of dollars in life insurance proceeds, which the insurance companies paid to him.  (ECF No. 463 at 10.)  Petitioners themselves never paid money to Defendant and suffered no financial loss from Defendant's mail fraud. (*Id.*)  Rather, Defendant defrauded the seven life insurance companies and used those funds to procure the forfeitable property.  (*Id.*)

To the extent Petitioners rely on the Assignment Agreements executed by some of the life insurance companies to assert a right to a constructive trust, the Government argues that the assignments "do not appear to confer the life insurance companies' right to file a petition in this criminal forfeiture proceedings [*sic*]."  (*Id.*)  Instead, other than the Great-West Life & Annuity Insurance Company (ECF No. 422-4), the agreements refer to the ability to seek restitution in the "Forfeiture Proceeding," which refers to the related civil forfeiture case filed on December 21, 2021, not this criminal case.  (*Id.* at 10–11 (citing ECF Nos. 422-2, 422-3, 422-5).)  Given the foregoing, the Government asserts that even if the insurance proceeds would have been paid to Petitioners, "nothing has occurred 'at their expense' if they are receiving funds from the insurers to which they would have been entitled absent their father's fraud.  If the insurers aren't paying them funds to which they were entitled, the law provides an adequate remedy to them."  (*Id.* at 11.)

In response, Petitioners argue that Arizona law does not require a showing that

the party seeking a constructive trust is the party who was defrauded.  (ECF No. 464 at 8.)  Rather, Petitioners contend that the standard only requires that they demonstrate that the property in question "justly belongs" to them.  (*Id.*)  Petitioners recognize but disagree with the undersigned's holding (ECF No. 344), affirmed by the Tenth Circuit (ECF No. 356), that they are not the victims of Defendant's mail fraud.  (ECF No. 464 at 9.)  Nevertheless, they argue that this finding is irrelevant to the current inquiry.  (*Id.*)

Rather, Petitioners advocate for a more "flexible" understanding of the imposition of a constructive trust.  (*Id.* at 10.)  For instance, Petitioners argue that Arizona courts impose constructive trusts in situations where the constructive-trust beneficiary was not directly or proximately harmed, such as in the context of a breach of fiduciary duty.  (*Id.* (*Turley v. Ethington*, 146 P.3d 1282, 1286 (Ariz. Ct. App. 2006)).)  They contend that the instant situation is "ideal under Arizona law for the imposition of an equitable constructive trust," as the life insurance proceeds "'justly' belong to Petitioners, and it would be unconscionable to allow anyone but Petitioners to retain them."  (*Id.* at 11.)

Petitioners reiterate that they, or trusts that ultimately benefit them, are the contingent beneficiaries of the life insurance policies, and with limited exceptions, the insurance companies agree that they are the proper beneficiaries of those policies.  (*Id.* (citing ECF No. 464-1 Hotaling Decl. Exs. C, D, E, F (Assignment Agreements), G (Genworth Letter)).)  In addition, Petitioners acknowledge that "it is common practice for insurance companies to file interpleader actions where suspicious circumstances surround an insured's death, to determine who the rightful recipient of the proceeds is —the primary beneficiary, or some other previous or contingent beneficiary."  (*Id.* at 12 (citing *Castro v. Ballesteros-Suarez*, 213 P.3d 197, 206 (Ariz. Ct. App. 2009) (affirming

judgment in interpleader action for previously named beneficiary of life insurance policy where primary beneficiary was found to be responsible for insured's death, and thus disqualified from receiving insurance proceeds)).)  Accordingly, Petitioners argue that there "can be no doubt that [they] are the party to whom the insurance proceeds justly belong," and as such, they "have clearly established their entitlement to a constructive trust under Arizona law."  (*Id.* at 13.)

Despite Petitioners' arguments, the Court cannot conclude that they have demonstrated that the insurance proceeds justly belong to them.  The Court agrees with the Government's characterization of Petitioners' repeated assertion of being the "rightful owners" of the proceeds as "conclusory statements."  (ECF No. 465 at 2.)  The Court is aware that Petitioners are contingent beneficiaries of several of the life insurance policies, but in these circumstances, they have failed to establish that they— and not the life insurance companies who paid the policies' proceeds to Defendant—are the parties to whom the proceeds "justly belong."

Petitioners' citation to various cases are unavailing.  Indeed, rather than supporting their position that the criminal forfeiture proceeding is the correct forum to litigate their claims, these cases stand for the proposition that a separate legal process—most likely involving the insurance companies—is the proper judicial forum for their arguments.  And, critically, "[n]one of the cases cited by Petitioners involve a third-party receiving property in an equitable trust where another party was the one defrauded."  (*Id.* at 4.)  As the Government highlights, the various assignment agreements that Petitioners have obtained "merely memorialize an agreement between the life insurance companies and Petitioners regarding restitution payments.  They do

not convey or transfer a legal right to Petitioners for the forfeitable property." (*Id.* at 3 (citing ECF No. 464 at 18–19 n.9).)  The fact remains that the insurance companies paid the fraudulent claims to Defendant, and they have chosen to receive their remedy through restitution.  Thus, insurance proceeds justly belong to them, not Petitioners, and although the insurance companies "may then have a duty to convey that property to Petitioners because of agreements with the Petitioners or the deceased," "that is *outside the scope of this proceeding*."  (ECF No. 465 at 4 (emphasis added).)

While the Court concludes that the analysis could end here, for the sake of completeness, it will address the parties' arguments concerning whether Petitioners can trace their funds to the forfeitable assets and whether there is an adequate remedy at law that renders the equitable remedy of a constructive trust inappropriate.

### 3.   Tracing Funds to Forfeitable Assets

"For a constructive trust to be imposed, [petitioners must] identify specific assets that [can] be traced back to Trust funds."  *Matter of Lloyd Revocable Tr.*, 2017 WL 4682255, at *3 (Ariz. Ct. App. Oct. 19, 2017) (citing *Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 286 (1985) ("A prerequisite to the imposition of a constructive trust is the identification of a specific property belonging to the claimant.")).  The Government argues that to establish their entitlement to an Arizona constructive trust, Petitioners must set forth tracing of their funds to the forfeitable assets.  (ECF No. 463 at 11.)  Although for August 21, 2023 Defendant's sentencing, restitution, and forfeiture hearing (ECF No. 412) the Government was able to trace the $4.8 million in collective insurance proceeds to the forfeitable assets, the Government also provided evidence that the funds from all of the insurance companies were eventually commingled into one account—Vanguard #88150069515.  (*Id.* at 12.)  From there, the $4.8 million in

commingled funds were then transferred to multiple accounts and eventually the assets

subject to forfeiture.  (*Id.*)  The Government explains that its

> tracing established that all of the funds were ill-gotten, which
> was all that was required for forfeiture.  But the petitioners
> have not likewise shown that they are entitled to all of those
> funds (let alone any of those funds), even though that is
> required for them to establish a superior interest to the
> government and other parties.  Were they to demonstrate a
> superior right to a portion of the funds, they would need to
> offer a reasonable accounting method to break off their
> share that is not unfair to others with an interest in the
> commingled funds.

(*Id.* at 13.)  In the Government's view, "Petitioners are clearly asking the Court to prefer

them over other insurance victims of the mail fraud by creating a constructive trust for

them over all of the forfeitable assets."  (*Id.* at 14.)  Further, the Government contends

that this "is to the detriment of victims whose funds have been commingled to purchase

the forfeitable property, but have not given assignments, nor agreed, that petitioners are

entitled to the proceeds."  (*Id.*)

Petitioners respond that under Arizona law, they need only identify the specific

property in which they have an interest and argue that they have "clearly done so" by

arguing that they have a "direct interest in Mrs. Rudolph's insurance proceeds and any

appreciated assets that flow therefrom."  (ECF No. 464 at 16.)  They further incorporate

the Government's tracing analysis and do not dispute the Government's tracing as

accurate.  (*Id.*)  Finally, Petitioners contend that they can further present such tracing

evidence at an ancillary hearing to clearly and convincingly establish traceability of

these assets.  (*Id.*)

Given the Court's analysis above concluding that the property at issue justly

belongs to the insurance companies, *see supra* Part IV.B.2, the Court concludes that it

need not address this element of a constructive trust.  And even in light of the

aforementioned conclusions, the Court agrees with the Government's argument that

Petitioners "have still failed to provide an accounting method that will parse out those

funds within the ill-gotten funds that they are entitled to collect."  (ECF No. 465 at 5.)

However, because Petitioners assert that they conceivably could establish proper

tracing methods at an ancillary hearing, the Court makes it clear here that it does not

rely on the tracing element to reach its final conclusion that the Government's Motion

will be granted.

       4.   <u>Whether an Adequate Remedy at Law Exists</u>

As with the element of traceability, the Court need not address the final element

of whether ran adequate remedy at law exists.  However, for the sake of completeness,

it will nevertheless do so.

Under Arizona constructive trust law, "[t]he court may not . . . impose a

constructive trust if the claimant has an adequate remedy at law."  *Matter of Lloyd*

*Revocable Tr.*, 2017 WL 4682255, at *3; *ML Servicing Co. v. Coles*, 334 P.3d 745, 752

(Ariz. Ct. App. 2014) (stating that a constructive trust is improper when another

adequate remedy at law is available to the harmed party).  The Government argues that

the life insurance companies who are the victims of Defendant's mail fraud have an

adequate remedy at law—restitution—which they have already chosen.  (ECF No. 463

at 14.)  Addressing the Court's concern that the parties conflated restitution and

forfeiture in earlier briefing (ECF No. 446), the Government explains the overlap

between the two concepts in this context.  "[O]verlap exists here in that petitioners are

trying to claim a superior interest to the United States through an equitable trust that is

based in large part (if not entirely) on a claim that the restitution did not cover the losses

caused by Rudolph's fraud of the insurers." (*Id.* at 15.)  Moreover, the Government

argues that "Petitioners also have an adequate remedy without a constructive trust.  As

evidenced by their Assignment Agreements, several insurance companies have agreed

to pay their restitution to the petitioners.  Petitioners could file claims with the insurance

companies, who have not agreed to an assignment or agreement for their benefit. Their

right to any payments would then be determined by the relevant provisions in the

insurance contracts." (*Id.*)

In response, Petitioners contend that *neither* they nor the insurance companies

have an adequate remedy at law.  (ECF No. 464 at 17.)  As an initial matter, the Court

questions the propriety of Petitioners making any assertions on behalf of the insurance

companies, who Petitioners do not represent.  In any event, Petitioners assert that "any

recourse the insurance companies may have is highly speculative and almost

completely dependent on the government's own discretion," (*id.*), and that they "are

aware of no further options to pursue assets for recovery, as all of Rudolph's remaining

assets are currently subject to the Preliminary Order of Forfeiture."  (ECF No. 464-1 ¶ 7

(Hotaling Decl.).)  As such, Petitioners contend that "the insurance companies' only

potential for recovery on the Restitution Order is through the remission process

provided in [21 U.S.C.] § 853(i), in which the Department of Justice may, *in its own*

*discretion*, restore forfeited property to the victims of an offense."  (ECF No. 464 at 17

(citing 21 U.S.C. § 853(i)(1)[6]) (emphasis in original).)  Further, they cite cases in which

---

[6] The statutory provision states:

**(i) Authority of the Attorney General**

With respect to property ordered forfeited under this section, the

other circuit courts have found that the remission process is not an adequate remedy at law that would deprive the Court of the power to recognize a constructive trust. (*Id.*)

Additionally, Petitioners state that they have no adequate recourse against the insurance companies because under Arizona law, they are "immunized from double liability for making payments on the insurance policies to Rudolph because they paid out the policies in good faith, before they received notice of his involvement in Mrs. Rudolph's death." (*Id.* at 17–18 (citing A.R.S. § 14-2803(G) ("A payor or other third party is not liable for having made a payment or transferred an item of property or any other benefit to a beneficiary designated in a governing instrument affected by an intentional and felonious killing or for having taken any other action in good faith reliance on the validity of the governing instrument on request and satisfactory proof of the decedent's death and before the payor or other third party received written notice of a claimed forfeiture or revocation under this section.")).) Therefore, the insurance companies are under no obligation to pay the claims submitted by Petitioners unless and until they receive their restitution payments. (*Id.* at 18.) Petitioners state that once the insurance companies receive their restitution payments, then they would be obligated to pay Petitioners as the contingent beneficiaries. (*Id.*) Accordingly, Petitioners explain that the insurance companies have indicated to their attorney that

---

Attorney General is authorized to--

(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section . . . .

21 U.S.C.A. § 853(i)(1).

they will not make payments on claims submitted by Petitioners on the policies until they receive their restitution payments, which Petitioners describe as "highly speculative and uncertain." (*Id.*) As such, Petitioners claim they have no adequate remedy at law against the insurance companies. (*Id.*)

Having thoroughly considered the parties' arguments, the Court concludes that it must reject Petitioners' arguments. As an initial matter, the Court agrees with the Government's position that "Petitioners are misdirecting the analysis of this element" because the insurance companies, not Petitioners, are the victims of Defendant's fraud and have selected an adequate remedy at law: restitution. (ECF No. 465 at 5.) This element of the constructive trust analysis is designed for the defrauded party—here, the insurance companies. (*Id.* at 6.)

Additionally, the Court concludes that Petitioners' reasoning that restitution is an inadequate remedy because there is no way for it to be paid absent the remission process is, as the Government states, "speculative." (*Id.*) The Government states that it is aware of assets of Defendant's that may be available for the collection of restitution, and "to the extent there are insufficient assets belonging to the defendant to fulfill the restitution judgment, the United States Attorney's Office will request that any forfeited funds be applied to the outstanding restitution judgment through the remission process." (*Id.* at 6 n.1.) The Court relies on the Government's representation and will hold it to that representation as this case winds down.

Given the Court's findings, the Court concludes that Petitioners lack standing to continue with the ancillary proceeding under Federal Rule of Criminal Procedure 32.2(c) and dismisses their Petition.

## V. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1.     The Government's Amended Motion to Dismiss Verified Petition for Adjudication of Interests in Property Ordered Forfeited (ECF No. 463) is GRANTED; and

2.     The Verified Petition for Adjudication of Interests in Property Ordered Forfeited (ECF No. 367) is DISMISSED.

Dated this 12th day of April, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge